1   SCOTT C. CLARKSON, ESQ.  SBN 143271
    EVE A. MARSELLA, ESQ.  SBN 165797
2   CLARKSON, GORE & MARSELLA
    A PROFESSIONAL LAW CORPORATION
3   3424 Carson Street, Suite 350
    Torrance, California 90503
4   (310) 542-0111 Telephone
    (310) 214-7254 Facsimile
5
    [Proposed] Bankruptcy Attorneys for MTI Technology
6   Corporation

7

8                  UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10
    In re                              | Case No.  SA 07-13347-ES
11
                                       | In A Chapter 11 Case
12  MTI TECHNOLOGY CORPORATION,
    a Delaware corporation,            | NOTICE OF MOTION AND MOTION FOR
13                                     | ORDER PURSUANT TO SECTIONS 105,
                                       | 363(b), 363(f) AND 365 OF TITLE 11 OF THE
14              Debtor and             | UNITED STATES CODE (I) APPROVING
                Debtor in Possession.  | THE SALE OF CERTAIN OF THE DEBTOR'S
15                                     | ASSETS FREE AND CLEAR OF ALL LIENS,
                                       | CLAIMS, ENCUMBRANCES AND
16                                     | INTERESTS; (II) APPROVING THE
                                       | DEBTOR'S ASSUMPTION AND
17                                     | ASSIGNMENT OF CERTAIN EXECUTORY
                                       | CONTRACTS; AND (III) WAIVING THE 10-
18                                     | DAY STAY PERIODS SET FORTH IN
                                       | BANKRUPTCY RULES 6004(h) and 6006(d);
19                                     | DECLARATION OF THOMAS RAIMONDI,
                                       | JR.
20
                                       | Date:  November 20, 2007
21                                     | Time:  2:00 p.m.
                                       | Ctrm:  5A
22

23

24      TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY

25  JUDGE, TO THE OFFICE OF THE UNITED STATES TRUSTEE, AND TO ALL

26  PARTIES ENTITLED TO NOTICE AND TO THEIR RESPECTIVE ATTORNEYS OF

27  RECORD:

28                                                Notice of Motion and Motion to Sell Certain of Debtor's Assets

                                    1

1

2

**TABLE OF CONTENTS**

3 MOTION ...................................................................................................6

4 I.    INTRODUCTION AND BIDDING PROCEDURES ....................................7

5     A.    Commencement of the Debtor's Bankruptcy Case...........................7

6     B.    Background of the Debtor............................................................7

7     C.    The Debtor's Primary Secured Obligations.....................................7

8          (1)    The Wells Fargo Facility...................................................8

9          (2)    The Canopy Facility:.........................................................8

10    D.    Significant Postpetition Events.....................................................9

11         1)     First Day Orders...........................................................9

12         2)     Approval of Sale Procedures..............................................10

13    E.    Reasons for the Sale.................................................................11

14    F.    Summary of Proposed Sale.........................................................11

15    G.    The Purchased Securities and Purchased Assets.............................12

16    H.    Excluded Assets.......................................................................13

17    I.    Assumption of Certain Liabilities.................................................13

18    J.    Excluded Liabilities..................................................................13

19    K.    Executory Contracts and Assumed Liabilities.................................13

20    L.    Court Approval........................................................................14

21    M.    Free and Clear.........................................................................14

22    N.    Bidding Procedures...................................................................14

23         a.     Minimum Initial Overbid Amount.......................................14

24         b.     Subsequent Overbid Amounts............................................14

25         c.     Bidder Prerequisites......................................................14

26         d.     Notification of Qualified Bidders......................................15

27         e.     Information and Due Diligence.........................................15

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72260334.1

1          f.      Bid Deadline and Bid Requirements.............................16

2          g.      Qualified Bids...................................................16

3          h.      Deposit.......................................................16
           i.      Auction; Bidding Increments; and Bids Remaining Open.................16
4

5   II.    THE SALE OF THE PURCHASED SECURITIES AND ASSETS TO THE BUYER OR
    ANOTHER QUALIFIED BIDDER AND THE ASSUMPTION AND ASSIGNMENT OF
6   CONTRACTS AND LEASES SHOULD BE APPROVED.......................................18

7          A.      The Proposed Sale Satisfies the Business Judgment Test and Is in the Best

8   Interests of the Debtor's Estate and its Creditors..............................18

9          B.      There is a Substantial Business Justification for the Sale............................20

10         C.      Adequacy of the Purchase Price.............................................21

11         D.      Other Factors................................................................21

12

13         E.      The Court's Order Should Authorize and Provide for the Sale of the Debtor's

14  Right, Title and Interests in the Purchased Securities and Assets Free and Clear of Liens, Claims,

15  Encumbrances and Interests......................................................22

16         F.      Consent to the Sale; Bankruptcy Code § 363(f)(2).......................................23

17         G.      The Purchase Price Equals and Exceeds the Aggregate Value of the Encumbrances

18  on the Property; Bankruptcy Code § 363(f)(3)......................................23

19

20         H.      Bona Fide Dispute; Bankruptcy Code § 363(f)(4).........................26

21         I.      Lienholders May Be Compelled to Accept a Money Judgment; Bankruptcy Code §

22  363(f)(5)..................................................................27

23         J.      The Court Should Find the Transactions Set Forth in the Purchase Agreement to Be

24  in Good Faith................................................................28

25         K.      The Purchase Agreement Does Not Constitute an Improper "Sub Rosa" Plan......29

26  III.   THE SALE SHOULD BE APPROVED FREE OF TRANSFER OR SIMILAR TAX

27  LIABILITY PURSUANT TO BANKRUPTCY CODE § 1146(c).................................31

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72260334.1

IV.    THE DEBTOR REQUESTS THE COURT TO WAIVE THE TEN-DAY WAITING
PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d).....................32

V.    CONCLUSION.............................................................…...............................32

DECLARATION OF THOMAS RAIMONDI, JR...........................…..............................35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A/72260334.1

# TABLE OF AUTHORITIES

## CASES

*Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343 (E.D. Pa. 1988) ............................................................................................................ 22

*Equity Funding Corp. of America v. Financial Associates (In re Equity Funding Corp.)*, 492 F.2d 793 (9th Cir. 1974) .................................................... 19

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); ........................... 27

*Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983) ................... 28

*In re Abbotts Diaries, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). .......................... 27

*In re Alves*, 52, B.R. 353 (Bankr. D.R.I. 1985) ...................................................... 19

*In re American Development Corp.*, 95 B.R. 735 (Bankr. C.D.Cal. 1989). ................... 19

*In re Beker Industries Corp.*, 63 B.R. 474, 476 (Bankr. S D. N.Y. 1986) ................... 23

*In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985 ............................. 18

*In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990) ........ 19, 23, 29

*In re Collins*, 180 B.R. 447, 450-51 (Bankr. E.D. Va. 1995) .................................. 24

*In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ..................... 19

*In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) ................ 19

*In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992) ................................................. 28

*In re Engineering Products Co.*, 121 B.R. 246, 249 (Bankr. E.D. Ark. 1990) .......... 29

*In re Equity Management Systems*, 149 B.R. 120 (Bankr. S.D. Iowa 1993) ............. 24, 29

*In re George Walsh Chevrolet, Inc.*, 118 B.R. 99 (Bankr. E.D. Mo. 1990) ............... 29

*In re Hatfield Homes, Inc.*, 30 B.R. 353, 355 (Bankr. E.D. Pa. 1983) ..................... 23

*In re Hechinger Investment Company of Delaware, Inc, et al.*, 254 B.R. 306 (Bankr. D. Del. 2000) ...................................................................... 30, 31

*In re Hunt Energy Co., Inc.*, 48 B.R. 472, 485 (Bankr. N.D. Ohio 1985) ................. 26

*In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ..................................... 19, 20

*In re Milford Group, Inc.*, 150 B.R. 904, 906 (Bankr. M.D. Pa. 1992) ................... 24

*In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990) ............................................. 18

*In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1981) ............................................ 25

*In re Oneida Lake Development, Inc.,* 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990) ........................................................   ........................................ 24

*In re Olympia Holding Corp.*, 129 B.R. 679 (Bankr. N.D. Fla. 1991*)* .......................................... 25

*In re Permar Provisions, Inc.,* 79 B.R. 530, 533 (Bankr. E.D.N.Y. 1987) ................................... 30

*In re Perroncello*, 170 B.R. 189, 191 (Bankr. D. Mass. 1994) .......................................... 26

*In re Phoenix Steel Corp.,* 82 B.R. 334, 335-356 (Bankr. D. Del. 1987 .................................... 19

*In re Red Oak Farms, Inc.,* 36 B.R. 856, 858 (Bankr. W.D. Mo. 1984) .................................... 26

*In re Rouse*, 54 B.R. 31 (Bankr. W.D. Mo. 1985). ....................................................... 24

*In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993) ............................. 26

*In re Terrace Gardens Park Partnership*, 96 B.R. 707, 713 (Bankr. W.D. Tex. 1989). ...................................................................................... 23, 24

*In re Walter*, 83 B.R. 14, 19-20, (B.A.P. 9th Cir. 1988) ............................................... 18

*In re Weyland*, 63 B.R. 854, 859-861 (Bankr. E.D. Wisc. 1986) ...................................... 26

*In re Work Recovery, Inc.*, 202 B.R. 301 (Bankr. D. Ariz. 1996). ..................................... 19

*Irvin v. Lincoln Heritage Life Ins. Co. (In re Irvin)*, 950 F.2d 1318, 1323 (7th Cir. 1991). ...................................................................................... 27

*Oneida Lake Development*, 114 B.R. 352, 356-357 (Bankr. N.D.N.Y. 1990) .......................... 25

*Pension Benefit Guaranty Corp. v. Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983); ...................................................................................... 29

*Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); ............................ 29

*Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ................................. 19

*Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); ................................................................. 29

**STATUTES**

11 U.S.C. §361 ...................................................................................... 24

11 U.S.C. §363 ...................................................................................... 17, 19

11 U.S.C. §363(a) ................................................................................... 8

11 U.S.C. §363(b) ................................................................................... 14, 32

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72260334.1

11 U.S.C. §363(b)(1) .................................................................................................. 18, 19, 27

11 U.S.C. §363(f) ................................................................................... 14, 21, 22, 24, 32

11 U.S.C. §363(f)(2) ....................................................................................................... 22, 26

11 U.S.C. §363(f)(3) ................................................................................................... 23, 24, 26

11 U.S.C. §363(f)(4) ........................................................................................................ 25, 26

11 U.S.C. §363(f)(5) ........................................................................................................ 26, 27

11 U.S.C. §363(k) ....................................................................................................................... 12

11 U.S.C. §363(k) ....................................................................................................................... 12

11 U.S.C. §363(m) ............................................................................................................ 27, 28, 32

11 U.S.C. §365 ............................................................................................................................. 13

11 U.S.C. §506(a) ........................................................................................................ 23, 24, 26

11 U.S.C. §506(d) ..................................................................................................................... 27

11 U.S.C. § 1107 ......................................................................................................................... 7

11 U.S.C. § 1108 ......................................................................................................................... 7

11 U.S.C. §1129 ........................................................................................................................ 30

11 U.S.C. §1146 ........................................................................................................................ 32

11 U.S.C. §1129(b)(2) ........................................................................................................ 26, 27

11 U.S.C. §1129(b)(2)(A)(ii) ............................................................................................. 26, 27

11 U.S.C. §1146(c) ............................................................................................................ 30, 31

**RULES**

Bankruptcy Rule 6004(h) .......................................................................................................... 31

Bankruptcy Rule 6006(d) .......................................................................................................... 31

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72260334.1

1    **PLEASE TAKE NOTICE** that on November 20, 2007, at 2:00 p.m. in Courtroom 5A of the

2    United States Bankruptcy Court, located at United States Bankruptcy Court, Central District of

3    California, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth

4    Street, Santa Ana, CA 92701-4593, a hearing shall be held on the Motion of MTI Technology

5    Corporation, Chapter 11 Debtor and Debtor in Possession ("Debtor" or "MTI") for an order,

6

7    pursuant to sections 105, 363(b), 363(f) and 365 of title 11 of the United States Code, 11 U.S.C.

8    §§ 101, et seq. (the "Bankruptcy Code") approving the sale (the "Proposed Sale" or "Sale") of

9    all of the authorized, issued and outstanding capital stock of each MTI Technology GmbH, MTI

10    Technology Limited, and MTI France S.A.S. and certain other assets of the Debtor as described

11    more fully below (collectively, the "Purchased Securities and Assets"), to, and the assumption of

12    certain liabilities of the Debtor (the "Assumed Liabilities"), by, Zinc Holdings, LLC, a Delaware

13    Limited Liability Company, (the "Buyer"), free and clear of all liens, claims and interests, with

14

15    such liens, claims, and interests to attach to the proceeds of the Sale (the "Sale Proceeds") with

16    the same validity (or invalidity) and priority as existed prior to the Sale, all pursuant to the terms

17    and conditions of, and as more particularly described in, that certain Purchase Agreement, dated

18    as of October 15, 2007, by and between the Debtor and the Buyer, substantially in the form of

19    the form of the Purchase Agreement attached hereto as **Exhibit A** (the "Purchase Agreement").

20    Pursuant to the terms of the Purchase Agreement, the Buyer has agreed to purchase the

21    Purchased Securities and Assets for an aggregate cash purchase price of $5,500,000, plus assume

22

23    certain liabilities (as set forth in Section 2.5 of the Purchase Agreement), plus pay 100% of any

24    transfer taxes that may be due in connection with the Sale (the "Purchase Price").

25          At a hearing held on October 16, 2007, the Court approved the Buyer as a stalking horse

26    bidder and approved the bidding procedures outlined below. As ordered by the Court, an auction

27    sale for the Purchased Securities and Assets (the "Auction") will take place on November 20,

A/72269506.1

2007 commencing at 2:00 p.m. (prevailing Pacific time) at the Court. At the conclusion of the

Auction, the Debtor will request the Court to approve the Debtor's sale of the Purchased

Securities and Assets to the winning bidder at the Auction (the "Winning Bidder").

Pursuant to the Purchase Agreement and the bid procedures order, all parties who wish to

participate in the Auction (other than the Buyer) are required to submit a deposit to Debtor's

counsel in the amount of $1,000,000. In the event that the Purchased Securities and Assets (or

substantially all thereof) are sold to a third party as an overbid purchaser, the Buyer shall be

entitled to receive from the Debtor's bankruptcy estate a break-up fee in the amount of $175,000

(the "Break-Up Fee") plus an expense reimbursement for the Buyer's actual expenses incurred in

connection with pursuing the Sale, not to exceed $150,000 (the "Expense Reimbursement").

Both the Break-Up Fee and the Expense Reimbursement shall be paid to the Buyer in cash

directly from the proceeds of the sale to the Winning Bidder as an administrative expense with

priority over any and all administrative expenses of the kind specified in Sections 503(b) or

507(b) of the Bankruptcy Code.

Other relevant bidding procedure terms are as follows:

1.      No prospective overbidder will be permitted to bid for the Purchased Securities

and Assets unless such party has been deemed "financially qualified" by the Debtor.

2.      Any initial overbid must be for consideration of at least $325,000 more than the

consideration being paid by the Buyer.

3.      After any initial overbid, each successive overbid must be in increments of at least

$50,000 (or figures which are wholly divisible by $50,000), and the Debtor, in its discretion, has

determined that such overbid satisfies such bidding increment requirement.

4.      If overbidding takes place, the Buyer shall have the right, but not the obligation,

to participate in the overbidding and be approved as the successful overbid buyer at the sale

1   hearing, and, pursuant to Bankruptcy Code section 363(k), the Buyer may credit all or any

2   portion of the amounts outstanding under the post-petition secured debtor in possession financing

3   it has extended to the Debtor toward any overbid the Buyer may choose to make, in its

4   discretion.

5       5.      Bankruptcy Court approval of the Purchase Agreement and the sale of the

6   Purchased Securities and Assets to the Buyer, or another prevailing overbidder, must occur by

7   December 15, 2007, with the closing to occur no later than December 21, 2007 after the entry of

8   the Bankruptcy Court order approving the sale.

9

10      No insider of the Debtor has any interest in or connection with the Buyer.

11      For all of the reasons set forth below and in the Declaration of Thomas Raimondi, Jr.

12  filed concurrently herewith, the Debtor believes that selling the Purchased Securities and Assets

13  to the Buyer or to the Winning Bidder at the Auction (in the event of a successful overbid) free

14  and clear of all liens, claims, encumbrances and interests is in the best interests of this estate.

15

16      The relief requested herein is based upon this Motion, [the annexed Memorandum of

17  Points and Authorities,] the Declaration of Thomas Raimondi, Jr., filed concurrently herewith in

18  support of the Motion, and the statements, arguments and representations of the Debtor and all

19  other parties in interest at the hearing on the Motion.

20

21      WHEREFORE, the Debtor respectfully requests that this Court:

22      1.      approve the sale of the Purchased Securities and Assets to the Winning Bidder

23  free and clear of all liens, claims, encumbrances and interests;

24      2.      find that the Winning Bidder is a good faith buyer entitled to all of the protections

25  afforded by Section 363(m) of the Bankruptcy Code;

26      3.      approve the Debtor's assumption and assignment to the Winning Bidder of all of

27  the Debtor's unexpired leases and executory contracts that the Winning Bidder wishes to take an

28

1  assignment of, [and approve the Debtor's rejection of all of the Debtor's other unexpired leases

2  and executory contracts effective as of the closing of the sale to the Winning Bidder];

3       4.    find that the cure amounts, if any, which must be paid in connection with the

4  Debtor's assumption and assignment of any of its unexpired leases and executory contracts as

5  may be set forth in the Motion;

6

7       5.    waive the 10-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d);

8  and

9       6.    grant such other and further relief as the Court deems just and proper.

10      **PLEASE TAKE FURTHER NOTICE** that any response or opposition to the above

11  motion must be filed and served, so as to be received by the Court and the Debtor, on or before

12  November 7, 2007, at 4:00 p.m.  Any objections to the assumption and assignment of executory

13  contracts and unexpired leases, or cure amounts, if any, must be filed on or before November 7,

14

15  2007, at 4:00 p.m.

16  Dated: October 22, 2007         CLARKSON, GORE & MARSELLA, APLC

17

18                          By:_____/s/_____
                                Scott C. Clarkson
19                              Eve A. Marsella
                                (Proposed) Attorneys for MTI Technology Corporation,
20                              Debtor and Debtor in Possession

21

22

23

24

25

26

27

28
                                            Notice of Motion and Motion to Sell Certain of Debtor's Assets
                                    5

1

## MOTION

2      MTI Technology Corporation, Chapter 11 Debtor and Debtor in Possession (the

3  "Debtor" or "MTI"), hereby moves this Court for an order pursuant to sections 105, 363(b),

4  363(f) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy

5  Code") approving the sale (the "Proposed Sale" or "Sale") of all of the authorized, issued and

6
7  outstanding capital stock of each MTI Technology GmbH, MTI Technology Limited, and MTI

8  France S.A.S. and certain other assets of the Debtor as described more fully below (collectively,

9  the "Purchased Securities and Assets"), to, and the assumption of certain liabilities of the Debtor

10  (the "Assumed Liabilities"), by, Zinc Holdings, LLC, a Delaware Limited Liability Company,

11  (the "Buyer"), free and clear of all liens, claims and interests, with such liens, claims, and

12
13  interests to attach to the proceeds of the Sale (the "Sale Proceeds") with the same validity (or

14  invalidity) and priority as existed prior to the Sale, all pursuant to the terms and conditions of,

15  and as more particularly described in, that certain Purchase Agreement, dated as of October 15,

16  2007, by and between the Debtor and the Buyer, substantially in the form of the form of the

17  Purchase Agreement attached hereto as **Exhibit A** (the "Purchase Agreement").  Pursuant to the

18  terms of the Purchase Agreement, the Buyer has agreed to purchase the Purchased Securities and

19  Assets for an aggregate cash purchase price of $5,500,000, plus assume certain liabilities (as set

20
21  forth in Section 2.5 of the Purchase Agreement), plus pay 100% of any transfer taxes that may be

22  due in connection with the Sale (the "Purchase Price").

23      This Motion is based upon the notice of this Motion (the "Notice"), the Motion, the

24  Declaration of Thomas Raimondi, Jr., (the "Raimondi Declaration") filed herein and the

25  Declaration of Thomas Raimondi, Jr. Regarding Pre-petition Marketing Activities (the

26  "Raimondi Marketing Declaration"), filed concurrently herewith, the exhibits to the Raimondi

27  Declaration and Raimondi Marketing Declaration, the pleadings and records filed with respect to

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72269506.1

1    this chapter 11 case, and such other argument and evidence presented to the Court at or before

2    the hearing with respect to the Motion. In further support of this Motion, the Debtor respectfully

3    represents as follows:

4    **I.    INTRODUCTION AND BIDDING PROCEDURES**

5    **A.    Commencement of the Debtor's Bankruptcy Case.**

6

7    The Case was commenced October 15, 2007 ("Petition Date") by the filing of a voluntary

8    petition under chapter 11 of the Bankruptcy Code.  The Debtor continues to manage its financial

9    affairs as a debtor in possession pursuant to 11 U.S.C. sections 1107 and 1108.

10

11    **B.    Background of the Debtor.**

12    The Debtor is a global provider of end-to-end information infrastructure solutions for mid

13    to large size companies. With more than 20 years experience in delivering innovative technology

14    solutions and more than 5 million hours of providing professional services, the Debtor is a leader

15    in end-to-end information infrastructure solutions that span analysis, design, implementation and

16    has strategic technology and services relationships with industry leaders including, EMC,

17    Microsoft, VMWARE, Symantec and Cisco.  The Debtor has three primary groups of assets at

18    this time:

19    (1)    European Subsidiaries – The Debtor owns all of the issued and outstanding capital

20    stock of each of MTI Technology GmbH, incorporated in Germany ("MTI Germany"), MTI

21    Technology Limited, incorporated in Scotland ("MTI UK"), and MTI France S.A.S.,

22    incorporated in France ("MTI France", and together with MTI Germany and MTI UK, the

23    "European Companies").

24    (2)    A U.S.-based service division known as "Collective", which was acquired by the

25    Debtor approximately 18 months ago.

26    (3)    A separate, U.S.-based sales and service division other than Collective.

27    **C.    The Debtor's  Primary Secured Obligations.**

28    The Debtor has two primary secured creditors, The Canopy Group, Inc. ("Canopy") and

A/72269506.1

1    Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit

2    operating division ("Wells Fargo"). Both of these secured creditors hold various security

3    interests in the Debtor's assets, encumbering all of the Debtor's assets. All of the Debtor's cash,

4    including the cash in its deposit accounts, wherever located, whether as original collateral or

5    proceeds of other Pre-petition Collateral (as defined herein), constitutes "Cash Collateral" within

6    the meaning of section 363(a) of the Bankruptcy Code.

7        (1)    The Wells Fargo Facility: Pursuant to that certain Account Purchase Agreement,

8    dated as of November 27, 2006 (as amended, supplemented, restated or otherwise modified prior

9    to the Petition Date, the "Wells Fargo Prepetition Agreement" and together with all other loan

10   and security documents executed in connection therewith, the "Wells Fargo Facility"), between

11   the Debtor and Wells Fargo Bank, National Association, acting through its Wells Fargo Business

12   Credit operating division ("Wells Fargo"), the Debtor sold and assigned to Wells Fargo certain

13   of its accounts receivable. Accounts sold to Wells Fargo under the Wells Fargo Facility become

14   the sole property of Wells Fargo upon payment of the initial payment for the account. However,

15   under certain circumstances, the Debtor is required to repurchase accounts sold to Wells Fargo.

16   To secure obligations of the Debtor under the Wells Fargo Facility, and pursuant to the terms of

17   the Wells Fargo Facility, the Debtor granted Wells Fargo a first priority security interest and lien

18   (the "Wells Fargo Lien") on the Debtor's then existing or thereafter arising accounts, the reserve

19   account established in connection with the Wells Fargo Facility, and, to the extent that they

20   pertain to such accounts, any contract rights, inventory, general intangibles, chattel paper,

21   documents, books and records, and the proceeds and products of the foregoing property (the

22   "Wells Fargo Collateral"). The Debtor is currently in default under the terms of the Wells Fargo

23   Facility. As of October 10, 2007, $1,711,670.04 remains outstanding in connection with the

24   Wells Fargo Facility (the "Wells Fargo Obligations").

25       (2)    The Canopy Facility: Pursuant to that certain Loan Agreement, dated as of June

26   27, 2002 (as amended, supplemented, restated or otherwise modified prior to the Petition Date,

27   the "Canopy Pre-petition Agreement" and, together with all other loan and security documents

28

A/72269506.1

1  executed in connection therewith, the "Canopy Facility"), Canopy guaranteed the Debtor's

2  performance and prompt payment when due of all of the Debtor's obligations under that certain

3  Loan and Security Agreement between the Borrower and Comerica Bank-California (the

4  "Comerica Line of Credit"), and secured its guarantee of the Comerica Line of Credit through a

5  Seven Million Dollar ($7,000,000) letter of credit issued by Bank of America, which letter of

6  credit was called by Comerica Bank-California prior to the Petition Date and used to satisfy in

7  full the Comerica Line of Credit.  To secure the Canopy Facility, and pursuant to the terms of the

8  Canopy Pre-petition Agreement, the Borrower granted Canopy a first priority security interest

9  and lien (the "Canopy Lien", and, together with the Wells Fargo Lien, the "Pre-petition Liens")

10  on all of Borrower's presently existing and after-acquired general intangibles, accounts

11  (including but not limited to accounts receivable), inventory, equipment, goods, fixtures, chattel

12  paper, documents (including but not limited to investment property), instruments and records

13  (except for the Released Accounts, the Released Inventory and certain other items of collateral as

14  more fully set forth in the Canopy Pre-petition Agreement) (hereinafter the "Canopy Collateral",

15  and, together with the Wells Fargo Collateral, the "Pre-petition Collateral"). As of the Petition

16  Date, $5,190,546.60 plus interest and attorneys' fees and costs remains outstanding in connection

17  with the Canopy Facility (the "Canopy Obligations", and, together with the Wells Fargo

18  Obligations, the "Pre-petition Obligations").

19  **D.    Significant Postpetition Events.**

20  Since the voluntary filing of this case on October 15, 2007, significant events in the

21  Debtor's chapter 11 case have included the following:

22  **1)    First Day Orders.** On October 16 and 18, 2007,  the Bankruptcy Court held first

23  day hearings (together, the "First Day Hearings") where it approved several emergency orders -

24  also known as "first-day" orders.  Among those orders was (i) an interim Order approving certain

25  proposed post-petition secured debtor-in-possession financing arrangements between the Debtor

26  and the Buyer, as lender (collectively, the "DIP Financing Agreement"), authorizing the Debtor

27  to borrow up to $1,000,000 on an interim basis (and up to $5,000,000 subject to a final order for

28

A/72269506.1

1  post-petition financing) from the Buyer (the "Interim DIP Financing") and (ii) an Order

2  approving the Buyer as stalking horse bidder for the Purchased Securities and Assets, approving

3  the form of Purchase Agreement to be used by potential overbidders, approving certain bidding

4  protections for the stalking horse bidder, and establishing bidding and auction procedures for the

5  Sale which is the subject of this Motion. Other "first-day" orders adopted by the Court included

6  orders providing for (1) maintenance of the Debtor's pre-petition bank accounts in addition to

7  DIP accounts; (2) limiting notice to certain creditors; (3) payment of certain pre-petition wages

8  and expense reimbursements to non-insider employees of the Debtor, up to the statutory level of

9  priority unsecured claim allowances; and (4) approving the employment of Omni Group LLC as

10  Noticing, Claims and Balloting Agent for the Clerk of the Court.

11      **2)    Approval of Sale Procedures.**

12      On October 16, 2007, the Debtor filed its Motion seeking an order: (a) approving (i)

13  Bidding Procedures with respect to the Auction, if any, (ii) the form of the Purchase Agreement,

14  and (iii) payment of the Break-Up Fee and Expense Reimbursement in accordance with the terms

15  of the Purchase Agreement; (b) approving the form and manner of notice of the Auction, Bidding

16  Procedures; (c) setting a hearing on the sale motion ("Sale Hearing"); (d) scheduling the Sale

17  Hearing for November 20, 2007 at 2:00 p.m. (prevailing Pacific time); and the fixing the

18  deadline for objections, if any, to the Asset Sale. ("Sale Procedures Order"). The Sales

19  Procedure Order was granted on the record at the First Day Hearing held on October 16, 2007

20  and entered shortly thereafter. Among the salient items approved in the Sale Procedures Order

21  are: (i) notice requirements in connection with this Motion, (ii) bidding procedures applicable to

22  any potential overbidder for the Purchased Securities and Assets and the Assumed Liabilities,

23  (iii) a Break-up Fee and Expense Reimbursement to be paid to the Buyer in the event that

24  another party successfully overbids the Buyer at the Auction and (iv) the scheduling of the

25  Auction and the Sale Hearing (November 20, 2007) for the Sale described in this Motion. The

26  bidding procedures approved by the Court are described in greater detail below.

27  ///

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

10

1    **E.    Reasons for the Sale.**

2    The Debtor has sought buyers for the Purchased Securities and Assets (as well as other of

3    its assets) for over eight months, and is now unable to continue its operations outside of Chapter

4    11 due to continuing financial losses, loss of its pre-petition revolving credit line and declared

5    defaults by its pre-petition secured lenders.  If a sale is not consummated with the Buyer under

6    and pursuant to the terms and conditions of the Purchase Agreement (or to an overbidder

7    pursuant to the terms of a higher and better offer), secured creditors Wells Fargo and The

8    Canopy Group would likely simply move to foreclose on each of their respective collateral,

9    likely resulting in their not being paid in full, and resulting in no funds being available thereafter

10    for any administrative, priority or general unsecured creditors.  In stark contrast, if the Proposed

11    Sale to the Buyer is authorized, the Debtor will have the structure (as contemplated by the

12    Interim DIP Financing and related Order of this Court, ) which could very well  result in the full

13    payment of Wells Fargo, the opportunity for Canopy to receive full claim recovery, and, the

14    Debtor is hopeful, provide an opportunity for payment to unsecured creditors as well. This

15    outcome is far superior to a Chapter 7 liquidation, under which all creditors of the Debtor would

16    likely receive little or nothing upon.

17    **F.    Summary of Proposed Sale.**

18    Pursuant to the terms and subject to the conditions of the Purchase Agreement, the Buyer

19    has offered to purchase (i) all of the issued and outstanding capital stock (the "Purchased

20    Securities") of each of MTI Technology GmbH, incorporated in Germany ("MTI Germany"),

21    MTI Technology Limited, incorporated in Scotland ("MTI UK"), and MTI France S.A.S.,

22    incorporated in France ("MTI France", and together with MTI Germany and MTI UK the

23    "European Subsidiaries") and (ii)  all amounts due from MTI Germany to Seller (the "MTI

24    Germany Payable"),as well as certain trademarks and domains (the "Purchased Assets", and,

25    together with the Purchased Securities, the "Purchased Securities and Assets").  Additionally, the

26    Buyer has agreed to assume the amounts due from the Debtor to MTI Germany, consisting of

27    $35,575 (as of September 25, 2007) incurred directly by the Debtor and $110,929 (as of

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

1    September 25, 2007) incurred by the Irish subsidiary of the Debtor and guaranteed or assumed

2    by the Debtor, as well as any obligations the Debtor may have to perform in connection with

3    installation services for Beazley USA under the purchase order with MTI UK dated June 22,

4    2007 (collectively, the "Assumed Liabilities"). Pursuant to the terms of the Purchase

5    Agreement, the Buyer has agreed to purchase the Purchased Securities and Assets for an

6    aggregate cash purchase price of $5,500,000, plus assume certain liabilities (as set forth in

7    Section 2.5 of the Purchase Agreement), plus pay 100% of any transfer taxes that may be due in

8    connection with the Sale (the "Purchase Price"). Pursuant to Bankruptcy Code section 363(k),

9    the Buyer may credit all or any portion of the amounts outstanding under the DIP Financing

10    Facility toward any overbid the Buyer may choose to make, in its discretion.

11    **G.    The Purchased Securities and Purchased Assets.**

12    Under the Purchase Agreement, the "Purchased Securities" mean all of the issued and

13    outstanding capital stock of the Companies held by Seller, consisting of one (1) share of MTI

14    Germany, all of the issued share capital of MTI UK, and all of the authorized share capital of

15    MTI France. The "Purchased Assets" mean the following:

16    i.    The MTI Germany Payable.

17    ii.    The trademarks listed on <u>Section 1.1(h)</u> of the Disclosure Letter, attached to the

18    Purchase Agreement.

19    iii.    The domain names listed on <u>Section 1.1(b)</u> of the Disclosure Letter, attached to the

20    Purchase Agreement.

21    iv.    To the extent transferable, the software licenses held by the Debtor and listed on

22    <u>Section 2.3(d)</u> of the Disclosure Letter, attached to the Purchase Agreement. The

23    Debtor may by written notice to the Buyer retain that number of licenses specified in

24    the notice that otherwise would be transferred if the Debtor requires, at Closing (as

25    defined in the Purchase Agreement), such licenses to operate the Debtor's's North

26    American business; and

27    v.    Those rights the Debtor may have as an agent of MTI UK to perform installation

28    

Notice of Motion and Motion to Sell Certain of Debtor's Assets

1     services for Beazley USA, under a purchase order between Beazley and MTI UK

2     dated as of June 22, 2007.

3     **H.    Excluded Assets.**

4          The Purchase Agreement makes clear that the Buyer is not purchasing, and the Debtor is

5     not selling, transferring, assigning or conveying the "Excluded Assets" to the Buyer, and that the

6     Debtor is retaining all right, title and interest to, in and under the Excluded Assets.  The Purchase

7     Agreement clearly identifies "Excluded Assets" as all of the assets of Seller other than the

8     Purchased Securities and Assets and Assumed Liabilities.

9     **I.    Assumption of Certain Liabilities.**

10         On the terms and subject to the conditions set forth in the Purchase Agreement, at the

11    Closing, the Buyer is assuming the amounts due from the Debtor to MTI Germany, consisting of

12    $35,575 (as of September 25, 2007) incurred directly by the Debtor and $110,929 (as of

13    September 25, 2007) incurred by the Irish subsidiary of the Debtor and guaranteed or assumed

14    by Debtor, and the obligations the Debtor may have to perform installation services for Beazley

15    USA under the purchase order with MTI UK dated June 22, 2007 (collectively, the "Assumed

16    Liabilities").

17    **J.    Excluded Liabilities.**

18         The Buyer is not assuming, and will not be liable for (and shall be deemed not to have

19    assumed or be liable for) any of the Liabilities (as defined in the Purchase Agreement) of or

20    attributable to the Debtor, including, without limitation, any taxes that may be payable by the

21    Debtor, other than for the Assumed Liabilities.

22    **K.    Executory Contracts and Assumed Liabilities.**

23         At this time, the Buyer has not identified any executory contracts or unexpired leases that

24    it will assume ("Assumed Contracts").  Thus, no executory contracts or unexpired leases are

25    being assumed and assigned by the Debtor.  If the Buyer decides to assume any executory

26    contracts or unexpired leases, the Buyer shall be solely responsible for demonstrating adequate

27    assurance of its future performance under the Assumed Contracts.  In the event of any

28                                                      Notice of Motion and Motion to Sell Certain of Debtor's Assets

                                           13

1   assumption, all defaults existing as of the Closing Date (as defined in the Purchase Agreement)

2   under the Assumed Contracts shall be cured, to the extent that the Debtor is required to cure such

3   defaults pursuant to the Purchase Agreement and section 365 of the Bankruptcy Code, and the

4   Assumed Contracts shall be assigned to the Buyer.

5       **L.    Court Approval.**

6       The Buyer's ultimate commitment to purchase the Purchased Securities and Assets, to

7   assume the Assumed Liabilities, and to take assignment of any Assumed Contracts is dependent,

8   among other things, upon the Court entering an order in form and substance reasonably

9   satisfactory to the Buyer approving the Sale and, among other things, finding that the Buyer has

10  acted in good faith (the "Sale Order"). As discussed in detail below, the Debtor believes that a

11  good faith finding is entirely appropriate in this case and supports and encourages the Court to so

12  order.

13      **M.    Free and Clear.**

14      Pursuant to 11 U.S.C. §§ 363(b) and (f), and as more particularly described in the

15  Purchase Agreement, the sale proposed by this Motion is free and clear of all liens, claims,

16  encumbrances and interests, with all such liens, claims, encumbrances and interests attaching to

17  the proceeds of the sale with the same validity (or invalidity) and priority as existed prior to the

18  sale. As discussed in detail below, the Debtor believes that a sale "free and clear" is entirely

19  appropriate in this case and supports and encourages the Court to so order.

20      **N.    Bidding Procedures.**

21      The Purchased Securities and Assets will be sold subject to the following bidding

22  procedures approved by the Bankruptcy Court in the Sale Procedures Order:

23      a.    **Minimum Initial Overbid Amount:** The minimum initial overbid is at least

24  $325,000 greater than the consideration set forth in the Purchase Agreement (including all cash,

25  non-cash consideration and assumed liabilities).

26      b.    **Subsequent Overbid Amounts:** Must be in increments of at least $50,000.

27      c.    **Bidder Prerequisites:** In order to become a qualified overbidder (a "Qualified

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

14

A/72269506.1

1    Bidder"), a potential overbidder must (A) execute a purchase agreement and its other

2    related agreements substantially in the same form as the Purchase Agreement, its related

3    agreements and any other agreements executed by the Buyer and the Debtor in

4    connection with the proposed Asset Sale, and acknowledge that the Deposit submitted by

5    such bidder will be forfeited to the Debtor if it breaches such agreement (all in

6    accordance with the terms and conditions of the Purchase Agreement), (B) submit a

7    purchase agreement and other agreements in substantially the same form as the Purchase

8    Agreement and other agreements executed by the Buyer and the Debtor, marked to show

9    any changes between its overbid and the Purchase Agreement, to counsel for the Buyer,

10    the Debtor and the creditors' committee, if any, (C) submit evidence, reasonably

11    satisfactory to the Debtor and the creditors' committee, if any, of such bidder's financial

12    ability to close the transaction promptly upon the entry of the Court's Order granting the

13    Motion, and (D) tender the Deposit, in immediately available U.S. funds, as defined and

14    described in subsection (h) below, no later than seven (7) days prior to the auction.  If a

15    competing bidder becomes the winning bidder, such deposit shall be non-refundable

16    (except in accordance with the terms and conditions of the Purchase Agreement.)

17    d.    **Notification of Qualified Bidders:**  Promptly after deadline for qualifying

18    bidders, the Debtor shall promptly notify all Qualified Bidders (including the Buyer,

19    which is deemed to be a Qualified Bidder) of the names of all Qualified Bidders, and

20    provide all Qualified Bidders with copies of all agreements submitted in accordance with

21    the preceding paragraph.

22    e.    **Information and Due Diligence:**  Upon the execution of a non-disclosure

23    agreement, the Debtor shall provide reasonable access to relevant documents, information

24    and data to parties seeking to evaluate the Purchased Securities and Assets for purchase;

25    provided that any such due diligence must be completed on or before the date of the

26    Auction (in respect of which time is of the essence).  The Debtor reserves the right, in its

27    sole discretion, to decline to provide information to any party, for any reason, including

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

15

1   to any party who fails to provide sufficient evidence to the Debtor that it might be able to

2   become Qualified Bidders.

3   f.   **Bid Deadline and Bid Requirements:**  All bids must be submitted in writing to

4   (i) counsel to the debtor, Scott Clarkson, Esq., Clarkson, Gore & Marsella, 3424 Carson

5   Street, Suite 350, Torrance, CA 90053, fax no. (310) 214-7254; and (ii) to counsel to the

6   Buyer, Bingham McCutchen LLP, 355 South Grand Avenue, Los Angeles, California

7   90071, Attention: William Govier, Esq., fax no (213) 830-8624 and Bingham McCutchen

8   LLP, 1900 University Ave., E. Palo Alto, CA 94303, Attention: William Bates, Esq., fax

9   no (650) 849-4605, no later than seven (7) days prior the Sale Hearing, which is

10  scheduled for November 20, 2007 ("Bid Deadline"). Bids from parties that are not

11  Qualified Bidders will be disregarded.

12  g.   **Qualified Bids**:  A "Qualified Bid" is a legally binding offer from a Qualified

13  Bidder not subject to financing contingencies or other material conditions other than

14  those set forth in the Purchase Agreement.  The Purchase Agreement is a Qualified Bid.

15  h.   **Deposit:**  In order to qualify, any prospective, other than the Buyer, must tender

16  to the Debtor on or before the Bid Deadline, a bank check, teller's check or wire transfer

17  in a sum not less than $1,000,000 (the "Deposit").  The Deposit shall be held until closing

18  of the Asset Sale (at which time such payment shall be credited against the purchase price

19  if such offer is accepted).  The Deposit shall be held by counsel to the Debtor in a client

20  trust account.  In the event that the successful bidder fails to consummate the Sale for any

21  reason other than the failure of the Debtor to obtain an order from the Court approving

22  the offer, the Debtor shall be entitled to the remedies provided in the Purchase

23  Agreement.

24  i.   **Auction; Bidding Increments; and Bids Remaining Open.**  If the Debtor

25  receives one or more Qualified Bid(s) by the Bid Deadline, the Debtor will conduct an

26  auction (the "Auction") at the Sale Hearing or such other time or other place as

27  determined by the Debtor and noticed to all Qualified Bidder(s) who have submitted

28

A/72269506.1

1    Qualified Bids prior to the Bid Deadline.  Subject to the provisions set forth in this

2    Section, in order for any Qualified Bid(s) to be considered at the Auction, such Qualified

3    Bid(s) (i) must provide for the purchase of the Purchased Securities and Assets and the

4    assumption of the Assumed Liabilities and must be upon and subject to the same or better

5    terms and conditions as those contained in the Purchase Agreement, (ii) must not be

6    subject to financing, and (iii) must provide adequate assurance, satisfactory to the Debtor,

7    of such Qualified Bidder(s) financial ability to consummate the Sale in accordance with

8    the terms and conditions of the Purchase Agreement in the event that its or their Qualified

9    Bid(s) are accepted as "higher and better" than the bid of the Buyer and must

10   demonstrate, and provide adequate assurance satisfactory to the Debtor, of such Qualified

11   Bidder(s) ability to perform under the contracts and other liabilities to be assumed under

12   the Purchase Agreement.  No Qualified Bidder who bids for the Purchased Securities and

13   Assets and the Assumed Liabilities shall be entitled to purchase the Purchased Securities

14   and Assets and assume the Assumed Liabilities unless such Qualified Bidder offers to

15   purchase the Purchased Securities and Assets for consideration which is at least $325,000

16   greater than the consideration set forth in the Purchase Agreement (including all cash,

17   non-cash consideration and assumed liabilities) and otherwise on terms at least as

18   favorable to the Debtor's estate as those set forth in the Purchase Agreement. After any

19   initial overbid, each successive overbid must be in increments of at least $50,000 or

20   figures which are wholly divisible by $50,000, and the Debtor shall, in the Debtor's

21   discretion, have determined that such overbids satisfy such bidding increment

22   requirement.  The Buyer is permitted to exercise its rights to credit bid any or all of the

23   amounts outstanding under the DIP Financing Agreement toward the Purchase Price.

24   Bidding at the Auction will continue until such time as the highest and best offer is

25   determined by the Debtor.  The Debtor may adopt rules for the bidding process that, in its

26   reasonable judgment, will better promote the goals of the bidding process and that are not

27   inconsistent with any of the provisions of the Bidding Procedure Order.

28

A/72269506.1

1    Upon the conclusion of the Auction, the Debtor shall review the Qualified Bid(s)

2    on the basis of, among other things, the following (a) the amount of the Qualified Bid(s),

3    (b) the form of consideration, (c) the form of the proposed transaction, (d) the ability to

4    obtain approval from this Court and other required approvals for the sale and close in a

5    timely fashion, and (e) the net value provided to the Debtor and such other aspects as

6    determined by the Debtor and shall submit the highest or otherwise best bid for approval

7    by the Court pursuant to § 363 of the Bankruptcy Code.  Qualified Bid(s) submitted by

8    the Bid Deadline shall remain open and irrevocable through eleven (11) days after the

9    entry of the Approval Order.  Upon failure to consummate the Sale with such next

10   highest or otherwise best Qualified Bidder, Debtor may close the sale with the next best

11   Qualified Bidder (Buyer, if there is no better Bid); but, in such event, Debtor shall retain

12   its rights against any prior Qualified Bidder.  If the Debtor does not receive any Qualified

13   Bids by the Bid Deadline, other than from the Buyer, the Debtor will report the same to

14   the Court and will proceed with the Sale to the Buyer pursuant to the terms and

15   conditions of the Purchase Agreement.

16

17   **II.    THE SALE OF THE PURCHASED SECURITIES AND ASSETS TO THE**

18   **BUYER OR ANOTHER QUALIFIED BIDDER AND THE ASSUMPTION**

19   **AND ASSIGNMENT OF CONTRACTS AND LEASES SHOULD BE**

20   **APPROVED**

21   **A.    The Proposed Sale  Satisfies the Business Judgment Test and Is in the Best**

22   **Interests of the Debtor's Estate and its Creditors.**

23

24   Pursuant to Bankruptcy Code § 363(b)(1), the Debtor, after notice and a hearing, may

25   use, sell, or lease property, other than in the ordinary course of business.  The Debtor's

26   application of its sound business judgment in the use, sale, or lease of property is subject to great

27   judicial deference. *See, e.g., In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990; *In re Canyon*

28

A/72269506.1

1    *Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985.  In determining whether any sale of assets out

2    of the ordinary course of business should be approved, bankruptcy courts usually consider the

3    following factors:

4
    (1)    Whether a sufficient business reason exists for the sale;

5
    (2)    Whether the proposed sale is in the best interest of the estate, which in turn
           consists of the following factors:

6
          (a)    that terms of the sale are fair and reasonable;
          (b)    that the proposed sale has been adequately marketed;

7
          (c)    that the proposed sale terms have been properly negotiated and proposed in
              good faith; and

8
          (d)    that the purchaser is involved in an "arms-length" transaction with the
              seller; and

9
    (3)    Whether notice of the sale was sufficient.

10    *See, generally, In re Walter*, 83 B.R. 14, 19-20, (B.A.P. 9th Cir. 1988) ("there must be some

11    articulated business justification for using, selling, or leasing the property outside the ordinary

12    course of business…whether the proffered business justification is sufficient depends on the facts

13    of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all

14    salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of

15
16    the debtor, creditors and equity holders, alike….").[1]   In interpreting Bankruptcy Code

17    §363(b)(1), courts have held that a transaction involving property of the estate generally should

18    be approved so long as the debtor can demonstrate "some articulated business justification for

19    _____

20    [1]   *See also In re American Development Corp.*, 95 B.R. 735 (Bankr. C.D. Cal. 1989) (the
following factors are relevant concerning whether a section 363(b) transaction should be

21    authorized: (1) has the debtor satisfied the business judgment test by demonstrating good and
sound business reasons for the proposed transaction; (2) is the proposed transaction in the

22    best interests of creditors; (3) is the proposed transaction premature; (4) does the debtor have
other options available to reorganize; (5) will a proposed transaction facilitate a plan of

23    reorganization); *In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo.
1990) (sale of substantially all of the estate's assets may be appropriate upon (1) the showing

24    of sound business purpose; (2) accurate and reasonable advance notice of the proposed sale;
(3) fair and reasonable price; and (4) no unfair benefit to insiders to the prospective

25    purchasers or to any creditor or class of creditors); *In re Phoenix Steel Corp.*, 82 B.R. 334,
335-356 (Bankr. D. Del. 1987) (In determining whether a proposed sale of equipment was

26    proper under section 363, court considered whether the terms of proposed sale were fair and
equitable, whether there was a good business reason for completing the sale and whether the

27    transaction was proposed in good faith); *In re Alves*, 52 B.R. 353 (Bankr. D.R.I. 1985)
(factors concerning whether sale of property under section 363 should be approved

28    concerned integrity of sale and the best interest of bankruptcy estate).  Sell Certain of Debtor's Assets

1  using, selling, or leasing property outside of the ordinary course of business." *In re Continental*

2  *Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063,

3  1071 (2d Cir. 1983); *Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988); *In*

4  *re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).  The factors a court

5  should consider include, *inter alia*, the consideration to be paid, the financial condition and needs

6  of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to

7  be sold would decline in value if left in the debtor's possession. *See Equity Funding Corp. of*

8  *America v. Financial Associates (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir.

9  1974). *See also, In re Work Recovery, Inc.*, 202 B.R. 301 (Bankr. D. Ariz. 1996).

10       As evidenced in the Raimondi Declaration, the Debtor has considered, and meets, each of

11  the relevant factors with respect to the Proposed Sale and has articulated numerous reasonable

12  business justifications in support of the same.  Among the clear business justifications are the

13  reasons set forth below.

14       **B.    There is a Substantial Business Justification for the Sale.**

15       As stated above, the seminal case for a sale of a substantial portion of the Debtor's assets

16  outside the ordinary course of business is *In re Lionel Corp., supra.*  That case requires a

17  business justification for the sale.  The Raimondi Declaration makes it abundantly clear that the

18  sale is necessary to provide any distribution to unsecured creditors of the estate. The Debtor's

19  inability to successfully continue its ongoing operations mandate a sale of its business, in whole

20  or in part, in order to maximize the return to all creditors in this case.

21       Given that the Debtor believes, after extensive review of alternatives, that a sale of the

22  Purchased Securities and Assets is in the best interests of the estate and its creditors, the Debtor

23  respectfully submits that a prompt sale is reasonable and appropriate and should be approved.

24  ///

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72269506.1

## C.    Adequacy of the Purchase Price.

As set forth in the Raimondi Declaration and the accompanying Raimondi Marketing Declaration filed concurrently with this Motion, the Debtor believes that, in the sound exercise of its business judgment, under the present circumstances, the Purchase Price represents objectively fair value for the Purchased Securities and Assets.  First, as described in detail above and in the Raimondi Marketing Declaration, the Purchased Securities and Assets were extensively marketed by the Debtor.  Second, the Buyer's offer was the best the Debtor could obtain in the marketplace, and constitutes an objectively fair price for the Purchased Securities and Assets.  Moreover, the adequacy of the Purchase Price will be tested through the overbid process.

## D.    Other Factors.

The Raimondi Declaration also establishes that the Sale is in the best interests of the estate.  First of all, the Sale represents the highest and best offer received by the Debtor.  As such, the Sale establishes the value of the Purchased Securities and Assets and enables the Debtor to capture the value of the business for those creditors who have an "economic interest" in the business.  In other words, even though the Sale may not generate sufficient proceeds to pay creditors in full, it does generate the most proceeds obtainable and thus protects those creditors with an economic stake in the outcome.

Second, the terms of the Sale are fair and reasonable.  The Buyer has offered the highest value of any bidder contacted by the Debtor.

Third, the Purchase Agreement has been negotiated at arm's length and in good faith by all parties over a series of weeks and has been consented to by both of the Debtor's primary prepetition secured lenders.  There are no hidden or undisclosed deals or understandings between or among the Debtor, the Debtor's management or the Buyer.

Finally, consistent with the Sale Procedures Order, notice of this Motion has been given

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72269506.1

1   to all significant creditors and other parties in interest.

2       In sum, the totality of the circumstances requires a sale and requires that the Sale close

3   promptly. The alternative would be the immediate cessation of the Debtor's remaining

4   operations, to be followed by a liquidation of the Debtor's assets, which would go only to one

5   secured creditor, Wells Fargo, and most likely nothing to The Canopy Group or any of the

6   estate's unsecured creditors.

7

8       **E.    The Court's Order Should Authorize and Provide for the Sale of the Debtor's**

9   **Right, Title and Interests in the Purchased Securities and Assets Free and Clear of Liens,**

10  **Claims, Encumbrances and Interests.**

11      Bankruptcy Code § 363(f) expressly authorizes a debtor to sell property out of the

12  ordinary course of business "free and clear of any interest in such property of an entity," if any

13  one of the five following conditions is met:

14

15      (1) applicable non-bankruptcy law permits sale of such property free and clear of such
        interest;
16      (2)     such entity consents;
        (3)     such interest is a lien and the price at which such property is to be sold is greater
17      than the aggregate value of all liens on such property;
        (4)     such interest is in bona fide dispute; or
18      (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a
        money satisfaction of such interest.

19  *11 U.S.C. § 363(f).*

20      Courts have uniformly held that since Bankruptcy Code §363(f) is written in the

21  "disjunctive," any of the five conditions, including the "consent" of lienholders, provides

22  authority to sell free and clear of encumbrances. *See Citicorp Homeowners Services, Inc. v.*

23  *Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Debtor believes that one or more of

24  the tests of Bankruptcy Code Section 363(f) are easily satisfied with respect to the proposed sale

25  of the Purchased Securities and Assets. In particular, the Debtor believes that any lienholder will

26  be adequately protected by having their liens, if any, attach to the cash proceeds ultimately

27

28

A/72269506.1

1    attributable to the Purchased Securities and Assets in which such creditor alleges and interest, in

2    the same order of priority, with the same validity, force and effect that such creditor had prior to

3    the sale, subject to any claims and defenses the Debtor and its estate may possess with respect

4    thereto.  Accordingly, the Debtor seeks to sell the Purchased Securities and Assets free and clear

5    of all putative liens, claims, encumbrances and/or interest of all claimants and lienholders, and

6

7    requests that the Court enjoin such claimants from pursuing claims against the Buyer after

8    Closing of the Sale.

9         **F.**    **Consent to the Sale; Bankruptcy Code § 363(f)(2).**

10         Bankruptcy Code § 363(f)(2) permits a sale "free and clear" if the entity asserting a lien

11    or other interest consents.  To the extent a putative secured creditor or lienholder that receives

12    notice does not file a written objection to this Motion, such party should be deemed to have

13    consented to the sale of the Purchased Assets at the Sale Hearing.  *See In re Channel One*

14    *Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990).  The Debtor believes all such

15    parties, if any, have consented or will consent to the Sale prior to the Sale Hearing. More

16    particularly, as noted herein, both of the Debtor's pre-petition secured creditors (Wells Fargo and

17    The Canopy Group) consent to and support the Sale to the Buyer.

18         **G.**    **The Purchase Price Equals and Exceeds the Aggregate Value of the**

19    **Encumbrances on the Property; Bankruptcy Code § 363(f)(3).**

20         Bankruptcy Code § 363(f)(3) permits a sale free and clear of liens if the purchase price

21    exceeds "the aggregate value of all liens on the property."  Under section 363(f)(3), the purchase

22

23    price must be sufficient to ensure that the value of the liens is adequately protected.  *In re Beker*

24    *Industries Corp.*, 63 B.R. 474, 476 (Bankr. S D. N.Y. 1986); *In re Terrace Gardens Park*

25    *Partnership*, 96 B.R. 707, 713 (Bankr. W.D. Tex. 1989).

26         The salient provision of Bankruptcy Code § 363(f)(3) is "the aggregate value of all liens

27

28

A/72269506.1

1    on the property." (Emphasis added). Bankruptcy Code § 506(a) equates the value of a secured

2    claim to the value of the collateral securing the claim. Because the value of the lien cannot

3    exceed the fair price of the collateral, courts regularly permit sales free and clear of liens so long

4    as the proposed sale is justified by the circumstances and the sale price is a fair market price. *See*

5
6    *Beker* at 477 (Bankr. S.D.N.Y. 1986) (holding that "collateralized property might be sold for less

7    than the amount of a lien over the objection of a secured creditor where justified by special

8    circumstances...."); *see also, In re Hatfield Homes, Inc.*, 30 B.R. 353, 355 (Bankr. E.D. Pa. 1983)

9    ("if the proposed sale price is the best price obtainable under the circumstances of a particular

10   case, then the fact that junior lienholders may receive little or nothing from the proceeds of the

11   sale would not, standing alone, constitute reason for disapproving the proposed sale.").

12        The weight of authority is consistent with *Beker* on this issue, interpreting Bankruptcy

13
14   Code §363(f)(3) to mean that the sale price need only exceed the <u>value</u> of all liens, i.e., the value

15   of the collateral, <u>not</u> the amount of all claims held by creditors with liens on the property. *In re*

16   *Terrace Gardens Park Partnership, supra*; *In re Collins*, 180 B.R. 447, 450-51 (Bankr. E.D. Va.

17   1995) (value as used in §363(f)(3) is defined by reference to §506(a)); *In re Equity Management*

18   *Systems*, 149 B.R. 120 (Bankr. S.D. Iowa 1993) (same); *In re Milford Group, Inc.*, 150 B.R. 904,

19   906 (Bankr. M.D. Pa. 1992) (same); *In re Oneida Lake Development, Inc.*, 114 B.R. 352, 356-57

20   (Bankr. N.D.N.Y. 1990) (same); *In re Rouse*, 54 B.R. 31 (Bankr. W.D. Mo. 1985).

21
22        Finally, interpreting § 363(f)(3) to mean that the sale price need only be the fair market

23   value of the property is thoroughly consistent with the treatment of secured claims throughout

24   the Bankruptcy Code. Sections 361 through 364 of the Bankruptcy Code deal with the treatment

25   of secured claims. The threshold question which must be resolved under each of these four

26   sections for a court to approve an action is whether the secured party's interest is adequately

27   protected. Adequate protection relates to the value <u>of the collateral, not the value of the debt.</u> 11

28                                        Notice of Motion and Motion to Sell Certain of Debtor's Assets
                                          24

A/72269506.1

1    U.S.C. § 361.  It would be illogical to read § 363(f)(3) so that it contains a restriction inconsistent

2    with the adequate protection scheme in the rest of the Bankruptcy Code.  As the *Terrace*

3    *Gardens* court stated:

4
> It makes no sense to read into Section 363(f)(3) a restriction inconsistent with the
5    > adequate protection scheme which pervades both Section 363 and the rest of the
> Code, just because the sale is free of liens, especially as the commonly accepted
6    > method for adequately protecting a secured creditor when a sale is authorized under
> Section 363(f) is to order the liens to attach to the proceeds of the sale.  In any
7    > event, a secured creditor who disagrees with the proposed price has recourse to
> Section 363(k) which permits it to bid in its lien (just as it might in a foreclosure
8    > sale) to head off the sale.

9
10   *Terrace Gardens*, 96 B.R. at 713 (citations omitted).

11   As another judge stated in approving a sale:

12   > [t]he well reasoned opinion of Bankruptcy Judge Howard Buschman, III, in *In re
> Beker Industries Corp.*, . . . supports the concept that the **value** and not the **amount**
13   > of the liens is what the Court must look to in applying Code §363(f)(3) . . . while
> Judge Buschman acknowledges that there is significant authority to the effect that
14   > value as used in Code § 363(f)(3) is synonymous with amount, this Court believes
> that the Beker analysis comports with Congressional intent in utilizing the term
15   > 'value' versus the term amount in the statute.

16   *Oneida Lake Development*, 114 B.R. 352, 356-357 (Bankr. N.D.N.Y. 1990) (emphasis added).

17         In this case, both of the Debtor's pre-petition secured creditors (Wells Fargo and The

18   Canopy Group) support the Sale to the Buyer, and thus compliance with § 363(f)(3) is

19   unnecessary for purposes of this motion.  However, even if unnecessary, compliance with §

20   363(f)(3) is met.  As evidenced by the Raimondi Marketing Declaration, the Purchased

21   Securities and Assets have undergone significant marketing activities over the past year.  The

22   
23   present sale price of $5,500,000 is the highest and best true offer received by the Debtor, and is

24   the established fair market value at this time.  Further, the sale is justified under the present

25   circumstances, since the sale is the last, best chance for creditors to receive a distribution in this

26   case.

27   ///

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

A/72269506.1

1    **H.    Bona Fide Dispute; Bankruptcy Code § 363(f)(4).**

2        The Debtor does not dispute the liens held by Wells Fargo and The Canopy Group and

3    does not believe that any other known liens attaching to the Purchased Securities and Assets are

4    in bona fide dispute. Also, any unknown lien claims (which by their nature are unsupported by

5    any books and records of the Debtor) are disputed.

6

7        Bankruptcy Code § 363(f)(4) authorizes a sale of assets free and clear of liens in the

8    event a creditor makes an erroneous claim of lien with respect to assets that are not properly

9    subject to such lien. Pursuant to Bankruptcy Code § 363(f)(4), a sale of property may be made

10   "free and clear of any interest in such property of an entity other than the estate" if such interest

11   is in <u>bona fide</u> dispute. *See, e.g., In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1981)

12   (sale may proceed free and clear of liens if there is an objective basis for either a factual or legal

13   dispute as to validity of security interest); *In re Olympia Holding Corp.*, 129 B.R. 679 (Bankr.

14   N.D. Fla. 1991) (leased equipment may be sold free and clear of lessors interest if the lease is

15

16   subject to a <u>bona fide</u> dispute such that it could interpreted as an installment sales contract).

17       Except for the security interests of Wells Fargo and The Canopy Group detailed herein,

18   the Debtor views any lien claim asserted with respect to any portion of the Purchased Securities

19   and Assets to be "disputed" for purposes of Bankruptcy Code § 363(f)(4). Accordingly, a sale

20   free and clear of liens is appropriate to the extent any party in interest asserts a lien against any

21

22   portion of the Purchased Securities and Assets. Such lien claims, if any, will be protected by

23   virtue of the Court's Order which will provide that such liens will attach to proceeds of the Sale

24   with the same validity or invalidity and priority as existed prior to the Sale.

25   ///

26   ///

27   ///

28

A/72269506.1

1  **I.    Lienholders May Be Compelled to Accept a Money Judgment; Bankruptcy**

2  **Code § 363(f)(5).**

3      Even if circumstances did not exist to warrant approval of the sale free and clear of liens

4  pursuant to Bankruptcy Code §§ 363(f)(2), (f)(3) or (f)(4), such authority is independently

5  justified under Bankruptcy Code § 363(f)(5), which provides that assets may be sold free and

6  clear of liens if the holders "could be compelled, in a legal or equitable proceeding, to accept a

7  money satisfaction of [their] interest[s]".  11 U.S.C. § 363(f)(5)

8      Bankruptcy Code §1129(b)(2) permits a debtor or trustee to retain property and

9  cramdown objecting creditors upon payment of the actual value of the collateral.  *See, e.g., In re*

10  *Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993) (creditor who could be

11  crammed down under § 1129(b) could be compelled to accept a money satisfaction of his interest

12  under § 363(f)(5)); *In re Perroncello*, 170 B.R. 189, 191 (Bankr. D. Mass. 1994) (same); *In re*

13  *Hunt Energy Co., Inc.*, 48 B.R. 472, 485 (Bankr. N.D. Ohio 1985) (same); *In re Weyland*, 63

14  B.R. 854, 859-861 (Bankr. E.D. Wisc. 1986) (same); *In re Red Oak Farms, Inc.*, 36 B.R. 856,

15  858 (Bankr. W.D. Mo. 1984)  In addition, Bankruptcy Code §1129(b)(2)(A)(ii) permits the sale

16  free and clear of liens with liens to attach to proceeds.

17      To the extent liens are asserted, each and every putative holder of a lien could clearly be

18  compelled to accept a monetary satisfaction of its claims pursuant to Bankruptcy Code §

19  1129(b)(2).  Bankruptcy Code § 506(a) limits the amount of a secured claim to the value of the

20  collateral securing the lien, and renders the lien void to the extent that it secures a claim in excess

21  of the value of such collateral.  As a result, a fair price for the collateral itself establishes the

22  maximum amount of a creditor's secured claim.  In addition, under Bankruptcy Code §

23  1129(b)(2)(A)(ii), a secured creditor's collateral may be sold free and clear of liens with liens to

24  attach to proceeds.  Therefore, there is no question that holders of liens could be compelled to

Notice of Motion and Motion to Sell Certain of Debtor's Assets

27

1  accept money satisfaction of their interests under Bankruptcy Code §§ 1129(b)(2) and 506(d).

2      Because the Debtor will be obtaining a fair price in a good faith arm's length transaction

3  at the Auction, the Proposed Sale satisfies Bankruptcy Code § 363(f)(5) and should be approved.

4  **J.   The Court Should Find the Transactions Set Forth in the Purchase Agreement**

5  **to Be in Good Faith.**

6

7      "[W]hen a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is

8  required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts*

9  *Diaries, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986).  The purpose of such a finding is to facilitate

10  the operation of Bankruptcy Code § 363(m), which provides a safe harbor for purchasers of a

11  debtor's property when the purchase is made in "good faith."  Specifically, Bankruptcy Code

12  § 363(m) provides:

13

14      The reversal or modification on appeal of an authorization under subsection (b) or
       (c) of this section of a sale or lease of property does not affect the validity of the
       sale or lease under such authorization to an entity that purchased or leased such
15      property in good faith, whether or not such entity knew of the pendency of the
       appeal, unless such authorization and such sale or lease were stayed pending
16      appeal.

17

18  11 U.S.C. § 363(m); *see Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Irvin*

19  *v. Lincoln Heritage Life Ins. Co. (In re Irvin)*, 950 F.2d 1318, 1323 (7th Cir. 1991).  This

20  provision serves the important purposes both of encouraging good faith transactions and of

21  preserving the finality of the bankruptcy court's orders unless stayed pending appeal.  *In re*

22  *Abbotts Dairies, Inc.*, 788 F.2d at 147; *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*,

23  724 F.2d 52, 55 (7th Cir. 1983).  As the Seventh Circuit recognized in *In re Edwards*, 962 F.2d

24  641, 643 (7th Cir. 1992), "[i]f purchasers at judicially approved sales of property of a bankrupt

25  estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to

26  liquidate bankrupt estates at positive prices."  The Court also noted that although the law

27

28

A/72269506.1

1   balances the competing interests between lien holders and purchasers of assets of the estate, it

2   weighs such interests "heavily in favor of the bona fide purchaser," *Id.* at 643, particularly

3   where, as here, there are substantial business justifications for the proposed transactions.

4       In this case, it is clear that the Buyer is entitled to the safe harbor provided by Bankruptcy

5   Code § 363(m). Indeed, the negotiations between the Buyer and the Debtor at all times were

6   conducted at arm's length and in good faith, there are no side-agreements, arrangements, or

7   understandings between the Debtor and the Buyer other than as contemplated by the Purchase

8   Agreement, and all of the consideration to be paid by the Buyer and received by the Debtor is as

9   is fully disclosed and set forth in the Purchase Agreement and its related documents filed with

10   the Court. In short, there is no consideration for the Purchased Securities and Assets or in

11   connection with the Proposed Sale other than as fully disclosed and set forth in the Purchase

12   Agreement and its related documents.

13       The Buyer is not an insider of the Debtor. Throughout the negotiations of the Proposed

14   Sale, the Debtor exercised its sound business judgment and acted with the intent of obtaining the

15   best possible deal for its estate, both in terms of maximizing value and in structuring a

16   transaction that best comports with the Debtor's financial and business needs.

17       As set forth herein, the terms of the Proposed Sale accomplish these appropriate

18   objectives. Thus, if the Court approves the transactions as requested herein, it should also invoke

19   Bankruptcy Code § 363(m) to protect the good faith actions of the parties from further delay and

20   prejudice in the event this Court's order were appealed without a stay.

**K.    The Purchase Agreement Does Not Constitute an Improper "Sub Rosa" Plan.**

    The focus of a "sub rosa" plan analysis is almost exclusively oriented toward those

situations in which a debtor proposes to sell "all," or "substantially all," of its assets without the

benefit of a confirmed plan or a court-approved disclosure statement. *See e.g., Stephens Indus.,*

Notice of Motion and Motion to Sell Certain of Debtor's Assets

29

A/72269506.1

1   *Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *Pension Benefit Guaranty Corp. v.*

2   *Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983); *In re Equity Management Systems*, 149

3   B.R. 120, 124 (Bankr. S.D. Iowa 1993); *In re Engineering Products Co.*, 121 B.R. 246, 249

4   (Bankr. E.D. Ark. 1990); *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99 (Bankr. E.D. Mo.

5   1990); *In re Channel One Communications, Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990).

6

7        In *Equity Management Systems, supra*, the court set forth four factors to be considered in

8   deciding whether to approve a sale of all or substantially all of a debtor's assets:

9        (a)    Whether accurate and reasonable notice has been given to all creditors and parties
         n interest;
10       (b)    Whether there is a sound business reason for the sale without a disclosure
         statement and plan;
11       (c)    Whether the purchase price is fair and reasonable;
         (d)    Whether the proposed sale unfairly benefits insiders or proprietary purchasers, or
12       unfairly favors a creditor or class of creditors.

13  *Equity Management Systems*, 149 B.R. at 124 (citing *Titusville Country Club v. Pennbank (In re*

14  *Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re George Walsh*

15  *Chevrolet*, 118 B.R. at 101.  Similarly, when considering such a transaction, the court in

16  *Engineering Products, supra*, noted:

17

18       Of particular importance is the existence of good faith -- of full disclosure and fair
         dealing on the part of all interested parties.  In addition, due process requirements
         must be addressed.  Persons in interest must be given adequate notice of the sale
19       and an opportunity to be heard and to object.  The decision in each case must be
         fact-specific.

20

21  *Engineering Products*, 121 B.R. at 249.

22       The Proposed Sale satisfies all of the factors listed above:  First, as noted, extensive

23  notice has been given to all known parties in interest. Second, as stated above, there is a sound

24  business justification for the sale. Third, the fairness of the Purchase Price will be further tested

25  through the overbid process.  Fourth, the Purchase Agreement does not attempt to settle or

26  resolve claims, alter established priorities, or fix distributions among competing classes of

27  claims.  Therefore, nothing in this Motion or the Purchase Agreement restricts the ability of the

28

A/72269506.1

1  Debtor to propose a particular plan.  And finally, the Proposed Sale does not unfairly benefit any

2  insider; nor does it unfairly favor any creditor or class of creditors.  Indeed, the Purchase

3  Agreement makes no attempt whatsoever to govern distributions that may be made under a plan

4  of reorganization.

5

6  **III.      THE SALE SHOULD BE APPROVED FREE OF TRANSFER OR**

7  **SIMILAR TAX LIABILITY PURSUANT TO BANKRUPTCY CODE § 1146(c).**

8         Bankruptcy Code §1146(c) provides, "The issuance, transfer, or exchange of a security,

9  or the making or delivery of an instrument of transfer under a plan confirmed under section 1129

10  of this title, may not be taxed under any law imposing a stamp tax or similar tax."  Although no

11  plan has yet been confirmed or proposed in the Debtor's case, the Proposed Sale is necessary and

12  intrinsic to the Debtor's ability to propose and ultimately confirm any plan in its Chapter 11 case.

13  Indeed, without approval of the Proposed Sale, the Debtor would be forced to immediately

14  liquidate. Accordingly, approval of the Proposed Sale free of transfer or similar taxes pursuant to

15  section 1146(c) is necessary and appropriate in this case.  *See, e.g., In re Hechinger Investment*

16  *Company of Delaware, Inc, et al.*, 254 B.R. 306 (Bankr. D. Del. 2000). "Congress apparently

17  enacted § 1146(c) to encourage chapter 11 plans by providing chapter 11 debtors with tax relief

18  when they are compelled by business realities to sell certain assets.  Reading § 1146(c) to require

19  only that a plan be ultimately confirmed implements this goal and is consistent with the realities

20  of chapter 11 proceedings." *Id.* at 317, citing *In re Permar Provisions, Inc.*, 79 B.R. 530, 533

21  (Bankr. E.D.N.Y. 1987).  The Proposed Sale is the type of transfer that is eligible for tax relief

22  under §1146(c).  As stated by the *Hechinger* court, "As a description, 'under a plan confirmed'

23  [in § 1146(c)] embodies an intent to exclude ordinary course of business and non-debtor

24  transactions from the scope of 1146(c). . . . If Congress intended to encourage plan confirmation,

25  it follows that Congress would facilitate the process by providing tax relief for only those

26

27

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

31

1  transfers necessary for the plan, rather than those transfers which a debtor would transact anyway

2  as a function of its day to day operations." *Id.* at 319.  Clearly, the Proposed Sale is not an

3  "ordinary course of business" or non-debtor transaction to be excluded from the scope of §

4  1146(c).  To the contrary, it concerns the purchase and sale of the entirety of its UK, German and

5  French subsidiaries and is, without question, necessary to the Debtor's ability to propose and

6  confirm any plan of any nature in its Chapter 11 case.  Accordingly the Proposed Sale should be

7  approved free of transfer and similar taxes pending confirmation of a plan.

8

9  **IV.    THE DEBTOR REQUESTS THE COURT TO WAIVE THE TEN-DAY**

10  **WAIVING PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND**

11  **6006(d).**

12

13  Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use,

14  sale, or lease of property . . . is stayed until the expiration of ten days after entry of the Court

15  order, unless the Court orders otherwise.  Bankruptcy Rule 6006(d) has a similar provision with

16  respect to an order approving of a debtor's assumption and assignment of unexpired leases and

17  executory contracts.

18  In order to facilitate the most expeditious sale closing possible, the Debtor requests that

19  any order approving the sale of the Purchased Securities and Assets be effective immediately

20  upon entry by providing that the ten-day waiting periods of Bankruptcy Rule 6004(h) and

21  6006(d) be waived.  This will enable the Debtor to consummate its sale of the Purchased

22  Securities and Assets to the Winning Bidder in the most expeditious manner possible.

23

24  **V.    CONCLUSION**

25  For the reasons and based upon the arguments and authorities set forth above, the Debtor

26  respectfully requests that this Court enter an order:

27  (a)    authorizing the Debtor to sell the Purchased Securities and Assets to the Buyer or

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

32

A/72269506.1

1    to a successful Qualified Overbidder, free and clear of liens, claims, encumbrances and interests

2    pursuant to Bankruptcy Code §§ 363(b) and (f) and enjoining claimants from asserting any such

3    liens, claims, encumbrances and/or interests against the Buyer upon the closing of the Sale;

4         (b)       providing that, to the extent that liens, claims, encumbrances and/or interests are

5    not satisfied through cash proceeds, such liens, claims, encumbrances and/or interests will attach

6

7    to the Sale Proceeds with the same validity or invalidity as existed prior to the Sale;

8         (c)       approving the Purchase Agreement and authorizing the execution and delivery of

9    all agreements, documents and instruments required by the Purchase Agreement;

10        (d)       finding that the Cure Amounts (if any) for each executory contract or unexpired

11   lease assumed by the Debtor and assigned to the Buyer or to a successful qualified overbidder(s)

12

13   are the amounts set forth in Assumed Contract Notice;

14        (e)       approve the Debtor's assumption and assignment to the Winning Bidder of all of

15   the Debtor's unexpired leases and executory contracts that the Winning Bidder wishes to take an

16   assignment of, and approve the Debtor's rejection of all of the Debtor's other unexpired leases

17   and executory contracts effective as of the closing of the sale to the Winning Bidder;

18        (f)       finding that the sale is free of transfer or similar tax liability pursuant to

19   Bankruptcy Code § 1146;

20        (g)       finding that notice of the Sale Motion and the Sale Hearing was good and

21   sufficient under the circumstances;

22

23        (h)       finding that the Buyer or a successful qualified overbidder(s) for the Purchased

24   Assets is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the

25   Bankruptcy Code; and

26        (i)       granting such other and further relief as may be just and proper.

27

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

33

1    Respectfully Submitted by:

2    Dated: October 22, 2007                    **CLARKSON, GORE & MARSELLA,**
                                                A Professional Law Corporation
3

4                                               By:_____/s/_____
                                                    Scott C. Clarkson, Esq.
5                                               Proposed Attorneys for MIT Technology
                                                Corporation, Debtor and Debtor in Possession
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              _____
                                                Notice of Motion and Motion to Sell Certain of Debtor's Assets
28
                                                             34

A/72269506.1

1

## DECLARATION OF THOMAS RAIMONDI, JR.

2

I, Thomas Raimondi, Jr., declare as follows:

3

1.      I am the President and CEO of MTI Technology Corporation (the "Debtor"). I

4

have direct supervisory responsibilities over the financial affairs and operations of the Debtor. I

5

have reviewed the appropriate books and records of the Debtor which are maintained and

6

obtained in the ordinary course of business, and have personal knowledge of the matters set forth

7

herein because of that review or because of direct personal knowledge. If called upon as a

8

9

witness in this case, I would and could testify competently thereto.

10

2.      The Debtor's bankruptcy case was commenced by a voluntary petition under

11

Chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") filed on or

12

about October 15, 2007 (the "Petition Date").

13

3.      The Debtor is a global provider of end-to-end information infrastructure solutions

14

15

for mid to large size companies. With more than 20 years experience in delivering innovative

16

technology solutions and more than 5 million hours of providing professional services, the

17

Debtor is a leader in end-to-end information infrastructure solutions that span analysis, design,

18

implementation and has strategic technology and services relationships with industry leaders

19

including, EMC, Microsoft, VMWARE, Symantec and Cisco.  The Debtor has three primary

20

groups of assets at this time:  (1) European Subsidiaries – The Debtor owns all of the issued and

21

outstanding capital stock of each of MTI Technology GmbH, incorporated in Germany ("MTI

22

Germany"), MTI Technology Limited, incorporated in Scotland ("MTI UK"), and MTI France

23

24

S.A.S., incorporated in France ("MTI France", and together with MTI Germany and MTI UK,

25

the "European Companies"); (2) A U.S.-based service division known as "Collective", which

26

was acquired by the Debtor approximately 18 months ago; and (3)  A separate, U.S.-based sales

27

and service division other than Collective.

28

Notice of Motion and Motion to Sell Certain of Debtor's Assets

35

A/72269506.1

1        4.       The Debtor has two primary secured creditors, The Canopy Group, Inc.

2    ("Canopy") and Wells Fargo Bank, National Association, acting through its Wells Fargo

3    Business Credit operating division ("Wells Fargo"). Both of these secured creditors hold various

4    security interests in the Debtor's assets, encumbering all of the Debtor's assets. All of the

5    Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original

6    collateral or proceeds of other Pre-petition Collateral (as defined herein), constitutes "Cash

7    Collateral" within the meaning of section 363(a) of the Bankruptcy Code.

8        (a)     The Wells Fargo Facility: Pursuant to that certain Account Purchase Agreement,

9    dated as of November 27, 2006 (as amended, supplemented, restated or otherwise modified prior

10    to the Petition Date, the "Wells Fargo Prepetition Agreement" and together with all other loan

11    and security documents executed in connection therewith, the "Wells Fargo Facility"), between

12    the Debtor and Wells Fargo Bank, National Association, acting through its Wells Fargo Business

13    Credit operating division ("Wells Fargo"), the Debtor sold and assigned to Wells Fargo certain

14    of its accounts receivable. Accounts sold to Wells Fargo under the Wells Fargo Facility become

15    the sole property of Wells Fargo upon payment of the initial payment for the account. However,

16    under certain circumstances, the Debtor is required to repurchase accounts sold to Wells Fargo.

17    To secure obligations of the Debtor under the Wells Fargo Facility, and pursuant to the terms of

18    the Wells Fargo Facility, the Debtor granted Wells Fargo a first priority security interest and lien

19    (the "Wells Fargo Lien") on the Debtor's then existing or thereafter arising accounts, the reserve

20    account established in connection with the Wells Fargo Facility, and, to the extent that they

21    pertain to such accounts, any contract rights, inventory, general intangibles, chattel paper,

22    documents, books and records, and the proceeds and products of the foregoing property (the

23    "Wells Fargo Collateral"). The Debtor is currently in default under the terms of the Wells Fargo

24    Facility. As of October 10, 2007, $1,711,670.04 remains outstanding in connection with the

25    Wells Fargo Facility (the "Wells Fargo Obligations").

26        (b)     The Canopy Facility: Pursuant to that certain Loan Agreement, dated as of June

27    27, 2002 (as amended, supplemented, restated or otherwise modified prior to the Petition Date,

28

A/72269506.1

1  the "Canopy Pre-petition Agreement" and, together with all other loan and security documents

2  executed in connection therewith, the "Canopy Facility"), Canopy guaranteed the Debtor's

3  performance and prompt payment when due of all of the Debtor's obligations under that certain

4  Loan and Security Agreement between the Borrower and Comerica Bank-California (the

5  "Comerica Line of Credit"), and secured its guarantee of the Comerica Line of Credit through a

6  Seven Million Dollar ($7,000,000) letter of credit issued by Bank of America, which letter of

7  credit was called by Comerica Bank-California prior to the Petition Date and used to satisfy in

8  full the Comerica Line of Credit.  To secure the Canopy Facility, and pursuant to the terms of the

9  Canopy Pre-petition Agreement, the Borrower granted Canopy a first priority security interest

10  and lien (the "Canopy Lien", and, together with the Wells Fargo Lien, the "Pre-petition Liens")

11  on all of Borrower's presently existing and after-acquired general intangibles, accounts

12  (including but not limited to accounts receivable), inventory, equipment, goods, fixtures, chattel

13  paper, documents (including but not limited to investment property), instruments and records

14  (except for the Released Accounts, the Released Inventory and certain other items of collateral as

15  more fully set forth in the Canopy Pre-petition Agreement) (hereinafter the "Canopy Collateral",

16  and, together with the Wells Fargo Collateral, the "Pre-petition Collateral"). As of the Petition

17  Date, $5,190,546.60 plus interest and attorneys' fees and costs remains outstanding in connection

18  with the Canopy Facility (the "Canopy Obligations", and, together with the Wells Fargo

19  Obligations, the "Pre-petition Obligations").

20  　　　　　5.　　　Since the voluntary filing of this case on October 15, 2007, significant events in

21  the Debtor's chapter 11 case have included the following:

22  　　　　　a)　　　First Day Orders. On October 16 and 18, 2007,  the Bankruptcy Court held first

23  day hearings (together, the "First Day Hearings") where it approved several emergency orders -

24  also known as "first-day" orders.  Among those orders was (i) an interim Order approving certain

25  proposed post-petition secured debtor-in-possession financing arrangements between the Debtor

26  and the Buyer, as lender (collectively, the "DIP Financing Agreement"), authorizing the Debtor

27  to borrow up to $1,000,000 on an interim basis (and up to $5,000,000 subject to a final order for

28

A/72269506.1

1   post-petition financing) from the Buyer (the "Interim DIP Financing") and (ii) an Order

2   approving the Buyer as stalking horse bidder for the Purchased Securities and Assets, approving

3   the form of Purchase Agreement to be used by potential overbidders, approving certain bidding

4   protections for the stalking horse bidder, and establishing bidding and auction procedures for the

5   Sale which is the subject of this Motion. Other "first-day" orders adopted by the Court included

6   orders providing for (1) maintenance of the Debtor's pre-petition bank accounts in addition to

7   DIP accounts; (2) limiting notice to certain creditors; (3) payment of certain pre-petition wages

8   and expense reimbursements to non-insider employees of the Debtor, up to the statutory level of

9   priority unsecured claim allowances; and (4) approving the employment of Omni Group LLC as

10  Noticing, Claims and Balloting Agent for the Clerk of the Court.

11       b)      Approval of Sale Procedures. On October 16, 2007, the Debtor filed its Motion

12  seeking an order: (a) approving (i) Bidding Procedures with respect to the Auction, if any, (ii) the

13  form of the Purchase Agreement, and (iii) payment of the Break-Up Fee and Expense

14  Reimbursement in accordance with the terms of the Purchase Agreement; (b) approving the form

15  and manner of notice of the Auction, Bidding Procedures; (c) setting a hearing on the sale

16  motion ("Sale Hearing"); (d) scheduling the Sale Hearing for November 20, 2007 at 2:00 p.m.

17  (prevailing Pacific time); and the fixing the deadline for objections, if any, to the Asset Sale.

18  ("Sale Procedures Order"). The Sales Procedure Order was granted on the record at the First

19  Day Hearing held on October 16, 2007 and entered shortly thereafter. Among the salient items

20  approved in the Sale Procedures Order are: (i) notice requirements in connection with this

21  Motion, (ii) bidding procedures applicable to any potential overbidder for the Purchased

22  Securities and Assets and the Assumed Liabilities, (iii) a Break-up Fee and Expense

23  Reimbursement to be paid to the Buyer in the event that another party successfully overbids the

24  Buyer at the Auction and (iv) the scheduling of the Auction and the Sale Hearing (November 20,

25  2007) for the Sale described in this Motion. The bidding procedures approved by the Court are

26  described in greater detail below.

27       6.      The Debtor has sought buyers for the Purchased Securities and Assets (as well as

28  other of its assets) for over eight months, and is now unable to continue its operations outside of

A/72269506.1

1   Chapter 11 due to continuing financial losses, loss of its pre-petition revolving credit line and

2   declared defaults by its pre-petition secured lenders. A detailed description of the Debtor's pre-

3   petition marketing activities is fully set out in my Declaration Regarding Prepetition Asset

4   Marketing Activities, which is being filed concurrently with this Declaration and Motion.

5

6           7.      If a sale is not consummated with the Buyer under and pursuant to the terms and

7   conditions of the Purchase Agreement (or to an overbidder pursuant to the terms of a higher and

8   better offer), secured creditors Wells Fargo and The Canopy Group would likely simply move to

9   foreclose on each of their respective collateral, likely resulting in their not being paid in full, and

10  resulting in no funds being available thereafter for any administrative, priority or general

11  unsecured creditors. In stark contrast, if the Proposed Sale to the Buyer is authorized, the Debtor

12  will have the structure (as contemplated by the Interim DIP Financing and related Order of this

13  Court, ) which could very well  result in the full payment of Wells Fargo, the opportunity for

14  Canopy to receive full claim recovery, and, the Debtor is hopeful, provide an opportunity for

15

16  payment to unsecured creditors as well.

17          8.      This outcome is far superior to a Chapter 7 liquidation, under which all creditors

18  of the Debtor would likely receive little or nothing upon. The Sale represents the highest and

19  best bona fide offer received by the Debtor. As such, the Sale establishes the value of the

20  Purchased Securities and Assets and enables the Debtor to capture the value of the business for

21  those creditors who have an "economic interest" in the business.

22

23          9.      Even though the Sale may not generate sufficient proceeds to pay creditors in full,

24  it does generate the most proceeds obtainable and thus protects those creditors with an economic

25  stake in the outcome.

26          10.     The terms of the Sale are fair and reasonable. The Buyer has offered the highest

27  value of any bidder contacted by the Debtor.

28

A/72269506.1

1

11.   The Purchase Agreement has been negotiated at arm's length and in good faith by

2   all parties over a series of weeks and has been consented to by both of the Debtor's primary

3   prepetition secured lenders.  There are no hidden or undisclosed deals or understandings between

4   or among the Debtor, the Debtor's management or the Buyer. The Buyer is not an insider, and is

5   unrelated in all ways to the Debtor, with the exception that it has agreed to provide the Debtor

6   with DIP Financing.

7

8   I declare under penalty of perjury under the laws of the United States of America that the

9   above is true and correct and that this Declaration was executed on October 22 2007, at Tustin,

10   California.

11

12                                    Thomas Raimondi, Jr.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72269506.1