1  **SCOTT C. CLARKSON, ESQ.** SBN 143271
   **EVE A. MARSELLA, ESQ.** SBN 165797
2  **CLARKSON, GORE & MARSELLA**
   **A PROFESSIONAL LAW CORPORATION**
3  **3424 Carson Street, Suite 350**
   **Torrance, California 90503**
4  **(310) 542-0111 Telephone**
   **(310) 214-7254 Facsimile**
5
   Proposed Attorneys for MTI Technology Corporation,
6  a Delaware corporation

7

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10
   In re                                  | Case No.  SA 07-13347-ES
11
   MTI TECHNOLOGY CORPORATION, a          | In a Chapter 11 Case
12 Delaware corporation,
                                          | **NOTICE OF PRESENTATION OF PROPOSED**
13              Debtor and                | **ORDER AND PROPOSED FINDINGS OF**
                Debtor in Possession.     | **FACT AND CONLUSIONS OF LAW WITH**
14                                        | **RESPECT TO FINAL ORDER PURSUANT TO**
                                          | **BANKRUPTCY CODE SECTIONS 105, 361,**
15                                        | **362, 363 AND 364 (I) AUTHORIZING**
                                          | **SECURED POST-PETITION FINANCING ON**
16                                        | **A SUPERPRIORITY BASIS; (II)**
                                          | **AUTHORIZING USE OF CASH**
17                                        | **COLLATERAL; (III) APPROVING**
                                          | **AGREEMENTS RELATED TO THE**
18                                        | **FOREGOING; (IV) MODIFYING**
                                          | **AUTOMATIC STAY; AND (V) GRANTING**
19                                        | **ADEQUATE PROTECTION TO**
                                          | **PREPETITION LENDERS AND OTHER**
20                                        | **RELATED RELIEF**

21                                        | Date:  November 7, 2007
                                          | Time:  10:00 a.m.
22                                        | Ctrm:  5A

23

24     PLEASE TAKE NOTICE that MTI Technology Corporation (the "Debtor"), hereby

25 submits its Proposed Order and Proposed Findings of Facts and Conclusion of Law with respect

26 to the pending final hearing on the Debtor's Motion (i) authorizing the Debtor to obtain secured

27 postpetition financing on a superpriority basis (the "DIP Facility"), pursuant to the terms and

28
                                          Notice of Presentatino of Proposed Debtor in Possession Financing
                                       1  Order

conditions of that certain Post-Petition Loan and Security Agreement (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Credit Agreement") between the Borrower and Zinc Holdings, LLC (the "DIP Lender"), substantially in the form of Exhibit A annexed to the Motion; (ii) authorizing and directing the Debtor to perform under the DIP Credit Agreement and the other related loan documents (collectively with the DIP Credit Agreement, the "DIP Facility Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Facility Documents; (iii) granting the DIP Facility and all obligations owing thereunder and under the DIP Facility Documents to the DIP Lender (collectively, the "DIP Obligations") allowed superpriority administrative expense claims in the Debtor's chapter 11 case, which superpriority claims shall be subject only to the Carve-Out Amount and the Wells Fargo Obligations (both as defined herein) and will otherwise be accorded superpriority status in the Debtor's chapter 11 case, having priority over any and all other administrative expenses in the Debtor's chapter 11 case; (iv) granting to the DIP Lender automatically perfected security interests and liens in and on all of the Collateral (as defined herein), including, without limitation all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, senior in priority to the Prepetition Liens (as defined herein) and also senior in priority to all other security interests and liens, other than the Wells Fargo Liens on the Wells Fargo Collateral, and granting Canopy (as defined herein) automatically perfected junior security interests and liens in and on all of the Collateral as adequate protection; (v) authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Facility Documents as such become due, including, without limitation, the letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, administration fees, the fees and disbursements of the DIP Lender's attorneys, advisers,

1  accountants, and other consultants, all to the extent provided in the DIP Credit Agreement and

2  other DIP Facility Documents in accordance with the terms of those documents; (vi) authorizing

3  the use of Cash Collateral of certain Prepetition Lenders (as defined herein) under the Prepetition

4  Obligations (as defined herein) and to provide adequate protection to the Prepetition Lenders to

5  the extent of any outstanding prepetition indebtedness owed to the Prepetition Lenders for any

6
7  diminution in value of the Prepetition Collateral (as defined herein), including the Cash

8  Collateral; and (vii) vacating and modifying the automatic stay imposed by section 362 of the

9  Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

10  the DIP Facility Documents and this Final Order.

11          Attached hereto as Exhibit "A" is a true and correct copy of the Debtor's Proposed Order

12  and as Exhibit "B" is a true and correct copy of the Debtor's Proposed Findings of Fact and

13
14  Conclusions of Law.

15  October 31, 2007                    CLARKSON, GORE & MARSELLA, APLC

16

17                                      By: _____

18                                          Scott C. Clarkson
                                            Eve A. Marsella
19                                          (Proposed) Attorneys for MTI Technology
                                            Corporation, a Delaware corporation

20

21

22

23

24

25

26

27

28

A/72285074.1

# EXHIBIT "A"

SCOTT C. CLARKSON, ESQ. SBN 143271
EVE A. MARSELLA, ESQ. SBN 165797
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 Carson Street, Suite 350
Torrance, California 90503
(310) 542-0111 Telephone
(310) 214-7254 Facsimile

Proposed Attorneys for MTI Technology Corporation,
a Delaware corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>MTI TECHNOLOGY CORPORATION, a Delaware corporation,<br><br>                Debtor and<br>                Debtor in Possession. | Case No. SA 07-13347-ES<br><br>In a Chapter 11 Case<br><br>**(PROPOSED) FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363 AND 364 (I) AUTHORIZING SECURED POST-PETITION FINANCING ON A SUPERPRIORITY BASIS; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) APPROVING AGREEMENTS RELATED TO THE FOREGOING; (IV) MODIFYING AUTOMATIC STAY; AND (V) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS AND OTHER RELATED RELIEF**<br><br>Date:  November 7, 2007<br>Time:  10:00 a.m.<br>Ctrm:  5A |

THIS MATTER came before the Court on the motion (the "Motion") dated October 16, 2007 of MTI Technology Corporation (the "Debtor"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 362(c)(3) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" seeking entry of a final order (the "Final Order"), *inter alia:*

1       (i)     authorizing the Debtor to obtain secured postpetition financing on a superpriority

2  basis (the "DIP Facility"), pursuant to the terms and conditions of that certain Post-Petition Loan

3  and Security Agreement (as the same may be amended, supplemented, restated or otherwise

4  modified from time to time, the "DIP Credit Agreement") between the Borrower and Zinc

5

6  Holdings, LLC (the "DIP Lender"), substantially in the form of Exhibit "A" annexed to the

7  Motion;

8       (ii)     authorizing and directing the Debtor to perform under the DIP Credit Agreement

9  and the other related loan documents (collectively with the DIP Credit Agreement, the "DIP

10  Facility Documents"), and to perform such other acts as may be necessary or desirable in

11  connection with the DIP Facility Documents;

12       (iii)     granting the DIP Facility and all obligations owing thereunder and under the DIP

13  Facility Documents to the DIP Lender (collectively, the "DIP Obligations") allowed

14

15  superpriority administrative expense claims in the Debtor's chapter 11 case, which superpriority

16  claims shall be subject only to the Carve-Out Amount and the Wells Fargo Obligations (both as

17  defined herein) and will otherwise be accorded superpriority status in the Debtor's chapter 11

18  case, having priority over any and all other administrative expenses in the Debtor's chapter 11

19  case;

20       (iv)     granting to the DIP Lender automatically perfected security interests and liens in

21  and on all of the Collateral (as defined herein), including, without limitation all property

22

23  constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, senior in

24  priority to the Prepetition Liens (as defined herein) and also senior in priority to all other security

25  interests and liens, other than the Wells Fargo Liens on the Wells Fargo Collateral, and granting

26  Canopy (as defined herein) automatically perfected junior security interests and liens in and on

27  all of the Collateral as adequate protection;

28

Final Debtor in Possession Financing Order

2

1      (v)  authorizing and directing the Debtor to pay the principal, interest, fees, expenses

2  and other amounts payable under the DIP Facility Documents as such become due, including,

3  without limitation, the letter of credit fees (including issuance and other related charges),

4  continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees,

5

6  administration fees, the fees and disbursements of the DIP Lender's attorneys, advisers,

7  accountants, and other consultants, all to the extent provided in the DIP Credit Agreement and

8  other DIP Facility Documents in accordance with the terms of those documents;

9      (vi)  authorizing the use of Cash Collateral of certain Prepetition Lenders (as defined

10  herein) under the Prepetition Obligations (as defined herein) and to provide adequate protection

11  to the Prepetition Lenders to the extent of any outstanding prepetition indebtedness owed to the

12

13  Prepetition Lenders for any diminution in value of the Prepetition Collateral (as defined herein),

14  including the Cash Collateral; and

15      (vii)  vacating and modifying the automatic stay imposed by section 362 of the

16  Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

17  the DIP Facility Documents and this Final Order.

18      The Court having considered the Motion, the exhibits attached thereto, the DIP Facility

19  Documents, the evidence submitted at the interim hearing on the Motion conducted on October

20  16, 2007 (the "Interim Hearing") and the evidence submitted at the final hearing on the Motion

21

22  conducted on November 7, 2007 (the "Final Hearing"); and an interim order authorizing certain

23  funding on an interim basis having been entered by the Court on October 18, 2007; and adequate

24  notice of the Final Hearing having been provided in accordance with Bankruptcy Rule 4001(c);

25  and all objections, if any, to the Final Order approving the DIP Facility Documents having been

26  withdrawn, resolved or overruled by the Court; and after due deliberation and consideration and

27  good and sufficient cause appearing therefor:

28

Final Debtor in Possession Financing Order

3

1    BASED UPON THE MOTION, THE EVIDENCE SUBMITTED IN SUPPORT OF

2    THE MOTION, THE FINDINGS AND CONCLUSIONS ENTERED BY THE COURT

3    CONTEMPORANEOUSLY HEREWITH, AND UPON THE RECORD MADE BEFORE THIS

4    COURT AT THE FINAL HEARING, AND GOOD AND SUFFICIENT CAUSE APPEARING

5    THEREFOR:

6

7    IT IS HEREBY ORDERED that:

8    1.    *Motion Approved.*    The Motion is granted, subject to the terms and conditions set

9    forth in this Final Order.

10   **DIP Financing Authorization**

11   2.    *Ratification of Interim Order and Authorization of the DIP Financing and the*

12   *DIP Facility Documents.*   The terms of the Interim Order are hereby ratified and confirmed, and

13   all borrowings and payments made thereunder shall be deemed made in accordance with and

14   pursuant to this Final Order. The DIP Facility Documents are hereby approved on a final basis,

15   and the Debtor is expressly and immediately authorized, empowered and directed to perform the

16   DIP Obligations hereunder and thereunder. The DIP Facility Documents evidence the valid and

17   binding obligations of the Debtor, which obligations shall be enforceable against the Debtor, its

18   estate and its creditors in accordance with their terms. The Debtor is hereby authorized and

19   directed to pay the principal, interest, fees, expenses and other amounts described in the DIP

20   Facility Documents as such become due, including, without limitation, the letter of credit fees

21   (including issuance and other related charges), continuing commitment fees, closing fees,

22   servicing fees, audit fees, structuring fees, administration fees, the fees and disbursements of the

23   DIP Lender's attorneys, advisers, accountants, and other consultants, all to the extent provided in

24   the DIP Credit Agreement and other DIP Facility Documents. All collections and proceeds,

25   whether from ordinary course collections, asset sales, debt or equity issuances, insurance

26

27

28

Final Debtor in Possession Financing Order

4

recoveries, condemnations or otherwise, will be deposited and applied as required by the DIP Facility Documents. All of the obligations described in the DIP Facility Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

3.    *Duration and Amount.* Until the Termination Date (as defined herein), and subject to the terms and conditions of the DIP Facility Documents, this Final Order and the limitations on availability and reserves set forth in the DIP Credit Agreement, the Debtor is hereby authorized to request extensions of credit (in the form of loans) up to an aggregate outstanding principal amount of five million dollars ($5,000,000) at any one time outstanding (inclusive of amounts of the DIP Facility previously extended and outstanding), provided such financing is used solely for the purpose of paying the expenditures set forth in the budget attached to the Interim Order as Exhibit "A" (the "Budget"), which Budget has been approved by the Debtor, the DIP Lender and the Prepetition Lenders, as the same may be modified from time to time in accordance with the terms of the DIP Credit Agreement.

4.    *DIP Obligations.* Upon entry of this Final Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Lender under any of the DIP Facility Documents or hereunder, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Facility Documents and whether borrowed under the terms of the Interim Order or this Final Order. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date.

5.    *Postpetition Liens.* Upon entry of the Interim Order, the DIP Lender was granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to sections

Final Debtor in Possession Financing Order

5

A/72285151.1

1  361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, continuing, valid, binding,

2  enforceable, and automatically perfected postpetition security interests in and liens on

3  (collectively, the "DIP Liens") any and all of the assets of the Debtor or its estate, including,

4
   without limitation, (a) all Prepetition Collateral, including all Cash Collateral, (b) all
5
   unencumbered assets, proceeds of any and all lawsuits or causes of action (other than the
6
7  Avoidance Recoveries), (c) all personal property of the Debtor, whether tangible or intangible,

8  including, without limitation, all accounts, accounts receivable, deposit accounts, certain

9  investments, instruments, documents, inventory, fixed assets, machinery and equipment, general

10 intangibles, intellectual property, books and records, cash and cash equivalents, contract rights,

11
   fixtures, goods, chattel paper, promissory notes, drafts, investment property, securities,
12
   commercial tort claims, instruments, letters of credit and rights under letters of credit, and
13
14 insurance policies, together with the products and proceeds thereof, (d) all capital stock and other

15 equity interests in the Debtor, Borrower and its subsidiaries and/or affiliates, and (e) all of the

16 Debtor's interests in any real property, whether owned or leased (all of the foregoing assets and

17 property, whether now owned or hereafter acquired, wherever located (in the domestic United

18 States or otherwise), and all of the products and proceeds thereof, collectively, the "Collateral").

19
   The Collateral shall include any avoidance power claims or actions under (i) section 549 of the
20
   Bankruptcy Code relating to postpetition transfers of Collateral and any proceeds thereof and (ii)
21
22 the Debtor's rights under section 506(c) of the Bankruptcy Code, but the Collateral shall not

23 include the proceeds of any other claims or actions under chapter 5 of the Bankruptcy Code (the

24 excluded chapter 5 related proceeds being hereinafter referred to as the "Avoidance

25 Recoveries").

26     6.      *Postpetition Liens to Canopy.*  To provide Canopy with adequate protection for

27
   the priming of its liens on the Canopy Collateral as set forth herein, upon entry of the Interim
28

Final Debtor in Possession Financing Order

6

1  Order, Canopy was granted (and such grant is hereby ratified, confirmed and approved on a final

2  basis), pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

3  continuing, valid, binding, enforceable, and automatically perfected postpetition security

4
   interests in and liens on (collectively, the "Canopy Postpetition Liens") the Canopy Collateral.
5
   The Canopy Postpetition Liens shall include any avoidance power claims or actions under (i)
6
7  section 549 of the Bankruptcy Code relating to postpetition transfers of Collateral and any

8  proceeds thereof and (ii) the Debtor's rights under section 506(c) of the Bankruptcy Code, but

9  the Collateral shall not include the proceeds of any Avoidance Recoveries.

10        7.      *Priority of DIP Liens and Canopy Postpetition Liens.*  The DIP Liens shall be

11  subordinate only to the Carve-Out Amount and the Wells Fargo Liens on the Wells Fargo
12
   Collateral and the Wells Fargo Adequate Protection Collateral (as defined below), but shall
13
14  otherwise be senior in priority to all other security interests in, liens on, or claims against, any of

15  the Collateral.  The DIP Liens shall not be made subject to or pari passu with any lien or security

16  interest by any court order heretofore or hereafter entered in the Chapter 11 Case and shall be

17  valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion

18  of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (any "Successor

19
   Cases"), and/or upon the dismissal of the Chapter 11 Case.  The DIP Liens shall not be subject to
20
21  sections 510, 549, 550 or 551 of the Bankruptcy Code.  The Canopy Postpetition Liens shall be

22  subordinate only to the Carve-Out Amount, the Wells Fargo Liens on the Wells Fargo Collateral

23  and the Wells Fargo Adequate Protection Collateral and the DIP Liens, but shall otherwise be

24  senior in priority to all other security interests in, liens on, or claims against, any of the

25  Collateral.  Except for the DIP Liens and the Wells Fargo Liens on the Wells Fargo Collateral as

26  described in this Final Order, the Canopy Postpetition Liens shall not be made subject to or pari

27
   passu with any lien or security interest by any court order heretofore or hereafter entered in the
28

A/72285151.1

1    Chapter 11 Case and shall be valid and enforceable against any trustee appointed in the Chapter

2    11 Case, in any Successor Case, and/or upon the dismissal of the Chapter 11 Case.  The Canopy

3    Postpetition Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

4        8.    *Superpriority Claims*.  Upon entry of the Interim Order, the DIP Lender was

5
6    granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to

7    section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim

8    in the Chapter 11 Case (collectively, the "DIP Superpriority Claim") for all loans, letter of credit

9    reimbursement obligations and any other indebtedness or obligations, contingent or absolute, at

10   any time owing by the Debtor to the DIP Lender under any of the DIP Facility Documents or

11   hereunder, including, without limitation, all principal, accrued interest, costs, and other amounts

12
13   under the DIP Facility Documents, (a) with priority over any and all administrative expense

14   claims and unsecured claims against the Debtor or its estate in the Chapter 11 Case, at any time

15   existing or arising, of any kind or nature whatsoever, including, without limitation,

16   administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code

17   sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to

18   the extent permitted by law), 1113, and 1114, and any other provision of the Bankruptcy Code,

19   as provided under section 364(c)(1) of the Bankruptcy Code, and (b) which shall at all times be

20
21   senior to the rights of the Debtor and its estates, and any successor trustee or other estate

22   representative to the extent permitted by law.  The DIP Superpriority Claim shall be subject only

23   to the Carve-Out Amount and the Wells Fargo Obligations and shall not extend to any

24   Avoidance Recoveries.

25       9.    *Extensions of Credit*.  The DIP Lender shall have no obligation to make any

26   extension of credit pursuant to the DIP Facility Documents unless all of the conditions precedent

27   to the making of such extension of credit under the DIP Facility Documents are satisfied.  From

28

Final Debtor in Possession Financing Order

8

A/72285151.1

1    and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the

2    DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and the

3    other DIP Facility Documents and in compliance with the Budget, as the same may be modified

4    from time to time in accordance with the terms of the DIP Credit Agreement.

5
     **Cash Collateral Authorization and Adequate Protection**
6

7        10.    *Authorized Use of Cash Collateral.*    Subject to the terms and conditions of this

8    Final Order and the DIP Facility Documents, the Debtor is authorized to use Cash Collateral

9    through the Termination Date.  Cash Collateral may be used only for the same purposes as

10   permitted for loans under the DIP Facility, in compliance with the Budget and in accordance

11   with the provisions of this Final Order.  Nothing in this Final Order shall authorize the

12
     disposition of any assets of the Debtor or its estate outside the ordinary course of business or the
13
     Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in
14
15   the Interim Order, this Final Order, or the DIP Facility Documents.

16       11.    *Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d) of the

17   Bankruptcy Code as adequate protection for the interests of the Prepetition Lenders in the

18   Prepetition Collateral on account of the Debtor's use of Cash Collateral and other Diminution in

19
     Value of the Prepetition Collateral, and also on account of Canopy's agreement to subordinate its
20
21   liens and security interests to the liens and security interests granted in the Interim Order and

22   ratified, confirmed and approved on a final basis herein), the Debtor was authorized to grant to

23   the Prepetition Lenders (and such grant is hereby ratified, confirmed and approved on a final

24   basis), continuing, valid, binding, enforceable and perfected postpetition security interests and

25   liens (the "Adequate Protection Liens") in and on, and solely to the extent of, such Prepetition

26   Lender's lien in such lender's Prepetition Collateral.  The Adequate Protection Lien of Wells

27   Fargo shall encumber postpetition accounts, the reserve account established in connection with

28

Final Debtor in Possession Financing Order

9

1  the Wells Fargo Facility, and, to the extent that they pertain to such accounts, any contract rights,

2  inventory, general intangibles, chattel paper, documents, books and records of the Debtor, and

3  the proceeds and products of the foregoing property (the "Wells Fargo Adequate Protection

4  Collateral"). The Adequate Protection Lien of Canopy shall encumber the Debtor's post-petition

5  accounts and accounts receivable, general intangibles, inventory, equipment, goods, fixtures,

6

7  chattel paper, documents, instruments and records, except for the Released Accounts, the

8  Released Inventory and certain other items of collateral as more particularly set forth in the

9  Canopy Prepetition Agreement.

10         12.     *Priority of Adequate Protection Liens.*  The Adequate Protection Liens (other than

11  the Wells Fargo Liens on the Wells Fargo Collateral and the Wells Fargo Adequate Protection

12  Collateral which shall be senior to the DIP Liens) shall be subordinate to the DIP Liens and the

13

14  Carve-Out Amount, but otherwise shall retain their existing respective priority of lien and claim

15  on each Prepetition Lender's respective Prepetition Collateral.  The DIP Liens shall be

16  subordinate to the Wells Fargo Liens on the Wells Fargo Collateral and the Wells Fargo

17  Adequate Protection Collateral.  Except as otherwise provided in this paragraph, the Adequate

18  Protection Liens shall not be made subject to or pari passu with any lien or security interest by

19  any court order heretofore or hereafter entered in the Chapter 11 Case, and shall be valid and

20  enforceable against any trustee appointed in the Chapter 11 Case, in a superseding proceeding,

21

22  any Successor Cases, or upon the dismissal of the Chapter 11 Case.  The Adequate Protection

23  Liens shall not be subject to section 510, 549, 550 or 551 of the Bankruptcy Code.

24  **Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

25         13.     *Perfection of DIP Liens, Canopy Postpetition Liens and Adequate Protection*

26  *Liens.*  This Final Order shall be sufficient and conclusive evidence of the validity, perfection

27  and priority of the DIP Liens, the Canopy Postpetition Liens and the Adequate Protection Liens,

28

Final Debtor in Possession Financing Order

10

A/72285151.1

without the necessity of filing or recording any financing statement or other instrument or

document, or the taking of any other act that otherwise may be required under state or federal

law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens, the Canopy

Postpetition Liens and the Adequate Protection Liens or to entitle the DIP Lender and the

Prepetition Lenders to the priorities granted herein.  The Debtor may execute, and the DIP

Lender and Prepetition Lenders are authorized to file or record, financing statements or other

instruments to evidence the DIP Liens, the Canopy Postpetition Liens and the Adequate

Protection Liens, and the Debtor is hereby authorized and directed, promptly upon demand by

the DIP Lender or the Prepetition Lenders to execute and file or record any such statements or

instruments as the DIP Lender or Prepetition Lenders may request.  However, no such execution,

filing, or recordation shall be necessary or required in order to create or perfect the DIP Liens,

the Canopy Postpetition Liens and/or the Adequate Protection Liens.  However, if the DIP

Lender or Prepetition Lenders, each in their sole discretion, shall choose to file such financing

statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of

such liens, all such documents shall be deemed to have been filed or recorded as of the Petition

Date.  A photocopy of this Final Order may, in the discretion of the DIP Lender or Prepetition

Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, notices of lien or similar instruments, and all filing offices are hereby

directed to accept such copy of this Final Order for filing and recording.

　　　　14.　　*Bailee for Perfection.*  Wells Fargo hereby agrees to act as agent and bailee for the

purposes of perfecting the DIP Lender's DIP Liens and the Canopy Postpetition Liens on any of

the property constituting the Wells Fargo Collateral in the possession or control of Wells Fargo

and Wells Fargo hereby acknowledges that, after the satisfaction of the Wells Fargo Obligations,

it holds possession of or otherwise controls any such collateral for the benefit of the DIP Lender

Final Debtor in Possession Financing Order

11

and Canopy as secured parties.  Promptly after the satisfaction of the Wells Fargo Obligations, Wells Fargo shall deliver the remainder of the Wells Fargo Collateral, if any, in its possession to the account established by the DIP Lender pursuant to the DIP Facility to otherwise receive Cash Collateral.

15.    *Termination Date.*  All (a) DIP Obligations shall be immediately due and payable, and the Commitment (as defined in the DIP Credit Agreement) will terminate, and (b) authority to use the Cash Collateral shall cease, both on the date (the "Termination Date") that is the earliest to occur of:

(a)    the Maturity Date (as defined in the DIP Credit Agreement);

(b)    the occurrence of an Event of Default (as defined herein) after termination of the Remedies Notice Period (as defined herein); and

(c)    the effective date of any plan for the Debtor confirmed pursuant to Bankruptcy Code section 1129 that provides for indefeasible payment in full in accordance with the DIP Facility of all obligations due and owing under the DIP Facility.

16.    *Payment Upon Termination Date.*  All DIP Obligations shall be due and payable, without notice or demand, on the Termination Date.

17.    *Events of Default.*  The occurrence of any of the following events shall constitute Events of Default under this Final Order:

(a)    the appointment of a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the Debtor's business (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) in the Chapter 11 Case;

(b)    the entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(c)    the failure by the Debtor to perform, in any respect, any of the terms, conditions,

Final Debtor in Possession Financing Order

12

A/72285151.1

covenants, or other obligations under either the Interim Order or this Final Order; and

      (d)    the occurrence of an "Event of Default" under the DIP Credit Agreement (a list of which Events of Default are attached hereto as Exhibit B).

      18.    *Rights and Remedies Upon Event of Default.*  Immediately upon the occurrence of an Event of Default, the DIP Lender may declare (a) all DIP Obligations owing under the DIP Credit Agreement to be immediately due and payable, (b) a termination, reduction or restriction of any commitment to extend credit to the Debtor to the extent any such commitment remains outstanding, and (c) a termination, reduction or restriction of the ability of the Debtor to use any Cash Collateral.  The Debtor will have no right to use or seek to use Cash Collateral after the occurrence of an Event of Default; provided, however, that upon the DIP Lender providing five (5) calendar days' prior notice of such occurrence and during the continuance thereof (the "Remedies Notice Period"), (in each case given by facsimile to the Debtor, counsel to the Debtor, counsel to the Statutory Committee, and the United States Trustee), the Debtor may use Cash Collateral only to the extent necessary to meet payroll obligations and expenses essential to the preservation of the Debtor and its estate and to seek an emergency hearing before the Court for the sole purpose of contesting whether an Event of Default has occurred.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred, the Debtor shall have no further right to use or seek to use Cash Collateral.

      19.    *Automatic Stay.*  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit (a) the Debtor to grant the DIP Liens and the DIP Superpriority Claim, and to perform such acts as the DIP Lender and Canopy may request in their sole discretion to assure the perfection and priority of the DIP Liens and the Canopy Postpetition Liens, (b) the Debtor to pay, and the DIP Lender to receive and apply, the amounts referred to in paragraphs 2 and 9 of this Final Order and (c) the Debtor to grant the Canopy

Final Debtor in Possession Financing Order

13

Postpetition Liens and the Adequate Protection Liens and to perform such acts as the Prepetition Lenders may reasonably request to assure the perfection and priority of the Canopy Postpetition Liens and the Adequate Protection Liens.

20.      *Maintenance of Collateral.* Until all DIP Obligations and all Prepetition Obligations have been fully and indefeasibly paid, the Debtor shall: (a) insure the Collateral in amounts and for the risks, and by the entities, as required under the DIP Facility and under the Canopy Prepetition Agreement, and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Lender and the Prepetition Lenders, or as otherwise required by the DIP Facility Documents, the Wells Fargo Facility or the Canopy Facility.

21.      *Proceeds.* If at any time prior to all DIP Obligations having been fully and indefeasibly paid (including subsequent to the confirmation of any plan with respect to the Debtor), the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d), then all of the cash proceeds derived from such credit or debt shall immediately be turned over first to the DIP Lender in reduction of the DIP Obligations, up to the amount of the DIP Obligations and, if any surplus remains, shall then be turned over to the Prepetition Lenders in order of their respective priorities.

22.      *Carve Out.* As used in this Final Order, "Carve Out" means, at any time of determination, (a) allowed administrative expenses payable pursuant to 28 U.S.C. § 1930(a)(6) and (b) allowed fees and expenses incurred by the Debtor and Statutory Committee pursuant to section 327 and 1103 of the Bankruptcy Code. For purposes of clause (b) of this paragraph 22, (i) if, at the time of reference, an Event of Default (as defined in the DIP Credit Agreement) has not occurred, the amount of the Carve Out shall not be limited, except that no payment shall be

Final Debtor in Possession Financing Order

14

A/72285151.1

1    made to any professional absent an order allowing such payment and (ii) if, at the time of

2    reference, an Event of Default has occurred, the amount of the Carve Out shall be limited to the

3    sum of $25,000 (the "Carve-Out Amount") upon entry of this Final Order, whether the fees and

4    expenses are allowed and unpaid at the time of any such Event of Default or are incurred before

5    or after such Event of Default.

6

7        23.    *Limitations on the Carve-Out Amount.* No portion of the Carve Out, Collateral,

8    Cash Collateral or proceeds under the DIP Facility may be used in respect of (a) preventing,

9    hindering, or delaying the DIP Lender's enforcement or realization upon any of the Collateral

10   once an Event of Default has occurred, subject solely to the ability of professionals employed by

11   the Debtor or any Statutory Committee to assist the Debtor and the Statutory Committee with

12   contesting the existence of an Event of Default; (b) using or seeking to use Cash Collateral or

13   selling or otherwise disposing of Collateral without the consent of the DIP Lender, (c) using or

14   seeking to use any insurance proceeds without the consent of the DIP Lender, (d) incurring Debt

15

16   (as defined in the DIP Credit Agreement) without the prior consent of the DIP Lender, (e)

17   objecting to or challenging in any way any claims, liens, Collateral (including Cash Collateral)

18   held by or on behalf of the DIP Lender, (f) asserting any claims or causes of action, including,

19   without limitation, any actions under chapter 5 of the Bankruptcy Code, against the DIP Lender,

20   or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and

21

22   employees or (g) prosecuting an objection to, or contesting in any manner, or raising any

23   defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP

24   Obligations or the DIP Liens, or any other rights or interests of the DIP Lender.

25       24.    *Payment of Compensation.* Nothing herein shall be construed as consent to the

26   allowance of any professional fees or expenses of any of the Debtor, the Statutory Committee or

27   of any other person or shall affect the right of the DIP Lender or the Prepetition Lenders to object

28

Final Debtor in Possession Financing Order

15

1   to the allowance and payment of such fees and expenses.  So long as an unwaived Event of

2   Default has not occurred, the Debtor shall be permitted to pay fees and expenses allowed and

3   payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and

4   payable, and the same shall not reduce the Carve-Out Amount.

5

6       25.    *Section 506(c) and Equities of the Case Waiver; No Marshaling.*  Neither the

7   Debtor nor any other party in interest shall assert a claim under section 506(c) of the Bankruptcy

8   Code for any costs or expenses incurred in connection with the preservation, protection,

9   disposition, or enhancement of, or realization by the DIP Lender or the Prepetition Lenders upon

10  the Collateral.  The DIP Lender and the Prepetition Lenders shall not be subject to the equitable

11  doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.  No

12  person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code

13  against the DIP Lender or the Prepetition Lenders with respect to proceeds, product, offspring or

14  profits of any of the Prepetition Collateral.

15

16      26.    *Survival.*  The terms and provisions of this Final Order, and any actions taken

17  pursuant hereto shall survive the entry of any court order (a) confirming a plan of reorganization,

18  and the DIP Obligations shall not be discharged by the entry of any such order, the Debtor

19  having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code

20  with respect to the DIP Obligations; (b) converting the Chapter 11 Case into a case under chapter

21  7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or (d) pursuant to which this Court

22  abstains from hearing the Chapter 11 Case.  The terms and provisions of this Final Order

23  concerning the Prepetition Lender's and the DIP Lender's claims, liens, security interests, and

24  other protections granted pursuant to this Final Order, including such terms and provisions

25  concerning the Adequate Protection Liens, the DIP Obligations, the DIP Liens and the DIP

26  Superpriority Claim, shall continue in the Chapter 11 Case, in any Successor Cases, or following

Final Debtor in Possession Financing Order

A/72285151.1

1    dismissal of the Chapter 11 Case or any Successor Cases, and shall maintain their priority as

2    provided herein, until, in respect of the DIP Facility, all the DIP Obligations, including, without

3    limitation, the DIP Superpriority Claim, have been indefeasibly paid in full.  The terms and

4    provisions concerning the indemnification of the DIP Lender shall continue in the Chapter 11

5    Case, in any Successor Cases, following dismissal of the Chapter 11 Case or any Successor

6    Cases, following termination of the DIP Credit Agreement and/or the indefeasible repayment of

7    the DIP Obligations.

8

9        27.    *Sale Out of the Ordinary Course of Business.*  The Debtor may not sell any of its

10   assets outside the ordinary course of business unless (a) the DIP Lender provides its written

11   consent to such sale, which consent shall not be unreasonably withheld; (b) all net proceeds

12   realized from any such sale are transferred to the DIP Lender for immediate application in

13   reduction of the DIP Obligations until such time as the DIP Obligations shall have been satisfied

14   in full, and shall not be permitted to be used by the Debtor under any circumstances except as

15   otherwise provided by this Final Order; and (c) any Order entered in connection with or in

16   contemplation of any such sale expressly provides that the DIP Lender may exercise its right to

17   credit bid the DIP Obligations under section 363(k) of the Bankruptcy Code.

18

19       28.    *Good Faith under Section 364(e) of the Bankruptcy Code.*  The DIP Lender and

20   the Prepetition Lenders have acted in good faith in connection with the Interim Order and this

21   Final Order and their reliance on the provisions of the Interim Order and this Final Order is in

22   good faith.  Accordingly, if any provision of this Final Order is hereafter modified, vacated, or

23   stayed by subsequent order of this Court or any other court for any reason, the DIP Lender and

24   the Prepetition Lenders are entitled to the protections provided in section 364(e) of the

25   Bankruptcy Code.

26

27       29.    *Proofs of Claim.*  The DIP Lender shall not be required to file proofs of claim in

28

Final Debtor in Possession Financing Order

A/72285151.1

1   the Chapter 11 Case or any Successor Case.  Any order entered by the Court in relation to the

2   establishment of a bar date in the Chapter 11 Case or any Successor Case shall not apply to the

3   DIP Lender in respect of the DIP Obligations.

4       30.    *Rights of Access and Information.*  Without limiting the rights of access and

5   information afforded the DIP Lender under the DIP Facility Documents, the Debtor shall be, and

6   hereby is, required to afford representatives, agents and/or employees of the DIP Lender

7   reasonable access to the Debtor's premises and its books and records in accordance with the DIP

8   Facility Documents and shall reasonably cooperate, consult with, and provide to such persons all

9   such non-privileged information and information not subject to a binding confidentiality

10  agreement.

11      31.    *No Modification of Final Order.*  The Debtor shall not seek or consent to, directly

12  or indirectly, without the prior written consent of the DIP Lender (a) any modification, stay,

13  vacatur or amendment to this Final Order; (b) any order allowing use of Cash Collateral of the

14  DIP Lender; (c) a priority claim for any administrative expense or unsecured claim against the

15  Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without

16  limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or

17  507(b) of the Bankruptcy Code) in the Chapter 11 Case, equal or superior to the DIP

18  Superpriority Claim, other than the Carve-Out Amount and the Wells Fargo Lien on the Wells

19  Fargo Collateral and the Wells Fargo Adequate Protection Collateral; or (d) any lien on any of

20  the Collateral with priority equal or superior to the DIP Liens, except the Wells Fargo Lien on

21  the Wells Fargo Collateral and the Wells Fargo Adequate Protection Collateral and as otherwise

22  specifically provided in the DIP Facility Documents, or with priority equal or superior to the

23  Adequate Protection Liens or the Canopy Postpetition Liens, except with the consent of the

24  Prepetition Lenders.

Final Debtor in Possession Financing Order

18

A/72285151.1

32.     *Indemnification.*  The Debtor shall indemnify and hold harmless the DIP Lender and their respective members, shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns, and professional advisors from and against any and all claims, actions and suits, whether groundless or otherwise, and from and against any and all liabilities, losses, damages and reasonable expenses of every nature and character arising out of the DIP Facility Documents or the transactions contemplated thereby and by this Final Order as provided in and pursuant to the terms of the DIP Credit Agreement and as further described therein and herein, except to the extent that such liabilities, losses, damages or expenses arise out of such person's gross negligence or willful misconduct.

33.     *Final Order Controls.*  To the extent any terms and conditions of the Interim Order or any of the DIP Facility Documents are in conflict with the terms and conditions of this Final Order, the provisions of this Final Order shall control.

34.     *Certain Rights Preserved.*  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of any of the DIP Lender and/or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the DIP Lender or the Prepetition Lenders to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender or the Prepetition Lenders.

35.     *Failure to Seek Relief.*  The DIP Lender's or the Prepetition Lenders' failure to

A/72285151.1

1    seek relief or otherwise exercise its or their rights and remedies under the DIP Facility

2    Documents or, as the case may be, the Prepetition Credit Documents, documents related thereto,

3    the Interim Order or this Final Order shall not constitute a waiver of any of the DIP Lender's or

4    the Prepetition Lender's rights hereunder, thereunder or otherwise.

5
6         36.    *Amendments to DIP Facility.*  The DIP Credit Agreement or any other DIP

7    Facility Document, including any attachments thereto, may from time to time be amended by the

8    parties thereto without notice or a hearing if (a) the amendment is beneficial to the Debtor and is

9    not prejudicial in any material respect to the rights of third parties, (b) a copy of the amendment

10   is provided to the Statutory Committee and the United States Trustee, and (c) the amendment is

11   filed with the Court.

12
13        37.    *Effect of Final Order.*  This Final Order shall constitute findings of fact and

14   conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable

15   nunc pro tunc to the Petition Date immediately upon execution thereof.  Except as otherwise

16   provided herein, the terms and provisions of this Final Order shall, immediately upon execution

17   by this Court, become valid and binding upon the Debtor, the DIP Lender, the Prepetition

18   Lenders, all other creditors of the Debtor, the Statutory Committee or any other court appointed

19   committee, including, without limitation, any committee of equity holders, appointed in the

20   Chapter 11 Case, and all other parties in interest and their respective successors and assigns,

21
22   including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case or in any

23   Successor Cases as a legal representative of the Debtor's estate from and after execution of this

24   Final Order by the Court.

25   ///

26   ///

27
28   ///

A/72285151.1

1    ///

2        38.    *Retention of Jurisdiction.*  The Court has and will retain jurisdiction to enforce

3    this Final Order according to its terms.

4

5    Dated: _____ __, 2007

6                                        ERITHE A. SMITH
                                         UNITED STATES BANKRUPTCY JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         Final Debtor in Possession Financing Order

21

# EXHIBIT "B"

1  **SCOTT C. CLARKSON, ESQ.** SBN 143271
   **EVE A. MARSELLA, ESQ.** SBN 165797
2  **CLARKSON, GORE & MARSELLA**
   **A PROFESSIONAL LAW CORPORATION**
3  **3424 Carson Street, Suite 350**
   **Torrance, California 90503**
4  **(310) 542-0111 Telephone**
   **(310) 214-7254 Facsimile**

5
   Proposed Attorneys for MTI Technology Corporation,
6  a Delaware corporation

7

8                    **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10
   In re                                    | Case No.  SA 07-13347-ES
11
   MTI TECHNOLOGY CORPORATION, a            | In a Chapter 11 Case
12  Delaware corporation,
                                            | **(PROPOSED) FINDINGS OF FACT AND**
13                Debtor and               | **CONLUSIONS OF LAW WITH RESPECT TO**
                  Debtor in Possession.    | **FINAL ORDER PURSUANT TO**
14                                         | **BANKRUPTCY CODE SECTIONS 105, 361,**
                                           | **362, 363 AND 364 (I) AUTHORIZING**
15                                         | **SECURED POST-PETITION FINANCING ON**
                                           | **A SUPERPRIORITY BASIS; (II)**
16                                         | **AUTHORIZING USE OF CASH**
                                           | **COLLATERAL; (III) APPROVING**
17                                         | **AGREEMENTS RELATED TO THE**
                                           | **FOREGOING; (IV) MODIFYING**
18                                         | **AUTOMATIC STAY; AND (V) GRANTING**
                                           | **ADEQUATE PROTECTION TO**
19                                         | **PREPETITION LENDERS AND OTHER**
                                           | **RELATED RELIEF**
20
                                           | Date:  November 7, 2007
21                                         | Time:  10:00 a.m.
                                           | Ctrm:  5A
22

23         THIS MATTER came before the Court on the motion (the "Motion") dated October 16,

24  2007 of MTI Technology Corporation (the "Debtor"), pursuant to sections 105, 361, 362,

25  363(c)(2), 364(c)(1), 364(c)(2), 362(c)(3) and 364(d) of title 11 of the United States Code, 11

26  U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of

27  the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" seeking entry of a final

28
                                           Findings of Fact and Conclusions of Law with Respect to Final
                                        1  Debtor in Possession Financing Order

order (the "Final Order"), *inter alia:*

(i)     authorizing the Debtor to obtain secured postpetition financing on a superpriority basis (the "DIP Facility"), pursuant to the terms and conditions of that certain Post-Petition Loan and Security Agreement (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Credit Agreement") between the Borrower and Zinc Holdings, LLC (the "DIP Lender"), substantially in the form of Exhibit A annexed to the Motion;

(ii)     authorizing and directing the Debtor to perform under the DIP Credit Agreement and the other related loan documents (collectively with the DIP Credit Agreement, the "DIP Facility Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Facility Documents;

(iii)     granting the DIP Facility and all obligations owing thereunder and under the DIP Facility Documents to the DIP Lender (collectively, the "DIP Obligations") allowed superpriority administrative expense claims in the Debtor's chapter 11 case, which superpriority claims shall be subject only to the Carve-Out Amount and the Wells Fargo Obligations (both as defined herein) and will otherwise be accorded superpriority status in the Debtor's chapter 11 case, having priority over any and all other administrative expenses in the Debtor's chapter 11 case;

(iv)     granting to the DIP Lender automatically perfected security interests and liens in and on all of the Collateral (as defined herein), including, without limitation all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, senior in priority to the Prepetition Liens (as defined herein) and also senior in priority to all other security interests and liens, other than the Wells Fargo Liens on the Wells Fargo Collateral, and granting Canopy (as defined herein) automatically perfected junior security interests and liens in and on

1   all of the Collateral as adequate protection;

2         (v)     authorizing and directing the Debtor to pay the principal, interest, fees, expenses

3   and other amounts payable under the DIP Facility Documents as such become due, including,

4   without limitation, the letter of credit fees (including issuance and other related charges),

5   
6   continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees,

7   administration fees, the fees and disbursements of the DIP Lender's attorneys, advisers,

8   accountants, and other consultants, all to the extent provided in the DIP Credit Agreement and

9   other DIP Facility Documents in accordance with the terms of those documents;

10         (vi)    authorizing the use of Cash Collateral of certain Prepetition Lenders (as defined

11   herein) under the Prepetition Obligations (as defined herein) and to provide adequate protection

12   to the Prepetition Lenders to the extent of any outstanding prepetition indebtedness owed to the

13   Prepetition Lenders for any diminution in value of the Prepetition Collateral (as defined herein),

14   
15   including the Cash Collateral; and

16         (vii)   vacating and modifying the automatic stay imposed by section 362 of the

17   Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

18   the DIP Facility Documents and this Final Order.

19         The Court having considered the Motion, the exhibits attached thereto, the DIP Facility

20   Documents, the evidence submitted at the interim hearing on the Motion conducted on October

21   17, 2007 (the "Interim Hearing") and the evidence submitted at the final hearing on the Motion

22   conducted on November 7, 2007 (the "Final Hearing"); and an interim order authorizing certain

23   funding on an interim basis having been entered by the Court on October 18, 2007; and adequate

24   notice of the Final Hearing having been provided in accordance with Bankruptcy Rule 4001(c);

25   and all objections, if any, to the Final Order approving the DIP Facility having been withdrawn,

26   resolved or overruled by the Court; and after due deliberation and consideration and good and

27   
28   

Findings of Fact and Conclusions of Law with Respect to Final
3   Debtor in Possession Financing Order

1  sufficient cause appearing therefor:

2      BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE

3  COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS

4  OF LAW:

5      A.    *Petition Date*:  On October 15, 2007 (the "Petition Date"), the Debtor filed a

6
7  voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

8  Court for the Central District of California, Los Angeles Division, commencing this bankruptcy

9  case (the "Chapter 11 Case").

10      B.    *Debtor In Possession*:  The Debtor is continuing in the management and operation

11  of its businesses and property as debtor in possession pursuant to sections 1107 and 1108 of the

12  Bankruptcy Code.  On or about October 25, 2007, the United States Trustee appointed an official
13
14  committee of unsecured creditors for the Chapter 11 Case (the "Statutory Committee").

15      C.    *Jurisdiction and Venue*:  This Court has jurisdiction over these proceedings, and

16  over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of

17  the Motion constitutes a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2).

18  Venue for the Chapter 11 Case and for proceedings on the Motion is proper in this district
19
20  pursuant to 28 U.S.C. §§ 1408 and 1409.

21      D.    *Interim Order*:  Based upon the Motion, the exhibits attached thereto, the DIP

22  Facility Documents, and the evidence submitted at the Interim Hearing on the Motion, on

23  October 17, 2007, the Court approved that certain *Interim Order Pursuant to Bankruptcy Code*

24  *Sections 105, 361, 362, 363 and 364 (I) Authorizing Secured Post-Petition Financing on a*

25  *Superpriority Basis; (II) Authorizing Use of Cash Collateral; (III) Approving Agreements*

26  *Related to the Foregoing; (IV) Modifying Automatic Stay; (V) Granting Related Relief; and (VI)*

27  *Scheduling a Final Hearing* (the "Interim Order").  Pursuant to the Interim Order and

28
                               Findings of Fact and Conclusions of Law with Respect to Final
4    Debtor in Possession Financing Order

1    Bankruptcy Rule 4001, the Debtor was authorized, among other things, to incur secured

2    superpriority borrowings from the DIP Lender pursuant to the terms of the DIP Credit

3    Agreement, in form and substance substantially as attached to the Motion as Exhibit __, on an

4    interim basis pending a final hearing on the Motion. The Interim Order, including, without

5    limitation, the findings made therein, is incorporated herein by reference. Pursuant to the Interim

6    Order, the Final Hearing was scheduled for November 7, 2007.

7

8        E.      *Prepetition Lending Arrangements*:

9        (i)     *Wells Fargo Facility*: Pursuant to that certain Account Purchase Agreement,

10    dated as of November 27, 2006 (as amended, supplemented, restated or otherwise modified prior

11    to the Petition Date, the "Wells Fargo Prepetition Agreement" and together with all other loan

12    and security documents executed in connection therewith, the "Wells Fargo Facility"), between

13    the Debtor and Wells Fargo Bank, National Association, acting through its Wells Fargo Business

14    Credit operating division ("Wells Fargo"), the Debtor sold and assigned to Wells Fargo certain

15    

16    of its accounts receivable. Accounts sold to Wells Fargo under the Wells Fargo Facility become

17    the sole property of Wells Fargo upon payment of the initial payment for the account. However,

18    under certain circumstances, the Debtor is required to repurchase accounts sold to Wells Fargo.

19    To secure obligations of the Debtor under the Wells Fargo Facility, and pursuant to the terms of

20    the Wells Fargo Facility, the Debtor granted Wells Fargo a first priority security interest and lien

21    

22    (the "Wells Fargo Lien") on the Debtor's then existing or thereafter arising accounts, the reserve

23    account established in connection with the Wells Fargo Facility, and, to the extent that they

24    pertain to such accounts, any contract rights, inventory, general intangibles, chattel paper,

25    documents, books and records, and the proceeds and products of the foregoing property (the

26    "Wells Fargo Collateral"). The Debtor is currently in default under the terms of the Wells Fargo

27    Facility. As of October 10, 2007, $1,711,670.04 remains outstanding in connection with the

28    

A/72285074.1

1   Wells Fargo Facility (the "Wells Fargo Obligations").  On and after the Petition Date, Wells

2   Fargo will not purchase or take assignment of any post-Petition Date accounts receivable and the

3   Debtor shall have no obligation to repurchase from Wells Fargo any such post-Petition Date

4   accounts receivable.

5         (ii)    *The Canopy Facility*:  Pursuant to that certain Loan Agreement, dated as of June

6

7   27, 2002 (as amended, supplemented, restated or otherwise modified prior to the Petition Date,

8   the "Canopy Prepetition Agreement" and, together with all other loan and security documents

9   executed in connection therewith, the "Canopy Facility"), between the Debtor and The Canopy

10  Group, Inc. ("Canopy", and, together with Wells Fargo, the "Prepetition Lenders"), Canopy

11  guaranteed the Debtor's performance and prompt payment when due of all of the Debtor's

12
    obligations under that certain Loan and Security Agreement between the Borrower and Comerica
13
    Bank-California (the "Comerica Line of Credit"), and secured its guarantee of the Comerica Line
14
15  of Credit through a Seven Million Dollar ($7,000,000) letter of credit issued by Bank of

16  America, which letter of credit was called by Comerica Bank-California prior to the Petition

17  Date and used to satisfy in full the Comerica Line of Credit.  To secure the Canopy Facility, and

18  pursuant to the terms of the Canopy Prepetition Agreement, the Borrower granted Canopy a first

19
    priority security interest and lien (the "Canopy Lien", and, together with the Wells Fargo Lien,
20
    the "Prepetition Liens") on all of Borrower's presently existing and after-acquired general
21
22  intangibles, accounts (including but not limited to accounts receivable), inventory, equipment,

23  goods, fixtures, chattel paper, documents (including but not limited to investment property),

24  instruments and records (except for the Released Accounts, the Released Inventory and certain

25  other items of collateral as more fully set forth in the Canopy Prepetition Agreement), and the

26  products and proceeds of the foregoing property (all as more particularly described in the

27  Canopy Prepetition Agreement, the description of which is incorporated herein by reference)

28

A/72285074.1

1  (hereinafter the "Canopy Collateral", and, together with the Wells Fargo Collateral, the

2  "Prepetition Collateral"). As of October 9, 2007, $5,190,546.60 plus interest and attorneys' fees

3  and costs remained outstanding in connection with the Canopy Facility (the "Canopy

4  Obligations", and together with the Wells Fargo Obligations, the "Prepetition Obligations").

5          (iii)    *Cash Collateral*: The Debtor believes and represents that all of the Debtor's cash,

6  including the cash in its deposit accounts, wherever located, whether as original collateral or

7  proceeds of other Prepetition Collateral, constitutes Prepetition Collateral and is therefore Cash

8  Collateral of the Prepetition Lenders within the meaning of section 363(a) of the Bankruptcy

9  Code.

10         F.       *Findings Regarding the Post-Petition Financing*:

11         (i)      *Priming of the Canopy Lien; Consents of Wells Fargo*: The priming of the

12  Canopy Lien and Wells Fargo's consent to the use of Cash Collateral, as contemplated by the

13  DIP Facility and as further described below, will enable the Debtor to continue to operate its

14  business to the benefit of the estate and creditors. However, the Prepetition Lenders are entitled

15  to receive adequate protection as set forth in this Final Order pursuant to sections 361 and 363 of

16  the Bankruptcy Code, to the extent any Prepetition Obligations remain outstanding, for any

17  diminution in the value of the Prepetition Collateral (including but not limited to Cash Collateral)

18  resulting from the Debtor's use, sale or lease of the Prepetition Collateral, the imposition of the

19  automatic stay, the priming of the Canopy Lien and/or the subordination to the Carve-Out

20  Amount (collectively, the "Diminution in Value").

21         (ii)     *Need for Post-Petition Financing and Use of Cash Collateral*: The Debtor's need

22  for financing is critical. In the absence of the DIP Facility and the authorized use of Cash

23  Collateral, the continued operation of the Debtor's business would not be possible, and serious

24  and irreparable harm to the Debtor, its estate and its creditors would occur. The Debtor does not

Findings of Fact and Conclusions of Law with Respect to Final
7   Debtor in Possession Financing Order

A/72285074.1

1  have sufficient available sources of working capital and financing to operate its business in the

2  ordinary course of business or maintain its property in accordance with state and federal law

3  without the DIP Facility and authorized use of Cash Collateral as set forth in the Budget (as

4  defined herein).  The Debtor's ability to maintain business relationships with its vendors,

5
6  suppliers and customers, to pay its employees and otherwise finance its operations, is essential to

7  the Debtor's continued viability.

8      (iii)    *No Credit Available on More Favorable Terms*:  Given its current financial

9  condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing

10  from sources other than the DIP Lender on terms more favorable than the DIP Facility.  The

11  Debtor has been unable to obtain interim unsecured credit solely under section 503(b)(1) of the

12  Bankruptcy Code as an administrative expense.  The Debtor has also been unable to obtain credit

13  (a) having priority over that of administrative expenses of the kind specified in sections 503(b)

14
15  and 507(a) and (b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtor and

16  its estate that is not otherwise subject to a lien or (c) secured solely by a junior lien on property

17  of the Debtor and its estate that is subject to a lien.  Financing on a postpetition basis is not

18  otherwise available without granting the DIP Lender perfected first-priority security interests in,

19  priming liens and junior liens on, as provided herein, all of the Debtor's existing and after-

20
21  acquired assets (except Avoidance Recoveries, as defined herein) and the granting to the DIP

22  Lender of superpriority claims and liens and the other protections set forth in this Final Order.

23      G.    *DIP Facility Documents*:  The Debtor seeks authority to (i) enter into the DIP

24  Facility on a final basis on the terms described herein and in the DIP Facility Documents and (ii)

25  use Cash Collateral to administer its Chapter 11 Case and fund its operations.

26      H.    Interim Borrowing:  After the Interim Hearing, and pursuant to the Interim Order,

27  the Court authorized, among other things, extensions of credit under the DIP Facility up to the

Findings of Fact and Conclusions of Law with Respect to Final
8  Debtor in Possession Financing Order

A/72285074.1

1    aggregate principal amount of one million dollars ($1,000,000) (the "Interim Financing").  Based

2    upon the record of the Interim Hearing, the Court expressly authorized and empowered the

3    Debtor to execute and deliver the DIP Facility Documents and, after execution, authorized,

4    empowered and directed the Debtor to perform all of the DIP Obligations in accordance with the

5    terms of the Interim Order and the DIP Facility Documents, including, without limitation,

6    payment of the fees, expenses and other amounts described in the DIP Facility documents as

7    such became due, including, without limitation, any letter of credit fees (including issuance and

8    other related charges), continuing commitment fees, closing fees, servicing fees, audit fees,

9    

10   structuring fees, administration fees, the fees and disbursements of the DIP Lender's attorneys,

11   advisers, accountants and other consultants, and the legal expenses of the DIP Lender, all to the

12   extent provided in DIP Credit Agreement and other DIP Facility Documents.

13   
        I.      *Sections 506(c) and 552(b)*:  In light of its agreement to subordinate its liens and

14   superpriority claims to the Carve-Out Amount and to the Wells Fargo Lien on the Wells Fargo

15   Collateral, the DIP Lender is entitled to (i) a waiver of any "equities of the case" claims under

16   section 552(b) of the Bankruptcy Code, and (ii) a waiver of the provisions of section 506(c) of

17   the Bankruptcy Code.  Further, in light of its agreement to subordinate its liens to the Carve-Out

18   Amount and the liens granted to the DIP Lender herein, Canopy also is entitled to (i) a waiver of

19   any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (ii) a waiver

20   of the provisions of section 506(c) of the Bankruptcy Code.  In light of Wells Fargo's consent to

21   the use of Cash Collateral as provided herein and in the Interim Order, and its agreement to be

22   subordinated to the Carve-Out Amount, Wells Fargo is entitled to (i) a waiver of any "equities of

23   the case" claims under section 552(b) of the Bankruptcy Code, and (ii) a waiver of the provisions

24   of section 506(c) of the Bankruptcy Code.

25   
26       J.      *Good Faith of the DIP Lender*:

27   
28   
                                        Findings of Fact and Conclusions of Law with Respect to Final
                                    9   Debtor in Possession Financing Order

1      (i)      The DIP Lender has indicated a willingness to continue to provide financing to

2  the Debtor subject to (a) the entry of the Interim Order and this Final Order, (b) approval of the

3  terms and conditions of the DIP Facility and the DIP Facility Documents, and (c) entry of

4  findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender

5  is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests

6  and liens and other protections granted pursuant to this Final Order and the DIP Facility

7  Documents will not be affected by any subsequent reversal, modification, vacatur or amendment

8  of the Interim Order or this Final Order or any other order, as provided in Section 364(e) of the

10  Bankruptcy Code.

11      (ii)      The terms of this Final Order and the DIP Facility Documents are fair and

12  reasonable and reflect the Debtor's exercise of reasonable and prudent business judgment

13  consistent with its fiduciary duties.  The extensions of credit authorized herein are supported by

14  reasonably equivalent value and fair consideration and have been negotiated in good faith and at

16  arm's length among the Debtor, the DIP Lender and the Prepetition Lenders.  Any credit

17  extended, loans made or funds advanced to or Cash Collateral used by the Debtor pursuant to the

18  DIP Facility Documents shall be deemed to have been so extended, made, advanced or used in

19  good faith by the DIP Lender as required by, and within the meaning of, Section 364(e) of the

20  Bankruptcy Code and shall have all of the benefits and protections of the Interim Order and this

22  Final Order.

23      K.      *Notice*:  Notice of the Final Hearing and the relief requested in the Motion has

24  been provided by the Debtor to (i) the Office of the United States Trustee for the Central District

25  of California; (ii) each of Debtor's twenty (20) largest unsecured creditors; (iii) counsel to the

26  Statutory Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue

27  Service; (vi) the Prepetition Lenders; (vii) the DIP Lender and its counsel; (viii) any party that

28

A/72285074.1

1    filed a request for service of notices with the Court; and (ix) all parties who received notice of

2    the Interim Order to the extent not included above.  Under the circumstances, such notice of the

3    Final Hearing and the relief requested in the Motion is sufficient and complies with the

4    requirements of sections 102(1) and 364(c) of the Bankruptcy Code and Bankruptcy Rules 2002

5    and 4001(c).

6

7    Dated: _____, 2007

8                                                            ERITHE A. SMITH
                                                            UNITED STATES BANKRUPTCY JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72285074.1