**SCOTT C. CLARKSON, ESQ.** SBN 143271
**EVE A. MARSELLA, ESQ.** SBN 165797
**CLARKSON, GORE & MARSELLA**
**A PROFESSIONAL LAW CORPORATION**
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone:    (310) 542-0111
Facsimile:    (310) 214-7254

Attorneys for MTI Technology Corporation

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No. **SA 07-13347-ES** |
| **MTI TECHNOLOGY CORPORATION,** <br> **a Delaware corporation,** | Chapter 11 <br><br> **MOTION FOR ORDER APPROVING** <br> **ASSUMPTION OF CLIENT TRANSITION** <br> **AGREEMENT WITH THE COLLECTIVE** <br> **GROUP, L.L.C.; DECLARATION OF** <br> **SCOTT J. POTERACKI** |
| Debtor in Possession. | |
| Federal Tax I.D. # 95-3601802 | Date:   [Expedited Hearing <br> Time:   Requested Pursuant To LBR 9075-1] <br> Ctrm:   5A |

Pursuant to section 365 the Bankruptcy Code[1], Rules 2002, 6005 and 9014 of the Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules 2081-1 and  9075-1,  MTI Technology Corporation, debtor in possession in the above-captioned chapter 11 case ("Debtor" and "Case" respectively) hereby moves this Court for an order approving Debtor's assumption of the executory contract described below ("Motion").

---

1  Title 11, United States Code, §§ 101 et seq.

## I.    INTRODUCTION

The Debtor seeks approval of an agreement, entitled Client Transition Agreement, dated October 12, 2007 ("Client Transition Agreement") between Debtor and The Collective Group ("Collective"). Approval of the Client Transition Agreement will facilitate transition, perpetuate good will; and reduce claims against Debtor' chapter 11 estate ("Estate").

As part of its pre-bankruptcy business operations Debtor provided ongoing technical service to customers pursuant to various contracts, which were a source of significant operating revenue. As of the date of filing, the Debtor had accumulated a back log of orders pursuant to these contracts, which totaled $1,249,844 Debtor can no longer afford to pay the technicians to provide the service and fulfill the backlogged orders, and those customers affected by cessation of these services may possess claims against the Estate for breach of the underlying contracts. Pursuant to the Client Transition Agreement, Collective has agreed to license from the Debtor the required tools, equipment and technology and to provide the ongoing technical support to service the applicable customers and fill the backlogged orders, in return for a percentage (10%) of post-petition receivables. This agreement will enable the Debtor to receive up to approximately $125,000, while simultaneously eliminating or reducing claims against the Estate in excess of $1,249,844.00. A true and correct copy of the Client Transition Agreement is attached hereto as **Exhibit "A"**.

## II.    BACKGROUND

Debtor filed a voluntary chapter 11 petition under the Bankruptcy Code on October 15, 2007 (the "Petition Date"). Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is managing its affairs as a debtor in possession.

Prior to commencement of the Case, Debtor was a global provider of end-to-end information infrastructure solutions for mid to large size companies. With more than twenty years experience in delivering innovative technology solutions and more than five million hours of providing professional services, the Debtor is a leader in end-to-end information infrastructure solutions that span analysis, design, implementation and has strategic technology and services relationships with industry leaders including, EMC, Microsoft, VMWARE, Symantec and Cisco.

MOTION FOR ORDER APPROVING ASSUMPTION OF
CLIENT TRANSITION AGREEMENT

### III.    THE CLIENT TRANSITION AGREEMENT

#### a.    Events Leading Up to the Client Transition Agreement

As alluded to above, part of the Debtor's domestic business operations included a service component through which the Debtor provided customers with technical support pursuant to service contracts ("Collective Services Division"). Prior to the Petition Date, the Debtor entered into service contracts for which it had yet to fulfill.

Over the past year, Debtor's business has been extensively marketed for going concern sales, and the Debtor has continued to provide technical support to its clients and to sell service contracts. Before obtaining debtor in possession financing, Debtor's cash position so strained was such that the Debtor was forced to terminate all of its employees and independent contractors associated with the Collective Services Division. Once those employees and contractors were terminated, Debtor was unable to provide ongoing services to its customers leading to the acute risk that those customers would offset existing accounts receivable for their costs to cover and redeploy technicians to complete the work pursuant to those customer contracts.

On October 12, 2007, Debtor received an offer from Edward Ateyeh, Jr. (a principal of the corporate predecesor to the Collective Services Division) to take over the service busienss conducted by the Collective Services Divsion, and to acquire the Division in the context of the Case. The Client Transition Agreement is the necessary first steep in the process. Under the Client Transition Agreement (assuming Court approval), as set forth below, Collective will fill the Debtor's orders and service the Debtor's clients, in an estimated amount of up to $1,249,844 and the Debtor will receive ten percent (10%) of the revenues actually collected from the Collective clients, up to an estimated amount of $124,984, and the parties will move forward in negotiating a sale of the Collective Services Division, which will then be proposed pursuant to a separate 363 motion.

#### b.    Terms of the Client Transition Agreement

Prior to the Petition Date, Collective agreed to continue to service certain of Debtor's customers to insure that Debtor would be able to continue to collect outstanding receivables, pursuant to a "Client Transition Agreement" (attached as Exhibit "A"). As of the Petition Date, the Debtor estimated that it had a backlog of orders from customers totalling approximately $1,249,844 worth of services. Attached to the Client Transition Agreement is a true and correct copy of the backlogged orders. Absent Collective's fulfillment of these orders by providing the necessary services, these customers have claims against the Estate of up to $1,249,844.

1   Because Debtor was no longer capable of paying the technicians required to provide ongoing services, the

2   Client Transition Agreement became critical to avoiding the offsets and cover damages claims of Debtor's pre-

3   petition customers.  Pursuant to the Client Transition Agreeent, Collective agreed to license from the Debtor the

4   required tools, equipment and technology in return for a percentage of post-petition receivables generated by

5   Collective's continuing to provide services to those customers in the middle of their agreements with the Debtor. The

6   full terms and conditions of the Client Transition Agreement are fully set forth in the attached Exhibit "A". Collective

7   was formed by former employees and/or officers of the Debtor, Edward Ateyeh, Jr. And Willaim Kerley, whom the

8   Debtor has released from all nonsolicitation and confidentiality agreements for purposes of the Client Transition

9   Agreement.  In return, the Debtor will collect from Collective 10% of the fees derived by Collective by providing the

10  cover services.

11      As fully set forth in the attached Client Transition Agreement, to facilitate this Agreement, the

12  Debtor has agreed to contact its customers and advise them that Collective has agreed to provide future

13  services. A proposed form letter to clients is attached to the Client Transition Agreement.

14      Finally, Collective has agreed to negotiate with the Debtor for a sale of the Collective Service

15  Division, to be presented to the Court purusant to an approriate 363 motion.

16  **IV.    ASSUMPTION OF THE CLIENT TRANSITION AGREEMENT IS IN THE BEST

17       INTRESTS OF THE ESTATE**

18      The Debtor believes that assumption of the Client Transition Agreement is in the best interest of

19  the Estate.  Assumption of executory contracts is governed by 11 U.S.C. §365.

20  Bankruptcy Code §365(a) provides, in pertinent part, as follows:

21

22          Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and
            (d) of this section, the trustee, subject to the court's approval, may assume or reject any
23          executory contract or unexpired lease of the debtor.

24  11 U.S.C. §365(a).

25  Section 365(b)(1) provides as follows:

26          (b)(1) If there has been a default in an executory contract or unexpired lease of the
            debtor, the trustee may not assume such contract or lease unless, at the time of
27          assumption of such contract or lease, the trustee—

28

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. §365(b)(1).

Although Bankruptcy Code §365 does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Rail Road Co.*, 318 U.S. 523, 550 (1943); *Matter of Telco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977); *Matter of Minges*, 602 F.2d 38, 43 (2nd Cir. 1979); *In re Chi-Feng Huang*, 23 B.R. 798, 800 (9th Cir. B.A.P. 1982).

A debtor satisfies the "business judgment" test when it determines, in good faith, that assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.C. 1986); *In re Chipwich Inc.*, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985).

In exercising its sound business judgment, and because of the dispersed and specialized nature of the Debtor's domestic services team, Debtor has determined that assumption of the Client Transition Agreement is in the best interests of the Estate and its creditors. The Debtor has determined, in good faith, that assumption of the Client Transition Agreement will benefit the Estate and its creditors by not only reducing claims of up to approximately $1,249,000 but ensuring the continued flow of revenue. The Client Transition Agreement will enable Debtor to receive from Collective 10% of the fees derived from certain existing services order and enterprise deployment backlogs and an additional 10% of the

1  fees generated by fixed-project based direct clients (all as defined and described in the Client Transition

2  Agreement). These amounts to the Debtor could exceed $124,000. Additionally, assumption of the

3  Agreement will enable the Debtor, through Collective, to provide ongoing services to customers, thereby

4  reducing or eliminating their claims against the Estate. Since the Debtor cannot afford to fund the

5  service aspect of its business any longer, without the Client Transition Agreement, the Debtor will have

6  no way of recovering the $1,249,000.

7        Finally, as part of this agreement, the Debtor and Collective will negotiate a sale of the Collective

8  Services Division.

9        As set forth above, the Debtor is assured that Collective will be able to fulfill the contacts.

10  Collective is the business of providing these types of services to customers. The principals of Collective

11  are former employees of the Debtor and possess the required expertise.

12  **V.     RELIEF REQUESTED**

13        The Motion seeks an Order approving the Debtor's assumption of the Client Transition Agreement. As stated

14  in a number of documents filed with the Court, the Debtor is currently engaged in chapter 11 emergence efforts,

15  which are premised on the concept that an orderly liquidation of business assets will maximize the return to creditors.

16  The relief requested in this Motion is a step toward that goal.

17  Section 365 of the Bankruptcy Code provides that the Debtor, subject to Court approval, may assume any

18  executory contract. The Client Transition Agreement is "executory". In the Debtor's reasonable business

19  judgment, assumption of the Agreement is in the best interests of the Debtor, the bankruptcy estate, creditors

20  and equity interest holders.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

MOTION FOR ORDER APPROVING ASSUMPTION OF
CLIENT TRANSITION AGREEMENT

1      WHEREFORE, based upon the foregoing, respectfully requests entry of an Order approving all of the

2 requested relief, including approving the proposed sale procedures and form and manner of notice regarding

3 same.

                                         Respectfully submitted,

4

5 Dated: November 14, 2007            CLARKSON, GORE & MARSELLA
                                      A Professional Law Corporation

6

7                                By: _Scott C. Clarkson_____

8                                    Scott C. Clarkson
                                   Eve A. Marsella
                             Attorneys for MTI Technology Corporation, Debtor and

9                              Debtor in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING ASSUMPTION OF
CLIENT TRANSITION AGREEMENT

### DECLARATION OF SCOTT J. POTERACKI

I, Scott J. Poteracki, declare as follows:

1.      I am the CFO, and Executive Vice President of MTI Technology Corporation ("Debtor" and "MTI"). I have direct supervisory responsibilities over the financial affairs and operations of the Debtor. I have reviewed the appropriate books and records of the Debtor which are maintained and obtained in the ordinary course of business, and have personal knowledge of the matters set forth herein because of that review or because of direct personal knowledge. If called upon as a witness, I would and could testify competently thereto.

2.      Due to the Debtor's financial condition and lack of available capital, the Debtor has determined that it is in the best interests of the Debtor's estate and creditors to proceed with an expedited sale of the Purchased Securities and Assets. After negotiations, the Debtor and Collective entered into the Purchase Agreement, a true and correct copy of which is attached as **Exhibit "A"** to this Declaration.

3.      As indicated in the Motion, Debtor has two primary secured creditors. The provisions of the relevant agreements between the parties are as follows:

a.      The Wells Fargo Facility: Pursuant to an Account Purchase Agreement, dated November 27, 2006, between the Debtor and Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit operating division ("Wells Fargo"), the Debtor sold and assigned to Wells Fargo certain of its accounts receivable. Accounts sold to Wells Fargo became the sole property of Wells Fargo; however, under certain circumstances, the Debtor is required to repurchase accounts sold to Wells Fargo. To secure its obligations under the repurchase requirements of the Account Purchase Agreement, the Debtor granted Wells Fargo a first priority security interest and lien (the "Wells Fargo Lien") on the Debtor's extant and future accounts receivable, and other personal property assets (the "Wells Fargo Collateral"). The Debtor is currently in default to Wells Fargo. As of October 10, 2007, $1,711,670.04 remained outstanding and subject to the secured rights of Wells Fargo:

b.      The Canopy Facility: Pursuant to that Agreement, dated June 27, 2002 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Canopy Facility"), Canopy guaranteed the Debtor's performance and prompt payment of all of the obligations under the Loan and Security Agreement between Debtor and Comerica Bank-California ("Comerica"), and secured its guarantee through a seven million dollar ($7,000,000) letter of credit issued by Bank of

MOTION FOR ORDER APPROVING ASSUMPTION OF
CLIENT TRANSITION AGREEMENT

1  America ("LOC"). The LOC was called by Comerica prior to the Petition Date and used to satisfy in full

2  the Comerica Line of Credit. To secure the Canopy Facility, Debtor had granted Canopy a security

3  interest in all of Borrower's presently existing and after-acquired personal property. As of the Petition

4  Date, $5,190,546.60 plus interest and attorneys' fees and costs remains outstanding in connection with

5  the Canopy Facility (the "Canopy Obligations", and, together with the Wells Fargo Obligations, the

6  "Pre-petition Obligations").

7          4.      As indicated in the Motion, after months of extensive efforts to find purchasers for the

8  Debtor, as a whole, and/or for various parts of Debtor's business, it was determined that an orderly

9  liquidation under chapter 11 offered the best prospects for maximizing value. Due to the Debtor's

10  financial condition and lack of available capital, the Debtor has determined that it is in the best interests

11  of the Debtor's chapter 11 estate ("Estate") and creditors to proceed with an expedited sale of the Assets

12  of the Estate. After negotiations, the Debtor and Collective entered into the Client Transition

13  Agreement, a copy of which is attached as Exhibit "A", and incorporated by this reference. Of course, it

14  was anticipated that the Client Transition Agreement would lead to the negotiation and execution of the

15  Purchase Agreement.

16          5.      In exercising its sound business judgment, and because of the dispersed and specialized

17  nature of the Debtor's domestic services team, Debtor has determined that assumption of the Client

18  Transition Agreement is in the best interests of the Estate and its creditors. The Debtor has determined,

19  in good faith, that assumption of the Client Transition Agreement will benefit the Estate and its creditors

20  by not only reducing claims of up to $1,249,844, but ensuring the continued flow of revenue. The Client

21  Transition Agreement allows the Debtor to collect from Collective 10% of the fees derived from certain

22  existing services order and enterprise deployment backlogs and an additional 10% of the fees generated

23  by fixed-project based direct clients (all as defined and described in the Client Transition Agreement).

24  Thus, the Debtor may receive up to $124,000. Additionally, assumption of the agreement will enable the

25  Debtor to provide ongoing services to customers, thereby reducing or eliminating their claims against the

26  Estate. Finally, since the Debtor cannot afford to fund the service aspect of its business any longer,

27  without the Client Transition Agreement, the Debtor will have no way of ensuring any future revenue

28  stream and would not be able to receive the $1,249,844 in orders. The Debtor's customers may chose,

   instead of paying accounts receivables, to instead offset those receivables.

MOTION FOR ORDER APPROVING ASSUMPTION OF
          CLIENT TRANSITION AGREEMENT

1       I declare under penalty of perjury under the laws of the United States of America that the

2 above is true and correct and that this Declaration was executed on November 14 , 2007 at Tustin,

3 California.

4

5                            Scott J. Poteracki

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING ASSUMPTION OF
CLIENT TRANSITION AGREEMENT