SCOTT C. CLARKSON, ESQ. SBN 143271
EVE A. MARSELLA, ESQ. SBN 165797
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 Carson Street, Suite 350
Torrance, California 90503
(310) 542-0111 Telephone
(310) 214-7254 Facsimile

Attorneys for MTI Technology Corporation

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA,

## SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No. SA 07- 13347-ES |
| MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 |
| Debtor in Possession. | MOTION TO REJECT UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES |
| Federal Tax I.D. # 95-3601802 | Date:   No Hearing Required<br>Time:<br>Ctrm: |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY

JUDGE, THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that debtor and debtor in possession, MTI Technology

Corporation, a Delaware corporation (the "Debtor"), hereby moves the Court pursuant to 11

U.S.C. §365 for an Order rejecting certain non-residential real property leases (collectively, the

"Leases"), as fully described in the within motion and in support thereof represents as follows:

///

**A.    Preliminary Statement.**

The Debtor is in the process of liquidating its assets. With the exception of its California headquarters, the Debtor has vacated all prior business locations and now seeks an order approving the rejection of the leases associated with those premises.

The Debtor hereby moves the Court for an order approving the rejection of the following Leases:

1.  Nonresidential real property lease between the Debtor and Allianz Life Insurance Co. for property located at 11575 Great Oaks Way, Suite 315, Alpharetta, GA 30022 and related sublease with Pramana Inc. (true and correct copies of the lease and sublease are attached hereto as **Exhibits "A"** and **"B",** respectively); and

2.  Nonresidential real property lease between the Debtor and O'Hare Centre Venture for property located at 1350 E. Touhy Avenue, Des Plains, IL 60018. A true and correct copy of this lease is attached hereto as **Exhibit "C";**

3.  Nonresidential real property lease between the Debtor and Great Plains Venture, LLC for real property located at 1116 Great Plain Avenue, Needham, MA 02492. A true and correct copy of this lease is attached hereto as **Exhibit "D";**

4.  Nonresidential real property lease between the Debtor and Quakerbridge, LLC for real property located at 788 Shrewsbury Avenue, Tinton Falls, NJ 07724. A true and correct copy of this lease is attached hereto as **Exhibit "E";**

5.  Nonresidential real property lease between the Debtor and Hall 2611 Internet Associates, LLC for real property located at 2611 Internet Blvd., Suite 114, Frisco, TX 75034. A true and correct copy of this lease is attached hereto as **Exhibit "F";**

6. Nonresidential real property lease between FM 2244 Crystal Mountain, LP and Collective Technologies/PSA, assigned to the Debtor in June, 2007 for real property located at 9433 Bee Caves Road, Building 111, Suite 100, Austin, TX 78733 and related sublease with Centex Solutions, Inc. (true and correct copies of the lease and sublease are attached hereto as **Exhibits "G" and "H",** respectively); and,

7. Nonresidential real property lease between the Debtor and Merritt Properties, LLC for real property located at 21630 Ridgetop Circle, Suite 100-110, Sterling, VA 20166. A true and correct copy of this lease is attached hereto as **Exhibit "I".**

As fully set forth below, all of the Leases are short term leases, at or above market rate. The Debtor has determined in its business judgment it is in the best interest of the estate to reject the Leases.

**B.    General Case Background**

On October 16, 2007 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"). Under Bankruptcy Code §§1107 and 1108, the Debtor has remained in possession of all of its assets and continues to operate and manage its business as a debtor in possession in the Case.

1.    Debtor's Business

Founded in 1987, the Debtor has become a global provider of end-to-end information infrastructure solutions for mid to large size companies with its headquarters at 15641 Red Hill Ave. in Tustin, California. With more than 20 years experience in delivering innovative technology solutions and more than 5 million hours of providing professional services, the Debtor is a leader in end-to-end information infrastructure solutions that span analysis, design, implementation and has strategic technology and service relationships with industry leaders including, EMC, Microsoft, VMWARE, Symantec and Cisco.  MTI served more than 3,500 customers throughout North America and Europe (directly and through wholly owned

1    subsidiaries). The Debtor's revenues for its fiscal year 2006 exceeded $135,000,000.00.

2        Debtor is also a reseller and service provider of EMC Automated Networked Storage

3    systems and software pursuant to a reseller agreement with EMC Corporation, a world leader in

4    information storage systems software, networks and services. The sale of EMC products

5    accounted for 88% and 56% of net product revenue and total revenue, respectively for the three

6    months ended July 7, 2007 and 89% and 70% of net product revenue and total revenue,

7    respectively for the three months ended July 1, 2006.

8        2.    Events Leading To Bankruptcy Filing

9        Founded as a developer, manufacturer and seller of computer storage equipment, the

10   Debtor enjoyed a period of strong profitable growth that ended with the severe slowdown of the

11   technology sector in 2000. After 2000, the Debtor has revised its strategy and business model,

12   but has been unable to consistently return to profitability. The first major restructuring occurred

13   in the 2001-2002 time period. Spending was significantly reduced. In 2003, the Debtor

14   undertook a series of actions in support of a revised strategy. When fully implemented, all

15   development and manufacturing operations were discontinued. Intellectual property was sold to

16   EMC Corporation and the Debtor became an EMC reseller and strategic partner. The Debtor

17   also raised $15 million in support of the strategy in a preferred stock offering.

18       In 2005, the Debtor's further revised its restructuring strategy in an attempt to achieve

19   profitability and maximize shareholder value by deciding to substantially increase the mix of

20   professional services that it sold and delivered. To achieve this goal, the Debtor raised $20

21   million from the same investors in a Series "B" preferred offering in November of 2005. $3.5

22   million of the proceeds from the Series "B" were used to provide needed working capital for the

23   European subsidiaries, which were focused on providing professional services on behalf of the

24   Debtor.

25       In addition, in 2006 the Debtor acquired Collective Technologies ("Collective"), a

26   professional services company for $11 million in cash, debt, stock and warrants. The conversion

27   to a professional services focused company proved more difficult than anticipated and required

28   more time and investment. Synergies assumed in the acquisition were not realized and losses

1  continued.

2      In the first half of 2007, the Debtor hired outside consultants to advise it on strategic

3  alternatives.  A decision was made to find strategic partners to sell or merge MTI Technology.

4  Thus, the process of contacting over 130 companies proceeded, without a buyer for the entire

5  company emerging.

6      The outside consultants were able to attract several potential buyers for the Debtor's

7  European business.  The sale process took much longer then anticipated and the U.S. product

8  sales took a much unexpected downward turn, leaving the Debtor faced with a significant cash

9  flow issue.

10     In further restructuring efforts, the Debtor has closed its offices located in other states,

11 has downsized its employee base, and has arranged for a sale of the stock of its European

12 subsidiaries.  In two of the locations, the Debtor has attempted to mitigate its damages by

13 subletting, but is still negative on a monthly basis with respect to each lease.  By this motion, the

14 Debtor seeks to reject the leases for the offices it closed, pre-petition and related subleases.

15 **C.     The Non-Residential Real Property Leases Proposed to be Rejected**

16

17     The leases proposed to be rejected (the "Leases"), along with relevant lease provisions,

18 are as follows:

19     1. Nonresidential real property lease between the Debtor and Allianz Life Insurance Co.

20        for property located at 11575 Great Oaks Way, Suite 315, Alpharetta, GA 30022 (see

21        attached Exhibit "A") and related sublease with Pramana Inc. (see attached Exhibit

22        "B").  The summary terms of this lease and sublease are as follows:

24        Lease:
           Term: 06/01/05 – 08/31/08
25         Rent:   $4,332.08  plus CAMs of approximately $278.07
           Square feet: 2,875
26         Deposit: $4,902.19
           Premises vacated 9/30/07.
27         Lease payments paid through 9/30/07

28

Sublease:
Term: 08/31/07 – 08/31/08
Rent: $2,995.00 plus CAMS of approximately $143.75
Square feet: 2,875
Deposit: $5,990.00
Premises currently occupied by subtenant
Lease payments paid to Debtor through 9/30/07

2.  Nonresidential real property lease between the Debtor and O'Hare Centre Venture for property located at 1350 E. Touhy Avenue, Des Plains, IL 60018 (see attached Exhibit "C"). The summary terms of this lease are as follows:

Term: 06/01/05-05/31/08
Rent:   $2,000.00 plus CAMS of approximately $1,673.00
Square feet: 1,500
Deposit: $2,000.00
Premises vacated 9/30/07.
Lease payments paid through 9/30/07

3.  Nonresidential real property lease between the Debtor and Great Plains Venture, LLC for real property located at 1116 Great Plain Avenue, Needham, MA 02492 (see attached Exhibit "D"). The summary terms of this lease are as follows:

Term: 06/15/06-06/14/07
Rent:   $400.00
Square feet: 250
Deposit: $325.00
Premises vacated 10/14/07.
Lease payments paid through 9/30/07

4.  Nonresidential real property lease between the Debtor and Quakerbridge, LLC for real property located at 788 Shrewsbury Avenue, Tinton Falls, NJ 07724 (see attached Exhibit "E"). The summary terms of this lease are as follows:

Term: 03/01/03-02/29/08
Rent:   $6,547.17 plus utilities of approximately $421.13
Square feet: 4,079
Deposit: $10,000.00
Premises vacated 9/30/07.
Lease payments paid through 9/30/07

5.  Nonresidential real property lease between the Debtor and Hall 2611 Internet

Associates, LLC for real property located at 2611 Internet Blvd., Suite 114, Frisco,

TX 75034 (see attached Exhibit "F"). The summary terms of this lease are as follows:

> Term: 01/01/06-12/31/08
> Rent:   $4,337.13 plus utilities of approximately $4,728.58
> Square feet: 2,669
> Deposit: $8,674.25
> Premises vacated 9/30/07.
> Lease payments paid through 9/30/07

6.  Nonresidential real property lease between FM 2244 Crystal Mountain, LP and

Collective Technologies/PSA, assigned to the Debtor in June, 2007 for real property

located at 9433 Bee Caves Road, Building 111, Suite 100, Austin, TX 78733 (see

attached Exhibit "G") and related sublease with Centex Solutions, Inc (see attached

Exhibit "H"). The summary terms of this lease and sublease are as follows:

> Lease:
> Term: 02/01/06-3/31/11
> Rent:   $24,180.56
> Square feet: 17,215
> Deposit: $70,691.52
> Premises vacated 9/30/07 by the Debtor and occupied by The Collective Group
> Lease payments paid through 9/30/07
>
> Sublease:
> Term: 04/01/07-3/31/08
> Rent:   $2,675.00 paid directly to Master Lessor
> Square feet: 1,647 – 1st floor, suite 105, of leased premises.
> Deposit: $2,675.00 paid directly to Master Lessor
> Premises currently occupied
> Sublease payments current

7.  Nonresidential real property lease between the Debtor and Merritt Properties, LLC for

real property located at 21630 Ridgetop Circle, Suite 100-110, Sterling, VA 20166

(see attached Exhibit "I"). The summary terms of this lease are as follows:

Term: 12/01/04-11/30/07
Rent:  $6,364.05 plus CAMs of approximately 1,674.00
Square feet: 4,833
Deposit: $5,418.00
Premises vacated 9/30/07.
Lease payments paid through 9/30/07

D.    **Argument**

1.   The Debtor may Reject the Leases

Section 365 governs the duties and obligations of the trustee with regard to executory

contracts and unexpired leases.  11 U.S.C. §365 provides:

Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d)
of this section, the trustee, subject to the court's approval, may assume or reject any
executory contract or unexpired lease of the debtor.

11 U.S.C. §365(a).

2.   Rejection of the Leases is in the Best Interest of the Estate

In determining whether to approve rejection of a lease, the Debtor should apply the

"business judgment" test. *In re Chi-Feng Huang*, 23 B.R. 798, 800 (Bankr. 9th Cir. 1982); *Group

of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523,

550, 87 L. Ed. 959, 63 S. Ct. 727 (1943). "Under the business judgment test, a court should

approve a debtor's proposed rejection if such rejection will benefit the estate. *In re Chi-Feng

Huang, supra.* A debtor's decision in determining whether to reject an unperformed contract is

normally given deference, unless taken in bad faith or plainly contrary to good business

judgment." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047

(4th Cir. 1985).

Under the business judgment test, the primary issue is whether rejection would benefit

general unsecured creditors which may involve a balancing of interests. In re Chi-Feng Huang,

supra. *In Chi-Feng Huang*, "the BAP noted the test should be flexible and the Court must

1   exercise discretion fairly in the interests of all who have had the misfortune of dealing with the

2   debtor". *In re Circle K Corp.*, 1991 Bankr. Lexis 1990.

3           In the present case, under the business judgment test, rejection of the Leases is in the best

4   interest of the estate for the following reasons[1]: The Debtor has vacated each of the premises.

5
    The remaining term of each of the Leases is insignificant to warrant assumption and assignment.

6
7   In addition, the rent due under each Lease was at or over market rent. The only Lease which

8   extends beyond the year 2008, is the Austin, Texas Lease, which extends through the year 2011.

9   The Austin, Texas Lease is above market rate at over $24,000 per month and for a larger square

10
    footage.  The Debtor attempted to sublease the majority of the space pre-petition, and was only

11
12  able to arrange for a sublease of a small percentage to (1,647 square feet) for $2,675 per month.

13          Rejection of the Leases benefits the estate by eliminating further potential

14  administrative claims.

15                                          III.

16                                      CONCLUSION

17
18          Under the Debtor's business judgment, the Debtor has determined that it is in the best

19  interests of the estate to reject the leases identified herein.  Accordingly, the Debtor respectfully

20  requests that the Court enter an order rejecting the leases.

21  Dated: November 27 , 2007              CLARKSON, GORE & MARSELLA
22                                         A Professional Law Corporation

23
                                           By: _____
24                                              Scott C. Clarkson
25                                              Eve A. Marsella
                                                Attorneys for Debtor
26

27  _____

28  [1]  All of the factual assertions asserted throughout the Motion are supported by the attached
         declaration of Thomas P. Raimondi, Jr.

1

2

3

### DECLARATION OF THOMAS P. RAIMONDI, JR.

I, Thomas P. Raimondi, Jr., declare:

4

5

6

7

8

9

1.    I am the President and CEO of MTI Technology Corporation, Debtor and Debtor in Possession herein. I have either personal knowledge of the following facts or have gained such knowledge from my review of the Debtor's books and records, which are created, obtained and maintained in the ordinary course of business. If called as a witness, I would and could testify completely thereto.

10

11

12

13

14

15

16

17

18

19

20

2.    Founded in 1987, the Debtor has become a global provider of end-to-end information infrastructure solutions for mid to large size companies with its headquarters at 15641 Red Hill Ave. in Tustin, California. With more than 20 years experience in delivering innovative technology solutions and more than 5 million hours of providing professional services, the Debtor is a leader in end-to-end information infrastructure solutions that span analysis, design, implementation and has strategic technology and service relationships with industry leaders including, EMC, Microsoft, VMWARE, Symantec and Cisco. MTI served more than 3,500 customers throughout North America and Europe (directly and through wholly owned subsidiaries). The Debtor's revenues for its fiscal year 2006 exceeded $135,000,000.00.

21

22

23

24

25

26

27

3.    Debtor is also a reseller and service provider of EMC Automated Networked Storage systems and software pursuant to a reseller agreement with EMC Corporation, a world leader in information storage systems software, networks and services. The sale of EMC products accounted for 88% and 56% of net product revenue and total revenue, respectively for the three months ended July 7, 2007 and 89% and 70% of net product revenue and total revenue, respectively for the three months ended July 1, 2006.

28

Motion to Reject Leases

4.       Founded as a developer, manufacturer and seller of computer storage equipment, the Debtor enjoyed a period of strong profitable growth that ended with the severe slowdown of the technology sector in 2000.  After 2000, the Debtor has revised its strategy and business model, but has been unable to consistently return to profitability.  The first major restructuring occurred in the 2001-2002 time period.  Spending was significantly reduced.  In 2003, the Debtor undertook a series of actions in support of a revised strategy. When fully implemented, all development and manufacturing operations were discontinued.  Intellectual property was sold to EMC Corporation and the Debtor became an EMC reseller and strategic partner. The Debtor also raised $15 million in support of the strategy in a preferred stock offering.

5.       In 2005, the Debtor's further revised its restructuring strategy in an attempt to achieve profitability and maximize shareholder value by deciding to substantially increase the mix of professional services that it sold and delivered. To achieve this goal, the Debtor raised $20 million from the same investors in a Series "B" preferred offering in November of 2005. $3.5 million of the proceeds from the Series "B" were used to provide needed working capital for the European subsidiaries, which were focused on providing professional services on behalf of the Debtor.

6.       In addition, in 2006 the Debtor acquired Collective Technologies ("Collective"), a professional services company for $11 million in cash, debt, stock and warrants.  The conversion to a professional services focused company proved more difficult than anticipated and required more time and investment.  Synergies assumed in the acquisition were not realized and losses continued.

7.       In the first half of 2007, the Debtor hired outside consultants to advise it on strategic alternatives.  A decision was made to find strategic partners to sell or merge MTI

1  Technology. Thus, the process of contacting over 130 companies proceeded, without a buyer for

2  the entire company emerging.

3    8.    The outside consultants were able to attract several potential buyers for the

4  Debtor's European business. The sale process took much longer then anticipated and the U.S.

5
6  product sales took a much unexpected downward turn, leaving the Debtor faced with a

7  significant cash flow issue.

8    9.    In further restructuring efforts, the Debtor has closed its offices located in other

9  states, has downsized its employee base, and has arranged for a sale of the stock of its European

10  subsidiaries. In two of the locations, the Debtor has attempted to mitigate its damages by

11
12  subletting, but is still negative on a monthly basis with respect to each lease. By this motion, the

13  Debtor seeks to reject the leases for the offices it closed, pre-petition and related subleases.

14    10.    I am familiar with the terms of all of the leases proposed to be rejected, which are

15  as follows:

16    A.    Nonresidential real property lease between the Debtor and Allianz Life

17
18  Insurance Co. for property located at 11575 Great Oaks Way, Suite 315, Alpharetta, GA 30022

19  (a true and correct copy of this lease is attached as Exhibit "A") and related sublease with

20  Pramana Inc ( a true and correct copy of this sublease is attached as Exhibit "B"). The summary

21  terms of this lease and sublease are as follows:

22
            Lease:
23          Term: 06/01/05 – 08/31/08
            Rent:   $4,332.08 plus CAMs of approximately $278.07
24          Square feet: 2,875
            Deposit: $4,902.19
25          Premises vacated 9/30/07.
26          Lease payments paid through 9/30/07

27          Sublease:
28          Term: 08/31/07 – 08/31/08

1    Rent: $2,995.00 plus CAMs of approximately $143.75
     Square feet: 2,875
2    Deposit: $5990.00
     Premises currently occupied
3    Lease payments paid through 9/30/07

4
     B.    Nonresidential real property lease between the Debtor and O'Hare Centre
5
Venture for property located at 1350 E. Touhy Avenue, Des Plains, IL 60018 (a true and correct
6
7    copy of this lease is attached as Exhibit "C"). The summary terms of this lease are as follows:

8    Term: 06/01/05-05/31/06
     Rent:   $2,000.00 plus CAMs of approximately $1,673.00
9    Square feet: 1,500
10   Deposit: $2,000.00
     Premises vacated 9/30/07.
11   Lease payments paid through 9/30/07

12
     C.    Nonresidential real property lease between the Debtor and Great Plains
13
Venture, LLC for real property located at 1116 Great Plain Avenue, Needham, MA 02492 (a true
14
15   and correct copy of this lease is attached as Exhibit "D"). The summary terms of this lease are as
16   follows:

17   Term: 06/15/06-06/14/07
     Rent:   $400.00
18   Square feet: 250
19   Deposit: $325.00
     Premises vacated 10/14/07.
20   Lease payments paid through 9/30/07

21
     D.    Nonresidential real property lease between the Debtor and Quakerbridge,
22
LLC for real property located at 788 Shrewsbury Avenue, Tinton Falls, NJ 07724 (a true and
23
24   correct copy of this lease is attached as Exhibit "E"). The summary terms of this lease are as
25   follows:

26   Term: 03/01/03-02/29-08
     Rent:   $6,547.17 and utilities of approximately $421.13
27   Square feet: 4,079
28   Deposit: $10,000.00

1  Premises vacated 9/30/07.
   Lease payments paid through 9/30/07

2

3      E.      Nonresidential real property lease between the Debtor and Hall 2611

4  Internet Associates, LLC for real property located at 2611 Internet Blvd., Suite 114, Frisco, TX

5  75034 (a true and correct copy of this lease is attached as Exhibit "F"). The summary terms of

6  this lease are as follows:

7
          Term: 01/01/06-12/31/08
8         Rent:  $4,337.13 and utilities of approximately $391.45
          Square feet: 2,669
9         Deposit: $8,674.25
10        Premises vacated 9/30/07.
          Lease payments paid through 9/30/07
11

12     F.      Nonresidential real property lease between FM 2244 Crystal Mountain, LP

13  and Collective Technologies/PSA, assigned to the Debtor in June, 2007 for real property located

14  at 9433 Bee Caves Road, Building 111, Suite 100,   Austin, TX 78733 (a true and correct copy

15  of this lease is attached as Exhibit "G") and related sublease with Centex Solutions, Inc (a true

16  and correct copy of this sublease is attached as Exhibit "H").  The summary terms of the lease

17  and sublease are as follows:

18
          Lease:
19        Term: 02/01/06-3/31/11
20        Rent:   $24,180.56
          Square feet: 17,215
21        Deposit: $70,691.52
22        Premises vacated 9/30/07 by Debtor and occupied by The Collective Group
          Lease payments paid through 9/30/07
23

24        Sublease:
          Term: 04/01/07-3/31/08
25        Rent:   $2,675.00 paid directly to Master Lessor
          Square feet: 1,647 – 1st floor, suite 105, of leased premises.
26        Deposit: $2,675.00 paid directly to Master Lessor
          Premises currently occupied
27        Sublease payments current

28

1       G.     Nonresidential real property lease between the Debtor and Merritt

2   Properties, LLC for real property located at 21630 Ridgetop Circle, Suite 100-110, Sterling, VA

3   20166 (a true and correct copy of this lease is attached as Exhibit "I"). The summary terms of the

4   lease are as follows:

5

6             Term: 12/01/04-11/30/07
          Rent:  $6,364.05 plus CAMs of approximately $1,674.00

7             Square feet: 4,833
          Deposit: $5,418.00

8             Premises vacated 9/30/07.
          Lease payments paid through 9/30/07

9

10      11.     In the present case, under the business judgment test, rejection of the leases

11   identified herein is in the best interest of the estate for the following reasons:  The Debtor has

12   vacated each of the premises. The remaining Lease term of each of the Leases is insignificant to

13   warrant assumption and assignment. In addition, the rent due under each Lease was at or is over

14   market rent. The only Lease which extends beyond the year 2008, is the Austin, Texas lease,

15   which extends through the year 2011.  The Austin, Texas lease is above market rate at over

16   

17   $24,000 per month and for a larger square footage. The Debtor attempted to sublease the

18   majority of the space pre-petition, and was only able to arrange for a sublease of a small

19   percentage to (1,647 square feet) for $2,675 per month.   Rejection of the Leases benefits the

20   estate by eliminating further potential administrative claims.

21

22       I declare under penalty of perjury under the laws of the United States of America that the

23   foregoing is true and correct. Executed this 26  th day of November, 2007, at Tustin, California.

24

25

26                     Thomas P. Raimondi, Jr.

27

28