**SCOTT C. CLARKSON, ESQ.** SBN 143271
**EVE A. MARSELLA, ESQ.** SBN 165797
**CLARKSON, GORE & MARSELLA**
**A PROFESSIONAL LAW CORPORATION**
**3424 Carson Street, Suite 350**
**Torrance, California 90503**
**(310) 542-0111 Telephone**
**(310) 214-7254 Facsimile**

Attorneys for MTI Technology Corporation, Debtor and
Debtor in Possession

FILED & ENTERED

DEC 17 2007

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Duarte        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No.  SA 07-13347-ES |
| MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 |
| Debtor and Debtor in Possession. | ORDER PURSUANT TO SECTIONS 105, 363(b), 363(f) AND 365 OF TITLE 11 OF THE UNITED STATES CODE (I) APPROVING SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) APPROVING OF DEBTOR'S ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (III) WAIVING THE 10-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d) |
| | Date:  November 20, 2007<br>Time:  2:00 p.m.<br>Ctrm:  5-A |

A hearing (the "Hearing") was held on November 20, 2007, at 2:00 p.m., before the

Honorable Erithe A. Smith, United States Bankruptcy Judge, in Courtroom 5A of the United

States Bankruptcy Court, located at United States Bankruptcy Court, Central District of

California, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth

Street, Santa Ana, CA 92701-4593, for the Court to consider the motion (the "Motion") filed by

Order Approving Sale of European Assets

MTI Technology Corporation, Chapter 11 debtor and debtor in possession herein (the "Debtor"),

for entry of an order of the Court authorizing and approving the sale (the "Proposed Sale" or

"Sale") of all of the authorized, issued and outstanding capital stock of each MTI Technology

GmbH, MTI Technology Limited, and MTI France S.A.S. and certain other assets of the Debtor

as described more fully below (collectively, the "Purchased Securities and Assets"), to, and the

assumption of certain liabilities of the Debtor (the "Assumed Liabilities"), by, Zinc Holdings,

LLC, a Delaware limited liability company ("Zinc"), or an overbidder, free and clear of all liens,

claims and interests, with such liens, claims, and interests to attach to the proceeds of the Sale

(the "Sale Proceeds") with the same validity (or invalidity) and priority as existed prior to the

Sale, all pursuant to the terms and conditions of, and as more particularly described in, that

certain Purchase Agreement, dated as of October 15, 2007, by and between the Debtor and the

Zinc, substantially in the form of the form of the Purchase Agreement previously approved by

the Court.  Appearances were made at the Hearing as set forth on the record of the Court.

　　　　The Court, after considering the Motion, all pleadings filed in support of and in response

to the Motion, any written objections or responses not submitted as formal Court pleadings, and

all statements, arguments and representations made at the hearing on the Motion, and the results

of the auction sale of the Purchased Securities and Assets conducted by the Debtor (the

"Auction"), and the Court, having made the "Findings of Fact and Conclusions of Law" which

has been entered concurrently herewith, after due deliberation and other good and sufficient

cause appearing,

　　　　**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE**

**IMMEDIATELY, AS FOLLOWS:**

　　　　**General Provisions.**

　　　　1.　　　The Motion is granted.

2.      All parties in interest have had the opportunity to object to the relief requested in the Motion and, to the extent that objections to the Motion, or the relief requested therein, have not been withdrawn, waived or settled, such objections and all reservations of rights included therein, are hereby overruled.  The parties who did not object are deemed to have consented to the relief requested by the Debtors in the Motion pursuant to Section 363(f)(2) of the Bankruptcy Code.

**Approval of the Sale of the Purchased Securities and Assets to Copper Holdings LLC as the Winning Bidder at the Auction and Approval of the Purchase Agreement Submitted by Copper Holdings LLC.**

3.      The bid submitted by Copper Holdings LLC (hereinafter, the "Buyer") at the Auction, in the amount of $7,275,000, along with the version of the Purchase Agreement submitted by the Buyer (the "Copper Purchase Agreement"), as it may be amended or modified as provided herein, is deemed by the Court to constitute the winning bid at the Auction and is hereby approved in its entirety.

4.      The Copper Purchase Agreement, and all the terms and conditions contained and contemplated therein is hereby approved in its entirety and is binding upon the parties thereto pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code.  Upon entry of this Order, the covenants contained in the Copper Purchase Agreement, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to the Copper Purchase Agreement in accordance with and subject to the terms and conditions of the Copper Purchase Agreement.

5.      The Debtor is authorized, empowered and directed, pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, to perform all of its obligations pursuant to the Copper Purchase Agreement and to execute and deliver such other documents and instruments and take

1  such other actions as are reasonably necessary to effectuate the transactions contemplated by the

2  Copper Purchase Agreement (the "Closing").

3  **Transfer of the Purchased Securities and Assets to the Buyer**.

4

5  6.    The transfer and sale of the Purchased Securities and Assets and the Assumed

   Agreements, pursuant to this Order and the Copper Purchase Agreement (the "Sale"), will vest
6
   the Buyer with good title to the Purchased Securities and Assets and the Assumed Agreements
7
8  and will be a legal, valid and effective transfer of the Purchased Securities and Assets and the

9  Assumed Agreements free and clear of all defects or imperfections in title, encumbrances,

10 interests, claims, charges, pledges, mortgages, deeds of trust, security interests, leases, subleases,

11 licenses, options, rights of first refusal, easements, rights-of-way, servitudes, covenants,
12
   conditions, proxies, voting trusts or agreements or transfer restrictions under any shareholder or
13
14 similar agreement, and any and all rights, claims and interests of any nature whatsoever that may

15 be asserted by any person other than the Debtor, including without limitation, pursuant to that

16 certain Order entered by this Court authorizing on a final basis, among other things, the Debtor's

17 secured post-petition financing on a super-priority basis (the "DIP Order") by the DIP Lender (as

18 defined in the DIP Order), with all of the foregoing collectively defined as "Interests," within the
19
   meaning of section 363(f) of the Bankruptcy Code, with all such Interests to attach solely and
20
21 exclusively to the sale proceeds with the same validity, priority, force, effect and extent as such

22 Interests existed against the Purchased Securities and Assets immediately prior to the Closing,

23 subject only to the rights, claims, defenses, and objections, if any, of the Debtor and all parties in

24 interest, and the terms of the DIP Order with respect to the DIP Lender's claims against the

25 Debtor's estate.

26 7.    All persons or entities holding Interests in, to or against the Purchased Securities

27 and Assets shall be, and they hereby are, forever barred from asserting such Interests against the
28

---

Order Approving Sale of European Assets

Buyer, its successors and assigns or the Purchased Securities and Assets after the Closing.

8.    The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Absent a stay of the effectiveness of this Order, the Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in purchasing the Purchased Securities and Assets, assuming the Assumed Agreements, and in closing the other transactions contemplated by the Copper Purchase Agreement, at any time after entry of this Order.

**Assumption and Assignment to the Buyer of Executory Contracts and Unexpired Leases and Assignment to the Buyer of Other Agreements and Rights, and Rejection of Others**.

9.    The Debtor's (a) assumption and assignment to the Buyer of the Assumed Agreements, (b) transfer, sale and delivery to the Buyer of all of the Debtor's right, title and interest in and to the Assumed Agreements, free and clear of all Interests;  and (c) execution and delivery to the Buyer of such documents and other instruments as may be necessary to assign and transfer the Assumed Agreements to the Buyer, is approved effective as of the Closing pursuant to 11 U.S.C. Sections 105, 363, and 365.

10.    No cure amounts are required to be paid by the Debtor or the Buyer at the Closing in order to effectuate the Debtor's assumption and assignment of the Assumed Agreements to the Buyer.

11.    The Assumed Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Buyer, in accordance with their respective terms, notwithstanding any provision in any such Assumed Agreement (including provisions of the type described in sections 365(b)(2), (c)(1) and (f)(1) of the Bankruptcy Code) which prohibits, restricts or conditions such assignment or transfer.

12.      Upon assignment of the Assumed Agreements to the Buyer upon the Closing, no default (nor any claims or liabilities relating to any actions or omissions taken as of or prior to such assignment) shall exist, or be deemed to exist, under any Assumed Agreement and no non-debtor party to any Assumed Agreement shall be permitted to declare a default by the Buyer as a result of the Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the Assumed Agreement.  Upon entry of this Order and assumption and assignment of the Assumed Agreements, the Buyer shall be deemed in compliance with all terms and provisions of the Assumed Agreements.

**Other Provisions.**

13.      Absent a stay of the effectiveness of this Order, the Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in purchasing the Purchased Securities and Assets, assuming the Assumed Agreements, and in closing the other transactions contemplated by the Copper Purchase Agreement, at any time after entry of this Order.  The Buyer, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

14.      Until the Debtor's Chapter 11 case is closed or dismissed, the Court shall retain exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Copper Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed therewith; (ii) compel the Buyer and/or the Debtor to perform all of their obligations under the Copper Purchase Agreement; (iii) resolve any disputes, controversies or claims arising out of or relating to the Copper Purchase Agreement or any of the transactions contemplated thereby; and (iv) interpret, implement and enforce the provisions of the Copper Purchase Agreement and this Order.

Order Approving Sale of European Assets

15.     This Order and the Copper Purchase Agreement shall be binding in all respects upon all creditors and claimants of the Debtor, including those creditors and claimants of the Debtor who purport to hold contingent, unliquidated or disputed claims, all holders of equity interests in the Debtor, all holders of Interests, all successors and assigns of the Buyer, the Debtor and its affiliates and subsidiaries, and any subsequent trustee appointed in the Debtor's Chapter 11 case or upon a conversion to Chapter 7 under the Bankruptcy Code.  Nothing contained in any Chapter 11 plan confirmed in the Debtor's Chapter 11 bankruptcy case or the confirmation order confirming any such Chapter 11 plan shall conflict with or derogate from the provisions of the Copper Purchase Agreement or this Order, and the Copper Purchase Agreement and this Order shall control to the extent of any such conflict or derogation.

16.     All persons who purport to hold claims or rights to assert any cause of action against or Interests in the Debtor are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Buyer, direct and indirect parents and affiliates, or any of its respective officers, directors, members, managers, employees, equity holders, lenders, attorneys or advisors, arising out of or in connection with the Sale.

17.     After the Closing Date, no person or entity, including, without limitation, any federal, state or local taxing authority, may: (a) attach or perfect a lien or security interest against any of the Purchased Securities and Assets on account of any claim or tax; or (b) collect or attempt to collect from the Buyer or any of its affiliates, any tax (or other amount alleged to be owing by the Debtor) (i) for any period commencing before and concluding prior to or after the Closing Date, or (ii) assessed prior to and payable after the Closing Date, except as otherwise expressly provided in the Copper Purchase Agreement.

18.     The Copper Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing

signed by such parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on (i) the Debtor's estate or (ii) the Break-Up Fee or Expense Reimbursement payable to Zinc (or to its designee in accordance with written instructions from Zinc) in accordance with the terms of this Sale Order.

19.    The failure to include any particular provision of the Copper Purchase Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Copper Purchase Agreement be authorized in its entirety.

20.    Any conflict between the terms and provisions of this Order and the Copper Purchase Agreement shall be resolved in favor of this Order.

21.    The Debtor is hereby authorized and directed to perform each of its covenants and undertakings as provided in the Copper Purchase Agreement prior to Closing without further order of the Court.

22.    The Sale is hereby approved free of transfer or similar taxes pursuant to section 1146(c).

23.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  As provided by Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately.  The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for 10 days are hereby waived, and this Order shall be effective, and the parties may consummate the transactions contemplated by the Copper Purchase Agreement, immediately upon entry of this Order.  The parties to the Copper Purchase Agreement shall be authorized to close the sale as soon as possible consistent with the terms of the Copper Purchase Agreement.

24.    Pursuant to the terms of the Bidding Procedures Order, within five (5) business

Order Approving Sale of European Assets

8

days after the Closing, the Debtor shall pay to Zinc (or to its designee in accordance with written

instructions from Zinc), from the Purchase Price by wire transfer, the Break Up Fee of $175,000

and, subject to proof by Zinc, an Expense Reimbursement of up to $150,000, with payment of

the foregoing sums to constitute Zinc's sole and exclusive remedy as a result of the Debtor's

termination of its purchase agreement with Zinc (which amounts are exclusive of any amounts

payable to Zinc in its capacity as DIP Lender pursuant to the terms of the DIP Order and related

financing documents).

**IT IS SO ORDERED.**

###

DATED: December 17, 2007

_____
United States Bankruptcy Judge

Order Approving Sale of European Assets

9

## PROOF OF SERVICE

STATE OF CALIFORNIA,

COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3424 Carson Street, Suite 350, Torrance, California, 90503.

      On **December 17, 2007** I served the foregoing document described as:  **Order Pursuant to Sections 105, 363(b), 363(f) and 365 of Title 11 of the United States Code (I) Approving Sale of Certain of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; (II) Approving of Debtor's Assumption and Assignment of Certain Executory Contracts; and (III) Waiving the 10-Day Stay Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d)** on the interested parties in this action by placing the original thereof enclosed in a sealed envelope and by causing such envelope with postage thereon fully prepaid to be placed in the United States mail, at Torrance, California, addressed as follows:

      See Service List Attached

[X]   **(BY MAIL)** As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Torrance, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on **December 17, 2007**, at Torrance, California.

    [X]   Federal:     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

                                       /S/
                                    Michelle Carpenter

1          MTI Technology Corporation

2
   MTI Technology Corporation
3  Attn.: Thomas P. Raimondi, Jr
   15641 Read Hill Ave., Suite 200
4  Tustin, CA  92780

5  United States Trustee
   Attn.: Frank Cadigan
6  Terry Biers
   411 West Fourth Street, Suite 904
7  Santa Ana, CA 92701-4593

8  Robert Opera, Esq.
   Winthrop Couchot, P.C.
9  660 Newport Center Drive, 4th Floor
   Newport Beach, CA  92660
10
   Bingham, McCutchen, LLP
11 Attn.: William F. Govier
   355 South Grand Ave.
12 Los Angeles, CA  90071

13 Robert L. Eisenbach III
   Cooley Godward Kronish LLP
14 101 California Street, 5th Floor
   San Francisco, CA  94111-5800
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SERVICE LIST FOR ENTERED ORDER

| **SERVED ELECTRONICALLY** | **SERVED BY U.S. MAIL** |
|---|---|
| Clarkson, Gore & Marsella<br>3424 Carson Street, Suite 350<br>Torrance CA  90503 | MTI Technology Corporation<br>Attn.: Thomas P. Raimondi, Jr<br>15641 Read Hill Ave., Suite 200<br>Tustin, CA  92780 |
| Robert Opera, Esq.<br>Winthrop Couchot, P.C.<br>660 Newport Center Drive, 4th Floor<br>Newport Beach, CA  92660 | William F. Govier<br>Bingham, McCutchen, LLP<br>335 S, Grand Ave.<br>Los Angeles, CA  90071 |
| United States Trustee<br>Attn.: Frank Cadigan<br>Terry Biers<br>411 West Fourth Street, Suite 904<br>Santa Ana, CA 92701-4593 | |
| Robert L. Eisenbach III<br>Cooley Godward Kronish LLP<br>101 California Street, 5th Floor<br>San Francisco, CA  94111-5800 | |

Order Approving Sale of European Assets