1  **SCOTT C. CLARKSON, ESQ.** SBN 143271
   **EVE A. MARSELLA, ESQ.** SBN 165797
2  **CHRISTINE M. FITZGERALD, ESQ.** SBN 259014
   **CLARKSON, GORE & MARSELLA**
3  **A PROFESSIONAL LAW CORPORATION**
   **3424 Carson Street, Suite 350**
4  **Torrance, California 90503**
   **(310) 542-0111 Telephone**
5  **(310) 214-7254 Facsimile**

6  Attorneys for MTI Technology Corporation, Debtor and
   Debtor in Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10 In re                                  | Case No.  8:07-bk-13347-ES

11 MTI TECHNOLOGY CORPORATION, a          | Chapter 11
   Delaware corporation,

12          Debtor and Debtor
13          in Possession.               **NOTICE OF AND MOTION FOR ORDER
                                          DISALLOWING JS NORTHPOINTE, LP'S
                                          CLAIM NO. 187 MEMORANDUM OF POINTS
14                                        AND AUTHORITIES; DECLARATION IN
                                          SUPPORT**

15                                        Date:  June 16, 2009
16                                        Time:  10:30 a.m.
                                          Ctrm:  5A
17                                              411 West Fourth Street
                                              Santa Ana, CA
18

19

20      **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY**

21 **JUDGE AND ALL INTERESTED PARTIES:**

22      **PLEASE TAKE NOTICE THAT** pursuant to §502 of Title 11 of the United States

23 Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy (the "Bankruptcy

24 Rules"), and Local Bankruptcy Rule 3007-1, Debtor MTI Technology Corporation ("Debtor")

25 hereby files this objection (the "Objection") to the claim of JS Northpointe, LP (the "Landlord"),

26 as more fully set forth below.  A true and correct copy of the Proof of Claim (the "Disputed

27 Claim") to which objection is taken is attached hereto as **Exhibit "A".**

28

1    This notice ("Notice") contains important time-sensitive information about asserted

2    claims against the Debtor. Please read this Notice in its entirety. This Notice explains the

3    procedures for responding to this Objection and the consequences of failing to submit a timely

4    response to this Objection.

5    **PLEASE TAKE FURTHER NOTICE THAT** Local Bankruptcy Rule 9013-1, made

6    applicable to this Objection pursuant to Local Bankruptcy Rule 3007-1, requires that any

7    response to the Objection be filed with the Clerk of the Court, 411 West 4th Street, Santa Ana,

8    CA 92701, and served upon the attorneys for the Debtor at the address set forth in the upper left-

9    hand corner of the first page hereof, and all other interested parties, not later than 14 days prior to

10   the hearing date.  The failure to timely file and serve written opposition may be deemed by the

11   Court to be consent to the granting of the relief requested in the Motion.

12   Dated: May 8, 2009                          CLARKSON, GORE & MARSELLA
                                                 A Professional Law Corporation
13

14                                               By: _____
15                                                  Scott C. Clarkson
                                                    Eve A. Marsella
16                                                  Attorneys for MTI Technology Corporation

17

18

19

20

21

22

23

24

25

26

27

28

Notice of and Motion for Disallowing  JS Northpointe, LLP
Claim No. 187

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION[1]

A.    Introduction and claim objection

The Debtor files this claim objection to the unsecured priority claim filed by JS Northpointe, LP (the "Landlord").   As fully set forth below, the Debtor objects both to the amount and the priority status.  The Debtor believes the claim should be allowed as a general unsecured claim in the amount of $2,190.71 only.  The remainder of the claim should be disallowed since (a) the Landlord has mitigated its damages by re-letting the premises to a third party; (2) even if the Landlord had not mitigated, the amount sought is for the life of the underlying lease and exceeds the statutorily allowed cap; and (3) it is not a priority claim, as asserted.

The Landlord is a former landlord of the Debtor and has filed an unsecured priority claim in the amount of $1,362,867.30, consisting of: (1) $1,360,676.60 for lease termination damages through the life of the lease (i.e., the year 2012) and (2) $2,190.71 for parking signs ordered and placed pre-petition.   The Debtor objects to the portion of the claim lease termination damages since the Landlord's damages have been fully mitigated.  The Debtor does not object to the $2,190.71 for parking signs, which should be allowed as a general unsecured claim.

B.    The Lease Between the Landlord and the Debtor

On August 6, 2007, the Debtor executed a standard multi-tenant office lease agreement with the Landlord for the lease of approximately10,657 square feet for approximately $21,534.00 per month for an initial term of sixty-three (63) months, commencing September 1, 2007 (the "Lease").  Under the terms of the Lease, the Debtor was not required to make any monthly payments until January 1, 2008.  A true and correct copy of the Lease and addendum to the Lease is attached to the Proof of Claim attached as **Exhibit "A"**.

On October 15, 2007, the Debtor filed a voluntary petition for relief under Chapter 11 of

---

[1] The information set forth in this section is supported by the annexed declaration of Scott J. Poteracki ("Poteracki Declaration").

1 | Title 11 of the United States Code.

2 |     C.    <u>Mitigation of the Lease by the Landlord</u>

3 |     On December 10, 2007, the Debtor executed a new, post-petition lease with the Landlord

4 | commencing January 1, 2008, for approximately 2,500 square feet portion of the 10,657 square

5 | feet previously leased for $2,500.00 a month.  A true and correct copy of the second lease

6 | agreement between the Debtor and the Landlord is attached hereto as **Exhibit "B"**.

7 |     On March 28, 2008, the Landlord executed a lease with the Zealous Trading Group, Inc.

8 | and Ault Glazer & Co., Inc., commencing June 1, 2008 to May 31, 2011, for the entire

9 | 10,767square feet, previously occupied by the Debtor, for $20,995.65 a month.  A true and

10 | correct copy of the lease agreement between the Landlord and Zealous Trading Group, Inc. and

11 | Ault Glazer & Co., Inc. is attached hereto as **Exhibit "C"**.

12 |     On or about April 13, 2008, the Landlord formally notified the Debtor that it was

13 | terminating its post-petition lease agreement with the Debtor, so that its new tenants could move

14 | into the premises.

15 |     The Landlord has mitigated by re-letting the premises to the Debtor and then to Zealous

16 | Trading Group, Inc. and Ault Glazer & co., Inc.  The Landlord has failed to provide evidence of

17 | mitigation, and the Landlord's claim should be disallowed accordingly.  Moreover, and

18 | notwithstanding the mitigation, as set forth below, the Landlord's filed priority claim in the

19 | amount of $1,362,867.30 exceeds the statutory cap, and there is no basis for the assertion of

20 | priority status.  Accordingly, the claim should be substantially reduced.  If this claim is

21 | substantially reduced through mitigation and disallowed, the Debtor may be able to increase the

   | payout to its unsecured creditors.

22 | **II.**

23 | <u>**ARGUMENT**</u>

24 |     A.    <u>THE DEBTOR IS A PROPER PARTY TO OBJECT TO CLAIMS</u>

25 |     Pursuant to §502 of the Bankruptcy Code, the allowance or disallowance of claims must

26 | be determined by the Court after an objection is made.  Section 502 of the Bankruptcy Code

27 | provides, in relevant part:

28 |

(a) A claim ... proof of which is filed under [11 U.S.C. §501] is deemed allowed, unless a party in interest ... objects.

11 U.S.C. §502. The Debtor not only may bring objections as a party in interest, but is the party upon which devolves the duty to bring objections.

B.      THE COURT MUST DETERMINE THE ALLOWABLE AMOUNT OF A

CLAIM SUBJECT TO OBJECTION.

With certain exceptions, §502(b) of the Bankruptcy Code requires that:

> ...if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that --

> (1)      such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured ... or

> (9)      proof of such claim is not timely filed ...

11 U.S.C. §502(b)(1) & (9). As set forth herein and in the attached Poteracki Declaration, the Disputed Claim should be disallowed based on the foregoing provisions.

C.      THE CLAIMANT MUST ESTABLISH THE VALIDITY OF THE CLAIM BY

A PREPONDERANCE OF THE EVIDENCE

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claims. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *see also In re Pugh*, 157 B.R. 898, 901 (Bankr. 9th Cir. 1993); *In re Fidelity Mortgage Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988) (affirming disallowance of claim -- "the claimant must ... 'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests upon the claimant").

> Usually, the objector must produce evidence sufficient to:
> negate the prima facie validity of the filed claim.  In practice, the objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

*Consolidated Pioneer*, 178 B.R. at 226.

But, since "the ultimate burden of persuasion is always on the claimant", the burden of

Notice of and Motion for Disallowing  JS Northpointe, LLP
Claim No. 187

1    proof then "reverts to the claimant to prove the validity of the claim by a preponderance of the

2    evidence." *Id.*; *In re Pugh*, 157 B.R. 898 (9th Cir.BAP 1993); In re *Holm*, 931 F.2d 620 (9th Cir.

3    1991).

4         The Debtor has submitted evidence, the Poteracki Declaration and exhibits, to negate the

5    prima facie validity of the claim to which objection is taken.  Thus, the burden is on the Landlord

6    to provide admissible evidence proving the validity of the claim.

7    D.      THE LANDLORD HAS NOT MET ITS BURDEN OF PROOF

8         As stated above, with respect to the Debtor's objection to the Landlord's claim, the

9    Landlord has not submitted evidence of mitigation of damages and has relet the premises,

10   substantially or completely mitigating its damages.

11        Section 502(b)(6) of the Bankruptcy Code provides:
              (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
12            such objection to a claim is made, the court, after notice and a hearing, shall
              determine the amount of such claim...as of the date of the filing of the petition,
13            and shall allow such claim in such amount, except to the extent that -

14            (6) if such claim is the claim of a lessor for damages resulting from the
              termination of a lease for real property, such claim exceeds -

15                  (A) the rent reserved by such lease, without acceleration, for the greater of
                    one year, or 15 percent, not to exceed three years, of the remaining term of
16                  such lease, following the earlier of --

17                        (i) the date of the filing of the petition; and,

18                        (ii) the date on which such lessor repossessed, or the lessee
                          surrendered, the leased property; plus
19

20                  (B) any unpaid rent due under such lease, without acceleration, on the

21                  earlier of such dates...

22   11 U.S.C. §502(b)(6).

23        A number of issues arise as a result of §502(b)(6). First, the date of the petition is the

24   relevant date for determining the cap on the Landlord's damage claims, unless the lease was

25   surrendered prior to the bankruptcy filing[2]. The payment of post-petition rent by the Debtor to

26   the Landlord is a separate issue, which most courts have held is not to be deducted from the

27   _____

28   [2]  Here, the Lease was surrendered post-petition. The Lease was deemed rejected by operation
         of law pursuant to 11 U.S.C. §365(d)(4)(A).

§502(b)(6) claim. Courts reason that the post-petition rent claim is a necessary expense under §365(d)(3) and is entitled to administrative expense priority under §503(b)(1)(A). "Post-petition payments have no relevance to a claim for rejection or breach of the pre-bankruptcy lease agreement." *In re First Alliance Corp.*, 140 B.R. 531, 533 (9th Cir. BAP 1992).   Here, there are no post-petition rent issues.

Additionally, as is set forth below, there is an *affirmative* duty upon the Landlord to mitigate its damages.

E.   MITIGATION BY THE LANDLORD

"Section 502(b)(6) does not create substantive legal rights on behalf of a landlord against a debtor in default, nor does it limit any rights of this type which do exist. The source of any such debtor-creditor rights is state law. Section 502(b)(6) merely limits the damages a landlord can collect from a debtor for 'termination' of their lease. It does not operate to grant nor bar a claim." *In re McLean Enterprises, Inc.*, 105 B.R. 928 (Bankr. W.D. Mo. 1989); *see also, In re McSheridan*, 184 B.R. 91, 96, (9th Cir. BAP 1995) ("Section 502(b)(6) limits the landlord's claim for damages, which is determined by state law...as well as by the terms of the lease or contract between the parties"); *In re Thompson*, 116 B.R. 610 (Bankr. S.D. Ohio 1980) (the bankruptcy court is to determine the amount of the landlord's claim in accordance with both state law and the contract between the parties); *In re Goldblatt Bros., Inc.*, 66 B.R. 337 (Bankr. N.D. Ill. 1986) (bankruptcy law merely limits a landlord's damage claim, it does not provide a formula for ascertaining damages).

"[A] claim for damages under section 502(b)(6) is subject to mitigation including an obligation on the party of the landlord to attempt the re-letting of the premises. Any rents received in consequence of re-letting are not, however, applied toward satisfaction of the section 502(b)(6) claim after making the statutory calculations, rather, such payments are deducted from the landlord's total actual lease termination damages, before the section 502(b)(6) cap is applied." *In re Bob's Sea Ray Boats, Inc.*, 143 B.R. 229 (Bankr. D.N. Dak. 1992); *See also, In re Child World, Inc.*, 353 B.R. 349, 352 (Bankr. S.D.N.Y. 1993) ("The landlord can mitigate its 502(b)(6) damages by re-letting the premises, which will reduce the landlord's total actual lease termination damages.") A landlord is not automatically entitled to a year's base rent under

Notice of and Motion for Disallowing JS Northpointe, LLP
Claim No. 187

1   §502(b)(6); rather, the extent of a landlord's damage claim depends on certain factual issues,

2   such as a landlord's attempts to mitigate damages, including whether and when the landlord

3   secured a new tenant. *See, In re Destron, Inc.*, 40 B.R. 927 (Bankr. N.D. Ill. 1984).

4       In explaining the calculation of a landlord's damage claim where the landlord had

5   mitigated its damages by re-letting the premises, one court stated:

6       Post-petition rent payments received from the tenant to whom the landlord re-let
        the premises are deducted from landlord's total actual lease termination damages,
7       before the section 502(b)(6) cap is applied. The primary damage a landlord
        suffers upon termination of a lease is the loss of the future rental income the
8       landlord expected to receive under the terminated lease. The landlord can mitigate
        these damages by re-letting the property. Any new tenant reduced the landlord's
9       total actual lease termination damages.

10  *In re Atlantic Container Corp.*, 133 B.R. 980, 989-90 (Bankr. N.D. Ill. 1991) (citation omitted);

11  *see also, In re Heck's, Inc.*, 123 B.R. 544 (Bankr. S.D. W.Va. 1991); *In re Goldblatt's*, 66 B.R. at

12  347-348; *In re Monetary Group*, 91 B.R. 138, 142, n. 7 (Bankr. M.D. Fla. 1988); *In re All For A*

13  *Dollar, Inc.*, 191 B.R. 262, 264-65 (Bankr. D.Mass. 1996).

14      The only case to the contrary is *In re Iron-Oak Supply Corp.*, 169 B.R. 414, 420 (Bankr.

15  E.D. Cal. 1994). In that case, Judge Klein stated:

16      [A] landlord's allowable damages are the lower of (1) the statutory cap computed
        in accordance with the ordinary language of §502(b)(6) **ignoring mitigation** or
17      (2) total rejection damages, which take mitigation into account, available under
        non-bankruptcy law.
18

19  (Emphasis added).

20      In reaching this decision, the bankruptcy court erroneously relied on *In re Financial New*

21  *Network, Inc.*, 149 B.R. 348 (Bankr. S.D.N.Y. 1993). The *Financial Network* case did not

22  address a landlord's duty to mitigate under state law and the effect of mitigation on a landlord's

23  bankruptcy claim. Rather, the *Financial Network* case addressed **post-petition rent** payments

24  made to the landlord **by the debtor**. Section 502(b)(6) specifically states that the relevant time

25  for determining a landlord's claim is on the petition date, if the lease was rejected post-petition.

26  An attempt to obtain credit for those payments made by the debtor post-petition would merely

27  provide debtors with an incentive to avoid paying post-petition rent, which is afforded

28  administrative expense priority. In fact, in *Financial Network*, the bankruptcy court held that

1  §502(b)(6) does not limit administrative expense claims for use of the leased premises.

2          Additionally, the landlord's failure to mitigate damages may be raised by the debtor as a

3  defense to a claim arising from rejection. *See, In re R.O. Elevator Co.,* 93 B.R. 667.  The

4  Landlord's rejection claim is for $1,362,867.30, filed as a priority. If this claim is substantially

5  reduced through mitigation, the Debtor may be able to increase the payout to its unsecured

6  creditors.  In this case, the holder of the Disputed Claim has not reduced the amount of the

7  Disputed Claim to appropriately reflect mitigation of its damages.

8          1.  The Landlord's Claim Resulting From Breach of the is capped under §502(b)(6).

9          Under §502(b)(6) of the Bankruptcy Code, a Landlord's Claim resulting from damages

10  from the termination of a lease of real property is limited to either "…the greater of one year, or

11  15 percent, not to exceed three years, of the remaining term of such lease…"  In this case, the

12  one year calculation yields the great number, $205,184.29 (See **Exhibit "D"** attached hereto, for

13  breakdown of calculations).

14          2.  The Landlord has Completely Mitigated its Damages.

15          On or about March 28, 2008, the Landlord executed a lease by which it re-let the

16  premises to Zealous Trading Group, Inc. and Ault Glazer & Co., Inc., under which the Landlord

17  is to receive a total of $768,744.00 in rent over the three year lease term.  Therefore, the

18  Landlord has mitigated all of its damages arising from the Debtor's breach of the lease to zero

19  (See **Exhibit "E"** attached hereto, for breakdown of calculations.)

20  F.    CLAIMS ASSERTED ON SOME OTHER BASIS SHOULD BE
       DISALLOWED FOR FAILURE TO SET FORTH THE BASIS OF THE CLAIM

21          To the extent that the Landlord asserts claims on some basis other than as set forth on its

22  proof of claim or otherwise asserted, *such as the assertion of the claim as a priority*, the proof of

23  claim fails to set forth the basis of the claim, and should be disallowed for that reason. Well-

24  established case law requires that a proof of claim set forth facts sufficient to establish the

25  debtor's liability to the claimant. *In re Circle J. Dairy*, 112 B.R. 297, 300 (W.D.Ark. 1989)

26  (quoting Collier on Bankruptcy). This minimal requirement is necessary to avoid abuses of the

27  claim process and to ensure that the debtor has sufficient information to prepare an objection to a

1    proof of claim. *In re All American-Auxiliary Association*, 95 B.R. 540, 545 (S.D. Ohio 1989).

2    Without a recitation of facts underlying the alleged liability, the debtor cannot meet its burden of

3    going forward with evidence to establish the invalidity of the claim. *See, Id.* A debtor can hardly

4    be expected to prove a negative, that is, to present evidence disproving the undisclosed facts and

5    theories of a claimant. Imposing such a burden is contrary to the rationale underlying allocation

6    of the burden of proof. *In re Jordan*, 91 B.R. 673, 684 (E.D. Pa. 1988) (the logic of allocation of

7    burden of proof is that it is necessarily placed on the party who has the most knowledge, and the

8    best means of proof on a given issue at his disposal). Thus, when a proof of claim fails to set

9    forth facts sufficient to enable the Debtor to ascertain the nature of the claim asserted, the Court

10    should disallow the claim in its entirety.

11       Here, the Landlord has asserted that its claim should be entitled to priority status. The

12    Landlord has not offered any evidence justifying such classification. The portion of the claim to

13    which the Debtor does not object relates to the purchase of pre-petition parking signage. This is

14    a general unsecured claim. The remaining portion of the Landlord's claim relates to lease

15    termination damages, which is also a general unsecured claim; although it has been fully

16    mitigated. Accordingly, the Landlord's claim should be reclassified, as set forth above, to a

17    general unsecured claim and any other basis disallowed.

### III.

### CONCLUSION

For all of the foregoing reasons, the Debtor respectfully requests that the Court enter an

order disallowing $1,360,676.60 of the Disputed Claim attached hereto, and allowing the claim

in the amount of $2,190.71 as a general unsecured claim.

Dated: *May 8*, 2009

CLARKSON, GORE & MARSELLA
A Professional Law Corporation

By: _____
    Scott C. Clarkson
    Eve A. Marsella
    Christine M. Fitzgerald
    Attorneys for MTI Technology Corporation

1

## DECLARATION OF SCOTT J. POTERACKI

2      I, Scott J. Poteracki, declare as follows:

3      1.  I am the Chief Restructuring Officer of MTI Technology Corporation, (the "Debtor"), the

4 Debtor in the above-captioned proceeding.  Prior to the Debtor's bankruptcy filing, I was the

5 CFO and Executive Vice President of the Debtor with direct supervisory responsibilities over the

6 financial affairs and operations of the Debtor.   I have personal knowledge of the following, or

7 have gained such knowledge from my review of the records of the Debtor, which are obtained,

8 created and maintained in the ordinary course of business, and if called as a witness, could and

9 would competently testify thereto.

10      2.  The Debtor filed a Chapter 11 petition on October 15, 2007.

11      3.  I am personally familiar with the books and records of the Debtor as they relate to the

12 Debtor's accounts payable as of the date of the filing of the Debtor's bankruptcy case (the

13 "Accounts Payable Books").  The Accounts Payable Books were made by the employees of the

14 Debtor who had a business duty to enter the records of the Debtor accurately at or near the time

15 of the event which they record such information, by or from information transmitted by someone

16 with personal knowledge of the event or act. To the extent that information contained in the

17 Debtor's books and records was computer-generated, the computers used by the Debtor were

18 generally accepted in the Debtor's industry, were in good working order at all relevant times, and

19 the computer operator possessed the knowledge and training to operate the computer correctly.

20      4.  I have reviewed and analyzed the Debtor's Schedules of Assets and Liabilities (the

21 "Schedules"), the proofs of claim filed in this case, and the database f claims information

22 maintained for the Debtor by Omni Management Group in order to assist in the preparation of

23 these objections to claims.  I have also consulted with the Debtors' bankruptcy counsel to assist

24 in the preparation of these objections to claims.

25      5.  The Debtor's employees have reviewed the Schedules, as well as each Claim filed against

26 the Debtor's estate and have reconciled the Schedules and Claims to the Debtor's books and

27 records.  With respect to the leases, the Debtor's employees reviewed lease information.

28

6.   The Debtor files this claim objection to the unsecured priority claim filed by JS Northpointe, LP (the "Landlord").   As fully set forth in the attached Objection, the Debtor objects both to the amount and the priority status.  The Debtor believes the claim should be allowed as a general unsecured claim in the amount of $2,190.71 only.  The remainder of the claim should be disallowed since (a) the Landlord has mitigated its damages by re-letting the premises to a third party; (2) even if the Landlord had not mitigated, the amount sought is for the life of the underlying lease and exceeds the statutorily allowed cap; and (3) it is not a priority claim, as asserted.

7.   The Landlord is a former landlord of the Debtor and has filed an unsecured priority claim in the amount of $1,362,867.30, consisting of: (1) $1,360,676.60 for lease termination damages through the life of the lease (i.e., the year 2012) and (2) $2,190.71 for parking signs ordered and placed pre-petition.   The Debtor objects to the portion of the claim lease termination damages since the Landlord's damages have been fully mitigated.  The Debtor does not object to the $2,190.71 for parking signs, which should be allowed as a general unsecured claim.

8.   On August 6, 2007, the Debtor executed a standard multi-tenant office lease agreement with the Landlord for the lease of approximately10,657 square feet for approximately $21,534.00 per month for an initial term of sixty-three (63) months, commencing September 1, 2007 (the "Lease").  Under the terms of the Lease, the Debtor was not required to make any monthly payments until January 1, 2008.  A true and correct copy of the Lease is attached to the Proof of Claim attached as Exhibit "A".

9.   On December 10, 2007, the Debtor executed a new, post-petition lease with the Landlord commencing January 1, 2008, for approximately 2,500 square feet portion of the 10,657 square feet previously leased for $2,500.00 a month.  A true and correct copy of the second lease agreement between the Debtor and the Landlord is attached hereto as Exhibit "B".

10. On March 28, 2008, the Landlord executed a lease with the Zealous Trading Group, Inc. and Ault Glazer & Co., Inc., commencing June 1, 2008 to May 31, 2011, for the entire 10,767square feet, previously occupied by the Debtor, for $20,995.65 a month.  A true and

1  correct copy of the lease agreement between the Landlord and Zealous Trading Group, Inc. and

2  Ault Glazer & Co., Inc is attached hereto as **Exhibit "C"**.

3      11. On or about April 13, 2008, the Landlord formally notified the Debtor that it was

4  terminating its post-petition lease agreement with the Debtor, so that its new tenants, Zealous

5  Trading Group, Inc. and Ault Glazer & Co., Inc. could move into the premises.

6      I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct and that this Declaration is executed on____J . 6____, 2009, at

8  ____TUSTIN____, California.

9

10                                                    Scott J. Poteracki

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHRISTINE M. FITZGERALD

I Christine M. Fitzgerald, declare and state as follows:

1. I am employed by the law firm of Clarkson, Gore & Marsella, APLC ("CGM"), counsel to the Chapter 11 Debtor MTI Technology Corporation (the "Debtor"), in Case Number 8:07-bk-13347-ES. I have personal knowledge of the foregoing facts or have gained such knowledge from my review of the books and records of CGM, which are maintained, obtained, and created in the ordinary course of business. If called upon to testify to the following facts, I would and could competently testify thereto.

2. I have reviewed the proof of claim filed by the Landlord, the Lease, and addendum to the Lease attached the proof of claim. A true and correct copy of the proof of claim, the Lease, and addendum to the Lease are attached hereto as **Exhibit "A"**.

3. I have reviewed the lease agreement between the Landlord and Zealous Trading Group, Inc. and Ault Glazer & Co., Inc. A true and correct copy of the lease agreement between the Landlord and Zealous Trading Group, Inc. and Ault Glazer & Co., Inc. is attached hereto as **Exhibit "C"**.

4. I calculated the amount of rent allowed under § 502(b)(6) cap as follows:

    a. First, I calculated the amount of rent due for one year, starting from October 16, 2007, (the Debtor filed for bankruptcy on October 15, 2007) to October 15, 2008. Pursuant to the addendum to the Lease, rent payments for October, November, and December 2007 were abated. The amount of rent due from January 1, 2008, to August 31, 2008, is $172,272.00 ($172,272.00 = $21,534.00, base monthly rent, multiplied by 8 months). The amount of rent due from September 1, 2008, to August 1, 2008, is $22,180.02 (pursuant to addendum to lease agreement). The pro-rated amount of rent due from October 1, 2008, to October 15, 2008, is $10,732.27 (15 days divided by 31 days in October = 0.48 of the month multiplied by base monthly rent of $22,180.02 = $10,732.26). The total amount of rent due from October 16, 2007, to October 15, 2008, is $205,184.29 ($172,272.00 + $22,180.02 + $10,732.26 = $205,184.29).

    b. Second, I calculated the amount of rent due for 15% of the remaining time left on

1    the Lease.  The Lease was deemed rejected as of October 15, 2007.  The Lease was supposed to

2    end on November 30, 2012.  From October 16, 2007, to October 31, 2007, is 0.52 of the month

3    (16 days divided by 31 days in October = 0.52 of the month).  From November 1, 2007, to

4    November 30, 2012, there are 60 months.  The total amount of time remaining on the lease from

5    October 16, 2007, to November 30, 2012, is 60.52 months (0.52 + 60 = 60.52 months).  Fifteen

6    percent of 60.52 months is 9.07 months (15% multiplied by 60.52 months).  I calculated the total

7    rent due from October 16, 2008, to July 18, 2008 (approximately 9.10 months).  Pursuant to the

8    addendum to the Lease, rent payments for October, November, and December 2007 were abated.

9    I calculated the amount of rent due from January 1, 2008 to June 30, 2008 to be $147,204.00.00

10   (6 months multiplied by the base monthly rent as of the rejection date $21,534.00/month =

11   $147,204.00).  Then, I calculated the pro-rated rent due from July 1, 2008 to July 18, 2008 to be

12   $12,503.61 (18 days divided by 31 days in July = 0.58 of the month multiplied by $21,534.00

13   base monthly rent as of the rejection date = $12,503.61).  The total amount of rent due from

14   October 16, 2007 to July 18, 2008 or 9.10 months (9.10 months = 0.52 + 8 + 0.58) is

15   $159,707.61 ($147,204.00 + $12,503.61 = $159,707.61).

16       c.      I compared the amount of rent due under the one year calculation, $205,184.29, to

17   the amount of rent due under the 15% of the remaining time calculation, $159,707.61, and the

18   one year calculation is greater.

19      I prepared Exhibit D that reflects the above referenced calculations.  A true and correct copy

20   of those calculations is attached hereto as **Exhibit "D"**.

21      5.  Based on the lease agreement between the Landlord and Zealous Trading Group, Inc. and

22   Ault Glazer & Co., Inc., I calculated the amount the Landlord had mitigated it's damages by re-

23   letting the premises to Zealous Trading Group, Inc. and Ault Glazer & Co., Inc. as follows:

24      6.  The lease between the Landlord and Zealous Trading Group, Inc. and Ault Glazer & Co.,

25   Inc., was from June 1, 2008, to May 31, 2011, or 36 months.  Rent was due and payable for 33

26   months (pursuant to addendum to the lease rent was bated for 3 months).  The total amount

27   owing to the Landlord from this lease is $692,856.45.  Subtracting the amount of mitigation from

28

Notice of and Motion for Disallowing  JS Northpointe, LLP
Claim No. 187

1    re-letting the premises ($692,856.45) from the one year cap ($205,184.29) equals -$487,672.16

2    reducing the Landlord's claim for lease termination damages to zero.

3        I prepared Exhibit E that reflects the above referenced calculations.  A true and correct

4    copy of those calculations is attached hereto as **Exhibit "E"**.

5        I declare under penalty of perjury pursuant to the laws of the United States of America that

6    the foregoing is true and correct. Executed this _8_ day of May, 2009 in Torrance, California.

7

8

9                    Christine M. Fitzgerald

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of and Motion for Disallowing  JS Northpointe, LLP
Claim No. 187