1  Scott C. Clarkson, Esq. (CA Bar No. 143271)
   Eve A. Marsella, Esq. (CA Bar No. 165797)
2  Clarkson, Gore & Marsella, APLC
   3424 Carson Street, Suite 350
3  Torrance, California 90503
   Telephone: 310/542-0111
4  Facsimile: 310/214-7254
   Email: sclarkson@lawcgm.com
5
6  Attorneys for Debtor and Debtor-in-Possession
   MTI Technology Corporation
7  ROBERT E. OPERA – State Bar No. 101182
   ropera@winthropcouchot.com
8  **WINTHROP COUCHOT**
9  **PROFESSIONAL CORPORATION**
   660 Newport Center Drive, Fourth Floor
10 Newport Beach, CA 92660
   Telephone: (949) 720-4100
11 Facsimile: (949) 720-4111
12 Attorneys for the Official Committee of Unsecured
   Creditors
13
14          **UNITED STATES BANKRUPTCY COURT**
15          **CENTRAL DISTRICT OF CALIFORNIA**
16              **SANTA ANA DIVISION**
17
18 In re:                              Case No.: 8:07-13347-ES
19 MTI TECHNOLOGY CORPORATION,         Chapter 11
   A Delaware corporation,
20                                      **DEBTOR'S AND COMMITTEE'S JOINT**
                                        **SECOND AMENDED DISCLOSURE**
21          Debtor and                  **STATEMENT DESCRIBING DEBTOR'S AND**
            Debtor in Possession        **COMMITTEE'S JOINT SECOND AMENDED**
22                                      **CHAPTER 11 PLAN**
23                                      Disclosure Statement Hearing
24                                      Date:    [To Be Set]
                                        Time:    [To Be Set]
25                                      Place:   Courtroom 5A
                                                 411 West Fourth Street
26                                                Santa Ana, CA 92701-4593
27
28

*Left margin vertical text:* CLARKSON, GORE & MARSELLA, APLC  ATTORNEYS AT LAW  TORRANCE, CALIFORNIA

1

## TABLE OF CONTENTS

2
                                                                                                    **Page**

3    I.    INTRODUCTION ................................................................................................ 2

4    II.   DEFINITIONS AND RULES OF CONSTRUCTION ...................................... 7
          A.    Defined Terms. ...................................................................................... 7
5         B.    Rules of Interpretation. ....................................................................... 21
          C.    Exhibits. ................................................................................................ 22
6
     III.  OVERVIEW OF THE CHAPTER 11 PROCESS, THE PLAN AND
7          VOTING ON THE PLAN ................................................................................ 22
          A.    The Chapter 11 Process. ...................................................................... 22
8         B.    Overview of the Plan Proponents' Proposed Plan. .......................... 23
          C.    Plan Confirmation and Voting and Objections to the Plan. ............ 24
9               1.    Voting on the Plan ...................................................... 25
                2.    Deadline for Voting for or Against the Plan ............... 26
10              3.    Time and Place of the Confirmation Hearing ............ 26
                4.    Deadline for Objecting to the Confirmation of the Plan .............. 26
11              5.    Plan Confirmation ...................................................... 27
                6.    Identity of Persons to Contact for More Information
12                    Regarding the Disclosure Statement of the Plan ......... 28

13   IV.   BACKGROUND OF THE DEBTOR ............................................................... 28
          A.    Description and History of the Debtor's Business. ......................... 288
14              1.    European Subsidiaries. ............................................... 29
                2.    Collective ................................................................... 29
15              3.    Domestic Sales and Service Division ......................... 29
          B.    Corporate History. .............................................................................. 29
16        C.    Events Precipitating the Debtor's Bankruptcy Filing. ..................... 30
          D.    Management of the Debtor Before and After the Petition Date. ...... 31
17              1.    Prior to the Petition Date ........................................... 31
                      a.    Key Managers ................................................. 31
18                    b.    Corporate Directors ....................................... 31
                2.    After the Petition Date ............................................... 31
19                    a.    Scott Poteracki .............................................. 31
                      b.    Thomas P. Raimondi, Jr. ............................... 32
20                    c.    Todd Schaeffer .............................................. 32
          E.    Events Leading to the Debtor's Chapter 11 Filing. ......................... 32
21              1.    Delay in Closing of Sale of European Subsidiaries ... 32
                2.    Disputes with EMC ..................................................... 32
22              3.    Problems with Sales Force .......................................... 32
                4.    Canopy ........................................................................ 33
23        F.    Significant Events During the Case. ................................................. 33
                1.    Case Administration .................................................... 33
24                    a.    Omni ............................................................... 33
                      b.    Rejection of Leases. ....................................... 33
25              2     First-Day Motions and Early Case Motions ............... 33
                3.    Asset Sale Procedures Motion for European Subsidiaries ........... 34
26              4.    Sale Motion .................................................................. 34
                5.    Post-Petition Financing ............................................... 35

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

# TABLE OF CONTENTS

## (CONTINUED)

**Page**

6. Sale of Various United States Assets ........................................................35
   a. Collective ....................................................................................35
   b. Furniture and Equipment Auction. .........................................36
   c. National Customer Engineering, Inc. ....................................36
7. The Debtor's Secured Creditors as of the Petition Date.....................37
   a. Wells Fargo Facility ..................................................................37
   b. The Canopy Facility. ................................................................37
8. Accounts Receivable Collection/Litigation with Lenox....................39
   a. Accounts Receivable ................................................................39
   b. Lenox. ..........................................................................................39
   c. Rockwell. ....................................................................................39
9. Employment of Professionals ..................................................................39

V. LITIGATION AND OBJECTIONS TO CLAIMS ........................................40
   A. Litigation Commenced Prior to the Petition Date. ............................40
   B. Litigation Commenced After the Petition Date. ................................40
      1. Litigation .........................................................................................41
         a. EMC ..............................................................................................41
         b. Pencom Defendants. ................................................................41
         c. FusionStorm. ..............................................................................42
      2. Claims Objections..........................................................................43
      3. Subordination Actions ..................................................................43

VI. DESCRIPTION OF THE PLAN .......................................................................44
   A. Basic Structure of the Plan. ....................................................................44
   B. Classification and Treatment of Claims. ..............................................44
   C. Unclassified Claims..................................................................................45
      1. Allowed Administrative Claims ................................................45
         a. Payment ......................................................................................45
         b. Administrative Claims Bar Date. ..........................................46
         c. Deadline for Objections. ..........................................................46
         d. United States Trustee Fees. .....................................................47
         e. Pre-Effective Date Professional Fee Claims. .......................47
      2. Priority Tax Claims........................................................................47
   D. Classification of Claims and Interests Under the Plan. ....................47
      1. Overview .........................................................................................47
      2. Designation of Classes ................................................................48
         a. Allowed Claims .........................................................................48
         b. Interests ......................................................................................48
      3. Summary of Classification ..........................................................48

VII. TREATMENT OF CLASSES UNDER THE PLAN .....................................49
   A. Class 1 -- Any Allowed Secured Claims. .............................................49
      1. Treatment of Allowed Secured Claims. ....................................50
         a. Option 1 ......................................................................................50
         b. Option 2. .....................................................................................50
         c. Option 3. .....................................................................................50
         d. Option 4. .....................................................................................50

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**TABLE OF CONTENTS**

**(CONTINUED)**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

| | | Page |
|---|---|---|
| B. | Class 2 -- Allowed Priority Non-Tax Claims. | 51 |
| C. | Class 3 -- Allowed General Unsecured Claims. | 51 |
| | 1. Pro Rata Distribution of Plan Fund Proceeds | 51 |
| | 2. Timing of Distributions | 51 |
| | 3. Postpetition Interest | 52 |
| | 4. Conditions to Distributions | 52 |
| | 5. Distribution of Post-Effective Date Stock | 53 |
| | 6. Limitation on Distributions | 53 |
| D. | Class 4 -- Canopy Claim. | 53 |
| E. | Class 5 -- Allowed Subordinated Claims. | 53 |
| | 1. Pro Rata Distribution of Plan Fund Proceeds | 54 |
| | 2. Timing of Distributions | 54 |
| | 3. Postpetition Interest | 54 |
| | 4. Conditions to Distributions | 55 |
| | 5. No Distribution of Post-Effective Date Stock | 55 |
| | 6. Limitation on Distributions | 55 |
| F. | Class 6 -- Allowed Interests. | 55 |
| | 1. Cancellation of Interests | 56 |
| | 2. No Voting on Plan | 56 |
| | 3. Allowed Interests | 56 |
| VIII. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 57 |
| A. | Overview. | 57 |
| B. | Condition Precedent to Plan Confirmation. | 57 |
| C. | Conditions Precedent to the Effectiveness of the Plan. | 57 |
| D. | Implementation of Plan. | 58 |
| E. | Corporate Action. | 59 |
| F. | Plan Agent/Vesting of Assets | 59 |
| | 1. Employment of Plan Agent | 59 |
| | 2. Transfer of Assets | 59 |
| | 3. Disposition of Plan Assets | 60 |
| G. | Termination of Debtor's Officers, Directors, Employees and Professionals. | 60 |
| H. | Plan Fund Proceeds/Plan Administration. | 60 |
| | 1. Distribution of Plan Fund Proceeds | 60 |
| | 2. Plan Agent's Implementation of Plan | 60 |
| | 3. Representative of Estate | 60 |
| | 4. Plan Agent Disclosure | 61 |
| | 5. No Liability of Post-Effective Date Committee, the Plan Agent or the Reorganized Debtor | 61 |
| | 6. Funding of Post-Effective Date Plan Expenses | 62 |
| I. | Termination of the Committee and Appointment of the Post-Effective Date Committee. | 62 |
| | 1. Replacement of the Committee. | 62 |
| | 2. Members of Post-Effective Date Committee. | 63 |
| | 3. Duties of Members of Post-Effective Date Committee | 63 |
| J. | The Reorganized Debtor. | 63 |
| | 1. Corporate Powers | 63 |
| | 2. Board of Directors | 63 |

MTI Disclosure Statement v1.3

iii

# TABLE OF CONTENTS

## (CONTINUED)

|  |  | Page |
|---|---|---|
| 3. | Officer of the Reorganized Debtor | 64 |
| 4. | Effectuation of Merger Transaction | 64 |
| K. | Causes of Action. | 65 |
| L. | Post-Effective Date Professional Fees. | 65 |
| M. | Approval for Disposition of Plan Assets. | 66 |
| N. | Compromise of Controversies. | 66 |
| O. | Bankruptcy Court Approval Relative to Post-Confirmation Matters. | 66 |
| P. | Plan Agent Certification. | 66 |
| Q. | Final Decree. | 67 |
| R. | Merger Transaction. | 67 |
| 1. | Background | 67 |
| 2. | Merger Consummation Date | 67 |
| 3. | Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized Debtor | 68 |
| 4. | Terms of any Merger | 68 |
| 5. | Valuation of Post-Effective Date Stock | 69 |
| 6. | Election Not to Receive Post-Effective Date Stock | 69 |
| S. | Distributions. | 69 |
| 1. | Designation and Role of the Disbursing Agent | 69 |
| a. | Plan Agent to Serve as Disbursing Agent | 69 |
| b. | No Bond. | 70 |
| c. | Payment of Fees and Expenses of Disbursing Agent | 70 |
| d. | Employment of Agents | 70 |
| 2. | Distribution of Property Under the Plan | 70 |
| a. | Cash Distributions | 70 |
| b. | Setoffs and Recoupment | 70 |
| c. | Timeliness of Distributions | 71 |
| d. | Limitation on Liability | 71 |
| e. | Delivery of Distributions | 71 |
| f. | Approval for Schedule of Proposed Distributions | 72 |
| g. | Further Assurances Regarding Distributions | 72 |
| h. | Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent | 72 |
| i. | Miscellaneous | 73 |
| T. | Objections to Disputed Claims. | 73 |
| 1. | Exclusive Right to Object to Claims | 73 |
| 2. | Claims Objection Deadline | 73 |
| 3. | Investigation Regarding Disputed Claims | 73 |
| 4. | Treatment of Disputed Claims | 74 |
| a. | No Distribution Pending Allowance | 74 |
| b. | Distribution After Allowance | 74 |
| c. | Reserve for Disputed Claims | 74 |
| d. | No Distribution Until Allowance of Disputed Claim | 75 |
| 5. | Bar Date for Filing Avoidance Action Payment Claims | 75 |
| U. | Litigation. | 75 |
| 1. | Plan Agent's Authorization to Assert Causes of Action | 75 |
| 2. | Plan Agent's Evaluation of Causes of Action | 76 |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

# TABLE OF CONTENTS

## (CONTINUED)

|  |  |  | **Page** |
|---|---|---|---|
|  | 3. | Retention of Professionals | 76 |
|  | 4. | Preservation of Causes of Action | 76 |
|  | 5. | Subordination of Claims | 77 |
| V. |  | Executory Contracts And Unexpired Leases | 77 |
|  | 1. | Executory Contracts and Unexpired Leases Being Assumed | 77 |
|  | 2. | Executory Contracts and Unexpired Leases Being Rejected | 78 |
|  | 3. | Retention of Property Rights | 79 |
|  | 4. | Bar Date for Rejection Claims | 79 |
|  | 5. | Cure Claims Schedule | 79 |
| W. |  | Post-Effective Date Notice | 80 |
| X. |  | Miscellaneous Plan Provisions | 80 |
| IX. |  | EFFECT OF CONFIRMATION OF THE PLAN | 81 |
| A. |  | Discharge | 81 |
| B. |  | Injunction/Release | 82 |
| C. |  | Distribution of Property Free and Clear from Liens, Claims, and Interests | 82 |
| D. |  | Binding Effect of Plan | 82 |
| X. |  | LIMITATION OF LIABILITY | 82 |
| A. |  | No Liability for Solicitation or Participation | 82 |
| B. |  | Good Faith | 82 |
| C. |  | Limitation of Liability Regarding Plan Confirmation | 82 |
| XI. |  | CERTAIN RISK FACTORS TO BE CONSIDERED | 83 |
| A. |  | Risk that the Debtor Will Have Insufficient Cash for the Plan to Become Effective | 83 |
| B. |  | Risk Regarding the Distributions to Be Made to Creditors | 83 |
| C. |  | Bankruptcy Risks | 84 |
| XII. |  | CONFIRMATION OF THE PLAN | 84 |
| A. |  | Introduction | 84 |
| B. |  | Votes Necessary to Confirm the Plan | 85 |
| C. |  | Votes Necessary for a Class to Accept the Plan | 85 |
| D. |  | Treatment of Non-Accepting Classes | 85 |
|  | 1. | General Unsecured Claims | 86 |
|  | 2. | Interests | 86 |
| E. |  | Request for Confirmation Despite Non-Acceptance by Impaired Class(es) | 86 |
| F. |  | Feasibility of the Plan | 87 |
|  | 1. | Feasibility Analysis | 87 |
|  |  | a.   Effective Date of the Plan | 88 |
|  |  | b.   Debtor's Cash Resources as of the Effective Date | 88 |
|  |  |     (i)   Accumulated Cash from Operations ($387,517) | 88 |
|  |  |     (ii)  EMC Settlement Payment ($1,900,000) | 88 |
|  |  | c.   Allowed Secured Claims ($0) | 89 |
|  |  | d.   Administrative Claims ($175,000) | 89 |
|  |  | e.   United States Trustee Fees ($6,500) | 90 |
|  |  | f.   Cure Claims ($0) | 90 |
|  |  | g.   Allowed Priority Non-Tax Claims ($453,585) | 90 |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

### TABLE OF CONTENTS

### (CONTINUED)

Page

h.    Allowed Priority Tax Claims ($1163,729) .................................. 90
i.    Allowed General Unsecured Claims .................................. 90
j.    Causes of Action .................................. 92
k.    Expenses of Administering the Plan .................................. 92
2.    Funding of Distributions Required by the Plan .................................. 93
a.    Distributions Payable on or Soon After the Effective Date ................. 93
b.    Ongoing Distributions Under the Plan .................................. 93
(i)    The Amount of Allowed Administrative Claims, Cure Claims, United States Trustee Fees, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims .................................. 94
(ii)    Recoveries from Causes of Action .................................. 94
(iii)    Merger Transaction .................................. 94
(iv)    Amount of Allowed General Unsecured Claims .................................. 94
G.    Liquidation Analysis. .................................. 95
1.    Potentially Reduced Value of Assets in Liquidation .................................. 97
a.    Cash .................................. 97
b.    Causes of Action .................................. 98
2.    Merger Transaction .................................. 98
XIII.    CERTAIN UNITED STATES FEDERAL TAX CONSEQUENCES OF THE PLAN ...... 102
A.    Introduction. .................................. 102
B.    Consequences to the Debtor. .................................. 102
C.    Withholding of Taxes .................................. 103
XIV.    RECOMMENDATION .................................. 103

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1

# EXHIBITS

2

EXHIBIT A - The Liquidating Plan.................................................................85

EXHIBIT B - Liquidation Analysis...........................................................137

EXHIBIT C - Estates Assets...................................................................143

EXHIBIT D - Financial Statements/History....................................................145

EXHIBIT E - Wind Down Budget.................................................................147

EXHIBIT F - Liquidating Trust Agreement......................................................149

EXHIBIT G - Potential Avoidance Actions......................................................165

EXHIBIT H - List of Priority Unsecured Claims................................................169

EXHIBIT I - List of General Unsecured Claims.................................................174

EXHIBIT J – Settlement Agreement.............................................................

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

## I.

## **INTRODUCTION**

MTI Technology Corporation, the Debtor in this case, and the Committee jointly provide this Disclosure Statement to Creditors.[1] This Disclosure Statement is furnished for the purpose of soliciting acceptances to the Plan, which has been filed with the Bankruptcy Court. A copy of the Plan accompanies this Disclosure Statement.

Section 1125 of the Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by this Disclosure Statement.[2] The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, so far as is reasonably practicable, in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical Creditor to make an informed judgment about the Plan and to enable such Creditor to determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept or to reject the Plan. The Plan Proponents urge Creditors to read this Disclosure Statement because it contains important information concerning the Debtor's history, business, assets and liabilities and because it sets forth a summary of the Plan.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial data pertaining to the Debtor's business operations, the applicable provisions of the Bankruptcy Code, or any other matters that may be deemed significant by Creditors. Out of practical necessity, this Disclosure Statement represents an attempt to summarize extensive financial data, legal documents and legal principles, including provisions of the Bankruptcy Code, and set them forth in understandable, readable form. Thus, although the Plan Proponents have attempted to

---

[1] The definitions of the capitalized terms used in this Disclosure Statement are contained in Article II of this Disclosure Statement.

[2] Section 1125(b) provides, in pertinent part, as follows:
An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

-2-

1  describe fairly and accurately the matters set forth and discussed in this Disclosure Statement, the

2  Plan Proponents desire to emphasize that the documents referred to or summarized in this

3  Disclosure Statement (including, without limitation, historical financial information for the Debtor's

4  business operations) are available for review by contacting the Debtor's attorneys, Clarkson Gore

5  (Attn: Eve A. Marsella), at the address set forth at the upper left-hand corner of the first page of this

6  Disclosure Statement.

7       If a Creditor does not fully understand this Disclosure Statement, or feels that the

8  information provided herein is insufficient to enable him to determine whether to accept or to reject

9  the Plan, he is invited to make written inquiry of the Debtor's attorneys, Clarkson Gore (Attn:

10  Eve A. Marsella), or the Committee's attorneys, Winthrop Couchot (Attn: Robert E. Opera), at their

11  respective addresses set forth at the upper left-hand corner of the first page of this Disclosure

12  Statement.

13       While this Disclosure Statement provides a summary of the provisions of the Plan, if any

14  inconsistency exists between the Plan and the Disclosure Statement, the provisions of the Plan are

15  controlling. Therefore, Creditors are urged to review carefully the provisions of the Plan.

16       Only holders of Claims allowed under section 502 of the Bankruptcy Code or Claims

17  temporarily allowed for voting purposes under Rule 3018(a) of the Federal Bankruptcy Rules, and

18  whose Claims are in those Classes of Claims that are "impaired" under the Plan, are entitled to vote

19  to accept or reject the Plan.[3] Classes of Claims that are not impaired are conclusively presumed to

20  have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are

21  not entitled to vote on the Plan. The Plan Proponents believe that it is very likely that Interest

22  Holders will not receive or retain under the Plan any value on account of their Interests, and,

23  accordingly, the Class of Interest Holders under the Plan (Class 6) is deemed to have rejected the

24  Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote on the Plan.

25       Voting on the Plan, by each holder of a Claim entitled to vote on the Plan, is important. To

26  vote to accept or reject the Plan, a Creditor must indicate his acceptance or rejection thereof on the

27

28  [3] Under section 1124 of the Bankruptcy Code, a Class of Claims is impaired if the legal, equitable, or contractual rights of the Claims in the Class are altered.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-3-

1  ballot that accompanies this Disclosure Statement and return it, <u>by mail</u>, to Clarkson Gore (Attn:

2  Eve A. Marsella) in the envelope provided, such that the ballot is actually received by Clarkson

3  Gore by 4:00 p.m. on _____, 2010.  The mailing address for Clarkson Gore is listed in the

4  upper left-hand corner of the front page of this Disclosure Statement.  Each Class of Creditors

5  allowed to vote on the Plan will be deemed to have accepted the Plan if the Plan is accepted by valid

6  ballots cast by Creditors in that Class holding at least two-thirds (2/3) in dollar amount and more

7  than one half (1/2) in number of the Allowed Claims of Creditors in that Class actually voting on the

8  Plan.  **ONLY PROPERLY EXECUTED BALLOTS TIMELY TENDERED TO COUNSEL**

9  **FOR THE DEBTOR WILL BE COUNTED AS HAVING VOTED ON THE PLAN.**

10  Since mail delays may occur, and because time is of the essence, it is important that ballots

11  be returned well in advance of the date specified hereinabove as the deadline for Clarkson Gore to

12  receive ballots.  Unless otherwise allowed by the Bankruptcy Court, any ballots received after such

13  deadline will <u>not</u> be included in any calculation to determine whether the Debtor's Creditors have

14  accepted or rejected the Plan.

15  At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to section 1129

16  of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims

17  created under the Plan, and, if not, whether the Bankruptcy Court should, nevertheless, confirm the

18  Plan.[4]  If at such hearing the Bankruptcy Court should determine that the Plan meets all of the

19  requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter

20  a Confirmation Order.  Pursuant to section 1141 of the Bankruptcy Code, the effect of the

21  Confirmation Order will be to make the provisions of the Plan binding upon the Debtor, each

22  Creditor, regardless of whether the Creditor voted to accept the Plan, and upon each Interest Holder.

23  Pursuant to section 1128 of the Bankruptcy Code, any party-in-interest may object to the

24  confirmation of the Plan.  The Bankruptcy Court has fixed _____, 2010, at 4:00 p.m., as

25  the deadline for filing an objection to the Plan and for serving a copy thereof upon the Debtor's

26  attorneys, Clarkson Gore, and upon the Committee's attorneys, Winthrop Couchot, at the respective

27  addresses set forth hereinabove, and upon the United States Trustee.  The branch office of the

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

---

[4] As stated hereinabove, the Class of Interest Holder under the Plan (Class 6) is deemed to have not accepted the Plan.

-4-

1    United States Trustee in which the Case is being administered is located at 411 West Fourth Street,

2    Suite 9041, Santa Ana, California 92701-8000.  Any objections or other written communications to

3    the United States Trustee respecting the Plan or the Case should be mailed to the attention of Frank

4    Cadigan, Esq., at that address.

5         **THIS IS A SOLICITATION BY THE PLAN PROPONENTS.  NO**

6    **REPRESENTATIONS CONCERNING THE DEBTOR, INCLUDING, BUT NOT LIMITED**

7    **TO, REPRESENTATIONS AS TO ITS BUSINESS, ASSETS, THE AMOUNT OF CLAIMS**

8    **AGAINST THE ESTATE, OR ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED**

9    **UNDER THE PLAN, ARE AUTHORIZED BY THE PLAN PROPONENTS, OTHER THAN**

10   **AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

11        **UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE**

12   **INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT**

13   **HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT.  RECORDS KEPT BY THE DEBTOR**

14   **RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED INTERNALLY BY**

15   **THE DEBTOR.  THE PLAN PROPONENTS BELIEVE THAT EVERY REASONABLE**

16   **EFFORT HAS BEEN MADE TO PRESENT FINANCIAL INFORMATION AS ACCURATE**

17   **AS IS REASONABLY PRACTICABLE GIVEN THE NATURE AND HISTORY OF THE**

18   **DEBTOR'S BUSINESS AND THE CONDITION OF THE DEBTOR'S BOOKS AND**

19   **RECORDS.  HOWEVER, THE RECORDS KEPT BY THE DEBTOR ARE NEITHER**

20   **WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY.  NEITHER**

21   **COUNSEL TO THE DEBTOR NOR THE ACCOUNTANTS TO THE DEBTOR, NOR**

22   **COUNSEL TO THE COMMITTEE NOR THE FINANCIAL ADVISORS TO THE**

23   **COMMITTEE, HAVE INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED**

24   **HEREIN, OR MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT**

25   **TO THE ACCURACY THEREOF.**

26        **NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR**

27   **DISPUTED CLAIM OR CAUSE OF ACTION IS NOT IDENTIFIED IN THIS**

28   **DISCLOSURE STATEMENT.  IN ACCORDANCE WITH THE PROVISIONS OF THE**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    PLAN, THE PLAN AGENT MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE

2    OBJECTIONS TO CLAIMS OR CAUSES OF ACTION, WHETHER OR NOT SUCH

3    OBJECTIONS OR CAUSES OF ACTION ARE IDENTIFIED IN THIS DISCLOSURE

4    STATEMENT.

5        ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW

6    CAREFULLY THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING

7    ON THE PLAN.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT

8    BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS OR TAX ADVICE.

9    EACH CREDITOR SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS

10    ADVISOR, CONSULTANT OR ACCOUNTANT PRIOR TO VOTING ON THE PLAN IN

11    ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE

12    PLAN.  THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE

13    CREDITORS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED

14    DECISION REGARDING THE PLAN.

15        THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE

16    STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS

17    ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION OF

18    ACCEPTANCES TO THE PLAN BY THE PLAN PROPONENTS, AND NOT ANY

19    RECOMMENDATION REGARDING WHETHER A CREDITOR SHOULD VOTE TO

20    ACCEPT OR TO REJECT THE PLAN.

21        ANY DISCUSSION OF TAX MATTERS CONTAINED HEREIN IS NOT INTENDED

22    TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING ANY TAX

23    OR TAX PENALTIES THAT MAY BE IMPOSED ON ANY PERSON.  NOTHING IN THIS

24    DISCLOSURE STATEMENT MAY BE USED OR REFERRED TO IN PROMOTING,

25    MARKETING OR RECOMMENDING A PARTNERSHIP OR OTHER ENTITY,

26    INVESTMENT PLAN, OR OTHER ARRANGEMENT TO ANY PERSON.  ALL

27    CREDITORS AND INTEREST HOLDERS SHOULD CONSULT WITH THEIR OWN

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_Jt_2nd_Amd_DS_3-24-2010.DOC

**LEGAL COUNSEL AND/OR ACCOUNTANTS AS TO LEGAL, TAX, AND OTHER**

**MATTERS CONCERNING THEIR CLAIMS OR INTERESTS.**

## II.

### DEFINITIONS AND RULES OF CONSTRUCTION

A.    **Defined Terms.**

The following terms (which appear in this Disclosure Statement as capitalized terms), when used in this Disclosure Statement, have the meanings set forth below.

1.    "**Administrative Claim**" means a Claim for costs or expenses that are allowable under sections 503(b) or 507(b) of the Bankruptcy Code or 28 U.S.C. § 1930. These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Pre-Effective Date Professional Fee Claims; (d) Administrative Tax Claims; and (e) United States Trustee Fees.

2.    "**Administrative Claims Bar Date**" has the meaning set forth in paragraph VI(C)(1)(b) of this Disclosure Statement.

3.    "**Administrative Claims Objection Deadline**" has the meaning set forth in paragraph VI(C)(1)(c) of this Disclosure Statement.

4.    "**Administrative Tax Claim**" means a Tax Claim, other than a Secured Claim, that a governmental unit asserts against the Debtor for any tax period that, in whole or in part, falls within the period commencing on the Petition Date and ending on the Effective Date.

5.    "**Allowed Administrative Claim**" means an Administrative Claim that is allowed as set forth in Section 3.1 of the Plan or otherwise by a Final Order.

6.    "**Allowed Avoidance Action Payment Claim**" means an Allowed Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action. Any Allowed Avoidance Action Payment Claim is treated under the Plan as a Class 3 Claim.

7.    "**Allowed Claim**" means a Claim (a) that is listed in the Bankruptcy Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    (b) with respect to which a Proof of Claim has been filed by the Bar Date, and as to which no

2    objection is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the

3    Plan or by order of the Bankruptcy Court, or as to which any such objection has been determined by

4    a Final Order.  Under the Plan, the amount of an Allowed Claim will be as follows:  (i) if the

5    Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Bar Date, the

6    amount of the Creditor's Claim as listed in the Bankruptcy Schedules as neither disputed, contingent,

7    unliquidated or unknown; or (ii) if the Creditor filed a Proof of Claim with the Bankruptcy Court on

8    or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of

9    Claim is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan

10    or by order of the Bankruptcy Court, or (2) the amount thereof fixed by a Final Order of the

11    Bankruptcy Court if an objection to such Proof of Claim is filed within the time period fixed by the

12    Bankruptcy Code, the Bankruptcy Rules, the Plan or by order of the Bankruptcy Court.  Under the

13    Plan, any Claim that is not filed by the Bar Date and that is listed in the Bankruptcy Schedules as

14    disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of the Plan,

15    will be disallowed, and no Distribution will be made on account of such Claim.  No default interest

16    or late charges or comparable fees, charges or penalties will be included as part of an Allowed

17    Claim.

18         **8.    "<u>Allowed Class '\*\*' Claim</u>"** means an Allowed Claim classified in the

19    specified Class.

20         **9.    "<u>Allowed Deficiency Claim</u>"** means that portion of an Allowed Claim that is

21    in excess of the value of any Collateral which is security for the repayment of such Claim, calculated

22    in accordance with the provisions of section 506 of the Bankruptcy Code.

23         **10.    "<u>Allowed General Unsecured Claim</u>"** means an unsecured Allowed Claim

24    against the Debtor, however arising, not entitled to priority under section 507(a) of the Bankruptcy

25    Code, including, without limitation, an Allowed Deficiency Claim, an Allowed Rejection Claim or

26    an Allowed Avoidance Action Payment Claim.

27         **11.    "<u>Allowed Interest</u>"** means an Interest to the extent, and only to the extent, of

28    the amount of such Interest allowed by the Plan or by Final Order of the Bankruptcy Court.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

12.    **"Allowed Penalty Claims"** means a Penalty Claim that is allowed by a Final Order.  Any Allowed Penalty Claim will be treated under the Plan as an Allowed Class 5 Claim.

13.    **"Allowed Priority Non-Tax Claim"** means an unsecured Allowed Claim entitled to priority pursuant to sections 507(a)(4), 507(a)(5), or 507(a)(7) of the Bankruptcy Code.

14.    **"Allowed Priority Tax Claim"** means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

15.    **"Allowed Rejection Claim"** means any Allowed General Unsecured Claim based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court or pursuant to the Plan.  Any Allowed Rejection Claim will be treated under the Plan as a Class 3 Claim.

16.    **"Allowed Secured Claim"** means an Allowed Claim secured by a valid and unavoidable Lien against property in which the Estate has an interest, or which is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be.  Under the Plan, unpaid principal and any accrued interest allowable under section 506 of the Bankruptcy Code with respect to an Allowed Secured Claim will be computed as of the Effective Date, and the Allowed Secured Claim will thereafter bear interest as provided in the Plan.

17.    **"Allowed Subordinated Claim"** means any Allowed Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

18.    **"Assets"** means all assets and properties of the Debtor's Estate including "property of the estate" as described in section 541 of the Bankruptcy Code.

19.    **"Avoidance Action"** means an adversary proceeding, lawsuit or other action or proceeding filed pursuant to sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or proceeding based on applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    proceeding arising under, or relating to, any similar state law or federal law, and any other similar

2    action or proceeding filed to recover property for or on behalf of the Estate, or to avoid a Lien or

3    transfer, whether or not such adversary proceeding, lawsuit, action or proceeding is initiated on or

4    before the Effective Date.

5         **20.**    "**Avoidance Action Payment Claim**" means a Claim based upon or arising

6    from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity

7    pursuant to an Avoidance Action.

8         **21.**    "**Bankruptcy Code**" means the United States Bankruptcy Code, as set forth

9    in 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

10         **22.**    "**Bankruptcy Court**" means the United States Bankruptcy Court for the

11    Central District of California, Santa Ana Division.

12         **23.**    "**Bankruptcy Rules**" means, collectively, the Federal Bankruptcy Rules and

13    the Local Bankruptcy Rules.

14         **24.**    "**Bankruptcy Schedules**" means the Schedules of Assets and Liabilities and

15    Statement of Financial Affairs filed by the Debtor in the Case, as they may have been amended and

16    as they may be amended hereafter from time to time.

17         **25.**    "**Bar Date**" means the last date for Creditors and Interest Holders whose

18    Claims or Interests, respectively, are not scheduled, or whose Claims or Interests are scheduled in

19    the Bankruptcy Schedules as disputed, contingent, unliquidated or unknown as to amount, to file

20    Proofs of Claim or Interests, as set forth in an order of the Bankruptcy Court entered on April 7,

21    2008.

22         **26.**    "**Business Day**" means any day other than a Saturday, Sunday or a legal

23    holiday (as defined in Rule 9006(a) of the Federal Bankruptcy Rules).

24         **27.**    "**Canopy**" means Canopy Group, Inc.

25         **28.**    "**Canopy Claim**" means the Allowed Claim of Canopy.

26         **29.**    "**Canopy Settlement Agreement**" has the meaning set forth in

27    paragraph IV(F)(7)(b) of this Disclosure Statement.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1      **30.**    **"Case"** means the case under Chapter 11 of the Bankruptcy Code commenced

2  by the Debtor on the Petition Date and bearing Case Number 8:07-13347-ES.

3      **31.**    **"Case Closing Date"** means the date on which the Bankruptcy Court enters a

4  Final Decree closing the Case, in accordance with section 350 of the Bankruptcy Code.

5      **32.**    **"Cash"** means cash or cash equivalents including, but not limited to, bank

6  deposits, checks or other similar forms of payment or exchange.

7      **33.**    **"Causes of Action"** means any and all claims, demands, rights, actions,

8  causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, known or

9  unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in

10  contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the

11  Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not brought as

12  of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the

13  Effective Date, including but not limited to (a) rights of setoff, counterclaim or recoupment,

14  (b) claims on contracts or for breaches of duties imposed by law, (c) rights to object to Claims or

15  Interests, (d) such claims and defenses as fraud, mistake, duress or usury, (e) Avoidance Actions,

16  (f) claims for tax refunds, (g) claims to recover accounts receivable, and (h) any other claims which

17  may be asserted against third parties.

18      **34.**    **"Claim"** means a "claim" against the Debtor, as such term is defined in

19  section 101(5) of the Bankruptcy Code.

20      **35.**    **"Claims Objection Deadline"** means the latest of the following dates:  (a) the

21  one hundred eightieth (180th) day after the Effective Date; (b) with respect to a specific Claim, the

22  ninetieth (90th) day after a Proof of Claim with respect to such Claim is filed by a Creditor; (c) with

23  respect to a Claim that is not listed in the Bankruptcy Schedules, the ninetieth (90th) day after the

24  Plan Agent learns of the existence of such Claim; or (d) such greater period of limitation as may be

25  fixed or extended by the Bankruptcy Court or by agreement between the Plan Agent and the

26  Creditor.

27      **36.**    **"Clarkson Gore"** means Clarkson Gore & Marsella, APLC, the Debtor's

28  general insolvency counsel in the Case.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-11-

37.   **"Class"** means a group of Claims or Interests as classified in Article IV of the Plan.

38.   **"Collateral"** means any property or interest in property of the Estate subject to a Lien of a Secured Creditor that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable federal or state law.

39.   **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Case by the United States Trustee.

40.   **"Confirmation"** means the entry of the Confirmation Order by the Bankruptcy Court.

41.   **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

42.   **"Confirmation Hearing"** means the hearing before the Bankruptcy Court to consider the confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be continued from time to time.

43.   **"Confirmation Hearing Date"** means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

44.   **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

45.   **"Creditor"** means the holder of a Claim against the Debtor.

46.   **"Cure Claims"** has the meaning set forth in paragraph VIII(V)(5) of this Disclosure Statement.

47.   **"Cure Claims Schedule"** has the meaning set forth in paragraph VIII(V)(5) of this Disclosure Statement.

48.   **"Debtor"** means MTI Technology Corporation, the debtor and debtor-in-possession in the Case.  For the purpose of this Disclosure Statement, references to the "Debtor" will include the Reorganized Debtor.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-12-

49.    **"Deficiency Claim"** means that portion of a Claim that is in excess of the value of the Collateral which is security for the repayment of such Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

50.    **"De Minimis Distribution"** has the meaning set forth in section 7.2.3 of the Plan.

51.    **"Disbursing Agent"** means the entity charged with making Distributions under the Plan.  The Plan Agent will serve as Disbursing Agent under the Plan.

52.    **"Disclosure Statement"** means this Joint Second Amended Disclosure Statement relating to the Plan, including, without limitation, all exhibits and schedules hereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

53.    **"Disclosure Statement Order"** means the Final Order entered by the Bankruptcy Court approving this Disclosure Statement.

54.    **"Disputed Claim"** means any Claim as to which:  (a) a Proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; (b) a Proof of Claim has been filed, to the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules; (c) a Proof of Claim has been filed and such Claim is not listed in the Bankruptcy Schedules; (d) a Proof of Claim has been filed, or is deemed filed under Rule 3003(b)(1) of the Federal Bankruptcy Rules, and is listed in the Bankruptcy Schedules as contingent, disputed, liquidated, or unknown as to amount; or (e) an objection, or request for estimation, has been filed by the Claims Objection Deadline and such objection or request for estimation has neither been withdrawn nor been denied by a Final Order.

55.    **"Disputed Claims Reserve"** has the meaning set forth in paragraph VIII(T)(4)(c) of this Disclosure Statement.

56.    **"Distribution"** means any transfer under the Plan of Cash, or other property or instruments, to the holder of an Allowed Claim.

-13-

57.    **"Distribution Schedule"** has the meaning set forth in paragraph VIII(S)(2)(f) of this Disclosure Statement.

58.    **"Effective Date"** means the eleventh (11th) day following the waiver or satisfaction of the conditions set forth in Section 6.3 of the Plan.

59.    **"EMC"** means EMC Corporation.

60.    **"EMC Settlement Agreement"** has the meaning set forth in paragraph V(B)(1)(a) of this Disclosure Statement.

61.    **"EMC Settlement Payment"** has the meaning set forth in paragraph V(B)(1)(a)(i) of this Disclosure Statement.

62.    **"Estate"** means the estate created in the Case under section 541 of the Bankruptcy Code.

63.    **"European Subsidiaries"** has the meaning set forth in paragraph IV(A)(1) of this Disclosure Statement.

64.    **"Expenses"** has the meaning set forth in paragraph II(A)(102) of this Disclosure Statement.

65.    **"Feasibility Analysis"** has the meaning set forth in paragraph XII(F)(1) of this Disclosure Statement.

66.    **"Federal Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as now in effect and as may be hereafter amended.

67.    **"Final Decree"** has the meaning set forth in paragraph VIII(Q) of this Disclosure Statement.

68.    **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or to obtain a rehearing is then pending or as to which any right to appeal, petition for certiorari, reargue, or obtain a rehearing is waived in writing in form and substance satisfactory to the Plan Proponents prior to the Effective Date, or to the Plan Agent after the Effective Date, as

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-14-

1    applicable, or, in the event that an appeal, writ of certiorari, or proceeding for reargument or

2    rehearing of such order or judgment has been sought, such order or judgment is affirmed by the

3    highest court to which such order or judgment was appealed, or certiorari has been denied, or from

4    which reargument or rehearing was sought, and the time to take any further appeal, petition for

5    certiorari or move for reargument or rehearing has expired.

6        **69.    "FusionStorm"** means FusionStorm, a Delaware corporation.

7        **70.    "FusionStorm Action"** has the meaning set forth in paragraph V(B)(1)(c) of

8    this Disclosure Statement.

9        **71.    "General Unsecured Claim"** means any Claim that is not an Administrative

10    Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim or a Subordinated Claim,

11    including, without limitation, a Rejection Claim, a Deficiency Claim or an Avoidance Action

12    Payment Claim.

13        **72.    "Interest"** means an "equity security" in the Debtor, as such term is defined

14    in section 101(16) of the Bankruptcy Code, no matter how held, including, without limitation, issued

15    and outstanding shares of MTI Stock, and all rights and interests arising thereunder, and all rights to

16    acquire equity securities in the Debtor, including, without limitation, pursuant to options, warrants,

17    employee plans, or similar agreements, contracts or instruments, provided that such rights are

18    exercised on or prior to the Effective Date.

19        **73.    "Interest Holder"** means a holder of an Interest.

20        **74.    "Internal Revenue Code"** means the Internal Revenue Code of 1986, now in

21    effect and as may be hereafter amended.

22        **75.    "Late-Filed Claim"** means any General Unsecured Claim described in

23    sections 726(a)(2)(C) or 726(a)(3) of the Bankruptcy Code.

24        **76.    "Lien"** means any lien, security interest, mortgage, deed of trust,

25    encumbrance, pledge or other charge against Assets of the Debtor.

26        **77.    "Liquidation Analysis"** has the meaning set forth in paragraph XII(G) of this

27    Disclosure Statement.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

78. **"Local Bankruptcy Rules"** means the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect and as may be hereafter amended.

79. **"Merger Consummation Date"** has the meaning set forth in paragraph VIII(R)(2) of this Disclosure Statement.

80. **"Merger Transaction"** has the meaning set forth in paragraph VIII(R)(1) of this Disclosure Statement.

81. **"Mr. Poteracki"** means Scott Poteracki.

82. **"Mr. Raimondi"** means Thomas P. Raimondi, Jr.

83. **"MTI Stock"** means the issued and outstanding shares of common stock and preferred stock of the Debtor as of the Effective Date.

84. **"Net Litigation Proceeds"** has the meaning set forth in paragraph XII(F)(1)(h) of this Disclosure Statement.

85. **"Omni"** means Omni Management Group, LLC.

86. **"Ordinary Course Administrative Claim"** means an Administrative Claim allowable under section 503(b) of the Bankruptcy Code, that is incurred in the ordinary course of the Debtor's operations or the Case, or the payment of which is provided for by an order of the Bankruptcy Court, exclusive of any Pre-Effective Date Professional Fee Claims, Administrative Tax Claims and United States Trustee Fees.

87. **"Penalty Claim"** means any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy Code.

88. **"Pencom Action"** has the meaning set forth in paragraph V(B)(1)(b) of this Disclosure Statement.

89. **"Pencom Defendants"** has the meaning set forth in paragraph V(B)(1)(b) of this Disclosure Statement.

90. **"Petition Date"** means October 15, 2007, the date on which the Debtor filed its voluntary petition commencing the Case.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-16-

91.   **"Plan"** means the Plan Proponents' Joint Second Amended Chapter 11 Plan, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in its present form or as it may be altered, amended, or modified from time to time.

92.   **"Plan Agent"** means the entity appointed by the Plan to administer the Plan and to make the Distributions provided by the Plan, in accordance with the provisions of Section 6.6.1 of the Plan.

93.   **"Plan Agent Certification"** has the meaning set forth in paragraph VIII(P) of this Disclosure Statement.

94.   **"Plan Agent Disclosure"** has the meaning set forth in paragraph VIII(H)(4) of this Disclosure Statement.

95.   **"Plan Assets"** means the Assets, which, pursuant to the Plan, will be transferred in trust to the Plan Agent on the Effective Date of the Plan, free and clear of any Liens that otherwise might have existed in favor of any Secured Creditor.

96.   **"Plan Fund"** means a segregated, interest-bearing account established at a financial institution which is an authorized depository under United States Trustee Guidelines, into which the Plan Agent will deposit all Cash of the Estate as of the Effective Date, less the Cash used to make, or reserve for the making of, the Distributions required to be made on or about the Effective Date, and all Cash received by the Reorganized Debtor after the Effective Date. Under the Plan, the Plan Fund Proceeds will be made available for making Distributions to holders of Allowed General Unsecured Claims and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

97.   **"Plan Fund Proceeds"** means the Cash available in the Plan Fund for making Distributions on account of Allowed General Unsecured Claims and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

98.   **"Plan Proponents"** means, together, the Debtor and the Committee, the proponents of the Plan.

99.   **"Post-Effective Date Committee"** means the Committee, as it will be reconstituted and function after the Effective Date, pursuant to the provisions of the Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-17-

100.    "**Post-Effective Date Committee Disclosure**" has the meaning set forth in paragraph VIII(I)(1) of this Disclosure Statement.

101.    "**Post-Effective Date Notice Parties**" has the meaning set forth in paragraph VIII(P) of this Disclosure Statement.

102.    "**Post-Effective Date Plan Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of the Plan, including, but not limited to:  (a) the Expenses associated with administering the Plan, including any taxes assessed against the Assets; (b) all United States Trustee Fees; (c) the Expenses associated with making the Distributions required by the Plan; (d) any Expenses associated with preparing and filing tax returns and paying taxes; (e) any reasonable Expenses incurred by a member of the Post-Effective Date Committee, but excluding the attorneys' fees or other professional fees, if any, incurred by it, except for any such fees to which it is entitled by indemnification; (f) the Expenses of independent contractors and Professionals providing services to the Plan Agent or the Post-Effective Date Committee; (g) the Expenses associated with the Plan Agent's indemnity obligations, the purchase of errors and omissions insurance and/or other forms of indemnification; and (h) the fees of the Plan Agent, and the reimbursement of expenses, to which the Plan Agent is entitled under the Plan.

103.    "**Post-Effective Date Stock**" means any shares of common stock in the Reorganized Debtor issued on account of the holders of Allowed General Unsecured Claims, pursuant to section 1145 of the Bankruptcy Code, in accordance with the provisions of Sections 5.3.1.5 and 6.18 of the Plan.

104.    "**Postpetition Interest**" means any interest accrual on any Allowed Claim from and after the Petition Date, in accordance with the provisions of Sections 5.3.1.3 and 5.5.1.3 of the Plan.  Under the Plan, any Postpetition Interest will accrue at the federal judgment rate, as set forth in 28 U.S.C. § 1961(a), in effect as of the Petition Date.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

105.   **"Pre-Effective Date Professional"** means a person employed in the Case prior to the Effective Date pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code.

106.   **"Pre-Effective Date Professional Fee Claim"** means:

(a)   A Claim of a Pre-Effective Date Professional under sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for compensation for services rendered or expenses incurred prior to the Effective Date on behalf of the Estate; or

(b)   A Claim, arising prior to the Effective Date, either under section 503(b)(4) of the Bankruptcy Code or under section 503(b)(3)(D) of the Bankruptcy Code.

107.   **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

108.   **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

109.   **"Professional"** means any attorney, accountant, appraiser, auctioneer, broker, financial consultant, expert or other professional person.

110.   **"Proof of Claim"** means a statement under oath filed in the Case by a Creditor in which the Creditor sets forth the amount claimed to be owed to it and detail sufficient to identify the basis for the Claim, in accordance with Rule 3001 of the Federal Bankruptcy Rules.

111.   **"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Claims in the Class in which that Allowed Claim is included to (y) the amount of all Claims in that Class.

The Pro Rata formula is illustrated as follows:

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

| (a) | Amount of consideration distributed to a holder of an Allowed Claim | | (x) | Total consideration available for distribution to holders of Claims of that Class |
|---|---|---|---|---|
| | | = | | |
| (b) | Amount of such Allowed Claim | | (y) | Amount of all Allowed Claims in that Class |

For the purpose of the application of this definition, in calculating the Distributions to be made under the Plan, the Plan Agent, as Disbursing Agent under the Plan, will establish Reserves, on account of Disputed Claims, in accordance with the provisions of Section 8.4.3 of the Plan.

112. **"Rejection Claim"** means any General Unsecured Claim based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court or pursuant to the Plan.

113. **"Reorganized Debtor"** means the Debtor, as its financial affairs are reorganized from and after the Effective Date. For the purpose of this Disclosure Statement, a reference to the "Reorganized Debtor" will include the Debtor.

114. **"Representatives"** has the meaning set forth in paragraph VIII(H)(5) of this Disclosure Statement.

115. **"Reserves"** means, collectively, the Disputed Claims Reserve, the Unclaimed Property Reserve, and other reserves that the Plan Agent, as Disbursing Agent under the Plan, is required to establish pursuant to the Plan.

116. **"Secured Claim"** means a Claim that is secured by a Lien against property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code. A Claim is a Secured Claim only to the extent of the value, as determined under section 506(a) of the Bankruptcy Code, of the Secured Creditor's interest in the Collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable.

117. **"Secured Creditor"** means the holder of a Secured Claim.

118. **"Stock Termination Approval"** has the meaning set forth in paragraph VIII(R)(3) of this Disclosure Statement.

119. **"Subordinated Claim"** means any Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

-20-

1    **120.** "**Tax**" means any tax, charge, fee, levy, or other assessment by any federal,

2    state, local or foreign taxing authority, including, without limitation, income, excise, property, sales,

3    transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance,

4    stamp, occupation and withholding tax.  Under the Plan, "Tax" includes any interest, penalties or

5    additions attributable to, or imposed on or with respect to, such assessments.

6    **121.** "**Tax Claim**" means any Claim, pre-petition or post-petition, relating to a

7    Tax.

8    **122.** "**Unclaimed Property Reserve**" has the meaning set forth in Section 7.2.7 of

9    the Plan.

10    **123.** "**United States Trustee**" means the Office of the United States Trustee for

11    the Central District of California.

12    **124.** "**United States Trustee Fees**" means all fees and charges assessed against the

13    Debtor or the Reorganized Debtor by the United States Trustee and due pursuant to section 1930 of

14    title 28 of the United States Code.

15    **125.** "**Winthrop Couchot**" means Winthrop Couchot Professional Corporation,

16    general insolvency counsel to the Committee in the Case.

17    **B.**    **Rules of Interpretation.**

18    For the purpose of this Disclosure Statement, unless otherwise provided in this Disclosure

19    Statement, (1) the rules of construction set forth in section 102 of the Bankruptcy Code apply to this

20    Disclosure Statement; (2) Rule 9006(a) of the Federal Bankruptcy Rules applies when computing

21    any time period under the Plan; (3) a term that is used in this Disclosure Statement and that is not

22    defined in this Disclosure Statement has the meaning attributed to that term, if any, in the

23    Bankruptcy Code or in the Bankruptcy Rules; (4) the definition given to any term or provision in the

24    Plan supersedes any different meaning that may be given to that term or provision in this Disclosure

25    Statement; (5) whenever it is appropriate from the context, each term, whether stated in the singular

26    or the plural, includes both the singular and the plural; (6) each pronoun stated in the masculine,

27    feminine or neuter includes each of the masculine, feminine and neuter; (7) any reference to an

28    exhibit, schedule, instrument or other document means such exhibit, schedule, instrument or other

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  document as it has been, or may be, amended, modified, restated or supplemented as of the

2  Confirmation Date, and any such exhibit, schedule, instrument or other document will be deemed to

3  be included in this Disclosure Statement, regardless of when it is filed; (8) the phrases "under this

4  Disclosure Statement," "hereof," "hereto," "hereunder," and similar words or phrases, refer to this

5  Disclosure Statement in its entirety rather than to only a portion of this Disclosure Statement;

6  (9) unless otherwise indicated, all references in this Disclosure Statement to paragraphs, articles or

7  exhibits are references to paragraphs, articles or exhibits in this Disclosure Statement; (10) paragraph

8  captions and headings are used for convenience only and do not affect the meaning of this

9  Disclosure Statement; and (11) any reference to the holder of a Claim or Interest includes that

10  entity's successor and assigns.

11  **C.    Exhibits.**

12  All exhibits to this Disclosure Statement are incorporated into and are a part of this

13  Disclosure Statement as if set forth in full herein.

14  **III.**

15  **OVERVIEW OF THE CHAPTER 11 PROCESS,**

16  **THE PLAN AND VOTING ON THE PLAN**

17  **A.    The Chapter 11 Process.**

18  Chapter 11 of the Bankruptcy Code provides debtors with a "breathing spell" within which to

19  propose a restructuring of their obligations to third parties. The filing of a Chapter 11 bankruptcy

20  petition creates a bankruptcy "estate" comprising all of the property interests of the debtor. Unless a

21  trustee is appointed by the bankruptcy court for cause (no trustee has been appointed in the Case), a

22  debtor remains in possession and control of all its assets as a "debtor-in-possession." The debtor

23  may continue to operate its business in the ordinary course on a day-to-day basis without bankruptcy

24  court approval. Bankruptcy court approval is required only for various kinds of transactions as to

25  which the Bankruptcy Code requires approval (such as certain financing transactions) and

26  transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition

27  gives rise to what is known as the "automatic stay" which, generally, enjoins creditors from taking

28  any action to collect or recover obligations owed by a debtor prior to the commencement of a

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-22-

1  Chapter 11 case. The bankruptcy court can, however, grant relief from the automatic stay, under

2  certain specified conditions or for cause.

3      A Chapter 11 debtor may propose a plan providing for the reorganization of the debtor or for

4  the orderly liquidation of the assets of the debtor's estate. A plan provides, among other things, for

5  the treatment of the claims of the debtor's creditors and the interests of the debtor's shareholders.

6      **B.**    <u>**Overview of the Plan Proponents' Proposed Plan.**</u>

7      The following is a brief overview of the material provisions of the Plan and is qualified in its

8  entirety by reference to the full text of the Plan. For a more detailed description of the terms and

9  provisions of the Plan, see Articles VI and VII below.

10      The primary objectives of the Plan are to transfer all Assets of the Debtor, including all

11  Causes of Action, to the Plan Fund, which will liquidate the Assets, including by prosecuting the

12  Causes of Action, and to distribute the proceeds thereof to holders of Allowed Claims in satisfaction

13  of the Debtor's obligations. The holders of Interests will not receive or retain anything on account of

14  their Interests, except as provided for under Section 5.6 of the Plan.

15      The Plan designates five Classes of Claims and one Class of Interests, which include all

16  Claims against, and Interests in, the Debtor. These Classes take into account the differing nature and

17  priority under the Bankruptcy Code of the various Classes and Interests.

18      The following table (the "Plan Summary Table") summarizes the treatment of Claims and

19  Interests under the Plan with: (1) the Plan Proponents' estimates of the amount of Claims in each

20  category or Class, and (2) a brief description of the treatment provided for in the Plan for each Class

21  of Claims or Interests. The amounts of the Claims listed in the Plan Summary Table have been

22  estimated by the Plan Proponents as of the date of this Disclosure Statement and do not constitute an

23  admission by the Plan Proponents as to the validity or amount of any particular Claim. The Plan

24  Proponents reserve the right to dispute the validity or amount of any Claim or Interest that has not

25  already been allowed by the Bankruptcy Court. This information is based on the Debtor's

26  Schedules, the Debtor's financial books and records, and the Plan Proponents' review of the Proofs

27  of Claim filed in the Case.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-23-

### SUMMARY OF CLAIMS AND INTERESTS UNDER THE PLAN

| Class | Claim/Interest | Summary of Treatment[5] | Estimated Aggregate Amount of Claims[6] |
|---|---|---|---|
| n/a | Allowed Administrative Claims | Payment in full, in Cash, on or about the Effective Date or as an Administrative Claim is allowed by the Bankruptcy Court. | $1,114,557 |
| n/a | Allowed Priority Tax Claims | Payment in full, in Cash, on or about the Effective Date, or as a Priority Tax Claim is allowed by the Bankruptcy Court. | $463,729 |
| 1 | Allowed Secured Claims | Entitled to receive one of the payment options, elected by the Plan Agent, set forth in Section 5.1 of the Plan. | $33,810 |
| 2 | Allowed Priority Non-Tax Claims | Payment in full, in Cash, on or about the Effective Date, or as a Priority Non-Tax Claim is allowed by the Bankruptcy Court[7]. | $564,182 |
| 3 | Allowed General Unsecured Claims | Payment of Distributions from Plan Fund over the course of the Plan, as set forth in Section 5.3 of the Plan. | $13,243,758 |
| 4 | The Canopy Claim | The Canopy Claim will be paid in accordance with the terms of the Canopy Settlement Agreement (Exhibit "1" to the Plan). | Up to $1,000,000.00 |
| 5 | Allowed Subordinated Claims | Payment only if all other Allowed Claims are paid in full. | To be determined. No Claims subordinated by the Bankruptcy Court as of the date of this Disclosure Statement |
| 6 | Allowed Interests | On the Effective Date of the Plan, the Interests will be cancelled. Interest Holders will receive Distributions only if all Allowed Claims, including all Allowed Subordinated Claims, are paid in full. | - 0 - |

Set forth in paragraph XII(F) hereof is a discussion of the projected recoveries by Creditors in the Case.

### C.    Plan Confirmation and Voting and Objections to the Plan.

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan are not yet binding on the Debtor, Creditors and Interest

---

[5] This is only a summary of the treatment of Claims and Interests under the Plan. Creditors and Interest Holders should refer to Articles VI and VII of this Disclosure Statement for a more complete discussion of the treatment of Allowed Claims and Allowed Interests under the Plan.

[6] These amounts are estimates as of February 28, 2010. **Note that these amounts reflect a substantial amount of Disputed Claims.** See paragraph XII(F) hereof for a more complete discussion of the Claims and the estimated amount of Claims that will be allowed in the Case.

[7] The Debtor may seek from the Bankruptcy Court authority to pay Allowed Priority Non-Tax Claims prior to the Effective Date; however, such payment, if authorized, will not impact or affect the rights of holders of Allowed General Unsecured Claims, or the Liquidation Analysis or Feasibility Analysis insofar as they reflect the disposition of Allowed General Unsecured Claims, as Allowed Priority Non-Tax Claims must be paid prior to payment of Allowed General Unsecured Claims.

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_Jt_2nd_Amd_DS_3-24-2010.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    Holders.  However, if the Bankruptcy Court confirms the Plan, the Plan will be binding on the

2    Debtor and on all Creditors and Interest Holders in the Case.

3              1.     **Voting on the Plan.**

4           A Creditor may vote to accept or to reject the Plan by filling out and mailing to the

5    Debtor's counsel the form of the ballot that has been provided herewith.  Ballots should be mailed

6    to Clarkson, Gore & Marsella, APLC, located at 3424 Carson Street, Suite 330, Torrance, California

7    90503 (Attn:  Eve A. Marsella).  **No telefaxed or e-mailed ballots will be accepted.**

8           Any Creditor holding Claims in more than one impaired Class must submit one

9    ballot for each such Class.  If a Creditor has received an incorrect ballot, or believes that he is

10   entitled to vote in more than one Class, additional ballots may be obtained upon written request

11   made to Clarkson Gore (Attn:  Eve A. Marsella).

12          In order to vote for or against the Plan, a Creditor must have filed a Proof of Claim

13   on or before the Bar Date, unless his Claim is listed in the Bankruptcy Schedules filed in the Case by

14   the Debtor as not being disputed, unliquidated or contingent.  Any such Creditor is, to the extent

15   listed in the Bankruptcy Schedules, deemed to have filed a Claim, and absent a timely objection to

16   the Claim, such Claim is deemed allowed.  In order to determine whether a Creditor is entitled to

17   vote on the Plan notwithstanding any failure to timely file a Proof of Claim, the Creditor should

18   review the Debtor's Bankruptcy Schedules on file with the Bankruptcy Court.  If a Creditor's Claim

19   is not scheduled, or, if it is scheduled as contingent, disputed, or unliquidated and the Creditor did

20   not file a Proof of Claim prior to the Bar Date, the Creditor may not be entitled to vote on the Plan.

21          The following types of Claims are not entitled to vote on the Plan:  (a) Claims that

22   have been disallowed; (b) Claims in an unimpaired Class; and (c) Administrative Claims and Priority

23   Tax Claims.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed

24   to have accepted the Plan.  Administrative Claims and Priority Tax Claims are not entitled to vote

25   because such Claims are not placed in Classes and they are required to receive certain treatment

26   specified by the Bankruptcy Code. **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED**

27   **ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF**

28   **THE PLAN.**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-25-

1    **2.    Deadline for Voting for or Against the Plan.**

2    The Bankruptcy Court has fixed _____, 2010, at 4:00 p.m. Pacific Time, as the

3    last date by which ballots must be received by Clarkson Gore, the Debtor's counsel.  Subject to

4    review and determination by the Bankruptcy Court, votes received by Clarkson Gore after that date

5    may not be counted.  Whether or not a Creditor votes on the Plan, he will be bound by the terms of

6    the Plan and the treatment of his Claim set forth in the Plan if the Plan is confirmed by the

7    Bankruptcy Court.  Absent some affirmative act constituting a vote, a Creditor will not be included

8    in the voting tally.  Allowance of a Claim for voting purposes does not necessarily mean that all or a

9    portion of the Claim will be allowed for distribution purposes.

10    Since, subject only to any order of the Bankruptcy Court to the contrary, only the

11    votes of those Creditors whose ballots are timely received may be counted in determining whether a

12    Class has accepted the Plan, Creditors are urged to fill in, date, sign and promptly mail the enclosed

13    ballot.

14    **3.    Time and Place of the Confirmation Hearing.**

15    Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice,

16    to hold a hearing on confirmation of the Plan.  The hearing at which the Bankruptcy Court will

17    determine whether or not to confirm the Plan will take place on _____, 2010, at _____ __.m., in

18    Courtroom 5A, 411 West Fourth Street, Santa Ana, California.  The Confirmation Hearing may be

19    adjourned from time to time by the Bankruptcy Court without further notice except for an

20    announcement made at the Confirmation Hearing.

21    **4.    Deadline For Objecting to the Confirmation of the Plan.**

22    Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may

23    object to the confirmation of the Plan.  Objections to the confirmation of the Plan must be in writing

24    and conform to the requirements of the Bankruptcy Rules and must be filed with the Bankruptcy

25    Court and served upon counsel to the Debtor, Clarkson, Gore & Marsella, APLC, Attn: Eve A.

26    Marsella, 3424 Carson Street, Suite 350, Torrance, CA 90503, upon counsel for the Committee,

27    Winthrop Couchot Professional Corporation, Attn: Robert E. Opera, 660 Newport Center Drive,

28    Suite 400, Newport Beach, CA 92660, and upon the United States Trustee, Attn:  Frank Cadigan,

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-26-

1    Esq., 411 Fourth Street, Suite 9041, Santa Ana, CA 92701, so as to be received by 4:00 p.m. (Pacific

2    Time) on _____2010.  Objections to confirmation of the Plan are governed by Rule 9014 of

3    the Federal Bankruptcy Rules.  **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY**

4    **AND PROPERLY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE**

5    **BANKRUPTCY COURT.**

6         5.    **Plan Confirmation.**

7         The Bankruptcy Court will confirm the Plan if the requirements of section 1129 of

8    the Bankruptcy Code are satisfied.  Section 1129 requires, among other things, that:  (a) with respect

9    to each Class of Claims, each holder of a Claim in that Class has accepted the Plan, or will receive or

10   retain under the Plan on account of such Claim, property of a value that is not less than the amount

11   that such holder would receive if the Debtor were to liquidate its assets under Chapter 7 of the

12   Bankruptcy Code; (b) confirmation of the Plan is not likely to be followed by a liquidation of the

13   Debtor or the need for further reorganization of the Debtor unless liquidation or further

14   reorganization is proposed by the Plan; and (c) the Plan be accepted by each Class of Claims that is

15   impaired by the Plan, or the Plan does not discriminate unfairly and is fair and equitable to any

16   impaired Class that has not accepted the Plan.

17        To confirm the Plan, the Bankruptcy Court must determine whether each "impaired"

18   Class entitled to vote on the Plan has accepted the Plan.  Pursuant to section 1124 of the Bankruptcy

19   Code, Classes "impaired" by the Plan are those Classes whose legal, equitable or contractual rights

20   are altered pursuant to the Plan.  Under section 1126(c) of the Bankruptcy Code, an impaired Class

21   of Claims is deemed to have accepted the Plan if the Plan is accepted by Creditors in that Class

22   holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the

23   Allowed Claims of Creditors in that Class actually voting on the Plan.

24        The Plan Proponents intend to request that the Bankruptcy Court confirm the Plan

25   pursuant to the provisions of section 1129(b) of the Bankruptcy Code.[8]  Pursuant to section 1129(b),

26   the Plan may be confirmed despite the failure of a Class of Claims or Interests to accept the Plan if

27

28   [8] The Class of Interest Holders under the Plan (Class 6) is deemed not to have accepted the Plan, and, accordingly, the
     Plan Proponents will seek to obtain confirmation of the Plan by resorting to the "cram down" provisions of
     section 1129(b) of the Bankruptcy Code.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-27-

1  the Bankruptcy Court determines that the Plan does not discriminate unfairly and is fair and

2  equitable with respect to each Class of Claims or Interests that is impaired under, and that has not

3  accepted, the Plan, and determines that the Plan otherwise complies with the requirements of

4  section 1129(b) of the Bankruptcy Code. The condition that the Plan be fair and equitable with

5  respect to such nonaccepting Classes includes certain legal requirements more fully set forth in

6  section 1129(b).

7          **6.**    **Identity of Persons to Contact for More Information**

8                  **Regarding this Disclosure Statement or the Plan.**

9        Any interested party desiring further information about this Disclosure Statement or

10  the Plan should contact counsel for the Debtor, Clarkson, Gore & Marsella, APLC, Attn: Eve A.

11  Marsella, 3424 Carson Street, Suite 350, Torrance, CA 90503; telephone no. (310) 542-0111, or

12  counsel for the Committee, Winthrop Couchot Professional Corporation, Attn: Robert E. Opera,

13  660 Newport Center Drive, Suite 400, Newport Beach, California 92660; telephone no. (949)

14  720-4100.

15                             **IV.**

16              **BACKGROUND OF THE DEBTOR**

17  **A.**    **Description and History of the Debtor's Business.**

18        While the Debtor operated, the Debtor was a global provider of end-to-end information

19  infrastructure solutions for mid to large size companies. The Debtor offered a wide range of storage

20  systems, software, services and solutions designed to assist organizations to maximize their

21  information technology assets. With more than 20 years of experience delivering technology

22  solutions and more than 5 million hours of providing professional services, the Debtor was a leader

23  in end-to-end information infrastructure solutions and had strategic technology and services

24  relationships with industry leaders including, EMC Corporation ("EMC"), Microsoft, VMWARE,

25  Symantec and Cisco.

26        The Debtor was also a reseller and service provider of EMC Automated Networked Storage

27  systems and software pursuant to a reseller agreement with EMC. The sale of EMC products

28  accounted for 88% and 56% of the Debtor's net product revenue and total revenue, respectively, for

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_Jt_2nd_Amd_DS_3-24-2010.DOC

the three months ended July 7, 2007 and 89% and 70% of net product revenue and total revenue, respectively, for the three months ended July 1, 2006.

In 2007, the Debtor served more than 3,500 customers throughout North America and Europe (directly and through wholly-owned subsidiaries). The Debtor's revenues for its fiscal year 2006 exceeded $135,000,000.00.

As of or just prior to the Petition Date (October 15, 2007), the Debtor had the following operations:

### 1.    European Subsidiaries.

The Debtor owned all of the issued and outstanding capital stock of the following entities:  MTI Technology GmbH, incorporated in Germany; MTI Technology Limited, incorporated in Scotland; and MTI France S.A.S., incorporated in France (collectively, the "European Subsidiaries").

### 2.    Collective.

A United States-based service division known as "Collective."[9]

### 3.    Domestic Sales and Service Division.

A United States-based sales and service division separate from Collective.

### B.    Corporate History.

The Debtor was incorporated in California in March 1981 and reincorporated in Delaware in April 1992. The Debtor's principal place of business is located in Tustin, Orange County, California. On or about April 7, 1994, the MTI Stock was listed on the NASDAQ Capital Market.  The MTI Stock was delisted from The NASDAQ Capital Market on June 1, 2007 for failure to meet certain listing standards. Market maker quotes for the Debtor's common stock are currently published by Pink Sheets LLC (the "Pink Sheets").

---

[9] In July 2006, the Debtor acquired Collective Technologies, Inc., which became the Debtor's "Collective" service division.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

C.     **Events Precipitating the Debtor's Bankruptcy Filing.**

1

2      Commencing in 1986, the Debtor was a developer, manufacturer and seller of computer

3 storage equipment. From about 1986 through about 2000, the Debtor enjoyed a period of strong

4 growth that ended with the severe slowdown of the technology sector in about 2000.

5      In about 2003, the Debtor undertook a series of actions in support of a revised business

6 strategy. When such strategy was fully implemented, all development and manufacturing operations

7 of the Debtor were discontinued. The Debtor sold its intellectual property to EMC and the Debtor

8 became an EMC reseller and strategic partner. The Debtor also raised, in a preferred stock offering,

9 approximately $15 million in support of such business strategy.

10      Although the Debtor's growth resumed under the Debtor's EMC reseller strategy, as a result

11 of the high costs associated with being a public entity, the legacy costs associated with the Debtor's

12 having been a manufacturing company and the narrowing margins of a system integrator, the Debtor

13 continued to struggle to attain profitability, although it made progress in reducing its operating

14 losses.

15      In about 2005, the Debtor further revised its business strategy in an attempt to achieve

16 profitability. In about 2005, the Debtor determined to attempt to increase substantially the mix of

17 information technology consulting services that it sold and delivered. To achieve this goal, in

18 November 2005, the Debtor raised $20 million in a Series "B" preferred offering. $3.5 million of

19 the proceeds from this offering were used to provide needed working capital for the European

20 Subsidiaries, which were focusing on providing such services on behalf of the Debtor.

21      In 2006, the Debtor acquired Collective, an information technology consulting services

22 company, for a total of $11 million in cash, debt, stock and warrants. The Debtor's attempt to

23 convert to an information technology consulting services-focused company proved to be more

24 difficult and required more investment than the Debtor had anticipated. The synergies that the

25 Debtor anticipated obtaining from the Collective acquisition were not realized fully by the Debtor

26 and the Debtor's losses continued.

27      In the first half of 2007, the Debtor hired Needham & Company, an investment banking firm,

28 to advise the Debtor regarding its strategic alternatives. The Debtor determined to attempt to find

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-30-

1   strategic partners with which to merge the Debtor's business, or to sell the Debtor's business. With

2   the assistance of Needham & Company, the Debtor contacted over 130 companies to gauge their

3   interest in effectuating a strategic transaction with the Debtor. Ultimately, no merger partner or

4   buyer for the Debtor emerged.

5       The process of the Debtor's trying to locate a strategy partner or a buyer for the Debtor's

6   business took much longer than the Debtor had anticipated and was costly for the Debtor. In 2007,

7   the Debtor's domestic product sales unexpectedly took a downward turn, leaving the Debtor faced

8   with a significant cash flow issues.

9       **D.    Management of the Debtor Before and After the Petition Date.**

10          **1.    Prior to the Petition Date.**

11      Prior to the Petition Date, the key managers and directors of the Debtor were as

12  follows:

13          **a.    Key Managers.**

14          Edward Kirnbauer, Vice President & Corporate Controller
            Keith Clark, Executive Vice President, Europe and Worldwide Operations
15          Scott Poteracki, Executive Vice President, Chief Financial Officer and Secretary
            Thomas P. Raimondi, Jr., Chief Executive Officer and President
16          Edward Ateyeh, Executive Vice President, United States Services
            William J. Kerley, Chief Operating Officer, United States Services
17

18          **b.    Corporate Directors.**

19          Lawrence P. Begley, Director
            Franz L. Cristiani, Director
20          Michael Pehl, Director
            Kent D. Smith, Director
21          Ronald E. Heinz, Jr., Director
            William Atkins, Director
22          Thomas P. Raimondi, Jr., Chairman of the Board

23          **2.    After the Petition Date.**

24      At this time, the Debtor's management consists of the following individuals:

25          **a.    Scott Poteracki.**

26          Mr. Poteracki serves as Chief Reorganization Officer of the Debtor. He is

27  compensated at the rate of $250.00 per hour for 20 hours monthly (any time in excess of 20 hours

28  requires Committee approval) and receives limited benefits.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

b.    **Thomas P. Raimondi, Jr.**

Mr. Raimondi serves as a consultant to the Debtor.  He is compensated at the rate of $300.00 per hour for 10 hours monthly (any time in excess of 10 hours requires Committee approval) and initially received limited benefits.

c.    **Todd Schaeffer.**

Mr. Schaeffer serves as a consultant to the Debtor.  He is compensated at the rate of $136.00 per hour (for an average of approximately 10 days per month, as needed).

E.    **Events Leading to the Debtor's Chapter 11 Filing**.

A combination of factors occurred within several months prior to the Petition Date which caused the Debtor to file its Chapter 11 petition.  Such factors include the following:

1.    **Delay in Closing of Sale of European Subsidiaries**.

A sale of the Debtor's interests in the European Subsidiaries, which had been anticipated to close in August 2007, was postponed because an agreement regarding the provision of various representations and warranties could not be reached.  The delay in closing this transaction deprived the Debtor of the anticipated proceeds from the sale of the European Subsidiaries.  Furthermore, the Debtor was not able to repatriate earnings of the European Subsidiaries to address the Debtor's cash flow needs.

2.    **Disputes with EMC**.

In mid-September 2007, the Debtor's major supplier, EMC, refused to continue taking orders from the Debtor and instead sought to have orders from the Debtor's customers made directly to EMC. Furthermore, EMC began holding back payments owed to the Debtor for consulting services that the Debtor had provided to EMC, exacerbating the Debtor's cash flow problems.

3.    **Problems with Sales Force**.

During the several months preceding the Petition Date, the Debtor's sales force began to withhold order writing, assuming that the Debtor would be sold, and, at the same time, FusionStorm approached and obtained the services of a significant portion of the Debtor's Northeastern United States sales team, resulting in a loss of significant revenues for the Debtor.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**4.    Canopy.**

An insider of the Debtor, Canopy, refused to provide to the Debtor access to additional credit lines.

As a result of the foregoing, the Debtor experienced substantial cash flow difficulties which made continued business operations impossible and which compelled the Debtor to file, on October 15, 2007, a Chapter 11 petition for relief, commencing the Case.

**F.    Significant Events During the Case.**

Since the Petition Date, the Debtor has continued to manage its assets, as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtor has ceased all business operations with the exception of collecting its accounts receivable, disposing of its Assets and assisting the Debtor's counsel and the Committee with various recovery analyses, Claims review, the prosecution of Causes of Action and the development of the Plan.

The following is a list of significant events which have occurred during the Case.

**1.    Case Administration.**

**a.    Omni.**

The Debtor employed, as its claims and noticing agent in the Case, Omni Management Group, LLC ("Omni") to assist the Debtor with respect to preparing the Bankruptcy Schedules, maintaining Claims information, assisting the Debtor to comply with the reporting requirements of the United States Trustee, providing advice related to the Debtor's banking and financial matters, and assisting the Debtor with respect to serving notice of proceedings in the Case.

**b.    Rejection of Leases.**

The Debtor has rejected its leases of its business premises, as well as all of its known personal property leases and executory contracts, except for those which are related to its post-petition operations.

**2.    First-Day Motions and Early Case Motions.**

The Debtor filed several "first-day" motions, the relief sought by which was needed by the Debtor on an emergency basis. By these motions, the Debtor requested that the Bankruptcy Court enter orders authorizing the following:  (a) the Debtor's borrowing, on an interim basis, up to

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   $1,000,000 from Zinc Holdings LLC ("Zinc"), then a prospective buyer of the Debtor's interests in

2   the European Subsidiaries (the "Interim DIP Financing"); (b) the Debtor's maintaining a pre-petition

3   bank account in addition to debtor-in-possession accounts; (c) the Debtor's maintaining utility

4   services with adequate deposits; (d) the limiting of notice to certain creditors; (e) the Debtor's

5   paying of certain pre-petition wages and expense reimbursements to non-insider employees of the

6   Debtor, up to the statutory level of priority unsecured claim allowances; and (f) the Debtor's

7   employing Omni as the claims and noticing agent in the Case.  These motions were approved by

8   orders of the Bankruptcy Court on October 16, 2007 and October 18, 2007.  The Debtor also filed an

9   application to employ Clarkson Gore and its general insolvency counsel in the Case and a

10  "Knudsen" motion to authorize monthly payment of fees of Professionals employed in the Case,

11  which also were approved by the Bankruptcy Court.

12          **3.      Asset Sale Procedures Motion for European Subsidiaries.**

13          On October 16, 2007, the Debtor filed its Motion for Order Approving (1)

14  Procedures for Sale of Debtor's European Assets Free and Clear of Liens, Claims and Interests; and

15  (2) for Break Up Fee and Expense Reimbursement ("Sale Procedures Motion").  The Sales

16  Procedure Motion was granted on October 16, 2007.  Among the salient items addressed by the Sale

17  Procedures Motion were:  (a) the notice requirements in connection with a motion to sell the

18  Debtor's interests in the European Subsidiaries ("Sale Motion"), (b) bidding procedures applicable

19  to overbidders in connection with the hearing on the Sale Motion, (c) a break-up fee and expense

20  reimbursement to be paid to Zinc in the event that another party were to successfully overbid Zinc,

21  and (d) the scheduling of an auction and a hearing with respect to the Sale Motion.

22          **4.      Sale Motion.**

23          On October 22, 2007, the Debtor filed the Sale Motion requesting, pursuant to

24  sections 105, 363(b), 363 (f) and 365 of the Bankruptcy Code, an order approving the sale of the

25  Debtor's interests in the European Subsidiaries free and clear of all liens, claims and interests, with

26  such liens, claims, and interests attaching to the proceeds of such sale with the same validity and

27  priority as existed prior to such sale. In accordance with the Sale Motion, on November 20, 2007, the

28  Debtor's interests in the European Subsidiaries were sold for an aggregate amount of $7,275,000.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-34-

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    **5.    Post-Petition Financing.**

2    On October 16, 2007, the Bankruptcy Court approved the Debtor's request to obtain

3    from Zinc the Interim DIP Financing of up to $1,000,000, and, at a final hearing held on

4    November 7, 2007, the Bankruptcy Court approved the Debtor's request to obtain from Zinc

5    financing in an amount up to $5,000,000. On December 22, 2007, the Debtor paid to Zinc the full

6    amount of such financing that the Debtor had borrowed from Zinc.

7    **6.    Sale of Various United States Assets.**

8    During the Case, the Debtor has worked to liquidate various Assets based in the

9    United States, including the following:

10    **a.    Collective.**

11    On the eve of the Petition Date, the Debtor entered into a Client Transition

12    Agreement with The Collective Group in which it licensed to The Collective Group the right to use

13    the Debtor's assets associated with the Debtor's Collective information technology services division,

14    previously located in Austin, Texas, in exchange for 10% of certain revenues generated as a result of

15    services performed by The Collective Group. The Client Transition Agreement contemplated the

16    parties' entering into an asset purchase agreement for the licensed assets.   The Debtor filed a motion

17    to assume the Client Transition Agreement ("CTA Assumption Motion").  Fusionware thereafter

18    notified the Debtor of Fusionware's interest in overbidding on the assumption of the Client

19    Transition Agreement and negotiations ensued involving the Committee, the Debtor, The Collective

20    Group and Fusionware, resulting in The Collective Group's providing to the Debtor an offer to enter

21    into an Amended and Restated Client Transition Agreement, pursuant to which The Collective

22    Group agreed to purchase the licensed assets for $125,000 (less amounts paid pursuant to the Client

23    Transition Agreement) plus 20% of new business generated with the Debtor's former customers over

24    a period of 12 months. Such offer was accepted by the Debtor.

25    The Collective Group commenced making payments to the Debtor pursuant

26    to the terms of the original Client Transition Agreement, resulting in payment to the Estate of

27    approximately $50,000, and commenced aiding the Debtor in its efforts to collect approximately

28    $500,000 in receivables owed to the Debtor with respect to the Debtor's Collective business

-35-

1  division. The Debtor withdrew the CTA Assumption Motion and prepared and filed a motion to sell

2  and assign to The Collective Group the assets associated with the Collective business division, in

3  place of the Client Transition Agreement. Such motion was approved by the Bankruptcy Court on

4  May 15, 2008. The Debtor believes that the Collective Group has made all of the required payments

5  to the Debtor.

6                    **b.      Furniture and Equipment Auction.**

7                    On or about December 28, 2007, the Debtor filed an application to employ

8  CMA Business Credit Services as an auctioneer and to obtain authority to conduct an auction of

9  excess personal property at the Debtor's premises (e.g., office equipment, computers, printers,

10  servers, and office furniture). The application was approved by an order of the Bankruptcy Court

11  entered on January 16, 2008. The auction of such property was conducted on January 26, 2008, and

12  resulted in net proceeds of approximately $25,000 to the Estate.

13                    **c.      National Customer Engineering, Inc.**

14                    On December 13, 2007, the Debtor filed a motion seeking from the

15  Bankruptcy Court approval of an agreement for the sale of assets of the Debtor to National Customer

16  Engineering, Inc. ("NCE"). Pursuant to the parties' purchase and sale agreement ("NCE

17  Agreement"), NCE agreed to: (i) purchase certain fixed assets associated with the Debtor's "Legacy

18  Hardware" (essentially spare parts and testing equipment); (ii) perform and discharge all of the

19  Debtor's obligations to the Legacy Hardware customers under the Debtor's prepaid maintenance and

20  support agreements with such customers (for which such customers had paid an estimated $400,000-

21  $600,000); (iii) pay to the Debtor 10% of amounts that would be collected by NCE in connection

22  with Legacy contracts that would be renewed or extended by NCE after the closing of the NCE

23  Agreement, for a period of up to one year after the Bankruptcy Court's approval of the NCE

24  Agreement; and (iv) allow the Debtor to collect any accounts receivable existing as of the closing of

25  the NCE Agreement. This motion was approved by an order of the Bankruptcy Court entered on

26  January 3, 2008. NCE has paid to the Debtor approximately $38,102 in connection with such

27  transaction.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_Jt_2nd_Amd_DS_3-24-2010.DOC

7.    **The Debtor's Secured Creditors as of the Petition Date**.

On the Petition Date, the Debtor had two primary Secured Creditors, Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit operating division ("Wells Fargo"), and Canopy. A description of the Secured Claims of these Creditors is as follows.

a.    **Wells Fargo Facility**.

Pursuant to an Account Purchase Agreement, dated November 27, 2006 (which was thereafter amended, supplemented and modified prior to the Petition Date), entered into between the Debtor and Wells Fargo, the Debtor sold and assigned to Wells Fargo certain of the Debtor's accounts receivable. In connection with this transaction, the Debtor granted to Wells Fargo a first-priority security interest and lien on the Debtor's then existing or thereafter arising accounts, and any contract rights, inventory, general intangibles, chattel paper, documents, books and records, proceeds and products, pertaining to such accounts. As of the Petition Date, the Debtor owed to Wells Fargo approximately $1,741,745. The Debtor paid in full its obligation to Wells Fargo within forty-five (45) days after the Petition Date; however, there remained an open question as to whether Wells Fargo was inappropriately paid approximately $120,000 as a penalty for an early termination of the Wells Fargo facility. Discussions among Wells Fargo and the Committee resolved this issue without litigation, and Wells Fargo repaid to the Debtor the full amount of the penalty.

b.    **The Canopy Facility**.

Pursuant to a Loan Agreement, dated June 27, 2002 (which was thereafter amended, supplemented, and modified prior to the Petition Date), Canopy guaranteed the Debtor's obligations under a Loan and Security Agreement between the Debtor and Comerica Bank-California (the "Comerica Line of Credit"), and Canopy secured its guarantee of the Comerica Line of Credit by pledging in favor of Comerica Bank-California a Seven Million Dollar ($7,000,000) letter of credit issued by Bank of America ("Canopy Letter of Credit"). To secure the Debtor's contingent obligation to Canopy, the Debtor granted to Canopy a security interest and lien on all of the Debtor's then existing and after-acquired general intangibles, accounts, inventory, equipment, goods, fixtures, chattel paper, documents, instruments and records.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-37-

1           Prior to the Petition Date, the Debtor did not comply with its obligations

2    under the Comerica Line of Credit, and Comerica Bank-California called upon the Canopy Letter of

3    Credit and used it to satisfy in full the Comerica Line of Credit.  As a result thereof, as of the

4    Petition Date, the Debtor owed to Canopy approximately $5,190,546, plus interest and attorneys'

5    fees and costs, in connection with the Canopy facility.

6           The Committee evaluated thoroughly Canopy's Secured Claim and

7    determined to challenge the perfection of Canopy's security interest, asserting that such security

8    interest was avoidable as a preferential transfer.  Canopy disputed such assertion.  Extensive

9    negotiations were conducted between Canopy and the Committee in order to attempt to resolve such

10   disputes.  On or about July 28, 2008, the Debtor, the Committee, and Canopy negotiated that

11   Settlement Agreement and Mutual Release of Claims ("Canopy Settlement Agreement"), resolving

12   the disputes regarding the validity and payment of Canopy's Secured Claim.  The Canopy

13   Settlement Agreement was approved by an order of the Bankruptcy Court entered on November 13,

14   2008. Pursuant to the Canopy Settlement Agreement, the Debtor paid to Canopy $2,500,000 on

15   account of Canopy's Secured Claim and the Debtor received approximately $3,500,000.  Pursuant to

16   the Canopy Settlement Agreement, the Debtor agreed to assign to Canopy a share of the aggregate

17   amount of any Avoidance Action proceeds received by the Debtor's Estate, payable to Canopy as

18   follows:  (i) if the gross proceeds of the Avoidance Actions are less then $1,000,000, Canopy

19   receives no payment; (ii) if the gross proceeds of the Avoidance Actions are between $1,000,000 and

20   $2,000,000, Canopy receives 5% of such proceeds; (iii) if the gross proceeds of the Avoidance

21   Actions are between $2,000,000 and $3,000,000, Canopy receives 10% of such proceeds; and (iv) if

22   the gross proceeds of the Avoidance Actions exceed $3,000,000, Canopy receives 15% of such

23   proceeds, up to a maximum of $1,000,000.  A copy of the Canopy Settlement Agreement is attached

24   as Exhibit "1" to the Plan.

25

26

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**8.    Accounts Receivable Collection/Litigation with Lenox.**

      **a.    Accounts Receivable.**

During the Case, the Debtor has made diligent efforts to collect its accounts receivable. The Debtor believes that it now has collected virtually all of its collectable receivables.[10]

      **b.    Lenox.**

The Debtor filed in the Bankruptcy Court a complaint against Lenox Financial Mortgage Corporation ("Lenox") to collect approximately $95,385 that Lenox owed to the Debtor. Lenox asserted defenses to the Debtor's action. The parties thereafter agreed to settle their disputes, but Lenox defaulted in paying its obligations in connection with such settlement. The Debtor ultimately collected the full amount of its claim against Lenox.

      **c.    Rockwell.**

The Debtor entered into a settlement agreement with Rockwell Collins, Inc. ("Rockwell") pursuant to which Rockwell agreed to pay to the Debtor the amount of $69,575 with respect to a delinquent account owed to the Debtor. In turn, the Debtor agreed to provide to Rockwell an Allowed General Unsecured Claim in the amount of $47,240. This agreement was approved by the Bankruptcy Court by an order entered on December 21, 2009.

**9.    Employment of Professionals.**

The Bankruptcy Court has approved the employment of the following Professionals in the Case:

      a.    Clarkson Gore -- Debtor's general insolvency counsel;

      b.    Omni -- the Debtor's claims and noticing agent;

      c.    Manatt, Phelps & Phillips, LLP -- the Debtor's corporate counsel;

      d.    Beachcroft LLP; J.P. Karsenty Et Associes; Schmalz Rechtsanwälte; and Tods Murray LLP -- the Debtor's European corporate counsels in connection with the December 2007 sale of the Debtor's interests in the European Subsidiaries;

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

---

[10] The Debtor has a receivable owed by Dell in the amount of approximately $73,868, which the Debtor will continue to try to collect but which may provide to be uncollectable.

e.  Squar, Milner, Peterson, Miranda & Williamson, LLP -- the Debtor's accountants;

f.  Elmer Dean Martin, III -- the Debtor's tax counsel;

g.  Winthrop Couchot -- counsel for the Committee; and

h.  Corporate Recovery Associates -- the Committee's financial advisors.

## V.

## LITIGATION AND OBJECTIONS TO CLAIMS

### A.   Litigation Commenced Prior to the Petition Date.

As of the Petition Date, the Debtor was involved in certain litigation as set forth in the Bankruptcy Schedules. All of this litigation has been stayed. The Plan Proponents believe that such litigation will not have a material impact on the feasibility or implementation of the Plan.

### B.   Litigation Commenced After the Petition Date.

After the Petition Date, the Debtor and the Committee have commenced a number of actions, including collection actions and various Avoidance Actions. Attached hereto as **Exhibit "A"** is a list of all pending actions filed in the Case.

Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principle of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Cause of Action, or potential Cause of Action, in the Plan, this Disclosure Statement, or any other document filed with the Bankruptcy Court will in no manner waive, eliminate, modify, release, impair or alter the Debtor's or the Plan Agent's right to commence, prosecute, defend against, settle, and realize upon any Cause of Action that the Debtor or the Estate has or may have as of the Effective Date. Unless otherwise provided in the Plan or in the Confirmation Order, to the extent that any filed or to-be-filed actions are not resolved as of the Effective Date, the Plan Agent, under the supervision of the Post-Effective Date Committee, will prosecute, settle, or otherwise resolve or dispose of Causes of Action in the Case.

The discussion regarding litigation and objections to Disputed Claims contained in this Article is for informational purposes only. Nothing contained herein is intended, nor should be

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    construed, to be any admission or acknowledgement by the Plan Proponents of any matter pertaining

2    to the Causes of Action in the Case.  The Debtor, the Committee and the Plan Agent to be employed

3    under the Plan reserve all of their respective rights and remedies with respect to Causes of Action

4    asserted or that may be asserted in the Case.

5            **1.**      **Litigation.**

6            As stated hereinabove, **Exhibit "A"** attached hereto sets forth a list of all actions

7    filed by the Debtor or by the Committee after the Petition Date.  The primary actions filed in the

8    Case are as follows:

9            **a.**      **EMC.**

10           On May 1, 2009, the Debtor filed in the Bankruptcy Court a complaint

11   against EMC asserting, in part, the following causes of action:  avoidance and recovery of

12   preferential transfers; breach of written contact; and turnover of property of the Estate.  EMC filed

13   an answer to such complaint and asserted counterclaims against the Debtor.  After extensive

14   discovery conducted by the parties and after settlement negotiations among the parties and the

15   Committee, including a mediation proceeding, on or about March 4, 2010, the parties agreed to settle

16   their disputes.  Subject to the approval of the Bankruptcy Court, the Debtor and EMC have agreed to

17   settle their disputes materially in accordance with the following terms and conditions ("EMC

18   Settlement Agreement"):

19               (i)      EMC will pay to the Debtor $1.9 million cash ("EMC

20               Settlement Payment");

21               (ii)      EMC will waive and release its Administrative Claims against

22   the Debtor, asserted to be in an amount of approximately $578,649;

23               (iii)      EMC will waive and release its General Unsecured Claims

24   against the Debtor, asserted to be in an amount of approximately $4,464,523; and

25               (iv)      The Debtor and EMC will waive and release any and all claims

26   that they may have against each other.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_lt_2nd_Amd_DS_3-24-2010.DOC

1          The Debtor intends to file, in March 2010, a motion, pursuant to Rule 9019

2 of the Federal Bankruptcy Rules to obtain approval of its proposed settlement with EMC.  The

3 Committee supports such settlement.

4                  **b.**    **Pencom Defendants.**

5          On October 14, 2009, the Committee filed in the Bankruptcy Court a

6 complaint against Pencom Systems, Inc., Edgar Saadi, Wade Saadi and Edward Ateyeh

7 (collectively, "Pencom Defendants"), asserting, in part, the following causes of action:  avoidance

8 and recovery of transfers of property; disallowance of claims; and breach of fiduciary duties

9 ("Pencom Action").  By the Pencom Action, the Committee seeks a recovery against the Pencom

10 Defendants in an amount in excess of $9.0 million.  The Pencom Defendants filed a motion to

11 dismiss the Committee's complaint, and a hearing thereon is scheduled for August 5, 2010.  The

12 Committee and the Pencom Defendants have agreed to mediate their disputes, and the Bankruptcy

13 Court has ordered that such mediation be held by June 18, 2010.

14                  **c.**    **FusionStorm.**

15          On March 4, 2010, the Debtor filed in the Bankruptcy Court its First

16 Amended Complaint for (1) Breach of Contract by FusionStorm, Etc. (the "FusionStorm Action")

17 against FusionStorm, certain of Fusion Storm's employees, and certain former employees of the

18 Debtor asserting against them, *inter alia*, the following causes of action:  breach of contract; breach

19 of fiduciary duty; aiding and abetting breach of fiduciary duty; breach of statutory duties of

20 employees; breach of common law duties of loyalty by employees; intentional interference with

21 contract and with prospective economic advantage; unfair competition; breach of covenants of good

22 faith and fair dealing; violation of the automatic stay under section 362 of the Bankruptcy Code;

23 breaches of California's Uniform Trade Secret Act, the Computer Fraud and Abuse Act, and

24 California Penal Code Section 502(c) (regarding unauthorized use of the Debtor's computers,

25 systems and data), objections to proofs of claims filed by certain of the defendants, Robert Owen

26 (Claim No. 246), Christopher Butts (Claim No. 63), Marc Franz (Claim No. 96), and Robert Linsky

27 (Claim No. 497) and equitable subordination thereof; conversion of the Debtor's property, and

28 turnover of the Debtor's property pursuant to section 542 of the Bankruptcy Code.  By the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-42-

1    FusionStorm Action, the Debtor has alleged that FusionStorm and the other defendants created

2    and/or participated in an unlawful and anti-competitive scheme to destroy the Debtor's operations in

3    North America and to obtain the Debtor's East Coast division, along with the Debtor's customers

4    and goodwill, without paying the Debtor therefor, and that the defendants' knowing and culpable

5    participation in that scheme ultimately led to the downfall of the Debtor.  In particular, the Debtor

6    believes that FusionStorm and the other defendants improperly used the Debtor's confidential and

7    proprietary information and trade secrets, unlawfully solicited, directly or indirectly, former

8    employees of the Debtor for employment by FusionStorm, and unlawfully solicited the Debtor's

9    customers.  By the FusionStorm Action, the Debtor seeks a recovery against the defendants in an

10   amount in excess of $1,000,000 to be proven at trial and seeks the additional relief described therein,

11   including but not limited to, turnover of the Debtor's confidential and proprietary information and

12   trade secrets.

13              **2.      Claims Objections.**

14              The Plan Proponents have not completed their review, analysis and investigation of

15   the Proofs of Claim and their preparation of objections to Disputed Claims.  The Debtor has filed

16   numerous objections to Disputed Claims, and the Plan Proponents expect that they (and the Plan

17   Agent after the Effective Date) will pursue objections to other Disputed Claims.  The Plan

18   Proponents anticipate that the Claims adjudication process will be completed by the end of 2010.

19              **3.      Subordination Actions.**

20              The Plan Proponents have not completed their review, analysis and investigation of

21   the Proofs of Claim with regard to determining whether any potential Causes of Action exist to

22   subordinate any Claims from Class 3 to Class 5.  The Plan Proponents reserve the right to assert

23   Causes of Action to subordinate any Claims in the Case.  If any such Causes of Action are to be

24   asserted in the Case, the Plan Proponents expect that such actions will be filed by December 1, 2010

25   and will be completed within about one year.

26

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-43-

**VI.**

**DESCRIPTION OF THE PLAN**

The following is a brief summary of the Plan and is qualified in its entirety by the full text of the Plan. The terms of the Plan will be controlling on Creditors in the event that the Plan is confirmed. Therefore, all Creditors are urged to read the Plan carefully in its entirety rather than relying on this summary.

**A.   Basic Structure of the Plan.**

The Plan proposes to pay the Claims of five (5) Classes of Creditors in accordance with the provisions of the Plan. The Plan provides for the establishment of one (1) Class consisting of Interest Holders.

**B.   Classification and Treatment of Claims.**

Section 1123 of the Bankruptcy Code requires that the Plan Proponents, with certain exceptions, classify separately in the Plan all Claims. Pursuant to section 1122 of the Bankruptcy Code, the Plan Proponents may place all Claims that are substantially the same in the same Class in the Plan. Section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same treatment for all Claims in the same Class, unless the holder of a particular Claim agrees to a less favorable treatment of that Claim.

Section 1123(a) of the Bankruptcy Code requires that the Plan Proponents specify in the Plan any Class that is not "impaired" by the Plan and specify the treatment of any Class that is impaired by the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims is "impaired" by the Plan, unless the Plan (1) leaves unaltered the legal, equitable and contractual rights of holders of the Claims, or (2) cures any defaults with respect to the Claims which occurred before the Petition Date, reinstates the maturity of the Claims, and compensates the holders of the Claims for any damages incurred by them as a result of any reasonable reliance by them on contractual provisions or applicable law entitling them to receive accelerated payment after the occurrence of such defaults, or (3) provides that, on the Effective Date, the holders of such Claims will receive Cash equal to the amount of their Allowed Claims. Pursuant to section 1126(f) of the Bankruptcy Code, a Class of Claims that is not impaired by the Plan is conclusively presumed to have accepted the Plan, and is

-44-

1    not entitled to vote on the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, a Class is

2    deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such Class

3    do not receive or retain any property under the Plan on account of such Claims or Interests.

4         Classes 1 (Allowed Secured Claims), 2 (Allowed Priority Non-Tax Claims) and 4 (Canopy

5    Claim) are not "impaired" under the Plan and, therefore, are not entitled to vote on the Plan.

6    Classes 3 (Allowed General Unsecured Claims), 5 (Allowed Subordinated Claims) and 6 (Interest

7    Holders) are "impaired" under the Plan.  Classes 3 and 5 are entitled to vote on the Plan.  Class 6

8    Interest Holders very likely will receive no recovery under the Plan, and are deemed not to have

9    accepted the Plan, and, therefore, are <u>not</u> entitled to vote on the Plan.

10        **C.    <u>Unclassified Claims.</u>**

11        In accordance with the provisions of section 1123(a)(1) of the Bankruptcy Code,

12   Administrative Claims and Priority Tax Claims are not classified under the Plan.  These Claims are

13   not considered impaired, and they do not vote on the Plan, because they are automatically entitled to

14   specific treatment provided for them in the Bankruptcy Code.  Accordingly, the Plan Proponents

15   have not placed Administrative Claims and Priority Tax Claims in a Class.  The treatment of these

16   unclassified Claims is as provided below.

17        **1.    <u>Allowed Administrative Claims.</u>**

18        Administrative Claims generally are Claims for the expenses of administering the

19   Debtor's Case that are allowed under section 503(b) of the Bankruptcy Code.  Administrative

20   Claims also include Claims provided for by section 503(b)(9) of the Bankruptcy Code.  The

21   Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of the Plan,

22   unless a particular Creditor agrees to a different treatment of its Claim.  The treatment of

23   Administrative Claims under the Plan is as described below.

24        **a.    <u>Payment.</u>**

25        Except to the extent that the holder of an Allowed Administrative Claim

26   agrees to a less favorable treatment of its Allowed Administrative Claim, and, subject to the

27   Administrative Claims Bar Date set forth in Section 3.1.2 of the Plan, each holder of an Allowed

28   Administrative Claim will receive, in full satisfaction, discharge, exchange and release of its

*CLARKSON, GORE & MARSELLA, APLC*
*ATTORNEYS AT LAW*
*TORRANCE, CALIFORNIA*

1  Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, on

2  the latest of (i) the Effective Date, (ii) the fifteenth (15th) Business Day after the date upon which

3  such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date upon which

4  such Allowed Administrative Claim becomes due according to its terms; provided, however, that an

5  Ordinary Course Administrative Claim will be paid in full in accordance with the terms and

6  conditions of the agreements giving rise to such Ordinary Course Administrative Claim.

7  **b.    Administrative Claims Bar Date.**

8  Except for Pre-Effective Date Professional Fee Claims, United States Trustee

9  Fees and Ordinary Course Administrative Claims, and, except as set forth in section 503(b)(1)(D) of

10  the Bankruptcy Code, all requests for payment of Administrative Claims must be filed with the

11  Bankruptcy Court and served no later than thirty (30) days after the Effective Date (the

12  "Administrative Claims Bar Date").  Any holder of an Administrative Claim that is required to file a

13  request for payment of its Administrative Claim by the Administrative Claims Bar Date and that

14  does not file by the Administrative Claims Bar Date such a request for payment of its Administrative

15  Claim will be forever barred from asserting such Administrative Claim against the Debtor, the

16  Reorganized Debtor, the Estate or any of the property or assets of the Debtor or the Reorganized

17  Debtor.

18  **c.    Deadline for Objections.**

19  All objections to allowance of Administrative Claims that are subject to the

20  Administrative Claims Bar Date must be filed by the Plan Agent no later than forty-five (45) days

21  after the Administrative Claims Bar Date (the "Administrative Claims Objection Deadline").  The

22  Administrative Claims Objection Deadline may be extended for a one-time thirty (30) day period by

23  the Plan Agent by filing a notice of the extended Administrative Claims Objection Deadline with the

24  Bankruptcy Court.  Thereafter, the Administrative Claims Objection Deadline may be further

25  extended only by an order of the Bankruptcy Court.  If the Plan Agent fails to file, by the

26  Administrative Claims Objection Deadline, an objection to an Administrative Claim that must be

27  filed, and is filed, by the Administrative Claims Bar Date, such Administrative Claim will be

28  deemed allowed as of the Administrative Claims Objection Deadline.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-46-

CLARKSON, GORE & MARSHALL, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

       d.     **United States Trustee Fees.**

United States Trustee Fees will be paid prior to the Effective Date by the Debtor, and, after the Effective Date by the Plan Agent, in each case, when due in accordance with applicable law until the entry of a Final Decree.

       e.     **Pre-Effective Date Professional Fee Claims.**

Each Pre-Effective Date Professional seeking from the Bankruptcy Court an award with respect to a Pre-Effective Date Professional Fee Claim must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such later date as may be fixed by the Bankruptcy Court. Such Pre-Effective Date Professional will receive, in full satisfaction, discharge, exchange and release of its Pre-Effective Date Professional Fee Claim, Cash in such amounts as are allowed by the Bankruptcy Court. All objections to allowance of Pre-Effective Date Professional Fee Claims must be filed and served timely in accordance with the requirements of the Bankruptcy Rules.

       **2.**     **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment of its Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim will receive, in full satisfaction, discharge, exchange and release of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, on the later of (a) the Effective Date or (b) the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim.

       **D.**     **Classification of Claims and Interests Under the Plan.**

       **1.**     **Overview.**

As required by the Bankruptcy Code, the Plan places Claims and Interests into Classes according to their respective legal rights and interests, including their respective rights to priority. In Section 4.2 of the Plan, the Plan Proponents list each Class of Claims and Interests established under the Plan and state whether each Class is impaired or is unimpaired by the Plan. A Class is "unimpaired" by the Plan if the Plan leaves unaltered the legal, equitable and contractual

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  rights to which the holders of Claims or Interests in the Class are entitled, as provided in

2  section 1124 of the Bankruptcy Code.  Article V of the Plan sets forth the treatment that each Class

3  will receive under the Plan.

4          Pursuant to the Plan, a Claim will be deemed classified in a particular Class only to

5  the extent that the Claim qualifies within the description of that Class and will be deemed classified

6  in another Class or Classes to the extent that any remainder of the Claim qualifies within the

7  description of such other Class or Classes.  A Claim is classified in a particular Class only to the

8  extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise

9  satisfied prior to the Effective Date.

10          **2.    Designation of Classes.**

11          The Plan designates the following Classes of Claims and Interests:

12                  **a.    Allowed Claims.**

13                          (i)     Class 1:  Any Allowed Secured Claims.  This Class is not

14  impaired by the Plan.

15                          (ii)    Class 2:  Allowed Priority Non-Tax Claims.  This Class is not

16  impaired by the Plan.

17                          (iii)   Class 3:  Allowed General Unsecured Claims.  This Class is

18  impaired by the Plan.

19                          (iv)    Class 4:  The Canopy Claim.  This Class is not impaired by the

20  Plan.

21                          (v)     Class 5:  Any Allowed Subordinated Claims.  This Class is

22  impaired by the Plan.

23                  **b.    Interests.**

24          Class 6:  Interests of the Interest Holders.  This Class is impaired by the

25  Plan.

26          **3.    Summary of Classification.**

27          The following table summarizes the Classes of Claims and Interests established by

28  the Plan:

-48-

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | Allowed Secured Claims | Unimpaired | Deemed to Accept Plan |
| Class 2 | Allowed Priority Non-Tax Claims | Unimpaired | Deemed to Accept Plan |
| Class 3 | Allowed General Unsecured Claims | Impaired | Entitled to Vote on Plan |
| Class 4 | Canopy Claim | Unimpaired | Deemed to Accept Plan |
| Class 5 | Allowed Subordinated Claims | Impaired | Entitled to Vote on Plan |
| Class 6 | Interests | Impaired | Deemed to Reject the Plan |

As set forth above, Classes 1, 2 and 4 are unimpaired by the Plan; holders of Claims in these Classes are conclusively presumed to have accepted the Plan and, hence, are not entitled to vote with respect to the Plan. Classes 3 and 5 are impaired by the Plan, and holders of Claims in these Classes are entitled to vote to accept or reject the Plan. Interests in Class 6 are impaired; the Plan Proponents believe that it is very likely that Interest Holders will not receive or retain under the Plan any value on account of their Interests, and, hence, Interest Holders are deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code.

The treatment of Claims and Interests under the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Creditor or Interest Holder may have in or against the Debtor or its property. This treatment supersedes and replaces any agreements or rights which those entities have in or against the Debtor or its property. **NO DISTRIBUTIONS WILL BE MADE, AND NO RIGHTS WILL BE RETAINED, ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

## VII.

## TREATMENT OF CLASSES UNDER THE PLAN

The following sets forth the treatment of Classes established by the Plan.

### A.    Class 1 -- Any Allowed Secured Claims.

Class 1 consists of any Allowed Secured Claims. Class 1 is unimpaired by the Plan. In the event that there is more than one holder of an Allowed Class 1 Claim, the Allowed Secured Claim

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   of each such Secured Creditor will be deemed to be classified in a separate sub-class of Class 1, and

2   each such sub-class of Class 1 will be deemed to be a separate Class under the Plan.

3        1.    **Treatment of Allowed Secured Claims.**

4        Within fifteen (15) Business Days after the Effective Date, each Secured Creditor

5   holding an Allowed Class 1 Claim will receive, at the election of the Plan Agent, made in the

6   exercise of its sole and absolute discretion, <u>one</u> of the following treatments in full satisfaction,

7   discharge, exchange and release of the Allowed Class 1 Claim:

8        a.    **Option 1.**

9        The holder of the Allowed Class 1 Claim will receive a return of the Collateral

10  in which that Secured Creditor has a security interest.  Unless a Secured Creditor holding an

11  Allowed Deficiency Claim should make an election under section 1111(b) of the Bankruptcy Code,

12  its Allowed Deficiency Claim will be treated under the Plan as a Class 3 Allowed General

13  Unsecured Claim.

14       b.    **Option 2.**

15       The holder of the Allowed Class 1 Claim will receive any proceeds actually

16  received by the Debtor or Reorganized Debtor (as applicable) from the sale or other disposition of

17  the Collateral in which that Secured Creditor has a security interest.  Unless a Secured Creditor

18  holding an Allowed Deficiency Claim should make an election under section 1111(b) of the

19  Bankruptcy Code, its Allowed Deficiency Claim will be treated under the Plan as a Class 3 Allowed

20  General Unsecured Claim

21       c.    **Option 3.**

22       The holder of the Allowed Class 1 Claim will receive Cash in the full amount

23  of that Secured Creditor's Allowed Class 1 Claim.

24       d.    **Option 4.**

25       The holder of the Allowed Class 1 Claim will receive such other Distributions

26  or treatment as is necessary to leave the rights of that Secured Creditor unimpaired under the

27  Bankruptcy Code.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

-50-

1    The Plan Agent will have until the <u>later</u> of the tenth (10th) Business Day before the

2    Confirmation Hearing Date, or the tenth (10th) Business Day after the date on which a Class 1 Claim

3    because an Allowed Secured Claim to elect which treatment set forth under Section 5.1.1 of the Plan

4    to provide to the Secured Creditor holding such Allowed Class 1 Claim.

5    **B.    Class 2 -- Allowed Priority Non-Tax Claims.**

6    Class 2 consists of all Allowed Priority Non-Tax Claims.  Class 2 is not impaired by the

7    Plan.

8    Pursuant to the Plan, except to the extent that a holder of an Allowed Priority Non-Tax

9    Claim agrees to a less favorable treatment of its Allowed Priority Non-Tax Claim, each holder of an

10   Allowed Priority Non-Tax Claim will receive, in full satisfaction, discharge, exchange and release

11   of its Allowed Priority Non-Tax Claim, Cash in the full amount of the Allowed Priority Non-Tax

12   Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such

13   Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

14   **C.    Class 3 -- Allowed General Unsecured Claims.**

15   Class 3 consists of all Allowed General Unsecured Claims.  Class 3 is impaired by the Plan.

16   Pursuant to the Plan, the treatment of Allowed Class 3 Claims is as follows:

17   **1.    Pro Rata Distribution of Plan Fund Proceeds.**

18   Subject to the provisions of Sections 5.3.1.3, 5.3.1.4, 5.3.1.5 and 5.3.1.6 of the Plan,

19   except to the extent that the holder of an Allowed General Unsecured Claim agrees to a less

20   favorable treatment of its Allowed General Unsecured Claim, the holder of an Allowed General

21   Unsecured Claim will receive, in full and complete satisfaction, discharge, exchange and release of

22   its Allowed General Unsecured Claim, Pro Rata Distributions of the Plan Fund Proceeds available

23   for distribution to holders of Allowed Class 3 Claims.

24   **2.    Timing of Distributions.**

25   The Plan Agent will make Distributions to the holders of Allowed Class 3 Claims

26   from the Plan Fund Proceeds.  All holders of Allowed Class 3 Claims will receive an initial

27   Distribution of their Pro Rata share of the Plan Fund Proceeds within 180 days following the

28   Effective Date, or on such later date as the Plan Agent determines to be practicable, in the exercise

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-51-

1   of its sole and absolute discretion, and will receive thereafter during the Case Distributions of their

2   Pro Rata share of Plan Fund Proceeds on each 180th-day anniversary of the Effective Date, or on

3   such later date as the Plan Agent determines to be practicable in the exercise of its sole and absolute

4   discretion.  Holders of Allowed Class 3 Claims will receive any final Distribution of their Pro Rata

5   share of Plan Fund Proceeds within ten (10) days after the filing of the Plan Agent Certification, or

6   as soon thereafter as is practicable.  Upon payment of the amount owed to the holder of any Allowed

7   Class 3 Claim under the Plan, such Allowed Class 3 Claim will be deemed to be fully and

8   completely satisfied, discharge and released.

9          **3.**    **Postpetition Interest.**

10          In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed General

11   Unsecured Claim will not include Postpetition Interest on account of such Allowed General

12   Unsecured Claim, except to the extent that all of the following are satisfied and paid in full:  (a) all

13   Allowed Administrative Claims; (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-

14   Tax Claims; (d) all Allowed Secured Claims (subject to the elections provided pursuant to

15   Section 5.1.1 of the Plan); (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all

16   Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; and (i) all Allowed Penalty Claims.

17   Any Postpetition Interest that may be payable on an Allowed General Unsecured Claim will be

18   calculated from the Petition Date through the date on which such Allowed General Unsecured Claim

19   is paid in full.

20          **4.**    **Conditions to Distributions.**

21          The Plan provides that, notwithstanding any other provision to the contrary contained

22   in the Plan, no Cash Distribution will be made on account of any Allowed General Unsecured Claim

23   until each of the following occurs:  (a) all Allowed Administrative Claims are paid; (b) all Allowed

24   Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed

25   Secured Claims are paid (subject to the elections provided pursuant to Section 5.1.1 of the Plan);

26   (e) the Disputed Claims Reserve is adequately funded for the Claims referenced in subsections (a)

27   through (d) of this subparagraph VII(C)(4); and (f) all outstanding Post-Effective Date Plan

28   Expenses have been paid in full and an adequate Reserve is established by the Plan Agent providing

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    for full payment of the estimated amount of all Post-Effective Date Plan Expenses through the Case

2    Closing Date, in an amount to be determined by the Plan Agent in the exercise of its sole and

3    absolute discretion.

4       **5.  Distribution of Post-Effective Date Stock.**

5       Each holder of an Allowed General Unsecured Claim will be allocated its Pro Rata

6    number of shares of Post-Effective Date Stock, to be held in trust for such Creditor by the Plan

7    Agent in contemplation of a potential Merger Transaction.  Subject to the provisions of Section 6.18

8    of the Plan, each holder of an Allowed General Unsecured Claim will receive a Distribution of any

9    Post-Effective Date Stock, or the net proceeds realized from the disposition of such Post-Effective

10   Date Stock, in connection with any Merger Transaction; provided, however, that the holder of an

11   Allowed General Unsecured Claim will have the right to elect not to receive any Distribution of

12   Post-Effective Date Stock, in accordance with the provisions of Section 6.18.6 of the Plan.

13      **6.  Limitation on Distributions.**

14      Notwithstanding anything to the contrary contained in Section 5.3.1 of the Plan, no

15   holder of an Allowed General Unsecured Claim will be entitled to receive more than 100% of the

16   amount of its Allowed General Unsecured Claim, plus any Postpetition Interest thereon payable

17   pursuant to Section 5.3.1.3 of the Plan.  For the purpose of Section 5.3.1.6 of the Plan, the value of

18   any Distribution of Post-Effective Date Stock will be determined pursuant to the provisions of

19   Section 6.18.5 of the Plan.

20      **D.  Class 4 -- Canopy Claim**.

21      Class 4 consists of the Canopy Claim.  The Canopy Claim is unimpaired under the Plan.

22      Pursuant to the Plan, Canopy will be paid, without alteration or modification, any and all

23   amounts to which Canopy is entitled pursuant to paragraphs 2 and 3 of the Canopy Settlement

24   Agreement.

25      **E.  Class 5 -- Allowed Subordinated Claims.**

26      Class 5 consists of all Allowed Subordinated Claims.  Class 5 is impaired by the Plan.

27      Pursuant to the Plan, the treatment of any Allowed Class 5 Claim is as follows:

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1         **1.**     **Pro Rata Distributions of Plan Fund Proceeds.**

2         Subject to the provisions of Sections 5.5.1.3, 5.5.1.4, 5.5.1.5 and 5.5.1.6 of the Plan,

3 except to the extent that the holder of any Allowed Subordinated Claim agrees to a less favorable

4 treatment of its Allowed Subordinated Claim, in the event that all Allowed General Unsecured

5 Claims are paid in full as set forth in Section 5.3.1 of the Plan, the holder of an Allowed

6 Subordinated Claim will receive, in full and complete satisfaction, discharge, exchange and release

7 of its Allowed Subordinated Claim, solely from the Plan Fund Proceeds, a Pro Rata Distribution of

8 any remaining Plan Fund Proceeds.

9         **2.**     **Timing of Distributions.**

10         The Plan Agent will make Distributions to the holders of Allowed Class 5 Claims,

11 from any Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims.  All

12 holders of Allowed Class 5 Claims will receive an initial Distribution of their Pro Rata share of any

13 Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims on such date as

14 the Plan Agent determines to be practicable, in the exercise of its sole and absolute discretion, and

15 thereafter will receive Distributions of any such Plan Fund Proceeds as the Plan Agent determines to

16 be practicable, in the exercise of its sole and absolute discretion.  Holders of Allowed Class 5 Claims

17 will receive any final Distribution of any Plan Fund Proceeds available for distribution to holders of

18 Allowed Class 5 Claims within ten (10) days after the filing of the Plan Agent Certification, or as

19 soon thereafter as is practicable.  Upon payment of the amount, if any, owed to each holder of an

20 Allowed Class 5 Claim under the Plan, such Allowed Class 5 Claim will be deemed to be fully and

21 completely satisfied, discharged and released.

22         **3.**     **Postpetition Interest.**

23         In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed

24 Subordinated Claim will not include Postpetition Interest on account of such Allowed Subordinated

25 Claim, except to the extent that all of the following are satisfied and paid in full:  (a) all Allowed

26 Administrative  Claims; (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-Tax

27 Claims; (d) all Allowed Secured Claims (subject to the elections provided pursuant to Section 5.1.1

28 of the Plan); (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all Late-Filed

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   Claims; (h) all Post-Effective Date Plan Expenses; (i) all Allowed Penalty Claims; and (j) all

2   Allowed Subordinated Claims in accordance with the terms thereof.  Any Postpetition Interest that

3   may be payable on an Allowed Subordinated Claim will be calculated from the Petition Date

4   through the date on which such Allowed Subordinated Claim is paid in full.

5            **4.      Conditions to Distributions.**

6            The Plan provides that, notwithstanding any other provision to the contrary contained

7   in the Plan, no Distribution will be made on account of any Allowed Subordinated Claim until each

8   of the following occurs:  (a) all Allowed Administrative Claims are paid; (b) all Allowed Priority

9   Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed Secured

10  Claims are paid (subject to the elections provided pursuant to Section 5.1.1 of the Plan); (e) all

11  Allowed General Unsecured Claims are paid; (f) the Disputed Claims Reserve is adequately funded

12  for the Claims referenced in subsections (a) through (e) of this subparagraph VII(E)(4); and (g) all

13  outstanding Post-Effective Date Plan Expenses have been paid in full and an adequate Reserve is

14  established by the Plan Agent providing for full payment of the estimated amount of all Post-

15  Effective Date Plan Expenses through the Case Closing Date, in an amount to be determined by the

16  Plan Agent in the exercise of its sole and absolute discretion.

17           **5.      No Distribution of Post-Effective Date Stock.**

18           No Post-Effective Date Stock, or other equity security interest in the Reorganized

19  Debtor, will be issued on account of an Allowed Subordinated Claim.

20           **6.      Limitation on Distributions.**

21           Notwithstanding anything to the contrary contained in Section 5.5.1 of the Plan, no

22  holder of an Allowed Subordinated Claim will be entitled to receive more than 100% of the amount

23  of its Allowed Subordinated Claim, plus any Postpetition Interest thereon payable pursuant to

24  Section 5.5.1.3 of the Plan.

25       **F.      Class 6 -- Allowed Interests.**

26       Class 6 consists of all Allowed Interests.  Class 6 is impaired under the Plan.

27       Pursuant to the Plan, the treatment of Allowed Interests is as follows:

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**1.    Cancellation of Interests.**

On the Effective Date of the Plan, all Interests will be cancelled, and Interest Holders will receive no Post-Effective Date Stock or any other Interest of any nature whatsoever in the Reorganized Debtor.  Interest Holders will not receive any Distributions on account of their Interests; provided, however, that, in the event that each Allowed Claim, plus any Postpetition Interest to which the holder thereof is entitled, is paid in full, each holder of an Allowed Interest will receive, in full and complete satisfaction, discharge, exchange and release of such Allowed Interest, Pro Rata Distributions of any Plan Fund Proceeds remaining in the Plan Fund, payable as soon as practicable as the Plan Agent determines in the exercise of its sole and absolute discretion.

**2.    No Voting on Plan.**

It is expected that Class 6 Interest Holders will receive no Distributions under the Plan.  Accordingly, for the purpose of the Plan, Interest Holders are deemed not to have accepted the Plan, and are not entitled to vote with respect to the Plan, as provided by section 1126(g) of the Bankruptcy Code.

**3.    Allowed Interests.**

For the purpose only of determining any Distributions to which Interest Holders may be entitled under Section 5.6.1.1 of the Plan, each beneficial owner or holder of record of MTI Stock as of the Effective Date will be deemed to have an Allowed Interest for the number of shares of MTI Stock held by it as of the Effective Date, and need not file a proof of its Interest with respect thereto. In the event that any entity that is neither the record holder of MTI Stock as of the Effective Date nor the beneficial owner of MTI Stock as of the Effective Date files a proof of right to record status pursuant to Rule 3003(d) of the Federal Bankruptcy Rules, such proof of right will be disallowed automatically and without any need for the Debtor, the Reorganized Debtor, the Plan Agent, or any other party-in-interest to object thereto or otherwise take any act with respect thereto.

CLARKSON, GORE & MARSHALL, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

# VIII.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Overview.

This Article is intended to explain the means by which the Plan Proponents intend to effectuate the Plan, and how they intend to fund the obligations to Creditors undertaken in the Plan. This Article provides information regarding prospective corporate governance of the Reorganized Debtor, funding sources for Plan obligations, and other material issues bearing upon the performance of the Plan.

The Plan provides that, from and after the Effective Date, the Debtor's Assets, including, without limitation, any Causes of Action, will be liquidated and the Plan Fund Proceeds distributed to the holders of Allowed Claims in accordance with the provisions of the Plan. The Plan Agent will be responsible for maintaining the Plan Assets, liquidating the Plan Assets, prosecuting or settling Causes of Action, and making Distributions in payment of Allowed Claims in accordance with the provisions of the Plan. In addition, the Plan Agent will be responsible for evaluating the viability of, and, if appropriate, pursuing a Merger Transaction, in order to enhance the value of the Post-Effective Date Stock issued on account of Allowed General Unsecured Claims, for the benefit of the holders of Allowed General Unsecured Claims.

### B.    Condition Precedent to Plan Confirmation.

The only condition precedent to the confirmation of the Plan is that the Bankruptcy Court will have entered the Confirmation Order on terms and conditions satisfactory to the Plan Proponents.

### C.    Conditions Precedent to the Effectiveness of the Plan.

The following are the conditions precedent to the effectiveness of the Plan and the occurrence of the Effective Date: (1) the Confirmation Order will have become a Final Order; (2) any documents, instruments and agreements, in form and substance satisfactory to the Plan Proponents, provided for by, or appropriate to implement, the Plan will have been executed and delivered by the parties thereto; (3) the Plan Proponents will have received all authorizations, consents, rulings, opinions or other documents that are determined by the Plan Proponents, in the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-57-

1    exercise of their sole and absolute discretion, to be appropriate to implement the Plan; and (4) the

2    Plan Proponents will have determined, in the exercise of their sole and absolute discretion, that

3    sufficient Cash exists to pay, or to establish a Reserve for the payment of, all Administrative

4    Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims (subject to the election

5    of the options provided by Section 5.1.1 of the Plan), and to otherwise fund the obligations provided

6    for by the Plan and to pay the expenses associated with the implementation of the Plan.

7        The Plan Proponents may, in the exercise of their sole and absolute discretion, waive any of

8    the conditions to the effectiveness of the Plan and to the occurrence of the Effective Date set forth

9    hereinabove, without the need for any prior notice or hearing with respect thereto.  Without limiting

10   the generality of the foregoing, in the event that an appeal, petition for certiorari or motion for

11   reargument or rehearing or comparable post-confirmation relief is filed with respect to the

12   Confirmation Order, and no stay of the effectiveness of the Confirmation Order is obtained, the Plan

13   Proponents may elect, in the exercise of their sole and absolute discretion, to waive any of such

14   conditions, and to proceed with the Effective Date of the Plan and to commence to consummate the

15   Plan, by filing and serving notice of such election upon the United States Trustee and the party

16   seeking such post-confirmation relief.

17       The failure of any such condition to be satisfied constitutes under the Plan good and

18   sufficient cause for the Plan Proponents to have the Plan not become effective regardless of the

19   circumstances giving rise to the failure of such condition to be satisfied (including, without

20   limitation, any act or failure to act by the Plan Proponents).

21       **D.    Implementation of Plan.**

22       On or soon as practicable after the Effective Date, the following will occur with respect to

23   the implementation of the Plan:  (1) all acts, documents and agreements appropriate to implement

24   the Plan will be effected or executed; (2) the Plan Agent, as Disbursing Agent under the Plan, will

25   make all Distributions required to be made on or about the Effective Date of the Plan; and (3) the

26   Plan Agent, as Disbursing Agent under the Plan, will fund the Reserves required to be funded on or

27   about the Effective Date of the Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-58-

### E.    Corporate Action.

Upon the Effective Date, all transactions and matters provided for under the Plan will be deemed to have been authorized and approved by the Debtor without any requirement of further action by the Debtor, the Debtor's Interest Holders, or by the Debtor's board of directors.

### F.    Plan Agent/Vesting of Assets.

In accordance with the provisions of Section 6.6.1 of the Plan, on the Effective Date, a Plan Agent will be appointed pursuant to the Plan who will have the rights, powers and duties provided for by the Plan and the Confirmation Order. In accordance with the provisions of Section 6.6.2 of the Plan, on the Effective Date, the Assets will be transferred to, vest in, and be held in trust by, the Plan Agent.

#### 1.    Employment of Plan Agent.

On the Effective Date, a Plan Agent will be appointed to receive and to hold in trust the Plan Assets in accordance with Section 6.6.2 of the Plan, to administer the Plan Assets in accordance with the terms of the Plan and to make Distributions in accordance with the terms of the Plan. The Plan Agent will have the rights, powers and duties provided for by the Plan and the Confirmation Order.

#### 2.    Transfer of Assets.

On the Effective Date, pursuant to sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor and its Estate will be authorized to, and shall, transfer, grant, assign, convey, set over, and deliver to the Plan Agent, to be held in trust by the Plan Agent for the benefit of the holders of Allowed Claims and Interest Holders to the extent that Interest Holders are entitled to receive Distributions under Section 5.6.1.1 of the Plan, all of the Debtor's and the Estate's right, title and interest in and to the Assets, including Causes of Action, free and clear of all Liens, Claims, and Interests of any kind, except as provided expressly to the contrary in the Plan. All Creditors and other parties-in-interest are required to cooperate with the Debtor and the Plan Agent by executing any documents, and by taking any acts, appropriate to implement the transfers of the Assets to the Plan Agent. From and after the Effective Date, the transfer of the Assets from the

MTI Disclosure Statement v1.4
MAINDOCS-#142646-v3-MTI_Jt_2nd_Amd_DS_3-24-2010.DOC

1  Estate to the Plan Agent, and the vesting of the Assets in the Plan Agent, will be deemed to be final

2  and irrevocable.

3      **3.    Disposition of Plan Assets.**

4          The Plan Agent, under the supervision of the Post-Effective Date Committee, may

5  administer, manage, use, convey, transfer, encumber, assign and otherwise dispose of any and all of

6  the Plan Assets and take all acts appropriate to effectuate the same, free of any restrictions imposed

7  by the Bankruptcy Code or by the Bankruptcy Rules.

8      **G.    Termination of Debtor's Officers, Directors, Employees and Professionals.**

9          Except as otherwise provided by the Plan or as otherwise retained by the Plan Agent, the

10  Debtor's officers, directors, employees and Professionals will be terminated and relieved of any

11  responsibilities to the Debtor or to the Reorganized Debtor as of the Effective Date.

12      **H.    Plan Fund Proceeds/Plan Administration.**

13      **1.    Distributions of Plan Fund Proceeds.**

14          Distributions of Plan Fund Proceeds will be made solely to the holders of Allowed

15  General Unsecured Claims, and, in accordance with the provisions of Sections 5.5.1.1 and 5.6.1.1

16  of the Plan, in the unlikely event that Allowed General Unsecured Claims are paid in full, holders of

17  Allowed Subordinated Claims, and, if Allowed Subordinated Claims are paid in full, Interest

18  Holders. The holders of Allowed General Unsecured Claims will receive Distributions from the

19  Plan Fund solely as provided for by the Plan.

20      **2.    Plan Agent's Implementation of Plan.**

21          The Plan Agent, under the supervision of the Post-Effective Date Committee, will be

22  authorized to, and shall, take all acts appropriate to implement the provisions of the Plan as are

23  contemplated to be taken by the Plan Agent under the Plan, including, without limitation, making

24  Distributions to holders of Allowed Claims, objecting to Disputed Claims, prosecuting or settling

25  the Causes of Action and, if the Plan Agent deems appropriate, effectuating a Merger Transaction.

26      **3.    Representative of the Estate.**

27          The Plan Agent, under the supervision of the Post-Effective Date Committee, will be

28  appointed as the representative of the Estate pursuant to sections 1123(a)(5), 1123(a)(7)

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-60-