1  ROBERT E. OPERA – State Bar No. 101182
    ropera@winthropcouchot.com
2  RICHARD H. GOLUBOW – State Bar No. 160434
    rgolubow@winthropcouchot.com
3  PAYAM KHODADADI – State Bar No. 239906
    pkhodadadi@winthropcouchot.com
4  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
5  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
6  Telephone: (949) 720-4100
   Facsimile:  (949) 720-4111
7
8  Counsel for the Official Committee
   of Creditors Holding Unsecured Claims
9

10          **UNITED STATES BANKRUPTCY COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
11                  **SANTA ANA DIVISION**

12  | In re: | Case No. 8:07-13347-ES |
| --- | --- |
13  | MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 Proceeding |
14  | | |
15  | Debtor and Debtor-in-Possession. | **NOTICE OF OMNIBUS MOTION AND OMNIBUS MOTION OF OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS FOR ORDER APPROVING COMPROMISE OF CONTROVERSY WITH (1) WILLIAM ATKINS; (2) AVNET, INC.; (3) B. BRAUN MEDICAL, INC.; (4) LAWRENCE BEGLEY; (5) FRANZ CRISTIANI; (6) RONALD E. HEINZ; (7) MARSH RISK INSURANCE; (8) MICHAEL PEHL; (9) STORWIZE, INC.; AND (10) THOMAS P. RAIMONDI AND PAMELA A. JACQUES, INC.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF RICHARD H. GOLUBOW IN SUPPORT THEREOF** |

[Fed. R. Bankr. P. 9019]

Date:  April 22, 2010
Time:  10:30 a.m.
Place:  Courtroom 5A

1  **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY**

2  **JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR MTI**

3  **TECHNOLOGY CORPORATION; AND OTHER PARTIES-IN-INTEREST:**

4      **PLEASE TAKE NOTICE THAT** on April 22, 2010 at 10:30 am a hearing will be held

5  by the Honorable Erithe A. Smith, United States Bankruptcy Judge, in Courtroom 5A of the

6  United States Bankruptcy Court, Santa Ana Division, located at 411 West 4th Street, Santa Ana,

7  CA 92701 on the Omnibus Motion for Order Approving Compromise of Controversy (the

8  "Motion") with (1) William Atkins, (2) Avnet, Inc., (3) B. Braun Medical, Inc., (4) Lawrence

9  Begley, (5) Franz Cristiani, (6) Ronald E. Heinz, (7) Marsh Risk Insurance, (8) Michael Pehl,

10  (9) Storwize, Inc. (each individually a "Defendant" and collectively, the "Defendants"), and (10)

11  Thomas P. Raimondi ("Raimondi") and Pamela A. Jacques, Inc. dba Independent Market

12  ("Jacques") filed by the Official Committee of Creditors Holding Unsecured Claims (the

13  "Committee"), appointed in the Chapter 11 case of MTI Technology Corporation (the "Debtor").

14      As set forth in greater detail below, good cause exists to grant the Motion pursuant to the

15  provisions of Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")

16  on the grounds that each Settlement Agreement and Mutual Release, entered into by and between

17  the Committee and each Defendant (each, a "Settlement Agreement"), true and correct copies of

18  which are attached as Exhibits "1" through "10" to the Declaration of Richard H. Golubow

19  appended hereto (the "Golubow Declaration"), is fair and reasonable and in the best interests of

20  the Debtor, its estate, and its creditors.

21      This Motion is made and based upon the foregoing allegations and representations, the

22  Memorandum of Points and Authorities and the Golubow Declaration appended hereto, the

23  papers, pleadings and other documents on file in the Debtor's Chapter 11 case and the applicable

24  adversary proceeding for each of the Defendants, and all supplemental evidence, both oral and

25  documentary, that the Committee may submit to this Court at or before the time of the hearing on

26  this Motion.

27

28

1    IF YOU DO NOT OPPOSE THE MOTION DESCRIBED ABOVE, YOU NEED

2    TAKE NO FURTHER ACTION.  HOWEVER, IF YOU OBJECT TO THE MOTION,

3    OBJECTIONS MUST BE FILED WITH THE COURT NO LATER THAN FOURTEEN

4    (14) DAYS PRIOR TO THE HEARING ON THE MOTION.  YOU MUST FILE YOUR

5    OBJECTION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT

6    LOCATED AT 411 WEST FOURTH STREET, SECOND FLOOR, SANTA ANA, CA

7    92701.  YOU MUST ALSO SERVE A COPY OF YOUR OBJECTION TO THE MOTION

8    UPON COUNSEL TO THE COMMITTEE AT THE MAILING ADDRESS INDICATED

9    IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THIS NOTICE AND UPON

10   THE OFFICE OF THE UNITED STATES TRUSTEE, LOCATED AT 411 WEST

11   FOURTH STREET, SUITE 9041, SANTA ANA, CA 92701.  ANY FAILURE TO TIMELY

12   FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH OBJECTIONS BEING

13   WAIVED, AND THE COURT MAY ENTER AN ORDER APPROVING THE MOTION

14   WITHOUT FURTHER NOTICE.

15        WHEREFORE, the Committee respectfully requests that this Court enter an order

16   providing the following relief:

17        1.    Approving each Settlement Agreement;

18        2.    Authorizing the Committee and each Defendant to execute any documents and to

19             take any acts appropriate to effectuate each Settlement Agreement; and

20        3.    Granting such other and further relief as the Court may deem just and appropriate.

21   DATED:  April 1, 2010              **WINTHROP COUCHOT**
                                        **PROFESSIONAL CORPORATION**
22

23

24   By:___*/s/ Richard H. Golubow*_____
              Robert E. Opera
25            Richard H. Golubow
              Payam Khodadadi
26   Counsel for the Official Committee of
     Creditors Holding Unsecured Claims
27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTUAL BACKGROUND

**A.    The Debtor and the Committee.**

On October 15, 2007 (the "Petition Date"), the Debtor filed a Chapter 11 petition for relief commencing its bankruptcy case.

The Committee is the duly-appointed and acting official committee of creditors holding unsecured claims in the Debtor's case.

**B.    The Avoidance Actions and Settlement Agreements.**

Pursuant to an order of the Bankruptcy Court entered on March 12, 2009, the Committee is authorized to commence suits to avoid and recover transfers of property of the Debtor's estate pursuant to Chapter 5 of the Bankruptcy Code (the "Avoidance Actions").

Pursuant to such authority, the Committee performed an analysis of various transfers of property of the Debtor's estate prior to the Petition Date.

On or about October 13, 2009, the Committee entered into tolling agreements with Raimondi and Jacques, respectively, with respect to various actions that the Committee may assert against Raimondi and Jacques pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code. Thereafter, the Committee, Raimondi and Jacques engaged in settlement discussions, extended the term of the tolling agreements, and finally entered into a settlement agreement resolving their disputes.

Further, on October 14, 2009, the Committee commenced various Avoidance Actions pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code against the Defendants seeking to (a) avoid and recover transfers (the "Transfers") made to (i) each Defendant that is not an insider of the Debtor in the (90) days preceding the Petition Date and (ii) each Defendant that is an insider of the Debtor in the one (1) year preceding the Petition Date (the "Preference Period"); and (b) disallow any proofs of claims filed by the Defendants.

Each Defendant believes that valid defenses exist, in full or in part, to the Transfers asserted in the Avoidance Actions complaint filed against such Defendant.

MAINDOCS-#139930-v2-
MTI_Motion_to_Appr_Com_Cont_(9019)_(Atkins__Avnet__B_Bran__Begley__Cristiani__Pehl__Heinz__Marsh__Storewiz_and_Raimondi).DOC

1    Over the period of over four months, the Committee and each Defendant have engaged in

2    extensive negotiations to resolve the disputes between the Committee and each Defendant

3    regarding the allegations set forth in the Avoidance Actions.  As a part of the settlement process,

4    the Committee and each Defendant exchanged documents setting forth their respective factual and

5    legal positions.  Pursuant to the foregoing, the Committee and each Defendant entered into a

6    Settlement Agreement to resolve the disputes between the Committee and each Defendant.

7        A summary of each Avoidance Action and Settlement Agreement is set forth below.

8        **1.**    **William Atkins.**

9        The Committee seeks to avoid and recover Transfers made to Mr. Atkins in the amount of

10    $42,203.05.  The Committee asserts that such Transfers satisfy the elements of Section 547(b) of

11    the Bankruptcy Code.  In addition, pursuant to Section 502(d) of the Bankruptcy Code, the

12    Committee seeks to avoid Proof of Claim No. 361 filed by Mr. Atkins in the amount of $246.61.

13        Mr. Atkins asserts that the Transfers were made in the ordinary course of the Debtor's

14    business pursuant to Section 547(c)(2) of the Bankruptcy Code.

15        Upon review and confirmation of the accuracy of information from Mr. Atkins in support

16    of his alleged affirmative defenses, the parties have agreed to settle the foregoing disputes based

17    on the following material terms set forth in the Settlement Agreement between the parties:

18        (a)    Mr. Atkins shall pay the sum of $3,000.00 to Winthrop Couchot Professional

19    Corporation, counsel to the Committee ("Committee Counsel") to be held in trust until the

20    Bankruptcy Court enters its order approving this Motion (the "Order"), at which time the

21    Committee's Counsel may remit the funds to the Committee and/or the Debtor; and

22        (b)    Proof of Claim No. 361 filed by Mr. Atkins shall be disallowed in its entirety.

23        **2.**    **Avnet, Inc.**

24        The Committee seeks to avoid and recover Transfers made to Avnet Computer in the

25    amount of $185,102.76.  The Committee asserts that such Transfers satisfy the elements of Section

26    547(b) of the Bankruptcy Code.

27        The Committee has been informed that the correct name of the defendant is Avnet, Inc.

28    Accordingly, as a part of the Settlement Agreement, the parties have agreed to amend the

MAINDOCS-#139930-v2-
MTI_Motion_to_Appr_Com_Cont (9019) (Atkins__Avnet__B_Bran__Beeley__Cristiani__Pehl__Heinz__Marsh__Storewiz_and_Raimondi).DOC

1    complaint to name Avnet, Inc. as the correct defendant and to remove Avnet Computer as

2    defendants in the adversary proceeding.

3          Avnet, Inc. asserts that the Transfers were made in the ordinary course of the Debtor's

4    business pursuant to Section 547(c)(2) of the Bankruptcy Code and/or new value was provided by

5    Avnet, Inc. pursuant to Section 547(c)(4) of the Bankruptcy Code.

6          Upon review and confirmation of the accuracy of information from Avnet, Inc. in support

7    of its alleged affirmative defenses, the parties have agreed to settle the foregoing disputes based on

8    the following material terms set forth in the Settlement Agreement between the parties:

9          (a)      Avnet, Inc. shall be named as the correct defendant and the name of Avnet

10   Computer shall be stricken as the defendant; and

11         (b)      Avnet, Inc. shall pay the sum of $17,500.00 to Committee Counsel to be held in

12   trust until the Bankruptcy Court enters its Order, at which time Committee Counsel may remit the

13   funds to the Committee and/or the Debtor.

14         (c)      Avnet, Inc. waives any claim that it may have against the Debtor.

15                  **3.      B. Braun Medical, Inc.**

16         The Committee seeks to avoid and recover Transfers made to B. Braun and B. Braun of

17   America in the amount of $25,430.00.  The Committee asserts that such Transfers satisfy the

18   elements of Section 547(b) of the Bankruptcy Code.

19         The Committee has been informed that the correct name of the defendant is B. Braun

20   Medical, Inc.  Accordingly, as a part of the Settlement Agreement, the parties have agreed to

21   amend the complaint to name B. Braun Medical, Inc. as the correct defendant and to remove B.

22   Braun and B. Braun of America, Inc. as defendants in the adversary proceeding.

23         B. Braun Medical, Inc. asserts that the Transfers were subject to contemporaneous

24   exchanges pursuant to Section 547(c)(1) of the Bankruptcy Code and/or new value was provided

25   by B. Braun Medical Inc. pursuant to Section 547(c)(4) of the Bankruptcy Code.

26         Upon review and confirmation of the accuracy of information from B. Braun Medical, Inc.

27   in support of its alleged affirmative defenses, the parties have agreed to settle the foregoing

28

1  disputes based on the following material terms set forth in the Settlement Agreement between the

2  parties:

3      (a)      B. Braun Medical, Inc. shall be named as the correct defendant and the names of B.

4  Braun and B. Braun of America, Inc. shall be stricken as defendants; and

5      (b)      B. Braun Medical, Inc. shall pay the sum of $3,500.00 to Committee Counsel to be

6  held in trust until the Bankruptcy Court enters its Order, at which time Committee Counsel may

7  remit the funds to the Committee and/or the Debtor.

8              **4.      Lawrence Begley.**

9      The Committee seeks to avoid and recover Transfers made to Mr. Begley in the amount of

10 $53,529.43.  The Committee asserts that such Transfers satisfy the elements of Section 547(b) of

11 the Bankruptcy Code.  Mr. Begley asserts that the Transfers were made in the ordinary course of

12 the Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code.

13     Upon review and confirmation of the accuracy of information from Mr. Begley in support

14 of his alleged affirmative defenses, the parties have agreed to settle the foregoing disputes by the

15 virtue of Mr. Begley paying the sum of $5,000.00 to Committee Counsel to be held in trust until

16 the Bankruptcy Court enters its Order, at which time Committee Counsel may remit the funds to

17 the Committee and/or the Debtor.

18             **5.      Franz Cristiani.**

19     The Committee seeks to avoid and recover Transfers made to Mr. Cristiani in the amount

20 of $87,239.67.  The Committee asserts that such Transfers satisfy the elements of Section 547(b)

21 of the Bankruptcy Code.  The Committee also seeks to avoid Mr. Cristiani's claim listed in the

22 Debtor's Schedule of Assets and Liabilities pursuant to Bankruptcy Code Section 502(d).

23     Mr. Cristiani asserts that the Transfers were made in the ordinary course of the Debtor's

24 business pursuant to Section 547(c)(2) of the Bankruptcy Code.

25     Upon review and confirmation of the accuracy of information from Mr. Cristiani in

26 support of his alleged affirmative defenses, the parties have agreed to settle the foregoing disputes

27 based on the following material terms set forth in the Settlement Agreement between the parties:

28

MAINDOCS-#139930-v2-
MTI_Motion_to_Appr_Com_Cont_(9019)_(Atkins_Avnet_B_Braun_Begley_Cristiani_Pehl_Heinz_Marsh_Storowiz_and_Raimondi).DOC

1    (a)    Mr. Cristiani shall pay the sum of $14,000.00 to Committee Counsel to be held in

2  trust until the Bankruptcy Court enters its Order, at which time Committee Counsel may remit the

3  funds to the Committee and/or the Debtor; and

4    (b)    Mr. Cristiani waives any claim that he may have against the Debtor, including but

5  not limited to any scheduled amount listed on the Debtor's Schedules of Assets and Liabilities.

6                **6.    Ronald E. Heinz.**

7        The Committee seeks to avoid and recover Transfers made to Mr. Heinz in the amount of

8  $37,916.67. The Committee asserts that such Transfers satisfy the elements of Section 547(b) of

9  the Bankruptcy Code. Mr. Heinz asserts that the Transfers were made in the ordinary course of

10  the Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code.

11        Upon review and confirmation of the accuracy of information from Mr. Heinz in support

12  of his alleged affirmative defenses, the parties have agreed to settle the foregoing disputes based

13  on the following material terms set forth in the Settlement Agreement between the parties:

14    (a)    Mr. Heinz shall pay the sum of $5,500.00 to Committee Counsel to be held in trust

15  until the Bankruptcy Court enters its Order, at which time Committee Counsel may remit the

16  funds to the Committee and/or the Debtor; and

17    (b)    Mr. Heinz agrees to waive any and all proofs of claim or scheduled claims, whether

18  afforded administrative, secured, priority, non-priority or general unsecured status, which the

19  Defendant might have, had or asserted against the Debtor.

20                **7.    Marsh Risk Insurance.**

21        The Committee seeks to avoid and recover Transfers made to Marsh Risk Insurance in the

22  amount of $139,349.50. The Committee asserts that such Transfers satisfy the elements of Section

23  547(b) of the Bankruptcy Code.

24        Marsh asserts that the vast majority of the Transfers were made to Marsh as an insurance

25  broker conduit, which insulates it from Section 547 of the Bankruptcy Code, and that the

26  remaining payments in the amount of $21,250 were made in the ordinary course of the Debtor's

27  business pursuant to Section 547(c)(2) of the Bankruptcy Code.

28

MAINDOCS-#139930-v2-
MTI Motion to Appr Com Cont (9019) (Atkins_Avnet_B_Bran_Begley_Cristiani_Pehl_Heinz_Marsh_Storewiz_and_Raimondi).DOC

1    Upon review and confirmation of the accuracy of information from Marsh Risk Insurance

2  in support of its alleged affirmative defenses, the parties have agreed to settle the foregoing

3  disputes by the virtue of Marsh Risk Insurance paying the sum of $10,000.00 to Committee

4  Counsel to be held in trust until the Bankruptcy Court enters its Order, at which time Committee

5  Counsel may remit the funds to the Committee and/or the Debtor.

6       **8.    Michael Pehl.**

7    The Committee seeks to avoid and recover Transfers made to Mr. Pehl in the amount of

8  $25,000.00. The Committee asserts that such Transfers satisfy the elements of Section 547(b) of

9  the Bankruptcy Code.

10    Mr. Pehl asserts that Mr. Pehl provided new value pursuant to Section 547(c)(1) of the

11  Bankruptcy Code and the Transfers were made in the ordinary course of the Debtor's business

12  pursuant to Section 547(c)(2) of the Bankruptcy Code.

13    Upon review and confirmation of the accuracy of information from Mr. Pehl in support of

14  his alleged affirmative defenses, the parties have agreed to settle the foregoing disputes by the

15  virtue of Mr. Pehl paying the sum of $2,500.00 to Committee Counsel to be held in trust until the

16  Bankruptcy Court enters its Order, at which time Committee Counsel may remit the funds to the

17  Committee and/or the Debtor.

18       **9.    Storwize, Inc.**

19    The Committee seeks to avoid and recover Transfers made to Storwize, Inc.[1] in the amount

20  of $76,110.00. The Committee asserts that such Transfers satisfy the elements of Section 547(b)

21  of the Bankruptcy Code. Storwize, Inc. asserts that the Transfers were made in the ordinary

22  course of the Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code.

23    Upon review and confirmation of the accuracy of information from Storwize, Inc. in

24  support of its alleged affirmative defenses, the parties have agreed to settle the foregoing disputes

25  by the virtue of Storwize, Inc. paying the sum of $6,250.00 to Committee Counsel to be held in

26  trust until the Bankruptcy Court enters its Order, at which time Committee Counsel may remit the

27  funds to the Committee and/or the Debtor.

28  _____

[1] The name of the Defendant is inadvertently spelled Storewiz rather than Storwize, Inc. in the Complaint. The
Settlement Agreement provides for the correct spelling of the Defendant's name.

-9-

1    **10.    Raimondi and Jacques.**

2         The Committee believes that it has valid claims to avoid and recover Transfers made to

3    Raimondi and Jacques. The Committee asserts that such Transfers satisfy the elements of Section

4    547(b) of the Bankruptcy Code. Raimondi and Jacques assert that they maintain defenses to the

5    Transfers.

6         On or about November 7, 2007, Raimondi filed Proof of Claim No. 45 in the amount of

7    $646,153.83. On May 2, 2008, Raimondi filed Proof of Claim No. 258 in the amount of

8    $400,000. Proof of Claim No. 258 amends and supersedes Proof of Claim No. 45. The

9    Committee informed Raimondi that it may object to Raimondi's claim.

10        Pursuant to negotiations among the parties, the parties have agreed to settle the foregoing

11   disputes based on the following material terms set forth in the Settlement Agreement:

12             a.    Raimondi.

13        Raimondi shall have an allowable non-priority general unsecured claim in the amount of

14   $400,000 (the "Raimondi Claim"). Raimondi agrees that he shall not receive any distribution on

15   account of the Raimondi Claim until all other holders of allowed non-priority general unsecured

16   claims are paid in full on account of such claims.

17        Raimondi agrees to waive any and all proofs of claim or scheduled claims, whether

18   afforded administrative, secured, priority, non-priority or general unsecured status, which

19   Raimondi might have, had or asserted against the Debtor, including, but not limited to his filed

20   Proofs of Claim Nos. 45 and 258.

21             b.    Jacques.

22        Jacques shall have no claim against the Debtor and Jacques agrees to waive any and all

23   proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-

24   priority or general unsecured status, which Jacques might have, had or asserted against the Debtor.

25

26

27

28

MAINDOCS-#139530-v2-
MII Motion to Appr Com Cont (9019) (Atkins_Avnet_B_Bran_Begley_Cristiani_Pehl_Heinz_Marsh_Storewiz_and_Raimondi).DOC

## II.

## APPROVAL OF EACH SETTLEMENT, ON THE TERMS SET FORTH IN

## EACH SETTLEMENT AGREEMENT, IS IN THE BEST INTERESTS OF CREDITORS

Rule 9019(a) of the Bankruptcy Rules provides as follows:

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

Compromises are favored in bankruptcy. See, In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake…"); In re Michael, 183 B.R. 230, 233 (Bankr.D.Mont. 1995) ("it is also well established that the law favors compromise") citing In re Blair, 538 F.2d 849, 851 (9th Cir.1976); In re Stein, 236 B.R. 34, 37 (D.Or. 1999) ("Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy"); In re Pierce Packing Co., 1994 WL 831374, *2 (Bankr.D.Mont. 1994) ("it is also well established that the law favors compromise"); 9 Collier on Bankruptcy, ¶ 9019.03 at 9019-3 (15th ed. rev'd 2007); Case v. Los Angeles Lumber Products Company, 308 U.S. 106, 130, 60 S.Ct. 1 (1939) (compromises "are a normal part of the reorganization process").

The Ninth Circuit Court of Appeals has recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1999); In re A & C Properties, 784 F.2d at 1380-81 ("The purpose of a compromise agreement is to allow the debtor and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims"). The decision to approve a compromise rests in the sound discretion of the bankruptcy court. In re Stein, supra. In this regard, the Stein court stated as follows:

> Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion. The law is settled that the proper standard of review for an order approving a settlement by a trustee in bankruptcy is abuse of discretion. In re Sassalos, 160 B.R. 646, 653 (D.Or.1993) (Frye, J.), citing 9 Collier on Bankruptcy, § 9019.03 (15th ed.). In In re Sassalos, this court stated:

-11-

> The standards for approval of a proposed settlement have been enunciated in the Ninth Circuit, and in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors:
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re Stein, 236 B.R. at 37.

In evaluating a proposed compromise in a bankruptcy case, a bankruptcy court need not conduct an exhaustive investigation of the disputed issues or conduct a trial with respect to such issues, but need find only that the proposed compromise is fair and equitable and that the negotiations between the parties were conducted in good faith. A & C Properties, supra ("bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim"); Matter of Walsh Const., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Blair, 538 F.2d at 851-52 (bankruptcy court need not conduct a mini-trial on the merits of claims sought to be compromised in a bankruptcy); In re Edwards, 228 B.R. 552, 569 (Bankr. E.D.Pa. 1998) ("The court's role is not to conduct a trial or mini-trial, or to decide the merits of individual issues."); In re Schmitt, 215 B.R. 417, 423 (9th Cir. BAP 1997) ("When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required.").

A compromise proposed in a bankruptcy case should be approved if it falls above the lowest point in the range of reasonableness. In re Milden, 111 F.3d 138, 1997 WL 189302, *3 (9th Cir. 1997) ("Rather than conducting a detailed evaluation of the merits of the state court action, the bankruptcy court's function is to examine the proposed settlement to determine if it falls below the lowest point in the range of reasonableness."); Cosoff v. Rodman (In re W.T. Grant Company), 699 F.2d 599, 608 (2nd Cir. 1983); Newman v. Stein, 464 F.2d 689, 693 (2d Cir.1972) ("The responsibility of the bankruptcy judge...is not to decide the numerous questions of law and fact raised...but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"); In re United Shipping Co., 1989 WL 12723, *9 (Bankr. D.Minn. 1989) ("the court need only examine the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness"). In this regard, in the case, In

-12-

re Drexel Burnham Lambert Group, Inc., 134 B.R. 499 (Bankr. S.D.N.Y. 1991), the court held as

follows:

> [A]lthough we may consider a creditor's objection to the proposed compromise, the objection is not controlling, and will not bar approval, when a review of the settlement shows it does not "fall below the lowest point in the range of reasonableness." When assessing a compromise and settlement, we are not obliged to determine and rule upon disputed facts and questions of law, but rather only to "canvass" the issues. A trial or "mini trial" on the merits is not required. Further, the Court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise. And indeed, a Court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial. Finally, we must consider the principle that "the law favors compromise."

In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505.

Decisional law regarding the exercise of a bankruptcy court's discretion in determining

whether a compromise satisfies the reasonableness standard is "remarkably consistent in

establishing that there are but four considerations which a court must address." In re Grant

Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D.Pa. 1987). These considerations

are:

> (i)     The probability of success in the litigation;
>
> (ii)    The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;
>
> (iii)   The likely difficulty in collection; and
>
> (iv)    The paramount interests of creditors.

In re A&C Properties, Inc., 784 F.2d 1377, 1381 (9th Cir. 1986).

Application of these considerations to the facts of this case militates in favor of approving

the proposed Settlement Agreements.

**A.      The Probability of Success in Litigation.**

While the Committee believes that it would be able to prevail, in whole or in part, in each

Avoidance Action, the Committee acknowledges that each Defendant has or may have valid

-13-

1   defenses, in whole or in part, to the causes of actions alleged in the Avoidance Actions. In

2   addition, the Committee acknowledges that results of litigation are never certain and that there

3   would be risk that the Committee would not be able to prevail in litigation and, accordingly,

4   would not be able to recover for the benefit of creditors any amount of the funds on deposit

5   received pursuant to the Settlement Agreements. Accordingly, the Committee submits that this

6   consideration weighs in favor of granting this Motion.

7        **B.    The Expense, Complexity, Inconvenience and Delay of Litigation.**

8        The second factor that must be considered in evaluating the proposed settlements is the

9   expense, complexity, inconvenience and delay that would be associated with any litigation in the

10  Avoidance Actions. If the Committee is required to undertake and to prosecute litigation with

11  each Defendant, such litigation would raise further cost and expense to the Debtor's estate.

12  Accordingly, the Committee has agreed to settle each Avoidance Action with the Defendants.

13  Settlement of the Committee's disputes with the Defendants, therefore, will save the Debtor's

14  estate substantial expense and will avoid the significant delays attendant to litigation.

15  Accordingly, the Committee submits that this consideration also weighs in favor of granting this

16  Motion.

17       **C.    Difficulty in Collection.**

18       If the Committee were required to litigate the disputes, there likely would be a very

19  substantial delay in collecting any funds pursuant to the litigation, to the detriment of the estate

20  and its creditors. In addition, there exists the possibility that one or more of the Defendants may

21  not have the funds necessary to pay any judgment obtained by the Committee against such parties.

22  This is especially true where many of the Defendants are individuals and others are companies that

23  are operating in an admittedly tough and turbulent economy. Accordingly, the Committee submits

24  that this consideration further weighs in favor of granting this Motion.

25       **D.    The Interests of Creditors.**

26       The final, but most significant, part of the analysis involves an evaluation of whether the

27  settlement is in the best interests of creditors. See, In re Flight Trans. Corp. Securities Litigation,

28  730 F.2d 1128, 1135-1136 (8th Cir. 1984). Here, the proposed Settlement Agreements are in the

-14-

1  best interests of creditors because the Settlement Agreements increase the rate of return for

2  creditors.  Specifically, each Settlement Agreement (a) increases the cash available for distribution

3  to holders of allowed unsecured claims; (b) disallows various claims asserted by the Defendants

4  against the Debtor and therefore increases the prospective pro-rata distribution to holders of

5  allowed unsecured claims; (c) decreases the expenses that would otherwise be incurred by the

6  estate if the Committee pursues litigation and therefore increases the distribution to the holders of

7  allowed unsecured claims; and (d) resolves any risk of non-collection of the Transfers inherent in

8  litigation and therefore increases the likelihood of a higher rate of return to holders of allowed

9  unsecured claims.

10                                             **III.**

11                                       **CONCLUSION**

12         Based upon the foregoing, the Committee respectfully submits that the Court's approval of

13  the Settlement Agreements is in the best interests of the estate and its creditors and, therefore, this

14  Court should grant to the Committee all relief requested by this Motion.

15  DATED: April 1, 2010                    **WINTHROP COUCHOT**
                                            **PROFESSIONAL CORPORATION**
16

17
                                            By:___/s/ Richard H. Golubow_____
18                                                Robert E. Opera
                                                 Richard H. Golubow
19                                               Payam Khodadadi
                                            Counsel for the Official Committee of
20                                          Creditors Holding Unsecured Claims

21

22

23

24

25

26

27

28

                                            -15-

## DECLARATION OF RICHARD H. GOLUBOW

I, Richard H. Golubow, declare and state as follows:

1.    I am a shareholder with the law firm of Winthrop Couchot Professional Corporation ("Winthrop Couchot"), counsel for the Official Committee of Creditors Holding Unsecured Claims ("Committee") appointed in the Chapter 11 case of Debtor MTI Technology Corporation ("Debtor"). The matters set forth herein are within my own personal knowledge, and, if called as a witness, I could and would competently testify thereto.

2.    This Declaration is provided in support of the Committee's Omnibus Motion for Order Approving Compromise of Controversy ("Motion")[2] with (1) William Atkins, (2) Avnet, Inc., (3) B. Braun Medical, Inc., (4) Lawrence Begley, (5) Franz Cristiani, (6) Ronald E. Heinz, (7) Marsh Risk Insurance, (8) Michael Pehl, (9) Storwize, Inc. (collectively, the "Defendants"), and (10) Thomas P. Raimondi ("Raimondi") and Pamela A. Jacques, Inc. dba Independent Market ("Jacques").

3.    On October 15, 2007 (the "Petition Date"), the Debtor filed a Chapter 11 petition for relief commencing its bankruptcy case.

4.    The Committee is the duly-appointed and acting official committee of creditors holding unsecured claims in the Debtor's case.

5.    Pursuant to an order of the Bankruptcy Court entered on March 12, 2009, the Committee is authorized to commence suits to avoid and recover transfers of property of the Debtor's estate pursuant to Chapter 5 of the Bankruptcy Code (the "Avoidance Actions").

6.    Pursuant to such authority, the Committee performed an analysis of various transfers of property of the Debtor's estate prior to the Petition Date.

7.    On or about October 13, 2009, the Committee entered into tolling agreements with Raimondi and Jacques, respectively, with respect to various actions that the Committee may assert against Raimondi and Jacques pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code. Thereafter, the Committee, Raimondi and Jacques engaged in settlement discussions, extended

---

[2] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Motion.

MAINDOCS-#139930-v2-
MTI_Motion_to_Appr_Com_Cont_(9019) (Atkins_Avnet_B_Bran_Begley_Cristiani_Pehl_Heinz_Marsh_Storewiz_and_Raimondi).DOC

1 | the term of the tolling agreements, and finally entered into a settlement agreement resolving their

2 | disputes.

3 |     8.    Further, on October 14, 2009, the Committee commenced various Avoidance

4 | Actions pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code against the Defendants

5 | seeking to (a) avoid and recover transfers (the "Transfers") made to (i) each Defendant that is not

6 | an insider of the Debtor in the (90) days preceding the Petition Date and (ii) each Defendant that

7 | is an insider of the Debtor in the one (1) year preceding the Petition Date (the "Preference

8 | Period"); and (b) disallow any proofs of claims filed by the Defendants.

9 |     9.    Each Defendant believes that valid defenses exist, in full or in part, to the Transfers

10 | asserted in the Avoidance Actions complaint filed against such Defendant.

11 |     10.    Over the period of over four months, the Committee and each Defendant have

12 | engaged in extensive negotiations to resolve the disputes between the Committee and each

13 | Defendant regarding the allegations set forth in the Avoidance Actions. As a part of the

14 | settlement process, the Committee and each Defendant exchanged documents setting forth their

15 | respective factual and legal positions. Pursuant to the foregoing, the Committee and each

16 | Defendant entered into a Settlement Agreement to resolve the disputes between the Committee

17 | and each Defendant. True and correct copies of each of the Settlement Agreements are attached

18 | hereto as Exhibits "1" through "10" and incorporated herein by this reference.

19 |     11.    A summary of each Avoidance Action and Settlement Agreement is set forth

20 | below.

21 |     12.    **William Atkins.** The Committee seeks to avoid and recover Transfers made to

22 | Mr. Atkins in the amount of $42,203.05. The Committee asserts that such Transfers satisfy the

23 | elements of Section 547(b) of the Bankruptcy Code. In addition, pursuant to Section 502(d) of

24 | the Bankruptcy Code, the Committee seeks to avoid Proof of Claim No. 361 filed by Mr. Atkins

25 | in the amount of $246.61.

26 |     (1) Mr. Atkins asserts that the Transfers were made in the ordinary course of the

27 |     Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code.

28 |

-17-

1        (2) Upon review and confirmation of the accuracy of information from Mr. Atkins

2             in support of his alleged affirmative defenses, the parties have agreed to settle

3             the foregoing disputes based on the following material terms set forth in the

4             Settlement Agreement between the parties:

5        (3) Mr. Atkins shall pay the sum of $3,000.00 to Winthrop Couchot Professional

6             Corporation, counsel to the Committee ("Committee Counsel") to be held in

7             trust until the Bankruptcy Court enters its order approving this Motion (the

8             "Order"), at which time the Committee's Counsel may remit the funds to the

9             Committee and/or the Debtor; and

10       (4) Proof of Claim No. 361 filed by Mr. Atkins shall be disallowed in its entirety.

11    13.    **Avnet, Inc.**  The Committee seeks to avoid and recover Transfers made to Avnet

12 Computer in the amount of $185,102.76. The Committee asserts that such Transfers satisfy the

13 elements of Section 547(b) of the Bankruptcy Code.

14       (1) The Committee has been informed that the correct name of the defendant is

15            Avnet, Inc. Accordingly, as a part of the Settlement Agreement, the parties

16            have agreed to amend the complaint to name Avnet, Inc. as the correct

17            defendant and to remove Avnet Computer as defendants in the adversary

18            proceeding.

19       (2) Avnet, Inc. asserts that the Transfers were made in the ordinary course of the

20            Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code and/or

21            new value was provided by Avnet, Inc. pursuant to Section 547(c)(4) of the

22            Bankruptcy Code.

23       (3) Upon review and confirmation of the accuracy of information from Avnet, Inc.

24            in support of its alleged affirmative defenses, the parties have agreed to settle

25            the foregoing disputes based on the following material terms set forth in the

26            Settlement Agreement between the parties:

27       (4) Avnet, Inc. shall be named as the correct defendant and the name of Avnet

28            Computer shall be stricken as the defendant; and

-18-

1    (5) Avnet, Inc. shall pay the sum of $17,500.00 to Committee Counsel to be held

2        in trust until the Bankruptcy Court enters its Order, at which time Committee

3        Counsel may remit the funds to the Committee and/or the Debtor.

4    (6) Avnet, Inc. waives any claim that it may have against the Debtor.

5    14.    **B. Braun Medical, Inc.**  The Committee seeks to avoid and recover Transfers

6    made to B. Braun and B. Braun of America in the amount of $25,430.00.  The Committee asserts

7    that such Transfers satisfy the elements of Section 547(b) of the Bankruptcy Code.

8    (1) The Committee has been informed that the correct name of the defendant is B.

9        Braun Medical, Inc.  Accordingly, as a part of the Settlement Agreement, the

10        parties have agreed to amend the complaint to name B. Braun Medical, Inc. as

11        the correct defendant and to remove B. Braun and B. Braun of America, Inc. as

12        defendants in the adversary proceeding.

13    (2) B. Braun Medical, Inc. asserts that the Transfers were subject to

14        contemporaneous exchanges pursuant to Section 547(c)(1) of the Bankruptcy

15        Code and/or new value was provided by B. Braun Medical Inc. pursuant to

16        Section 547(c)(4) of the Bankruptcy Code.

17    (3) Upon review and confirmation of the accuracy of information from B. Braun

18        Medical, Inc. in support of its alleged affirmative defenses, the parties have

19        agreed to settle the foregoing disputes based on the following material terms

20        set forth in the Settlement Agreement between the parties:

21    (4) B. Braun Medical, Inc. shall be named as the correct defendant and the names

22        of B. Braun and B. Braun of America, Inc. shall be stricken as defendants; and

23    (5) B. Braun Medical, Inc. shall pay the sum of $3,500.00 to Committee Counsel

24        to be held in trust until the Bankruptcy Court enters its Order, at which time

25        Committee Counsel may remit the funds to the Committee and/or the Debtor.

26    15.    **Lawrence Begley**.  The Committee seeks to avoid and recover Transfers made to

27    Mr. Begley in the amount of $53,529.43.  The Committee asserts that such Transfers satisfy the

28    elements of Section 547(b) of the Bankruptcy Code.  Mr. Begley asserts that the Transfers were

1   made in the ordinary course of the Debtor's business pursuant to Section 547(c)(2) of the

2   Bankruptcy Code.

3           (1) Upon review and confirmation of the accuracy of information from Mr. Begley

4               in support of his alleged affirmative defenses, the parties have agreed to settle

5               the foregoing disputes by the virtue of Mr. Begley paying the sum of $5,000.00

6               to Committee Counsel to be held in trust until the Bankruptcy Court enters its

7               Order, at which time Committee Counsel may remit the funds to the

8               Committee and/or the Debtor.

9       16.     **Franz Cristiani.** The Committee seeks to avoid and recover Transfers made to

10  Mr. Cristiani in the amount of $87,239.67. The Committee asserts that such Transfers satisfy the

11  elements of Section 547(b) of the Bankruptcy Code. The Committee also seeks to avoid Mr.

12  Cristiani's claim listed in the Debtor's Schedule of Assets and Liabilities pursuant to Bankruptcy

13  Code Section 502(d).

14          (1) Mr. Cristiani asserts that the Transfers were made in the ordinary course of the

15              Debtor's business pursuant to Section 547(c)(2) of the Bankruptcy Code.

16          (2) Upon review and confirmation of the accuracy of information from Mr.

17              Cristiani in support of his alleged affirmative defenses, the parties have agreed

18              to settle the foregoing disputes based on the following material terms set forth

19              in the Settlement Agreement between the parties:

20          (3) Mr. Cristiani shall pay the sum of $14,000.00 to Committee Counsel to be held

21              in trust until the Bankruptcy Court enters its Order, at which time Committee

22              Counsel may remit the funds to the Committee and/or the Debtor; and

23          (4) Mr. Cristiani waives any claim that he may have against the Debtor, including

24              but not limited to any scheduled amount listed on the Debtor's Schedules of

25              Assets and Liabilities.

26      17.     **Ronald E. Heinz.** The Committee seeks to avoid and recover Transfers made to

27  Mr. Heinz in the amount of $37,916.67. The Committee asserts that such Transfers satisfy the

28  elements of Section 547(b) of the Bankruptcy Code. Mr. Heinz asserts that the Transfers were

-20-

1    made in the ordinary course of the Debtor's business pursuant to Section 547(c)(2) of the

2    Bankruptcy Code.

3    (1) Upon review and confirmation of the accuracy of information from Mr. Heinz

4    in support of his alleged affirmative defenses, the parties have agreed to settle

5    the foregoing disputes based on the following material terms set forth in the

6    Settlement Agreement between the parties:

7    (2) Mr. Heinz shall pay the sum of $5,500.00 to Committee Counsel to be held in

8    trust until the Bankruptcy Court enters its Order, at which time Committee

9    Counsel may remit the funds to the Committee and/or the Debtor; and

10    (3) Mr. Heinz agrees to waive any and all proofs of claim or scheduled claims,

11    whether afforded administrative, secured, priority, non-priority or general

12    unsecured status, which the Defendant might have, had or asserted against the

13    Debtor.

14    18.    **Marsh Risk Insurance.**  The Committee seeks to avoid and recover Transfers

15    made to Marsh Risk Insurance in the amount of $139,349.50. The Committee asserts that such

16    Transfers satisfy the elements of Section 547(b) of the Bankruptcy Code.

17    (1) Marsh asserts that the vast majority of the Transfers were made to Marsh as an

18    insurance broker conduit, which insulates it from Section 547 of the

19    Bankruptcy Code, and that the remaining payments in the amount of $21,250

20    were made in the ordinary course of the Debtor's business pursuant to Section

21    547(c)(2) of the Bankruptcy Code.

22    (2) Upon review and confirmation of the accuracy of information from Marsh Risk

23    Insurance in support of its alleged affirmative defenses, the parties have agreed

24    to settle the foregoing disputes by the virtue of Marsh Risk Insurance paying

25    the sum of $10,000.00 to Committee Counsel to be held in trust until the

26    Bankruptcy Court enters its Order, at which time Committee Counsel may

27    remit the funds to the Committee and/or the Debtor.

28

-21-

1    19.    **Michael Pehl.** The Committee seeks to avoid and recover Transfers made to Mr.

2    Pehl in the amount of $25,000.00. The Committee asserts that such Transfers satisfy the elements

3    of Section 547(b) of the Bankruptcy Code.

4    (1) Mr. Pehl asserts that Mr. Pehl provided new value pursuant to Section

5    547(c)(1) of the Bankruptcy Code and the Transfers were made in the ordinary

6    course of the Debtor's business pursuant to Section 547(c)(2) of the

7    Bankruptcy Code.

8    (2) Upon review and confirmation of the accuracy of information from Mr. Pehl in

9    support of his alleged affirmative defenses, the parties have agreed to settle the

10    foregoing disputes by the virtue of Mr. Pehl paying the sum of $2,500.00 to

11    Committee Counsel to be held in trust until the Bankruptcy Court enters its

12    Order, at which time Committee Counsel may remit the funds to the

13    Committee and/or the Debtor.

14    20.    **Storwize, Inc.** The Committee seeks to avoid and recover Transfers made to

15    Storwize, Inc.[3] in the amount of $76,110.00. The Committee asserts that such Transfers satisfy

16    the elements of Section 547(b) of the Bankruptcy Code. Storwize, Inc. asserts that the Transfers

17    were made in the ordinary course of the Debtor's business pursuant to Section 547(c)(2) of the

18    Bankruptcy Code.

19    (1) Upon review and confirmation of the accuracy of information from Storwize,

20    Inc. in support of its alleged affirmative defenses, the parties have agreed to

21    settle the foregoing disputes by the virtue of Storwize, Inc. paying the sum of

22    $6,250.00 to Committee Counsel to be held in trust until the Bankruptcy Court

23    enters its Order, at which time Committee Counsel may remit the funds to the

24    Committee and/or the Debtor.

25    21.    **Raimondi and Jacques.** The Committee believes that it has valid claims to avoid

26    and recover Transfers made to Raimondi and Jacques. The Committee asserts that such Transfers

27

28    _____

[3] The name of the Defendant is inadvertently spelled Storewiz rather than Storwize, Inc. in the Complaint. The
Settlement Agreement provides for the correct spelling of the Defendant's name.

-22-

1  satisfy the elements of Section 547(b) of the Bankruptcy Code. Raimondi and Jacques assert that

2  they maintain defenses to the Transfers.

3       (1) On or about November 7, 2007, Raimondi filed Proof of Claim No. 45 in the

4          amount of $646,153.83. On May 2, 2008, Raimondi filed Proof of Claim No.

5          258 in the amount of $400,000. Proof of Claim No. 258 amends and

6          supersedes Proof of Claim No. 45. The Committee informed Raimondi that it

7          may object to Raimondi's claim.

8       (2) Pursuant to negotiations among the parties, the parties have agreed to settle the

9          foregoing disputes based on the following material terms set forth in the

10         Settlement Agreement:

11      (3) Raimondi shall have an allowable non-priority general unsecured claim in the

12         amount of $400,000 (the "Raimondi Claim"). Raimondi agrees that he shall

13         not receive any distribution on account of the Raimondi Claim until all other

14         holders of allowed non-priority general unsecured claims are paid in full on

15         account of such claims.

16      (4) Raimondi agrees to waive any and all proofs of claim or scheduled claims,

17         whether afforded administrative, secured, priority, non-priority or general

18         unsecured status, which Raimondi might have, had or asserted against the

19         Debtor, including, but not limited to his filed Proofs of Claim Nos. 45 and 258.

20      (5) Jacques shall have no claim against the Debtor and Jacques agrees to waive any

21         and all proofs of claim or scheduled claims, whether afforded administrative,

22         secured, priority, non-priority or general unsecured status, which Jacques might

23         have, had or asserted against the Debtor.

24    22.    Here, the proposed Settlement Agreements are in the best interests of creditors

25 because the Settlement Agreements increase the rate of return for creditors. Specifically, each

26 Settlement Agreement (a) increases the cash available for distribution to holders of allowed

27 unsecured claims; (b) disallows various claims asserted by the Defendants against the Debtor and

28 therefore increases the prospective pro-rata distribution to holders of allowed unsecured claims;

(c) decreases the expenses that would otherwise be incurred by the estate if the Committee pursues litigation and therefore increases the distribution to the holders of allowed unsecured claims; and (d) resolves any risk of non-collection of the Transfers inherent in litigation and therefore increases the likelihood of a higher rate of return to holders of allowed unsecured claims.

23.    Based upon the foregoing, and for all the reasons set forth in the Motion, I, on behalf of the Committee respectfully submit that the Court's approval of the Settlement Agreements is in the best interests of the estate and its creditors and, therefore, this Court should grant to the Committee all relief requested by this Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this 1st day of April 2010, in Newport Beach, California.

/s/ Richard H. Golubow
Richard H. Golubow

-24-

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) William Atkins (the "Defendant").

### RECITALS

A.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.      On or about May 27, 2008, the Defendant filed a proof of claim (Claim No. 361) against the Debtor in the amount of $246.61 (the "Defendant's Claim").

C.      On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. William Atkins*, Case No. 8:09-01644-ES (the "Adversary Proceeding").

D.      The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

### AGREEMENT

1.      Recitals. The foregoing recitals are incorporated herein by reference.

2.      Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.      Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties

1

12/17/09

to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

4.  Settlement Payment.  The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $3,000.00 (the "Settlement Amount").  The Settlement Amount shall become due and payable within three (3) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check.  Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.  Claim of Defendant.  The Defendant's Claim shall be disallowed in its entirety against the Debtor's estate.]

6.  Dismissal of All Pending Actions.  Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.  Mutual Release.

a.  Plaintiff's Releases.  Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

b.  Defendant's Releases.  Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.  Waiver of Civil Code Section 1542.  With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release,

UC
12/17/09

**which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.      Representations and Warranties.

        a.      Representations and Warranties by the Plaintiff. The Plaintiff represents and warrants to the Defendant that:

                i.      Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

                ii.     The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

                iii.    The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

        b.      Representations and Warranties by the Defendant. The Defendant represents and warrants to the Plaintiff that:

                i.      The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

                ii.     The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver,

WQ
12/17/09

violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.     The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.     Payments/Continuing Rights and Obligations.   Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement.  All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.     No Assignment.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.     Intended Beneficiaries.  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.     Waivers and Amendments.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.     Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.     Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.     Authority to Execute Agreement.  Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17.     Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

4
MAINDOCS-#136805-v1-MTI_(Creditors_Committee_v__Atkins)_Settlement_Agreement

_uu_
12/17/09

18.    Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19.    Interpretation. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

20.    Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

If to the Plaintiff:
Richard H. Golubow, Esq.
Winthrop Couchot Professional Corporation
660 Newport Center Drive, Fourth Floor
Newport Beach, California 92660
Telephone No.: (949) 720-4100
Facsimile No.: (949) 720-4111
Email: rgolubow@winthropcouchot.com

If to the Defendant:
William Atkins
1900 West Paces Ferry Road
Atlanta, GA 30327
Telephone No.: (404) 351-0777
Email: atkins.w@gmail.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

21.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

22.    Jurisdiction. Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

23.    Severability. In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

24.    Entire Agreement. This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express

5
M:\INDOCS-#136805-v1-MTI_(Creditors Committee_v__Atkins)_Settlement Agreement

WA
12\17\09

or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement. The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement. Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF**
**CREDITORS HOLDING**
**UNSECURED CLAIMS**

BY: _____
    Richard H. Golubow, Esq.

Date: December 18, 2009

**WILLIAM ATKINS**

BY: _____
    William Atkins

Date: December 17, 2009

MAINDOCS-#136805-v1-MTI_(Creditors_Committee_v__Atkins)_Settlement_Agreement

WA
12/17/09

# EXHIBIT "2"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Avnet, Inc. (the "Defendant").

### RECITALS

A.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.      On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Avnet Computer*, Case No. 8:09-01624-ES (the "Adversary Proceeding").

C.      The parties have agreed to amend the complaint filed in the Adversary Proceeding to name Avnet, Inc. as the correct Defendant and to remove Avnet Computer as the defendant named in the Adversary Proceeding.

D.      The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

### AGREEMENT

1.      Recitals. The foregoing recitals are incorporated herein by reference.

2.      Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.      Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense

1

of any party.  All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

4.      Settlement Payment.  The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $17,500.00 (the "Settlement Amount").  The Settlement Amount shall become due and payable within three (3) business days following the entry of the Order and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check.  Thereafter, the Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.      Claims of Defendant.  The Defendant agrees to waive any and all other proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendant might have, had or asserted against the Debtor, including, but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

6.      Dismissal of All Pending Actions.  Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.      Mutual Release.

        a.      Plaintiff's Releases.  Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

        b.      Defendant's Releases.  Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff and the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.      Waiver of Civil Code Section 1542.  With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.     Representations and Warranties.

        a.     Representations and Warranties by the Plaintiff. The Plaintiff represents and warrants to the Defendant that:

                i.     Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

                ii.    The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

                iii.   The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

        b.     Representations and Warranties by the Defendant.   The Defendant represents and warrants to the Plaintiff that:

                i.     The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

                ii.    The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated

herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.      The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.      Payments/Continuing Rights and Obligations.   Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement.  All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.      No Assignment.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.      Intended Beneficiaries.  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.      Waivers and Amendments.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.      Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.      Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.      Authority to Execute Agreement.  Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17.      Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

4

18.    Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19.    Interpretation. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

20.    Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

> If to the Plaintiff:
> Richard H. Golubow, Esq.
> Winthrop Couchot Professional Corporation
> 660 Newport Center Drive, Fourth Floor
> Newport Beach, California 92660
> Telephone No.: (949) 720-4100
> Facsimile No.: (949) 720-4111
> Email: rgolubow@winthropcouchot.com

> If to the Defendant:
> Paul Kim, Esq.
> The Yocca Law Firm LLP
> 19900 MacArthur Blvd., Suite 650
> Irvine, California 92612
> Telephone No.: (949) 253-0800
> Facsimile No.: (949) 253-0870
> Email: pkim@yocca.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

21.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

22.    Jurisdiction. Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

23.    Severability. In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

24.     Entire Agreement. This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF**                 **AVNET, INC.**
**CREDITORS HOLDING**
**UNSECURED CLAIMS**


BY: _____        BY: _____
      Richard H. Golubow, Esq.,                  Paul Kim, Esq.,
      Attorney for the Plaintiff                    Attorney for the Defendant


Date:  March __, 2010                        Date:  March __, 2010

**EXHIBIT "3"**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and among (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor"), (ii) the Debtor, and (iii) B. Braun Medical Inc. (the "Defendant").

### RECITALS

A.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.      On or about October 14, 2009, the Plaintiff filed its Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim [11 U.S.C. §§ 547 and 550] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. B. Braun and B. Braun of America, Inc.*, Case No. 8:09-01616-ES (the "Adversary Proceeding").

C.      The parties have agreed to amend the complaint filed in the Adversary Proceeding to name B. Braun Medical Inc. as the correct Defendant and to remove B. Braun and B. Braun of America, Inc. as defendants in the Adversary Proceeding.

D.      The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

### AGREEMENT

1.      <u>Recitals</u>. The foregoing recitals are incorporated herein by reference.

2.      <u>Name of Defendant</u>. B. Braun Medical Inc. shall be named as the Defendant in the Adversary Case and B. Braun and B. Braun of America, Inc. shall be stricken as defendants therein.

3.      <u>Order Approving Settlement Agreement</u>. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly file a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

1

4.   <u>Compromise and Settlement.</u> Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

5.   <u>Settlement Payment.</u> The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $3,500.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within fifteen (15) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement and such Order has become final and non-appealable, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

6.   <u>Claims of Defendant.</u> Defendant agrees to waive any and all proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendant might have, had or asserted against the Debtor, including, but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

7.   <u>Dismissal of All Pending Actions.</u> Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

8.   <u>Mutual Release.</u>

   a.   <u>Plaintiff's Releases.</u> Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant and its affiliates, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

   b.   <u>Debtor's Releases.</u> Excepting only those claims and obligations arising under this Agreement, the Debtor hereby releases and forever discharges the Defendant and its affiliates, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

c.     Defendant's Releases.     Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff, the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

9.     Waiver of Civil Code Section 1542.  With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

10.     Representations and Warranties.

a.     Representations and Warranties by the Plaintiff.  The Plaintiff represents and warrants to the Defendant that:

i.     Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.     The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.     The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its

3

rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

     b.    <u>Representations and Warranties by the Defendant</u>.    The Defendant represents and warrants to the Plaintiff that:

     i.    The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

     ii.    The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

     iii.    The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

     11.    <u>Payments/Continuing Rights and Obligations.</u>  Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

     12.    <u>No Assignment.</u>  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

     13.    <u>Intended Beneficiaries.</u>  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

     14.    <u>Waivers and Amendments</u>.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

15.    Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

16.    Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.    Authority to Execute Agreement.  Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

18.    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

19.    Attorneys' Fees.  Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

20.    Interpretation.  The parties acknowledge and agree that they all participated in drafting this Agreement.  The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

21.    Notices.  All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

> If to the Plaintiff:
> Richard H. Golubow, Esq.
> Winthrop Couchot Professional Corporation
> 660 Newport Center Drive, Fourth Floor
> Newport Beach, California 92660
> Telephone No.: (949) 720-4100
> Facsimile No.: (949) 720-4111
> Email: rgolubow@winthropcouchot.com

> If to the Debtor:
> Eve A. Marsella, Esq.
> Clarkson, Gore & Marsella, APLC
> 3424 Carson Street, Suite 350
> Torrance, California 90503
> Telephone No.: (310) 542-0111
> Facsimile No.: (310) 214-7254
> Email: emarsella@lawcgm.com

If to the Defendant:
      Cathy Codrea, Esq.
      General Counsel
      B. Braun Medical Inc.
      824 Twelfth Ave.
      Bethlehem, Pennsylvania 18018-0027
      Telephone No.: (610) 997-4581

      Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

      22.    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

      23.    Jurisdiction.  Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

      24.    Severability.  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

      25.    Entire Agreement.  This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF
CREDITORS HOLDING
UNSECURED CLAIMS**

BY: _____
    Richard H. Golubow, Esq.,
    Attorney for the Plaintiff

Date: March 2, 2010

**B. BRAUN MEDICAL INC.**

BY: _____
Name: Cathy Codrea, Esq.,
    Senior Vice President, General
    Counsel for the Defendant

Date: March ___, 2010

AND

BY: _____
Name: Bruce A. Heugel,
    Senior Vice President, CFO

Date: March ___, 2010

**MTI TECHNOLOGY CORPORATION**

BY: _____
    Eve A. Marsella, Esq.,
    Attorney for the Debtor

Date: March 1, 2010

7
MAINDOCS-#139916-v3-MTI_(Creditors_Committee_v__B_Braun)_Settlement_Agreement.DOC

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF**
**CREDITORS HOLDING**
**UNSECURED CLAIMS**

**B. BRAUN MEDICAL INC.**

BY: _____

Richard H. Golubow, Esq.,
Attorney for the Plaintiff

BY: _____
Name: Cathy Codrea, Esq.,
Senior Vice President, General
Counsel for the Defendant

Date: March __, 2010

Date: March 9, 2010

AND

BY: _____
Name: Bruce A. Heugel,
Senior Vice President, CFO

Date: March 9, 2010

**MTI TECHNOLOGY CORPORATION**

BY: _____

Eve A. Marsella, Esq.,
Attorney for the Debtor

Date: March __, 2010

MAINDOCS-#139916-v3-MTI_(Creditors_Committee_v__B_Braun)_Settlement_Agreement.DOC

# EXHIBIT "4"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Lawrence Begley (the "Defendant").

## RECITALS

A.    On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.    On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Lawrence Begley*, Case No. 8:09-01648-ES (the "Adversary Proceeding").

C.    The Plaintiff agreed to extend the Defendant's time period to file an Answer to December 18, 2009 to engage in settlement negotiations.

D.    The Defendant did not file an Answer to the Complaint and on January 19, 2010, the Plaintiff filed a request for default against the Defendant.

E.    On or about March 6, 2010, the Defendant contacted Plaintiff's counsel to settle the matter.

F.    The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.    Recitals. The foregoing recitals are incorporated herein by reference.

2.    Order Approving Settlement Agreement.  This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will prepare a motion to approve compromise of controversy pursuant to Federal Rule

of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.  Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

4.  Settlement Payment. The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $5,000.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within three (3) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.  Claims of Defendant. The Defendant agrees to waive any and all other proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendant might have, had or asserted against the Debtor, including, but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

6.  Dismissal of All Pending Actions. Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.  Mutual Release.

    a.  Plaintiff's Releases. Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

    b.  Defendant's Releases. Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff and the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or

2
MAINDOCS-#141947-v1-MTI_(Creditors_Committee_v__Begley)_Settlement_Agreement (3).DOC

description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.    Waiver of Civil Code Section 1542.  With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.    Representations and Warranties.

a.    Representations and Warranties by the Plaintiff.  The Plaintiff represents and warrants to the Defendant that:

i.    Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.    The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.    The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.    Representations and Warranties by the Defendant.  The Defendant represents and warrants to the Plaintiff that:

3
MAINDOCS-#141947-v1-MTI_(Creditors_Committee_v_Begley)_Settlement_Agreement (3).DOC

i.      The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.     The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.    The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.    Payments/Continuing Rights and Obligations.  Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.    No Assignment. The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.    Intended Beneficiaries. To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.    Waivers and Amendments. A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.    Further Cooperation. The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.    Counterparts. This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

4

16. <u>Authority to Execute Agreement</u>. Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17. <u>Successors and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

18. <u>Attorneys' Fees</u>. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19. <u>Interpretation</u>. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

20. <u>Notices</u>. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

> If to the Plaintiff:
> Richard H. Golubow, Esq.
> Winthrop Couchot Professional Corporation
> 660 Newport Center Drive, Fourth Floor
> Newport Beach, California 92660
> Telephone No.: (949) 720-4100
> Facsimile No.: (949) 720-4111
> Email: rgolubow@winthropcouchot.com

> If to the Defendant:
> Lawrence Begley
> 470 Atlantic Avenue
> Twelfth Floor
> Boston, Massachusetts 02210
> Telephone No.: (617) 406-3303
> Facsimile No.: (617) 406-3301
> Email: lbegley@406ventures.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

21. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

22. <u>Jurisdiction</u>. Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

5

MAINDOCS-#141947-v1-MTL_(Creditors_Committee_v_Begley)_Settlement_Agreement (3).DOC

23.   Severability.  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

24.   Entire Agreement.  This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

OFFICIAL COMMITTEE OF                    LAWRENCE BEGLEY
CREDITORS HOLDING
UNSECURED CLAIMS

BY                                       BY
    Richard I. Golubow, Esq.,            Name: Lawrence Begley
    Attorney for the Plaintiff

Date: March 10, 2010                     Date: March __, 2010

**EXHIBIT "5"**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Franz Cristiani (the "Defendant").

## RECITALS

A.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.      On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Franz Cristiani*, Case No. No. 8:09-01632 ES (the "Adversary Proceeding").

C.      The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.      Recitals. The foregoing recitals are incorporated herein by reference.

2.      Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.      Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

1

4.     Settlement Payment. The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $14,000.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within three (3) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.     Claims of Defendant. The Defendant hereby waives any claim that he may have against the Plaintiff, the Debtor and the Debtor's estate, including but not limited to any scheduled amount listed on the Debtor's Schedules of Assets and Liabilities. Any such claim shall be disallowed.

6.     Dismissal of All Pending Actions. Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.     Releases. Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff and the Debtor, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.     Waiver of Civil Code Section 1542. With respect to the releases provided above, the Defendant hereby knowingly, voluntarily and expressly waives any and all rights that the Defendant may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Defendant acknowledges that he may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.     Representations and Warranties.

a.     Representations and Warranties by the Plaintiff. The Plaintiff represents and warrants to the Defendant that:

MAINDOCS-#137195-v1-MTI_(Creditors_Committee_v__Franz)_Settlement_Agreement.DOC

i.      Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.     The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.    The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.      Representations and Warranties by the Defendant.    The Defendant represents and warrants to the Plaintiff that:

i.      The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.     The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.    The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.     Payments/Continuing Rights and Obligations.    Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it

will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.    No Assignment.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.    Intended Beneficiaries.  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.    Waivers and Amendments.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.    Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.    Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    Authority to Execute Agreement.  Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17.    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

18.    Attorneys' Fees.  Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19.    Interpretation.  The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

20.    Notices.  All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

If to the Plaintiff:
    Richard H. Golubow, Esq.
    Winthrop Couchot Professional Corporation
    660 Newport Center Drive, Fourth Floor
    Newport Beach, California 92660
    Telephone No.: (949) 720-4100
    Facsimile No.: (949) 720-4111
    Email: rgolubow@winthropcouchot.com

If to the Defendant:
    Franz Cristiani
    33 Cobblestone Lane
    San Carlos, California  94070
    Telephone No.: (650) 367-1540
    Email: fcristiani@sbcglobal.net

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

21.    Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

22.    Jurisdiction.  Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

23.    Severability.  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

24.    Entire Agreement.  This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

12/30/2009  09:12    6506370400                UPS STORE                        PAGE  02

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF
CREDITORS HOLDING
UNSECURED CLAIMS**

BY: _____
Richard H. Golubow, Esq.,
Attorney for the Plaintiff

Date: December 1, 2009

**FRANZ CRISTIANI**

BY: _____
Franz Cristiani

Date: December 2, 2009

# EXHIBIT "6"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Ronald E. Heinz (the "Defendant").

### RECITALS

A.    On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.    On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Ronald E. Heinz*, Case No. 8:09-01644-ES (the "Adversary Proceeding").

C.    The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

### AGREEMENT

1.    Recitals. The foregoing recitals are incorporated herein by reference.

2.    Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.    Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

1

4.      Settlement Payment. The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $5,500.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within three (3) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.      Claims of Defendant. The Defendant agrees to waive any and all proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendant might have, had or asserted against the Debtor, including, but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

6.      Dismissal of All Pending Actions. Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.      Mutual Release.

a.      Plaintiff's Releases. Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

b.      Defendant's Releases. Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff and the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.      Waiver of Civil Code Section 1542. With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release,**

**which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.    Representations and Warranties.

a.    Representations and Warranties by the Plaintiff.  The Plaintiff represents and warrants to the Defendant that:

i.    Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.    The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.    The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.    Representations and Warranties by the Defendant.    The Defendant represents and warrants to the Plaintiff that:

i.    The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.    The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver,

3

violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.      The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.      Payments/Continuing Rights and Obligations.  Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.      No Assignment.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.      Intended Beneficiaries.  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.      Waivers and Amendments.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.      Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.      Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.      Authority to Execute Agreement.  Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17.      Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

18.   Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19.   Interpretation. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

20.   Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

If to the Plaintiff:
        Richard H. Golubow, Esq.
        Winthrop Couchot Professional Corporation
        660 Newport Center Drive, Fourth Floor
        Newport Beach, California 92660
        Telephone No.: (949) 720-4100
        Facsimile No.: (949) 720-4111
        Email: rgolubow@winthropcouchot.com

If to the Defendant:
        Brent E. Johnson, Esq.
        Holland & Hart LLP
        60 E. South Temple, Suite 2000
        Salt Lake City, UT 84111
        Telephone No.: (801) 799-5807
        Facsimile No.: (801) 799-5700
        Email: bjohnson@hollandhart.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

21.   Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

22.   Jurisdiction. Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

23.   Severability. In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

24.    Entire Agreement. This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement. The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement. Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF**                 **RONALD E. HEINZ**
**CREDITORS HOLDING**
**UNSECURED CLAIMS**

BY: _____          BY: _____
   Richard H. Golubow, Esq.,               Brent E. Johnson, Esq.
   Attorney for the Plaintiff              Attorney for the Defendant

Date: January 19, 2010                Date: January 19, 2010

# EXHIBIT "7"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Marsh Risk Insurance (the "Defendant").

## RECITALS

A.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.      On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547, 550, 502(d)] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Marsh Risk Insurance*, Case No. No. 8:09-01614 ES (the "Adversary Proceeding").

C.      The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.      Recitals. The foregoing recitals are incorporated herein by reference.

2.      Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.      Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

1

4.    Settlement Payment.  The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $10,000.00 (the "Settlement Amount").  The Settlement Amount shall become due and payable within ten (10) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check.  Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.    Claims of Defendant.  The Defendant agrees to waive any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.  The Defendant does not waive, and shall have the right to assert, its filed Proof of Claim No. 171.

6.    Dismissal of All Pending Actions.  Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

7.    Releases.  Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff and the Debtor, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

8.    Waiver of Civil Code Section 1542.  With respect to the releases provided above, the Defendant hereby knowingly, voluntarily and expressly waives any and all rights that the Defendant may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Defendant acknowledges that he may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

9.    Representations and Warranties.

a.    Representations and Warranties by the Plaintiff.  The Plaintiff represents and warrants to the Defendant that:

2

i.     Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.     The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.     The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.     <u>Representations and Warranties by the Defendant</u>.  The Defendant represents and warrants to the Plaintiff that:

i.     The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.     The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.     The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

10.     <u>Payments/Continuing Rights and Obligations.</u>  Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it

will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

11.    No Assignment. The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

12.    Intended Beneficiaries. To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

13.    Waivers and Amendments. A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

14.    Further Cooperation. The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

15.    Counterparts. This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    Authority to Execute Agreement. Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

17.    Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

18.    Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

19.    Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

    If to the Plaintiff:
        Richard H. Golubow, Esq.
        Winthrop Couchot Professional Corporation
        660 Newport Center Drive, Fourth Floor
        Newport Beach, California 92660

4
MAINDOCS-#140965-v2-MTI_(Creditors_Committee_v__Marsh)_Settlement_Agreement.DOC

Telephone No.: (949) 720-4100
Facsimile No.: (949) 720-4111
Email: rgolubow@winthropcouchot.com

If to the Defendant:
Steven M. Monroe, Esq.
Senior Litigation Counsel
Marsh & McLennan Companies, Inc.
1166 Avenue of the Americas
New York, New York 10036
Telephone No.: (212) 345-5923
Facsimile No.: (212) 345-5923
Email: Steven.Monroe@MMC.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

20.  Governing Law.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

21.  Jurisdiction.  Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

22.  Severability.  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

23.  Entire Agreement.  This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF**
**CREDITORS HOLDING**
**UNSECURED CLAIMS**

BY: _____
    Richard H. Golubow, Esq.,
    Attorney for the Plaintiff

Date: March 9, 2010

**MARSH RISK INSURANCE**

BY: _____
    Steven M. Monroe, Esq.
    Senior Litigation Counsel
    Marsh & McLennan Companies Inc.

Date: March 8, 2010

# EXHIBIT "8"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Michael Pehl (the "Defendant").

## RECITALS

A.       On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.       On or about October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* [11 U.S.C. §§ 547 and 550] ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Michael Pehl*, Case No. 8:09-01647 ES (the "Adversary Proceeding").

C.       The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint.  To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.       Recitals.  The foregoing recitals are incorporated herein by reference.

2.       Order Approving Settlement Agreement.  This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order").  The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion").  The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.       Compromise and Settlement.  Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

1

4.    Settlement Payment. The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $2,500.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within fifteen (15) days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order approving this Agreement and such Order has become final and non-appealable, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor.

5.    Dismissal of All Pending Actions. Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

6.    Mutual Release.

a.    Plaintiff's Releases. Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

b.    Defendant's Releases. Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

7.    Waiver of Civil Code Section 1542. With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall

remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

      8.    <u>Representations and Warranties</u>.

      a.    <u>Representations and Warranties by the Plaintiff</u>.  The Plaintiff represents and warrants to the Defendant that:

      i.    Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

      ii.    The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

      iii.    The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

      b.    <u>Representations and Warranties by the Defendant</u>.  The Defendant represents and warrants to the Plaintiff that:

      i.    The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

      ii.    The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

3

iii.    The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

9.    Payments/Continuing Rights and Obligations.    Notwithstanding any contrary provision in this Agreement, the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

10.    No Assignment.    The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

11.    Intended Beneficiaries.    To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

12.    Waivers and Amendments.    A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

13.    Further Cooperation.    The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

14.    Counterparts.    This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.    Authority to Execute Agreement.    Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

16.    Successors and Assigns.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

17.    Attorneys' Fees.    Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

18.    Interpretation.    The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law

4

providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

19.    Notices.    All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

> If to the Plaintiff:
> Richard H. Golubow, Esq.
> Winthrop Couchot Professional Corporation
> 660 Newport Center Drive, Fourth Floor
> Newport Beach, California 92660
> Telephone No.: (949) 720-4100
> Facsimile No.: (949) 720-4111
> Email: rgolubow@winthropcouchot.com

> If to the Defendant:
> Nina M. Varughese
> Pepper Hamilton LLP
> 3000 Two Logan Square
> Eighteenth and Arch Streets
> Telephone No.: (215) 981-4407
> Facsimile No.: (215) 981-4750
> Email: varughesen@pepperlaw.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

20.    Governing Law.    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

21.    Jurisdiction.    Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

22.    Severability.    In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

23.    Entire Agreement.    This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.    The parties acknowledge that they have not relied on any representations, inducements, promises,

5

agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement. Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

**OFFICIAL COMMITTEE OF
CREDITORS HOLDING
UNSECURED CLAIMS**

BY: _____
   Richard H. Golubow, Esq.,
   Attorney for the Plaintiff
Date: December 1, 2009

**MICHAEL PEHL**

BY: _____
Name: Nina M. Varughese
   Attorney for the Defendant

Date: December 21, 2009

**EXHIBIT "9"**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) the Official Committee of Creditors Holding Unsecured Claims (the "Plaintiff") for the estate of MTI Technology Corporation (the "Debtor") and (ii) Storwize, Inc. (the "Defendant").

## RECITALS

A.     On October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.     On October 14, 2009, the Plaintiff filed its *Complaint to Avoid and Recover Transfers Property and for Disallowance of Claim* ("Complaint"), styled *Official Committee of Creditors Holding Unsecured Claims v. Storewiz[1]*, Case No. 8:09-01636-ES (the "Adversary Proceeding").

C.     The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters regarding the Complaint. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to the Complaint.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.     Recitals. The foregoing recitals are incorporated herein by reference.

2.     Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court ("Order") approving this Agreement. The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.     Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or

---

[1] The name of the Defendant is inadvertently spelled Storewiz rather than Storwize, Inc. in the Complaint.

in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

4.    Settlement Payment. The Plaintiff agrees to accept, and the Defendant agrees to pay to the Plaintiff, the sum of $6,250.00 (the "Settlement Amount"). The Settlement Amount shall become due and payable within five (5) business days following the Effective Date and shall be delivered to Plaintiff's counsel, Winthrop Couchot Professional Corporation, 660 Newport Center Drive, Fourth Floor, Newport Beach, California 92660, Attention Richard H. Golubow, either by (i) an electronic wire or (ii) a cashier's check. Plaintiff's counsel shall hold the Settlement Amount in trust until the Bankruptcy Court enters its Order granting the Motion approving this Agreement, at which time Plaintiff's counsel may remit the funds to the Plaintiff and/or the Debtor. In the event the Court enters an order denying the Motion, the Settlement Amount shall be returned to the Defendant within ten (10) business days after the entry of the Order.

5.    Dismissal of All Pending Actions. Within ten (10) business days after the entry of the Order, the Plaintiff shall prepare and file appropriate documents to dismiss the Adversary Proceeding with prejudice.

6.    Mutual Release.

    a.    Plaintiff's Releases. Excepting only those claims and obligations arising under this Agreement, the Plaintiff hereby releases and forever discharges the Defendant, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations. actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

    b.    Defendant's Releases. Excepting only those claims and obligations arising under this Agreement, the Defendant hereby releases and forever discharges the Plaintiff, and its respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

7.    Waiver of Civil Code Section 1542. With respect to the releases provided above, the Plaintiff and the Defendant hereby knowingly, voluntarily and expressly waive any and all rights that such parties may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

2

The Plaintiff and the Defendant acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agree that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

8.      Representations and Warranties.

        a.      Representations and Warranties by the Plaintiff.  The Plaintiff represents and warrants to the Defendant that:

                i.      Pursuant to an order of the Bankruptcy Court entered on March 12, 2009, the Committee is authorized to commence the Adversary Proceeding on behalf of the Debtor's estate[2];

                ii.     Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

                iii.    The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound;

                iv.     The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement; and

                v.      The Agreement, when approved by the Order of the Bankruptcy Court, will extinguish any Claim that the Plaintiff or the Debtor may hold against the Defendant stated in the Complaint.

        b.      Representations and Warranties by the Defendant.  The Defendant represents and warrants to the Plaintiff that:

                i.      The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions

---

[2] The stipulation between the Debtor and the Plaintiff, approved by the Court, provides that in the event the Plaintiff pursues an avoidance action, the Plaintiff shall have the exclusive right to do so.

3

MAINDOCS-#136986-v2-MTI_(Creditors_Committee_v__Storwize)_Settlement_Agreement.DOC

contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.     The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.    The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

9.     Payments/Continuing Rights and Obligations.   Notwithstanding any contrary provision in this Agreement (except Paragraph 7 hereof), the Plaintiff and the Defendant each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

10.    No Assignment.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

11.    Intended Beneficiaries.  To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

12.    Waivers and Amendments.  A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

13.    Further Cooperation.  The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

14.    Counterparts.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.    Authority to Execute Agreement. Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

16.    Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

17.    Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

18.    Interpretation. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

19.    Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

> If to the Plaintiff:
>> Richard H. Golubow, Esq.
>> Winthrop Couchot Professional Corporation
>> 660 Newport Center Drive, Fourth Floor
>> Newport Beach, California 92660
>> Telephone No.: (949) 720-4100
>> Facsimile No.: (949) 720-4111
>> Email: rgolubow@winthropcouchot.com

> If to the Defendant:
>> Gary Davis, Esq.
>> 881 E. Meadow Drive
>> Palo Alto, California 94303
>> Telephone No.: (650) 864-2290
>> Facsimile No.: (650) 864-2006
>> Email: gary.davis@commtouch.com

>> Mary Henry, CFO
>> Storwize, Inc.
>> 225 Cedar Hill Street, Suite 200
>> Marlborough, Massachusetts 01752

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

20.    Governing Law.    This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

21.    Jurisdiction.    Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

22.    Severability.    In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

23.    Entire Agreement.    This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement. The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement. Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

OFFICIAL COMMITTEE OF
CREDITORS HOLDING
UNSECURED CLAIMS

BY: _____
Richard H. Golubow, Esq.,
Attorney for the Plaintiff

Date: December 7, 2009

STORWIZE, INC.

BY: _____
Gary Davis, Esq.,
Attorney for the Defendant

Date: December 24, 2009

6
MAINDOCS-#136986-v2-MTL_(Creditors_Committee_v__Storwize)_Settlement_Agreement

# EXHIBIT "10"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and among (i) the Official Committee of Creditors Holding Unsecured Claims (the "Committee") for the estate of MTI Technology Corporation (the "Debtor"), (ii) Thomas P. Raimondi ("Raimondi"), and (iii) Pamela A. Jacques, Inc. d/b/a/ Independent Marketing ("Jacques").

## RECITALS

A.     On or about October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES.

B.     Prior to the Petition Date, Raimondi acted as the Debtor's Chief Executive Officer. After the Petition Date, Raimondi has acted, and continues to act, as a consultant to the Debtor.

C.     On or about November 7, 2007, Raimondi filed Proof of Claim No. 45 in the amount of $646,153.83. The Proof of Claim alleges that $10,950 constitutes a priority general unsecured claim and the remainder constitutes a general unsecured claim.

D.     On May 2, 2008, Raimondi filed Proof of Claim No. 258 in the amount of $400,000. The Proof of Claim alleges that $10,950 constitutes a priority general unsecured claim and the remainder constitutes a general unsecured claim. Proof of Claim No. 258 amends and supersedes Proof of Claim No. 45.

E.     On or about October 14, 2009, the Committee and each of Raimondi and Jacques entered into tolling agreements (the "Tolling Agreements") to toll the statute of limitations with respect to various actions to avoid and recover property of the Debtor's estate that the Committee may assert against each of Raimondi and Jacques pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code. The tolling agreements have been extended and are in effect as of the Effective Date hereof.

F.     The parties have exchanged information and support for their respective positions. As a result thereof, the parties have reached a compromise and settlement involving all matters. To avoid further expense and delay, and the uncertainty inherent in litigation, the Committee, Raimondi and Jacques have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all matters relating to their disputes.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the parties hereto stipulate and agree as follows:

## AGREEMENT

1.     Recitals. The foregoing recitals are incorporated herein by reference.

2.  Order Approving Settlement Agreement. This Agreement is contingent upon entry of a final, nonappealable order of the Bankruptcy Court approving this Agreement ("Order"). The parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith. Consistent with the preceding sentence, the Committee will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion"). The Committee shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.  Expiration of the Tolling Agreements. In the event that the Court approves this Agreement, the Tolling Agreements shall expire when the Court enters its Order. In the event that the Court does not approve this Agreement, the terms of the Tolling Agreements shall be extended for a period of fifteen (15) days from the date of the entry of the Order, in which time the Committee may commence adversary proceedings against Raimondi and Jacques pursuant to Sections 547, 550 and 502(d) of the Bankruptcy Code.

4.  Compromise and Settlement. Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party. All communications (whether oral or in writing) between and/or among the parties to this Agreement, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

5.  Raimondi's Claim, Waivers and Releases.

a.  Raimondi shall have an allowable non-priority general unsecured claim in the amount of $400,000 (the "Raimondi Claim"). Notwithstanding anything to the contrary herein, Raimondi agrees that he shall not receive any distribution on account of the Raimondi Claim until all other holders of allowed non-priority general unsecured claims are paid in full on account of such claims.

b.  Subject to paragraph c below, Raimondi agrees to waive any and all proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which Raimondi might have, had or asserted against the Debtor, including, but not limited to his filed Proofs of Claims No. 45 and 258.

c.  Raimondi may continue to act as a consultant for the Debtor and to receive compensation for such services. In connection with Raimondi's services as a consultant to the Debtor, Raimondi agrees to discount an amount equal to $7,453.50 for its overage fees for the months of January 2010 and February 2010.

d.  Excepting only those claims and obligations arising under this Agreement, Raimondi hereby releases and forever discharges the Committee and the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every

2

nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

     e.    With respect to the releases provided above, Raimondi hereby knowingly, voluntarily and expressly waives any and all rights that Raimondi may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Raimondi acknowledges that he may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agrees that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

     f.    Raimondi agrees that he shall vote in favor of any plan of reorganization or liquidation that is either jointly proposed or supported by the Debtor and the Committee. In the event that Raimondi does not cast a ballot for such plan, the execution of this Agreement shall be counted and/or deemed as a vote in favor of such plan.

6.    <u>Jacques' Claim, Waivers and Releases.</u>

     a.    Jacques shall have no claim against the Debtor.

     b.    Jacques agrees to waive any and all proofs of claim or scheduled claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which Jacques might have, had or asserted against the Debtor.

     c.    Excepting only those claims and obligations arising under this Agreement, Jacques hereby releases and forever discharges the Committee and the Debtor, and their respective directors, officers, shareholders, agents, attorneys, representatives, employees, insurers, predecessors, successors, and assigns from any and all claims, demands, costs, liabilities, obligations, actions and causes of action of every nature, kind or description, whether legal or equitable, known or unknown, liquidated or unliquidated, contingent or non-contingent, suspected or unsuspected.

     d.    With respect to the releases provided above, Jacques hereby knowingly, voluntarily and expressly waives any and all rights that Jacques may have pursuant to Section 1542 of the California Civil Code, which reads as follows:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

3

Jacques acknowledges that she may hereafter discover facts different from or in addition to those now known or believed to be true with respect to the matters released hereunder, and agrees that this Agreement and the releases provided above shall remain effective in all respects notwithstanding the discovery or existence of any such different or additional facts.

7.   **Committee's Waivers.**   Subject to approval by the Bankruptcy Court, the Committee shall, and hereby does, waive and release any and all claims that it may hold against Raimondi and/or Jacques pursuant to Section 547 of the Bankruptcy Code. The foregoing waivers and releases shall not waive or release any other claim which the Debtor or the Committee may be able to assert against Raimondi and/or Jacques.

8.   Representations and Warranties.

a.   Representations and Warranties by the Committee. The Committee represents and warrants to each of Raimondi and Jacques that:

i.   Subject only to the approval of the Bankruptcy Court, the Committee has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Committee;

ii.   The execution, delivery and performance by the Committee of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Committee may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Committee is a party to which the Committee may be bound; and

iii.   The Committee has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.   Representations and Warranties by each of Raimondi and Jacques. Each of Raimondi and Jacques represents and warrants to the Committee that:

i.   Each of Raimondi and Jacques, respectively, has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of Raimondi and Jacques, respectively;

4

ii.      The execution, delivery and performance by Raimondi and Jacques, respectively, of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which Raimondi and Jacques, respectively, may be subject or any order, judgment or decree to which Raimondi and Jacques, respectively, may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which Raimondi and Jacques, respectively, is a party or by which Raimondi and Jacques, respectively, may be bound; and

iii.     Each of Raimondi and Jacques has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

9.     Payments/Continuing Rights and Obligations.   Notwithstanding any contrary provision in this Agreement, the Committee, Raimondi, and Jacques each acknowledge and agree that it will retain all of its respective rights, and perform all of its respective duties and obligations under this Agreement. All payments to be made pursuant to terms of this Agreement shall be made in accordance with the terms hereof and all applicable laws.

10.     No Assignment.   The Committee, Raimondi and Jacques represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.

11.     Intended Beneficiaries.   To the extent that this Agreement inures to the benefit of persons or entities not signatories hereto, such persons or entities shall be deemed to be intended beneficiaries and this Agreement is hereby declared to be made in and for their respective benefits and uses.

12.     Waivers and Amendments.   A provision of this Agreement may be waived only by a writing signed by the waiving party, and a provision may be amended only by a writing signed by all parties to this Agreement.

13.     Further Cooperation.   The parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

14.     Counterparts.   This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15.     Authority to Execute Agreement.   Each person whose signature appears hereon individually represents and warrants to all parties hereto that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf this Agreement is executed.

5

16.    Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

17.    Attorneys' Fees. Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the disputes referred to herein, all matters referred to in this Agreement, and any action or proceeding to enforce this Agreement.

18.    Interpretation. The parties acknowledge and agree that they all participated in drafting this Agreement. The parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

19.    Notices. All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective parties as follows:

If to the Committee:
        Richard H. Golubow, Esq.
        Winthrop Couchot Professional Corporation
        660 Newport Center Drive, Fourth Floor
        Newport Beach, California 92660
        Telephone No.: (949) 720-4100
        Facsimile No.: (949) 720-4111
        Email: rgolubow@winthropcouchot.com

If to Raimondi or Jacques:
        Thomas P. Raimondi
        Pamela A. Jacques
        164 Elkins Place
        Arcadia, California 91006
        Telephone No.: (626) 355-4864
        Email: tpraimondi@gmail.com; jacquespamela@gmail.com

Any party may notify the other party of a change of contact information by giving the other party written notice of the new contact information.

20.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

21.    Jurisdiction. Each of the parties to this Agreement consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

22.    Severability. In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

6

23.   Entire Agreement. This Agreement constitutes the complete, exclusive, and final agreement between the parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the parties hereto or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the parties to this Agreement relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.

IN WITNESS WHEREOF, the parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

OFFICIAL COMMITTEE OF
CREDITORS HOLDING
UNSECURED CLAIMS

BY: _____
    Richard H. Golubow, Esq.,
    Attorney for the Committee

Date: March 22, 2010


THOMAS P. RAIMONDI

BY: _____
    Thomas P. Raimondi.

Date: March 22, 2010


PAMELA A. JACQUES, INC., D/B/A
INDEPENDENT MARKETING

BY: _____
    Pamela A. Jacques

Date: March 22, 2010

1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2

# PROOF OF SERVICE OF DOCUMENT

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business
address is: 660 Newport Center Drive., 4th Fl., Newport Beach, CA 92660.

4

5

A true and correct copy of the foregoing document described as: **OMNIBUS MOTION OF
OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS FOR
ORDER APPROVING COMPROMISE OF CONTROVERSY WITH (1) WILLIAM
ATKINS, (2) AVNET, INC., (3) B. BRAUN MEDICAL, INC., (4) LAWRENCE BEGLEY,
(5) FRANZ CRISTIANI, (6) RONALD E. HEINZ, (7) MARSH RISK INSURANCE, (8)
MICHAEL PEHL, (9) STORWIZE, INC. AND (10) THOMAS P. RAIMONDI AND
PAMELA A. JACQUES, INC.; MEMORANDUM OF POINTS AND AUTHORITIES AND
DECLARATION OF RICHARD H. GOLUBOW IN SUPPORT THEREOF** will be served or
was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner indicated below:

6

7

8

9

10

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to
controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served
by the court via NEF and hyperlink to the document. On April 1, 2010 I checked the CM/ECF docket for this
bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic
Mail Notice List to receive NEF transmission at the email address(es) indicated below:

11

12

13

☒ Service information continued on attached page

14

15

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On April 1, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope
in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as
follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later
than 24 hours after the document is filed.

16

17

18

☒ Service information continued on attached page

19

20

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for
each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 1, 2010 I served
the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes
a declaration that personal delivery on the judge will be completed no later than 24 hours after the
document is filed.

21

22

23

☒ Service information continued on attached page

24

25

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true
and correct.

26

27

| April 1, 2010 | Susan Connor | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

28

## NEF SERVICE LIST

- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, klasky@gordonrees.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    pj@winthropcouchot.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com,
  salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@msn.com
- Robert E Opera    pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sweiss@richardsonpatel.com, bkdeptnef@richardsonpatel.com
- David L Wilson    dlwilson@winston.com

## SERVICE VIA E-MAIL

William Atkins - Email: atkins.w@gmail.com

Avnet, Inc. - Paul Kim, Esq.- Email: pkim@yocca.com

Lawrence Begley:  Email: lbegley@406ventures.com

Franz Cristiani - Email: fcristiani@sbcglobal.net

Ronald E. Heinz - Brent E. Johnson, Esq.- Email: bjohnson@hollandhart.com

Marsh & McLennan Companies, Inc. - Steven M. Monroe, Esq. - Email:
Steven.Monroe@MMC.com

Michael Pehl - Nina M. Varughese - Email: varughesen@pepperlaw.com

Storwize, Inc. - Gary Davis, Esq. - Email: gary.davis@commtouch.com; and

Raimondi or Jacques:  Thomas P. Raimondi, Pamela A. Jacques - Email:
tpraimondi@gmail.com; jacquespamela@gmail.com

1

2

**VIA FIRST CLASS MAIL**

3  B. Braun Medical Inc.
   Cathy Codrea, Esq.
4  General Counsel
   824 Twelfth Ave.
5  Bethlehem, Pennsylvania 18018-0027

6  Mary Henry, CFO
   Storwize, Inc.
7  225 Cedar Hill Street, Suite 200
   Marlborough, Massachusetts 01752

8
   MTI Technology Corporation
9  Attn: Thomas P. Raimondi, Jr., Pres. & CEO
   15641 Red Hill Avenue, Suite 200
10 Tustin, CA 92780

11 U.S. Trustee's Office
   Frank Cadigan, Esq.
12 411 West Fourth Street, #9041
   Santa Ana, CA 92701

13
   Committee Chair
14 EMC Corporation, FedEx Custom Critical
   Steven D. Sass, Esq.
15 c/o RMS
   307 International Circle, #270
16 Hunt Valley, MD 21030

17

18

19

20

21

22

23

24

25

26

27

28