1 | Scott C. Clarkson, Esq. (CA Bar No. 143271)
Eve A. Marsella, Esq. (CA Bar No. 165797)
2 | **Clarkson, Gore & Marsella, APLC**
3424 Carson Street, Suite 350
3 | Torrance, California 90503
Telephone: 310/542-0111
4 | Facsimile: 310/214-7254
Email: sclarkson@lawcgm.com
5 |
Attorneys for MTI Technology Corporation
6 | Debtor and Debtor-In-Possession

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10 | In re:                                           Case No. 8:07-bk-13347-ES

11 | MTI TECHNOLOGY CORPORATION,                       Chapter 11
A Delaware corporation,
12 |                                                  Adv. No. 8:09-01267-ES
Debtor and Debtor in Possession
13 |                                                  **NOTICE OF MOTION AND MOTION FOR
ORDER PURSUANT TO FED. R. BANKR. P.
14 |                                                  9019 APPROVING SETTLEMENT
AGREEMENT WITH EMC CORPORATION;
15 |                                                  DECLARATION OF SCOTT POTERACKI IN
SUPPORT THEREOF**
16 | MTI TECHNOLOGY CORPORATION,
A Delaware corporation                             [NO HEARING REQUIRED -
17 |                                                  Local Bankruptcy Rule 9013-1(o)]
                Plaintiff,
18 |        vs.

19 | EMC CORPORATION,
A Massachusetts corporation
20 |
                Defendant.
21

22 | EMC CORPORATION,
A Massachusetts corporation
23 |
                Counterclaimant,
24 |        vs.

25 | MTI TECHNOLOGY CORPORATION,
A Delaware corporation
26 |
                Counter-Defendant.
27

28

1  **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY**

2  **JUDGE, AND ALL PARTIES ENTITLED TO NOTICE:**

3      **PLEASE TAKE NOTICE** that MTI Technology Corporation, the above-captioned debtor

4  and debtor in possession ("MTI", the "Debtor" or the "Plaintiff"), hereby files with the Court its

5  Motion for an Order Pursuant to Fed. R. Bankr. P. 9019 Approving the Settlement Agreement

6  with EMC Corporation ("EMC" or "Defendant") (the "Motion").  Pursuant to Local Bankruptcy

7  Rule 9013-1(o), the Debtor is requesting that the Court approve the Motion without a hearing.

8      By this Motion, the Debtor requests the entry of an order pursuant to Federal Rule of

9  Bankruptcy Procedure 9019(a) approving the Settlement Agreement with EMC (the

10  "Agreement"), a true and correct copy of which is attached hereto as **Exhibit "A"**.

11      Under the terms of the Agreement, as more fully set forth in Exhibit "A", EMC will pay

12  the Debtor One Million Nine Hundred Thousand Dollars ($1,900,000.00)[1] and will withdraw all

13  of its claims against the MTI estate. The Agreement also contains full releases by both parties, and

14  includes releases of claims of and against the Official Committee of Unsecured Creditors, as to

15  any and other pre- and post petition claims.

16      The parties have engaged in good faith negotiations concerning the resolution of the

17  parties' claims. The Debtor urges the Court to approve the compromise memorialized in the

18  Agreement, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), as fair and equitable to all

19  parties and in the best interests of the Debtor's estate and creditors. The Motion is based upon this

20  Motion, the attached Memorandum of Points and Authorities and supporting Declaration, the

21  Agreement, the Court's files in this Chapter 11 case and upon such other evidence as may be

22  presented to the Court.

23  ///

24  ///

25  ///

---

26

27  [1] The Settlement Amount is allocated as follows: (i) for payment of unpaid pre-petition invoices
for services provided to EMC in the ordinary course of MTI's pre-petition business operations in
the amount of $1,000,000.00; (ii) for preference recovery in the amount of $500,000.00; and (iii)

28  for payment of finder's fees in the amount of $400,000.00.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1     **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(o)(1) requires

2 that any response and request for hearing must be filed with the Court and served on the movant

3 and the United States Trustee within 14 days after the date of service of the notice.

4 DATED: April ⁄ , 2010                CLARKSON, GORE & MARSELLA, APLC

5

6                                  By: _____
                                   Scott C. Clarkson

7                                  Eve A. Marsella
                                 Counsel for MTI Technology Corporation
                                 Debtor and Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

This Motion is the culmination of over one year of litigation between the Debtor and EMC Corporation, which may have been the single largest creditor of the Estate. Pursuant to a one-day mediation before the Honorable Mitchel Goldberg, United States Bankruptcy Judge, Ret., held in early March, 2010, the Debtor, EMC and the Official Committee of Unsecured Creditors (the "Committee") have resolved all of the differences between the parties.

**A.**    **Background**

On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES (the "Bankruptcy Case").

On or about November 7, 2007, EMC filed its Claim No. 48 in the amount of $4,823,532.05. On or about December 3, 2007, EMC filed its Claim No. 111 in the amount of $4,829,701.05, which amended Claim No. 48. On or about May 1, 2009, EMC filed its Claim No. 606 in the amount of $5,043,173.12, which amended its Claim No. 111 (collectively, the "EMC Claims").

On or about April 1, 2009, the Debtor filed a complaint (the "Complaint"), styled *MTI Technology Corporation v. EMC Corporation*, Adversary number 8:09-ap-01267-ES (the "Adversary Proceeding"). The Complaint alleged, *inter alia*, that EMC owed approximately $2,400,000 for unpaid subcontracting work performed on EMC's behalf (the "Subcontracting Invoices"), that EMC received certain alleged preferential transfers outside the ordinary course of business, that EMC owed the Debtor certain unpaid finder's fees, and that EMC owed certain refunds due to pre-paid maintenance contracts in the amount of approximately $633,000.

On or about May 29, 2009, the Defendant filed its answer (the "Answer") and Counterclaim ("Counterclaims") to the Complaint. The Answer disputes various contentions made in the Complaint and also alleges various affirmative defenses, including new value and

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  ordinary course of business defenses related to the Complaint's preference claims.  The

2  Counterclaims allege various pre- and post-petition obligations owed to EMC by the Debtor.

3       In the course of the litigation, the parties exchanged information and support for their

4  respective positions and undertook significant discovery efforts.

5       On March 4, 2010, the parties, with the participation of the Committee, engaged in a

6  mediation conducted by the Honorable Mitchel R. Goldberg, United States Bankruptcy Judge,

7  retired.

8       Through that mediation, the parties have reached a compromise and settlement involving

9  all matters regarding the Complaint, the Counterclaims, the EMC Claims, and all other related

10  matters.

11      **B.**    **The Agreement**

12       Attached hereto as Exhibit "A" is a true and correct copy of the Settlement Agreement (the

13  "Agreement") entered into between the Debtor and EMC, which has also been approved as to

14  form, and with respect to the related releases concerning the Committee, by the Committee.  A

15  summary of the terms of the Agreement follow; however, the terms and conditions of the actual

16  Agreement shall control all aspects of the settlement:

17      1.    <u>Bankruptcy Court Approval.</u>  The Agreement is contingent upon entry of a final,

18  non-appealable order of the Bankruptcy Court approving the Agreement ("Order").

19      2.    <u>Settlement Payment.</u>  The sum of One Million Nine Hundred Thousand Dollars

20  ($1,900,000.00) (the "Settlement Amount") shall be paid to the Debtor by EMC.  The Settlement

21  Amount shall be allocated as follows: (i) for payment of unpaid pre-petition invoices for services

22  provided to EMC in the ordinary course of the Debtor's pre-petition business operations in the

23  amount of $1,000,000.00; (ii) for preference recovery in the amount of $500,000.00; and (iii) for

24  payment of finder's fees in the amount of $400,000.00.  No other amounts will be paid to the

25  Debtor on behalf of any other claims the Debtor may hold against EMC.  The Settlement Amount

26  shall become due and payable within fifteen (15) days after the Order becomes final following its

27  entry by the Bankruptcy Court.

28

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

3.      <u>Bankruptcy Claims of EMC.</u>  The EMC Claims shall be disallowed in their entirety.  EMC further agrees to waive any and all other claims, proofs of claim, scheduled claims or administrative claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which EMC might have against the Debtor, including but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.  Within fifteen (15) days after the Order becomes final following its entry by the Bankruptcy Court, EMC shall withdraw with prejudice, each and all of the EMC Claims.

4.      <u>Dismissal of the Adversary Proceeding.</u>  Within ten (10) days after receipt of the Settlement Amount, the Debtor shall prepare and file an appropriate stipulation for execution by EMC to dismiss the Adversary Proceeding with prejudice.

5.      <u>Mutual Releases of all other claims by EMC, the Debtor and the Committee.</u> Except for claims and causes of action arising out of or related to a breach of the Agreement, EMC, the Debtor and the Committee shall release all claims among each other.

6.      <u>Attorneys' Fees.</u>  Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, and all matters referred to in the Agreement.  In the event that it should become necessary to bring any action or proceeding to enforce the Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs from the other party.

**II.**

**ARGUMENT**

**THE COURT SHOULD APPROVE THE COMPROMISE**

A.      <u>**The Legal Standard For Approving A Compromise Of**</u>

<u>**Controversy**</u>

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as follows with respect to motions brought by trustees to approve settlements:

> On motion by the trustee and after a hearing on notice to creditors,
> the United States Trustee, the debtor and indentured trustees as

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1    provided in Rule 2002 and as such other entities as the court may
2    designate, the court may approve a compromise or settlement.

3    Fed. R. Bankr. P. 9019(a).

4        As this Court is aware, compromise is favored over continued litigation.  See In re A&C

5    Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986);

6    In re Blair, 538 F.2d 849, 851 (9th Cir. 1976).  Generally, a compromise should be approved if it is

7    "fair and equitable" and in "the best interests of the estate".  In re Woodson, 839 F.2d 610, 620 (9th

8    Cir. 1988); In re Schmidt, 215 B.R. 417, 424 (9th Cir. BAP 1997); St. Paul Fire & Marine

9    Insurance Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Investment

10   Corp., 637 F.2d 8, 11 (1st Cir. 1980).  Whether a compromise will benefit or harm the debtor is

11   immaterial.

12       Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit

13   must consider the following:

14       (a)    The probability of success in litigation;

15       (b)    The difficulties, if any, to be encountered in the matter of collection;

16       (c)    The complexity of the litigation involved and the expense; inconvenience

17              and delay necessarily attending it; and

18       (d)    The paramount interest of the creditors and a proper deference to their

19              reasonable views.

20   A&C Properties, 784 F.2d at 1381.

21       In considering these factors, courts are guided by two principles.  First, as noted earlier,

22   "the law favors compromise".  Blair, 538 F.2d at 851.  Compromises are favored in bankruptcy,

23   and have become "a normal part of the process of reorganization".  Protective Committee for

24   Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct.

25   1157 (1968), quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).  Second,

26   a compromise should be approved unless it "fall[s] below the lowest point in the range of

27   reasonableness".  In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S.

28   822, 104 S. Ct. 88 (1985).  As the court in W.T. Grant aptly commented:

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

> [The] responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement 'fall[s]' below the lowest point in the range of reasonableness. . .

Id., at 608.

The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a chapter 7 trustee. To the contrary, a settlement which has been negotiated by a trustee, as representative of the estate, is entitled to deference. See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute their judgment for that of the trustee). Trustees are generally and properly given broad discretion in deciding how to perform the myriad of duties imposed upon them by the Bankruptcy Code, including the discretion to negotiate settlements and compromises of disputes. In re Marples, 266 B.R. 202 (Bankr. D. Idaho 2001). Moreover, when considering these factors, the court need only canvass the issues, "a mini trial on the merits is not required". Schmidt, 215 B.R. at 423.

In this instance, there are a variety of reasons why the Court should approve the settlement reached by the Debtor and EMC. As the Debtor will demonstrate, the application of the A&C Properties test to this settlement requires a finding that the compromises be approved, even over the objections of disappointed or upset parties.

For the following reasons, the Debtor submits that the settlement is in the best interests of the estate, and satisfies the criteria established by the Ninth Circuit in A&C Properties.

## 1.    The Probability of Success in Litigation

In reaching the settlement, the Debtor was forced to consider the probability of success in prosecuting its actions against EMC.

The Debtor's Complaint alleged, *inter alia*, that EMC owed approximately $2,400,000 for unpaid subcontracting work performed on EMC's behalf (the "Subcontracting Invoices"), that EMC received certain alleged preferential transfers outside the ordinary course of business in amounts exceeding $5,000,000, that EMC owed the Debtor certain unpaid finder's fees of over $400,000, and that EMC owed certain refunds due to pre-paid maintenance contracts in the amount of approximately $633,000.

1    EMC disputes the various contentions made in the Complaint and also alleges various

2    affirmative defenses, including new value and ordinary course of business defenses related to the

3    Complaint's preference claims.  EMC further alleged various pre- and post-petition obligations

4    (including an administrative claim of over $500,000) owed to EMC by the Debtor.  Further, EMC

5    raised the issue of set-off of alleged mutual pre-petition claims between the parties.

6    Based on the evidence at hand, the Debtor was confident that it could establish the

7    elements necessary to obtain a significant judgment against EMC on each of its claims.  However,

8    the Debtor was also mindful of (1) the evolution of the "ordinary course of business defense" both

9    in the Ninth Circuit and throughout the national bankruptcy judiciary[2], (2) the factual and legal

10   issues of set-off rights that were present in this case, and (3) the cost and time necessary to bring

11   the issues to trial before the Court.

12   In satisfying this first element of the four-part A&C Properties test, the burden is not on a

13   debtor in possession to conclusively establish that a defendant would be successful at a trial on the

14   issues raised in an action, as that would defeat the purpose of settlement and would eliminate any

15   cost savings from the settlement.  Rather, all that a debtor in possession is required to demonstrate

16   is that, to the reasonable satisfaction of the court, all things being considered, it is prudent to

17   eliminate the risks of litigation to achieve specific certainty, though it might be considerably less,

18   or more, than were the case fought to the bitter end.  See In re Aloha Racing Foundation, Inc., 257

19   B.R. 83 (Bankr. N.D. Ala. 2000).

20   In light of the fact that the Debtor will receive an immediate payment of $1,900,000 from

21   EMC, that EMC will withdraw and waive all of its claims (both administrative and general

22   unsecured) valued at more than $6,000,000, and that to accomplish the same result for the estate

23   would require a judgment at trial to be obtained of more than $5 million dollars, at considerably

---

[2] Before and during the mediation, with respect to the preference recovery claims, the Debtor was aware of the fact that EMC continued to provide a credit line of $12,000,000 to the Debtor, and appeared to have continued to work with the Debtor during the difficult period prior to the filing of the Petition.  Indeed, the Debtor believed that the preference recovery claims were one of its most challenging causes of actions, due to the recent evolution of ordinary course of business defenses.

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1    more legal expenses to the estate, it cannot be said that the Debtor has not acted in the best

2    interests of the estate. This settlement will benefit the estate and its creditors and will end a hotly

3    disputed matter.

4          **2.**      **The Difficulties, if any, to be Encountered in the Matter of**

5               **Collection**

6       Collection of a judgment is not relevant in these circumstances. EMC is an international

7    multi-billion dollar public company.

8          **3.**      **The Complexity of the Litigation and the Expense,**

9               **Inconvenience and Delay Necessarily Attending It**

10       The rationale behind public policy favoring pre-trial settlements is that litigation,

11    depending upon its complexity, can occupy a court's docket for years on end, depleting the

12    resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.

13    In a bankruptcy context, such litigation costs can be particularly burdensome on the bankruptcy

14    estate given the financial instability of the estate. See <u>In re Grau</u>, 267 B.R. 896 (Bankr. S.D. Fla.

15    2001).

16       Within the MTI – EMC controversy there were complex preference recovery issues that

17    would only be resolved by a significant trial before the Bankruptcy Court. First among these

18    issues was a highly complicated ordinary course of business defense standard that is present in the

19    Ninth Circuit. EMC raised the defense that the preference period payments from the Debtor to

20    EMC were not unusual and did not deviate from the normal business practices of the two

21    companies. Further, EMC alleged that its collection activities during the preference period were

22    not abnormal from its typical practices and operations.

23       On the other hand, the Debtor was prepared to demonstrate that the preference period

24    payments to EMC were significantly outside of the typical practices of the two companies,

25    including but not limited to the new practice of ignoring invoice dates and focusing only on credit-

26    stops, amounts owed and rigorous payment schedules of past-due amounts. Further, the Debtor

27    was prepared to demonstrate that EMC began a program of finder's fee and offsets with the

28    Debtor, arrangements that had never been made before the Debtor's nearing insolvency.

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California

1    Another claim for relief sought by the Debtor included the return of "pre-payments" for

2  future services that were not contractually characterized as "earned upon receipt". In response to

3  this claim, EMC countered with an administrative claim against the estate of approximately

4  $500,000.00, for alleged post-petition services that EMC regarded as beneficial to the estate. The

5  Debtor countered that the post-petition services were primarily for the benefit of EMC and its

6  customer base (and to general future customers, as well.)  These issues, highly fact-based, unless

7  settled would only be resolved in trial.

8    The Debtor alleged in its Complaint that EMC had failed to pay over $2.3 million in pre-

9  petition invoices; EMC countered that the Debtor owed over $4 million to EMC, and that a mutual

10  setoff was available pursuant to 11 U.S.C. §553.  However, as its standard practice during 2006

11  and 2007, the Debtor sold most of EMC invoices to Wells Fargo Bank, N.A., and EMC was

12  provided notice of this event on several occasions.  Further, EMC was sending direct payments to

13  Wells Fargo Bank, N.A.  It is the Debtor's position, therefore, that the pre-petition claims

14  between EMC and the Debtor were not mutual, and that significant case law was entirely

15  supportive of the Debtor's position.  Again, this matter was both factually and legally in dispute

16  and could only be resolved by the Bankruptcy Court unless settled.

17    This Adversary Proceeding has been pending on the Court's docket since January, 2009.

18  During this time, administrative legal fees and costs have continued to accrue, with no certainty

19  that at the end of the day there would be a significant ability for the estate to pay all priority

20  unsecured creditors or provide any significant distribution to general unsecured creditors.  As a

21  result, the Debtor's decision to settle with EMC to resolve these complicated matters will benefit

22  the estate and creditors alike.

23    **4.    The Paramount Interest of Creditors**

24    The paramount interest of creditors which a bankruptcy court must consider in deciding

25  whether to approve a proposed compromise generally reflects not only the desire of creditors to

26  obtain the maximum possible recovery, but also their competing desire that the recovery should

27  occur in the least amount of time and cost possible.  See Marples, supra.  Here, the estate was not

28  in the position to further fund lengthy and difficult litigation and still assure that priority unsecured

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  creditors would receive 100% of their claims.  Again, to achieve the same result as this settlement,

2  combining the amount to be paid ($1.9 million) and the EMC claims withdrawn or waived (over

3  $6 million), a judgment at trial against EMC of over $5 million would have been required to be

4  obtained and paid over.  This settlement clearly inures to the benefit of the Debtor's creditors.

5  **III.**

6  **CONCLUSION**

7         The Agreement presents fair and equitable compromises in the best interests of the

8  Debtor's estate.  Thus, the Debtor respectfully requests that the Court enter an order approving the

9  Agreement under Federal Rule of Bankruptcy Procedure 9019(a).

11  DATED: April __, 2010                          CLARKSON, GORE & MARSELLA, APLC

13                                                 By: _____
                                                       Scott C. Clarkson
14                                                     Eve A. Marsella
                                                       Counsel for MTI Technology Corporation
15                                                     Debtor and Debtor in Possession

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

### DECLARATION OF SCOTT POTERACKI

I, Scott Poteracki, declare:

1.      I am the CRO of MTI Technology Corporation, Debtor and Debtor in Possession ("MTI", the "Debtor" or the "Defendant") herein. I have either personal knowledge of the following facts or have gained such knowledge from my review of the Debtor's books and records, which are created, obtained and maintained in the ordinary course of business. If called as a witness, I would and could testify completely thereto.

2.      I submit this declaration in support of the motion for an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving the Settlement Agreement with EMC Corporation.

3.      On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES (the "Bankruptcy Case").

4.      On or about November 7, 2007, EMC filed its Claim No. 48 in the amount of $4,823,532.05. On or about December 3, 2007, EMC filed its Claim No. 111 in the amount of $4,829,701.05, which amended Claim No. 48.  On or about May 1, 2009, EMC filed its Claim No. 606 in the amount of $5,043,173.12, which amended its Claim No. 111 (collectively, the "EMC Claims").

5.      On or about April 1, 2009, the Debtor filed a complaint (the "Complaint"), styled *MTI Technology Corporation v. EMC Corporation*, Adversary number 8:09-ap-01267-ES (the "Adversary Proceeding").   The Complaint alleged, *inter alia*, that EMC owed approximately $2,400,000 for unpaid subcontracting work performed on EMC's behalf (the "Subcontracting Invoices"), that EMC received certain alleged preferential transfers outside the ordinary course of business, that EMC owed MTI certain unpaid finder's fees, and that EMC owed certain refunds due to pre-paid maintenance contracts in the amount of approximately $633,000.

6.      On or about May 29, 2009, the Defendant filed its answer (the "Answer") and Counterclaim ("Counterclaims") to the Complaint.  The Answer disputes various contentions made in the Complaint and also alleges various affirmative defenses, including new value-and

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  ordinary course of business defenses related to the Complaint's preference claims.  The

2  Counterclaims allege various pre- and post-petition obligations owed to EMC by MTI.

3        7.      In the course of the litigation, the parties exchanged information and support for

4  their respective positions and undertook significant discovery efforts.

5        8.      On March 4, 2010, the parties, with the participation of the Official Committee of

6  Creditors Holding Unsecured Claims (the "Committee"), engaged in a mediation conducted by the

7  Honorable Mitchel R. Goldberg, United States Bankruptcy Judge, retired.

8        9.      Through that mediation, the parties reached a compromise and settlement involving

9  all matters regarding the Complaint, the Counterclaims, the EMC Claims, and all related matters.

10  Attached hereto as Exhibit "A" is a true and correct copy of the Settlement Agreement, which has

11  also been approved as to form, and with respect to the related releases concerning the Committee,

12  by the Committee. A summary of the terms of the Agreement follow:

13        a.      Bankruptcy Court Approval.  The Agreement is contingent upon entry of a final,

14  non-appealable order of the Bankruptcy Court approving the Agreement ("Order").

15        b.      Settlement Payment.  The sum of One Million Nine Hundred Thousand Dollars

16  ($1,900,000.00) (the "Settlement Amount") shall be paid to Debtor by EMC.  The Settlement

17  Amount is allocated as follows: (i) for payment of unpaid pre-petition invoices for services

18  provided to EMC in the ordinary course of MTI's pre-petition business operations in the amount

19  of $1,000,000.00; (ii) for preference recovery in the amount of $500,000.00; and (iii) for payment

20  of finder's fees in the amount of $400,000.00.  No other amounts will be paid to the Debtor on

21  behalf of any other claims the Debtor may hold against EMC.  The Settlement Amount shall

22  become due and payable within fifteen (15) days after the Order becomes final following its entry

23  by the Bankruptcy Court.

24        c.      Bankruptcy Claims of EMC.  The EMC Claims shall be disallowed in their

25  entirety.  EMC further agrees to waive any and all other claims, proofs of claim, scheduled claims

26  or administrative claims, whether afforded administrative, secured, priority, non-priority or

27  general unsecured status, which EMC might have against the Debtor, including but not limited to

28  any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

3002(c)(3) to file a proof of claim for the Settlement Amount.  Within fifteen (15) days after the Order becomes final following its entry by the Bankruptcy Court, EMC shall withdraw with prejudice, each and all of the EMC Claims.

  d. <u>Dismissal of the Adversary Proceeding.</u>  Within ten (10) days after receipt of the Settlement Amount, the Debtor shall prepare and file an appropriate stipulation for execution by EMC to dismiss the Adversary Proceeding with prejudice.

  e. <u>Mutual Releases of all other claims by EMC, the Debtor and the Committee.</u> Except for claims and causes of action arising out of or related to a breach of the Agreement, EMC, the Debtor and the Committee release all claims among each other.

  f. <u>Attorneys' Fees.</u>  Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, and all matters referred to in the Agreement.  In the event that it should become necessary to bring any action or proceeding to enforce the Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs from the other party.

  10. Based upon the exercise of its business judgment, the Debtor has determined that approval of the Agreement is in the best interests of the Debtor's estate because it will avoid the cost of litigating a recovery action and claim objection, the best result for which is what is obtained in the attached Agreement.

  11. In reaching the settlement, the Debtor was forced to consider the probability of success in prosecuting its actions against EMC.  MTI's Complaint alleged, *inter alia*, that EMC owed approximately $2,400,000 for unpaid subcontracting work performed on EMC's behalf (the "Subcontracting Invoices"), that EMC received certain alleged preferential transfers outside the ordinary course of business in amounts exceeding $5,000,000, that EMC owed MTI certain unpaid finder's fees of over $400,000, and that EMC owed certain refunds due to pre-paid maintenance contracts in the amount of approximately $633,000.

  12. EMC disputes the various contentions made in the Complaint and also alleges various affirmative defenses, including new value and ordinary course of business defenses related to the Complaint's preference claims.  EMC further alleged various pre- and post-petition

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

1  obligations (including an administrative claim of over $500,000) owed to EMC by MTI.  Further,

2  EMC raised the issue of set-off of mutual pre-petition claims between the parties.

3      13.    Based on the evidence at hand, the Debtor was confident that it could establish the

4  elements necessary to obtain a significant judgment against EMC on each of its claims.  However,

5  the Debtor was also mindful of (1) the evolution of the "ordinary course of business defense" both

6  in the Ninth Circuit and throughout the national bankruptcy judiciary, (2) the factual and legal

7  issues of set-off rights that were present in this case, and (3) the cost and time necessary to bring

8  the issues to trial before the Court.

9      14.    In light of the fact that the Debtor will receive an immediate payment of $1,900,000

10  from EMC, that EMC will withdraw and waive all of its claims (both administrative and general

11  unsecured) valued at more than $6,000,000, and that to accomplish the same result for the estate

12  would require a judgment at trial, with an additional legal expense to the estate of over $300,000,

13  to be obtained of more than $5 million dollars, by settling, the Debtor has acted in the best interests

14  of the estate.  This settlement will benefit the estate and its creditors and will

15      15.    Within the MTI – EMC controversy there were complex preference recovery issues

16  that would only be resolved by a significant trial before the Bankruptcy Court.  First among these

17  issues was a highly complicated ordinary course of business defense standard that is present in the

18  Ninth Circuit.  EMC raised the defense that the preference period payments from the Debtor to

19  EMC were not unusual and did not deviate from the normal business practices of the two

20  companies. Further, EMC alleged that its collection activities during the preference period were

21  not abnormal from its typical practices and operations.

22      16.    On the other hand, the Debtor was prepared to advocate that the preference period

23  payments to EMC were significantly outside of the typical practices of the two companies,

24  including but not limited to the new practice of ignoring invoice dates and focusing only on credit-

25  stops, amounts owed and rigorous payment schedules of past-due amounts.  Further, the Debtor

26  was prepared to demonstrate that EMC began a program of finder's fee and offsets with the

27  Debtor, arrangements that had never been made before the Debtor's nearing insolvency.

28

**CLARKSON, GORE & MARSELLA, APLC**
Attorneys At Law
Torrance, California

17.     Another claim for relief sought by the Debtor included the return of "pre-payments" for future services that were not contractually characterized as "earned upon receipt". In response to this claim, EMC countered with an administrative claim against the estate of approximately $500,000.00, for alleged post-petition services that EMC regarded as beneficial to the estate. The Debtor countered that the post-petition services were primarily for the benefit of EMC and its customer base (and to general future customers, as well.) These issues, highly fact-based, unless settled would only be resolved in trial.

18.     The Debtor alleged in its Complaint that EMC had failed to pay over $2.3 million in pre-petition invoices; EMC countered that the Debtor owed over $3 million to EMC, and that a mutual setoff was available pursuant to 11 U.S.C. §553. However, as its standard practice during 2006 and 2007, the Debtor sold most of EMC invoices to Wells Fargo Bank, N.A., and EMC was provided notice of this event on several occasions. Further, EMC was sending direct payments to Wells Fargo Bank, N.A. It is the Debtor's position, therefore, that the pre-petition claims between EMC and the Debtor were not mutual, and that significant case law was entirely supportive of the Debtor's position. Again, this matter was both factually and legally in dispute and could only be resolved by the bankruptcy court unless settled.

19.     This adversary proceeding has been pending on the court's docket since January, 2009. During this time, administrative legal fees and costs have continued to run, with no certainty that at the end of the day there would be a significant ability for the estate to pay all priority unsecured creditors or provide any significant distribution to general unsecured creditors. As a result, the Debtor's decision to settle with EMC put an end to these complicated matters will benefit the estate and creditors alike.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on April 1, 2010, at Tustin, California.

_____
Scott Poteracki

CLARKSON, GORE & MARSELLA, APLC
Attorneys At Law
Torrance, California

17

EXHIBIT "A"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is entered into as of the first date upon which this Agreement is fully executed by all parties (the "Effective Date"), by and between (i) Plaintiff MTI Technology Corporation, Debtor and Debtor in Possession (the "Debtor" or "Plaintiff") and (ii) EMC Corporation (EMC" or "Defendant"). The Plaintiff and the Defendant are together referred to herein as the "Parties".

## RECITALS

A.    On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES (the "Bankruptcy Case").

B.    On or about November 7, 2007, EMC filed its Claim No. 48 in the amount of $4,823,532.05; on or about December 3, 2007, EMC filed its Claim No. 111 in the amount of $4,829,701.05, which amended Claim No. 48; on or about May 1, 2009, EMC filed its Claim No. 606 in the amount of $5,043,173.12, which amended its Claim No. 111 (collectively, the "EMC Claims").

C.    On or about April 1, 2009, the Plaintiff filed a complaint (the "Complaint"), styled *MTI Technology Corporation v. EMC Corporation*, Adversary number 8:09-ap-01267-ES (the "Adversary Proceeding").    The Complaint alleged, *inter alia*, that EMC owed approximately $2,400,000 for unpaid subcontracting work performed on EMC's behalf (the "Subcontracting Invoices"), that EMC received certain alleged preferential transfers outside the ordinary course of business, that EMC owed MTI certain unpaid finder's fees, and that EMC owed certain refunds due to pre-paid maintenance contracts in the amount of approximately $633,000.

D.    On or about May 29, 2009, the Defendant filed its answer (the "Answer") and Counterclaim ("Counterclaims") to the Complaint.  The Answer disputes various contentions made in the Complaint and also alleges various affirmative defenses, including new value–and ordinary course of business defenses related to the Complaint's preference claims.    The Counterclaims allege various pre- and post-petition obligations owed to EMC by MTI.

E.    In the course of the litigation, the Parties exchanged information and support for their respective positions, and undertook significant discovery efforts.

F.    March 4, 2010, the Parties, with the participation of the Official Committee of Creditors Holding Unsecured Claims (the "Committee") in the Bankruptcy Case, engaged in a mediation conducted by the Honorable Mitchel R. Goldberg, United States Bankruptcy Judge, Retired.  Through that mediation, the Parties have reached a compromise and settlement involving all matters regarding the Complaint, the Counterclaims, the EMC Claims, and all related matters.  To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendant have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all disputes between the Parties.

NOW, THEREFORE, in consideration of the above-mentioned recitals and the mutual covenants herein, the Parties stipulate and agree as follows:

AGREEMENT

1.    <u>Recitals</u>.  The foregoing recitals are incorporated herein by reference.

2.    <u>Order Approving Settlement Agreement</u>.  This Agreement is contingent upon entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement ("Order").  The Parties will in good faith exercise all reasonable efforts required to obtain the entry of the Order, including executing and delivering any motions, declarations or other items of support reasonably required in connection therewith.  Consistent with the preceding sentence, the Plaintiff will promptly prepare a motion to approve compromise of controversy pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Motion").  The Plaintiff shall file the Motion with the Bankruptcy Court and serve the Motion upon those parties entitled to notice thereof.

3.    <u>Compromise and Settlement</u>.  Nothing in this Agreement or any negotiations or proceedings in connection therewith shall constitute or be deemed or claimed to be evidence of an admission of any liability by any party, or of the merit or lack of merit of any claim or defense of any party.  All communications (whether oral or in writing) between the Parties, their counsel and/or their respective representatives relating to, concerning or in connection with this Agreement, or the matters covered herein, shall be governed and protected in accordance with Federal Rule of Evidence 408 to the fullest extent permitted by law.

4.    <u>Settlement Payment</u>.  The sum of One Million Nine Hundred Thousand Dollars ($1,900,000.00) (the "Settlement Amount") shall be paid to MTI Technology Corporation, Debtor and Debtor in Possession, by EMC.  The Debtor allocates the Settlement Amount as follows: (i) for payment of unpaid pre-petition invoices for services provided to EMC in the ordinary course of MTI's pre-petition business operations in the amount of $1,000,000.00; (ii) for preference recovery in the amount of $500,000.00; and (iii) for payment of finder's fees in the amount of $400,000.00.  No other amounts will be paid to the Plaintiff on behalf of any other claims Plaintiff may hold against Defendant.  The Settlement Amount shall become due and payable within fifteen (15) days after the Order becomes final following its entry by the Bankruptcy Court; such sum shall be wire transferred within that fifteen (15) day time period to the *Clarkson, Gore & Marsella a Professional Law Corporation Trustee for MTI Technology Corporation Client Trust Account* (the "CGM MTI Client Trust Account").  Wire Instructions for the CGM MTI Client Trust Account shall be transmitted by Plaintiff to Counsel for the Defendant concurrently with the signature of the Plaintiff approving this Settlement Agreement.

5.    <u>Claims of Defendant</u>.  The EMC Claims shall be disallowed in their entirety.  The Defendant further agrees to waive any and all other claims, proofs of claim, scheduled claims or administrative claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendant might have against the Debtor, including but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.  Within fifteen (15) days after the Order becomes final following its entry by the Bankruptcy Court, EMC shall withdraw with prejudice, each and all of the EMC Claims.

6.      Dismissal of The Adversary Proceeding.  Within ten (10) days after receipt of the Settlement Amount, the Plaintiff shall prepare and file an appropriate stipulation for execution by the Defendant to dismiss the Adversary Proceeding with prejudice.

7.      Release of Claims by EMC.  Except for claims and causes of action arising out of or related to a breach of this Agreement, EMC, on behalf of itself and its predecessors, successors and assigns, hereby absolutely, fully and forever releases, waives, acquits and discharges the Debtor, the Committee, the Debtor's estate and any predecessor, successor and assign of each of them (collectively, "Debtor Entities"), from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that EMC has, may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving the Debtor, existing or occurring prior to the date of this Agreement, including, without limitation, the EMC Claims, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.  The foregoing release of claims by EMC shall extend to each and every past and present officer, director, member, agent, attorney and employee of a Debtor Entity for acts or omissions made by them in such capacity.

8.      Release of Claims by the Debtor, the Committee and the Estate.  Except for claims and causes of action arising out of or related to a breach of this Agreement, the Debtor, for itself and for the estate and the Committee, on behalf of themselves and their respective predecessors, successors and assigns, hereby absolutely, fully and forever release, waive, acquit and discharge EMC and any predecessor, successor or assign of EMC, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that they may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving EMC, existing or occurring prior to the date of this Agreement, including, without limitation, all claims raised in the Complaint, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.  The foregoing release of claims by the Debtor and the Committee shall extend to each and every past and present officer, director, agent, attorney and employee of EMC for acts or omissions made by them in such capacity.

9.      Waiver of Civil Code Section 1542 and Scope of Releases. Each of the Parties acknowledges the fact that it is its intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of and as a bar to each such claim, cause of action, suit, debt, lien, encumbrance, security interest, interest, obligation, liability, demand, damage, charge, account, loss, cost and expense of every kind or nature whatsoever, heretofore referred to

and released, which Defendant, on one hand, and the Debtor, the Committee and the estate on the other hand, have had, have, or may have against each other. In connection with such release, each Party acknowledges that it is aware that it or its attorneys may hereafter discover facts different from or in addition to the facts which it or its attorneys now know or believe to be true with respect to the subject matters of this Agreement and that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever settle any and all claims which do now exist, may exist or heretofore have existed among the Parties in accordance with the terms and conditions hereof, and that, in furtherance of such intention, the releases herein given shall be and shall remain in effect for all time as full and complete mutual releases notwithstanding the discovery of any such different or additional facts or of any such additional damages, costs or expenses. Therefore, each Party acknowledges that it is familiar with, and waives the protections of, Section 1542 of the Civil Code of the State of California, which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

10.    No Rescission or Termination. As a part of the foregoing releases, each of the Parties acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true. From and after the Effective Date of this Agreement, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Agreement, and the releases given hereunder, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement

11.    Covenants Not to Sue. The Parties covenant and agree not to commence against each other any action or proceeding of any nature whatsoever with respect to any of the claims hereby released. The Parties hereby further covenant and agree not to join in or to participate in any action or proceeding based upon, arising out of or relating to the claims hereby released.

12.    Representations and Warranties.

a.    Representations and Warranties by the Plaintiff. The Plaintiff represents and warrants to the Defendant that:

i.    Subject only to the approval of the Bankruptcy Court, the Plaintiff has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the Plaintiff;

ii.      The execution, delivery and performance by the Plaintiff of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require any consent, approval (other than approval of the Bankruptcy Court), authorization, exemption or waiver, violate any provision of any law, rule, regulation or any order, judgment or decree to which the Plaintiff may be subject; or conflict with, or result in, a breach or default under any term or condition of any agreement or instrument to which the Plaintiff is a party to which the Plaintiff may be bound; and

iii.      The Plaintiff has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

b.      Representations and Warranties by the Defendant.    The Defendant represents and warrants to the Plaintiff that:

i.      The Defendant has all requisite power and authority to execute, deliver and perform this Agreement and the transactions contemplated herein and the execution, delivery and performance by it of this Agreement and the consummation of the transactions contemplated herein have been duly authorized on the part of the Defendant;

ii.      The execution, delivery and performance by the Defendant of this Agreement and the consummation of the transactions contemplated herein will not, with or without the giving of notice or the lapse of time, or both, require consent, approval, authorization, exemption or waiver, violate any provision of law, rule or regulation to which the Defendant may be subject or any order, judgment or decree to which the Defendant may be subject, or conflict with, or result in, a breach or default under, any term or condition of any agreement or instrument to which the Defendant is a party or by which the Defendant may be bound; and

iii.      The Defendant has freely and voluntarily entered into this Agreement and has been fully advised by its attorneys concerning its rights and has further been advised by its attorneys as to the terms and effects of this Agreement.

13.      <u>No Assignment</u>.  The Plaintiff and the Defendant represent and warrant to each other that such party is the only person or entity who, to its knowledge, has any interest in any claims, causes of action, costs or demands herein released and that none of such claims, causes of action, costs or demands, nor any part thereof, have been assigned, granted or transferred in any way to any person, persons, entity or entities.  Without limiting the generality of the preceding sentence, the Debtor further represents and warrants that it has all necessary right and power to release and settle all claims relating to the Subcontracting Invoices.

14.    <u>Intended Beneficiaries; Successors and Assigns</u>.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto (including the bankruptcy estate of the Debtor and all estate representatives) and their respective successors and assigns.  It is not intended to inure to the benefit of any other party.

15.    <u>Waivers and Amendments</u>.  A provision of this Agreement may be waived only by a writing signed by the waiving Party, and a provision may be amended only by a writing signed by both Parties.

16.    <u>Further Cooperation</u>.  The Parties agree to take such further acts and execute such additional documents as may be necessary or appropriate to carry out the provisions and purposes of this Agreement.

17.    <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, including facsimile counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

18.    <u>Authority to Execute Agreement</u>.  Each person whose signature appears hereon individually represents and warrants to the other Party that he or she has been duly authorized, and has full authority, to execute this Agreement on behalf of the entity on whose behalf he or she executed this Agreement

19.    <u>Attorneys' Fees</u>.  Each Party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, and all matters referred to in this Agreement.  In the event that it should become necessary to bring any action or proceeding to enforce this Agreement, the prevailing Party shall be entitled to recover its reasonable legal fees and costs from the other Party.

20.    <u>Interpretation</u>.  Both Parties acknowledge and agree that they participated in drafting this Agreement.  The Parties therefore agree that any statutory provision or rule of law providing for the interpretation of an instrument against the drafting party shall not be applicable to this Agreement.

21.    <u>Notices</u>.  All notices under this Agreement shall be in writing and shall be effective upon receipt whether delivered by personal delivery or recognized overnight delivery service, facsimile, e-mail, or sent by United States registered or certified mail, return receipt requested, postage prepaid, addressed to the respective Parties as follows:

If to the Plaintiff:
    Scott C. Clarkson, Esq.
    Clarkson, Gore & Marsella, APLC
    3424 Carson Street, Suite 350
    Torrance, CA 90503
    Telephone No.: (310) 542-0111
    Facsimile No.: (310) 214-7254
    Email: sclarkson@lawcgm.com

If to the Defendant:
    Paul Dacier
    Executive Vice President and General Counsel
    EMC Corporation
    176 South Street
    Hopkinton, MA 01748
    Telephone No.: (508) 435-1000
    Facsimile No.: (508) 497-6915
    Email: dacier_paul@emc.com

Either Party may notify the other of a change of contact information by giving the other Party written notice of the new contact information.

22.    <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of California.

23.    <u>Jurisdiction</u>.  Each of the Parties consents to the exclusive jurisdiction of the Bankruptcy Court as to any litigation or dispute that arises from or relates to this Agreement or any breach thereof.

24.    <u>Severability</u>.  In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the parties.

25.    <u>Entire Agreement</u>.  This Agreement constitutes the complete, exclusive, and final agreement between the Parties concerning the subject matter hereof, and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Parties or any of their agents, shareholders, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement.  The Parties acknowledge that they have not relied on any representations, inducements, promises, agreements, or warranties, oral or otherwise, which are not expressly embodied in this Agreement.  Rather, the Parties relied entirely upon their own judgment, beliefs and interest and the advice of their own counsel, and had a reasonable period of time to consider this Agreement.  For the avoidance of doubt, this Agreement does not affect the obligations of the parties under that certain Confidentiality Agreement entered into by MTI, EMC and the Committee, which obligations shall remain in full force and effect.

IN WITNESS WHEREOF, the Parties to this Agreement have read, understood and agreed to the terms of this Agreement, and have voluntarily executed the Agreement as of the dates set forth below by and through their undersigned and duly authorized representatives.

[Signatures follow, next page]

**MTI TECHNOLOGY CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION**

BY: _____
    Scott Poteracki, Chief Reorganization
Officer, MTI Technology Corporation

Date:  April _____ , 2010

**EMC CORPORATION**

BY: _____
    Gregory Maxmanian, Senior Director
Global Credit

Date: April __1__, 2010

Approved as to form and as to the releases
contained in paragraphs 7 and 8 hereof:

**THE OFFICIAL COMMITTEE OF
CREDITORS HOLDING UNSECURED
CLAIMS**

BY: _____
    John Cronin, Designated Representative
for the Official Committee of Creditors Holding
Unsecured Claims

Date:  April____, 2010

MTI TECHNOLOGY CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION

EMC CORPORATION

BY: _____
      Scott Poteracki, Chief Reorganization
Officer, MTI Technology Corporation

BY: _____
      Gregory Mazmanian, Senior Director
Global Credit

Date:  April ____ , 2010

Date:April ____ , 2010

Approved as to form and as to the releases
contained in paragraphs 7 and 8 hereof:

THE OFFICIAL COMMITTEE OF
CREDITORS HOLDING UNSECURED
CLAIMS

BY: _____
_____
For the Official Committee of Creditors
Holding Unsecured Claims

Date:  _____, 2010

266911v1

LA:267674.3

**MTI TECHNOLOGY CORPORATION,
DEBTOR AND DEBTOR IN POSSESSION**

**EMC CORPORATION**

BY: _____

    Scott Poteracki, Chief Reorganization
Officer, MTI Technology Corporation

Date: April _____ , 2010

BY: _____

    Gregory Mazmanian, Senior Director
Global Credit

Date:April _____ , 2010

Approved as to form and as to the releases
contained in paragraphs 7 and 8 hereof:

**THE OFFICIAL COMMITTEE OF
CREDITORS HOLDING UNSECURED
CLAIMS**

BY: _____

    John Cronin, Designated Representative
for the Official Committee of Creditors Holding
Unsecured Claims

Date:  April  2, 2010

| In re:<br>MTI Technology Corporation<br><br>Debtor(s). | CHAPTER: 11<br>CASE NUMBER: 8:07-bk-13347-ES<br><br>ADV. NO. 8:09-ap-01267-ES |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3424 Carson St. Suite 350, Torrance, CA 90503

A true and correct copy of the foregoing document described **NOTICE OF MOTION AND MOTION FOR ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING SETTLEMENT AGREEMENT WITH EMC CORPORATION; DECLARATION IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 2, 2010** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

### See attached service list

☒ Service information continued on attached page

**II.** **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **April 2, 2010** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

### See attached service list

☒ Service information continued on attached page

**III.** **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 2, | Michelle A. Carpenter | _MAC_ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          **F 9013-3.1**

## SERVICE LIST
### Motion for Order Pursuant to 9019 Approving settlement

**Served By Court Via NEF**

**Counsel for Creditor Committee**
Robert E Opera    pj@winthropcouchot.com

**Counsel for Canopy**
Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com

**United States Trustee**
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**Counsel for EMC Corporation**
David L Wilson    dlwilson@winston.com

**Also served on**

John O Campbell    ocampbell@houser-law.com

Jeffrey D Cawdrey    jcawdrey@gordonrees.com, klasky@gordonrees.com

Scott C Clarkson    sclarkson@lawcgm.com

Robert L Eisenbach    reisenbach@cooley.com

Christine M Fitzgerald    cfitzgerald@lawcgm.com

Matthew A Gold    courts@argopartners.net

Richard H Golubow    pj@winthropcouchot.com

Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com

Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com

Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com

Alexandra Kazhokin    akazhokin@buchalter.com,
salarcon@buchalter.com;ifs_filing@buchalter.com

Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com

Adam A Lewis    alewis@mofo.com

Eve A Marsella    emarsella@lawcgm.com

Elmer D Martin    elmermartin@msn.com

Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com

Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com

Mark A Shaiken    mshaiken@stinson.com

1

Patricia B Tomasco    ptomasco@mailbmc.com

Michael A Wallin    mwallin@sheppardmullin.com

Gilbert B Weisman    notices@becket-lee.com

Sharon Z Weiss    sweiss@richardsonpatel.com, bkdeptnef@richardsonpatel.com

**Mail Notice**

**The Debtor**
MTI Technologies Inc.
Scott Poteracki
15641 Red Hill Avenue, Suite 200
Tustin, CA 92780

**Creditor Committee**
Richard Feferman
Corporate Recovery Associates
3830 Valley Center Drive, Suite 705-152
San Diego, CA 92130

**Interested person**
Kerry Peterson
Miller, Egan, Molter & Nerlson, LLP
4514 Cole Ave., Ste. 1250
Dallas, TX 75205

**Judge**
Hon. Erithe A. Smith
United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593