1  Scott C. Clarkson, Esq. (CA Bar No. 143271)
   Eve A. Marsella, Esq. (CA Bar No. 165797)
2  Clarkson, Gore & Marsella, APLC
   3424 Carson Street, Suite 350
3  Torrance, California 90503
   Telephone: 310/542-0111
4  Facsimile: 310/214-7254
   Email: sclarkson@lawcgm.com
5
   Attorneys for Debtor and Debtor-in-Possession
6  MTI Technology Corporation

7  ROBERT E. OPERA – State Bar No. 101182
   ropera@winthropcouchot.com
8  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
9  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
10 Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
11
12 Attorneys for the Official Committee of Unsecured
   Creditors
13

*(left margin, vertical)* CLARKSON, GORE & MARSELLA, APLC ATTORNEY AT LAW TORRANCE, CALIFORNIA

14              **UNITED STATES BANKRUPTCY COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16                   **SANTA ANA DIVISION**

17

18 In re:                          | Case No.: 8:07-13347-ES

19 MTI TECHNOLOGY CORPORATION,      | Chapter 11
   A Delaware corporation,
20                                  | **DEBTOR'S AND COMMITTEE'S JOINT**
            Debtor and             | **THIRD AMENDED DISCLOSURE**
21          Debtor in Possession    | **STATEMENT DESCRIBING DEBTOR'S AND**
                                    | **COMMITTEE'S JOINT THIRD AMENDED**
22                                  | **CHAPTER 11 PLAN**

23                                  | Disclosure Statement Hearing
                                    | Date:    May 20, 2010
24                                  | Time:    10:30 a.m.
                                    | Place:   Courtroom 5A
25                                  |          411 West Fourth Street
                                    |          Santa Ana, CA 92701-4593
26

27

28

## TABLE OF CONTENTS

                                                                                    **Page**

I.     INTRODUCTION ................................................................................................... 2

II.    DEFINITIONS AND RULES OF CONSTRUCTION ........................................... 7
       A.    Defined Terms. ............................................................................................ 7
       B.    Rules of Interpretation. ............................................................................. 23
       C.    Exhibits .................................................................................................... 23

III.   OVERVIEW OF THE CHAPTER 11 PROCESS, THE PLAN AND
       VOTING ON THE PLAN ..................................................................................... 24
       A.    The Chapter 11 Process. ........................................................................... 24
       B.    Overview of the Plan Proponents' Proposed Plan. .................................. 25
       C.    Plan Confirmation and Voting and Objections to the Plan. ..................... 26
             1.    Voting on the Plan ......................................................................... 26
             2.    Deadline for Voting for or Against the Plan ................................. 27
             3.    Time and Place of the Confirmation Hearing ............................... 27
             4.    Deadline for Objecting to the Confirmation of the Plan .............. 27
             5.    Plan Confirmation ......................................................................... 28
             6.    Identity of Persons to Contact for More Information
                   Regarding this Disclosure Statement or the Plan ......................... 29

IV.    BACKGROUND OF THE DEBTOR ................................................................... 30
       A.    Description and History of the Debtor's Business. .................................. 30
             1.    European Subsidiaries .................................................................... 30
             2.    Collective ....................................................................................... 30
             3.    Domestic Sales and Service Division ............................................ 30
       B.    Corporate History. .................................................................................... 32
       C.    Events Precipitating the Debtor's Bankruptcy Filing. ............................. 32
       D.    Management of the Debtor Before and After the Petition Date. ............... 33
             1.    Prior to the Petition Date .............................................................. 32
                   a.    Key Managers ..................................................................... 32
                   b.    Corporate Directors ............................................................ 32
             2.    After the Petition Date ................................................................... 33
                   a.    Scott Poteracki .................................................................... 33
                   b.    Thomas P. Raimondi, Jr. .................................................... 33
                   c.    Todd Schaeffer .................................................................... 33
       E.    Events Leading to the Debtor's Chapter 11 Filing. .................................. 34
             1.    Delay in Closing of Sale of European Subsidiaries ...................... 33
             2.    Disputes with EMC ........................................................................ 33
             3.    Problems with Sales Force ............................................................. 34
             4.    Canopy ........................................................................................... 34
       F.    Significant Events During the Case. ......................................................... 35
             1.    Case Administration ....................................................................... 34
                   a.    Omni ................................................................................... 34
                   b.    Rejection of Leases ............................................................ 35
             2     First-Day Motions and Early Case Motions ................................. 35
             3.    Asset Sale Procedures Motion for European Subsidiaries ............ 35
             4.    Sale Motion .................................................................................... 36
             5.    Post-Petition Financing ................................................................. 36

## TABLE OF CONTENTS

### (CONTINUED)

Page

6. Sale of Various United States Assets ........................................................ 36
    a. Collective ....................................................................................... 36
    b. Furniture and Equipment Auction ................................................ 37
    c. National Customer Engineering, Inc. ........................................... 37
7. The Debtor's Secured Creditors as of the Petition Date .......................... 38
    a. Wells Fargo Facility ...................................................................... 38
    b. The Canopy Facility. ..................................................................... 39
8. Accounts Receivable Collection/Litigation with Lenox .......................... 40
    a. Accounts Receivable ..................................................................... 40
    b. Lenox ............................................................................................. 40
    c. Rockwell. ...................................................................................... 40
9. Employment of Professionals .................................................................. 41

V. LITIGATION AND OBJECTIONS TO CLAIMS ............................................. 42
    A. Litigation Commenced Prior to the Petition Date ................................... 42
    B. Litigation Commenced After the Petition Date. ...................................... 43
        1. Litigation .................................................................................. 42
            a. EMC .............................................................................. 42
            b. Pencom Defendants ....................................................... 43
            c. FusionStorm. ................................................................. 43
        2. Claims Objections .................................................................... 44
        3. Subordination Actions .............................................................. 45

VI. DESCRIPTION OF THE PLAN ...................................................................... 46
    A. Basic Structure of the Plan. ..................................................................... 46
    B. Classification and Treatment of Claims. .................................................. 47
    C. Unclassified Claims. ................................................................................ 48
        1. Allowed Administrative Claims ............................................... 47
            a. Payment ......................................................................... 47
            b. Administrative Claims Bar Date. .................................. 47
            c. Deadline for Objections. ............................................... 48
            d. United States Trustee Fees. ........................................... 48
            e. Pre-Effective Date Professional Fee Claims. ............... 48
        2. Priority Tax Claims .................................................................. 49
    D. Classification of Claims and Interests Under the Plan. ........................... 50
        1. Overview .................................................................................. 49
        2. Designation of Classes ............................................................. 50
            a. Allowed Claims ............................................................. 50
            b. Interests. ....................................................................... 50
        3. Summary of Classification ....................................................... 50

VII. TREATMENT OF CLASSES UNDER THE PLAN ...................................... 53
    A. Class 1 -- Any Allowed Secured Claims. ................................................ 53
        1. Treatment of Allowed Secured Claims ..................................... 51
            a. Option 1 ......................................................................... 52
            b. Option 2 ......................................................................... 52
            c. Option 3 ......................................................................... 52
            d. Option 4. ........................................................................ 52

# TABLE OF CONTENTS

## (CONTINUED)

<div align="right">

**Page**
</div>

| | | |
|---|---|---|
| B. | Class 2 -- Allowed Priority Non-Tax Claims. | 54 |
| C. | Class 3 -- Allowed General Unsecured Claims. | 54 |
| | 1. Pro Rata Distribution of Plan Fund Proceeds | 53 |
| | 2. Timing of Distributions | 53 |
| | 3. Postpetition Interest | 54 |
| | 4. Conditions to Distributions | 54 |
| | 5. Distribution of Post-Effective Date Stock | 55 |
| | 6. Limitation on Distributions | 55 |
| D. | Class 4 -- Canopy Claim. | 57 |
| E. | Class 5 -- Allowed Subordinated Claims. | 57 |
| | 1. Pro Rata Distribution of Plan Fund Proceeds | 56 |
| | 2. Timing of Distributions | 56 |
| | 3. Postpetition Interest | 57 |
| | 4. Conditions to Distributions | 57 |
| | 5. No Distribution of Post-Effective Date Stock | 57 |
| | 6. Limitation on Distributions | 58 |
| F. | Class 6 -- Allowed Interests. | 59 |
| | 1. Cancellation of Interests | 58 |
| | 2. No Voting on Plan | 58 |
| | 3. Allowed Interests | 58 |
| VIII. | MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN | 61 |
| A. | Overview. | 61 |
| B. | Condition Precedent to Plan Confirmation. | 61 |
| C. | Conditions Precedent to the Effectiveness of the Plan. | 61 |
| D. | Implementation of Plan. | 62 |
| E. | Corporate Action. | 63 |
| F. | Plan Agent/Vesting of Assets. | 63 |
| | 1. Employment of Plan Agent | 61 |
| | 2. Transfer of Assets | 61 |
| | 3. Disposition of Plan Assets | 62 |
| G. | Termination of Debtor's Officers, Directors, Employees and Professionals | 64 |
| H. | Plan Fund Proceeds/Plan Administration. | 64 |
| | 1. Distribution of Plan Fund Proceeds | 62 |
| | 2. Plan Agent's Implementation of Plan | 63 |
| | 3. Representative of Estate | 63 |
| | 4. Plan Agent Disclosure | 63 |
| | 5. No Liability of Post-Effective Date Committee, the Plan Agent or the Reorganized Debtor. | 64 |
| | 6. Funding of Post-Effective Date Plan Expenses | 64 |
| I. | Termination of the Committee and Appointment of the Post-Effective Date Committee. | 66 |
| | 1. Replacement of the Committee | 65 |
| | 2. Members of Post-Effective Date Committee | 65 |
| | 3. Duties of Members of Post-Effective Date Committee | 65 |
| J. | The Reorganized Debtor. | 67 |
| | 1. Corporate Powers | 66 |
| | 2. Board of Directors | 66 |

# TABLE OF CONTENTS

## (CONTINUED)

|  |  |  |  | Page |
|---|---|---|---|---|
| | 3. | Officer of the Reorganized Debtor | | 66 |
| | 4. | Effectuation of Merger Transaction | | 67 |
| K. | Causes of Action. | | | 69 |
| L. | Post-Effective Date Professional Fees. | | | 69 |
| M. | Approval for Disposition of Plan Assets. | | | 70 |
| N. | Compromise of Controversies. | | | 70 |
| O. | Bankruptcy Court Approval Relative to Post-Confirmation Matters. | | | 71 |
| P. | Plan Agent Certification. | | | 71 |
| Q. | Final Decree. | | | 71 |
| R. | Merger Transaction. | | | 71 |
| | 1. | Background. | | 70 |
| | 2. | Merger Consummation Date | | 70 |
| | 3. | Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized Debtor | | 70 |
| | 4. | Terms of any Merger | | 71 |
| | 5. | Valuation of Post-Effective Date Stock | | 71 |
| | 6. | Election Not to Receive Post-Effective Date Stock | | 72 |
| S. | Distributions. | | | 74 |
| | 1. | Designation and Role of the Disbursing Agent | | 72 |
| | | a. | Plan Agent to Serve as Disbursing Agent | 72 |
| | | b. | No Bond | 72 |
| | | c. | Payment of Fees and Expenses of Disbursing Agent | 72 |
| | | d. | Employment of Agents | 73 |
| | 2. | Distribution of Property Under the Plan | | 73 |
| | | a. | Cash Distributions | 73 |
| | | b. | Setoffs and Recoupment | 73 |
| | | c. | Timeliness of Distributions | 74 |
| | | d. | Limitation on Liability | 74 |
| | | e. | Delivery of Distributions | 74 |
| | | f. | Approval for Schedule of Proposed Distributions | 75 |
| | | g. | Further Assurances Regarding Distributions | 75 |
| | | h. | Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent | 75 |
| | | i. | Miscellaneous | 75 |
| T. | Objections to Disputed Claims. | | | 77 |
| | 1. | Exclusive Right to Object to Claims | | 76 |
| | 2. | Claims Objection Deadline | | 76 |
| | 3. | Investigation Regarding Disputed Claims | | 76 |
| | 4. | Treatment of Disputed Claims | | 77 |
| | | a. | No Distribution Pending Allowance | 77 |
| | | b. | Distribution After Allowance | 77 |
| | | c. | Reserve for Disputed Claims | 77 |
| | | d. | No Distribution Until Allowance of Disputed Claim | 78 |
| | 5. | Bar Date for Filing Avoidance Action Payment Claims | | 78 |
| U. | Litigation. | | | 80 |
| | 1. | Plan Agent's Authorization to Assert Causes of Action | | 78 |
| | 2. | Plan Agent's Evaluation of Causes of Action | | 79 |

## TABLE OF CONTENTS

### (CONTINUED)

Page

3.    Retention of Professionals ................................................................. 79
4.    Preservation of Causes of Action ...................................................... 79
5.    Subordination of Claims .................................................................... 80
V.    Executory Contracts And Unexpired Leases. ................................................ 82
1.    Executory Contracts and Unexpired Leases Being Assumed ...................... 80
2.    Executory Contracts and Unexpired Leases Being Rejected ...................... 81
3.    Retention of Property Rights .............................................................. 82
4.    Bar Date for Rejection Claims ............................................................ 82
5.    Cure Claims Schedule ....................................................................... 82
W.    Post-Effective Date Notice. ...................................................................... 85
X.    Miscellaneous Plan Provisions. ................................................................. 85

IX.   EFFECT OF CONFIRMATION OF THE PLAN ............................................... 86
A.    Discharge. ............................................................................................ 86
B.    Injunction/Release. ................................................................................ 87
C.    Distribution of Property Free and Clear of Liens, Claims, and Interests. .......... 87
D.    Binding Effect of Plan. ............................................................................ 87

X.    LIMITATION OF LIABILITY ..................................................................... 87
A.    No Liability for Solicitation or Participation. .............................................. 87
B.    Good Faith. ........................................................................................... 87
C.    Limitation of Liability Regarding Plan Confirmation. ................................... 88

XI.   CERTAIN RISK FACTORS TO BE CONSIDERED ........................................ 88
A.    Risk that the Debtor Will Have Insufficient Cash for the Plan to Become Effective. 88
B.    Risk Regarding the Distributions to Be Made to Creditors. ............................ 88
C.    Bankruptcy Risks. .................................................................................. 89

XII.  CONFIRMATION OF THE PLAN ............................................................... 89
A.    Introduction. .......................................................................................... 89
B.    Votes Necessary to Confirm the Plan. ........................................................ 90
C.    Votes Necessary for a Class to Accept the Plan. ........................................... 90
D.    Treatment of Non-Accepting Classes. ......................................................... 90
1.    General Unsecured Claims ................................................................. 89
2.    Interests ........................................................................................... 89
E.    Request for Confirmation Despite Non-Acceptance by Impaired Class(es). ........... 92
F.    Feasibility of the Plan. ............................................................................. 92
1.    Feasibility Analysis ........................................................................... 90
a.    Effective Date of the Plan ....................................................... 92
b.    Debtor's Cash Resources as of the Effective Date ...................... 92
(i)    Accumulated Cash from Operations ($387,517) ............ 92
(ii)   EMC Settlement Payment ($1,900,000) ...................... 92
c.    Allowed Secured Claims ($0) ................................................. 93
d.    Administrative Claims ($175,000) ........................................... 93
e.    United States Trustee Fees ($6,500) ........................................ 93
f.    Cure Claims ($0) .................................................................. 94
g.    Allowed Priority Non-Tax Claims ($453,585) ........................... 94

# TABLE OF CONTENTS

## (CONTINUED)

Page

h.  Allowed Priority Tax Claims ($1163,729) ........................................... 94
i.  Allowed General Unsecured Claims .................................................... 94
j.  Causes of Action ................................................................................ 96
k.  Expenses of Administering the Plan ................................................ 96
2.  Funding of Distributions Required by the Plan ........................................... 97
a.  Distributions Payable on or Soon After the Effective Date ................. 97
b.  Ongoing Distributions Under the Plan ................................................ 98
(i)  The Amount of Allowed Administrative Claims,
    Cure Claims, United States Trustee Fees, Allowed
    Priority Tax Claims and Allowed Priority Non-Tax
    Claims ......................................................................................... 98
(ii)  Recoveries from Causes of Action ............................................ 98
(iii)  Merger Transaction ................................................................... 99
(iv)  Amount of Allowed General Unsecured Claims ....................... 99
G.  Liquidation Analysis. ........................................................................................ 102
1.  Potentially Reduced Value of Assets in Liquidation ................................... 102
a.  Cash ................................................................................................... 102
b.  Causes of Action ............................................................................... 102
c.  Merger Transaction ........................................................................... 102
2.  Increased Amount of Claims in Liquidation ............................................. 103

XIII.  CERTAIN UNITED STATES FEDERAL TAX CONSEQUENCES OF THE PLAN ...... 109
A.  Introduction. ...................................................................................................... 109
B.  Consequences to the Debtor ............................................................................. 109
C.  Withholding of Taxes. ...................................................................................... 110

XIV.  RECOMMENDATION ............................................................................................... 111

# **TABLE OF AUTHORITIES**

Statutes

11 U.S.C. §§ 101-1532 .......................................................................................... 10
11 U.S.C. §101(5) ................................................................................................... 12
11 U.S.C. §101(16) ................................................................................................. 16
11 U.S.C. §105 ....................................................................................................... 36
11 U.S.C. §327 ................................................................................................. 19, 20
11 U.S.C. §328 ....................................................................................................... 20
11 U.S.C. §330 ....................................................................................................... 20
11 U.S.C. §331 ....................................................................................................... 20
11 U.S.C. §350 ....................................................................................................... 11
11 U.S.C. §363(b) ................................................................................................... 36
11 U.S.C. §363(f) .................................................................................................... 36
11 U.S.C. §365 ................................................................................................. 36, 79
11 U.S.C. §502 ......................................................................................................... 3
11 U.S.C. §502(d)(g)(h)(i) ................................................................................. 10, 82
11 U.S.C. §503(b) ................................................................................ 7, 17, 20, 46
11 U.S.C. §503(b)(1)(D) ......................................................................................... 47
11 U.S.C. §503(b)(3)(D) ......................................................................................... 20
11 U.S.C. §503(b)(4) .............................................................................................. 20
11 U.S.C. §503(b)(9) .............................................................................................. 46
11 U.S.C. §506(a) ...................................................................................... 9, 10, 13, 21
11 U.S.C. §507(a)(4)(5)(7)(8) .................................................................................. 9
11 U.S.C. §507(b) .................................................................................................... 7
11 U.S.C. §510 ....................................................................................................... 10
11 U.S.C. §522 ....................................................................................................... 74
11 U.S.C. §541 ....................................................................................................... 14
11 U.S.C. §542 ................................................................................................. 10, 74
11 U.S.C. §543 ................................................................................................. 10, 74
11 U.S.C. §544 ................................................................................................. 10, 74
11 U.S.C. §545 ................................................................................................. 10, 74
11 U.S.C. §547 ................................................................................................. 10, 74
11 U.S.C. §548 ................................................................................................. 10, 74
11 U.S.C. §549 ................................................................................................. 10, 74
11 U.S.C. §550 ................................................................................................. 10, 74
11 U.S.C. §551 ....................................................................................................... 10
11 U.S.C. §552 ....................................................................................................... 10
11 U.S.C. §553 ...................................................................................... 9, 10, 21, 74
11 U.S.C. §726(a)(2)(C) .......................................................................................... 16
11 U.S.C. §726(a)(3)(4)(5)(6) ............................................................. 16, 17, 53, 56
11 U.S.C. §1103 ...................................................................................................... 20
11 U.S.C. §1107(a) ................................................................................................. 34
11 U.S.C. §1108 ...................................................................................................... 34
11 U.S.C. §1111(b) ................................................................................................. 51
11 U.S.C. §1123 ................................................................................................. 45, 60
11 U.S.C. §1123(a)(1)(4)(7) .......................................................................... 45, 46, 62
11 U.S.C. §1123(b)(3)(B) ....................................................................................... 62
11 U.S.C. §1125 ................................................................................................... 2, 13
11 U.S.C. §1125(b)(c)(e)(f)(g) .............................................. 2, 3, 28, 46, 50, 57, 84
11 U.S.C. §1128(a)(b) ................................................................................... 4, 13, 27
11 U.S.C. §1129(a)(1)-(7) ..................................................................... 13, 28, 86, 98
11 U.S.C. §1129(a)(8) ............................................................................................ 87

11 U.S.C. §1129(a)(9)-(16) ............................................................................................ 86, 89, 90
11 U.S.C. §1129(b) ...................................................................................... 28, 29, 86, 87, 88, 89
11 U.S.C. §1141 ..................................................................................................................... 60
11 U.S.C. §1145 ..................................................................................................................... 19
11 U.S.C. §1146(a) ................................................................................................................. 60
28 U.S.C. § 1930 ..................................................................................................................... 7
28 U.S.C. § 1961(a), ............................................................................................................... 19

Other Authorities
Section 1930 of title 28 of the United States Code ............................................................... 21

Rules
Rule 3001 ................................................................................................................................ 19
Rule 3003(b)(1) ...................................................................................................................... 13
Rule 3003(d) ........................................................................................................................... 57
Rule 3018(a) ............................................................................................................................. 3
Rule 9006(a) ....................................................................................................................... 10, 21

# I.

## **INTRODUCTION**

MTI Technology Corporation, the Debtor in this case, and the Committee jointly provide this Disclosure Statement to Creditors.[1]  This Disclosure Statement is furnished for the purpose of soliciting acceptances to the Plan, which has been filed with the Bankruptcy Court.  A copy of the Plan accompanies this Disclosure Statement.

Section 1125 of the Bankruptcy Code requires that, at the time when the Plan is delivered to Creditors, the Plan be accompanied by this Disclosure Statement.[2]  The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, so far as is reasonably practicable, in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a typical Creditor to make an informed judgment about the Plan and to enable such Creditor to determine whether it is in his best interest to vote for (accept) or against (reject) the Plan.

This Disclosure Statement contains a description of the Plan and other information relevant to the decision whether to vote to accept or to reject the Plan.  The Plan Proponents urge Creditors to read this Disclosure Statement because it contains important information concerning the Debtor's history, business, assets and liabilities and because it sets forth a summary of the Plan.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial data pertaining to the Debtor's business operations, the applicable provisions of the Bankruptcy Code, or any other matters that may be deemed significant by Creditors.  Out of practical necessity, this Disclosure Statement represents an attempt to summarize extensive financial data, legal documents and legal principles, including provisions of the Bankruptcy Code, and set

---

[1] The definitions of the capitalized terms used in this Disclosure Statement are contained in Article II of this Disclosure Statement.

[2] Section 1125(b) provides, in pertinent part, as follows:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v.1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1  them forth in understandable, readable form.  Thus, although the Plan Proponents have attempted to

2  describe fairly and accurately the matters set forth and discussed in this Disclosure Statement, the

3  Plan Proponents desire to emphasize that the documents referred to or summarized in this

4  Disclosure Statement (including, without limitation, historical financial information for the Debtor's

5  business operations) are available for review by contacting the Debtor's attorneys, Clarkson Gore

6  (Attn:  Eve A. Marsella), at the address set forth at the upper left-hand corner of the first page of this

7  Disclosure Statement.

8          If a Creditor does not fully understand this Disclosure Statement, or feels that the

9  information provided herein is insufficient to enable him to determine whether to accept or to reject

10  the Plan, he is invited to make written inquiry of the Debtor's attorneys, Clarkson Gore (Attn:

11  Eve A. Marsella), or the Committee's attorneys, Winthrop Couchot (Attn:  Robert E. Opera), at their

12  respective addresses set forth at the upper left-hand corner of the first page of this Disclosure

13  Statement.

14          While this Disclosure Statement provides a summary of the provisions of the Plan, if any

15  inconsistency exists between the Plan and the Disclosure Statement, the provisions of the Plan are

16  controlling.  Therefore, Creditors are urged to review carefully the provisions of the Plan.

17          Only holders of Claims allowed under section 502 of the Bankruptcy Code or Claims

18  temporarily allowed for voting purposes under Rule 3018(a) of the Federal Bankruptcy Rules, and

19  whose Claims are in those Classes of Claims that are "impaired" under the Plan, are entitled to vote

20  to accept or reject the Plan.[3]  Classes of Claims that are not impaired are conclusively presumed to

21  have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are

22  not entitled to vote on the Plan.  The Plan Proponents believe that it is very likely that Interest

23  Holders will not receive or retain under the Plan any value on account of their Interests, and,

24  accordingly, the Class of Interest Holders under the Plan (Class 6) is deemed to have rejected the

25  Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote on the Plan.

26

27  _____
   [3] Under section 1124 of the Bankruptcy Code, a Class of Claims is impaired if the legal, equitable, or contractual rights
   of the Claims in the Class are altered.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    Voting on the Plan, by each holder of a Claim entitled to vote on the Plan, is important.  To

2    vote to accept or reject the Plan, a Creditor must indicate his acceptance or rejection thereof on the

3    ballot that accompanies this Disclosure Statement and return it, by mail, to Clarkson Gore (Attn:

4    Eve A. Marsella) in the envelope provided, such that the ballot is actually received by Clarkson

5    Gore by 4:00 p.m. on July 15, 2010.  The mailing address for Clarkson Gore is listed in the upper

6    left-hand corner of the front page of this Disclosure Statement.  Each Class of Creditors allowed to

7    vote on the Plan will be deemed to have accepted the Plan if the Plan is accepted by valid ballots

8    cast by Creditors in that Class holding at least two-thirds (2/3) in dollar amount and more than one

9    half (1/2) in number of the Allowed Claims of Creditors in that Class actually voting on the Plan.

10   **ONLY PROPERLY EXECUTED BALLOTS TIMELY TENDERED TO COUNSEL FOR**

11   **THE DEBTOR WILL BE COUNTED AS HAVING VOTED ON THE PLAN.**

12       Since mail delays may occur, and because time is of the essence, it is important that ballots

13   be returned well in advance of the date specified hereinabove as the deadline for Clarkson Gore to

14   receive ballots.  Unless otherwise allowed by the Bankruptcy Court, any ballots received after such

15   deadline will not be included in any calculation to determine whether the Debtor's Creditors have

16   accepted or rejected the Plan.

17       At the Confirmation Hearing, the Bankruptcy Court will determine, pursuant to section 1129

18   of the Bankruptcy Code, whether the Plan has been accepted by the necessary Classes of Claims

19   created under the Plan, and, if not, whether the Bankruptcy Court should, nevertheless, confirm the

20   Plan.[4]  If at such hearing the Bankruptcy Court should determine that the Plan meets all of the

21   requirements for confirmation prescribed by the Bankruptcy Code, the Bankruptcy Court will enter

22   a Confirmation Order.  Pursuant to section 1141 of the Bankruptcy Code, the effect of the

23   Confirmation Order will be to make the provisions of the Plan binding upon the Debtor, each

24   Creditor, regardless of whether the Creditor voted to accept the Plan, and upon each Interest Holder.

25       Pursuant to section 1128 of the Bankruptcy Code, any party-in-interest may object to the

26   confirmation of the Plan.  The Bankruptcy Court has fixed July 15,, 2010, at 4:00 p.m., as the

27

[4] As stated hereinabove, the Class of Interest Holder under the Plan (Class 6) is deemed to have not accepted the Plan.

28

1    deadline for filing an objection to the Plan and for serving a copy thereof upon the Debtor's

2    attorneys, Clarkson Gore, and upon the Committee's attorneys, Winthrop Couchot, at the respective

3    addresses set forth hereinabove, and upon the United States Trustee. The branch office of the

4    United States Trustee in which the Case is being administered is located at 411 West Fourth Street,

5    Suite 9041, Santa Ana, California 92701-8000. Any objections or other written communications to

6    the United States Trustee respecting the Plan or the Case should be mailed to the attention of Frank

7    Cadigan, Esq., at that address.

8    **THIS IS A SOLICITATION BY THE PLAN PROPONENTS. NO**

9    **REPRESENTATIONS CONCERNING THE DEBTOR, INCLUDING, BUT NOT LIMITED**

10   **TO, REPRESENTATIONS AS TO ITS BUSINESS, ASSETS, THE AMOUNT OF CLAIMS**

11   **AGAINST THE ESTATE, OR ANY TAX EFFECT OF THE TRANSACTIONS PROPOSED**

12   **UNDER THE PLAN, ARE AUTHORIZED BY THE PLAN PROPONENTS, OTHER THAN**

13   **AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

14   **UNLESS SPECIFICALLY SET FORTH HEREIN TO THE CONTRARY, THE**

15   **INFORMATION CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT**

16   **HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT. RECORDS KEPT BY THE DEBTOR**

17   **RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED INTERNALLY BY**

18   **THE DEBTOR. THE PLAN PROPONENTS BELIEVE THAT EVERY REASONABLE**

19   **EFFORT HAS BEEN MADE TO PRESENT FINANCIAL INFORMATION AS ACCURATE**

20   **AS IS REASONABLY PRACTICABLE GIVEN THE NATURE AND HISTORY OF THE**

21   **DEBTOR'S BUSINESS AND THE CONDITION OF THE DEBTOR'S BOOKS AND**

22   **RECORDS. HOWEVER, THE RECORDS KEPT BY THE DEBTOR ARE NEITHER**

23   **WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY. NEITHER**

24   **COUNSEL TO THE DEBTOR NOR THE ACCOUNTANTS TO THE DEBTOR, NOR**

25   **COUNSEL TO THE COMMITTEE NOR THE FINANCIAL ADVISORS TO THE**

26   **COMMITTEE, HAVE INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED**

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   HEREIN, OR MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT

2   TO THE ACCURACY THEREOF.

3        NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR

4   DISPUTED CLAIM OR CAUSE OF ACTION IS NOT IDENTIFIED IN THIS

5   DISCLOSURE STATEMENT.  IN ACCORDANCE WITH THE PROVISIONS OF THE

6   PLAN, THE PLAN AGENT MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE

7   OBJECTIONS TO CLAIMS OR CAUSES OF ACTION, WHETHER OR NOT SUCH

8   OBJECTIONS OR CAUSES OF ACTION ARE IDENTIFIED IN THIS DISCLOSURE

9   STATEMENT.

10       ALL PARTIES ENTITLED TO VOTE ON THE PLAN ARE URGED TO REVIEW

11  CAREFULLY THE PLAN AND THIS DISCLOSURE STATEMENT PRIOR TO VOTING

12  ON THE PLAN.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT

13  BE CONSTRUED IN ANY MANNER TO BE LEGAL, BUSINESS OR TAX ADVICE.

14  EACH CREDITOR SHOULD CONSULT WITH HIS OWN LEGAL COUNSEL, BUSINESS

15  ADVISOR, CONSULTANT OR ACCOUNTANT PRIOR TO VOTING ON THE PLAN IN

16  ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THE

17  PLAN.  THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF THE

18  CREDITORS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED

19  DECISION REGARDING THE PLAN.

20       THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE

21  STATEMENT INDICATES ONLY THAT THE DISCLOSURE STATEMENT CONTAINS

22  ADEQUATE INFORMATION FOR THE PURPOSE OF SOLICITATION OF

23  ACCEPTANCES TO THE PLAN BY THE PLAN PROPONENTS, AND NOT ANY

24  RECOMMENDATION REGARDING WHETHER A CREDITOR SHOULD VOTE TO

25  ACCEPT OR TO REJECT THE PLAN.

26       ANY DISCUSSION OF TAX MATTERS CONTAINED HEREIN IS NOT INTENDED

27  TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING ANY TAX

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1  **OR TAX PENALTIES THAT MAY BE IMPOSED ON ANY PERSON.  NOTHING IN THIS**

2  **DISCLOSURE STATEMENT MAY BE USED OR REFERRED TO IN PROMOTING,**

3  **MARKETING OR RECOMMENDING A PARTNERSHIP OR OTHER ENTITY,**

4  **INVESTMENT PLAN, OR OTHER ARRANGEMENT TO ANY PERSON.  ALL**

5  **CREDITORS AND INTEREST HOLDERS SHOULD CONSULT WITH THEIR OWN**

6  **LEGAL COUNSEL AND/OR ACCOUNTANTS AS TO LEGAL, TAX, AND OTHER**

7  **MATTERS CONCERNING THEIR CLAIMS OR INTERESTS.**

8  **II.**

9  **DEFINITIONS AND RULES OF CONSTRUCTION**

10  **A.    Defined Terms.**

11  The following terms (which appear in this Disclosure Statement as capitalized terms), when

12  used in this Disclosure Statement, have the meanings set forth below.

13  **1.    "Administrative Claim"** means a Claim for costs or expenses that are

14  allowable under sections 503(b) or 507(b) of the Bankruptcy Code or 28 U.S.C. § 1930.  These costs

15  or expenses may include: (a) actual, necessary costs and expenses of preserving the Estate after the

16  Petition Date; (b) Ordinary Course Administrative Claims; (c) Pre-Effective Date Professional Fee

17  Claims; (d) Administrative Tax Claims; and (e) United States Trustee Fees.

18  **2.    "Administrative Claims Bar Date"** has the meaning set forth in

19  paragraph VI(C)(1)(b) of this Disclosure Statement.

20  **3.    "Administrative Claims Objection Deadline"** has the meaning set forth in

21  paragraph VI(C)(1)(c) of this Disclosure Statement.

22  **4.    "Administrative Tax Claim"** means a Tax Claim, other than a Secured

23  Claim, that a governmental unit asserts against the Debtor for any tax period that, in whole or in part,

24  falls within the period commencing on the Petition Date and ending on the Effective Date.

25  **5.    "Allowed Administrative Claim"** means an Administrative Claim that is

26  allowed as set forth in Section 3.1 of the Plan or otherwise by a Final Order.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-JointBrdAmendDS5_20_10.DOC

6.    **"Allowed Avoidance Action Payment Claim"** means an Allowed Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action. Any Allowed Avoidance Action Payment Claim is treated under the Plan as a Class 3 Claim.

7.    **"Allowed Claim"** means a Claim (a) that is listed in the Bankruptcy Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (b) with respect to which a Proof of Claim has been filed by the Bar Date, and as to which no objection is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or by order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order. Under the Plan, the amount of an Allowed Claim will be as follows:  (i) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Bar Date, the amount of the Creditor's Claim as listed in the Bankruptcy Schedules as neither disputed, contingent, unliquidated or unknown; or (ii) if the Creditor filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or by order of the Bankruptcy Court, or (2) the amount thereof fixed by a Final Order of the Bankruptcy Court if an objection to such Proof of Claim is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or by order of the Bankruptcy Court. Under the Plan, any Claim that is not filed by the Bar Date and that is listed in the Bankruptcy Schedules as disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of the Plan, will be disallowed, and no Distribution will be made on account of such Claim. No default interest or late charges or comparable fees, charges or penalties will be included as part of an Allowed Claim.

8.    **"Allowed Class '**' Claim"** means an Allowed Claim classified in the specified Class.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    **9.** **"Allowed Deficiency Claim"** means that portion of an Allowed Claim that is

2    in excess of the value of any Collateral which is security for the repayment of such Claim, calculated

3    in accordance with the provisions of section 506 of the Bankruptcy Code.

4    **10.** **"Allowed General Unsecured Claim"** means an unsecured Allowed Claim

5    against the Debtor, however arising, not entitled to priority under section 507(a) of the Bankruptcy

6    Code, including, without limitation, an Allowed Deficiency Claim, an Allowed Rejection Claim or

7    an Allowed Avoidance Action Payment Claim.

8    **11.** **"Allowed Interest"** means an Interest to the extent, and only to the extent, of

9    the amount of such Interest allowed by the Plan or by Final Order of the Bankruptcy Court.

10    **12.** **"Allowed Penalty Claims"** means a Penalty Claim that is allowed by a Final

11    Order. Any Allowed Penalty Claim will be treated under the Plan as an Allowed Class 5 Claim.

12    **13.** **"Allowed Priority Non-Tax Claim"** means an unsecured Allowed Claim

13    entitled to priority pursuant to sections 507(a)(4), 507(a)(5), or 507(a)(7) of the Bankruptcy Code.

14    **14.** **"Allowed Priority Tax Claim"** means an Allowed Claim entitled to priority

15    under section 507(a)(8) of the Bankruptcy Code.

16    **15.** **"Allowed Rejection Claim"** means any Allowed General Unsecured Claim

17    based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a

18    Final Order of the Bankruptcy Court or pursuant to the Plan. Any Allowed Rejection Claim will be

19    treated under the Plan as a Class 3 Claim.

20    **16.** **"Allowed Secured Claim"** means an Allowed Claim secured by a valid and

21    unavoidable Lien against property in which the Estate has an interest, or which is subject to setoff

22    under section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with

23    section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the

24    Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may

25    be. Under the Plan, unpaid principal and any accrued interest allowable under section 506 of the

26    Bankruptcy Code with respect to an Allowed Secured Claim will be computed as of the Effective

27    Date, and the Allowed Secured Claim will thereafter bear interest as provided in the Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-9-

17.    **"Allowed Subordinated Claim"** means any Allowed Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

18.    **"Assets"** means all assets and properties of the Debtor's Estate including "property of the estate" as described in section 541 of the Bankruptcy Code.

19.    **"Avoidance Action"** means an adversary proceeding, lawsuit or other action or proceeding filed pursuant to sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or proceeding based on applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or proceeding arising under, or relating to, any similar state law or federal law, and any other similar action or proceeding filed to recover property for or on behalf of the Estate, or to avoid a Lien or transfer, whether or not such adversary proceeding, lawsuit, action or proceeding is initiated on or before the Effective Date.

20.    **"Avoidance Action Payment Claim"** means a Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action.

21.    **"Bankruptcy Code"** means the United States Bankruptcy Code, as set forth in 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

22.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

23.    **"Bankruptcy Rules"** means, collectively, the Federal Bankruptcy Rules and the Local Bankruptcy Rules.

24.    **"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as they may have been amended and as they may be amended hereafter from time to time.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

25. **"Bar Date"** means the last date for Creditors and Interest Holders whose Claims or Interests, respectively, are not scheduled, or whose Claims or Interests are scheduled in the Bankruptcy Schedules as disputed, contingent, unliquidated or unknown as to amount, to file Proofs of Claim or Interests, as set forth in an order of the Bankruptcy Court entered on April 7, 2008.

26. **"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Rule 9006(a) of the Federal Bankruptcy Rules).

27. **"Canopy"** means Canopy Group, Inc.

28. **"Canopy Claim"** means the Allowed Claim of Canopy.

29. **"Canopy Settlement Agreement"** has the meaning set forth in paragraph IV(F)(7)(b) of this Disclosure Statement.

30. **"Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and bearing Case Number 8:07-13347-ES.

31. **"Case Closing Date"** means the date on which the Bankruptcy Court enters a Final Decree closing the Case, in accordance with section 350 of the Bankruptcy Code.

32. **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar forms of payment or exchange.

33. **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to (a) rights of setoff, counterclaim or recoupment, (b) claims on contracts or for breaches of duties imposed by law, (c) rights to object to Claims or Interests, (d) such claims and defenses as fraud, mistake, duress or usury, (e) Avoidance Actions,

1  (f) claims for tax refunds, (g) claims to recover accounts receivable, and (h) any other claims which

2  may be asserted against third parties.

3      **34.**    **"Claim"** means a "claim" against the Debtor, as such term is defined in

4  section 101(5) of the Bankruptcy Code.

5      **35.**    **"Claims Objection Deadline"** means the latest of the following dates:  (a) the

6  one hundred eightieth (180th) day after the Effective Date; (b) with respect to a specific Claim, the

7  ninetieth (90th) day after a Proof of Claim with respect to such Claim is filed by a Creditor; (c) with

8  respect to a Claim that is not listed in the Bankruptcy Schedules, the ninetieth (90th) day after the

9  Plan Agent learns of the existence of such Claim; or (d) such greater period of limitation as may be

10  fixed or extended by the Bankruptcy Court or by agreement between the Plan Agent and the

11  Creditor.

12      **36.**    **"Clarkson Gore"** means Clarkson Gore & Marsella, APLC, the Debtor's

13  general insolvency counsel in the Case.

14      **37.**    **"Class"** means a group of Claims or Interests as classified in Article IV of the

15  Plan.

16      **38.**    **"Collateral"** means any property or interest in property of the Estate subject

17  to a Lien of a Secured Creditor that is not subject to avoidance under the Bankruptcy Code or

18  otherwise invalid under the Bankruptcy Code or applicable federal or state law.

19      **39.**    **"Committee"** means the Official Committee of Unsecured Creditors

20  appointed in the Case by the United States Trustee.

21      **40.**    **"Confirmation"** means the entry of the Confirmation Order by the

22  Bankruptcy Court.

23      **41.**    **"Confirmation Date"** means the date on which the Bankruptcy Court enters

24  the Confirmation Order on its docket.

25      **42.**    **"Confirmation Hearing"** means the hearing before the Bankruptcy Court to

26  consider the confirmation of the Plan pursuant to section 1128(a) of the Bankruptcy Code, as such

27  hearing may be continued from time to time.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

43. **"Confirmation Hearing Date"** means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

44. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

45. **"Creditor"** means the holder of a Claim against the Debtor.

46. **"Cure Claims"** has the meaning set forth in paragraph VIII(V)(5) of this Disclosure Statement.

47. **"Cure Claims Schedule"** has the meaning set forth in paragraph VIII(V)(5) of this Disclosure Statement.

48. **"Debtor"** means MTI Technology Corporation, the debtor and debtor-in-possession in the Case. For the purpose of this Disclosure Statement, references to the "Debtor" will include the Reorganized Debtor.

49. **"Deficiency Claim"** means that portion of a Claim that is in excess of the value of the Collateral which is security for the repayment of such Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

50. **"De Minimis Distribution"** has the meaning set forth in section 7.2.3 of the Plan.

51. **"Disbursing Agent"** means the entity charged with making Distributions under the Plan. The Plan Agent will serve as Disbursing Agent under the Plan.

52. **"Disclosure Statement"** means this Joint Third Amended Disclosure Statement relating to the Plan, including, without limitation, all exhibits and schedules hereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

53. **"Disclosure Statement Order"** means the Final Order entered by the Bankruptcy Court approving this Disclosure Statement.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

54.    **"Disputed Claim"** means any Claim as to which:  (a) a Proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; (b) a Proof of Claim has been filed, to the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules; (c) a Proof of Claim has been filed and such Claim is not listed in the Bankruptcy Schedules; (d) a Proof of Claim has been filed, or is deemed filed under Rule 3003(b)(1) of the Federal Bankruptcy Rules, and is listed in the Bankruptcy Schedules as contingent, disputed, liquidated, or unknown as to amount; or (e) an objection, or request for estimation, has been filed by the Claims Objection Deadline and such objection or request for estimation has neither been withdrawn nor been denied by a Final Order.

55.    **"Disputed Claims Reserve"** has the meaning set forth in paragraph VIII(T)(4)(c) of this Disclosure Statement.

56.    **"Distribution"** means any transfer under the Plan of Cash, or other property or instruments, to the holder of an Allowed Claim.

57.    **"Distribution Schedule"** has the meaning set forth in paragraph VIII(S)(2)(f) of this Disclosure Statement.

58.    **"Effective Date"** means the eleventh (11th) day following the waiver or satisfaction of the conditions set forth in Section 6.3 of the Plan.

59.    **"EMC"** means EMC Corporation.

60.    **"EMC Settlement Agreement"** has the meaning set forth in paragraph V(B)(1)(a) of this Disclosure Statement.

61.    **"EMC Settlement Payment"** has the meaning set forth in paragraph V(B)(1)(a)(i) of this Disclosure Statement.

62.    **"Estate"** means the estate created in the Case under section 541 of the Bankruptcy Code.

63.    **"European Subsidiaries"** has the meaning set forth in paragraph IV(A)(1) of this Disclosure Statement.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    **64.**    "**Expenses**" has the meaning set forth in paragraph II(A)(102) of this

2    Disclosure Statement.

3    **65.**    "**Feasibility Analysis**" has the meaning set forth in paragraph XII(F)(1) of

4    this Disclosure Statement.

5    **66.**    "**Federal Bankruptcy Rules**" means the Federal Rules of Bankruptcy

6    Procedure, as now in effect and as may be hereafter amended.

7    **67.**    "**Final Decree**" has the meaning set forth in paragraph VIII(Q) of this

8    Disclosure Statement.

9    **68.**    "**Final Order**" means an order or judgment of the Bankruptcy Court or other

10   applicable court, as entered on the applicable docket, that has not been reversed, stayed, modified or

11   amended, and as to which the time to appeal, petition for certiorari, or move for reargument or

12   rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for

13   reargument or to obtain a rehearing is then pending or as to which any right to appeal, petition for

14   certiorari, reargue, or obtain a rehearing is waived in writing in form and substance satisfactory to

15   the Plan Proponents prior to the Effective Date, or to the Plan Agent after the Effective Date, as

16   applicable, or, in the event that an appeal, writ of certiorari, or proceeding for reargument or

17   rehearing of such order or judgment has been sought, such order or judgment is affirmed by the

18   highest court to which such order or judgment was appealed, or certiorari has been denied, or from

19   which reargument or rehearing was sought, and the time to take any further appeal, petition for

20   certiorari or move for reargument or rehearing has expired.

21   **69.**    "**FusionStorm**" means FusionStorm, a Delaware corporation.

22   **70.**    "**FusionStorm Action**" has the meaning set forth in paragraph V(B)(1)(c) of

23   this Disclosure Statement.

24   **71.**    "**General Unsecured Claim**" means any Claim that is not an Administrative

25   Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim or a Subordinated Claim,

26   including, without limitation, a Rejection Claim, a Deficiency Claim or an Avoidance Action

27   Payment Claim.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

72. **"Interest"** means an "equity security" in the Debtor, as such term is defined in section 101(16) of the Bankruptcy Code, no matter how held, including, without limitation, issued and outstanding shares of MTI Stock, and all rights and interests arising thereunder, and all rights to acquire equity securities in the Debtor, including, without limitation, pursuant to options, warrants, employee plans, or similar agreements, contracts or instruments, provided that such rights are exercised on or prior to the Effective Date.

73. **"Interest Holder"** means a holder of an Interest.

74. **"Internal Revenue Code"** means the Internal Revenue Code of 1986, now in effect and as may be hereafter amended.

75. **"Late-Filed Claim"** means any General Unsecured Claim described in sections 726(a)(2)(C) or 726(a)(3) of the Bankruptcy Code.

76. **"Lien"** means any lien, security interest, mortgage, deed of trust, encumbrance, pledge or other charge against Assets of the Debtor.

77. **"Liquidation Analysis"** has the meaning set forth in paragraph XII(G) of this Disclosure Statement.

78. **"Local Bankruptcy Rules"** means the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect and as may be hereafter amended.

79. **"Merger Consummation Date"** has the meaning set forth in paragraph VIII(R)(2) of this Disclosure Statement.

80. **"Merger Transaction"** has the meaning set forth in paragraph VIII(R)(1) of this Disclosure Statement.

81. **"Mr. Poteracki"** means Scott Poteracki.

82. **"Mr. Raimondi"** means Thomas P. Raimondi, Jr.

83. **"MTI Stock"** means the issued and outstanding shares of common stock and preferred stock of the Debtor as of the Effective Date.

84. **"Net Litigation Proceeds"** has the meaning set forth in paragraph XII(F)(1)(h) of this Disclosure Statement.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

85. **"Omni"** means Omni Management Group, LLC.

86. **"Ordinary Course Administrative Claim"** means an Administrative Claim allowable under section 503(b) of the Bankruptcy Code, that is incurred in the ordinary course of the Debtor's operations or the Case, or the payment of which is provided for by an order of the Bankruptcy Court, exclusive of any Pre-Effective Date Professional Fee Claims, Administrative Tax Claims and United States Trustee Fees.

87. **"Penalty Claim"** means any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy Code.

88. **"Pencom Action"** has the meaning set forth in paragraph V(B)(1)(b) of this Disclosure Statement.

89. **"Pencom Defendants"** has the meaning set forth in paragraph V(B)(1)(b) of this Disclosure Statement.

90. **"Petition Date"** means October 15, 2007, the date on which the Debtor filed its voluntary petition commencing the Case.

91. **"Plan"** means the Plan Proponents' Joint Third Amended Chapter 11 Plan, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in its present form or as it may be altered, amended, or modified from time to time.

92. **"Plan Agent"** means the entity appointed by the Plan to administer the Plan and to make the Distributions provided by the Plan, in accordance with the provisions of Section 6.6.1 of the Plan.

93. **"Plan Agent Certification"** has the meaning set forth in paragraph VIII(P) of this Disclosure Statement.

94. **"Plan Agent Disclosure"** has the meaning set forth in paragraph VIII(H)(4) of this Disclosure Statement.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-17-

95.    **"Plan Assets"** means the Assets, which, pursuant to the Plan, will be transferred in trust to the Plan Agent on the Effective Date of the Plan, free and clear of any Liens that otherwise might have existed in favor of any Secured Creditor.

96.    **"Plan Fund"** means a segregated, interest-bearing account established at a financial institution which is an authorized depository under United States Trustee Guidelines, into which the Plan Agent will deposit all Cash of the Estate as of the Effective Date, less the Cash used to make, or reserve for the making of, the Distributions required to be made on or about the Effective Date, and all Cash received by the Reorganized Debtor after the Effective Date. Under the Plan, the Plan Fund Proceeds will be made available for making Distributions to holders of Allowed General Unsecured Claims and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

97.    **"Plan Fund Proceeds"** means the Cash available in the Plan Fund for making Distributions on account of Allowed General Unsecured Claims and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

98.    **"Plan Proponents"** means, together, the Debtor and the Committee, the proponents of the Plan.

99.    **"Post-Effective Date Committee"** means the Committee, as it will be reconstituted and function after the Effective Date, pursuant to the provisions of the Plan.

100.    **"Post-Effective Date Committee Disclosure"** has the meaning set forth in paragraph VIII(I)(1) of this Disclosure Statement.

101.    **"Post-Effective Date Notice Parties"** has the meaning set forth in paragraph VIII(P) of this Disclosure Statement.

102.    **"Post-Effective Date Plan Expenses"** means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of the Plan, including, but not limited to: (a) the Expenses associated with administering the Plan, including any taxes assessed against the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   Assets; (b) all United States Trustee Fees; (c) the Expenses associated with making the Distributions

2   required by the Plan; (d) any Expenses associated with preparing and filing tax returns and paying

3   taxes; (e) any reasonable Expenses incurred by a member of the Post-Effective Date Committee, but

4   excluding the attorneys' fees or other professional fees, if any, incurred by it, except for any such

5   fees to which it is entitled by indemnification; (f) the Expenses of independent contractors and

6   Professionals providing services to the Plan Agent or the Post-Effective Date Committee; (g) the

7   Expenses associated with the Plan Agent's indemnity obligations, the purchase of errors and

8   omissions insurance and/or other forms of indemnification; and (h) the fees of the Plan Agent, and

9   the reimbursement of expenses, to which the Plan Agent is entitled under the Plan.

10  **103.   "Post-Effective Date Stock"** means any shares of common stock in the

11  Reorganized Debtor issued on account of the holders of Allowed General Unsecured Claims,

12  pursuant to section 1145 of the Bankruptcy Code, in accordance with the provisions of

13  Sections 5.3.1.5 and 6.18 of the Plan.

14  **104.   "Postpetition Interest"** means any interest accrual on any Allowed Claim

15  from and after the Petition Date, in accordance with the provisions of Sections 5.3.1.3 and 5.5.1.3 of

16  the Plan.  Under the Plan, any Postpetition Interest will accrue at the federal judgment rate, as set

17  forth in 28 U.S.C. § 1961(a), in effect as of the Petition Date.

18  **105.   "Pre-Effective Date Professional"** means a person employed in the Case

19  prior to the Effective Date pursuant to an order of the Bankruptcy Court in accordance with

20  sections 327 or 1103 of the Bankruptcy Code.

21  **106.   "Pre-Effective Date Professional Fee Claim"** means:

22          (a)    A Claim of a Pre-Effective Date Professional under sections 327, 328,

23  330, 331, 503(b) or 1103 of the Bankruptcy Code for compensation for services rendered or

24  expenses incurred prior to the Effective Date on behalf of the Estate; or

25          (b)    A Claim, arising prior to the Effective Date, either under

26  section 503(b)(4) of the Bankruptcy Code or under section 503(b)(3)(D) of the Bankruptcy Code.

27

28

**107.** "**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

**108.** "**Priority Tax Claim**" means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**109.** "**Professional**" means any attorney, accountant, appraiser, auctioneer, broker, financial consultant, expert or other professional person.

**110.** "**Proof of Claim**" means a statement under oath filed in the Case by a Creditor in which the Creditor sets forth the amount claimed to be owed to it and detail sufficient to identify the basis for the Claim, in accordance with Rule 3001 of the Federal Bankruptcy Rules.

**111.** "**Pro Rata**" means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Claims in the Class in which that Allowed Claim is included to (y) the amount of all Claims in that Class.

The Pro Rata formula is illustrated as follows:

| (a) | Amount of consideration distributed to a holder of an Allowed Claim | | (x) | Total consideration available for distribution to holders of Claims of that Class |
|---|---|---|---|---|
| (b) | Amount of such Allowed Claim | = | (y) | Amount of all Allowed Claims in that Class |

For the purpose of the application of this definition, in calculating the Distributions to be made under the Plan, the Plan Agent, as Disbursing Agent under the Plan, will establish Reserves, on account of Disputed Claims, in accordance with the provisions of Section 8.4.3 of the Plan.

**112.** "**Rejection Claim**" means any General Unsecured Claim based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court or pursuant to the Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-20-

1      **113.**   **"Reorganized Debtor"** means the Debtor, as its financial affairs are

2   reorganized from and after the Effective Date.  For the purpose of this Disclosure Statement, a

3   reference to the "Reorganized Debtor" will include the Debtor.

4      **114.**   **"Representatives"** has the meaning set forth in paragraph VIII(H)(5) of this

5   Disclosure Statement.

6      **115.**   **"Reserves"** means, collectively, the Disputed Claims Reserve, the Unclaimed

7   Property Reserve, and other reserves that the Plan Agent, as Disbursing Agent under the Plan, is

8   required to establish pursuant to the Plan.

9      **116.**   **"Secured Claim"** means a Claim that is secured by a Lien against property in

10   which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code.

11   A Claim is a Secured Claim only to the extent of the value, as determined under section 506(a) of the

12   Bankruptcy Code, of the Secured Creditor's interest in the Collateral securing the Claim or to the

13   extent of the amount subject to setoff, whichever is applicable.

14      **117.**   **"Secured Creditor"** means the holder of a Secured Claim.

15      **118.**   **"Stock Termination Approval"** has the meaning set forth in

16   paragraph VIII(R)(3) of this Disclosure Statement.

17      **119.**   **"Subordinated Claim"** means any Claim that is subordinated to Allowed

18   Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

19      **120.**   **"Tax"** means any tax, charge, fee, levy, or other assessment by any federal,

20   state, local or foreign taxing authority, including, without limitation, income, excise, property, sales,

21   transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance,

22   stamp, occupation and withholding tax.  Under the Plan, "Tax" includes any interest, penalties or

23   additions attributable to, or imposed on or with respect to, such assessments.

24      **121.**   **"Tax Claim"** means any Claim, pre-petition or post-petition, relating to a

25   Tax.

26      **122.**   **"Unclaimed Property Reserve"** has the meaning set forth in Section 7.2.7 of

27   the Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-21-

1    **123.** "**United States Trustee**" means the Office of the United States Trustee for

2    the Central District of California.

3    **124.** "**United States Trustee Fees**" means all fees and charges assessed against the

4    Debtor or the Reorganized Debtor by the United States Trustee and due pursuant to section 1930 of

5    title 28 of the United States Code.

6    **125.** "**Winthrop Couchot**" means Winthrop Couchot Professional Corporation,

7    general insolvency counsel to the Committee in the Case.

8    **B.    Rules of Interpretation.**

9    For the purpose of this Disclosure Statement, unless otherwise provided in this Disclosure

10    Statement, (1) the rules of construction set forth in section 102 of the Bankruptcy Code apply to this

11    Disclosure Statement; (2) Rule 9006(a) of the Federal Bankruptcy Rules applies when computing

12    any time period under the Plan; (3) a term that is used in this Disclosure Statement and that is not

13    defined in this Disclosure Statement has the meaning attributed to that term, if any, in the

14    Bankruptcy Code or in the Bankruptcy Rules; (4) the definition given to any term or provision in the

15    Plan supersedes any different meaning that may be given to that term or provision in this Disclosure

16    Statement; (5) whenever it is appropriate from the context, each term, whether stated in the singular

17    or the plural, includes both the singular and the plural; (6) each pronoun stated in the masculine,

18    feminine or neuter includes each of the masculine, feminine and neuter; (7) any reference to an

19    exhibit, schedule, instrument or other document means such exhibit, schedule, instrument or other

20    document as it has been, or may be, amended, modified, restated or supplemented as of the

21    Confirmation Date, and any such exhibit, schedule, instrument or other document will be deemed to

22    be included in this Disclosure Statement, regardless of when it is filed; (8) the phrases "under this

23    Disclosure Statement," "hereof," "hereto," "hereunder," and similar words or phrases, refer to this

24    Disclosure Statement in its entirety rather than to only a portion of this Disclosure Statement;

25    (9) unless otherwise indicated, all references in this Disclosure Statement to paragraphs, articles or

26    exhibits are references to paragraphs, articles or exhibits in this Disclosure Statement; (10) paragraph

27    captions and headings are used for convenience only and do not affect the meaning of this

28

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    Disclosure Statement; and (11) any reference to the holder of a Claim or Interest includes that

2    entity's successor and assigns.

3    **C.    Exhibits.**

4    All exhibits to this Disclosure Statement are incorporated into and are a part of this

5    Disclosure Statement as if set forth in full herein.

6    ## III.

7    ## OVERVIEW OF THE CHAPTER 11 PROCESS,

8    ## THE PLAN AND VOTING ON THE PLAN

9    **A.    The Chapter 11 Process.**

10    Chapter 11 of the Bankruptcy Code provides debtors with a "breathing spell" within which to

11    propose a restructuring of their obligations to third parties. The filing of a Chapter 11 bankruptcy

12    petition creates a bankruptcy "estate" comprising all of the property interests of the debtor. Unless a

13    trustee is appointed by the bankruptcy court for cause (no trustee has been appointed in the Case), a

14    debtor remains in possession and control of all its assets as a "debtor-in-possession." The debtor

15    may continue to operate its business in the ordinary course on a day-to-day basis without bankruptcy

16    court approval. Bankruptcy court approval is required only for various kinds of transactions as to

17    which the Bankruptcy Code requires approval (such as certain financing transactions) and

18    transactions out of the ordinary course of a debtor's business. The filing of the bankruptcy petition

19    gives rise to what is known as the "automatic stay" which, generally, enjoins creditors from taking

20    any action to collect or recover obligations owed by a debtor prior to the commencement of a

21    Chapter 11 case. The bankruptcy court can, however, grant relief from the automatic stay, under

22    certain specified conditions or for cause.

23    A Chapter 11 debtor may propose a plan providing for the reorganization of the debtor or for

24    the orderly liquidation of the assets of the debtor's estate. A plan provides, among other things, for

25    the treatment of the claims of the debtor's creditors and the interests of the debtor's shareholders.

26

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

**B.    Overview of the Plan Proponents' Proposed Plan.**

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan.  For a more detailed description of the terms and provisions of the Plan, see Articles VI and VII below.

The primary objectives of the Plan are to transfer all Assets of the Debtor, including all Causes of Action, to the Plan Fund, which will liquidate the Assets, including by prosecuting the Causes of Action, and to distribute the proceeds thereof to holders of Allowed Claims in satisfaction of the Debtor's obligations.  The holders of Interests will not receive or retain anything on account of their Interests, except as provided for under Section 5.6 of the Plan.

The Plan designates five Classes of Claims and one Class of Interests, which include all Claims against, and Interests in, the Debtor.  These Classes take into account the differing nature and priority under the Bankruptcy Code of the various Classes and Interests.

The following table (the "Plan Summary Table") summarizes the treatment of Claims and Interests under the Plan with: (1) the Plan Proponents' estimates of the amount of Claims in each category or Class, and (2) a brief description of the treatment provided for in the Plan for each Class of Claims or Interests.  The amounts of the Claims listed in the Plan Summary Table have been estimated by the Plan Proponents as of the date of this Disclosure Statement and do not constitute an admission by the Plan Proponents as to the validity or amount of any particular Claim.  The Plan Proponents reserve the right to dispute the validity or amount of any Claim or Interest that has not already been allowed by the Bankruptcy Court.  This information is based on the Debtor's Schedules, the Debtor's financial books and records, and the Plan Proponents' review of the Proofs of Claim filed in the Case.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

## SUMMARY OF CLAIMS AND INTERESTS UNDER THE PLAN

| Class | Claim/Interest | Summary of Treatment[5] | Estimated Aggregate Amount of Claims [6] |
|-------|----------------|-------------------------|------------------------------------------|
| n/a | Allowed Administrative Claims | Payment in full, in Cash, on or about the Effective Date or as an Administrative Claim is allowed by the Bankruptcy Court. | $1,114,557 |
| n/a | Allowed Priority Tax Claims | Payment in full, in Cash, on or about the Effective Date, or as a Priority Tax Claim is allowed by the Bankruptcy Court. | $463,729 |
| 1 | Allowed Secured Claims | Entitled to receive one of the payment options, elected by the Plan Agent, set forth in Section 5.1 of the Plan. | $33,810 |
| 2 | Allowed Priority Non-Tax Claims | Payment in full, in Cash, on or about the Effective Date, or as a Priority Non-Tax Claim is allowed by the Bankruptcy Court[7]. | $564,182 |
| 3 | Allowed General Unsecured Claims | Payment of Distributions from Plan Fund over the course of the Plan, as set forth in Section 5.3 of the Plan. | $13,243,758 |
| 4 | The Canopy Claim | The Canopy Claim will be paid in accordance with the terms of the Canopy Settlement Agreement (Exhibit "1" to the Plan). | Up to $1,000,000.00 |
| 5 | Allowed Subordinated Claims | Payment only if all other Allowed Claims are paid in full. | To be determined. No Claims subordinated by the Bankruptcy Court as of the date of this Disclosure Statement |
| 6 | Allowed Interests | On the Effective Date of the Plan, the Interests will be cancelled. Interest Holders will receive Distributions only if all Allowed Claims, including all Allowed Subordinated Claims, are paid in full. | - 0 - |

Set forth in paragraph XII(F) hereof is a discussion of the projected recoveries by Creditors in the Case.

### C.   Plan Confirmation and Voting and Objections to the Plan.

The Bankruptcy Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan are not yet binding on the Debtor, Creditors and Interest

[5] This is only a summary of the treatment of Claims and Interests under the Plan. Creditors and Interest Holders should refer to Articles VI and VII of this Disclosure Statement for a more complete discussion of the treatment of Allowed Claims and Allowed Interests under the Plan.

[6] These amounts are estimates as of February 28, 2010. **Note that these amounts reflect a substantial amount of Disputed Claims.** See paragraph XII(F) hereof for a more complete discussion of the Claims and the estimated amount of Claims that will be allowed in the Case.

[7] The Debtor may seek from the Bankruptcy Court authority to pay Allowed Priority Non-Tax Claims prior to the Effective Date; however, such payment, if authorized, will not impact or affect the rights of holders of Allowed General Unsecured Claims, or the Liquidation Analysis or Feasibility Analysis insofar as they reflect the disposition of Allowed General Unsecured Claims, as Allowed Priority Non-Tax Claims must be paid prior to payment of Allowed General Unsecured Claims.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    Holders.  However, if the Bankruptcy Court confirms the Plan, the Plan will be binding on the

2    Debtor and on all Creditors and Interest Holders in the Case.

3         **1.**    **Voting on the Plan.**

4         A Creditor may vote to accept or to reject the Plan by filling out and mailing to the

5    Debtor's counsel the form of the ballot that has been provided herewith.  Ballots should be mailed

6    to Clarkson, Gore & Marsella, APLC, located at 3424 Carson Street, Suite 330, Torrance, California

7    90503 (Attn:  Eve A. Marsella).  **No telefaxed or e-mailed ballots will be accepted.**

8         Any Creditor holding Claims in more than one impaired Class must submit one

9    ballot for each such Class.  If a Creditor has received an incorrect ballot, or believes that he is

10   entitled to vote in more than one Class, additional ballots may be obtained upon written request

11   made to Clarkson Gore (Attn:  Eve A. Marsella).

12        In order to vote for or against the Plan, a Creditor must have filed a Proof of Claim

13   on or before the Bar Date, unless his Claim is listed in the Bankruptcy Schedules filed in the Case by

14   the Debtor as not being disputed, unliquidated or contingent.  Any such Creditor is, to the extent

15   listed in the Bankruptcy Schedules, deemed to have filed a Claim, and absent a timely objection to

16   the Claim, such Claim is deemed allowed.  In order to determine whether a Creditor is entitled to

17   vote on the Plan notwithstanding any failure to timely file a Proof of Claim, the Creditor should

18   review the Debtor's Bankruptcy Schedules on file with the Bankruptcy Court.  If a Creditor's Claim

19   is not scheduled, or, if it is scheduled as contingent, disputed, or unliquidated and the Creditor did

20   not file a Proof of Claim prior to the Bar Date, the Creditor may not be entitled to vote on the Plan.

21        The following types of Claims are not entitled to vote on the Plan:  (a) Claims that

22   have been disallowed; (b) Claims in an unimpaired Class; and (c) Administrative Claims and Priority

23   Tax Claims.  Claims in unimpaired Classes are not entitled to vote because such Classes are deemed

24   to have accepted the Plan.  Administrative Claims and Priority Tax Claims are not entitled to vote

25   because such Claims are not placed in Classes and they are required to receive certain treatment

26   specified by the Bankruptcy Code.  **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED**

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

        **2.**      **Deadline for Voting for or Against the Plan.**

The Bankruptcy Court has fixed July 15, 2010, at 4:00 p.m. Pacific Time, as the last date by which ballots must be received by Clarkson Gore, the Debtor's counsel. Subject to review and determination by the Bankruptcy Court, votes received by Clarkson Gore after that date may not be counted. Whether or not a Creditor votes on the Plan, he will be bound by the terms of the Plan and the treatment of his Claim set forth in the Plan if the Plan is confirmed by the Bankruptcy Court. Absent some affirmative act constituting a vote, a Creditor will not be included in the voting tally. Allowance of a Claim for voting purposes does not necessarily mean that all or a portion of the Claim will be allowed for distribution purposes.

Since, subject only to any order of the Bankruptcy Court to the contrary, only the votes of those Creditors whose ballots are timely received may be counted in determining whether a Class has accepted the Plan, Creditors are urged to fill in, date, sign and promptly mail the enclosed ballot.

        **3.**      **Time and Place of the Confirmation Hearing.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. The hearing at which the Bankruptcy Court will determine whether or not to confirm the Plan will take place on August 26, 2010, at 10:30 a.m., in Courtroom 5A, 411 West Fourth Street, Santa Ana, California. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

        **4.**      **Deadline For Objecting to the Confirmation of the Plan.**

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to the confirmation of the Plan. Objections to the confirmation of the Plan must be in writing and conform to the requirements of the Bankruptcy Rules and must be filed with the Bankruptcy Court and served upon counsel to the Debtor, Clarkson, Gore & Marsella, APLC, Attn: Eve A.

*Sidebar (left margin):* CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    Marsella, 3424 Carson Street, Suite 350, Torrance, CA 90503, upon counsel for the Committee,

2    Winthrop Couchot Professional Corporation, Attn: Robert E. Opera, 660 Newport Center Drive,

3    Suite 400, Newport Beach, CA 92660, and upon the United States Trustee, Attn: Frank Cadigan,

4    Esq., 411 Fourth Street, Suite 9041, Santa Ana, CA 92701, so as to be received by 4:00 p.m. (Pacific

5    Time) on July 15, 2010.  Objections to confirmation of the Plan are governed by Rule 9014 of the

6    Federal Bankruptcy Rules. **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY**

7    **AND PROPERLY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE**

8    **BANKRUPTCY COURT.**

9            5.    **Plan Confirmation.**

10           The Bankruptcy Court will confirm the Plan if the requirements of section 1129 of

11   the Bankruptcy Code are satisfied.  Section 1129 requires, among other things, that: (a) with respect

12   to each Class of Claims, each holder of a Claim in that Class has accepted the Plan, or will receive or

13   retain under the Plan on account of such Claim, property of a value that is not less than the amount

14   that such holder would receive if the Debtor were to liquidate its assets under Chapter 7 of the

15   Bankruptcy Code; (b) confirmation of the Plan is not likely to be followed by a liquidation of the

16   Debtor or the need for further reorganization of the Debtor unless liquidation or further

17   reorganization is proposed by the Plan; and (c) the Plan be accepted by each Class of Claims that is

18   impaired by the Plan, or the Plan does not discriminate unfairly and is fair and equitable to any

19   impaired Class that has not accepted the Plan.

20           To confirm the Plan, the Bankruptcy Court must determine whether each "impaired"

21   Class entitled to vote on the Plan has accepted the Plan.  Pursuant to section 1124 of the Bankruptcy

22   Code, Classes "impaired" by the Plan are those Classes whose legal, equitable or contractual rights

23   are altered pursuant to the Plan.  Under section 1126(c) of the Bankruptcy Code, an impaired Class

24   of Claims is deemed to have accepted the Plan if the Plan is accepted by Creditors in that Class

25   holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the

26   Allowed Claims of Creditors in that Class actually voting on the Plan.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    The Plan Proponents intend to request that the Bankruptcy Court confirm the Plan

2    pursuant to the provisions of section 1129(b) of the Bankruptcy Code.[8]  Pursuant to section 1129(b),

3    the Plan may be confirmed despite the failure of a Class of Claims or Interests to accept the Plan if

4    the Bankruptcy Court determines that the Plan does not discriminate unfairly and is fair and

5    equitable with respect to each Class of Claims or Interests that is impaired under, and that has not

6    accepted, the Plan, and determines that the Plan otherwise complies with the requirements of

7    section 1129(b) of the Bankruptcy Code.  The condition that the Plan be fair and equitable with

8    respect to such nonaccepting Classes includes certain legal requirements more fully set forth in

9    section 1129(b).

10    **6.    Identity of Persons to Contact for More Information**

11    **Regarding this Disclosure Statement or the Plan.**

12    Any interested party desiring further information about this Disclosure Statement or

13    the Plan should contact counsel for the Debtor, Clarkson, Gore & Marsella, APLC, Attn:  Eve A.

14    Marsella, 3424 Carson Street, Suite 350, Torrance, CA 90503; telephone no. (310) 542-0111, or

15    counsel for the Committee, Winthrop Couchot Professional Corporation, Attn:  Robert E. Opera,

16    660 Newport Center Drive, Suite 400, Newport Beach, California 92660; telephone no. (949)

17    720-4100.

18    **IV.**

19    **BACKGROUND OF THE DEBTOR**

20    **A.    Description and History of the Debtor's Business.**

21    While the Debtor operated, the Debtor was a global provider of end-to-end information

22    infrastructure solutions for mid to large size companies.  The Debtor offered a wide range of storage

23    systems, software, services and solutions designed to assist organizations to maximize their

24    information technology assets.  With more than 20 years of experience delivering technology

25    solutions and more than 5 million hours of providing professional services, the Debtor was a leader

26

27

28

<div style="border-left">CLARKSON, GORE & MARSELLA, APLC<br/>ATTORNEYS AT LAW<br/>TORRANCE, CALIFORNIA</div>

---

[8] The Class of Interest Holders under the Plan (Class 6) is deemed not to have accepted the Plan, and, accordingly, the Plan Proponents will seek to obtain confirmation of the Plan by resorting to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

MTI Disclosure Statement v1 4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    in end-to-end information infrastructure solutions and had strategic technology and services

2    relationships with industry leaders including, EMC Corporation ("EMC"), Microsoft, VMWARE,

3    Symantec and Cisco.

4    The Debtor was also a reseller and service provider of EMC Automated Networked Storage

5    systems and software pursuant to a reseller agreement with EMC. The sale of EMC products

6    accounted for 88% and 56% of the Debtor's net product revenue and total revenue, respectively, for

7    the three months ended July 7, 2007 and 89% and 70% of net product revenue and total revenue,

8    respectively, for the three months ended July 1, 2006.

9    In 2007, the Debtor served more than 3,500 customers throughout North America and

10    Europe (directly and through wholly-owned subsidiaries). The Debtor's revenues for its fiscal year

11    2006 exceeded $135,000,000.00.

12    As of or just prior to the Petition Date (October 15, 2007), the Debtor had the following

13    operations:

14    **1.    European Subsidiaries.**

15    The Debtor owned all of the issued and outstanding capital stock of the following

16    entities:  MTI Technology GmbH, incorporated in Germany; MTI Technology Limited, incorporated

17    in Scotland; and MTI France S.A.S., incorporated in France (collectively, the "European

18    Subsidiaries").

19    **2.    Collective.**

20    A United States-based service division known as "Collective."[9]

21    **3.    Domestic Sales and Service Division.**

22    A United States-based sales and service division separate from Collective.

23    **B.    Corporate History.**

24    The Debtor was incorporated in California in March 1981 and reincorporated in Delaware in

25    April 1992. The Debtor's principal place of business is located in Tustin, Orange County, California.

26

27    [9] In July 2006, the Debtor acquired Collective Technologies, Inc., which became the Debtor's "Collective" service division.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1   On or about April 7, 1994, the MTI Stock was listed on the NASDAQ Capital Market. The MTI

2   Stock was delisted from The NASDAQ Capital Market on June 1, 2007 for failure to meet certain

3   listing standards. Market maker quotes for the Debtor's common stock are currently published by

4   Pink Sheets LLC (the "Pink Sheets").

5          **C.**    **Events Precipitating the Debtor's Bankruptcy Filing.**

6         Commencing in 1986, the Debtor was a developer, manufacturer and seller of computer

7   storage equipment. From about 1986 through about 2000, the Debtor enjoyed a period of strong

8   growth that ended with the severe slowdown of the technology sector in about 2000.

9         In about 2003, the Debtor undertook a series of actions in support of a revised business

10   strategy. When such strategy was fully implemented, all development and manufacturing operations

11   of the Debtor were discontinued. The Debtor sold its intellectual property to EMC and the Debtor

12   became an EMC reseller and strategic partner. The Debtor also raised, in a preferred stock offering,

13   approximately $15 million in support of such business strategy.

14         Although the Debtor's growth resumed under the Debtor's EMC reseller strategy, as a result

15   of the high costs associated with being a public entity, the legacy costs associated with the Debtor's

16   having been a manufacturing company and the narrowing margins of a system integrator, the Debtor

17   continued to struggle to attain profitability, although it made progress in reducing its operating

18   losses.

19         In about 2005, the Debtor further revised its business strategy in an attempt to achieve

20   profitability. In about 2005, the Debtor determined to attempt to increase substantially the mix of

21   information technology consulting services that it sold and delivered. To achieve this goal, in

22   November 2005, the Debtor raised $20 million in a Series "B" preferred offering. $3.5 million of

23   the proceeds from this offering were used to provide needed working capital for the European

24   Subsidiaries, which were focusing on providing such services on behalf of the Debtor.

25         In 2006, the Debtor acquired Collective, an information technology consulting services

26   company, for a total of $11 million in cash, debt, stock and warrants. The Debtor's attempt to

27   convert to an information technology consulting services-focused company proved to be more

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  difficult and required more investment than the Debtor had anticipated. The synergies that the

2  Debtor anticipated obtaining from the Collective acquisition were not realized fully by the Debtor

3  and the Debtor's losses continued.

4      In the first half of 2007, the Debtor hired Needham & Company, an investment banking firm,

5  to advise the Debtor regarding its strategic alternatives. The Debtor determined to attempt to find

6  strategic partners with which to merge the Debtor's business, or to sell the Debtor's business. With

7  the assistance of Needham & Company, the Debtor contacted over 130 companies to gauge their

8  interest in effectuating a strategic transaction with the Debtor. Ultimately, no merger partner or

9  buyer for the Debtor emerged.

10     The process of the Debtor's trying to locate a strategy partner or a buyer for the Debtor's

11  business took much longer than the Debtor had anticipated and was costly for the Debtor. In 2007,

12  the Debtor's domestic product sales unexpectedly took a downward turn, leaving the Debtor faced

13  with a significant cash flow issues.

14  **D.    Management of the Debtor Before and After the Petition Date.**

15      **1.    Prior to the Petition Date.**

16      Prior to the Petition Date, the key managers and directors of the Debtor were as

17  follows:

18          **a.    Key Managers.**

19          Edward Kimbauer, Vice President & Corporate Controller
            Keith Clark, Executive Vice President, Europe and Worldwide Operations
20          Scott Poteracki, Executive Vice President, Chief Financial Officer and Secretary
            Thomas P. Raimondi, Jr., Chief Executive Officer and President
21          Edward Ateyeh, Executive Vice President, United States Services
            William J. Kerley, Chief Operating Officer, United States Services
22

23          **b.    Corporate Directors.**

24          Lawrence P. Begley, Director
            Franz L. Cristiani, Director
25          Michael Pehl, Director
            Kent D. Smith, Director
26          Ronald E. Heinz, Jr., Director
            William Atkins, Director
27          Thomas P. Raimondi, Jr., Chairman of the Board

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1

2.      **After the Petition Date.**

2      At this time, the Debtor's management consists of the following individuals:

3          a.      **Scott Poteracki.**

4              Mr. Poteracki serves as Chief Reorganization Officer of the Debtor. He is

5      compensated at the rate of $250.00 per hour for 20 hours monthly (any time in excess of 20 hours

6      requires Committee approval) and receives limited benefits.

7          b.      **Thomas P. Raimondi, Jr.**

8              Mr. Raimondi serves as a consultant to the Debtor. He is compensated at the

9      rate of $300.00 per hour for 10 hours monthly (any time in excess of 10 hours requires Committee

10     approval) and initially received limited benefits.

11         c.      **Todd Schaeffer.**

12             Mr. Schaeffer serves as a consultant to the Debtor. He is compensated at the

13     rate of $136.00 per hour (for an average of approximately 10 days per month, as needed).

14     E.      **Events Leading to the Debtor's Chapter 11 Filing.**

15     A combination of factors occurred within several months prior to the Petition Date which

16     caused the Debtor to file its Chapter 11 petition. Such factors include the following:

17         1.      **Delay in Closing of Sale of European Subsidiaries.**

18             A sale of the Debtor's interests in the European Subsidiaries, which had been

19     anticipated to close in August 2007, was postponed because an agreement regarding the provision of

20     various representations and warranties could not be reached. The delay in closing this transaction

21     deprived the Debtor of the anticipated proceeds from the sale of the European Subsidiaries.

22     Furthermore, the Debtor was not able to repatriate earnings of the European Subsidiaries to address

23     the Debtor's cash flow needs.

24         2.      **Disputes with EMC.**

25             In mid-September 2007, the Debtor's major supplier, EMC, refused to continue

26     taking orders from the Debtor and instead sought to have orders from the Debtor's customers made

27     directly to EMC. Furthermore, EMC began holding back payments owed to the Debtor for

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

consulting services that the Debtor had provided to EMC, exacerbating the Debtor's cash flow problems.

### 3. Problems with Sales Force.

During the several months preceding the Petition Date, the Debtor's sales force began to withhold order writing, assuming that the Debtor would be sold, and, at the same time, FusionStorm approached and obtained the services of a significant portion of the Debtor's Northeastern United States sales team, resulting in a loss of significant revenues for the Debtor.

### 4. Canopy.

An insider of the Debtor, Canopy, refused to provide to the Debtor access to additional credit lines.

As a result of the foregoing, the Debtor experienced substantial cash flow difficulties which made continued business operations impossible and which compelled the Debtor to file, on October 15, 2007, a Chapter 11 petition for relief, commencing the Case.

### F. Significant Events During the Case.

Since the Petition Date, the Debtor has continued to manage its assets, as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtor has ceased all business operations with the exception of collecting its accounts receivable, disposing of its Assets and assisting the Debtor's counsel and the Committee with various recovery analyses, Claims review, the prosecution of Causes of Action and the development of the Plan.

The following is a list of significant events which have occurred during the Case.

### 1. Case Administration.

#### a. Omni.

The Debtor employed, as its claims and noticing agent in the Case, Omni Management Group, LLC ("Omni") to assist the Debtor with respect to preparing the Bankruptcy Schedules, maintaining Claims information, assisting the Debtor to comply with the reporting requirements of the United States Trustee, providing advice related to the Debtor's banking and financial matters, and assisting the Debtor with respect to serving notice of proceedings in the Case.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1     **b.    Rejection of Leases.**

2          The Debtor has rejected its leases of its business premises, as well as all of its

3    known personal property leases and executory contracts, except for those which are related to its

4    post-petition operations.

5     **2.    First-Day Motions and Early Case Motions.**

6          The Debtor filed several "first-day" motions, the relief sought by which was needed

7    by the Debtor on an emergency basis.  By these motions, the Debtor requested that the Bankruptcy

8    Court enter orders authorizing the following: (a) the Debtor's borrowing, on an interim basis, up to

9    $1,000,000 from Zinc Holdings LLC ("Zinc"), then a prospective buyer of the Debtor's interests in

10   the European Subsidiaries (the "Interim DIP Financing"); (b) the Debtor's maintaining a pre-petition

11   bank account in addition to debtor-in-possession accounts; (c) the Debtor's maintaining utility

12   services with adequate deposits; (d) the limiting of notice to certain creditors; (e) the Debtor's

13   paying of certain pre-petition wages and expense reimbursements to non-insider employees of the

14   Debtor, up to the statutory level of priority unsecured claim allowances; and (f) the Debtor's

15   employing Omni as the claims and noticing agent in the Case.  These motions were approved by

16   orders of the Bankruptcy Court on October 16, 2007 and October 18, 2007.  The Debtor also filed an

17   application to employ Clarkson Gore and its general insolvency counsel in the Case and a

18   "Knudsen" motion to authorize monthly payment of fees of Professionals employed in the Case,

19   which also were approved by the Bankruptcy Court.

20   **3.    Asset Sale Procedures Motion for European Subsidiaries.**

21        On October 16, 2007, the Debtor filed its Motion for Order Approving (1)

22   Procedures for Sale of Debtor's European Assets Free and Clear of Liens, Claims and Interests; and

23   (2) for Break Up Fee and Expense Reimbursement ("Sale Procedures Motion").  The Sales

24   Procedure Motion was granted on October 16, 2007.  Among the salient items addressed by the Sale

25   Procedures Motion were: (a) the notice requirements in connection with a motion to sell the

26   Debtor's interests in the European Subsidiaries ("Sale Motion"), (b) bidding procedures applicable

27   to overbidders in connection with the hearing on the Sale Motion, (c) a break-up fee and expense

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1  reimbursement to be paid to Zinc in the event that another party were to successfully overbid Zinc,

2  and (d) the scheduling of an auction and a hearing with respect to the Sale Motion.

3      **4.**    **Sale Motion**.

4      On October 22, 2007, the Debtor filed the Sale Motion requesting, pursuant to

5  sections 105, 363(b), 363 (f) and 365 of the Bankruptcy Code, an order approving the sale of the

6  Debtor's interests in the European Subsidiaries free and clear of all liens, claims and interests, with

7  such liens, claims, and interests attaching to the proceeds of such sale with the same validity and

8  priority as existed prior to such sale. In accordance with the Sale Motion, on November 20, 2007, the

9  Debtor's interests in the European Subsidiaries were sold for an aggregate amount of $7,275,000.

10      **5.**    **Post-Petition Financing**.

11      On October 16, 2007, the Bankruptcy Court approved the Debtor's request to obtain

12  from Zinc the Interim DIP Financing of up to $1,000,000, and, at a final hearing held on

13  November 7, 2007, the Bankruptcy Court approved the Debtor's request to obtain from Zinc

14  financing in an amount up to $5,000,000.  On December 22, 2007, the Debtor paid to Zinc the full

15  amount of such financing that the Debtor had borrowed from Zinc.

16      **6.**    **Sale of Various United States Assets**.

17      During the Case, the Debtor has worked to liquidate various Assets based in the

18  United States, including the following:

19      **a.**    **Collective.**

20      On the eve of the Petition Date, the Debtor entered into a Client Transition

21  Agreement with The Collective Group in which it licensed to The Collective Group the right to use

22  the Debtor's assets associated with the Debtor's Collective information technology services division,

23  previously located in Austin, Texas, in exchange for 10% of certain revenues generated as a result of

24  services performed by The Collective Group. The Client Transition Agreement contemplated the

25  parties' entering into an asset purchase agreement for the licensed assets.   The Debtor filed a motion

26  to assume the Client Transition Agreement ("CTA Assumption Motion").  Fusionware thereafter

27  notified the Debtor of Fusionware's interest in overbidding on the assumption of the Client

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   Transition Agreement and negotiations ensued involving the Committee, the Debtor, The Collective

2   Group and Fusionware, resulting in The Collective Group's providing to the Debtor an offer to enter

3   into an Amended and Restated Client Transition Agreement, pursuant to which The Collective

4   Group agreed to purchase the licensed assets for $125,000 (less amounts paid pursuant to the Client

5   Transition Agreement) plus 20% of new business generated with the Debtor's former customers over

6   a period of 12 months. Such offer was accepted by the Debtor.

7          The Collective Group commenced making payments to the Debtor pursuant

8   to the terms of the original Client Transition Agreement, resulting in payment to the Estate of

9   approximately $50,000, and commenced aiding the Debtor in its efforts to collect approximately

10  $500,000 in receivables owed to the Debtor with respect to the Debtor's Collective business

11  division. The Debtor withdrew the CTA Assumption Motion and prepared and filed a motion to sell

12  and assign to The Collective Group the assets associated with the Collective business division, in

13  place of the Client Transition Agreement. Such motion was approved by the Bankruptcy Court on

14  May 15, 2008. The Debtor believes that the Collective Group has made all of the required payments

15  to the Debtor.

16          **b.      Furniture and Equipment Auction.**

17          On or about December 28, 2007, the Debtor filed an application to employ

18  CMA Business Credit Services as an auctioneer and to obtain authority to conduct an auction of

19  excess personal property at the Debtor's premises (e.g., office equipment, computers, printers,

20  servers, and office furniture). The application was approved by an order of the Bankruptcy Court

21  entered on January 16, 2008. The auction of such property was conducted on January 26, 2008, and

22  resulted in net proceeds of approximately $25,000 to the Estate.

23          **c.      National Customer Engineering, Inc.**

24          On December 13, 2007, the Debtor filed a motion seeking from the

25  Bankruptcy Court approval of an agreement for the sale of assets of the Debtor to National Customer

26  Engineering, Inc. ("NCE"). Pursuant to the parties' purchase and sale agreement ("NCE

27  Agreement"), NCE agreed to: (i) purchase certain fixed assets associated with the Debtor's "Legacy

28

1    Hardware" (essentially spare parts and testing equipment); (ii) perform and discharge all of the

2    Debtor's obligations to the Legacy Hardware customers under the Debtor's prepaid maintenance and

3    support agreements with such customers (for which such customers had paid an estimated $400,000-

4    $600,000); (iii) pay to the Debtor 10% of amounts that would be collected by NCE in connection

5    with Legacy contracts that would be renewed or extended by NCE after the closing of the NCE

6    Agreement, for a period of up to one year after the Bankruptcy Court's approval of the NCE

7    Agreement; and (iv) allow the Debtor to collect any accounts receivable existing as of the closing of

8    the NCE Agreement. This motion was approved by an order of the Bankruptcy Court entered on

9    January 3, 2008. NCE has paid to the Debtor approximately $38,102 in connection with such

10   transaction.

11          **7.    The Debtor's Secured Creditors as of the Petition Date.**

12          On the Petition Date, the Debtor had two primary Secured Creditors, Wells Fargo

13   Bank, National Association, acting through its Wells Fargo Business Credit operating division

14   ("Wells Fargo"), and Canopy.  A description of the Secured Claims of these Creditors is as follows.

15          **a.    Wells Fargo Facility.**

16          Pursuant to an Account Purchase Agreement, dated November 27, 2006

17   (which was thereafter amended, supplemented and modified prior to the Petition Date), entered into

18   between the Debtor and Wells Fargo, the Debtor sold and assigned to Wells Fargo certain of the

19   Debtor's accounts receivable.  In connection with this transaction, the Debtor granted to Wells Fargo

20   a first-priority security interest and lien on the Debtor's then existing or thereafter arising accounts,

21   and any contract rights, inventory, general intangibles, chattel paper, documents, books and records,

22   proceeds and products, pertaining to such accounts. As of the Petition Date, the Debtor owed to

23   Wells Fargo approximately $1,741,745. The Debtor paid in full its obligation to Wells Fargo within

24   forty-five (45) days after the Petition Date; however, there remained an open question as to whether

25   Wells Fargo was inappropriately paid approximately $120,000 as a penalty for an early termination

26   of the Wells Fargo facility.  Discussions among Wells Fargo and the Committee resolved this issue

27   without litigation, and Wells Fargo repaid to the Debtor the full amount of the penalty.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**b.**  **The Canopy Facility.**

Pursuant to a Loan Agreement, dated June 27, 2002 (which was thereafter amended, supplemented, and modified prior to the Petition Date), Canopy guaranteed the Debtor's obligations under a Loan and Security Agreement between the Debtor and Comerica Bank-California (the "Comerica Line of Credit"), and Canopy secured its guarantee of the Comerica Line of Credit by pledging in favor of Comerica Bank-California a Seven Million Dollar ($7,000,000) letter of credit issued by Bank of America ("Canopy Letter of Credit"). To secure the Debtor's contingent obligation to Canopy, the Debtor granted to Canopy a security interest and lien on all of the Debtor's then existing and after-acquired general intangibles, accounts, inventory, equipment, goods, fixtures, chattel paper, documents, instruments and records.

Prior to the Petition Date, the Debtor did not comply with its obligations under the Comerica Line of Credit, and Comerica Bank-California called upon the Canopy Letter of Credit and used it to satisfy in full the Comerica Line of Credit. As a result thereof, as of the Petition Date, the Debtor owed to Canopy approximately $5,190,546, plus interest and attorneys' fees and costs, in connection with the Canopy facility.

The Committee evaluated thoroughly Canopy's Secured Claim and determined to challenge the perfection of Canopy's security interest, asserting that such security interest was avoidable as a preferential transfer. Canopy disputed such assertion. Extensive negotiations were conducted between Canopy and the Committee in order to attempt to resolve such disputes. On or about July 28, 2008, the Debtor, the Committee, and Canopy negotiated that Settlement Agreement and Mutual Release of Claims ("Canopy Settlement Agreement"), resolving the disputes regarding the validity and payment of Canopy's Secured Claim. The Canopy Settlement Agreement was approved by an order of the Bankruptcy Court entered on November 13, 2008. Pursuant to the Canopy Settlement Agreement, the Debtor paid to Canopy $2,500,000 on account of Canopy's Secured Claim and the Debtor received approximately $3,500,000. Pursuant to the Canopy Settlement Agreement, the Debtor agreed to assign to Canopy a share of the aggregate amount of any Avoidance Action proceeds received by the Debtor's Estate, payable to Canopy as

1    follows:  (i) if the gross proceeds of the Avoidance Actions are less then $1,000,000, Canopy

2    receives no payment; (ii) if the gross proceeds of the Avoidance Actions are between $1,000,000 and

3    $2,000,000, Canopy receives 5% of such proceeds; (iii) if the gross proceeds of the Avoidance

4    Actions are between $2,000,000 and $3,000,000, Canopy receives 10% of such proceeds; and (iv) if

5    the gross proceeds of the Avoidance Actions exceed $3,000,000, Canopy receives 15% of such

6    proceeds, up to a maximum of $1,000,000.  A copy of the Canopy Settlement Agreement is attached

7    as Exhibit "1" to the Plan.

8                    **8.     Accounts Receivable Collection/Litigation with Lenox.**

9                         **a.     Accounts Receivable.**

10                        During the Case, the Debtor has made diligent efforts to collect its accounts

11   receivable.  The Debtor believes that it now has collected virtually all of its collectable receivables.[10]

12                        **b.     Lenox.**

13                        The Debtor filed in the Bankruptcy Court a complaint against Lenox

14   Financial Mortgage Corporation ("Lenox") to collect approximately $95,385 that Lenox owed to the

15   Debtor.  Lenox asserted defenses to the Debtor's action.  The parties thereafter agreed to settle their

16   disputes, but Lenox defaulted in paying its obligations in connection with such settlement.  The

17   Debtor ultimately collected the full amount of its claim against Lenox.

18                        **c.     Rockwell.**

19                        The Debtor entered into a settlement agreement with Rockwell Collins, Inc.

20   ("Rockwell") pursuant to which Rockwell agreed to pay to the Debtor the amount of $69,575 with

21   respect to a delinquent account owed to the Debtor.  In turn, the Debtor agreed to provide to

22   Rockwell an Allowed General Unsecured Claim in the amount of $47,240.  This agreement was

23   approved by the Bankruptcy Court by an order entered on December 21, 2009.

24

25

26

27   _____
     [10] The Debtor has a receivable owed by Dell in the amount of approximately $73,868, which the Debtor will continue to
     try to collect but which may provide to be uncollectable.

28

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5  20  10.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

9.    **Employment of Professionals.**

The Bankruptcy Court has approved the employment of the following Professionals in the Case:

    a.    Clarkson Gore -- Debtor's general insolvency counsel;

    b.    Omni -- the Debtor's claims and noticing agent;

    c.    Manatt, Phelps & Phillips, LLP -- the Debtor's corporate counsel;

    d.    Beachcroft LLP; J.P. Karsenty Et Associes; Schmalz Rechtsanwälte; and Tods Murray LLP -- the Debtor's European corporate counsels in connection with the December 2007 sale of the Debtor's interests in the European Subsidiaries;

    e.    Squar, Milner, Peterson, Miranda & Williamson, LLP -- the Debtor's accountants;

    f.    Elmer Dean Martin, III -- the Debtor's tax counsel;

    g.    Winthrop Couchot -- counsel for the Committee; and

    h.    Corporate Recovery Associates -- the Committee's financial advisors.

**V.**

**LITIGATION AND OBJECTIONS TO CLAIMS**

A.    **Litigation Commenced Prior to the Petition Date.**

As of the Petition Date, the Debtor was involved in certain litigation as set forth in the Bankruptcy Schedules. All of this litigation has been stayed. The Plan Proponents believe that such litigation will not have a material impact on the feasibility or implementation of the Plan.

B.    **Litigation Commenced After the Petition Date.**

After the Petition Date, the Debtor and the Committee have commenced a number of actions, including collection actions and various Avoidance Actions. Attached hereto as **Exhibit "A"** is a list of all pending actions filed in the Case.

Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principle of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Cause of

2    Action, or potential Cause of Action, in the Plan, this Disclosure Statement, or any other document

3    filed with the Bankruptcy Court will in no manner waive, eliminate, modify, release, impair or alter

4    the Debtor's or the Plan Agent's right to commence, prosecute, defend against, settle, and realize

5    upon any Cause of Action that the Debtor or the Estate has or may have as of the Effective Date.

6    Unless otherwise provided in the Plan or in the Confirmation Order, to the extent that any filed or to-

7    be-filed actions are not resolved as of the Effective Date, the Plan Agent, under the supervision of

8    the Post-Effective Date Committee, will prosecute, settle, or otherwise resolve or dispose of Causes

9    of Action in the Case.

10       The discussion regarding litigation and objections to Disputed Claims contained in this

11   Article is for informational purposes only. Nothing contained herein is intended, nor should be

12   construed, to be any admission or acknowledgement by the Plan Proponents of any matter pertaining

13   to the Causes of Action in the Case. The Debtor, the Committee and the Plan Agent to be employed

14   under the Plan reserve all of their respective rights and remedies with respect to Causes of Action

15   asserted or that may be asserted in the Case.

16       **1.    Litigation.**

17       As stated hereinabove, **Exhibit "A"** attached hereto sets forth a list of all actions

18   filed by the Debtor or by the Committee after the Petition Date. The primary actions filed in the

19   Case are as follows:

20       **a.    EMC.**

21       On May 1, 2009, the Debtor filed in the Bankruptcy Court a complaint

22   against EMC asserting, in part, the following causes of action: avoidance and recovery of

23   preferential transfers; breach of written contact; and turnover of property of the Estate. EMC filed

24   an answer to such complaint and asserted counterclaims against the Debtor. After extensive

25   discovery conducted by the parties and after settlement negotiations among the parties and the

26   Committee, including a mediation proceeding, on or about March 4, 2010, the parties agreed to settle

27   their disputes. Subject to the approval of the Bankruptcy Court, the Debtor and EMC have agreed to

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

settle their disputes materially in accordance with the following terms and conditions ("EMC

Settlement Agreement"):

      (i)    EMC will pay to the Debtor $1.9 million cash ("EMC

Settlement Payment");

      (ii)    EMC will waive and release its Administrative Claims against

the Debtor, asserted to be in an amount of approximately $578,649;

      (iii)    EMC will waive and release its General Unsecured Claims

against the Debtor, asserted to be in an amount of approximately $4,464,523; and

      (iv)    The Debtor and EMC will waive and release any and all claims

that they may have against each other.

The Debtor intends to file, in March 2010, a motion, pursuant to Rule 9019

of the Federal Bankruptcy Rules to obtain approval of its proposed settlement with EMC. The

Committee supports such settlement.

**b.**    **Pencom Defendants.**

On October 14, 2009, the Committee filed in the Bankruptcy Court a

complaint against Pencom Systems, Inc., Edgar Saadi, Wade Saadi and Edward Ateyeh

(collectively, "Pencom Defendants"), asserting, in part, the following causes of action:  avoidance

and recovery of transfers of property; disallowance of claims; and breach of fiduciary duties

("Pencom Action").  By the Pencom Action, the Committee seeks a recovery against the Pencom

Defendants in an amount in excess of $9.0 million.  The Pencom Defendants filed a motion to

dismiss the Committee's complaint, and a hearing thereon is scheduled for August 5, 2010.  The

Committee and the Pencom Defendants have agreed to mediate their disputes, and the Bankruptcy

Court has ordered that such mediation be held by June 18, 2010.

**c.**    **FusionStorm.**

On March 4, 2010, the Debtor filed in the Bankruptcy Court its First

Amended Complaint for (1) Breach of Contract by FusionStorm, Etc. (the "FusionStorm Action")

against FusionStorm, certain of Fusion Storm's employees, and certain former employees of the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  Debtor asserting against them, *inter alia*, the following causes of action: breach of contract; breach

2  of fiduciary duty; aiding and abetting breach of fiduciary duty; breach of statutory duties of

3  employees; breach of common law duties of loyalty by employees; intentional interference with

4  contract and with prospective economic advantage; unfair competition; breach of covenants of good

5  faith and fair dealing; violation of the automatic stay under section 362 of the Bankruptcy Code;

6  breaches of California's Uniform Trade Secret Act, the Computer Fraud and Abuse Act, and

7  California Penal Code Section 502(c) (regarding unauthorized use of the Debtor's computers,

8  systems and data), objections to proofs of claims filed by certain of the defendants, Robert Owen

9  (Claim No. 246), Christopher Butts (Claim No. 63), Marc Franz (Claim No. 96), and Robert Linsky

10  (Claim No. 497) and equitable subordination thereof; conversion of the Debtor's property, and

11  turnover of the Debtor's property pursuant to section 542 of the Bankruptcy Code. By the

12  FusionStorm Action, the Debtor has alleged that FusionStorm and the other defendants created

13  and/or participated in an unlawful and anti-competitive scheme to destroy the Debtor's operations in

14  North America and to obtain the Debtor's East Coast division, along with the Debtor's customers

15  and goodwill, without paying the Debtor therefor, and that the defendants' knowing and culpable

16  participation in that scheme ultimately led to the downfall of the Debtor. In particular, the Debtor

17  believes that FusionStorm and the other defendants improperly used the Debtor's confidential and

18  proprietary information and trade secrets, unlawfully solicited, directly or indirectly, former

19  employees of the Debtor for employment by FusionStorm, and unlawfully solicited the Debtor's

20  customers. By the FusionStorm Action, the Debtor seeks a recovery against the defendants in an

21  amount in excess of $1,000,000 to be proven at trial and seeks the additional relief described therein,

22  including but not limited to, turnover of the Debtor's confidential and proprietary information and

23  trade secrets.

24        **2.**   **Claims Objections.**

25          The Plan Proponents have not completed their review, analysis and investigation of

26  the Proofs of Claim and their preparation of objections to Disputed Claims. The Debtor has filed

27  numerous objections to Disputed Claims, and the Plan Proponents expect that they (and the Plan

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-44-

1   Agent after the Effective Date) will pursue objections to other Disputed Claims.  The Plan

2   Proponents anticipate that the Claims adjudication process will be completed by the end of 2010.

3       **3.    Subordination Actions.**

4       The Plan Proponents have not completed their review, analysis and investigation of

5   the Proofs of Claim with regard to determining whether any potential Causes of Action exist to

6   subordinate any Claims from Class 3 to Class 5.  The Plan Proponents reserve the right to assert

7   Causes of Action to subordinate any Claims in the Case.  If any such Causes of Action are to be

8   asserted in the Case, the Plan Proponents expect that such actions will be filed by December 1, 2010

9   and will be completed within about one year.

10      **VI.**

11      **DESCRIPTION OF THE PLAN**

12      The following is a brief summary of the Plan and is qualified in its entirety by the full text of

13  the Plan.  The terms of the Plan will be controlling on Creditors in the event that the Plan is

14  confirmed.  Therefore, all Creditors are urged to read the Plan carefully in its entirety rather than

15  relying on this summary.

16      **A.    Basic Structure of the Plan.**

17      The Plan proposes to pay the Claims of five (5) Classes of Creditors in accordance with the

18  provisions of the Plan.  The Plan provides for the establishment of one (1) Class consisting of

19  Interest Holders.

20      **B.    Classification and Treatment of Claims.**

21      Section 1123 of the Bankruptcy Code requires that the Plan Proponents, with certain

22  exceptions, classify separately in the Plan all Claims.  Pursuant to section 1122 of the Bankruptcy

23  Code, the Plan Proponents may place all Claims that are substantially the same in the same Class in

24  the Plan.  Section 1123(a)(4) of the Bankruptcy Code requires that the Plan provide the same

25  treatment for all Claims in the same Class, unless the holder of a particular Claim agrees to a less

26  favorable treatment of that Claim.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    Section 1123(a) of the Bankruptcy Code requires that the Plan Proponents specify in the Plan

2    any Class that is not "impaired" by the Plan and specify the treatment of any Class that is impaired

3    by the Plan.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims is "impaired" by

4    the Plan, unless the Plan (1) leaves unaltered the legal, equitable and contractual rights of holders of

5    the Claims, or (2) cures any defaults with respect to the Claims which occurred before the Petition

6    Date, reinstates the maturity of the Claims, and compensates the holders of the Claims for any

7    damages incurred by them as a result of any reasonable reliance by them on contractual provisions or

8    applicable law entitling them to receive accelerated payment after the occurrence of such defaults, or

9    (3) provides that, on the Effective Date, the holders of such Claims will receive Cash equal to the

10    amount of their Allowed Claims.  Pursuant to section 1126(f) of the Bankruptcy Code, a Class of

11    Claims that is not impaired by the Plan is conclusively presumed to have accepted the Plan, and is

12    not entitled to vote on the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, a Class is

13    deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such Class

14    do not receive or retain any property under the Plan on account of such Claims or Interests.

15    Classes 1 (Allowed Secured Claims), 2 (Allowed Priority Non-Tax Claims) and 4 (Canopy

16    Claim) are not "impaired" under the Plan and, therefore, are not entitled to vote on the Plan.

17    Classes 3 (Allowed General Unsecured Claims), 5 (Allowed Subordinated Claims) and 6 (Interest

18    Holders) are "impaired" under the Plan.  Classes 3 and 5 are entitled to vote on the Plan.  Class 6

19    Interest Holders very likely will receive no recovery under the Plan, and are deemed not to have

20    accepted the Plan, and, therefore, are not entitled to vote on the Plan.

21    **C.    Unclassified Claims.**

22    In accordance with the provisions of section 1123(a)(1) of the Bankruptcy Code,

23    Administrative Claims and Priority Tax Claims are not classified under the Plan.  These Claims are

24    not considered impaired, and they do not vote on the Plan, because they are automatically entitled to

25    specific treatment provided for them in the Bankruptcy Code.  Accordingly, the Plan Proponents

26    have not placed Administrative Claims and Priority Tax Claims in a Class.  The treatment of these

27    unclassified Claims is as provided below.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1.   **Allowed Administrative Claims.**

Administrative Claims generally are Claims for the expenses of administering the Debtor's Case that are allowed under section 503(b) of the Bankruptcy Code. Administrative Claims also include Claims provided for by section 503(b)(9) of the Bankruptcy Code. The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular Creditor agrees to a different treatment of its Claim. The Plan Proponents project that, as of the Effective Date, the Debtor will owe approximately $175,000 in Allowed Administrative Claims. The treatment of Administrative Claims under the Plan is as described below.

a.   **Payment.**

Except to the extent that the holder of an Allowed Administrative Claim agrees to a less favorable treatment of its Allowed Administrative Claim, and, subject to the Administrative Claims Bar Date set forth in Section 3.1.2 of the Plan, each holder of an Allowed Administrative Claim will receive, in full satisfaction, discharge, exchange and release of its Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, on the latest of (i) the Effective Date, (ii) the fifteenth (15th) Business Day after the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim becomes due according to its terms; provided, however, that an Ordinary Course Administrative Claim will be paid in full in accordance with the terms and conditions of the agreements giving rise to such Ordinary Course Administrative Claim.

b.   **Administrative Claims Bar Date.**

Except for Pre-Effective Date Professional Fee Claims, United States Trustee Fees and Ordinary Course Administrative Claims, and, except as set forth in section 503(b)(1)(D) of the Bankruptcy Code, all requests for payment of Administrative Claims must be filed with the Bankruptcy Court and served no later than thirty (30) days after the Effective Date (the "Administrative Claims Bar Date"). Any holder of an Administrative Claim that is required to file a request for payment of its Administrative Claim by the Administrative Claims Bar Date and that

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    does not file by the Administrative Claims Bar Date such a request for payment of its Administrative

2    Claim will be forever barred from asserting such Administrative Claim against the Debtor, the

3    Reorganized Debtor, the Estate or any of the property or assets of the Debtor or the Reorganized

4    Debtor.

5                        **c.    Deadline for Objections.**

6                        All objections to allowance of Administrative Claims that are subject to the

7    Administrative Claims Bar Date must be filed by the Plan Agent no later than forty-five (45) days

8    after the Administrative Claims Bar Date (the "Administrative Claims Objection Deadline"). The

9    Administrative Claims Objection Deadline may be extended for a one-time thirty (30) day period by

10   the Plan Agent by filing a notice of the extended Administrative Claims Objection Deadline with the

11   Bankruptcy Court. Thereafter, the Administrative Claims Objection Deadline may be further

12   extended only by an order of the Bankruptcy Court. If the Plan Agent fails to file, by the

13   Administrative Claims Objection Deadline, an objection to an Administrative Claim that must be

14   filed, and is filed, by the Administrative Claims Bar Date, such Administrative Claim will be

15   deemed allowed as of the Administrative Claims Objection Deadline.

16                       **d.    United States Trustee Fees.**

17                       United States Trustee Fees will be paid prior to the Effective Date by the

18   Debtor, and, after the Effective Date by the Plan Agent, in each case, when due in accordance with

19   applicable law until the entry of a Final Decree.

20                       **e.    Pre-Effective Date Professional Fee Claims.**

21                       Each Pre-Effective Date Professional seeking from the Bankruptcy Court an

22   award with respect to a Pre-Effective Date Professional Fee Claim must file its final application for

23   allowance of compensation for services rendered and reimbursement of expenses incurred through

24   the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such later

25   date as may be fixed by the Bankruptcy Court. Such Pre-Effective Date Professional will receive, in

26   full satisfaction, discharge, exchange and release of its Pre-Effective Date Professional Fee Claim,

27   Cash in such amounts as are allowed by the Bankruptcy Court. All objections to allowance of Pre-

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  Effective Date Professional Fee Claims must be filed and served timely in accordance with the

2  requirements of the Bankruptcy Rules.

**2.    Priority Tax Claims.**

4  The Plan Proponents project that, as of the Effective Date, the Debtor will owe

5  approximately $163,729 in Priority Tax Claims. Except to the extent that a holder of an Allowed

6  Priority Tax Claim agrees to a less favorable treatment of its Allowed Priority Tax Claim, each

7  holder of an Allowed Priority Tax Claim will receive, in full satisfaction, discharge, exchange and

8  release of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax

9  Claim, on the later of (a) the Effective Date or (b) the fifteenth (15th) Business Day after such

10  Priority Tax Claim becomes an Allowed Priority Tax Claim.

**D.    Classification of Claims and Interests Under the Plan.**

**1.    Overview.**

13  As required by the Bankruptcy Code, the Plan places Claims and Interests into

14  Classes according to their respective legal rights and interests, including their respective rights to

15  priority. In Section 4.2 of the Plan, the Plan Proponents list each Class of Claims and Interests

16  established under the Plan and state whether each Class is impaired or is unimpaired by the Plan. A

17  Class is "unimpaired" by the Plan if the Plan leaves unaltered the legal, equitable and contractual

18  rights to which the holders of Claims or Interests in the Class are entitled, as provided in

19  section 1124 of the Bankruptcy Code. Article V of the Plan sets forth the treatment that each Class

20  will receive under the Plan.

21  Pursuant to the Plan, a Claim will be deemed classified in a particular Class only to

22  the extent that the Claim qualifies within the description of that Class and will be deemed classified

23  in another Class or Classes to the extent that any remainder of the Claim qualifies within the

24  description of such other Class or Classes. A Claim is classified in a particular Class only to the

25  extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise

26  satisfied prior to the Effective Date.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-49-

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

2.   **Designation of Classes.**

The Plan designates the following Classes of Claims and Interests:

      a.   **Allowed Claims.**

          (i)   Class 1: Any Allowed Secured Claims.  This Class is not impaired by the Plan.

          (ii)   Class 2: Allowed Priority Non-Tax Claims.  This Class is not impaired by the Plan.

          (iii)   Class 3: Allowed General Unsecured Claims.  This Class is impaired by the Plan.

          (iv)   Class 4: The Canopy Claim.  This Class is not impaired by the Plan.

          (v)   Class 5: Any Allowed Subordinated Claims.  This Class is impaired by the Plan.

      b.   **Interests.**

Class 6:  Interests of the Interest Holders.  This Class is impaired by the Plan.

3.   **Summary of Classification.**

The following table summarizes the Classes of Claims and Interests established by the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Allowed Secured Claims | Unimpaired | Deemed to Accept Plan |
| Class 2 | Allowed Priority Non-Tax Claims | Unimpaired | Deemed to Accept Plan |
| Class 3 | Allowed General Unsecured Claims | Impaired | Entitled to Vote on Plan |
| Class 4 | Canopy Claim | Unimpaired | Deemed to Accept Plan |
| Class 5 | Allowed Subordinated Claims | Impaired | Entitled to Vote on Plan |
| Class 6 | Interests | Impaired | Deemed to Reject the Plan |

1   As set forth above, Classes 1, 2 and 4 are unimpaired by the Plan; holders of Claims

2   in these Classes are conclusively presumed to have accepted the Plan and, hence, are not entitled to

3   vote with respect to the Plan. Classes 3 and 5 are impaired by the Plan, and holders of Claims in

4   these Classes are entitled to vote to accept or reject the Plan. Interests in Class 6 are impaired; the

5   Plan Proponents believe that it is very likely that Interest Holders will not receive or retain under the

6   Plan any value on account of their Interests, and, hence, Interest Holders are deemed to reject the

7   Plan in accordance with section 1126(g) of the Bankruptcy Code.

8   The treatment of Claims and Interests under the Plan is in full and complete satisfaction of

9   the legal, contractual, and equitable rights that each Creditor or Interest Holder may have in or

10  against the Debtor or its property. This treatment supersedes and replaces any agreements or rights

11  which those entities have in or against the Debtor or its property. **NO DISTRIBUTIONS WILL**

12  **BE MADE, AND NO RIGHTS WILL BE RETAINED, ON ACCOUNT OF ANY CLAIM**

13  **THAT IS NOT AN ALLOWED CLAIM.**

14  **VII.**

15  **TREATMENT OF CLASSES UNDER THE PLAN**

16  The following sets forth the treatment of Classes established by the Plan.

17  **A.    Class 1 -- Any Allowed Secured Claims.**

18  Class 1 consists of any Allowed Secured Claims. The Plan Proponents project that <u>no</u>

19  Allowed Class 1 Claims will be owed as of the Effective Date. Class 1 is unimpaired by the Plan.

20  In the event that there is more than one holder of an Allowed Class 1 Claim, the Allowed Secured

21  Claim of each such Secured Creditor will be deemed to be classified in a separate sub-class of Class

22  1, and each such sub-class of Class 1 will be deemed to be a separate Class under the Plan.

23  **1.    Treatment of Allowed Secured Claims.**

24  Within fifteen (15) Business Days after the Effective Date, each Secured Creditor

25  holding an Allowed Class 1 Claim will receive, at the election of the Plan Agent, made in the

26  exercise of its sole and absolute discretion, <u>one</u> of the following treatments in full satisfaction,

27  discharge, exchange and release of the Allowed Class 1 Claim:

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**a.    Option 1.**

The holder of the Allowed Class 1 Claim will receive a return of the Collateral in which that Secured Creditor has a security interest.  Unless a Secured Creditor holding an Allowed Deficiency Claim should make an election under section 1111(b) of the Bankruptcy Code, its Allowed Deficiency Claim will be treated under the Plan as a Class 3 Allowed General Unsecured Claim.

**b.    Option 2.**

The holder of the Allowed Class 1 Claim will receive any proceeds actually received by the Debtor or Reorganized Debtor (as applicable) from the sale or other disposition of the Collateral in which that Secured Creditor has a security interest.  Unless a Secured Creditor holding an Allowed Deficiency Claim should make an election under section 1111(b) of the Bankruptcy Code, its Allowed Deficiency Claim will be treated under the Plan as a Class 3 Allowed General Unsecured Claim

**c.    Option 3.**

The holder of the Allowed Class 1 Claim will receive Cash in the full amount of that Secured Creditor's Allowed Class 1 Claim.

**d.    Option 4.**

The holder of the Allowed Class 1 Claim will receive such other Distributions or treatment as is necessary to leave the rights of that Secured Creditor unimpaired under the Bankruptcy Code.

The Plan Agent will have until the <u>later</u> of the tenth (10th) Business Day before the Confirmation Hearing Date, or the tenth (10th) Business Day after the date on which a Class 1 Claim because an Allowed Secured Claim to elect which treatment set forth under Section 5.1.1 of the Plan to provide to the Secured Creditor holding such Allowed Class 1 Claim.

**B.    Class 2 -- Allowed Priority Non-Tax Claims.**

Class 2 consists of all Allowed Priority Non-Tax Claims.  The Plan Proponents project that, as of the Effective Date, the Debtor will owe approximately $453,585 in Allowed Priority Non-Tax

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    Claims.[11]  A list of Priority Non-Tax Claims is attached as Exhibit "D" hereto.   Class 2 is not

2    impaired by the Plan.

3         Pursuant to the Plan, except to the extent that a holder of an Allowed Priority Non-Tax

4    Claim agrees to a less favorable treatment of its Allowed Priority Non-Tax Claim, each holder of an

5    Allowed Priority Non-Tax Claim will receive, in full satisfaction, discharge, exchange and release

6    of its Allowed Priority Non-Tax Claim, Cash in the full amount of the Allowed Priority Non-Tax

7    Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such

8    Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

9         C.    **Class 3 -- Allowed General Unsecured Claims.**

10        Class 3 consists of all Allowed General Unsecured Claims.  The Plan Proponents project

11   that holders of Allowed General Unsecured Claims will receive an approximately 18% to 40%

12   recovery on account of their Allowed General Unsecured Claims; an analysis of such projected

13   recovery is set forth at pages 93-95 hereof.  Class 3 is impaired by the Plan.

14        Pursuant to the Plan, the treatment of Allowed Class 3 Claims is as follows:

15             1.    **Pro Rata Distribution of Plan Fund Proceeds.**

16             Subject to the provisions of Sections 5.3.1.3, 5.3.1.4, 5.3.1.5 and 5.3.1.6 of the Plan,

17   except to the extent that the holder of an Allowed General Unsecured Claim agrees to a less

18   favorable treatment of its Allowed General Unsecured Claim, the holder of an Allowed General

19   Unsecured Claim will receive, in full and complete satisfaction, discharge, exchange and release of

20   its Allowed General Unsecured Claim, Pro Rata Distributions of the Plan Fund Proceeds available

21   for distribution to holders of Allowed Class 3 Claims.

22             2.    **Timing of Distributions.**

23             The Plan Agent will make Distributions to the holders of Allowed Class 3 Claims

24   from the Plan Fund Proceeds. All holders of Allowed Class 3 Claims will receive an initial

25   Distribution of their Pro Rata share of the Plan Fund Proceeds within 180 days following the

26   ───────────

[11] This projection was made by the Plan Proponents in or about March 2010. After further review of the Priority Non-
27   Tax Claims asserted in the Case, the Plan Proponents now estimate that the Debtor will owe approximately $515,851.07
in Allowed Priority Non-Tax Claims. See Exhibit "D" hereto for a list of Priority Non-Tax Claims.

28

CLARKSON, GORE & MARSELLA, AFLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

Effective Date, or on such later date as the Plan Agent determines to be practicable, in the exercise

of its sole and absolute discretion, and will receive thereafter during the Case Distributions of their

Pro Rata share of Plan Fund Proceeds on each 180th-day anniversary of the Effective Date, or on

such later date as the Plan Agent determines to be practicable in the exercise of its sole and absolute

discretion.  Holders of Allowed Class 3 Claims will receive any final Distribution of their Pro Rata

share of Plan Fund Proceeds within ten (10) days after the filing of the Plan Agent Certification, or

as soon thereafter as is practicable.  Upon payment of the amount owed to the holder of any Allowed

Class 3 Claim under the Plan, such Allowed Class 3 Claim will be deemed to be fully and

completely satisfied, discharge and released.

### 3.    Postpetition Interest.

In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed General

Unsecured Claim will not include Postpetition Interest on account of such Allowed General

Unsecured Claim, except to the extent that all of the following are satisfied and paid in full:  (a) all

Allowed Administrative Claims; (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-

Tax Claims; (d) all Allowed Secured Claims (subject to the elections provided pursuant to

Section 5.1.1 of the Plan); (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all

Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; and (i) all Allowed Penalty Claims.

Any Postpetition Interest that may be payable on an Allowed General Unsecured Claim will be

calculated from the Petition Date through the date on which such Allowed General Unsecured Claim

is paid in full.

### 4.    Conditions to Distributions.

The Plan provides that, notwithstanding any other provision to the contrary contained

in the Plan, no Cash Distribution will be made on account of any Allowed General Unsecured Claim

until each of the following occurs:  (a) all Allowed Administrative Claims are paid; (b) all Allowed

Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed

Secured Claims are paid (subject to the elections provided pursuant to Section 5.1.1 of the Plan);

(e) the Disputed Claims Reserve is adequately funded for the Claims referenced in subsections (a)

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  through (d) of this subparagraph VII(C)(4); and (f) all outstanding Post-Effective Date Plan

2  Expenses have been paid in full and an adequate Reserve is established by the Plan Agent providing

3  for full payment of the estimated amount of all Post-Effective Date Plan Expenses through the Case

4  Closing Date, in an amount to be determined by the Plan Agent in the exercise of its sole and

5  absolute discretion.

6        **5.**    **Distribution of Post-Effective Date Stock.**

7        Each holder of an Allowed General Unsecured Claim will be allocated its Pro Rata

8  number of shares of Post-Effective Date Stock, to be held in trust for such Creditor by the Plan

9  Agent in contemplation of a potential Merger Transaction. Subject to the provisions of Section 6.18

10  of the Plan, each holder of an Allowed General Unsecured Claim will receive a Distribution of any

11  Post-Effective Date Stock, or the net proceeds realized from the disposition of such Post-Effective

12  Date Stock, in connection with any Merger Transaction; provided, however, that the holder of an

13  Allowed General Unsecured Claim will have the right to elect not to receive any Distribution of

14  Post-Effective Date Stock, in accordance with the provisions of Section 6.18.6 of the Plan.

15        **6.**    **Limitation on Distributions.**

16        Notwithstanding anything to the contrary contained in Section 5.3.1 of the Plan, no

17  holder of an Allowed General Unsecured Claim will be entitled to receive more than 100% of the

18  amount of its Allowed General Unsecured Claim, plus any Postpetition Interest thereon payable

19  pursuant to Section 5.3.1.3 of the Plan. For the purpose of Section 5.3.1.6 of the Plan, the value of

20  any Distribution of Post-Effective Date Stock will be determined pursuant to the provisions of

21  Section 6.18.5 of the Plan.

22        **D.**    **Class 4 -- Canopy Claim.**

23        Class 4 consists of the Canopy Claim. The Canopy Claim is unimpaired under the Plan.

24        Pursuant to the Plan, Canopy will be paid, without alteration or modification, any and all

25  amounts to which Canopy is entitled pursuant to paragraphs 2 and 3 of the Canopy Settlement

26  Agreement.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**E.    Class 5 -- Allowed Subordinated Claims.**

Class 5 consists of all Allowed Subordinated Claims.  There are no Allowed Subordinated Claims as of the date of this Disclosure Statement.  Class 5 is impaired by the Plan.

Pursuant to the Plan, the treatment of any Allowed Class 5 Claim is as follows:

**1.    Pro Rata Distributions of Plan Fund Proceeds.**

Subject to the provisions of Sections 5.5.1.3, 5.5.1.4, 5.5.1.5 and 5.5.1.6 of the Plan, except to the extent that the holder of any Allowed Subordinated Claim agrees to a less favorable treatment of its Allowed Subordinated Claim, in the event that all Allowed General Unsecured Claims are paid in full as set forth in Section 5.3.1 of the Plan, the holder of an Allowed Subordinated Claim will receive, in full and complete satisfaction, discharge, exchange and release of its Allowed Subordinated Claim, solely from the Plan Fund Proceeds, a Pro Rata Distribution of any remaining Plan Fund Proceeds.

**2.    Timing of Distributions.**

The Plan Agent will make Distributions to the holders of Allowed Class 5 Claims, from any Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims.  All holders of Allowed Class 5 Claims will receive an initial Distribution of their Pro Rata share of any Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims on such date as the Plan Agent determines to be practicable, in the exercise of its sole and absolute discretion, and thereafter will receive Distributions of any such Plan Fund Proceeds as the Plan Agent determines to be practicable, in the exercise of its sole and absolute discretion.  Holders of Allowed Class 5 Claims will receive any final Distribution of any Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims within ten (10) days after the filing of the Plan Agent Certification, or as soon thereafter as is practicable.  Upon payment of the amount, if any, owed to each holder of an Allowed Class 5 Claim under the Plan, such Allowed Class 5 Claim will be deemed to be fully and completely satisfied, discharged and released.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

### 3.    Postpetition Interest.

In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed Subordinated Claim will not include Postpetition Interest on account of such Allowed Subordinated Claim, except to the extent that all of the following are satisfied and paid in full:  (a) all Allowed Administrative  Claims; (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-Tax Claims; (d) all Allowed Secured Claims (subject to the elections provided pursuant to Section 5.1.1 of the Plan); (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; (i) all Allowed Penalty Claims; and (j) all Allowed Subordinated Claims in accordance with the terms thereof.  Any Postpetition Interest that may be payable on an Allowed Subordinated Claim will be calculated from the Petition Date through the date on which such Allowed Subordinated Claim is paid in full.

### 4.    Conditions to Distributions.

The Plan provides that, notwithstanding any other provision to the contrary contained in the Plan, no Distribution will be made on account of any Allowed Subordinated Claim until each of the following occurs:  (a) all Allowed Administrative Claims are paid; (b) all Allowed Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed Secured Claims are paid (subject to the elections provided pursuant to Section 5.1.1 of the Plan); (e) all Allowed General Unsecured Claims are paid; (f) the Disputed Claims Reserve is adequately funded for the Claims referenced in subsections (a) through (e) of this subparagraph VII(E)(4); and (g) all outstanding Post-Effective Date Plan Expenses have been paid in full and an adequate Reserve is established by the Plan Agent providing for full payment of the estimated amount of all Post-Effective Date Plan Expenses through the Case Closing Date, in an amount to be determined by the Plan Agent in the exercise of its sole and absolute discretion.

### 5.    No Distribution of Post-Effective Date Stock.

No Post-Effective Date Stock, or other equity security interest in the Reorganized Debtor, will be issued on account of an Allowed Subordinated Claim.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1

### 6.   **Limitation on Distributions.**

Notwithstanding anything to the contrary contained in Section 5.5.1 of the Plan, no holder of an Allowed Subordinated Claim will be entitled to receive more than 100% of the amount of its Allowed Subordinated Claim, plus any Postpetition Interest thereon payable pursuant to Section 5.5.1.3 of the Plan.

### F.   **Class 6 -- Allowed Interests.**

Class 6 consists of all Allowed Interests. Class 6 is impaired under the Plan.

Pursuant to the Plan, the treatment of Allowed Interests is as follows:

### 1.   **Cancellation of Interests.**

On the Effective Date of the Plan, all Interests will be cancelled, and Interest Holders will receive no Post-Effective Date Stock or any other Interest of any nature whatsoever in the Reorganized Debtor. Interest Holders will not receive any Distributions on account of their Interests; provided, however, that, in the event that each Allowed Claim, plus any Postpetition Interest to which the holder thereof is entitled, is paid in full, each holder of an Allowed Interest will receive, in full and complete satisfaction, discharge, exchange and release of such Allowed Interest, Pro Rata Distributions of any Plan Fund Proceeds remaining in the Plan Fund, payable as soon as practicable as the Plan Agent determines in the exercise of its sole and absolute discretion.

### 2.   **No Voting on Plan.**

It is expected that Class 6 Interest Holders will receive no Distributions under the Plan. Accordingly, for the purpose of the Plan, Interest Holders are deemed not to have accepted the Plan, and are not entitled to vote with respect to the Plan, as provided by section 1126(g) of the Bankruptcy Code.

### 3.   **Allowed Interests.**

For the purpose only of determining any Distributions to which Interest Holders may be entitled under Section 5.6.1.1 of the Plan, each beneficial owner or holder of record of MTI Stock as of the Effective Date will be deemed to have an Allowed Interest for the number of shares of MTI Stock held by it as of the Effective Date, and need not file a proof of its Interest with respect thereto.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    In the event that any entity that is neither the record holder of MTI Stock as of the Effective Date nor

2    the beneficial owner of MTI Stock as of the Effective Date files a proof of right to record status

3    pursuant to Rule 3003(d) of the Federal Bankruptcy Rules, such proof of right will be disallowed

4    automatically and without any need for the Debtor, the Reorganized Debtor, the Plan Agent, or any

5    other party-in-interest to object thereto or otherwise take any act with respect thereto.

6    <div align="center">**VIII.**</div>

7    <div align="center">**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**</div>

8    **A.**    **Overview.**

9    This Article is intended to explain the means by which the Plan Proponents intend to

10    effectuate the Plan, and how they intend to fund the obligations to Creditors undertaken in the Plan.

11    This Article provides information regarding prospective corporate governance of the Reorganized

12    Debtor, funding sources for Plan obligations, and other material issues bearing upon the

13    performance of the Plan.

14    The Plan provides that, from and after the Effective Date, the Debtor's Assets, including,

15    without limitation, any Causes of Action, will be liquidated and the Plan Fund Proceeds distributed

16    to the holders of Allowed Claims in accordance with the provisions of the Plan. The Plan Agent

17    will be responsible for maintaining the Plan Assets, liquidating the Plan Assets, prosecuting or

18    settling Causes of Action, and making Distributions in payment of Allowed Claims in accordance

19    with the provisions of the Plan. In addition, the Plan Agent will be responsible for evaluating the

20    viability of, and, if appropriate, pursuing a Merger Transaction, in order to enhance the value of the

21    Post-Effective Date Stock issued on account of Allowed General Unsecured Claims, for the benefit

22    of the holders of Allowed General Unsecured Claims.

23    **B.**    **Condition Precedent to Plan Confirmation.**

24    The only condition precedent to the confirmation of the Plan is that the Bankruptcy Court

25    will have entered the Confirmation Order on terms and conditions satisfactory to the Plan

26    Proponents.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    **C.    Conditions Precedent to the Effectiveness of the Plan.**

2    The following are the conditions precedent to the effectiveness of the Plan and the

3    occurrence of the Effective Date:  (1) the Confirmation Order will have become a Final Order;

4    (2) any documents, instruments and agreements, in form and substance satisfactory to the Plan

5    Proponents, provided for by, or appropriate to implement, the Plan will have been executed and

6    delivered by the parties thereto; (3) the Plan Proponents will have received all authorizations,

7    consents, rulings, opinions or other documents that are determined by the Plan Proponents, in the

8    exercise of their sole and absolute discretion, to be appropriate to implement the Plan; and (4) the

9    Plan Proponents will have determined, in the exercise of their sole and absolute discretion, that

10   sufficient Cash exists to pay, or to establish a Reserve for the payment of, all Administrative

11   Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims (subject to the election

12   of the options provided by Section 5.1.1 of the Plan), and to otherwise fund the obligations provided

13   for by the Plan and to pay the expenses associated with the implementation of the Plan.

14   The Plan Proponents may, in the exercise of their sole and absolute discretion, waive any of

15   the conditions to the effectiveness of the Plan and to the occurrence of the Effective Date set forth

16   hereinabove, without the need for any prior notice or hearing with respect thereto.  Without limiting

17   the generality of the foregoing, in the event that an appeal, petition for certiorari or motion for

18   reargument or rehearing or comparable post-confirmation relief is filed with respect to the

19   Confirmation Order, and no stay of the effectiveness of the Confirmation Order is obtained, the Plan

20   Proponents may elect, in the exercise of their sole and absolute discretion, to waive any of such

21   conditions, and to proceed with the Effective Date of the Plan and to commence to consummate the

22   Plan, by filing and serving notice of such election upon the United States Trustee and the party

23   seeking such post-confirmation relief.

24   The failure of any such condition to be satisfied constitutes under the Plan good and

25   sufficient cause for the Plan Proponents to have the Plan not become effective regardless of the

26   circumstances giving rise to the failure of such condition to be satisfied (including, without

27   limitation, any act or failure to act by the Plan Proponents).

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**D.    Implementation of Plan.**

On or soon as practicable after the Effective Date, the following will occur with respect to the implementation of the Plan: (1) all acts, documents and agreements appropriate to implement the Plan will be effected or executed; (2) the Plan Agent, as Disbursing Agent under the Plan, will make all Distributions required to be made on or about the Effective Date of the Plan; and (3) the Plan Agent, as Disbursing Agent under the Plan, will fund the Reserves required to be funded on or about the Effective Date of the Plan.

**E.    Corporate Action.**

Upon the Effective Date, all transactions and matters provided for under the Plan will be deemed to have been authorized and approved by the Debtor without any requirement of further action by the Debtor, the Debtor's Interest Holders, or by the Debtor's board of directors.

**F.    Plan Agent/Vesting of Assets.**

In accordance with the provisions of Section 6.6.1 of the Plan, on the Effective Date, a Plan Agent will be appointed pursuant to the Plan who will have the rights, powers and duties provided for by the Plan and the Confirmation Order. In accordance with the provisions of Section 6.6.2 of the Plan, on the Effective Date, the Assets will be transferred to, vest in, and be held in trust by, the Plan Agent.

**1.    Employment of Plan Agent.**

On the Effective Date, a Plan Agent will be appointed to receive and to hold in trust the Plan Assets in accordance with Section 6.6.2 of the Plan, to administer the Plan Assets in accordance with the terms of the Plan and to make Distributions in accordance with the terms of the Plan. The Plan Agent will have the rights, powers and duties provided for by the Plan and the Confirmation Order.

**2.    Transfer of Assets.**

On the Effective Date, pursuant to sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor and its Estate will be authorized to, and shall, transfer, grant, assign, convey, set over, and deliver to the Plan Agent, to be held in trust by the Plan Agent for the benefit

-61-

1    of the holders of Allowed Claims and Interest Holders to the extent that Interest Holders are entitled

2    to receive Distributions under Section 5.6.1.1 of the Plan, all of the Debtor's and the Estate's right,

3    title and interest in and to the Assets, including Causes of Action, free and clear of all Liens,

4    Claims, and Interests of any kind, except as provided expressly to the contrary in the Plan. All

5    Creditors and other parties-in-interest are required to cooperate with the Debtor and the Plan Agent

6    by executing any documents, and by taking any acts, appropriate to implement the transfers of the

7    Assets to the Plan Agent. From and after the Effective Date, the transfer of the Assets from the

8    Estate to the Plan Agent, and the vesting of the Assets in the Plan Agent, will be deemed to be final

9    and irrevocable.

10            **3.    Disposition of Plan Assets.**

11            The Plan Agent, under the supervision of the Post-Effective Date Committee, may

12    administer, manage, use, convey, transfer, encumber, assign and otherwise dispose of any and all of

13    the Plan Assets and take all acts appropriate to effectuate the same, free of any restrictions imposed

14    by the Bankruptcy Code or by the Bankruptcy Rules.

15        **G.    Termination of Debtor's Officers, Directors, Employees and Professionals.**

16            Except as otherwise provided by the Plan or as otherwise retained by the Plan Agent, the

17    Debtor's officers, directors, employees and Professionals will be terminated and relieved of any

18    responsibilities to the Debtor or to the Reorganized Debtor as of the Effective Date.

19        **H.    Plan Fund Proceeds/Plan Administration.**

20            **1.    Distributions of Plan Fund Proceeds.**

21            Distributions of Plan Fund Proceeds will be made solely to the holders of Allowed

22    General Unsecured Claims, and, in accordance with the provisions of Sections 5.5.1.1 and 5.6.1.1

23    of the Plan, in the unlikely event that Allowed General Unsecured Claims are paid in full, holders of

24    Allowed Subordinated Claims, and, if Allowed Subordinated Claims are paid in full, Interest

25    Holders. The holders of Allowed General Unsecured Claims will receive Distributions from the

26    Plan Fund solely as provided for by the Plan.

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.**    **Plan Agent's Implementation of Plan.**

The Plan Agent, under the supervision of the Post-Effective Date Committee, will be authorized to, and shall, take all acts appropriate to implement the provisions of the Plan as are contemplated to be taken by the Plan Agent under the Plan, including, without limitation, making Distributions to holders of Allowed Claims, objecting to Disputed Claims, prosecuting or settling the Causes of Action and, if the Plan Agent deems appropriate, effectuating a Merger Transaction.

**3.**    **Representative of the Estate.**

The Plan Agent, under the supervision of the Post-Effective Date Committee, will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), 1123(a)(7) and 1123(b)(3)(B) of the Bankruptcy Code and, as such, will be vested with the authority and power, subject to the provisions of the Plan, to take, among others, the following acts:  (a) manage, administer and dispose of Plan Assets for the benefit of holders of Allowed Claims; (b) file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon all Causes of Action in the name of, and for the benefit of, the Estate; (c) make all Distributions provided for by the Plan; and (d) such other acts as may be appropriate to administer, wind-down, and close the Case.  As the representative of the Estate, the Plan Agent, under the supervision of the Post-Effective Date Committee, will succeed to all of the rights and powers of the Debtor and the Estate with respect to all Causes of Action, and will be substituted for, and will replace, the Debtor, the Estate and the Committee, as applicable, as the party-in-interest in all such litigation pending as of the Effective Date.

**4.**    **Plan Agent Disclosure.**

On or before the thirtieth (30th) day prior to the Confirmation Hearing Date, the Plan Proponents will file with the Bankruptcy Court a pleading disclosing the identity of the Plan Agent, its credentials, and any and all relevant information regarding the retention of the Plan Agent, including, without limitation, the compensation of the Plan Agent and any and all affiliations, connections and actual or potential conflicts of interest that the Plan Agent may have in

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

the Case ("Plan Agent Disclosure").  A copy of the Plan Agent's engagement agreement will be

attached to the Plan Agent Disclosure.

     **5.**    **No Liability of Post-Effective Date Committee, the Plan Agent or the**

           **Reorganized Debtor.**

     To the maximum extent permitted by law, the Post-Effective Date Committee, the

Plan Agent and the Reorganized Debtor, and their respective employees, officers, directors,

shareholders, agents, members, representatives, and Professionals (collectively, "Representatives")

will not have or incur liability to any Creditor, Interest Holder, party-in-interest or to any other

entity for an act taken or omission made in good faith in connection with or related to the

administration of the Plan Assets, the implementation of the Plan and the making of Distributions

under the Plan.  The Post-Effective Date Committee, the Plan Agent, the Reorganized Debtor and

the Representatives will be entitled in all respects to reasonably rely on the advice of counsel with

respect to their respective duties and responsibilities under the Plan.  Entry of the Confirmation

Order constitute a judicial determination that the exculpation provisions contained in Section 6.8.5

of the Plan are necessary to, inter alia, facilitate Confirmation and to minimize potential claims

arising after the Effective Date for indemnity, reimbursement or contribution from the Plan Assets.

The approval of the Plan by the Confirmation Order constitutes a res judicata determination of the

matters included in the exculpation provisions of the Plan.  Notwithstanding the foregoing, nothing

in Section 6.8.5 of the Plan will absolve the Post-Effective Date Committee, the Plan Agent or the

Reorganized Debtor of any potential liability that any of them respectively may have to any

Creditor (which liability will be several and not joint) on account of any acts or omissions by it

constituting willful misconduct or gross negligence.

     **6.**    **Funding of Post-Effective Date Plan Expenses.**

     All Post-Effective Date Plan Expenses will be expenses of the Reorganized Debtor.

Except as may be provided expressly to the contrary in the Plan Agent Disclosure, the Plan Agent

will have no personal liability for any Post-Effective Date Plan Expenses.  The Plan Agent will

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  disburse Plan Fund Proceeds from the Plan Fund for the purpose of funding the Post-Effective Date

2  Plan Expenses.

3      **I.**    **Termination of the Committee and Appointment of the Post-Effective Date**

4          **Committee.**

5          **1.**    **Replacement of the Committee.**

6          As of the Effective Date, the Committee will terminate and disband, and the

7  Committee will be released from and discharged of all further authority, duties, responsibilities and

8  obligations related to the Case. As of the Effective Date, the Committee will be replaced by the

9  Post-Effective Date Committee, which will be comprised of members of the Committee. The Post-

10  Effective Date Committee will have the right to supervise the Plan Agent and will have the other

11  powers, rights, responsibilities and functions identified in the Plan and in a disclosure document to

12  be filed in the Bankruptcy Court on or before the thirtieth (30th) day prior to the Confirmation

13  Hearing Date ("Post-Effective Date Committee Disclosure").

14          **2.**    **Members of Post-Effective Date Committee.**

15          In the event of the death or resignation of any member of the Post-Effective Date

16  Committee, the remaining members of the Post-Effective Date Committee will have the right to

17  designate a successor member from among the holders of Allowed General Unsecured Claims. If a

18  Post-Effective Date Committee member assigns its Claim in full, or releases the Debtor from

19  payment of the balance of such member's Claim, such act will constitute a resignation from the

20  Post-Effective Date Committee. Until a vacancy on the Post-Effective Date Committee is filled, the

21  Post-Effective Date Committee will function in its reduced number. Upon the Case Closing Date,

22  the Post-Effective Date Committee will be dissolved and the members thereof will be released and

23  discharged of and from all further authority, duties, responsibilities and obligations related to and

24  arising from their service as Post-Effective Date Committee members.

25          **3.**    **Duties of Members of Post-Effective Date Committee.**

26          The members of the Post-Effective Date Committee will undertake their duties as

27  specified in the Plan and in the Post-Effective Date Committee Disclosure. In serving as a member

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  of the Post-Effective Date Committee, such member will not assume, or be deemed to have

2  assumed, any liability to Creditors, the Debtor, or any other parties-in-interest in the Case and will

3  not be liable for any acts or omissions while acting in that capacity, except for acts or omissions

4  constituting willful misconduct or gross negligence.

5        **J.    The Reorganized Debtor.**

6              **1.    Corporate Powers.**

7              The Debtor, as the Reorganized Debtor, will continue to exist after the Effective Date

8  of the Plan. The Reorganized Debtor will have all of the powers and rights of a corporation under

9  the laws of the State of Delaware, and, except as set forth in the Plan expressly to the contrary, will

10 continue to have all corporate powers and rights accorded to it under its Articles of Incorporation,

11 Bylaws and other corporate governance agreements.

12             **2.    Board of Directors.**

13             On the Effective Date, the members of the Board of Directors of the Reorganized

14 Debtor will be the following persons: the Plan Agent; Mr. Poteracki; and another individual to be

15 named by the Post-Effective Date Committee. The Reorganized Debtor will maintain customary

16 directors and officers insurance coverage through the Case Closing Date, or as otherwise determined

17 by the Plan Agent. The members of the Board of Directors will be entitled to payment of

18 compensation, for serving on the Reorganized Debtor's Board of Directors, in the amount of

19 $1,250.00 per calendar quarter, or as otherwise determined reasonably by the Plan Agent in the

20 exercise of its sole and absolute discretion; provided, however, that such compensation paid to the

21 Plan Agent for serving on the Reorganized Debtor's Board of Directors will be applied against the

22 compensation payable to the Plan Agent pursuant to the Plan and as set forth in the Plan Agent

23 Disclosure.

24             **3.    Officer of Reorganized Debtor.**

25             As of the Effective Date, the Plan Agent will serve as the Chief Executive Officer of

26 the Reorganized Debtor. The Board of Directors of the Reorganized Debtor may appoint other

27 officers as appropriate to aid in the implementation of the Plan. The Plan Agent will be authorized

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  to take any act, and to execute any documents, necessary to preserve the corporate existence of the

2  Reorganized Debtor, with no additional authorization required for the Plan Agent to do so.

3  **4.    Effectuation of Merger Transaction.**

4  The Reorganized Debtor will continue in existence after the Effective Date, as

5  appropriate to effectuate a Merger Transaction.  In accordance with the provisions of Section 6.18 of

6  the Plan, the Plan Agent, under the supervision of the Post-Effective Date Committee, will determine

7  whether a Merger Transaction is viable, whether a Merger Transaction should be effectuated for the

8  benefit of holders of Allowed General Unsecured Claims and the terms thereof, and/or whether to

9  terminate any efforts to effectuate a Merger Transaction and instead to wind up the affairs of the

10  Reorganized Debtor: provided, however, that, in accordance with the provisions of Section 6.18.3 of

11  the Plan, in the event that no Merger Transaction is consummated by the Merger Consummation

12  Date, all efforts to effectuate a Merger Transaction will terminate and the Plan Agent will take all

13  acts appropriate to wind up the affairs of the Reorganized Debtor.

14  **K.    Causes of Action.**

15  The right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and

16  abandon on behalf of the Debtor and the Estate any and all Causes of Action, including, but not

17  limited to, any Avoidance Actions, is deemed automatically transferred on the Effective Date from

18  the Estate to the Plan Agent.  From and after the Effective Date, only the Plan Agent will have the

19  right to enforce, file, litigate, prosecute, settle, collect and abandon any Cause of Action.

20  Notwithstanding the rights of the Plan Agent with respect to Causes of Action, nothing in the

21  Plan will require the Plan Agent to file or to prosecute any Cause of Action, both of which may be

22  determined by the Plan Agent, in the exercise of its sole and absolute discretion.

23  **THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION**

24  **REGARDING THE EXISTENCE OF CAUSES OF ACTION.  THE INVESTIGATION IN**

25  **THIS REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE**

26  **HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE**

27  **OF ANY PARTICULAR CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR**

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

SET FORTH IN THE PLAN OR IN THIS DISCLOSURE STATEMENT, A CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY AS THE PLAN AGENT MAY DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.

**L.      Post-Effective Date Professional Fees.**

The Plan Agent may employ, without any need to give notice to Creditors or other parties-in-interest or obtain any approval of the Bankruptcy Court, any Professional to aid the Plan Agent in performing the Plan Agent's duties under the Plan, including, without limitation, in connection with a possible Merger Transaction, as the Plan Agent deems appropriate in the exercise of its sole and absolute discretion. Any Professional employed by the Plan Agent after the Effective Date will be entitled to obtain from the Plan Fund payment of the Professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without any need to give notice to Creditors or other parties-in-interest or to obtain any approval of the Bankruptcy Court. Notwithstanding the foregoing, if the Plan Agent should fail to pay any post-Effective Date fees and costs of a Professional entitled to such payment, within thirty (30) days after the Professional's rendering of its billing statement, the Professional will be entitled to seek, by application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court requiring the Plan Agent to forthwith pay to the Professional its fees and costs.

**M.      Approval for Disposition of Plan Assets.**

Except as provided expressly to the contrary in the Plan, from and after the Effective Date, the Plan Agent will be entitled to sell, transfer, assign, encumber or otherwise dispose of any interest in any of the Plan Assets, without any need to give notice to Creditors or parties-in-interest or to obtain any approval of the Bankruptcy Court. Notwithstanding the foregoing, the Plan Agent will be entitled to seek, from the Bankruptcy Court, an order authorizing the sale of any Plan Asset free and clear of Liens pursuant to the provisions of section 363(f) of the Bankruptcy Code.

MTI Disclosure Statement v1.4
MAINDOCS #146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**N.    Compromise of Controversies.**

From and after the Effective Date, the Plan Agent will be entitled to compromise any objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-interest or to obtain any approval of the Bankruptcy Court.

**O.    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**

Nothing contained in the Plan will be deemed to impair in any manner the right of the Plan Agent or any party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

**P.    Plan Agent Certification.**

On or before the date upon which the Plan Agent determines, in the exercise of its sole and absolute discretion, that any Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Plan Assets have been liquidated or otherwise disposed of, that a Merger Transaction has been effectuated or cannot or should not be effectuated by the Merger Consummation Date, and that all Distributions required to be made under the Plan have been made or that final Distributions are being made or will be made by the Plan Agent within ten (10) days or as soon thereafter as is practicable, the Plan Agent is required to file with the Bankruptcy Court and serve upon the United States Trustee, the Post-Effective Date Committee, the Reorganized Debtor and any Creditor that files after the Effective Date a request for notice of any proceedings in the Case (collectively, "Post-Effective Date Notice Parties") a certification attesting to such determination ("Plan Agent Certification").

**Q.    Final Decree.**

Unless earlier filed by the Plan Agent, by the thirtieth (30th) day after the filing of the Plan Agent's Certification, the Plan Agent is required to file, in accordance with Rule 3022 of the Federal Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Case ("Final Decree").

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

R.    **Merger Transaction.**

1.    **Background.**

Although, as of the Effective Date, the Reorganized Debtor will have no significant operations, the Reorganized Debtor may possess substantial net operating losses for tax purposes (estimated to be in excess of $120.0 million), and, as a publicly-traded company, will possess a shareholder base, which may make it an attractive acquisition or merger candidate, including, without limitation, to an operating, privately-held corporation seeking to become a publicly-held company (e.g., through a "reverse merger" transaction). The Plan permits any such acquisition, merger transaction, or other business combination, including, without limitation, a stock exchange, that would benefit the holders of Allowed General Unsecured Claims, as holders of Post-Effective Date Stock in the Reorganized Debtor, by allowing them potentially to have an interest in a viable, operating business enterprise (any such transaction is referred to herein as a "Merger Transaction"). The Plan Agent, under the supervision of the Post-Effective Date Committee, will investigate whether a Merger Transaction is viable, and should be pursued for the benefit of holders of Allowed General Unsecured Claims.

2.    **Merger Consummation Date.**

The Reorganized Debtor is required to complete a Merger Transaction by the second-year anniversary of the Effective Date of the Plan ("Merger Consummation Date"); provided, however, that the Plan Agent, after consultation with the Post-Effective Date Committee, will be authorized to request from the Bankruptcy Court an extension of the Merger Consummation Date, for a period not to exceed one additional year. The Plan Agent is required to give to the Post-Effective Date Notice Parties notice of any such request and an opportunity to obtain a hearing on any such request, in accordance with the requirements of the Bankruptcy Rules.

3.    **Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized Debtor.**

The Plan Agent, after consultation with the Post-Effective Date Committee, will be authorized to terminate efforts to effectuate a Merger Transaction or to cancel the Post-Effective

1  Date Stock, prior to the Merger Consummation Date, in the event that the Plan Agent determines, in

2  the exercise of its sole and absolute discretion, that a Merger Transaction is not viable, a Merger

3  Transaction should not be effectuated, or the Post-Effective Date Stock is burdensome or is of

4  inconsequential value and benefit to the holders of Allowed General Unsecured Claims. The Plan

5  Agent may terminate any efforts to effectuate a Merger Transaction, or may cancel the Post-

6  Effective Date Stock, only after obtaining approval of the Bankruptcy Court for so doing ("Stock

7  Termination Approval") after giving to the Post-Effective Date Notice Parties notice and an

8  opportunity to obtain a hearing thereon, in accordance with the requirements of the Bankruptcy

9  Rules. In the event that a Stock Termination Approval is obtained by the Plan Agent, or in the event

10  that no Merger Transaction is consummated by the Merger Consummation Date, the Plan Agent is

11  required to take all acts appropriate to wind up the affairs of the Reorganized Debtor.

12  **4.    Terms of any Merger Transaction.**

13  The terms of any Merger Transaction and the terms of any Distribution of Post-

14  Effective Date Stock, including, without limitation, any "lock-up" agreements or other restrictions

15  on the disposition of the Post-Effective Date Stock, will be determined by the Plan Agent, subject to

16  the supervision of the Post-Effective Date Committee. The Plan Agent is required to obtain from the

17  Bankruptcy Court approval of any such Merger Transaction, after giving to the Post-Effective Date

18  Notice Parties and other parties-in-interest notice and an opportunity to obtain a hearing thereon, in

19  accordance with the requirements of the Bankruptcy Rules.

20  **5.    Valuation of Post-Effective Date Stock.**

21  Unless and until a Merger Transaction is effectuated, the Post-Effective Date Stock

22  will be deemed, for all purposes, to have no value of any nature whatsoever. In connection with

23  effectuating any Merger Transaction, the Plan Agent will request that the Bankruptcy Court enter an

24  order determining the value of the Post-Effective Date Stock that will be distributed to holders of

25  Allowed General Unsecured Claims pursuant to the Plan, after giving to the Post-Effective Date

26  Notice Parties and other parties-in-interest notice and an opportunity to obtain a hearing thereon, in

27  accordance with the requirements of the Bankruptcy Rules.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

6. **Election Not to Receive Post-Effective Date Stock.**

Prior to the consummation of any Merger Transaction, a holder of an Allowed General Unsecured Claim may provide to the Plan Proponents or to the Plan Agent, as applicable, written notice of an election not to receive a Distribution of Post-Effective Date Stock. Such an election will be effective, binding and irrevocable upon receipt by the Plan Proponents or the Plan Agent, as applicable, of written notice of such an election. In the event that a holder of an Allowed General Unsecured Claim makes such an election, any Distributions of Plan Fund Proceeds to which such Creditor is entitled under the Plan on account of its Allowed General Unsecured Claim will not be reduced in any manner based upon any value of the Post-Effective Date Stock that such Creditor otherwise would receive under the Plan.

S. **Distributions.**

1. **Designation and Role of the Disbursing Agent.**

a. **Plan Agent to Serve as Disbursing Agent.**

The Plan Agent will serve as the Disbursing Agent under the Plan. The terms of the employment of the Plan Agent, including the compensation of the Plan Agent as Disbursing Agent under the Plan, will be disclosed in the Plan Agent Disclosure and will be approved by the Bankruptcy Court pursuant to the Confirmation of the Plan.

b. **No Bond.**

The Plan Agent will not be required to be bonded in connection with the performance of its duties as Plan Agent under the Plan, including its duties as Disbursing Agent under the Plan.

c. **Payment of Fees and Expenses of Disbursing Agent.**

The fees, expenses and any bond premiums incurred by the Plan Agent, in connection with the performance of its duties as Disbursing Agent under the Plan, will be paid from the Plan Fund.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

-72-

### d.   **Employment of Agents.**

The Plan Agent, as Disbursing Agent under the Plan, will be authorized to implement such procedures as it deems necessary to make Distributions pursuant to the Plan so as to efficiently and economically assure prompt and accurate Distributions, including, without limitation, the employment of one or more agents on such terms and conditions as it deems appropriate in the exercise of its sole and absolute discretion.

### 2.   **Distribution of Property Under the Plan.**

### a.   **Cash Distributions.**

Except for any Post-Effective Date Stock that may be issued to holders of Allowed General Unsecured Claims pursuant to a Merger Transaction, all Distributions under the Plan will be in Cash. Cash Distributions made pursuant to the Plan will be in United States funds, by checks drawn on a domestic bank, or, if the Plan Agent so elects, in the exercise of its sole and absolute discretion, by wire transfers from a domestic bank.

### b.   **Setoffs and Recoupment.**

Pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Plan Agent, as Disbursing Agent under the Plan, may set off, recoup or withhold against any Allowed Claim and Distribution to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any pre-Petition Date or post-Petition Date account stated, claim, right, or cause of action which the Debtor or the Estate may possess against the holder of such Allowed Claim. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim will constitute a waiver or release by the Debtor, the Estate or the Plan Agent of any such account, claim, right, or cause of action that the Debtor or the Estate may possess against the holder of such Allowed Claim. To the extent that the Plan Agent in allowing a Claim fails to effect a setoff with a Creditor and seeks to collect a claim from such Creditor after a Distribution to such Creditor pursuant to the Plan, the Plan Agent will be entitled to full recovery on its claim against such Creditor, notwithstanding any payment of the Creditor's Allowed Claim pursuant to the Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146612-v3-M11-Joint3rdAmendDS5_20_10.DOC

**c.** **Timeliness of Distributions.**

Any Distribution required to be made on the Effective Date will be deemed timely if made as soon as practicable after such date but, in any event, within fourteen (14) days after such date. Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim will be deemed timely if made as soon as practicable thereafter but, in any event, within fourteen (14) days thereafter.

**d.** **Limitation on Liability.**

Neither the Debtor, the Reorganized Debtor, the Committee, the Post-Effective Date Committee, the Plan Agent, nor any of their respective Representatives will be liable for (i) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, or (ii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the terms of the Plan (including, but not limited to, any delays caused by the resolution of Disputed Claims).

**e.** **Delivery of Distributions.**

(i)      All Distributions under the Plan on account of an Allowed Claim will be tendered only to the holder of such Allowed Claim, as set forth in Section 7.2.6.2 of the Plan.

(ii)      Except as provided in Section 7.2.8 of the Plan with respect to Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative Claims will be distributed by mail as follows: (1) with respect to each holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of Claim; (2) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected in the Bankruptcy Schedules filed by the Debtor; provided, however, that, if the Plan Agent receives a written notice of a change of address for such Creditor, the address set forth in such notice will be used; or (3) with

respect to each holder of an Allowed Administrative Claim, at such address as the holder thereof may specify in writing.

### f.     Approval for Schedule of Proposed Distributions.

In the discretion of the Plan Agent, the Plan Agent will be entitled to prepare a preliminary schedule of proposed Distributions to Creditors ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the making of such Distributions pursuant to the Distribution Schedule. Notice of any such application will be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

### g.     Further Assurances Regarding Distributions.

In accordance with the provisions of Section 13.22 of the Plan, as a condition to obtaining Distributions under the Plan, each Creditor must execute and deliver to the Plan Agent, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of the Plan.

### h.     Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent.

As a condition to obtaining Distributions under the Plan, any Creditor from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, must pay to the Plan Agent the amount, or turn over to the Plan Agent any such property, for which such Creditor is liable to the Debtor.

### i.     Miscellaneous.

The treatment of De Minimis Distributions and undeliverable Distributions and other issues pertaining to Distributions under the Plan are set forth in Article VII of the Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**T.    Objections to Disputed Claims.**

       **1.    Exclusive Right to Object to Claims.**

From and after the Effective Date, the Plan Agent will have the sole and exclusive right to file, litigate and settle objections to Disputed Claims. As the representative of Estate, the Plan Agent, under the supervision of the Post-Effective Date Committee, will succeed to all of the rights and powers of the Debtor and the Estate with respect to all objections to Disputed Claims, and will be substituted for, and will replace, the Debtor, the Estate and the Committee, as applicable, as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

       **2.    Claims Objection Deadline.**

Unless another date is established by order of the Bankruptcy Court, an objection to a Claim must be filed with the Bankruptcy Court and served on the Creditor holding such Claim on or before the Claims Objection Deadline. The Plan Agent will have the right to request that the Bankruptcy Court extend the Claims Objection Deadline for cause shown.

       **3.    Investigation Regarding Disputed Claims.**

Notwithstanding the fact that the Plan Agent will have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained in the Plan will be deemed to obligate the Plan Agent to file any objection to a Claim, which action will be determined by the Plan Agent in the exercise of its sole and absolute discretion.

**THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION REGARDING THE CLAIMS IN THE CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS. THIS INVESTIGATION IS ONGOING AND, SUBJECT TO THE CLAIMS OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE. AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE CLAIMS OBJECTION DEADLINE. THE PLAN AGENT WILL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

THE DEBTOR'S BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY RESPECT.

    **4.**    <u>**Treatment of Disputed Claims**</u>.

        **a.**    <u>**No Distribution Pending Allowance**</u>.

All Distributions under the Plan will be made only on account of Allowed Claims. If any portion of a Claim is a Disputed Claim, no Distribution provided for under the Plan will be made on account of such Claim unless and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

        **b.**    <u>**Distribution After Allowance**</u>.

Within fourteen (14) days following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Plan Agent, as Disbursing Agent under the Plan, will distribute to the Creditor holding such Allowed Claim any Cash or other property that would have been distributable to such Creditor as if, at the time of the making of any Distribution to the Class of which such Creditor is a member, such Claim had been an Allowed Claim and not a Disputed Claim. No interest will be paid on such Claim, except as provided in Section 8.4.3 of the Plan.

        **c.**    <u>**Reserve for Disputed Claims.**</u>

On or as soon as practicable after the Effective Date, the Plan Agent, as Disbursing Agent under the Plan, will establish, in a segregated, interest-bearing account, a reserve for any Disputed Claim ("Disputed Claims Reserve") in an amount equal to 100% of the Distribution to which the holder of the Disputed Claim would be entitled under the Plan based upon the liquidated, face amount of its non-duplicative Disputed Claim unless such Claim is estimated by Final Order of the Bankruptcy Court; provided, however, that the Plan Agent, as Disbursing Agent under the Plan, will have the right to seek from the Bankruptcy Court an order reducing the amount of such Reserve pending the resolution of the Disputed Claim. If the Disputed Claim does not set forth a liquidated amount of such Claim, then the amount of the Reserve to be established on account of such Disputed Claim will be the amount fixed mutually by the Creditor and by the Plan Agent or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  the amount estimated by the Bankruptcy Court pursuant to Section 8.4.3 of the Plan. If the Disputed

2  Claim is estimated, the amount of the Reserve to be established on account of such Disputed Claim

3  will be the estimated amount of such Disputed Claim as determined by Final Order of the

4  Bankruptcy Court, and such estimated amount will set forth the maximum amount of the

5  Distribution on account of such Disputed Claim.

6          **d.**    **No Distribution Until Allowance of Disputed Claim.**

7          No disbursement of funds from a Disputed Claims Reserve will be made on

8  account of a Disputed Claim until such Disputed Claim has been determined by a Final Order of the

9  Bankruptcy Court. Any amount of a Claim which has been disallowed pursuant to an order of the

10  Bankruptcy Court will be deemed to be extinguished and no Distribution of any amount will be paid

11  on account thereof. The amount reserved for any Disputed Claim (plus any interest thereon) which

12  has been disallowed by the Bankruptcy Court will be released to the Plan Agent for the purpose of

13  funding further Distributions to Creditors under the Plan.

14          **5.**    **Bar Date for Filing Avoidance Action Payment Claims.**

15          Any Avoidance Action Payment Claim will be forever barred, will not be

16  enforceable against the Debtor or the Reorganized Debtor and will not be entitled to any Distribution

17  under the Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and

18  served on the Plan Agent within thirty (30) days after the later of (a) the date of entry of the order of

19  the Bankruptcy Court adjudging the Creditor's liability to the Debtor or to the Reorganized Debtor

20  on account of such Avoidance Action, or (b) the Effective Date.

21      **U.**    **Litigation.**

22          **1.**    **Plan Agent's Authorization to Assert Causes of Action.**

23          As of the Effective Date, the Plan Agent will be authorized to exercise and to perform

24  the rights, powers and duties held by the Estate with respect to the Causes of Action. From and after

25  the Effective Date, the Plan Agent will have the sole and exclusive right, to file, litigate, prosecute,

26  settle, adjust, retain, enforce, collect and abandon claims and interests of the Estate with respect to

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

M11 Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1    the Causes of Action, without the consent or approval of any third party, and without any further

2    order of the Bankruptcy Court.

3           2.    **Plan Agent's Evaluation of Causes of Action.**

4          The Plan Agent, under the supervision of the Post-Effective Date Committee, will

5    make the decision whether to prosecute or to continue to prosecute any Causes of Action. This

6    decision will be based, in part, upon the Plan Agent's evaluation of the merits of the Causes of

7    Action as well as the costs required to prosecute such Causes of Action taking into account the

8    resources available to make Distributions to Creditors. The Plan Agent, under the supervision of

9    the Post-Effective Date Committee, will be entitled to determine, in the exercise of its business

10   judgment, not to prosecute, or to abandon, any Cause of Action.

11          3.    **Retention of Professionals.**

12         The Plan Agent may retain Professionals to represent it in prosecution of Causes of

13   Action. The Plan Agent will determine the terms of the retention of Professionals, in the exercise of

14   its business judgment, and will be entitled to retain counsel on a contingency fee basis to prosecute

15   some or all of the Causes of Action, and may seek to finance any costs relating to the prosecution of

16   Causes of Action.

17          4.    **Preservation of Causes of Action.**

18         Unless a Cause of Action is expressly waived, relinquished, released, compromised,

19   or settled in the Plan or in any Final Order, the Plan Proponents expressly reserve such Cause of

20   Action for later adjudication by the Plan Agent (including, without limitation, Causes of Action of

21   which the Plan Proponents presently may be unaware, or which may arise or exist by reason of facts

22   or circumstances unknown to the Plan Proponents at this time, or facts or circumstances which may

23   change or be different from those which the Plan Proponents now believe to exist) and, therefore,

24   no principle of law or equity, including, without limitation, the doctrines of res judicata, collateral

25   estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or

26   laches will apply to the Plan Agent's prosecution of Causes of Action based on this Disclosure

27   Statement, the Plan, or the Confirmation Order. Without limiting the generality of the foregoing,

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

1   any entity with respect to which the Debtor has incurred an obligation (whether on account of

2   services, purchase or sale of property, or otherwise), or who has received services from the Debtor

3   or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or

4   leased equipment or property from the Debtor, should assume that such obligation, transfer, or

5   transaction may be evaluated by the Plan Agent subsequent to the Effective Date and may be the

6   subject of an Avoidance Action or other action or proceeding filed after the Effective Date.

7          **5.      Subordination of Claims**.

8          A Plan Proponent will have the right to file an action to subordinate Claims.  If a Plan

9   Proponent has filed such an action prior to the entry of the Disclosure Statement Order, any Claim

10  subject to such an action will be deemed to be in Class 5 for the purpose of voting on the Plan

11  unless the Bankruptcy Court enters a Final Order to the contrary.  If a Plan Proponent has filed such

12  an action after the entry of the Disclosure Statement Order, but prior to the Effective Date, such

13  action will not affect the right of the Creditor to vote with respect to the Class to which it otherwise

14  would be entitled.  After the Effective Date, only the Plan Agent, under the supervision of the Post-

15  Effective Date Committee, will have the right to file an action to subordinate a Claim.

16  **V.     Executory Contracts And Unexpired Leases.**

17          **1.      Executory Contracts and Unexpired Leases Being Assumed.**

18          Effective as of, and conditioned on, the occurrence of the Effective Date, the Debtor

19  will assume under the Plan all of the executory contracts and unexpired leases of the Debtor listed on

20  Exhibit "2" to the Plan.  The Plan Proponents may amend, through and including the Confirmation

21  Hearing Date, Exhibit "2" to the Plan to add thereto any executory contract or unexpired lease, or to

22  delete therefrom any executory contract or unexpired lease.  However, if any amendments are made

23  to Exhibit "2" to the Plan less than thirty (30) days before the Confirmation Hearing Date, the

24  affected contract or lease parties will have fifteen (15) days from the date of service of notice of such

25  amendments within which to serve on the Plan Proponents a written objection to the same.  Upon

26  receipt of any such objection, the Debtor will promptly set a hearing on the same, and the

27  assumption or rejection of the affected contract or lease will be delayed until the Bankruptcy Court

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  makes a determination on such issue (such determination may be made after the Confirmation Date,

2  without delaying the confirmation of the Plan).  To the extent that an executory contract or

3  unexpired lease has been assumed by the Debtor prior to the Confirmation Date pursuant to an order

4  of the Bankruptcy Court, such assumption will not be affected by the Plan.  The assumption of any

5  contract or lease pursuant to the provisions of the Plan will be only to the extent that such assumed

6  contract or lease constitutes an executory contract or unexpired lease within the meaning of

7  section 365 of the Bankruptcy Code.  Inclusion of an agreement in Exhibit "2" to the Plan does not

8  constitute an admission by the Plan Proponents that (a) such agreement is an executory contract or

9  unexpired lease within the meaning of section 365 of the Bankruptcy Code, (b) the Debtor must

10  assume such agreement in order to continue to receive or retain rights, benefits, or performance

11  thereunder or that any Claim under such agreement must be paid or any default thereunder must be

12  cured, or (c) such agreement is a valid contract or lease.  Any contract or lease assumed pursuant to

13  the Plan will be assumed as previously amended or otherwise modified by the parties thereto,

14  whether before or after the Petition Date.

15  **2.    Executory Contracts and Unexpired Leases Being Rejected.**

16  Effective as of, and conditioned on, the occurrence of the Effective Date, the Debtor

17  will reject under the Plan all of the executory contracts and unexpired leases of the Debtor not listed

18  on Exhibit "2" to the Plan, including, without limitation, those executory contracts and unexpired

19  leases listed on Exhibit "3" to the Plan.  The Plan Proponents reserve the right to amend, through and

20  including the Confirmation Hearing Date, Exhibit "3" to the Plan to add thereto any executory

21  contract or unexpired lease, or to delete therefrom any executory contract or unexpired lease.

22  However, if any amendments are made to Exhibit "3" to the Plan less than thirty (30) days before the

23  Confirmation Hearing Date, the affected contract or lease parties will have fifteen (15) days from the

24  date of service of notice of such amendments within which to serve on the Plan Proponents a written

25  objection to the same.  Upon receipt of any such objection, the Debtor will promptly set a hearing on

26  the same, and the rejection of the affected contract or unexpired lease will be delayed until the

27  Bankruptcy Court makes a determination on such issue (such determination may be made after the

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   Confirmation Date, without delaying the confirmation of the Plan). To the extent that an executory

2   contract or unexpired lease has been rejected by the Debtor prior to the Confirmation Date pursuant

3   to an order of the Bankruptcy Court, such rejection will not be affected by the Plan. The rejection of

4   any contract or lease pursuant to the provisions of the Plan will be only to the extent that such

5   rejected contract or lease constitutes an executory contract or unexpired lease within the meaning of

6   section 365 of the Bankruptcy Code. Inclusion of an agreement in Exhibit "3" to the Plan does not

7   constitute an admission by the Plan Proponents that (a) such agreement is an executory contract or

8   unexpired lease within the meaning of section 365 of the Bankruptcy Code, or (b) such agreement is

9   a valid contract or lease. Any contract or lease rejected pursuant to the Plan will be rejected as

10  previously amended or otherwise modified by the parties thereto, whether before or after the Petition

11  Date. Any executory contract or unexpired lease not listed in Exhibit "2" or in Exhibit "3" to the

12  Plan will be deemed to be rejected by the Debtor on the Effective Date.

13              **3.      Retention of Property Rights.**

14              To the extent that the Debtor has obtained property rights under the executed portion

15  of an executory contract or unexpired lease, rejection of such agreement will not constitute an

16  abandonment by the Debtor of any such property rights.

17              **4.      Bar Date for Rejection Claims.**

18              Any Rejection Claim will be forever barred, will not be enforceable against the

19  Debtor or the Reorganized Debtor, and will not be entitled to any Distribution under the Plan, unless

20  a Proof of Claim for such Rejection Claim is filed and served on the Plan Agent within thirty

21  (30) days after the later of (a) the date of entry of the order of the Bankruptcy Court approving the

22  rejection of the executory contract or unexpired lease, or (b) the Effective Date.

23              **5.      Cure Claims Schedule.**

24              A schedule of the amounts necessary to cure any defaults under executory contracts

25  and unexpired leases assumed under the Plan ("Cure Claims") will be set forth in a schedule ("Cure

26  Claims Schedule") to be filed with the Bankruptcy Court, and served on the non-debtor parties to

27  such executory contracts and unexpired leases, on or before the thirtieth (30th) day prior to the

28

MTI Disclosure Statement v1.4
MAINDOCS-#146613-v3-MTI-Joint3rdAmendDS5_20_10.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    Confirmation Hearing Date. Any objection to the amount of any Cure Claim set forth in the Cure

2    Claims Schedule must be filed and served upon the respective counsel for the Plan Proponents on or

3    before the fifteenth (15th) day prior to the Confirmation Hearing Date. In the event that any such

4    objection to the amount stated for a Cure Claim in the Cure Claims Schedule is not duly filed and

5    served, the amount of the Creditor's Cure Claim will be deemed forever to be the amount set forth in

6    the Cure Claims Schedule, and any Cure Claim in excess of the amount set forth in the Cure Claims

7    Schedule will be waived and will be forever barred in the Bankruptcy Case, without further notice.

8    If the Plan Proponents cannot resolve any such objection with the Creditor, the Debtor may either

9    (a) elect to reject the executory contract or unexpired lease at the Confirmation Hearing, or (b) have

10   the Bankruptcy Court determine the merits of the objection on or after the Confirmation Hearing

11   (without delaying the confirmation of the Plan). Any amount of a Cure Claim payable upon the

12   assumption of an executory contract or unexpired lease will be due and payable on or before the

13   fourteenth (14th) day after the entry of a Final Order fixing the amount of the Cure Claim and then

14   only in the amount fixed by such Final Order.

15          **W.     Post-Effective Date Notice.**

16          From and after the Effective Date, any entity that desires to obtain notice of any pleading or

17   document filed in the Case, or of any hearing in the Bankruptcy Court, or of any matter as to which

18   notice is to be provided under the Plan, must file a request for post-Effective Date notice and serve

19   such request on the Plan Agent, the Post-Effective Date Committee, and any counsel for the Plan

20   Agent; provided, however, that the United States Trustee, the Post-Effective Date Committee, the

21   Reorganized Debtor and the Plan Agent each will be deemed to have requested such post-Effective

22   Date notice.

23          **X.     Miscellaneous Plan Provisions.**

24          Other provisions of the Plan, including provisions pertaining to the Plan Agent's duty to file

25   after the Effective Date reports regarding the status of implementation of the Plan, the Plan

26   Proponents' right to revoke the Plan prior to the Confirmation Date, the governing law relating to the

27   Plan, the Bankruptcy Court's retention of jurisdiction over the Case and the Plan after the Effective

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA