```
 1 | SCOTT C. CLARKSON, ESQ.  SBN 143271
   | EVE A. MARSELLA, ESQ.  SBN 165797
 2 | CLARKSON, GORE & MARSELLA
   | A PROFESSIONAL LAW CORPORATION
 3 | 3424 Carson Street, Suite 350
   | Torrance, California 90503
 4 | (310) 542-0111 Telephone
   | (310) 214-7254 Facsimile
 5 |
   | Attorneys for MTI Technology Corporation, Debtor and
 6 | Debtor in Possession
```

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| In re | Case No. 8:07-bk-13347-ES |
|---|---|
| MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 |
| Debtor and Debtor in Possession. | NOTICE OF MOTION AND MOTION TO DISALLOW CLAIM OF EDWARD KIRNBAUER (CLAIM NO. 47); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT |
| | Date:  July 20, 2010<br>Time: 10:30 a.m.<br>Ctrm: 5A<br>    411 West Fourth Street<br>    Santa Ana, CA |

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE THAT** pursuant to §502 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, Debtor MTI Technology Corporation ("Debtor") hereby files this objection (the "Objection") to the disputed claim ("Disputed Claim") of **Edward Kirnbauer, Claim No. 47**, based upon the Debtor's books and records.

This notice ("Notice") contains important time-sensitive information about asserted claims against the Debtor. Please read this Notice in its entirety. This Notice explains the procedures for responding to this Objection and the consequences of failing to submit a timely

1 | response to this Objection.

2 | A complete copy of the Disputed Claim to which objection is made is attached hereto.

3 | **PLEASE TAKE FURTHER NOTICE THAT** Local Bankruptcy Rule 9013-1, made

4 | applicable to this Objection pursuant to Local Bankruptcy Rule 3007-1, requires that any

5 | response to the Objection be filed with the Clerk of the Court, 411 West 4th Street, Santa Ana,

6 | CA 92701, and served upon the attorneys for the Debtor at the address set forth in the upper left-

7 | hand corner of the first page hereof, and all other interested parties, not later than 14 days prior to

8 | the hearing date. The failure to timely file and serve written opposition may be deemed by the

9 | Court to be consent to the granting of the relief requested in the Motion.

10 | Dated: June 17, 2010

CLARKSON, GORE & MARSELLA
A Professional Law Corporation

By: _____
Scott C. Clarkson
Eve A. Marsella
Christine M. Fitzgerald
Attorneys for MTI Technology Corporation

---

Objection to Proof of Claim of Edward Kirnbauer (Claim No. 47)

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## OBJECTION

### I.

### PREFATORY STATEMENT

The Debtor objects to the claim filed by Edward Kirnbauer, Claim No. 47, a former employee, on the grounds that the Debtor's books and records reflect different pre-petition amounts are due to the claimant. The Debtor objects only to the extent that the filed amounts exceed what is reflected in its books and records, and the categorization of the claims as either priority or unsecured, as set forth below.

### II.

### CLAIM OBJECTION[1]

The Debtor hereby objects to the claim filed on November 7, 2007, by Edward W. Kirnbauer, a former employee and officer of the Debtor, with a claim in the amount of $206,492.05 [See Proof of Claim No. 47]. The Debtor objects to this claim because its books and records reflect that the following amounts are owed to this claimant: $193,694.62 unsecured and $4,620.00 priority, for a total of $198,314.62. These amounts were derived as follows: the Debtor reviewed its books and records and determined that the claimant was owed for accrued vacation of $6,314.62 (82.09 hours), $4,620.00 (60.06 hours) of which was accrued in the 180 days prior to the Petition Date and $1,694.62 (22.03 hours) outside of the 180 day period. See **Exhibit "A"**.

The claimant also seeks payment of $200,000 pursuant to his Change of Control Agreement (attached to the Proof of Claim). The Proof of Claim, however, provides no explanation of how the claimant derived the $200,000 figure. The claimant's base annual salary was $160,000.00. The claimant's annual bonus was $32,000.00. Accordingly, the amount asserted should be $192,000.00 as compensation to which the claimant might have received for the year following his termination. See, e.g., 11 USC §502(7).

---

[1] See, also, Section IV – Argument, commencing at page 4, for the legal argument applicable to the objections.

1   Accordingly, the Debtor objects to Claim No. 47, in the amount of $206,492.05 and
2   proposes that it be allowed in the amount of $198,314.62, with $193,694.62 as a general
3   unsecured claim, $4,620.00 as a priority claim and $8,177.43 disallowed.

## III.

## FACTS[2]

MTI Technology Corporation, debtor and debtor in possession filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 15, 2007. Allowed claims in this bankruptcy case presently include certain claims listed on the Debtor's Schedules (the "Schedules") (not listed as unliquidated, disputed, or contingent) and claims reflected by proofs of claim filed by claim holders under §501 of the Bankruptcy Code (the "Claims"). The Debtor has reviewed the Schedules, as well as each claim filed against the Debtor's estate and has reconciled the Schedules and Claims to the Debtor's books and records.

## IV.

## ARGUMENT

A.   THE DEBTOR IS A PROPER PARTY TO OBJECT TO CLAIMS

Pursuant to §502 of the Bankruptcy Code, the allowance or disallowance of claims must be determined by the Court after an objection is made. Section 502 of the Bankruptcy Code provides, in relevant part:

> (a) A claim ... proof of which is filed under [11 U.S.C. §501] is deemed allowed, unless a party in interest ... objects.

11 U.S.C. §502. The Debtor not only may bring objections as a party in interest, but is the party upon which devolves the duty to bring objections.

///

///

---

[2] The information set forth in this section is supported by the annexed declaration of Scott J. Poteracki ("Poteracki Declaration").

Objection to Proof of Claim of Edward Kirnbauer (Claim No. 47)
4

B.     THE COURT MUST DETERMINE THE ALLOWABLE AMOUNT OF A CLAIM SUBJECT TO OBJECTION.

With certain exceptions, §502(b) of the Bankruptcy Code requires that:

> ...if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that --
>
> (1)     such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured ... or
>
> (9)     proof of such claim is not timely filed ...

11 U.S.C. §502(b)(1) & (9). As set forth herein and in the attached Poteracki Declaration, the Disputed Claims to which the Debtor has objected should be disallowed based on the foregoing provisions.

C.     THE CLAIMANT MUST ESTABLISH THE VALIDITY OF THE CLAIM BY A PREPONDERANCE OF THE EVIDENCE

A properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claims. *In re Hold,* 931 F.2d 620, 623 (9th Cir. 1991); *see also In re Pugh*, 157 B.R. 898, 901 (Bankr. 9th Cir. 1993); *In re Fidelity Mortgage Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988) (affirming disallowance of claim -- "the claimant must ... 'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests upon the claimant.").

Usually, the objector must produce evidence sufficient to:

> negate the prima facie validity of the filed claim. In practice, the objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

*Consolidated Pioneer,* 178 B.R. at 226.

But, since "the ultimate burden of persuasion is always on the claimant", the burden of proof then "reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id.; In re Pugh*, 157 B.R. 898 (9th Cir.BAP 1993); *In re Holm*, 931 F.2d 620 (9th Cir.

1991).

The Debtor has submitted evidence, the Poteracki Declaration, to negate the prima facie validity of the Disputed Claim. Thus, the burden is on the holder of the Disputed Claim (i.e., Mr. Kirnbauer) to provide admissible evidence proving the validity of his claim.

As set forth above, the Debtor's books and records do not indicate that the Debtor is obligated to pay this claim. Indeed, there is no documentation attached to the Proof of Claim which might indicate that the Debtor is obligated to pay this claim. Therefore, the Disputed Claim of Edward Kirnbauer, Claim No. 47, in the amount of $206,492.05 and proposes that it be allowed in the amount of $198,314.62, with $193,694.62 as a general unsecured claim, $4,620.00 as a priority claim and $8,177.43 disallowed.

D.  **CLAIMS ASSERTED ON SOME OTHER BASIS SHOULD BE DISALLOWED FOR FAILURE TO SET FORTH THE BASIS OF THE CLAIM**

To the extent that the claimant asserts a claim on some other basis, his proof of claim fails to set forth the basis of his claim, and should be disallowed for that reason. Well-established case law requires that a proof of claim set forth facts sufficient to establish the debtor's liability to the claimant. *In re Circle J. Dairy*, 112 B.R. 297, 300 (W.D.Ark. 1989) (quoting Collier on Bankruptcy). This minimal requirement is necessary to avoid abuses of the claim process and to ensure that the debtor has sufficient information to prepare an objection to a proof of claim. *In re All American-Auxiliary Association*, 95 B.R. 540, 545 (S.D. Ohio 1989). Without a recitation of facts underlying the alleged liability, the debtor cannot meet its burden of going forward with evidence to establish the invalidity of the claim. *See, Id.* A debtor can hardly be expected to prove a negative, that is, to present evidence disproving the undisclosed facts and theories of a claimant. Imposing such a burden is contrary to the rationale underlying allocation of the burden of proof. *In re Jordan*, 91 B.R. 673, 684 (E.D. Pa. 1988) (the logic of allocation of burden of proof is that it is necessarily placed on the party who has the most knowledge, and the best means of proof on a given issue at his disposal). Thus, when a proof of claim fails to set forth facts sufficient to enable the Debtor to ascertain the nature of the claim asserted, the Court should disallow the claim in its entirety.

V.

**CONCLUSION**

For all of the foregoing reasons, the Debtor respectfully requests that the Court enter an order allowing Claim of Edward Kirnbauer, Claim No. 47, in the amount of $198,314.62, with $193,694.62 as a general unsecured claim, $4,620.00 as a priority claim and $8,177.43 disallowed in its entirety.

Dated: June 17, 2010

          CLARKSON, GORE & MARSELLA
          A Professional Law Corporation

          By: _____
          Scott C. Clarkson
          Eve A. Marsella
          Christine M. Fitzgerald
          Attorneys for MTI Technology Corporation

## DECLARATION OF SCOTT J. POTERACKI

I, Scott J. Poteracki, declare as follows:

1. I am the Chief Restructuring Officer of MTI Technology Corporation, (the "Debtor"), the Debtor in the above-captioned proceeding. Prior to the Debtor's bankruptcy filing, I was the CFO and Executive Vice President of the Debtor with direct supervisory responsibilities over the financial affairs and operations of the Debtor. I have personal knowledge of the following, or have gained such knowledge from my review of the records of the Debtor, which are obtained, created and maintained in the ordinary course of business, and if called as a witness, could and would competently testify thereto.

2. The Debtor filed a Chapter 11 petition on October 15, 2007.

3. I am personally familiar with the books and records of the Debtor as they relate to the Debtor's accounts payable as of the date of the filing of the Debtor's bankruptcy case (the "Accounts Payable Books"). The Accounts Payable Books were made by the employees of the Debtor who had a business duty to enter the records of the Debtor accurately at or near the time of the event which they record such information, by or from information transmitted by someone with personal knowledge of the event or act. To the extent that information contained in the Debtor's books and records was computer-generated, the computers used by the Debtor were generally accepted in the Debtor's industry, were in good working order at all relevant times, and the computer operator possessed the knowledge and training to operate the computer correctly.

4. I am personally familiar with the books and records of the Debtor as they relate to the Debtor's employees, and vacation and all other amounts accrued and owed each of the Debtor's employees. The Debtor employed regular personnel, who had a business duty to regularly track and maintain such data in an Excel spreadsheet.

5. Effective as of December 31, 2001, the Debtor implemented the business policy of having an Excel spreadsheet created and maintained, which contained every employee name, hourly pay rate, and department information. Vacation balances per the ADP payroll system were input onto this spreadsheet (the "Vacation Spreadsheet") and tied out to an ADP vacation

report downloaded from the ADP system. This business policy initially started in preparation for the payroll system to be converted over to Zurich Payroll Solutions, which did not have an accurate method of reporting and tracking accrued vacation earned and vacation taken. However, after the conversion to Zurich Payroll Solutions, the Debtor subsequently converted the payroll system back to ADP, at which point the Vacation Spreadsheet was then tied out with the ADP data to ensure the accuracy of the conversion to ADP. The Vacation Spreadsheet was continually maintained, because the Debtor then subsequently converted the payroll system from ADP to Ceridian Payroll, and again the Vacation Spreadsheet was tied out with the ADP data and used to ensure the accuracy of the conversion to Ceridian. The Debtor then converted the payroll system back to ADP once again and tied out the Vacation Spreadsheet to the ADP payroll reports. The Vacation Spreadsheet was maintained by Kimberly Torrence, Manager of General Accounting, from 12/31/2001 through 06/13/2008 (the date she left the Debtor's employment).

6. The Vacation Spreadsheet was updated each biweekly payroll period using the payroll provider's applicable reports showing vacation hours earned during the period (which were then multiplied by the employee's current hourly rate as determined by the applicable payroll report) and any vacation taken. The Vacation Spreadsheet was then tied out with the hard copy payroll system reports to ensure all data had been input appropriately into the Excel spreadsheet. All bi-weekly hard copy payroll reports used in maintaining the Vacation Spreadsheet were retained by Kimberly Torrence, Manager of General Accounting, with notations indicating the Vacation Spreadsheet and the payroll reports had been tied out.

7. When the Debtor acquired Collective Technologies ("CT"), the Vacation balances that were brought onto the Debtor's books from CT were input into the Vacation Spreadsheet and tied out to CT's Vacation balance report provided to the Debtor, along with their biweekly accrual rates, and hourly pay rate information. The Vacation Spreadsheet was also tied out to the applicable ADP payroll reports at this time.

8. The Debtor's payroll was always paid 5 days in arrears for each two-week period,

which began on Monday and ended on Sunday. In some instances, the payroll provider's records were not accurate in reflecting vacation hours earned (especially in cases where employees terminated employment mid-payroll-period and were paid out vacation hours earned through the date of termination, but the payroll provider's software only reflected the hours earned through the last regular payroll run and did not accrue the additional hours to the employee, since the payroll system indicated the employee was terminated; or in rare cases where a new hire was not properly set up in the payroll system to accrue vacation hours). This is where the Vacation Spreadsheet was determined to be more accurate than the payroll system, since all hours earned and paid out were manually added to the spreadsheet based on the actual payment records and new hire records. The use of this spreadsheet acted as a double-check on the accuracy of data input by the payroll clerk into the payroll system.

9.  During several annual audits of the Debtor's financial records, the Vacation Spreadsheet and the reports used in maintaining it were examined by the professional audit team, and the Vacation Spreadsheet was accepted by the auditors.

10. In creating the Vacation Spreadsheet used for the priority claim amounts, the Vacation Spreadsheet existing at the time of the Petition Date was used and "frozen" at 10/15/07. (A new spreadsheet for the post-bankruptcy period was then created and used to track any vacation earned and paid out after the 10/15/07 cutoff date.) The priority claim amounts were determined by calculating the vacation earned in the 180 days prior to the Petition Date of 10/15/07, and comparing that to the actual vacation balance on the Vacation Spreadsheet at 10/15/07. If the hours calculated as accrued in the 180 days prior to 10/15/07 were higher than the actual vacation balance per the Vacation Spreadsheet (indicating the employee had taken vacation during that time), then the lower, actual amount was used as the priority unsecured liability claim amount. Any excess vacation balance earned prior to the 180-day period was included in the regular unsecured liability claim column. The totals of these two columns represent the total accrued vacation per the Vacation Spreadsheet at 10/15/07. A true and correct copy of the Vacation Spreadsheet is attached hereto as **Exhibit "A"**.

11.    The Debtor hereby objects to the claim filed on November 7, 2007, by Edward W. Kirnbauer, a former employee and officer of the Debtor, with a claim in the amount of $206,492.05 [See Proof of Claim No. 47]. The Debtor objects to this claim because its books and records reflect that the following amounts are owed to this claimant: $193,694.62 unsecured and $4,620.00 priority, for a total of $198,314.62. These amounts were derived as follows: the Debtor reviewed its books and records and determined that the claimant was owed for accrued vacation of $6,314.62 (82.09 hours), $4,620.00 (60.06 hours) of which was accrued in the 180 days prior to the Petition Date and $1,694.62 (22.03 hours) outside of the 180 day period. See **Exhibit "A"**.

The claimant also seeks payment of $200,000 pursuant to his Change of Control Agreement (attached to the Proof of Claim). The Proof of Claim, however, provides no explanation of how the claimant derived the $200,000 figure. The claimant's base annual salary was $160,000.00. The claimant's annual bonus was $32,000.00. Accordingly, the amount asserted should be $192,000.00 as compensation to which the claimant might have received for the year following his termination. See, e.g., 11 USC §502(7).

Accordingly, the Debtor objects to Claim No. 47, in the amount of $206,492.05 and proposes that it be allowed in the amount of $198,314.62, with $193,694.62 as a general unsecured claim, $4,620.00 as a priority claim and $8,177.43 disallowed in its entirety.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on June 17, 2010, at Tustin, California.

Scott J. Poteracki

Objection to Proof of Claim of Edward Kirnbauer (Claim No. 47)

11

11. The Debtor hereby objects to the claim filed on November 7, 2007, by Edward W. Kirnbauer, a former employee and officer of the Debtor, with a claim in the amount of $206,492.05 [See Proof of Claim No. 47]. The Debtor objects to this claim because its books and records reflect that the following amounts are owed to this claimant: $193,694.62 unsecured and $4,620.00 priority, for a total of $198,314.62. These amounts were derived as follows: the Debtor reviewed its books and records and determined that the claimant was owed for accrued vacation of $6,314.62 (82.09 hours), $4,620.00 (60.06 hours) of which was accrued in the 180 days prior to the Petition Date and $1,694.62 (22.03 hours) outside of the 180 day period. See **Exhibit "A"**.

The claimant also seeks payment of $200,000 pursuant to his Change of Control Agreement (attached to the Proof of Claim). The Proof of Claim, however, provides no explanation of how the claimant derived the $200,000 figure. The claimant's base annual salary was $160,000.00. The claimant's annual bonus was $32,000.00. Accordingly, the amount asserted should be $192,000.00 as compensation to which the claimant might have received for the year following his termination. See, e.g., 11 USC §502(7).

Accordingly, the Debtor objects to Claim No. 47, in the amount of $206,492.05 and proposes that it be allowed in the amount of $198,314.62, with $193,694.62 as a general unsecured claim, $4,620.00 as a priority claim and $8,177.43 disallowed in its entirety.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on June ____, 2010, at Tustin, California.

_____
Scott J. Poteracki