1   Scott C. Clarkson, Esq. (CA Bar No. 143271)
    Eve A. Marsella, Esq. (CA Bar No. 165797)
2   Clarkson, Gore & Marsella, APLC
    3424 Carson Street, Suite 350
3   Torrance, California 90503
    Telephone: 310/542-0111
4   Facsimile: 310/214-7254
    Email: sclarkson@lawcgm.com
5
    Attorneys for Debtor and Debtor-in-Possession
6   MTI Technology Corporation
7
    Robert E. Opera, Esq. (CA Bar No. 101182)
8   Winthrop Couchot Professional Corporation
    660 Newport Center Drive, Suite 400
9   Newport Beach, CA 92660
    Telephone: 949/720-4100
10  Facsimile: 949/720-4111
    Email: ropera@winthropcouchot.com
11
    Attorneys for the Official Committee
12  of Unsecured Creditors
13
14              UNITED STATES BANKRUPTCY COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                  SANTA ANA DIVISION

17

18  In re                              Case No.: 8:07-13347-ES

19  MTI TECHNOLOGY CORPORATION, a       Chapter 11
    Delaware corporation,
20                                      **DEBTOR'S AND COMMITTEE'S JOINT
              Debtor                    FOURTH AMENDED CHAPTER 11 PLAN**
21
22                                      Date:      August 26, 2010
                                        Time:      10:30 a.m.
23                                      Location:  Courtroom 5A
24                                      Judge:     The Honorable Erithe A. Smith
25
26
27
28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................2

II.     DEFINITIONS AND RULES OF CONSTRUCTION ....................................................3
        2.1     Defined Terms ....................................................................................................3
        2.2     Rules of Interpretation ......................................................................................17
        2.3     Exhibits ..............................................................................................................18

III.    UNCLASSIFIED CLAIMS ...........................................................................................18
        3.1     Allowed Administrative Claims........................................................................18
                3.1.1    Payment ...............................................................................................19
                3.1.2    Administrative Claims Bar Date ..........................................................19
                3.1.3    Deadline for Objections.......................................................................19
                3.1.4    United States Trustee Fees ...................................................................20
                3.1.5    Pre-Effective Date Professional Fee Claims........................................20
        3.2     Allowed Priority Tax Claims.............................................................................20

IV.     CLASSIFICATION OF CLAIMS AND INTERESTS ....................................................21
        4.1     Overview ...........................................................................................................21
        4.2     Designation of Classes.......................................................................................21
                4.2.1    Allowed Claims ...................................................................................21
                4.2.2    Interests................................................................................................22
        4.3     Summary of Classification.................................................................................22

V.      TREATMENT OF CLASSES UNDER THIS PLAN .....................................................23
        5.1     Class 1 -- Any Allowed Secured Claims ...........................................................23
                5.1.1    Treatment of Allowed Secured Claims.................................................23
        5.2     Class 2 -- Allowed Priority Non-Tax Claims ....................................................24
                5.2.1    Treatment of Allowed Non-Tax Priority Claims...................................23
        5.3     Class 3 -- Allowed General Unsecured Claims ..................................................24
                5.3.1    Treatment of Allowed General Unsecured Claims ...............................24
        5.4     Class 4 -- Canopy Claim ...................................................................................27
                5.4.1    Treatment of Canopy Claim .................................................................27
        5.5     Class 5 -- Allowed Subordinated Claims...........................................................27
                5.5.1    Treatment of Allowed Subordinated Claims ........................................27
        5.6     Class 6 -- Allowed Interests ..............................................................................29
                5.6.1    Treatment of Allowed Interests ...........................................................29

VI.     PLAN IMPLEMENTATION ..........................................................................................30
        6.1     Overview ...........................................................................................................30
        6.2     Condition Precedent to Plan Confirmation........................................................30
        6.3     Conditions Precedent to the Effectiveness of the Plan ......................................31
        6.4     Implementation of Plan......................................................................................32
        6.5     Corporate Action................................................................................................32

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

i

**TABLE OF CONTENTS**

**(Continued)**

                                                                                      **Page**

6.6    Plan Agent/Vesting of Assets ...............................................................32
       6.6.1   Employment of Plan Agent ........................................................32
       6.6.2   Transfer of Assets.....................................................................32
       6.6.3   Disposition of Plan Assets.........................................................33
6.7    Termination of Debtor's Officers, Directors, Employees
       and Professionals ...............................................................................33
6.8    Plan Fund Proceeds/Plan Administration ............................................33
       6.8.1   Distribution of Plan Fund Proceeds............................................33
       6.8.2   Plan Agent's Implementation of Plan .........................................33
       6.8.3   Representative of the Estate .......................................................34
       6.8.4   Plan Agent Disclosure ...............................................................34
       6.8.5   No Liability of Post-Effective Date Committee, the Plan
               Agent or the Reorganized Debtor...............................................34
       6.8.6   Funding of Post-Effective Date Plan Expenses...........................35
6.9    Termination of the Committee and Appointment of the Post-
       Effective Date Committee....................................................................35
       6.9.1   Replacement of Committee ........................................................35
       6.9.2   Members of Post-Effective Date Committee ...............................36
       6.9.3   Duties of Members of Post-Effective Date Committee.................36
6.10   The Reorganized Debtors .....................................................................36
       6.10.1  Corporate Powers .....................................................................36
       6.10.2  Board of Directors .....................................................................37
       6.10.3  Officer of Reorganized Debtor...................................................37
       6.10.4  Effectuation of Merger Transaction ...........................................37
6.11   Causes of Action .................................................................................38
6.12   Post-Effective Date Professional Fees...................................................38
6.13   Approval for Disposition of Plan Assets ................................................39
6.14   Compromise of Controversies ..............................................................39
6.15   Bankruptcy Court Approval Relative to Post-Confirmation Matters ......39
6.16   Plan Agent Certification .......................................................................39
6.17   Final Decree ........................................................................................40
6.18   Merger Transaction ..............................................................................40
       6.18.1  Background................................................................................40
       6.18.2  Merger Consummation Date ......................................................40
       6.18.3  Cancellation of Post-Effective Date Stock and Wind-Up
               of Reorganized Debtor ..............................................................41
       6.18.4  Terms of any Merger Transaction ..............................................41
       6.18.5  Valuation of Post-Effective Date Stock ......................................42
       6.18.6  Election Not to Receive Post-Effective Date Stock .....................42

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

ii

MTI Plan v.3.0

# TABLE OF CONTENTS

## (Continued)

|  |  | Page |
|---|---|---|
| VII. | DISTRIBUTIONS | 43 |
| | 7.1 Designation and Role of the Disbursing Agent | 42 |
| | 7.1.1 Plan Agent to Serve as Disbursing Agent | 42 |
| | 7.1.2 No Bond | 43 |
| | 7.1.3 Payment of Fees and Expenses of Disbursing Agent | 43 |
| | 7.1.4 Employment of Agents | 43 |
| | 7.2 Distribution of Property Under this Plan | 43 |
| | 7.2.1 Cash Distributions | 43 |
| | 7.2.2 Setoffs and Recoupment | 43 |
| | 7.2.3 No De Minimis Distributions | 44 |
| | 7.2.4 Timeliness of Distributions | 44 |
| | 7.2.5 Limitation on Liability | 44 |
| | 7.2.6 Delivery of Distributions | 44 |
| | 7.2.7 Undeliverable Distributions | 45 |
| | 7.2.8 Disposition of Unclaimed Property | 45 |
| | 7.2.9 Approval for Schedule of Proposed Distributions | 46 |
| | 7.2.10 Compliance with Tax Requirements | 46 |
| | 7.2.11 Further Assurances Regarding Distributions | 46 |
| | 7.2.12 Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent | 46 |
| VIII. | OBJECTIONS TO DISPUTED CLAIMS | 48 |
| | 8.1 Exclusive Right to Object to Claims | 47 |
| | 8.2 Claims Objection Deadline | 47 |
| | 8.3 Investigation Regarding Disputed Claims | 47 |
| | 8.4 Treatment of Disputed Claims | 48 |
| | 8.4.1 No Distribution Pending Allowance | 48 |
| | 8.4.2 Distribution After Allowance | 48 |
| | 8.4.3 Reserve for Disputed Claims | 48 |
| | 8.4.4 No Distribution Until Allowance of Disputed Claims | 49 |
| | 8.5 Bar Date for Filing Avoidance Action Payment Claims | 49 |
| IX. | LITIGATION | 50 |
| | 9.1 Plan Agent's Authorization to Assert Causes of Action | 49 |
| | 9.2 Plan Agent's Evaluation of Causes of Action | 50 |
| | 9.3 Retention of Professionals | 50 |
| | 9.4 Preservation of Causes of Action | 50 |
| | 9.5 Subordination of Claims | 51 |
| X. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 52 |
| | 10.1 Executory Contracts and Unexpired Leases Being Assumed | 51 |
| | 10.2 Executory Contracts and Unexpired Leases Being Rejected | 52 |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v.3.0

iii

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

# TABLE OF CONTENTS

## (Continued)

                                                                                              **Page**

10.3    Retention of Property Rights ............................................................53
10.4    Bar Date for Rejection Claims .........................................................53
10.5    Cure Claims Schedule ......................................................................53

XI.    EFFECT OF CONFIRMATION OF THIS PLAN..................................55
11.1    Discharge ..........................................................................................54
11.2    Injunction ..........................................................................................54
11.3    Release ..............................................................................................55
11.4    Distribution of Property Free and Clear of Liens, Claims, and Interests...............56
11.5    Binding Effect of Plan .....................................................................56

XII.   LIMITATION OF LIABILITY .............................................................57
12.1    No Liability for Solicitation or Participation ...................................56
12.2    Good Faith .........................................................................................56
12.3    Limitation of Liability Regarding Plan Confirmation .....................56

XIII.  OTHER PLAN PROVISIONS ...............................................................58
13.1    Exemption from Stamp, Transfer and Other Taxes .........................57
13.2    Books and Records ...........................................................................57
13.3    Post-Effective Date Quarterly Fees .................................................57
13.4    Post-Effective Date Status Report....................................................57
13.5    Effectiveness of Court Orders ..........................................................58
13.6    No Admissions ..................................................................................58
13.7    Revocation of the Plan .....................................................................58
13.8    Severability of Plan Provisions .......................................................58
13.9    Governing Law ..................................................................................59
13.10   Retention of Jurisdiction ..................................................................59
13.11   Successors and Assigns.....................................................................61
13.12   Business Day......................................................................................61
13.13   No Waiver ..........................................................................................61
13.14   Post-Effective Date Notice ...............................................................62
13.15   Modification of the Plan ...................................................................62
13.16   Nonconsensual Confirmation...........................................................62
13.17   Other Documents and Actions ..........................................................62
13.18   Notices ...............................................................................................63
13.19   Inconsistencies ..................................................................................63
13.20   Changes in Rates Subject to Regulatory Commission Approval.........63
13.21   Modification/Superseding of Loan and Security Agreements.............63
13.22   Implementation of Section 1142 of the Bankruptcy Code.................63

XIV.   RECOMMENDATION AND CONCLUSION..........................................65

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

iv

MTI Plan v.3.0

MTI Technology Corporation and the Official Committee of Unsecured Creditors hereby propose jointly this Joint Fourth Amended Chapter 11 Plan and request confirmation hereof pursuant to section 1129 of the Bankruptcy Code.

## I.

## **INTRODUCTION**

This Plan is proposed jointly by the Debtor and by the Committee for the resolution of the Claims against the Estate.[1]  This Plan provides for a comprehensive debt restructuring of the Debtor.  Pursuant to this Plan, the Allowed Claims of Creditors will be paid in accordance with the terms and conditions of this Plan and otherwise will be discharged.

Sent to you in the same envelope as this Plan is the Debtor's Disclosure Statement.  The Disclosure Statement has been approved by the Bankruptcy Court, and is being provided along with this Plan in order to help you to understand this Plan and to evaluate the merits of this Plan. The Disclosure Statement discusses, among other things, the Debtor's business, the results of the Debtor's operations, the Debtor's assets and liabilities and the material terms of this Plan. Creditors are encouraged to read the Disclosure Statement.

The objective of this Plan is to liquidate the Debtor's Assets for the benefit of Creditors and make Distributions to the holders of Allowed Claims.  By this Plan, the Reorganized Debtor will continue in existence as appropriate to effectuate a Merger Transaction prior to the Merger Consummation Date, with any value obtained from any such Merger Transaction distributed to holders of Allowed General Unsecured Claims in accordance with the terms and conditions of this Plan.

This Plan divides Creditors and Interest Holders into Classes based upon their respective legal rights and interests, and provides for the satisfaction of Allowed Claims in accordance with the terms and conditions of this Plan.  Interest Holders will not receive or retain any value on account of their Interests, except as provided expressly to the contrary in Section 5.6 hereof.

---

[1] The definitions of the capitalized terms contained herein are set forth in Article II of this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

UNLESS SPECIFICALLY SET FORTH IN THIS PLAN TO THE CONTRARY, THE INFORMATION CONTAINED OR REFERRED TO IN THIS PLAN HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT.  RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED INTERNALLY BY THE DEBTOR.  ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT HEREIN ACCURATE FINANCIAL INFORMATION, THE RECORDS KEPT BY THE DEBTOR ARE NEITHER WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY. NEITHER THE PLAN PROPONENTS NOR ANY OF THE PROFESSIONALS EMPLOYED BY THE PLAN PROPONENTS HAS INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN, AND NONE OF THEM MAKES ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THE ACCURACY OF SUCH INFORMATION.

ANY CREDITOR ENTITLED TO VOTE ON THIS PLAN IS URGED TO REVIEW CAREFULLY THIS PLAN PRIOR TO VOTING ON THIS PLAN, AND MAY DESIRE TO CONSULT WITH ITS OWN LEGAL COUNSEL PRIOR TO VOTING ON THIS PLAN IN ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THIS PLAN.

## II.

## DEFINITIONS AND RULES OF CONSTRUCTION

2.1    **Defined Terms.**  The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below.

2.1.1    "**Administrative Claim**" means a Claim for costs or expenses that are allowable under sections 503(b) or 507(b) of the Bankruptcy Code or 28 U.S.C. § 1930. These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Pre-Effective Date Professional Fee Claims; (d) Administrative Tax Claims; and (e) United States Trustee Fees.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.2** **"Administrative Claims Bar Date"** has the meaning set forth in Section 3.1.2 of this Plan.

**2.1.3** **"Administrative Claims Objection Deadline"** has the meaning set forth in Section 3.1.3 of this Plan.

**2.1.4** **"Administrative Tax Claim"** means a Tax Claim, other than a Secured Claim, that a governmental unit asserts against the Debtor for any tax period that, in whole or in part, falls within the period commencing on the Petition Date and ending on the Effective Date.

**2.1.5** **"Allowed Administrative Claim"** means an Administrative Claim that is allowed as set forth in Section 3.1 hereof or otherwise by a Final Order.

**2.1.6** **"Allowed Avoidance Action Payment Claim"** means an Allowed Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action. Any Allowed Avoidance Action Payment Claim shall be treated hereunder as a Class 3 Claim.

**2.1.7** **"Allowed Claim"** means a Claim (a) that is listed in the Bankruptcy Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (b) with respect to which a Proof of Claim has been filed by the Bar Date, and as to which no objection is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order. The amount of an Allowed Claim shall be as follows: (i) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Bar Date, the amount of the Creditor's Claim as listed in the Bankruptcy Schedules as neither disputed, contingent, unliquidated or unknown; or (ii) if the Creditor filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court, or (2) the amount thereof fixed by a Final Order of the Bankruptcy Court

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

4

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

if an objection to such Proof of Claim is filed within the time period fixed by the

Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court.

Any Claim that is not filed by the Bar Date and that is listed in the Bankruptcy Schedules as

disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of this

Plan, shall be disallowed, and no Distribution shall be made on account of such Claim.  No

default interest or late charges or comparable fees, charges or penalties shall be included as

part of an Allowed Claim.

**2.1.8**    "**Allowed Class '\*\*' Claim**" means an Allowed Claim classified in the
specified Class.

**2.1.9**    "**Allowed Deficiency Claim**" means that portion of an Allowed Claim
that is in excess of the value of any Collateral which is security for the repayment of such
Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

**2.1.10**    "**Allowed General Unsecured Claim**" means an unsecured Allowed
Claim against the Debtor, however arising, not entitled to priority under section 507(a) of
the Bankruptcy Code, including, without limitation, an Allowed Deficiency Claim, an
Allowed Rejection Claim or an Allowed Avoidance Action Payment Claim.

**2.1.11**    "**Allowed Interest**" means an Interest to the extent, and only to the extent,
of the amount of such Interest allowed by this Plan or by Final Order of the Bankruptcy
Court.

**2.1.12**    "**Allowed Penalty Claims**" means a Penalty Claim that is allowed by a
Final Order.  Any Allowed Penalty Claim shall be treated hereunder as an Allowed Class 5
Claim.

**2.1.13**    "**Allowed Priority Non-Tax Claim**" means an unsecured Allowed Claim
entitled to priority pursuant to sections 507(a)(4), 507(a)(5), or 507(a)(7) of the Bankruptcy
Code.

**2.1.14**    "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to
priority under section 507(a)(8) of the Bankruptcy Code.

1        **2.1.15**   **"<u>Allowed Rejection Claim</u>"** means any Allowed General Unsecured

2   Claim based upon or arising from the rejection of an executory contract or unexpired lease

3   pursuant to a Final Order of the Bankruptcy Court or pursuant to this Plan. Any Allowed

4   Rejection Claim shall be treated hereunder as a Class 3 Claim.

5        **2.1.16**   **"<u>Allowed Secured Claim</u>"** means an Allowed Claim secured by a valid

6   and unavoidable Lien against property in which the Estate has an interest, or which is

7   subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value,

8   determined in accordance with section 506(a) of the Bankruptcy Code, of the interest of the

9   holder of such Allowed Claim in the Estate's interest in such property, or to the extent of

10   the amount subject to any setoff, as the case may be. Unpaid principal and any accrued

11   interest allowable under section 506 of the Bankruptcy Code with respect to an Allowed

12   Secured Claim shall be computed as of the Effective Date, and the Allowed Secured Claim

13   shall thereafter bear interest as provided in this Plan.

14        **2.1.17**   **"<u>Allowed Subordinated Claim</u>"** means any Allowed Claim that is

15   subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a

16   Final Order.

17        **2.1.18**   **"<u>Assets</u>"** means all assets and properties of the Debtor's Estate including

18   "property of the estate" as described in section 541 of the Bankruptcy Code.

19        **2.1.19**   **"<u>Avoidance Action</u>"** means an adversary proceeding, lawsuit or other

20   action or proceeding filed pursuant to sections 502(d), 506, 510, 542, 543, 544, 545, 547,

21   548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, an adversary proceeding, lawsuit or

22   other action or proceeding based on applicable non-bankruptcy law that may be

23   incorporated or brought under the foregoing sections of the Bankruptcy Code, an adversary

24   proceeding, lawsuit or other action or proceeding arising under, or relating to, any similar

25   state law or federal law, and any other similar action or proceeding filed to recover property

26   for or on behalf of the Estate, or to avoid a Lien or transfer, whether or not such adversary

27   proceeding, lawsuit, action or proceeding is initiated on or before the Effective Date.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**2.1.20** "<u>Avoidance Action Payment Claim</u>" means a Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action.

**2.1.21** "<u>Bankruptcy Code</u>" means the United States Bankruptcy Code, as set forth in 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

**2.1.22** "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**2.1.23** "<u>Bankruptcy Rules</u>" means, collectively, the Federal Bankruptcy Rules and the Local Bankruptcy Rules.

**2.1.24** "<u>Bankruptcy Schedules</u>" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as they may have been amended and as they may be amended hereafter from time to time.

**2.1.25** "<u>Bar Date</u>" means the last date for Creditors and Interest Holders whose Claims or Interests, respectively, are not scheduled, or whose Claims or Interests are scheduled in the Bankruptcy Schedules as disputed, contingent, unliquidated or unknown as to amount, to file Proofs of Claim or Interests, as set forth in an order of the Bankruptcy Court entered on April 7, 2008.

**2.1.26** "<u>Business Day</u>" means any day other than a Saturday, Sunday or a legal holiday (as defined in Rule 9006(a) of the Federal Bankruptcy Rules).

**2.1.27** "<u>Canopy</u>" means Canopy Group, Inc.

**2.1.28** "<u>Canopy Claim</u>" means the Allowed Claim of Canopy.

**2.1.29** "<u>Case</u>" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and bearing Case Number 8:07-13347-ES.

**2.1.30** "<u>Case Closing Date</u>" means the date on which the Bankruptcy Court enters a Final Decree closing the Case, in accordance with section 350 of the Bankruptcy Code.

**2.1.31** "<u>Cash</u>" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar forms of payment or exchange.

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

**2.1.32** **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to (a) rights of setoff, counterclaim or recoupment, (b) claims on contracts or for breaches of duties imposed by law, (c) rights to object to Claims or Interests, (d) such claims and defenses as fraud, mistake, duress or usury, (e) Avoidance Actions, (f) claims for tax refunds, (g) claims to recover accounts receivable, and (h) any other claims which may be asserted against third parties.

**2.1.33** **"Claim"** means a "claim" against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**2.1.34** **"Claims Objection Deadline"** means the latest of the following dates: (a) the one hundred eightieth (180th) day after the Effective Date; (b) with respect to a specific Claim, the ninetieth (90th) day after a Proof of Claim with respect to such Claim is filed by a Creditor; (c) with respect to a Claim that is not listed in the Bankruptcy Schedules, the ninetieth (90th) day after the Plan Agent learns of the existence of such Claim; or (d) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Agent and the Creditor.

**2.1.35** **"Class"** means a group of Claims or Interests as classified in Article IV of this Plan.

**2.1.36** **"Collateral"** means any property or interest in property of the Estate subject to a Lien of a Secured Creditor that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable federal or state law.

**2.1.37** **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Case by the United States Trustee.

8

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.38** "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court.

**2.1.39** "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**2.1.40** "**Confirmation Hearing**" means the hearing before the Bankruptcy Court to consider the confirmation of this Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be continued from time to time.

**2.1.41** "**Confirmation Hearing Date**" means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

**2.1.42** "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

**2.1.43** "**Creditor**" means the holder of a Claim against the Debtor.

**2.1.44** "**Cure Claims**" has the meaning set forth in Section 10.5 of this Plan.

**2.1.45** "**Cure Claims Schedule**" has the meaning set forth in Section 10.5 of this Plan.

**2.1.46** "**Debtor**" means MTI Technology Corporation, the debtor and debtor-in-possession in the Case. For the purpose of this Plan, references to the "Debtor" shall include the Reorganized Debtor.

**2.1.47** "**Deficiency Claim**" means that portion of a Claim that is in excess of the value of the Collateral which is security for the repayment of such Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

**2.1.48** "**De Minimis Distribution**" has the meaning set forth in Section 7.2.3 of this Plan.

**2.1.49** "**Disbursing Agent**" means the entity charged with making Distributions under this Plan. The Plan Agent shall serve as Disbursing Agent under this Plan.

**2.1.50** "**Disclosure Statement**" means the Joint Third Amended Disclosure Statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

9

1  Code, as may be amended, modified or supplemented from time to time in accordance with

2  the provisions of the Bankruptcy Code and Bankruptcy Rules.

3    **2.1.51**    "**Disclosure Statement Order**" means the Final Order entered by the

4  Bankruptcy Court approving the Disclosure Statement.

5    **2.1.52**    "**Disputed Claim**" means any Claim as to which:  (a) a Proof of Claim

6  has been filed and the dollar amount of such Claim is not specified in a fixed amount; (b) a

7  Proof of Claim has been filed, to the extent to which the stated amount of such Claim

8  exceeds the amount of such Claim listed in the Bankruptcy Schedules; (c) a Proof of Claim

9  has been filed and such Claim is not listed in the Bankruptcy Schedules; (d) a Proof of

10  Claim has been filed, or is deemed filed under Rule 3003(b)(1) of the Federal Bankruptcy

11  Rules, and is listed in the Bankruptcy Schedules as contingent, disputed, liquidated, or

12  unknown as to amount; or (e) an objection, or request for estimation, has been filed by the

13  Claims Objection Deadline and such objection or request for estimation has neither been

14  withdrawn nor been denied by a Final Order.

15    **2.1.53**    "**Disputed Claims Reserve**" has the meaning set forth in Section 8.4.3 of

16  this Plan.

17    **2.1.54**    "**Distribution**" means any transfer under the Plan of Cash, or other

18  property or instruments, to the holder of an Allowed Claim.

19    **2.1.55**    "**Distribution Schedule**" has the meaning set forth in Section 7.2.9 of this

20  Plan.

21    **2.1.56**    "**Effective Date**" means the eleventh (11th) day following the waiver or

22  satisfaction of the conditions set forth in Section 6.3 of this Plan.

23    **2.1.57**    "**Estate**" means the estate created in the Case under section 541 of the

24  Bankruptcy Code.

25    **2.1.58**    "**Expenses**" has the meaning set forth in Section 2.1.88 of this Plan.

26    **2.1.59**    "**Federal Bankruptcy Rules**" means the Federal Rules of Bankruptcy

27  Procedure, as now in effect and as may be hereafter amended.

28    **2.1.60**    "**Final Decree**" has the meaning set forth in Section 6.17 of this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**2.1.61** **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or to obtain a rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or obtain a rehearing shall have been waived in writing in form and substance satisfactory to the Plan Proponents prior to the Effective Date, or to the Plan Agent after the Effective Date, as applicable, or, in the event that an appeal, writ of certiorari, or proceeding for reargument or rehearing of such order or judgment has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

**2.1.62** **"General Unsecured Claim"** means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, the Canopy Claim or a Subordinated Claim, including, without limitation, a Rejection Claim, a Deficiency Claim or an Avoidance Action Payment Claim.

**2.1.63** **"Initial Distribution Date"** has the meaning set forth in Section 7.2.8 of this Plan.

**2.1.64** **"Interest"** means an "equity security" in the Debtor, as such term is defined in section 101(16) of the Bankruptcy Code, no matter how held, including, without limitation, issued and outstanding shares of MTI Stock, and all rights and interests arising thereunder, and all rights to acquire equity securities in the Debtor, including, without limitation, pursuant to options, warrants, employee plans, or similar agreements, contracts or instruments, provided that such rights are exercised on or prior to the Effective Date.

**2.1.65** **"Interest Holder"** means a holder of an Interest.

**2.1.66** **"Internal Revenue Code"** means the Internal Revenue Code of 1986, now in effect and as may be hereafter amended.

11

MTI Plan v3.0

1   **2.1.67** **"Late-Filed Claim"** means any General Unsecured Claim described in

2   sections 726(a)(2)(C) or 726(a)(3) of the Bankruptcy Code.

3   **2.1.68** **"Lien"** means any lien, security interest, mortgage, deed of trust,

4   encumbrance, pledge or other charge against Assets of the Debtor.

5   **2.1.69** **"Loan Documents"** has the meaning set forth in Section 13.21 of this

6   Plan.

7   **2.1.70** **"Local Bankruptcy Rules"** means the Local Bankruptcy Rules applicable

8   to cases pending before the Bankruptcy Court, as now in effect and as may be hereafter

9   amended.

10   **2.1.71** **"Merger Consummation Date"** has the meaning set forth in

11   Section 6.18.2 of this Plan.

12   **2.1.72** **"Merger Transaction"** has the meaning set forth in Section 6.18.1 of this

13   Plan.

14   **2.1.73** **"MTI Stock"** means the issued and outstanding shares of common stock

15   and preferred stock of the Debtor as of the Effective Date.

16   **2.1.74** **"Ordinary Course Administrative Claim"** means an Administrative

17   Claim allowable under section 503(b) of the Bankruptcy Code, that is incurred in the

18   ordinary course of the Debtor's operations or the Case, or the payment of which is provided

19   for by an order of the Bankruptcy Court, exclusive of any Pre-Effective Date Professional

20   Fee Claims, Administrative Tax Claims and United States Trustee Fees.

21   **2.1.75** **"Penalty Claim"** means any Claim for any fine, penalty, or forfeiture, or

22   for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent

23   that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary

24   loss suffered by the holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy

25   Code.

26   **2.1.76** **"Petition Date"** means October 15, 2007, the date on which the Debtor

27   filed its voluntary petition commencing the Case.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**2.1.77** **"Plan"** means this Joint Fourth Amended Chapter 11 Plan, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**2.1.78** **"Plan Agent"** means the entity appointed by this Plan to administer this Plan and to make the Distributions provided by this Plan, in accordance with the provisions of Section 6.6.1 of this Plan.

**2.1.79** **"Plan Agent Certification"** has the meaning set forth in Section 6.16 of this Plan.

**2.1.80** **"Plan Agent Disclosure"** has the meaning set forth in Section 6.8.4 of this Plan.

**2.1.81** **"Plan Assets"** means the Assets, which shall be transferred on the Effective Date of this Plan to the Reorganized Debtor, to be administered by the Plan Agent, free and clear of any Liens that otherwise might have existed in favor of any Secured Creditor.

**2.1.82** **"Plan Fund"** means a segregated, interest-bearing account established at a financial institution which is an authorized depository under United States Trustee Guidelines, into which the Plan Agent will deposit all Cash of the Estate as of the Effective Date, less the Cash used to make, or reserve for the making of, the Distributions required to be made on or about the Effective Date, and all Cash received by the Reorganized Debtor after the Effective Date. The Plan Fund Proceeds shall be made available for making Distributions to the following Creditors: the holders of Allowed General Unsecured Claims; Canopy on account of any Canopy Claim; any Allowed Subordinated Claims; and for paying the Post-Effective Date Plan Expenses.

**2.1.83** **"Plan Fund Proceeds"** means the Cash available in the Plan Fund for making Distributions on account of Allowed General Unsecured Claims, the Canopy Claim, and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.84** "**Plan Proponents**" means, together, the Debtor and the Committee, the proponents of this Plan.

**2.1.85** "**Post-Effective Date Committee**" means the Committee, as it shall be reconstituted and function after the Effective Date, pursuant to the provisions of this Plan.

**2.1.86** "**Post-Effective Date Committee Disclosure**" has the meaning set forth in Section 6.9.1 of this Plan.

**2.1.87** "**Post-Effective Date Notice Parties**" has the meaning set forth in Section 6.16 of this Plan.

**2.1.88** "**Post-Effective Date Plan Expenses**" means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of this Plan, including, but not limited to:  (a) the Expenses associated with administering this Plan, including any taxes assessed against the Assets; (b) all United States Trustee Fees; (c) the Expenses associated with making the Distributions required by this Plan; (d) any Expenses associated with preparing and filing tax returns and paying taxes; (e) any reasonable Expenses incurred by a member of the Post-Effective Date Committee, but excluding the attorneys' fees or other professional fees, if any, incurred by it, except for any such fees to which it is entitled by indemnification; (f) the Expenses of independent contractors and Professionals providing services to the Plan Agent or the Post-Effective Date Committee; (g) the Expenses associated with the Plan Agent's indemnity obligations, the purchase of errors and omissions insurance and/or other forms of indemnification; and (h) the fees of the Plan Agent, and the reimbursement of expenses, to which the Plan Agent is entitled under this Plan.

**2.1.89** "**Post-Effective Date Stock**" means any shares of common stock in the Reorganized Debtor issued on account of the holders of Allowed General Unsecured Claims, pursuant to section 1145 of the Bankruptcy Code, in accordance with the provisions of Sections 5.3.1.5 and 6.18 of this Plan.

14

**2.1.90** "**Postpetition Interest**" means any interest accrual on any Allowed Claim from and after the Petition Date, in accordance with the provisions of Sections 5.3.1.3 and 5.5.1.3 of this Plan. Any Postpetition Interest shall accrue at the federal judgment rate, as set forth in 28 U.S.C. § 1961(a), in effect as of the Petition Date.

**2.1.91** "**Pre-Effective Date Professional**" means a person employed in the Case prior to the Effective Date pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code.

**2.1.92** "**Pre-Effective Date Professional Fee Claim**" means:

(a)    A Claim of a Pre-Effective Date Professional under sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for compensation for services rendered or expenses incurred prior to the Effective Date on behalf of the Estate; or

(b)    A Claim, arising prior to the Effective Date, either under section 503(b)(4) of the Bankruptcy Code or under section 503(b)(3)(D) of the Bankruptcy Code.

**2.1.93** "**Priority Non-Tax Claim**" means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

**2.1.94** "**Priority Tax Claim**" means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**2.1.95** "**Professional**" means any attorney, accountant, appraiser, auctioneer, broker, financial consultant, expert or other professional person.

**2.1.96** "**Proof of Claim**" means a statement under oath filed in the Case by a Creditor in which the Creditor sets forth the amount claimed to be owed to it and detail sufficient to identify the basis for the Claim, in accordance with Rule 3001 of the Federal Bankruptcy Rules.

**2.1.97** "**Pro Rata**" means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

on account of all Claims in the Class in which that Allowed Claim is included to (y) the amount of all Claims in that Class.

The Pro Rata formula is illustrated as follows:

| (a) | Amount of consideration distributed to a holder of an Allowed Claim | | (x) | Total consideration available for distribution to holders of Claims of that Class |
|---|---|---|---|---|
| = | | | | |
| (b) | Amount of such Allowed Claim | | (y) | Amount of all Allowed Claims in that Class |

For the purpose of the application of this definition, in calculating the Distributions to be made under this Plan, the Plan Agent, as Disbursing Agent under this Plan, shall establish Reserves, on account of Disputed Claims, in accordance with the provisions of Section 8.4.3 of this Plan.

**2.1.98**    **"Rejection Claim"** means any General Unsecured Claim based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court or pursuant to this Plan.

**2.1.99**    **"Reorganized Debtor"** means the Debtor, as its financial affairs are reorganized from and after the Effective Date. For the purpose of this Plan, a reference to the "Reorganized Debtor" shall include the Debtor.

**2.1.100**    **"Representatives"** has the meaning set forth in Section 6.8.5 of this Plan.

**2.1.101**    **"Reserves"** means, collectively, the Disputed Claims Reserve, the Unclaimed Property Reserve, and other reserves that the Plan Agent, as Disbursing Agent under this Plan, is required to establish pursuant to this Plan.

**2.1.102**    **"Secured Claim"** means a Claim that is secured by a Lien against property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code. A Claim is a Secured Claim only to the extent of the value, as determined under section 506(a) of the Bankruptcy Code, of the Secured Creditor's interest in the Collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable.

**2.1.103**    **"Secured Creditor"** means the holder of a Secured Claim.

MTI Plan v3.0

CLARKSON, GORE & MARSHALL, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.104** "**Stock Termination Approval**" has the meaning set forth in Section 6.18.3 of this Plan.

**2.1.105** "**Subordinated Claim**" means any Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

**2.1.106** "**Tax**" means any tax, charge, fee, levy, or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest, penalties or additions attributable to, or imposed on or with respect to, such assessments.

**2.1.107** "**Tax Claim**" means any Claim, pre-petition or post-petition, relating to a Tax.

**2.1.108** "**Unclaimed Property**" has the meaning set forth in Section 7.2.7 of this Plan.

**2.1.109** "**Unclaimed Property Reserve**" has the meaning set forth in Section 7.2.7 of this Plan.

**2.1.110** "**United States Trustee**" means the Office of the United States Trustee for the Central District of California.

**2.1.111** "**United States Trustee Fees**" means all fees and charges assessed against the Debtor or the Reorganized Debtor by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

**2.2** **Rules of Interpretation.** For the purpose of this Plan, unless otherwise provided in this Plan, (a) the rules of construction set forth in section 102 of the Bankruptcy Code apply to this Plan; (b) Rule 9006(a) of the Federal Bankruptcy Rules applies when computing any time period under this Plan; (c) a term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or in the Bankruptcy Rules; (d) the definition given to any term or provision in this Plan supersedes any different meaning that may be given to that term or provision in the Disclosure Statement; (e) whenever it is appropriate from the

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    context, each term, whether stated in the singular or the plural, includes both the singular and the

2    plural; (f) each pronoun stated in the masculine, feminine or neuter includes each of the masculine,

3    feminine and neuter; (g) any reference to an exhibit, schedule, instrument or other document means

4    such exhibit, schedule, instrument or other document as it has been, or may be, amended, modified,

5    restated or supplemented as of the Confirmation Date, and any such exhibit, schedule, instrument or

6    other document shall be deemed to be included in this Plan, regardless of when it is filed; (h) the

7    phrases "under this Plan," "hereof," "hereto," "hereunder," and similar words or phrases, refer to

8    this Plan in its entirety rather than to only a portion of this Plan; (i) unless otherwise indicated, all

9    references in this Plan to sections, articles or exhibits are references to sections, articles or exhibits

10   in this Plan; (j) section captions and headings are used for convenience only and do not affect the

11   meaning of this Plan; and (k) any reference to the holder of a Claim or Interest includes that entity's

12   successor and assigns.

13       **2.3**    __Exhibits.__  All exhibits to this Plan are incorporated into and are a part of this Plan as

14   if set forth in full herein.

15                                              **III.**

16                                    **UNCLASSIFIED CLAIMS**

17       As required by the Bankruptcy Code, this Plan places Claims and Interests into various

18   Classes according to their respective legal rights and interests, including their respective rights to

19   priority.  However, in accordance with the provisions of section 1123(a)(1) of the Bankruptcy Code,

20   Administrative Claims and Priority Tax Claims are deemed "unclassified."  These Claims are not

21   considered impaired under section 1124 of the Bankruptcy Code, and the holders of these Claims

22   do not vote on this Plan, because these Claims are automatically entitled to specific treatment

23   provided for them in the Bankruptcy Code.  Accordingly, the Plan Proponents have not placed

24   Administrative Claims and Priority Tax Claims in a Class.  The treatment of these unclassified

25   Claims is as provided below.

26       **3.1**    __Allowed Administrative Claims.__  Administrative Claims generally are Claims for

27   the expenses of administering the Debtor's Case that are allowed under section 503(b) of the

28   Bankruptcy Code.  Administrative Claims also include Claims provided for by section 503(b)(9) of

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

18

MTI Plan v3.0

1    the Bankruptcy Code.  The Bankruptcy Code requires that all Administrative Claims be paid on the

2    Effective Date of this Plan, unless a particular Creditor agrees to a different treatment of its Claim.

3    The treatment of Administrative Claims under this Plan is as described below.

4         **3.1.1    Payment.**  Except to the extent that the holder of an Allowed Administrative

5    Claim agrees to a less favorable treatment of its Allowed Administrative Claim, and, subject

6    to the Administrative Claims Bar Date set forth in Section 3.1.2 hereof, each holder of an

7    Allowed Administrative Claim shall receive, in full satisfaction, discharge, exchange and

8    release of its Allowed Administrative Claim, Cash in an amount equal to such Allowed

9    Administrative Claim, on the latest of (i) the Effective Date, (ii) the fifteenth (15th) Business

10   Day after the date upon which such Administrative Claim becomes an Allowed

11   Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim

12   becomes due according to its terms; provided, however, that an Ordinary Course

13   Administrative Claim shall be paid in full in accordance with the terms and conditions of the

14   agreements giving rise to such Ordinary Course Administrative Claim.

15        **3.1.2    Administrative Claims Bar Date.**  Except for Pre-Effective Date

16   Professional Fee Claims, United States Trustee Fees and Ordinary Course Administrative

17   Claims, and, except as set forth in section 503(b)(1)(D) of the Bankruptcy Code, all requests

18   for payment of Administrative Claims shall be filed with the Bankruptcy Court and served no

19   later than thirty (30) days after the Effective Date (the "Administrative Claims Bar Date").

20   Any holder of an Administrative Claim that is required to file a request for payment of its

21   Administrative Claim by the Administrative Claims Bar Date and that does not file by the

22   Administrative Claims Bar Date such a request for payment of its Administrative Claim shall

23   be forever barred from asserting such Administrative Claim against the Debtor, the

24   Reorganized Debtor, the Estate or any of the property or assets of the Debtor or the

25   Reorganized Debtor.

26        **3.1.3    Deadline for Objections.**  All objections to allowance of Administrative

27   Claims that are subject to the Administrative Claims Bar Date must be filed by the Plan

28   Agent no later than forty-five (45) days after the Administrative Claims Bar Date (the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

19

MTI Plan v3.0

"Administrative Claims Objection Deadline"). The Administrative Claims Objection Deadline may be extended for a one-time thirty (30) day period by the Plan Agent by filing a notice of the extended Administrative Claims Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claims Objection Deadline may be further extended only by an order of the Bankruptcy Court. If the Plan Agent fails to file, by the Administrative Claims Objection Deadline, an objection to an Administrative Claim that must be filed, and is filed, by the Administrative Claims Bar Date, such Administrative Claim shall be deemed allowed as of the Administrative Claims Objection Deadline.

    **3.1.4** **United States Trustee Fees.** United States Trustee Fees shall be paid prior to the Effective Date by the Debtor, and, after the Effective Date by the Plan Agent from the Plan Fund, in each case, when due in accordance with applicable law until the entry of a Final Decree.

    **3.1.5** **Pre-Effective Date Professional Fee Claims.** Each Pre-Effective Date Professional seeking from the Bankruptcy Court an award with respect to a Pre-Effective Date Professional Fee Claim shall file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such later date as may be fixed by the Bankruptcy Court. Such Pre-Effective Date Professional shall receive, in full satisfaction, discharge, exchange and release of its Pre-Effective Date Professional Fee Claim, Cash in such amounts as are allowed by the Bankruptcy Court. All objections to allowance of Pre-Effective Date Professional Fee Claims must be filed and served timely in accordance with the requirements of the Bankruptcy Rules.

    **3.2** **Allowed Priority Tax Claims.** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment of its Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, discharge, exchange and release of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, on the later of (i) the Effective Date or (ii) the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim.

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

# IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1** **Overview.** As required by the Bankruptcy Code, this Plan places Claims and Interests into Classes according to their respective legal rights and interests, including their respective rights to priority. In Section 4.2 hereof, the Plan Proponents list each Class of Claims and Interests established under this Plan and state whether each Class is impaired or is unimpaired by this Plan. A Class is "unimpaired" by this Plan if this Plan leaves unaltered the legal, equitable and contractual rights to which the holders of Claims or Interests in the Class are entitled, as provided in section 1124 of the Bankruptcy Code. Article V of this Plan sets forth the treatment that each Class will receive under this Plan.

Pursuant to this Plan, a Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes. A Claim is classified in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

**4.2** **Designation of Classes.** This Plan designates the following Classes of Claims and Interests:

**4.2.1** **Allowed Claims.**

4.2.1.1 **Class 1**: Any Allowed Secured Claims. This Class is unimpaired by this Plan.

4.2.1.2 **Class 2**: Allowed Priority Non-Tax Claims. This Class is unimpaired by this Plan.

4.2.1.3 **Class 3**: Allowed General Unsecured Claims. This Class is impaired by this Plan.

4.2.1.4 **Class 4**: The Canopy Claim. This Class is unimpaired by this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_ 11 Plan.DOC

4.2.1.5    Class 5: Any Allowed Subordinated Claims.  This Class is impaired by this Plan.

**4.2.2  Interests.**

4.2.2.1    Class 6: Interests of the Interest Holders.  This Class is impaired by this Plan.

**4.3  Summary of Classification.**  The following table summarizes the Classes of Claims and Interests established by this Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
| --- | --- | --- | --- |
| Class 1 | Allowed Secured Claims | Unimpaired | Deemed to Accept Plan |
| Class 2 | Allowed Priority Non-Tax Claims | Unimpaired | Deemed to Accept Plan |
| Class 3 | Allowed General Unsecured Claims | Impaired | Entitled to Vote on Plan |
| Class 4 | Canopy Claim | Unimpaired | Deemed to Accept Plan |
| Class 5 | Allowed Subordinated Claims | Impaired | Entitled to Vote on Plan |
| Class 6 | Interests | Impaired | Deemed to Reject the Plan |

As set forth above, Classes 1, 2 and 4 are unimpaired by this Plan; holders of Claims in these Classes are conclusively presumed to have accepted this Plan and, hence, are not entitled to vote with respect to this Plan.  Classes 3 and 5 are impaired by this Plan, and holders of Claims in these Classes are entitled to vote to accept or reject this Plan.  Interests in Class 6 are impaired; the Plan Proponents believe that it is very likely that Interest Holders will not receive or retain under this Plan any value on account of their Interests, and, hence, Interest Holders are deemed to reject this Plan in accordance with section 1126(g) of the Bankruptcy Code.

The treatment of Claims and Interests under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Creditor or Interest Holder may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights which those entities have in or against the Debtor or its property.  **NO DISTRIBUTIONS SHALL**

MTI Plan v3.0

22

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    **BE MADE, AND NO RIGHTS SHALL BE RETAINED, ON ACCOUNT OF ANY CLAIM**

2    **THAT IS NOT AN ALLOWED CLAIM.**

3                                          **V.**

4                        **TREATMENT OF CLASSES UNDER THIS PLAN**

5    The following sets forth the treatment of Classes established by this Plan.

6        **5.1    Class 1 -- Any Allowed Secured Claims.**  Class 1 consists of any Allowed Secured

7    Claims.  Class 1 is unimpaired by this Plan.  In the event that there is more than one holder of an

8    Allowed Class 1 Claim, the Allowed Secured Claim of each such Secured Creditor shall be deemed

9    to be classified in a separate sub-class of Class 1, and each such sub-class of Class 1 shall be

10    deemed to be a separate Class under this Plan.

11        **5.1.1    Treatment of Allowed Secured Claims.**  Within fifteen (15) Business Days

12    after the Effective Date, each Secured Creditor holding an Allowed Class 1 Claim shall

13    receive, at the election of the Plan Agent, made in the exercise of its sole and absolute

14    discretion, <u>one</u> of the following treatments in full satisfaction, discharge, exchange and

15    release of the Allowed Class 1 Claim:

16        5.1.1.1    <u>Option 1</u>.  The holder of the Allowed Class 1 Claim shall receive a

17    return of the Collateral in which that Secured Creditor has a security interest.

18    Unless a Secured Creditor holding an Allowed Deficiency Claim should make an

19    election under section 1111(b) of the Bankruptcy Code, its Allowed Deficiency

20    Claim shall be treated hereunder as a Class 3 Allowed General Unsecured Claim.

21        5.1.1.2    <u>Option 2</u>.  The holder of the Allowed Class 1 Claim shall receive

22    any proceeds actually received by the Debtor or Reorganized Debtor (as applicable)

23    from the sale or other disposition of the Collateral in which that Secured Creditor

24    has a security interest.  Unless a Secured Creditor holding an Allowed Deficiency

25    Claim should make an election under section 1111(b) of the Bankruptcy Code, its

26    Allowed Deficiency Claim shall be treated hereunder as a Class 3 Allowed General

27    Unsecured Claim

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

23

5.1.1.3    Option 3.  The holder of the Allowed Class 1 Claim shall receive Cash in the full amount of that Secured Creditor's Allowed Class 1 Claim.

5.1.1.4    Option 4.  The holder of the Allowed Class 1 Claim shall receive such other Distributions or treatment as is necessary to leave the rights of that Secured Creditor unimpaired under the Bankruptcy Code.

The Plan Agent shall have until the later of the tenth (10th) Business Day before the Confirmation Hearing Date, or the tenth (10th) Business Day after the date on which a Class 1 Claim because an Allowed Secured Claim, to elect which treatment set forth under this Section 5.1.1 to provide to the Secured Creditor holding such Allowed Class 1 Claim.

**5.2    Class 2 -- Allowed Priority Non-Tax Claims.**  Class 2 consists of all Allowed Priority Non-Tax Claims.  Class 2 is not impaired by this Plan.

**5.2.1    Treatment of Allowed Non-Tax Priority Claims.**  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment of its Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, discharge, exchange and release of its Allowed Priority Non-Tax Claim, Cash in the full amount of the Allowed Priority Non-Tax Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

**5.3    Class 3 -- Allowed General Unsecured Claims.**  Class 3 consists of all Allowed General Unsecured Claims.  Class 3 is impaired by this Plan.

**5.3.1    Treatment of Allowed General Unsecured Claims.**  The treatment of Allowed Class 3 Claims is as follows:

5.3.1.1    Subject to the provisions of Sections 5.3.1.3, 5.3.1.4, 5.3.1.5 and 5.3.1.6 of this Plan, except to the extent that the holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, the holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, discharge, exchange and release of its Allowed

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    General Unsecured Claim, Pro Rata Distributions of the Plan Fund Proceeds

2    available for distribution to holders of Allowed Class 3 Claims.

3        5.3.1.2    The Plan Agent shall make Distributions to the holders of Allowed

4    Class 3 Claims from the Plan Fund Proceeds.  All holders of Allowed Class 3

5    Claims shall receive an initial Distribution of their Pro Rata share of the Plan Fund

6    Proceeds within 180 days following the Effective Date, or on such later date as the

7    Plan Agent determines to be practicable, in the exercise of its sole and absolute

8    discretion, and shall receive thereafter during the Case Distributions of their Pro

9    Rata share of Plan Fund Proceeds on each 180th-day anniversary of the Effective

10   Date, or on such later date as the Plan Agent determines to be practicable in the

11   exercise of its sole and absolute discretion.  Holders of Allowed Class 3 Claims

12   shall receive any final Distribution of their Pro Rata share of Plan Fund Proceeds

13   within ten (10) days after the filing of the Plan Agent Certification, or as soon

14   thereafter as is practicable.  Upon payment of the amount owed to the holder of any

15   Allowed Class 3 Claim under this Plan, such Allowed Class 3 Claim shall be

16   deemed to be fully and completely satisfied, discharge and released.

17       5.3.1.3    In accordance with section 726(a)(5) of the Bankruptcy Code, an

18   Allowed General Unsecured Claim shall not include Postpetition Interest on account

19   of such Allowed General Unsecured Claim, except to the extent that all of the

20   following are satisfied and paid in full:  (a) all Allowed Administrative Claims;

21   (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-Tax Claims;

22   (d) all Allowed Secured Claims (subject to the elections provided pursuant to

23   Section 5.1.1 hereof); (e) all Allowed General Unsecured Claims; (f) the Canopy

24   Claim; (g) all Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; and

25   (i) all Allowed Penalty Claims.  Any Postpetition Interest that may be payable on an

26   Allowed General Unsecured Claim shall be calculated from the Petition Date

27   through the date on which such Allowed General Unsecured Claim is paid in full.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

5.3.1.4    Notwithstanding any other provision to the contrary contained in this Plan, no Cash Distribution shall be made on account of any Allowed General Unsecured Claim until each of the following occurs: (a) all Allowed Administrative Claims are paid; (b) all Allowed Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed Secured Claims are paid (subject to the elections provided pursuant to Section 5.1.1 hereof); (e) the Disputed Claims Reserve is adequately funded for the Claims referenced in subsections (a) through (d) of this Section 5.3.1.4; and (f) all outstanding Post-Effective Date Plan Expenses have been paid in full and an adequate Reserve is established by the Plan Agent providing for full payment of the estimated amount of all Post-Effective Date Plan Expenses through the Case Closing Date, in an amount to be determined by the Plan Agent in the exercise of its sole and absolute discretion.

5.3.1.5    Each holder of an Allowed General Unsecured Claim shall be allocated its Pro Rata number of shares of Post-Effective Date Stock, to be held in trust for such Creditor by the Plan Agent in contemplation of a potential Merger Transaction. Subject to the provisions of Section 6.18 hereof, each holder of an Allowed General Unsecured Claim shall receive a Distribution of any Post-Effective Date Stock, or the net proceeds realized from the disposition of such Post-Effective Date Stock, in connection with any Merger Transaction; provided, however, that the holder of an Allowed General Unsecured Claim shall have the right to elect not to receive any Distribution of Post-Effective Date Stock, in accordance with the provisions of Section 6.18.6 hereof.

5.3.1.6    Notwithstanding anything to the contrary contained in Section 5.3.1, no holder of an Allowed General Unsecured Claim shall be entitled to receive more than 100% of the amount of its Allowed General Unsecured Claim, plus any Postpetition Interest thereon payable pursuant to Section 5.3.1.3 hereof. For the purpose of this Section 5.3.1.6, the value of any Distribution of Post-

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

26

1    Effective Date Stock shall be determined pursuant to the provisions of

2    Section 6.18.5 hereof.

3    **5.4**    **Class 4 -- Canopy Claim.**  Class 4 consists of the Canopy Claim.  The Canopy

4    Claim is unimpaired under this Plan.

5        **5.4.1**    **Treatment of Canopy Claim.**  Canopy shall be paid, without alteration or

6    modification, any and all amounts to which Canopy is entitled pursuant to paragraphs 2

7    and 3 of that Settlement Agreement and Mutual Release of Claims ("Canopy Agreement"),

8    approved by an order of the Bankruptcy Court entered on November 13, 2008, a true and

9    complete copy of which is attached hereto as Exhibit "1."

10   **5.5**    **Class 5 -- Allowed Subordinated Claims.**  Class 5 consists of all Allowed

11   Subordinated Claims.  Class 5 is impaired by this Plan.

12       **5.5.1**    **Treatment of Allowed Subordinated Claims.**  The treatment of any

13   Allowed Class 5 Claim is as follows:

14           5.5.1.1    Subject to the provisions of Sections 5.5.1.3, 5.5.1.4, 5.5.1.5

15   and 5.5.1.6 of this Plan, except to the extent that the holder of any Allowed

16   Subordinated Claim agrees to a less favorable treatment of its Allowed Subordinated

17   Claim, in the event that all Allowed General Unsecured Claims are paid in full as set

18   forth in Section 5.3.1 of this Plan, the holder of an Allowed Subordinated Claim

19   shall receive, in full and complete satisfaction, discharge, exchange and release of

20   its Allowed Subordinated Claim, solely from the Plan Fund Proceeds, a Pro Rata

21   Distribution of any remaining Plan Fund Proceeds.

22           5.5.1.2    The Plan Agent shall make Distributions to the holders of

23   Allowed Class 5 Claims, from any Plan Fund Proceeds available for distribution to

24   holders of Allowed Class 5 Claims.  All holders of Allowed Class 5 Claims shall

25   receive an initial Distribution of their Pro Rata share of any Plan Fund Proceeds

26   available for distribution to holders of Allowed Class 5 Claims on such date as the

27   Plan Agent determines to be practicable, in the exercise of its sole and absolute

28   discretion, and thereafter shall receive Distributions of any such Plan Fund Proceeds

27

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  as the Plan Agent determines to be practicable, in the exercise of its sole and

2  absolute discretion.  Holders of Allowed Class 5 Claims shall receive any final

3  Distribution of any Plan Fund Proceeds available for distribution to holders of

4  Allowed Class 5 Claims within ten (10) days after the filing of the Plan Agent

5  Certification, or as soon thereafter as is practicable.  Upon payment of the amount, if

6  any, owed to each holder of an Allowed Class 5 Claim under this Plan, such

7  Allowed Class 5 Claim shall be deemed to be fully and completely satisfied,

8  discharged and released.

9         5.5.1.3    In accordance with section 726(a)(5) of the Bankruptcy Code, an

10  Allowed Subordinated Claim shall not include Postpetition Interest on account of

11  such Allowed Subordinated Claim, except to the extent that all of the following are

12  satisfied and paid in full:  (a) all Allowed Administrative Claims; (b) all Allowed

13  Priority Tax Claims; (c) all Allowed Priority Non-Tax Claims; (d) all Allowed

14  Secured Claims (subject to the elections provided pursuant to Section 5.1.1 hereof);

15  (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all Late-Filed

16  Claims; (h) all Post-Effective Date Plan Expenses; (i) all Allowed Penalty Claims;

17  and (j) all Allowed Subordinated Claims in accordance with the terms thereof.  Any

18  Postpetition Interest that may be payable on an Allowed Subordinated Claim shall

19  be calculated from the Petition Date through the date on which such Allowed

20  Subordinated Claim is paid in full.

21         5.5.1.4    Notwithstanding any other provision to the contrary contained in

22  this Plan, no Distribution shall be made on account of any Allowed Subordinated

23  Claim until each of the following occurs:  (a) all Allowed Administrative Claims are

24  paid; (b) all Allowed Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax

25  Claims are paid; (d) all Allowed Secured Claims are paid (subject to the elections

26  provided pursuant to Section 5.1.1 hereof); (e) all Allowed General Unsecured

27  Claims are paid; (f) the Disputed Claims Reserve is adequately funded for the

28  Claims referenced in subsections (a) through (e) of this Section 5.5.1.4; and (g) all

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    outstanding Post-Effective Date Plan Expenses have been paid in full and an

2    adequate Reserve is established by the Plan Agent providing for full payment of the

3    estimated amount of all Post-Effective Date Plan Expenses through the Case

4    Closing Date, in an amount to be determined by the Plan Agent in the exercise of its

5    sole and absolute discretion.

6        5.5.1.5    No Post-Effective Date Stock, or other equity security interest in

7    the Reorganized Debtor, shall be issued on account of an Allowed Subordinated

8    Claim.

9        5.5.1.6    Notwithstanding anything to the contrary contained in

10    Section 5.5.1, no holder of an Allowed Subordinated Claim shall be entitled to

11    receive more than 100% of the amount of its Allowed Subordinated Claim, plus any

12    Postpetition Interest thereon payable pursuant to Section 5.5.1.3 hereof.

13      **5.6**    **Class 6 -- Allowed Interests**.  Class 6 consists of all Allowed Interests.  Class 6 is

14    impaired under this Plan.

15        **5.6.1**    **Treatment of Allowed Interests**.  The treatment of Allowed Interests under

16    this Plan is as follows:

17        5.6.1.1    On the Effective Date of this Plan, all Interests shall be cancelled,

18    and Interest Holders shall receive no Post-Effective Date Stock or any other Interest

19    of any nature whatsoever in the Reorganized Debtor.  Interest Holders shall not

20    receive any Distributions on account of their Interests; provided, however, that, in

21    the event that each Allowed Claim, plus any Postpetition Interest to which the

22    holder thereof is entitled, is paid in full, each holder of an Allowed Interest shall

23    receive, in full and complete satisfaction, discharge, exchange and release of such

24    Allowed Interest, Pro Rata Distributions of any Plan Fund Proceeds remaining in

25    the Plan Fund, payable as soon as practicable as the Plan Agent determines in the

26    exercise of its sole and absolute discretion.

27        5.6.1.2    It is expected that Class 6 Interest Holders will receive no

28    Distributions under this Plan.  Accordingly, for the purpose of this Plan, Interest

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

29

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    Holders are deemed not to have accepted this Plan, and are not entitled to vote with

2    respect to this Plan, as provided by section 1126(g) of the Bankruptcy Code.

3            5.6.1.3    For the purpose only of determining any Distributions to which

4    Interest Holders may be entitled under Section 5.6.1.1 hereof, each beneficial owner

5    or holder of record of MTI Stock as of the Effective Date shall be deemed to have

6    an Allowed Interest for the number of shares of MTI Stock held by it as of the

7    Effective Date, and need not file a proof of its Interest with respect thereto.  In the

8    event that any entity that is neither the record holder of MTI Stock as of the

9    Effective Date nor the beneficial owner of MTI Stock as of the Effective Date files a

10   proof of right to record status pursuant to Rule 3003(d) of the Federal Bankruptcy

11   Rules, such proof of right shall be disallowed automatically and without any need

12   for the Debtor, the Reorganized Debtor, the Plan Agent, or any other party-in-

13   interest to object thereto or otherwise take any act with respect thereto.

## VI.

## PLAN IMPLEMENTATION

16   **6.1**    **Overview.**  This Plan provides that, from and after the Effective Date, the Debtor's

17   Assets, including, without limitation, any Causes of Action, shall be liquidated and the Plan Fund

18   Proceeds distributed to the holders of Allowed Claims in accordance with the provisions of this

19   Plan.  The Plan Agent shall be responsible for maintaining the Plan Assets, liquidating the Plan

20   Assets, prosecuting or settling Causes of Action, and making Distributions in payment of Allowed

21   Claims in accordance with the provisions of this Plan.  In addition, the Plan Agent shall be

22   responsible for evaluating the viability of, and, if appropriate, pursuing a Merger Transaction, in

23   order to enhance the value of the Post-Effective Date Stock issued on account of Allowed General

24   Unsecured Claims, for the benefit of the holders of Allowed General Unsecured Claims.

25   **6.2**    **Condition Precedent to Plan Confirmation.**  The only condition precedent to the

26   confirmation of this Plan is that the Bankruptcy Court shall have entered the Confirmation Order on

27   terms and conditions satisfactory to the Plan Proponents.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**6.3**    **Conditions Precedent to the Effectiveness of the Plan.** The following are the

conditions precedent to the effectiveness of this Plan and the occurrence of the Effective Date:

(a) the Confirmation Order shall have become a Final Order; (b) any documents, instruments and

agreements, in form and substance satisfactory to the Plan Proponents, provided for by, or

appropriate to implement, this Plan shall have been executed and delivered by the parties thereto;

(c) the Plan Proponents shall have received all authorizations, consents, rulings, opinions or other

documents that are determined by the Plan Proponents, in the exercise of their sole and absolute

discretion, to be appropriate to implement this Plan; and (d) the Plan Proponents shall have

determined, in the exercise of their sole and absolute discretion, that sufficient Cash exists to pay, or

to establish a Reserve for the payment of, all Administrative Claims, Priority Tax Claims, Priority

Non-Tax Claims and Secured Claims (subject to the election of the options provided by

Section 5.1.1 hereof), and to otherwise fund the obligations provided for by this Plan and to pay the

expenses associated with the implementation of this Plan.

The Plan Proponents may, in the exercise of their sole and absolute discretion, waive any of

the conditions to the effectiveness of this Plan and to the occurrence of the Effective Date set forth

hereinabove, without the need for any prior notice or hearing with respect thereto. Without limiting

the generality of the foregoing, in the event that an appeal, petition for certiorari or motion for

reargument or rehearing or comparable post-confirmation relief is filed with respect to the

Confirmation Order, and no stay of the effectiveness of the Confirmation Order is obtained, the

Plan Proponents may elect, in the exercise of their sole and absolute discretion, to waive the

condition set forth in Section 6.3(a) hereof, and to proceed with the Effective Date of this Plan and

to commence to consummate this Plan, by filing and serving notice of such election upon the

United States Trustee and the party seeking such post-confirmation relief.

The failure of any condition set forth in this Section 6.3 to be satisfied constitutes good and

sufficient cause for the Plan Proponents to have this Plan not become effective regardless of the

circumstances giving rise to the failure of such condition to be satisfied (including, without

limitation, any act or failure to act by the Plan Proponents).

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

31

MTI Plan v3.0

6.4    **Implementation of Plan.**  On or soon as practicable after the Effective Date, the following shall occur with respect to the implementation of this Plan:  (a) all acts, documents and agreements appropriate to implement this Plan shall be effected or executed; (b) the Plan Agent, as Disbursing Agent under this Plan, shall make all Distributions required to be made on or about the Effective Date of this Plan; and (c) the Plan Agent, as Disbursing Agent under this Plan, shall fund the Reserves required to be funded on or about the Effective Date of this Plan.

6.5    **Corporate Action.**  Upon the Effective Date, all transactions and matters provided for under this Plan shall be deemed to have been authorized and approved by the Debtor without any requirement of further action by the Debtor, the Debtor's Interest Holders, or by the Debtor's board of directors.

6.6    **Plan Agent/Vesting of Assets.**  In accordance with the provisions of Section 6.6.1 hereof, on the Effective Date, a Plan Agent shall be appointed who shall have the rights, powers and duties provided for by this Plan and the Confirmation Order.  In accordance with the provisions of Section 6.6.2 hereof, on the Effective Date, and subject to Canopy's rights under the Canopy Agreement, the Assets shall be transferred to and vest in, the Reorganized Debtor, to be administered by the Plan Agent.

6.6.1    **Employment of Plan Agent.**  On the Effective Date, a Plan Agent shall be appointed to administer the Plan Assets in accordance with the terms of this Plan and to make Distributions in accordance with the terms of this Plan.  The Plan Agent shall have the rights, powers and duties provided for by this Plan and the Confirmation Order.

6.6.2    **Transfer of Assets.**  On the Effective Date, pursuant to sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor and its Estate are authorized to, and shall, transfer, grant, assign, convey, set over, and deliver to the Reorganized Debtor, to be administered by the Plan Agent for the benefit of the holders of Allowed Claims and Interest Holders to the extent that Interest Holders are entitled to receive Distributions under Section 5.6.1.1 hereof, all of the Debtor's and the Estate's right, title and interest in and to the Assets, including Causes of Action, free and clear of all Liens, Claims, and Interests of any kind, except as provided expressly to the contrary in this Plan.  All Creditors and other

32

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

parties-in-interest shall cooperate with the Debtor and the Plan Agent by executing any documents, and by taking any acts, appropriate to implement the transfers of the Assets to the Reorganized Debtor. From and after the Effective Date, the transfer of the Assets from the Estate to the Reorganized Debtor, and the vesting of the Assets in the Reorganized Debtor, shall be deemed to be final and irrevocable.

**6.6.3    Disposition of Plan Assets.** The Plan Agent, under the supervision of the Post-Effective Date Committee, may administer, manage, use, convey, transfer, encumber, assign and otherwise dispose of any and all of the Plan Assets and take all acts appropriate to effectuate the same, free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Rules.

**6.7    Termination of Debtor's Officers, Directors, Employees and Professionals.** Except as otherwise provided by this Plan or as otherwise retained by the Plan Agent, the Debtor's officers, directors, employees and Professionals shall be terminated and relieved of any responsibilities to the Debtor or to the Reorganized Debtor as of the Effective Date.

**6.8    Plan Fund Proceeds/Plan Administration.**

**6.8.1    Distributions of Plan Fund Proceeds.** Distributions of Plan Fund Proceeds shall be made solely to the holders of Allowed General Unsecured Claims, to Canopy on account of any Canopy Claim and, in accordance with the provisions of Sections 5.5.1.1 and 5.6.1.1 hereof, in the unlikely event that Allowed General Unsecured Claims are paid in full, holders of Allowed Subordinated Claims, and, if Allowed Subordinated Claims are paid in full, Interest Holders. The holders of Allowed General Unsecured Claims shall receive Distributions from the Plan Fund solely as provided for by this Plan and Canopy shall receive on account of the Canopy Claim Distributions from the Plan Fund solely as provided for by this Plan and the terms of the Canopy Agreement.

**6.8.2    Plan Agent's Implementation of Plan.** Subject to Canopy's rights under the Canopy Agreement, the Plan Agent, under the supervision of the Post-Effective Date Committee, shall be authorized to, and shall, take all acts appropriate to implement the provisions of this Plan as are contemplated to be taken by the Plan Agent under this Plan,

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

33

1    including, without limitation, making Distributions to holders of Allowed Claims, objecting

2    to Disputed Claims, prosecuting or settling the Causes of Action and, if the Plan Agent

3    deems appropriate, effectuating a Merger Transaction.

4          **6.8.3    Representative of the Estate.**  The Plan Agent, under the supervision of the

5    Post-Effective Date Committee, shall be, and hereby is, appointed as the representative of

6    the Estate pursuant to sections 1123(a)(5), 1123(a)(7) and 1123(b)(3)(B) of the Bankruptcy

7    Code and, as such, shall be vested with the authority and power, subject to the provisions of

8    this Plan, to take, among others, the following acts on behalf of the Reorganized Debtor:

9    (a) manage, administer and dispose of Plan Assets for the benefit of holders of Allowed

10    Claims; (b) file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon all

11    Causes of Action in the name of, and for the benefit of, the Estate; (c) make all Distributions

12    provided for by this Plan; and (d) such other acts as may be appropriate to administer,

13    wind-down, and close the Case.  As the representative of the Estate, the Plan Agent, under

14    the supervision of the Post-Effective Date Committee, shall succeed to all of the rights and

15    powers of the Debtor and the Estate with respect to all Causes of Action, and shall be

16    substituted for, and shall replace, the Debtor, the Estate and the Committee, as applicable, as

17    the party-in-interest in all such litigation pending as of the Effective Date.

18          **6.8.4    Plan Agent Disclosure.**  On or before the thirtieth (30th) day prior to the

19    Confirmation Hearing Date, the Plan Proponents shall file with the Bankruptcy Court a

20    pleading disclosing the identity of the Plan Agent, its credentials, and any and all relevant

21    information regarding the retention of the Plan Agent, including, without limitation, any and

22    all affiliations, connections and actual or potential conflicts of interest that the Plan Agent

23    may have in the Case ("Plan Agent Disclosure").  A copy of the Plan Agent's engagement

24    agreement shall be attached to the Plan Agent Disclosure.

25          **6.8.5    No Liability of Post-Effective Date Committee, the Plan Agent or the**

26    **Reorganized Debtor.**  To the maximum extent permitted by law, the Post-Effective Date

27    Committee, the Plan Agent and the Reorganized Debtor, and their respective employees,

28    officers, directors, shareholders, agents, members, representatives, and Professionals

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

34

(collectively, "Representatives") shall not have or incur liability to any Creditor, Interest Holder, party-in-interest or to any other entity for an act taken or omission made in good faith in connection with or related to the administration of the Plan Assets, the implementation of this Plan and the making of Distributions under this Plan. The Post-Effective Date Committee, the Plan Agent, the Reorganized Debtor and the Representatives shall in all respects be entitled to reasonably rely on the advice of counsel with respect to their respective duties and responsibilities under this Plan. Entry of the Confirmation Order shall constitute a judicial determination that the exculpation provisions contained in this Section 6.8.5 are necessary to, inter alia, facilitate Confirmation and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Plan Assets. The approval of this Plan by the Confirmation Order shall constitute a res judicata determination of the matters included in the exculpation provisions of this Plan. Notwithstanding the foregoing, nothing in this Section 6.8.5 shall absolve the Post-Effective Date Committee, the Plan Agent or the Reorganized Debtor of any potential liability that any of them respectively may have to any Creditor (which liability shall be several and not joint) on account of any acts or omissions by it constituting willful misconduct or gross negligence.

**6.8.6    Funding of Post-Effective Date Plan Expenses.** All Post-Effective Date Plan Expenses shall be expenses of the Reorganized Debtor. Except as may be provided expressly to the contrary in the Plan Agent Disclosure, the Plan Agent shall have no personal liability for any Post-Effective Date Plan Expenses. The Plan Agent shall disburse Plan Fund Proceeds from the Plan Fund for the purpose of funding the Post-Effective Date Plan Expenses.

**6.9    Termination of the Committee and Appointment of the Post-Effective Date Committee.**

**6.9.1    Replacement of the Committee.** As of the Effective Date, the Committee shall terminate and disband, and the Committee shall be released from and discharged of all further authority, duties, responsibilities and obligations related to the Case. As of the

35

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

1    Effective Date, the Committee shall be replaced by the Post-Effective Date Committee,

2    which shall be comprised of members of the Committee.  The Post-Effective Date

3    Committee shall have the right to supervise the Plan Agent and shall have the other powers,

4    rights, responsibilities and functions identified in this Plan and in a disclosure document to

5    be filed in the Bankruptcy Court on or before the thirtieth (30th) day prior to the

6    Confirmation Hearing Date ("Post-Effective Date Committee Disclosure").

7        **6.9.2    Members of Post-Effective Date Committee.**  In the event of the death or

8    resignation of any member of the Post-Effective Date Committee, the remaining members

9    of the Post-Effective Date Committee shall have the right to designate a successor member

10    from among the holders of Allowed General Unsecured Claims.  If a Post-Effective Date

11    Committee member assigns its Claim in full, or releases the Debtor from payment of the

12    balance of such member's Claim, such act shall constitute a resignation from the Post-

13    Effective Date Committee.  Until a vacancy on the Post-Effective Date Committee is filled,

14    the Post-Effective Date Committee shall function in its reduced number.  Upon the Case

15    Closing Date, the Post-Effective Date Committee shall be dissolved and the members

16    thereof shall be released and discharged of and from all further authority, duties,

17    responsibilities and obligations related to and arising from their service as Post-Effective

18    Date Committee members.

19        **6.9.3    Duties of Members of Post-Effective Date Committee.**  The members of

20    the Post-Effective Date Committee shall undertake their duties as specified in this Plan and

21    in the Post-Effective Date Committee Disclosure.  In serving as a member of the Post-

22    Effective Date Committee, such member shall not assume, or be deemed to have assumed,

23    any liability to Creditors, the Debtor, or any other parties-in-interest in the Case and shall

24    not be liable for any acts or omissions while acting in that capacity, except for acts or

25    omissions constituting willful misconduct or gross negligence.

26    **6.10    The Reorganized Debtor.**

27        **6.10.1    Corporate Powers.**  The Debtor, as the Reorganized Debtor, shall continue

28    to exist after the Effective Date of this Plan. The Reorganized Debtor shall have all of the

36

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   powers and rights of a corporation under the laws of the State of Delaware, and, except as set

2   forth in this Plan expressly to the contrary, shall continue to have all corporate powers and

3   rights accorded to it under its Articles of Incorporation, Bylaws and other corporate

4   governance agreements.

5        **6.10.2**    **Board of Directors.**  On the Effective Date, the members of the Board of

6   Directors of the Reorganized Debtor shall be the following persons:  the Plan Agent; Scott

7   Poteracki; and another individual to be named by the Post-Effective Date Committee.  The

8   Reorganized Debtor shall maintain customary directors and officers insurance coverage

9   through the Case Closing Date, or as otherwise determined by the Plan Agent.  The members

10  of the Board of Directors shall be entitled to payment of compensation, for serving on the

11  Reorganized Debtor's Board of Directors, in the amount of $1,250.00 per calendar quarter,

12  or as otherwise determined reasonably by the Plan Agent in the exercise of its sole and

13  absolute discretion; provided, however, that such compensation paid to the Plan Agent for

14  serving on the Reorganized Debtor's Board of Directors shall be applied against the

15  compensation payable to the Plan Agent pursuant to this Plan and as set forth in the Plan

16  Agent Disclosure.

17       **6.10.3**    **Officer of Reorganized Debtor.**  As of the Effective Date, the Plan Agent

18  shall serve as the Chief Executive Officer of the Reorganized Debtor.  The Board of

19  Directors of the Reorganized Debtor may appoint other officers as appropriate to aid in the

20  implementation of this Plan.  The Plan Agent shall be authorized to take any act, and to

21  execute any documents, necessary to preserve the corporate existence of the Reorganized

22  Debtor, with no additional authorization required for the Plan Agent to do so.

23       **6.10.4**    **Effectuation of Merger Transaction.**  The Reorganized Debtor shall

24  continue in existence after the Effective Date, as appropriate to effectuate a Merger

25  Transaction.  In accordance with the provisions of Section 6.18 hereof, the Plan Agent, under

26  the supervision of the Post-Effective Date Committee, shall determine whether a Merger

27  Transaction is viable, whether a Merger Transaction should be effectuated for the benefit of

28  holders of Allowed General Unsecured Claims and the terms thereof, and/or whether to

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

37

MTI Plan v3.0

terminate any efforts to effectuate a Merger Transaction and instead to wind up the affairs of the Reorganized Debtor; provided, however, that, in accordance with the provisions of Section 6.18.3 hereof, in the event that no Merger Transaction is consummated by the Merger Consummation Date, all efforts to effectuate a Merger Transaction shall terminate and the Plan Agent shall take all acts appropriate to wind up the affairs of the Reorganized Debtor.

6.11    **Causes of Action.**  Subject to Canopy's rights under the Canopy Agreement, the right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf of the Debtor and the Estate any and all Causes of Action, including, but not limited to, any Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estate to the Plan Agent.  From and after the Effective Date, and subject to Canopy's rights under the Canopy Agreement, only the Plan Agent shall have the right to enforce, file, litigate, prosecute, settle, collect and abandon any Cause of Action.

Notwithstanding the rights of the Plan Agent with respect to Causes of Action, nothing in this Plan shall require the Plan Agent to file or to prosecute any Cause of Action, both of which may be determined by the Plan Agent, in the exercise of its sole and absolute discretion.

**THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION REGARDING THE EXISTENCE OF CAUSES OF ACTION.  THE INVESTIGATION IN THIS REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THIS PLAN, A CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY AS THE PLAN AGENT MAY DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

6.12    **Post-Effective Date Professional Fees.**  The Plan Agent may employ, without any need to give notice to Creditors or other parties-in-interest or obtain any approval of the Bankruptcy Court, any Professional to aid the Plan Agent in performing the Plan Agent's duties under this Plan, including, without limitation, in connection with a possible Merger Transaction, as the Plan Agent

38

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   deems appropriate in the exercise of its sole and absolute discretion.  Any Professional employed by

2   the Plan Agent after the Effective Date shall be entitled to obtain from the Plan Fund payment of the

3   Professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without

4   any need to give notice to Creditors or other parties-in-interest or to obtain any approval of the

5   Bankruptcy Court.  Notwithstanding the foregoing, if the Plan Agent should fail to pay any post-

6   Effective Date fees and costs of a Professional entitled to such payment, within thirty (30) days after

7   the Professional's rendering of its billing statement, the Professional shall be entitled to seek, by

8   application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court

9   requiring the Plan Agent to forthwith pay to the Professional its fees and costs.

10      **6.13    Approval for Disposition of Plan Assets.**  Except as provided expressly to the

11  contrary in this Plan, and subject to Canopy's rights under the Canopy Agreement, from and after the

12  Effective Date, the Plan Agent shall be entitled to sell, transfer, assign, encumber or otherwise

13  dispose of any interest in any of the Plan Assets, without any need to give notice to Creditors or

14  parties-in-interest or to obtain any approval of the Bankruptcy Court.  Notwithstanding the

15  foregoing, the Plan Agent shall be entitled to seek, from the Bankruptcy Court, an order authorizing

16  the sale of any Plan Asset free and clear of Liens pursuant to the provisions of section 363(f) of the

17  Bankruptcy Code.

18      **6.14    Compromise of Controversies.**  From and after the Effective Date, subject to

19  Canopy's rights under the Canopy Agreement, the Plan Agent shall be entitled to compromise any

20  objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation

21  pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-

22  interest or to obtain any approval of the Bankruptcy Court.

23      **6.15    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**  Nothing

24  contained in this Plan shall be deemed to impair in any manner the right of the Plan Agent or any

25  party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court

26  approving actions to be taken consistent with this Plan as may be necessary or desirable to effectuate

27  the provisions of this Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**6.16    Plan Agent Certification.** On or before the date upon which the Plan Agent determines, in the exercise of its sole and absolute discretion, that any Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Plan Assets have been liquidated or otherwise disposed of, that a Merger Transaction has been effectuated or cannot or should not be effectuated by the Merger Consummation Date, and that all Distributions required to be made under this Plan have been made or that final Distributions are being made or will be made within ten (10) days or as soon thereafter as is practicable by the Plan Agent, the Plan Agent shall file with the Bankruptcy Court and serve upon the United States Trustee, the Post-Effective Date Committee, the Reorganized Debtor, Canopy and any Creditor that files after the Effective Date a request for notice of any proceedings in the Case (collectively, "Post-Effective Date Notice Parties") a certification attesting to such determination ("Plan Agent Certification").

**6.17    Final Decree.** Unless earlier filed by the Plan Agent, by the thirtieth (30th) day after the filing of the Plan Agent's Certification, the Plan Agent shall file, in accordance with Rule 3022 of the Federal Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Case ("Final Decree").

**6.18    Merger Transaction.**

**6.18.1    Background.** Although, as of the Effective Date, the Reorganized Debtor will have no significant operations, the Reorganized Debtor may possess substantial net operating losses for tax purposes, and, as a publicly-traded company, will possess a shareholder base, which may make it an attractive acquisition or merger candidate, including, without limitation, to an operating, privately-held corporation seeking to become a publicly-held company (e.g., through a "reverse merger" transaction). This Plan will permit any such acquisition, merger transaction, or other business combination, including, without limitation, a stock exchange, that would benefit the holders of Allowed General Unsecured Claims, as holders of Post-Effective Date Stock in the Reorganized Debtor, by allowing them potentially to have an interest in a viable, operating business enterprise (any such transaction is referred to herein as a "Merger Transaction"). The Plan Agent, under the supervision of the Post-Effective Date Committee, will investigate whether a Merger

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

40

1  Transaction is viable, and should be pursued for the benefit of holders of Allowed General

2  Unsecured Claims.

3      **6.18.2  Merger Consummation Date.**  The Reorganized Debtor shall complete a

4  Merger Transaction by the second-year anniversary of the Effective Date of the Plan

5  ("Merger Consummation Date"); provided, however, that the Plan Agent, after consultation

6  with the Post-Effective Date Committee, shall be authorized to request from the Bankruptcy

7  Court an extension of the Merger Consummation Date, for a period not to exceed one

8  additional year.  The Plan Agent shall give to the Post-Effective Date Notice Parties notice of

9  any such request and an opportunity to obtain a hearing on any such request, in accordance

10  with the requirements of the Bankruptcy Rules.

11      **6.18.3  Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized**

12  **Debtor.**  The Plan Agent, after consultation with the Post-Effective Date Committee, shall be

13  authorized to terminate efforts to effectuate a Merger Transaction or to cancel the Post-

14  Effective Date Stock, prior to the Merger Consummation Date, in the event that the Plan

15  Agent determines, in the exercise of its sole and absolute discretion, that a Merger

16  Transaction is not viable, a Merger Transaction should not be effectuated, or the Post-

17  Effective Date Stock is burdensome or is of inconsequential value and benefit to the holders

18  of Allowed General Unsecured Claims.  The Plan Agent may terminate any efforts to

19  effectuate a Merger Transaction, or may cancel the Post-Effective Date Stock, only after

20  obtaining approval of the Bankruptcy Court for so doing ("Stock Termination Approval")

21  after giving to the Post-Effective Date Notice Parties notice and an opportunity to obtain a

22  hearing thereon, in accordance with the requirements of the Bankruptcy Rules.  In the event

23  that a Stock Termination Approval is obtained by the Plan Agent, or in the event that no

24  Merger Transaction is consummated by the Merger Consummation Date, the Plan Agent

25  shall take all acts appropriate to wind up the affairs of the Reorganized Debtor.

26      **6.18.4  Terms of any Merger Transaction.**  The terms of any Merger Transaction

27  and the terms of any Distribution of Post-Effective Date Stock, including, without limitation,

28  any "lock-up" agreements or other restrictions on the disposition of the Post-Effective Date

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

41

1   Stock, shall be determined by the Plan Agent, subject to the supervision of the Post-Effective

2   Date Committee.  The Plan Agent shall obtain from the Bankruptcy Court approval of any

3   such Merger Transaction for the Reorganized Debtor, after giving to the Post-Effective Date

4   Notice Parties, the United States Securities and Exchange Commission ("SEC") and other

5   parties-in-interest notice and an opportunity to obtain a hearing thereon, in accordance with

6   the requirements of the Bankruptcy Rules.  The Plan Agent shall have the burden of

7   demonstrating to the Bankruptcy Court that any such Merger Transaction is in the best

8   interests of holders of Allowed General Unsecured Claims and that any such Merger

9   Transaction is in compliance with the requirements of Section 6.18.7 hereof.  The SEC shall

10  have the right to oppose any such Merger Transaction on any appropriate grounds.

11          **6.18.5    Valuation of Post-Effective Date Stock.**  Unless and until a Merger

12  Transaction is effectuated, the Post-Effective Date Stock shall be deemed, for all purposes, to

13  have no value of any nature whatsoever.  In connection with effectuating any Merger

14  Transaction, the Plan Agent shall request that the Bankruptcy Court enter an order

15  determining the value of the Post-Effective Date Stock that will be distributed to holders of

16  Allowed General Unsecured Claims pursuant to this Plan, after giving to the Post-Effective

17  Date Notice Parties and other parties-in-interest notice and an opportunity to obtain a hearing

18  thereon, in accordance with the requirements of the Bankruptcy Rules.

19          **6.18.6    Election Not to Receive Post-Effective Date Stock.**  Prior to the

20  consummation of any Merger Transaction, a holder of an Allowed General Unsecured Claim

21  may provide to the Plan Proponents or to the Plan Agent, as applicable, written notice of an

22  election not to receive a Distribution of Post-Effective Date Stock.  Such an election shall be

23  effective, binding and irrevocable upon receipt by the Plan Proponents or the Plan Agent, as

24  applicable, of written notice of such an election.  In the event that a holder of an Allowed

25  General Unsecured Claim makes such an election, any Distributions of Plan Fund Proceeds

26  to which such Creditor is entitled under this Plan on account of its Allowed General

27  Unsecured Claim shall not be reduced in any manner based upon any value of the Post-

28  Effective Date Stock that such Creditor otherwise would receive under this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

42

6.18.7    <u>Restrictions on Effectuation of Merger Transaction.</u>  No Merger Transaction shall be effectuated unless such Merger Transaction is in compliance with the requirements of this Section 6.18.7.

6.18.7.1.    The Reorganized Debtor shall not issue any securities pursuant to this Plan unless:  any such issuance of securities complies with the requirements of section 1145 of the Bankruptcy Code; or any such issuance of securities is either exempt from the registration requirements of the United States Securities Act of 1933 ("Securities Act"), or is registered in accordance with the applicable requirements of the Securities Act.

6.18.7.2.    The Reorganized Debtor shall not consummate any Merger Transaction with a private company unless:  the Reorganized Debtor is current in its reporting obligations under Sections 13(a) or 15(d) of the United States Securities Exchange Act of 1934 ("Exchange Act") at the time of the consummation of any such Merger Transaction; and any such Merger Transaction is consummated by the Reorganized Debtor in accordance with the requirements of the Securities Act, the Exchange Act, and all applicable rules and regulations promulgated by the SEC. The SEC shall retain all rights and remedies that it may have with respect to any such Merger Transaction.

**VII.**

**<u>DISTRIBUTIONS</u>**

7.1    <u>Designation and Role of the Disbursing Agent</u>.

7.1.1    <u>Plan Agent to Serve as Disbursing Agent.</u>  The Plan Agent shall serve as the Disbursing Agent under this Plan.  The terms of the employment of the Plan Agent, including the compensation of the Plan Agent as Disbursing Agent under this Plan, shall be disclosed in the Plan Agent Disclosure and shall be approved by the Bankruptcy Court pursuant to the Confirmation of this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC