**7.1.2   No Bond.** The Plan Agent shall not be required to be bonded in connection with the performance of its duties as Plan Agent under this Plan, including its duties as Disbursing Agent under this Plan.

**7.1.3   Payment of Fees and Expenses of Disbursing Agent.** The fees, expenses and any bond premiums incurred by the Plan Agent, in connection with the performance of its duties as Disbursing Agent under this Plan, shall be paid from the Plan Fund.

**7.1.4   Employment of Agents.** The Plan Agent, as Disbursing Agent under this Plan, shall be authorized to implement such procedures as it deems necessary to make Distributions pursuant to this Plan so as to efficiently and economically assure prompt and accurate Distributions, including, without limitation, the employment of one or more agents on such terms and conditions as it deems appropriate in the exercise of its sole and absolute discretion.

**7.2   Distribution of Property Under this Plan.**

**7.2.1   Cash Distributions.** Except for any Post-Effective Date Stock that may be issued to holders of Allowed General Unsecured Claims pursuant to a Merger Transaction, all Distributions under this Plan shall be in Cash. Cash Distributions made pursuant to this Plan shall be in United States funds, by checks drawn on a domestic bank, or, if the Plan Agent so elects, in the exercise of its sole and absolute discretion, by wire transfers from a domestic bank.

**7.2.2   Setoffs and Recoupment.** Pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Plan Agent, as Disbursing Agent under this Plan, may set off, recoup or withhold against any Allowed Claim and Distribution to be made pursuant to this Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any pre-Petition Date or post-Petition Date account stated, claim, right, or cause of action which the Debtor or the Estate may possess against the holder of such Allowed Claim. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtor, the Estate or the Plan Agent of any such account, claim, right, or cause of action that the Debtor or the Estate

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

may possess against the holder of such Allowed Claim.  To the extent that the Plan Agent in allowing a Claim fails to effect a setoff with a Creditor and seeks to collect a claim from such Creditor after a Distribution to such Creditor pursuant to this Plan, the Plan Agent shall be entitled to full recovery on its claim against such Creditor, notwithstanding any payment of the Creditor's Allowed Claim pursuant to this Plan.

**7.2.3**    **No De Minimis Distributions.**  Notwithstanding anything to the contrary in this Plan, no Distribution of less than $10.00 ("De Minimis Distribution") shall be made to any holder of an Allowed Claim on account thereof.  No consideration shall be provided in lieu of any De Minimis Distributions that are not made under this Plan.

**7.2.4**    **Timeliness of Distributions.**  Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date but, in any event, within fourteen (14) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter but, in any event, within fourteen (14) days thereafter.

**7.2.5**    **Limitation on Liability.**  To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, the Board of the Reorganized Debtor, the Committee, the Post-Effective Date Committee, the Plan Agent, nor any of their respective Representatives shall be liable for (a) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of this Plan and the making or withholding of Distributions pursuant to this Plan, or (b) any change in the value of Distributions made pursuant to this Plan resulting from any delays in making such Distributions in accordance with the terms of this Plan (including, but not limited to, any delays caused by the resolution of Disputed Claims).  The foregoing limitation of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police and regulatory powers respecting persons otherwise protected hereunder.

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**7.2.6    Delivery of Distributions.**

7.2.6.1    All Distributions under this Plan on account of an Allowed Claim shall be tendered only to the holder of such Allowed Claim, as set forth in Section 7.2.6.2.

7.2.6.2    Except as provided in Section 7.2.8 with respect to Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (a) with respect to each holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of Claim; (b) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected in the Bankruptcy Schedules filed by the Debtor; provided, however, that, if the Plan Agent receives a written notice of a change of address for such Creditor, the address set forth in such notice shall be used; or (c) with respect to each holder of an Allowed Administrative Claim, at such address as the holder thereof may specify in writing.

**7.2.7    Undeliverable Distributions.**  If the Distribution to a holder of any Allowed Claim or Allowed Administrative Claim is returned as undeliverable (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Creditor unless and until the Plan Agent is notified in writing of such Creditor's then current address.  Subject to the provisions of Section 7.2.8 hereof, Unclaimed Property shall remain in the control of the Plan Agent and shall be set aside and held in a segregated account ("Unclaimed Property Reserve") to be maintained until such time as the subject Distribution becomes deliverable or is disposed of in accordance with the provisions of Section 7.2.8 hereof.  Nothing contained in this Plan shall require the Plan Agent or any other entity to attempt to locate such Creditor.  No interest shall be payable with respect to any Unclaimed Property.

**7.2.8    Disposition of Unclaimed Property.**  If a Creditor entitled to a Distribution of Unclaimed Property gives written notice to the Plan Agent of such Creditor's claim to the Distribution of such Unclaimed Property within three (3) months following the date upon

46

which such Distribution is required to be made to the Class in which the Creditor holds an Allowed Claim ("Initial Distribution Date"), the Unclaimed Property distributable to such Creditor shall be released from the Unclaimed Property Reserve and paid to such Creditor within fourteen (14) days thereof.  Any holder of an Allowed Claim or Allowed Administrative Claim that does not assert a claim in writing for Unclaimed Property held by the Plan Agent within three (3) months following the Initial Distribution Date with respect to such Unclaimed Property shall no longer have any claim to or interest in such Unclaimed Property, and shall be forever barred from receiving a Distribution on account thereof.  In such cases, any such Unclaimed Property shall be released to the Plan Agent for the purpose of making further Distributions to Creditors, in accordance with the terms and conditions of this Plan.

**7.2.9    Approval for Schedule of Proposed Distributions.**  In the discretion of the Plan Agent, the Plan Agent shall be entitled to prepare a preliminary schedule of proposed Distributions to Creditors ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the making of such Distributions pursuant to the Distribution Schedule.  Notice of any such application shall be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

**7.2.10    Compliance with Tax Requirements.**  To the extent applicable, the Plan Agent, as the Disbursing Agent pursuant to this Plan, shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such tax withholding and reporting requirements.

**7.2.11    Further Assurances Regarding Distributions.**  In accordance with the provisions of Section 13.22 hereof, as a condition to obtaining Distributions under this Plan, each Creditor shall execute and deliver to the Plan Agent, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of this Plan.

**7.2.12    Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent.**  As a condition to obtaining Distributions under this Plan, any Creditor from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

47

sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall pay to the Plan Agent the amount, or turn over to the Plan Agent any such property, for which such Creditor is liable to the Debtor.

## VIII.

### OBJECTIONS TO DISPUTED CLAIMS

**8.1     Exclusive Right to Object to Claims.**  From and after the Effective Date, the Plan Agent shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims. As the representative of Estate, the Plan Agent, under the supervision of the Post-Effective Date Committee, shall succeed to all of the rights and powers of the Debtor and the Estate with respect to all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor, the Estate and the Committee, as applicable, as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

**8.2     Claims Objection Deadline.**  Unless another date is established by order of the Bankruptcy Court, an objection to a Claim must be filed with the Bankruptcy Court and served on the Creditor holding such Claim on or before the Claims Objection Deadline.  The Plan Agent shall have the right to request that the Bankruptcy Court extend the Claims Objection Deadline for cause shown.

**8.3     Investigation Regarding Disputed Claims.**  Notwithstanding the fact that the Plan Agent shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained herein shall be deemed to obligate the Plan Agent to file any objection to a Claim, which action shall be determined by the Plan Agent in the exercise of its sole and absolute discretion.

**THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION REGARDING THE CLAIMS IN THE CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS.  THIS INVESTIGATION IS ONGOING AND, SUBJECT TO THE CLAIMS OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.**

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE CLAIMS OBJECTION DEADLINE.  THE PLAN AGENT SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY RESPECT.

**8.4    Treatment of Disputed Claims.**

**8.4.1    No Distribution Pending Allowance.**  All Distributions under this Plan shall be made only on account of Allowed Claims.  If any portion of a Claim is a Disputed Claim, no Distribution provided for under this Plan shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

**8.4.2    Distribution After Allowance.**  Within fourteen (14) days following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Plan Agent, as Disbursing Agent under this Plan, shall distribute to the Creditor holding such Allowed Claim any Cash or other property that would have been distributable to such Creditor as if, at the time of the making of any Distribution to the Class of which such Creditor is a member, such Claim had been an Allowed Claim and not a Disputed Claim.  No interest shall be paid on such Claim, except as provided in Section 8.4.3 hereof.

**8.4.3    Reserve for Disputed Claims.**  On or as soon as practicable after the Effective Date, the Plan Agent, as Disbursing Agent under this Plan, shall establish, in a segregated, interest-bearing account, a reserve for any Disputed Claim ("Disputed Claims Reserve") in an amount equal to 100% of the Distribution to which the holder of the Disputed Claim would be entitled under this Plan based upon the liquidated, face amount of its non-duplicative Disputed Claim unless such Claim is estimated by Final Order of the Bankruptcy Court; provided, however, that the Plan Agent, as Disbursing Agent under this Plan, shall have the right to seek from the Bankruptcy Court an order reducing the amount of such Reserve pending the resolution of the Disputed Claim.  If the Disputed Claim does not

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

49

set forth a liquidated amount of such Claim, then the amount of the Reserve to be established on account of such Disputed Claim shall be the amount fixed mutually by the Creditor and by the Plan Agent or the amount estimated by the Bankruptcy Court for the purpose of this Section 8.4.3. If the Disputed Claim is estimated, the amount of the Reserve to be established on account of such Disputed Claim shall be the Distribution with respect to the estimated amount of such Disputed Claim as determined by Final Order of the Bankruptcy Court, and such estimated amount shall set forth the maximum amount of the Distribution on account of such Disputed Claim.

**8.4.4   <u>No Distribution Until Allowance of Disputed Claim.</u>** No disbursement of funds from a Disputed Claims Reserve shall be made on account of a Disputed Claim until such Disputed Claim has been determined by a Final Order of the Bankruptcy Court. Any amount of a Claim which has been disallowed pursuant to an order of the Bankruptcy Court shall be deemed to be extinguished and no Distribution of any amount shall be paid on account thereof. The amount reserved for any Disputed Claim (plus any interest thereon) which has been disallowed by the Bankruptcy Court shall be released to the Plan Agent for the purpose of funding further Distributions to Creditors under this Plan.

**8.5   <u>Bar Date for Filing Avoidance Action Payment Claims.</u>** Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and served on the Plan Agent within thirty (30) days after the <u>later</u> of (a) the date of entry of the order of the Bankruptcy Court adjudging the Creditor's liability to the Debtor or to the Reorganized Debtor on account of such Avoidance Action, or (b) the Effective Date.

## IX.

## <u>LITIGATION</u>

**9.1   <u>Plan Agent's Authorization to Assert Causes of Action.</u>** As of the Effective Date, the Plan Agent shall be authorized to exercise and to perform the rights, powers and duties held by the Estate with respect to the Causes of Action. From and after the Effective Date, subject to

50

MTI Plan v3.0

Canopy's rights under the Canopy Agreement, the Plan Agent shall have the sole and exclusive right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and interests of the Estate with respect to the Causes of Action, without the consent or approval of any third party, and without any further order of the Bankruptcy Court.

**9.2**    **Plan Agent's Evaluation of Causes of Action**.  The Plan Agent, under the supervision of the Post-Effective Date Committee, shall make the decision whether to prosecute or to continue to prosecute any Causes of Action.  This decision shall be based, in part, upon the Plan Agent's evaluation of the merits of the Causes of Action as well as the costs required to prosecute such Causes of Action taking into account the resources available to make Distributions to Creditors.  The Plan Agent, under the supervision of the Post-Effective Date Committee, subject to Canopy's rights under the Canopy Agreement, shall be entitled to determine, in the exercise of its business judgment, not to prosecute, or to abandon, any Cause of Action.

**9.3**    **Retention of Professionals.** The Plan Agent may retain Professionals to represent it in prosecution of Causes of Action.  The Plan Agent shall determine the terms of the retention of Professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a contingency fee basis to prosecute some or all of the Causes of Action, and may seek to finance any costs relating to the prosecution of Causes of Action.

**9.4**    **Preservation of Causes of Action.**  Unless a Cause of Action is expressly waived, relinquished, released, compromised, or settled in this Plan or in any Final Order, the Plan Proponents expressly reserve such Cause of Action for later adjudication by the Plan Agent (including, without limitation, Causes of Action of which the Plan Proponents presently may be unaware, or which may arise or exist by reason of facts or circumstances unknown to the Plan Proponents at this time, or facts or circumstances which may change or be different from those which the Plan Proponents now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Plan Agent's prosecution of Causes of Action based on the Disclosure Statement, this Plan, or the Confirmation Order.  Without limiting the generality of the foregoing, any entity with respect to

51

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be evaluated by the Plan Agent subsequent to the Effective Date and may be the subject of an Avoidance Action or other action or proceeding filed after the Effective Date.

**9.5    Subordination of Claims.**  A Plan Proponent shall have the right to file an action to subordinate Claims.  If a Plan Proponent has filed such an action prior to the entry of the Disclosure Statement Order, any Claim subject to such an action shall be deemed to be in Class 5 for the purpose of voting on this Plan unless the Bankruptcy Court enters a Final Order to the contrary.  If a Plan Proponent has filed such an action after the entry of the Disclosure Statement Order, but prior to the Effective Date, such action shall not affect the right of the Creditor to vote with respect to the Class to which it otherwise would be entitled.  After the Effective Date, only the Plan Agent, under the supervision of the Post-Effective Date Committee, shall have the right to file an action to subordinate a Claim.

## X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1    Executory Contracts and Unexpired Leases Being Assumed.**  Effective as of, and conditioned on, the occurrence of the Effective Date, the Debtor hereby assumes all of the executory contracts and unexpired leases of the Debtor listed on Exhibit "2" hereto.  The Plan Proponents may amend, through and including the Confirmation Hearing Date, Exhibit "2" to add thereto any executory contract or unexpired lease, or to delete therefrom any executory contract or unexpired lease.  However, if any amendments are made to Exhibit "2" less than thirty (30) days before the Confirmation Hearing Date, the affected contract or lease parties shall have fifteen (15) days from the date of service of notice of such amendments within which to serve on the Plan Proponents a written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a hearing on the same, and the assumption or rejection of the affected contract or lease shall be delayed until the Bankruptcy Court makes a determination on such issue (such determination may be

52

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

made after the Confirmation Date, without delaying the confirmation of this Plan).  To the extent that an executory contract or unexpired lease has been assumed by the Debtor prior to the Confirmation Date pursuant to an order of the Bankruptcy Court, such assumption shall not be affected by this Plan.  The assumption of any contract or lease pursuant to the provisions of this Section 10.1 shall be only to the extent that such assumed contract or lease constitutes an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.  Inclusion of an agreement in Exhibit "2" does not constitute an admission by the Plan Proponents that (a) such agreement is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, (b) the Debtor must assume such agreement in order to continue to receive or retain rights, benefits, or performance thereunder or that any Claim under such agreement must be paid or any default thereunder must be cured, or (c) such agreement is a valid contract or lease.  Any contract or lease assumed pursuant to this Plan shall be assumed as previously amended or otherwise modified by the parties thereto, whether before or after the Petition Date.

     **10.2    <u>Executory Contracts and Unexpired Leases Being Rejected</u>.** Effective as of, and conditioned on, the occurrence of the Effective Date, the Debtor hereby rejects all of the executory contracts and unexpired leases of the Debtor not listed on Exhibit "2" hereto, including, without limitation, those executory contracts and unexpired leases listed on Exhibit "3" hereto.  The Plan Proponents reserve the right to amend, through and including the Confirmation Hearing Date, Exhibit "3" to add thereto any executory contract or unexpired lease, or to delete therefrom any executory contract or unexpired lease.  However, if any amendments are made to Exhibit "3" less than thirty (30) days before the Confirmation Hearing Date, the affected contract or lease parties shall have fifteen (15) days from the date of service of notice of such amendments within which to serve on the Plan Proponents a written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a hearing on the same, and the rejection of the affected contract or unexpired lease shall be delayed until the Bankruptcy Court makes a determination on such issue (such determination may be made after the Confirmation Date, without delaying the confirmation of this Plan).  To the extent that an executory contract or unexpired lease has been rejected by the Debtor prior to the Confirmation Date pursuant to an order of the Bankruptcy Court, such rejection

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

53

MTI Plan v3.0

shall not be affected by this Plan.  The rejection of any contract or lease pursuant to the provisions of this Section 10.2 shall be only to the extent that such rejected contract or lease constitutes an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code. Inclusion of an agreement in Exhibit "3" does not constitute an admission by the Plan Proponents that (a) such agreement is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, or (b) such agreement is a valid contract or lease.  Any contract or lease rejected pursuant to this Plan shall be rejected as previously amended or otherwise modified by the parties thereto, whether before or after the Petition Date.  Any executory contract or unexpired lease not listed in Exhibit "2" or in Exhibit "3" shall be deemed to be rejected by the Debtor on the Effective Date.

**10.3    Retention of Property Rights.**  To the extent that the Debtor has obtained property rights under the executed portion of an executory contract or unexpired lease, rejection of such agreement shall not constitute an abandonment by the Debtor of any such property rights.

**10.4    Bar Date for Rejection Claims.**  Any Rejection Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor, and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Rejection Claim is filed and served on the Plan Agent within thirty (30) days after the later of (a) the date of entry of the order of the Bankruptcy Court approving the rejection of the executory contract or unexpired lease, or (b) the Effective Date.

**10.5    Cure Claims Schedule.**  A schedule of the amounts necessary to cure any defaults under executory contracts and unexpired leases assumed under this Plan ("Cure Claims") shall be set forth in a schedule ("Cure Claims Schedule") to be filed with the Bankruptcy Court, and served on the non-debtor parties to such executory contracts and unexpired leases, on or before the thirtieth (30th) day prior to the Confirmation Hearing Date.  Any objection to the amount of any Cure Claim set forth in the Cure Claims Schedule shall be filed and served upon the respective counsel for the Plan Proponents on or before the fifteenth (15th) day prior to the Confirmation Hearing Date.  In the event that any such objection to the amount stated for a Cure Claim in the Cure Claims Schedule is not filed and served as set forth herein, the amount of the Creditor's Cure Claim shall be deemed

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  forever to be the amount set forth in the Cure Claims Schedule, and any Cure Claim in excess of the

2  amount set forth in the Cure Claims Schedule shall be waived and shall be forever barred in the

3  Bankruptcy Case, without further notice.  If the Plan Proponents cannot resolve any such objection

4  with the Creditor, the Debtor may either (a) elect to reject the executory contract or unexpired lease

5  at the Confirmation Hearing, or (b) have the Bankruptcy Court determine the merits of the objection

6  on or after the Confirmation Hearing (without delaying the confirmation of this Plan).  Any amount

7  of a Cure Claim payable upon the assumption of an executory contract or unexpired lease shall be

8  due and payable on or before the fourteenth (14th) day after the entry of a Final Order fixing the

9  amount of the Cure Claim and then only in the amount fixed by such Final Order.

10                                              **XI.**

11                       **EFFECT OF CONFIRMATION OF THIS PLAN**

12        **11.1    Discharge.**  Confirmation of this Plan shall have all of the effects provided by

13  section 1141 of the Bankruptcy Code which are not inconsistent with the terms of this Plan.  Except

14  as provided expressly to the contrary in this Plan or in the Confirmation Order, pursuant to

15  section 1141(d) of the Bankruptcy Code, the Distributions and rights that are provided in this Plan

16  shall be in complete satisfaction, settlement, release and discharge, effective as of the Effective Date,

17  of all known or unknown Claims and Administrative Claims against, rights against, liabilities of,

18  obligations of, and any Liens encumbering the Debtor's assets and properties, including but not

19  limited to, Claims of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy

20  Code, in each case whether or not (a) a Proof of Claim based upon such Claim is filed or deemed

21  filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the

22  Bankruptcy Code, or (c) the holder of such Claim accepted the Plan.  The Confirmation Order shall

23  constitute a determination of the discharge of all Claims and Administrative Claims against the

24  Debtor, subject only to the occurrence of the Effective Date, to the fullest extent permitted by

25  section 1141 of the Bankruptcy Code.  Any obligations to Creditors and to Interest Holders imposed

26  by this Plan shall be compensable only from Distributions of Cash made from the Plan Fund and

27  from any Distributions of Post-Effective Date Stock, and shall not be obligations of the Reorganized

28  Debtor, which shall have no obligations or liabilities of any kind or character whatsoever, known or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

55

MTI Plan v3.0

1  unknown, suspected or unsuspected, contingent or non-contingent, matured or unmatured, liquidated

2  or unliquidated, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or

3  in equity or under any other theory of law, to any Creditor, Interest Holder or to any other party-in-

4  interest, except only (i) for Post-Effective Date Plan Expenses, and (ii) that holders of Allowed

5  General Unsecured Claims shall have in accordance with the provisions of this Plan an equity

6  security interest in (but not any Claim or post-Effective Date claim of any nature whatsoever

7  against) the Reorganized Debtor in the event of any Distribution of Post-Effective Date Stock.

8  **11.2  Injunction.** Except as provided expressly to the contrary in this Plan, or in the

9  Confirmation Order, on and after the Effective Date, all Creditors who have held, hold, or who may

10  hold a Claim discharged pursuant to the terms of this Plan (including, but not limited to, states and

11  other governmental units, and any state official, employee, or other entity acting in an individual or

12  official capacity on behalf of any state or other governmental unit) shall be permanently enjoined

13  from the following:  (a) taking any of the following actions on account of any such discharged

14  Claim:  (i) commencing or continuing in any manner any action or other proceeding against the

15  Debtor or the Reorganized Debtor, their respective Representatives, successors, or property;

16  (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award,

17  decree, or order against the Debtor or the Reorganized Debtor, their respective Representatives,

18  successors, or property; (iii) creating, perfecting, or enforcing any Lien against the Debtor or the

19  Reorganized Debtor, their respective Representatives, successors, or property; (iv) asserting any set

20  off, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the

21  Reorganized Debtor, their respective Representatives, successors, or property; and (v) commencing

22  or continuing any action, in any manner, in any place that does not comply with or is inconsistent

23  with the provisions of this Plan; and (b) taking any acts on account of any Causes of Action that are

24  vested in, or transferred to, the Plan Agent as of the Effective Date, including, without limitation,

25  commencing or continuing in any manner any Avoidance Action (i.e., no party may pursue any

26  Causes of Action, except for the Plan Agent).  Any person or entity injured by any willful violation

27  of such injunction shall recover its actual damages, including costs and attorneys' fees, and, in

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

56

1    appropriate circumstances, may recover punitive damages from the willful violator of such

2    injunction.

3         **11.3**    **Release.**  Except as provided expressly to the contrary in this Plan or in the

4    Confirmation Order, the rights afforded under this Plan and the treatment of all Claims under this

5    Plan shall be in exchange for and in complete satisfaction, settlement, release and discharge of all

6    Claims (including Administrative Claims and any interest accrued on any Claim from and after the

7    Petition Date) against the Debtor and the Reorganized Debtor, and any of their respective assets and

8    property.  Except as otherwise provided in this Plan or in the Confirmation Order, upon the Effective

9    Date, each Creditor and party-in-interest in the Bankruptcy Case shall be deemed to have irrevocably

10    and unconditionally settled and released, fully and forever, any Claims against the Debtor and the

11    Reorganized Debtor, and their respective assets and properties.  Except as otherwise provided in this

12    Plan or in the Confirmation Order, all Creditors shall be precluded from asserting all Claims against

13    the Debtor and the Reorganized Debtor, and their respective assets and properties.

14         **11.4**    **Distribution of Property Free and Clear of Liens, Claims, and Interests.**

15    Except as otherwise provided in this Plan or in the Confirmation Order, all property distributed

16    under this Plan shall be distributed free and clear of all Liens and other Claims of Creditors and all

17    Interests of Interest Holders.

18         **11.5**    **Binding Effect of Plan.**  Upon the Effective Date, the provisions of this Plan shall

19    be binding upon the Debtor, the Reorganized Debtor, the Plan Agent and each Creditor and Interest

20    Holder.

21                 **XII.**

22         **LIMITATION OF LIABILITY**

23         **12.1**    **No Liability for Solicitation or Participation.**  As specified in section 1125(e) of

24    the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan, in good faith and in

25    compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of

26    such solicitation or participation, for violation of any applicable law, rule, or regulation governing

27    the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of

28    securities.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

57

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    **12.2    Good Faith.**  Confirmation of this Plan shall constitute a finding that the Plan was

2    proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with

3    applicable provisions of the Bankruptcy Code.

4    **12.3    Limitation of Liability Regarding Plan Confirmation.**  Effective as of the

5    Effective Date, neither the Committee, the Post-Effective Date Committee, nor any of their

6    respective Representatives shall have or incur any liability to any Creditor or Interest Holder or to

7    any other party-in-interest or entity for any post-petition good faith act or omission in connection

8    with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the

9    approval of the Disclosure Statement, the consummation of this Plan, the administration of this Plan,

10    the Bankruptcy Case or the property to be distributed under this Plan or the making of Distributions

11    under this Plan (except for any act or omission constituting gross negligence or willful misconduct),

12    to the fullest extent permitted by applicable statutory and case law, except only that the Plan Agent

13    shall be responsible for making the Distributions provided for by this Plan.  The foregoing limitation

14    of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police

15    and regulatory powers, respecting persons otherwise protected hereunder.

16                                                    **XIII.**

17                                    **OTHER PLAN PROVISIONS**

18    **13.1    Exemption from Stamp, Transfer and Other Taxes.**  Pursuant to section 1146(a)

19    of the Bankruptcy Code, the issuance, transfer, or exchange of assets under this Plan, including,

20    without limitation, the issuance of Post-Effective Date Stock, the creation of any mortgage, deed of

21    trust, or other security interest, the making or assignment of any lease or sublease, or the making or

22    delivery of any deed or instrument of transfer under, in furtherance of, or in connection with this

23    Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

24    **13.2    Books and Records.**  Upon the Case Closing Date, the Plan Agent shall be

25    authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-

26    Effective Date books and records of the Debtor in the Plan Agent's custody or control.  The Plan

27    Agent shall continue to preserve post-Effective Date books and records in its custody or control, for

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

1    a period of not less than one year after the Case Closing Date, or as otherwise provided by order of

2    the Bankruptcy Court.

3        **13.3    Post-Effective Date Quarterly Fees.** After the Effective Date, the Plan Agent shall

4    pay timely, from the Plan Fund, all accruing United States Trustee Fees until the entry of a Final

5    Decree.

6        **13.4    Post-Effective Date Status Reports.** The Plan Agent shall file reports regarding the

7    status of implementation of this Plan and the review, prosecution and resolution of Causes of

8    Action every 120 days following the entry of the Confirmation Order through the Case Closing

9    Date, or as otherwise ordered by the Bankruptcy Court.  Such reports shall be served on the Post-

10   Effective Date Notice Parties.

11       **13.5    Effectiveness of Court Orders.** Unless otherwise provided by this Plan or by the

12   Confirmation Order, all orders and judgments, including injunctions, entered by the Bankruptcy

13   Court during the Case, and in existence on the Confirmation Date, shall remain in full force and

14   effect from and after the Effective Date, to the extent not inconsistent with the provisions of this

15   Plan or the Confirmation Order.

16       **13.6    No Admissions.** Except as expressly provided to the contrary in this Plan, nothing

17   contained in this Plan shall be deemed or construed in any manner as an admission by a Plan

18   Proponent with respect to any matter set forth in this Plan, including, without limitation, the amount

19   or allowability of any Claim, or the value of any property of the Estate.

20       Notwithstanding anything to the contrary in this Plan, if this Plan is not confirmed or the

21   Effective Date does not occur, this Plan shall be null and void, and nothing contained in this Plan

22   shall:  (a) be deemed to be an admission by a Plan Proponent with respect to any matter discussed in

23   this Plan, including liability on any Claim or the propriety of any classification of a Claim;

24   (b) constitute a waiver, acknowledgement, or release of any Claim or Interest, or any claim held by

25   the Debtor; or (c) prejudice in any manner the rights of a Plan Proponent in any further proceedings.

26       **13.7    Revocation of the Plan.** The Plan Proponents reserve the right to withdraw this

27   Plan before the Confirmation Date.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

59

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

1    **13.8    Severability of Plan Provisions.** If, before Confirmation, the Bankruptcy Court

2    holds that any term or provision of this Plan is invalid, void, or unenforceable, the Bankruptcy

3    Court may alter or interpret that term or provision so that it is valid and enforceable to the

4    maximum extent possible consistent with the original purpose of that term or provision.  Such term

5    or provision, as altered or interpreted by the Bankruptcy Court, shall be effective in this Plan, and

6    the remaining terms and provisions of this Plan shall remain in full force and effect and shall not be

7    affected, impaired, or invalidated in any manner.  The Confirmation Order shall constitute a judicial

8    determination that each term and provision of this Plan, as it may have been altered or interpreted in

9    accordance with this Section 13.8, is valid and enforceable under its terms.

10    **13.9    Governing Law.** The rights and obligations arising under this Plan, and any

11    agreements, contracts, documents, or instruments executed in connection with this Plan shall be

12    governed by, and construed and enforced in accordance with, California law without giving effect

13    to conflict of law principles under California law, unless a rule of law or procedure is supplied by:

14    (a) federal law (including, without limitation, the Bankruptcy Code and the Federal Bankruptcy

15    Rules); or (b) an express choice-of-law provision in any document provided for, or executed under

16    or in connection with, this Plan.

17    **13.10    Retention of Jurisdiction.** After the Effective Date, the Bankruptcy Court shall

18    have, exclusively and to the fullest extent permitted by the Bankruptcy Code, jurisdiction over any

19    matter related to the Case or this Plan, including, without limitation, with respect to any of the

20    following matters:

21        13.10.1    resolution of any matters related to the assumption, assumption and

22    assignment, or rejection of any executory contract or unexpired lease to which the Debtor is

23    a party or with respect to which the Debtor may be liable, and to hear, determine and, if

24    appropriate, liquidate, any Claims arising therefrom;

25        13.10.2    entry of such orders as may be appropriate to interpret, enforce,

26    implement or consummate the provisions of this Plan and all contracts, instruments, releases,

27    and other agreements or documents created in connection with this Plan;

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

60

MTI Plan v3.0

13.10.3    determination of any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Plan Agent after the Effective Date, including, without limitation, any matters related to Causes of Action;

13.10.5    hearing and determining any objections to the allowance of Claims or Administrative Claims, whether filed before or after the Confirmation Date, including any objections to the classification of any Claim, and any proceedings to allow, disallow, determine, liquidate, estimate, or establish the priority or the secured or unsecured status of any Claim, in whole or in part, or to establish Reserves pending the resolution of Disputed Claims;

13.10.6    entry and implementation of such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or vacated;

13.10.7    consideration of any modifications of this Plan, after confirmation of this Plan, and, if in the best interests of Creditors, modification of this Plan even after this Plan has been substantially consummated;

13.10.8    interpreting and enforcing orders of the Bankruptcy Court, including, without limitation, the cure of any defect or omission, or the reconciliation of any inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

13.10.9    hearing and determining all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date, including, without limitation, all Pre-Effective Date Fee Claims of Pre-Effective Date Professionals;

13.10.10    hearing and determining disputes arising in connection with, or relating to, this Plan or the interpretation, implementation, or enforcement of this Plan, or the extent of any entity's obligations in connection with this Plan;

13.10.11    the recovery of all assets of the Debtor and property of the Estate, wherever located;

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

61

13.10.12    issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of this Plan or to restrain interference by any entity with the consummation or the enforcement of this Plan;

13.10.13    hearing and determining matters concerning Taxes and tax refunds, tax attributes, and tax benefits and similar and related matters, with respect to the Debtor or the Reorganized Debtor, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13.10.14    hearing and determining any issue or dispute arising from or related to the Plan Assets, the Post-Effective Date Committee or the Plan Agent;

13.10.15    the effectuating of Distributions under, and the performance of, the provisions of this Plan;

13.10.16    hearing and determining any other matter deemed relevant to the consummation of this Plan and the administration of the Case; and

13.10.17    the issuance of a Final Decree.

Notwithstanding anything to the contrary contained in the foregoing, in the event that the Bankruptcy Court determines that it is without jurisdiction, or abstains from exercising jurisdiction, over any matter, the provisions of this Section 13.10 shall not affect, control, prohibit, or limit in any manner the exercise of jurisdiction over such matter by any other court or tribunal that has jurisdiction over such matter.

**13.11    Successors and Assigns.** Except as provided expressly to the contrary in this Plan (including, without limitation, pursuant to Section 11.1 of this Plan), the rights, benefits, and obligations of any entity referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**13.12    Business Day.** If any payment or act under this Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act shall be deemed to have been completed on the required day.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

62

MTI Plan v3.0

**13.13    No Waiver.** Except as provided expressly to the contrary in this Plan, neither the failure to list a Claim in the Bankruptcy Schedules filed by the Debtor, the failure of a Plan Proponent to object to any Claim for purposes of voting, the failure of a Plan Proponent to object to a Claim or Administrative Claim prior to the Effective Date, the failure of a Plan Proponent to assert a Cause of Action prior to the Effective Date, nor any action or inaction of a Plan Proponent with respect to a Claim, Administrative Claim, or Cause of Action, other than a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of such Plan Proponent or its successors or representatives, to (a) object to or examine such Claim or Administrative Claim, in whole or in part, or (b) retain and assert, pursue, prosecute, litigate, or otherwise enforce any Cause of Action.

**13.14    Post-Effective Date Notice.** From and after the Effective Date, any entity which desires to obtain notice of any pleading or document filed in the Case, or of any hearing in the Bankruptcy Court, or of any matter as to which notice is to be provided under this Plan, must file a request for post-Effective Date notice and serve such request on the Plan Agent, the Post-Effective Date Committee, and any counsel for the Plan Agent; provided, however, that the  United States Trustee, the Post-Effective Date Committee, the Reorganized Debtor and the Plan Agent each shall be deemed to have requested such post-Effective Date notice.

**13.15    Modification of this Plan.** At any time prior to the confirmation of this Plan, the Plan Proponents may supplement, amend or modify this Plan in accordance with section 1127(a) of the Bankruptcy Code.  After confirmation of this Plan, the Plan Agent may (a) apply to the Bankruptcy Court to modify this Plan, notwithstanding any substantial consummation of this Plan if such modification is in the best interests of the Creditors, and (b) apply to the Bankruptcy Court to remedy defects or omissions in this Plan or to reconcile inconsistencies in this Plan.

**13.16    Nonconsensual Confirmation.** In accordance with section 1126(g) of the Bankruptcy Code, Interest Holders are deemed to have not accepted this Plan.  The Plan Proponents hereby request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the Interest Holders' deemed non-acceptance of this Plan and any other non-acceptance of this Plan by any other Class established by this Plan.  The Plan

63

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1  Proponents hereby reserve the right to modify this Plan in accordance with section 1127 of the

2  Bankruptcy Code and Section 13.15 of this Plan in connection with confirmation proceedings with

3  respect to this Plan, and, unless the Bankruptcy Court should determine that such modification

4  affects adversely the treatment of any Class of Creditors established by this Plan, such modification

5  of this Plan may be effectuated without the need to amend the Disclosure Statement or to re-solicit

6  votes with respect to this Plan.

7      **13.17    Other Documents and Actions.** The Reorganized Debtor and the Plan Agent may

8  execute such other documents and take such other actions as may be necessary or appropriate to

9  effectuate the transactions contemplated under this Plan, including, without limitation, any Merger

10  Transaction.

11      **13.18    Notices.** Except as provided expressly to the contrary in this Plan, after the

12  Effective Date of this Plan, all notices and requests in connection with this Plan shall be in writing

13  and shall be hand delivered, sent by e-mail transmission or sent by telefacsimile, with a copy sent by

14  first-class mail, addressed to the Plan Agent, the Reorganized Debtor and to the Post-Effective Date

15  Committee at the addresses that will be set forth in the Confirmation Order.

16      All notices to any Creditor shall be sent to it at its last known address or to the last known

17  address of its attorney of record. Any such Creditor may designate in writing any other address for

18  the purpose of this Section 13.18, which designation shall be effective on receipt thereof by the

19  Debtor or by the Plan Agent.

20      **13.19    Inconsistencies.** In the event that any provisions of this Plan are inconsistent with

21  the provisions of the Disclosure Statement, the provisions of this Plan shall control.

22      **13.20    Changes in Rates Subject to Regulatory Commission Approval.** The Debtor is

23  not subject to governmental regulatory commission approval of its rates.

24      **13.21    Modification/Superseding of Loan and Security Agreements.** Except as

25  provided expressly to the contrary in this Plan, from and after the Effective Date, all loan documents,

26  security documents, Liens, assignments of rent, promissory notes, indemnity agreements, surety

27  agreements, purchase orders, invoices, and other contracts documenting Claims against the Debtor

28  (collectively, "Loan Documents") shall be deemed modified or superseded completely, as the case

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

64

1   terms of this Plan.  Upon the Effective Date, any defaults under such Loan Documents shall be

2   deemed cured as of the Effective Date.  After the Effective Date, Claims shall be paid only in

3   accordance with the terms of this Plan, and any effort by any Creditor to compel any payment to it of

4   more than its Allowed Claim, or the payment of its Claim in any manner other than as provided in

5   this Plan, shall constitute a violation of the Confirmation Order and section 1141 of the Bankruptcy

6   Code.

7       **13.22   Implementation of Section 1142 of the Bankruptcy Code.**  Pursuant to

8   section 1142(a) of the Bankruptcy Code, the Reorganized Debtor and the Plan Agent are authorized

9   to carry out the terms of this Plan.  Pursuant to section 1142(b) of the Bankruptcy Code, all Creditors

10  and Interest Holders shall execute and deliver, or join in the execution and delivery of, any

11  instrument or document appropriate to effectuate this Plan, and perform any other act that is

12  appropriate for the consummation of this Plan.  To the extent that any Creditor or Interest Holder

13  fails to comply with these provisions, the Reorganized Debtor and the Plan Agent shall be entitled to

14  obtain, on an expedited basis, an order of the Bankruptcy Court compelling the Creditor's

15  compliance with these provisions, and, during the time period encompassed by such Creditor's non-

16  compliance, no payment shall be made to such Creditor under this Plan, and such Creditor shall be

17  responsible for all costs and damages incurred by the Reorganized Debtor and/or the Plan Agent as a

18  result of such Creditor's non-compliance with these provisions.

19                                  **XIV.**

20                  **RECOMMENDATION AND CONCLUSION**

21       The Plan Proponents believe that confirmation and implementation of this Plan are

22  preferable to any other alternative because, in their view, this Plan will provide holders of Allowed

23  Claims with the maximum recovery possible on their Allowed Claims.  Accordingly, the Plan

24  Proponents urge Creditors to vote to accept this Plan.

25  Dated: August  4 , 2010                **MTI TECHNOLOGY CORPORATION,**
                                           **Chapter 11 Debtor and Debtor-in-Possession**
26
                                           By: _____
27                                         Name: SCOTT POTERACKI
                                           Title:  Chief Restructuring Officer
28

MTI Plan v3.0

Dated:  August ___, 2010

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name: STEVEN SASS
Title:  Chairman

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

66

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**CANOPY SETTLEMENT AGREEMENT**

# EXHIBIT "1"

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This *Settlement Agreement and Mutual Release of Claims* (hereinafter the "Agreement") is made and entered into this 18th day of September 2008, by and between the Official Committee of Unsecured Creditors (the "Committee") for the estate of MTI Technology Corporation (the "Debtor") and the Debtor, on the one hand, and The Canopy Group, Inc. ("Canopy"), on the other hand.  The Committee, the Debtor and Canopy are individually referred to herein as a "Party" and are collectively referred to herein as the "Parties."

## RECITALS

WHEREAS, on October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and thereby commenced its Chapter 11 bankruptcy case entitled In re MTI Technology Corporation, Case Number 8:07-13347-ES (the "Bankruptcy Case"), and

WHEREAS, the Committee is the duly appointed and acting official committee of creditors holding unsecured claims in the Bankruptcy Case; and

WHEREAS, on November 13, 2007, the Bankruptcy Court entered its *Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 (I) Authorizing Secured Post-Petition Financing on a Super-Priority Basis; (II) Authorizing Use of Cash Collateral; (III) Approving Agreements Related to the Foregoing; (IV) Modifying Automatic Stay; and (V) Granting Adequate Protection to Pre-Petition Lenders and Related Relief* (the "Financing Order") in the Bankruptcy Case; and

WHEREAS, pursuant to the Financing Order, the Debtor granted to Canopy perfected, post-petition security interests and liens on the "Canopy Collateral," as such term is defined in the Financing Order; and

WHEREAS, on December 17, 2007, the Bankruptcy Court entered its *Order Pursuant to Sections 105, 363(b), 363(f) and 365 of Title 11 of the United States Code (I) Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (II) Approving the Debtor's Assumption and Assignment of Certain Executory Contracts; and (III) Waiving the 10-Day Stay Period Set Forth in Bankruptcy Rules 6004(a) and 6006(d)* (the "Sale Order") in the Bankruptcy Case, and thereby authorized the Debtor to sell to Copper Holdings LLC the Debtor's equity interests in three European subsidiaries of the Debtor ("Equity Interests"), free and clear of Canopy's security interest in the Equity Interests; and

WHEREAS, pursuant to the Sale Order, Canopy's security interest in the Equity Interests attached to the proceeds that the Debtor received in connection with the sale of the Equity Interests, and, as a consequence thereof, approximately $5.4 million in sale proceeds, plus accrued interest (hereinafter, the "Sale Proceeds") is being held in an attorney trust account

maintained by the Debtor's Chapter 11 bankruptcy counsel ("Trust Account") on account of Canopy's secured claim; and

WHEREAS, assets of the Debtor's estate include claims and causes of action, under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code") and other federal and state-law causes of action, including but not limited to potential claims and causes of action against certain former officers and directors of the Debtor, and all other claims of any kind or nature whatsoever, whether imposed by agreement, understanding, law or equity (collectively, the "Claims"); and

WHEREAS, the Financing Order provides the Committee with standing to challenge Canopy's claims and asserted security interests, including Canopy's claim that it has a validly perfected, first priority lien and security interest in the Sale Proceeds as the identifiable cash proceeds of the Equity Interests; and

WHEREAS, the Committee has asserted to Canopy that it believes grounds exist to seek avoidance of Canopy's security interest, pursuant to section 547 of the Bankruptcy Code; and

WHEREAS, Canopy denies the Committee's assertion, and contends that it is entitled to be paid in full on account of its secured claim, including post-petition interest, from the Sale Proceeds; and

WHEREAS, Canopy has filed a secured proof of claim in the Bankruptcy Case, which has been assigned claim number 487 (the "Canopy Claim"), asserting a secured claim against the Debtor's estate in the amount of $5,173,370.27, plus post-petition interest at twelve percent (12%) per annum, and secured by the Sale Proceeds and other assets of the estate; and

WHEREAS, the Committee and Canopy have discussed the nature and basis of their claims and defenses in an attempt to reach a settlement and compromise of all issues between them; and

WHEREAS, the Parties are now desirous of resolving their disputes and all other issues between them through compromise and settlement, as further set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained herein, the Parties, intending to be bound hereby, do hereby stipulate, agree and covenant as follows:

1.     Payment to Canopy. Within five (5) business days after the Effective Date (as such term is defined in paragraph 18 hereof), the Debtor shall pay to Canopy, from the Sale Proceeds, by certified check or wire transfer, the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) (the "Effective Date Settlement Payment").

2

2.    <u>Assignment and Transfer of Portions of Cash Proceeds of Claims to Canopy.</u>
Upon the Effective Date, the Debtor and its estate shall be deemed to have transferred, conveyed
and assigned to Canopy (and the Debtor and the Committee shall sign forms of transfer or
assignment or such other documents as Canopy shall reasonably request) an undivided interest in
gross cash proceeds received by the Debtor's estate on account of any Claims, whether or not
such cash proceeds are paid on account of filed or non-filed, asserted or unasserted, pending or
contemplated, contingent or uncontingent, disputed or undisputed and liquidated or unliquidated
Claims (the "Gross Claims Proceeds"), up to a maximum amount of ONE MILLION
DOLLARS ($1,000,000.00), in the following percentages:

(a)    If the total Gross Claims Proceeds are less than ONE MILLION
DOLLARS ($1,000,000.00), Canopy shall receive no percentage of the Gross Claims
Proceeds.

(b)    If the total Gross Claims Proceeds are between ONE MILLION
DOLLARS ($1,000,000.00) and TWO MILLION DOLLARS ($2,000,000.00), Canopy
shall receive FIVE PERCENT (5%) of all such Gross Claims Proceeds.

(c)    If the total Gross Claims Proceeds are between TWO MILLION
DOLLARS ($2,000,000.00) and THREE MILLION DOLLARS ($3,000,000.00),
Canopy shall receive TEN PERCENT (10%) of all such Gross Claims Proceeds.

(d)    If the total Gross Claims Proceeds exceed THREE MILLION DOLLARS
($3,000,000.00), Canopy shall receive FIFTEEN PERCENT (15%) of all such Gross
Claims Proceeds provided, however, that in no event shall Canopy ever receive more
than ONE MILLION DOLLARS ($1,000,000.00) of the Gross Claims Proceeds, and the
estate's liability to Canopy shall be capped at that amount.

(e)    <u>Exclusion of Certain Proceeds and Collections of the Estate from
Definition of Gross Claims Proceeds.</u>  For purposes of this Paragraph 2, the phrase
"Gross Claims Proceeds" shall not include any of the following and Canopy shall not be
entitled to any share of any of the following under this Agreement: (i) any collections,
receipts or recoveries of any nature by the Debtor's estate that were actually received by
the Debtor's estate before the date of execution of this Agreement, (ii) any collections,
receipts or recoveries received by the Debtor's estate, or that may be received by the
Debtor's estate, before or after the date of execution of this Agreement, from the Debtor's
disposition of its domestic business units or stock interests in its foreign subsidiaries; and
(iii) any collections, receipts or recoveries received by the Debtor's estate, or that may be
received by the Debtor's estate, before or after the date of execution of this Agreement,
of trade receivables generated in the ordinary course of the Debtor's business operations
and as part of the Debtor's business operations.

3.    <u>Total of all Payments to Canopy not to Exceed THREE MILLION FIVE
HUNDRED THOUSAND DOLLARS ($3,500,000.00).</u>  Canopy acknowledges and agrees that
the total sum of all payments it shall be entitled to under this Agreement and settlement of the
Canopy Claim shall never exceed the sum of THREE MILLION FIVE HUNDRED

3

THOUSAND DOLLARS ($3,500,000.00), consisting of (a) TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) as and for the Effective Date Settlement Payment, and (b) no more than ONE MILLION DOLLARS ($1,000,000.00) of Gross Claims Proceeds.

4.    **No Settlement or Compromise of Claims for Non-Cash Consideration without the Express Written Permission of Canopy, or an Order of the Bankruptcy Court After Notice to Canopy.** Neither the Debtor nor the Committee nor any other representative of the estate, including but not limited to any Chapter 11 plan trustee or any Chapter 11 or 7 trustee, shall settle or compromise any Claims of the estate for non-cash consideration without the express written permission of Canopy, or an Order of the Bankruptcy Court after notice to Canopy and an opportunity for Canopy to be heard on the approval of any settlement or compromise; provided, however, that any settlement or compromise of Claims may take into account and incorporate any valid and enforceable setoff, netting claim, chargeback claim, recoupment claim, counterclaim and any other valid and enforceable defense that may be asserted by the non-debtor party to such settlement or compromise, without any permission of Canopy.

5.    **Settlements of Claims; Notice to Canopy of Rule 9019 Motions.**

(a)    **Prior to Confirmation of Plan.** Prior to any confirmation of a Chapter 11 plan in the Bankruptcy Case, all settlements and compromises of all estate Claims, prior to becoming effective, shall be approved by the Bankruptcy Court after notice and an opportunity for a hearing, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019"). Canopy shall have the same right as any other creditor of the estate to object to or challenge any proposed settlement or compromise. Canopy shall be provided with at least fifteen (15) calendar days' written notice of any such settlements or compromises, and of any hearing thereon.

(b)    **After Confirmation of Plan.** After any confirmation of a Chapter 11 plan in the Bankruptcy Case, no Bankruptcy Court approval of a settlement or compromise of an estate Claim shall be required. Notwithstanding the foregoing, Canopy shall be given written notice of any such settlement or compromise, and Canopy shall have a period of fifteen (15) calendar days after the giving of such notice within which to object to such settlement or compromise. In the event that Canopy objects timely to such settlement or compromise, a motion to obtain Bankruptcy Court approval of such settlement or compromise pursuant to Bankruptcy Rule 9019 shall be filed, with a hearing thereon scheduled on not less than ten (10) days' notice to Canopy, and Canopy shall have the right to present at any such hearing its objection to such settlement or compromise.

6.    **Pursuit of Claims by Estate; Reserving of Gross Claims Proceeds.**

(a)    **Service of Pleadings Regarding Claims and any Initial Written Demands.** The Debtor, the Committee, or the estate's then representative shall serve upon Canopy, in accordance with the provisions of paragraph 35 hereof, copies of any initial written demand that may be tendered or served upon any non-debtor asserting any Claim subject to this Agreement concurrently with the making of any such initial written demand, as

4

well as pleadings that may be filed to pursue any Claim subject to this Agreement concurrently with the filing of any such pleadings.

(b)    Report on Gross Claims Proceeds.  Upon written request by Canopy, the Debtor, the Committee, or the estate's then representative shall provide to Canopy a written report (which may be in the form of written correspondence rather than a pleading or document to be filed with the Bankruptcy Court) of all Gross Claims Proceeds or other consideration received by the estate on account of any Claim.  Any such written report shall, at a minimum, identify (a) the name and address of the person or entity against whom the Claim is asserted, (b) the form and amount of all Gross Claims Proceeds or other consideration received by the estate on account of the Claim, and (c) the date of receipt by the estate of all such Gross Claims Proceeds or other consideration.  Canopy shall be entitled to make a written request for such a report no more frequently than once every four calendar months.  Written reports shall be provided to Canopy within fifteen (15) calendar days of the making of a request therefor.

7.    Segregation of Gross Claims Proceeds; Payment to Canopy of Gross Claims Proceeds.

(a)    Segregation of Gross Claims Proceeds.  Upon receipt of any Gross Claims Proceeds, the Debtor, the Committee, or the estate's then representative shall deposit such Gross Claims Proceeds in an interest-bearing, segregated bank account satisfactory to Canopy.  No funds shall be disbursed from such account except as provided in this paragraph 7.

(b)    Payment to Canopy of Gross Claims Proceeds.  The Debtor, the Committee or the estate's then representative shall pay to Canopy, in good and sufficient funds, all Gross Claims Proceeds to which Canopy becomes entitled under paragraph 2 of this Agreement as soon as practicable after the 91st day after the estate's receipt of such Gross Claims Proceeds if the party paying such Gross Claims Proceeds is not an "insider" of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Code, and the Debtor, the Committee or the estate's then representative shall pay to Canopy, in good and sufficient funds, all Gross Claims Proceeds to which Canopy becomes entitled under paragraph 2 of this Agreement as soon as practicable after one year after the estate's receipt of such Gross Claims Proceeds if the party paying such Gross Claims Proceeds is an "insider" of the Debtor pursuant to section 101(31) of the Bankruptcy Code. Notwithstanding the foregoing, for administrative convenience, Canopy shall not receive payment of any Gross Claims Proceeds until its share of the Gross Claims Proceeds for any applicable period shall meet or exceed the sum of TEN THOUSAND DOLLARS ($10,000.00).

(c)    Avoidance of Payment of Gross Claims Proceeds.  In the event that a final, non-appealable order of a court of competent jurisdiction is entered ordering, pursuant to Chapter 5 of the Bankruptcy Code or otherwise, the Debtor's estate to repay all or a portion of the amount of any Gross Claims Proceeds received by the estate,

5

Canopy shall repay immediately to the estate any amount of such Gross Claims Proceeds that it may have been paid by the estate.

8.    Waiver of Canopy Claim; Release of Sale Proceeds to Estate.

(a)    Waiver of Canopy Claim.  Upon Canopy's receipt of the Effective Date Settlement Payment, Canopy shall be deemed to have waived the Canopy Claim in its entirety and Canopy shall be entitled to no further distributions from the estate or any successor to the estate, other than Canopy's entitlement to potential distributions on account of any Gross Claims Proceeds. Canopy shall not, however, be deemed to have waived any claim or cause of action against the Debtor, the Committee, the estate or any successor to the estate arising out of or related to any failure by them or any of them to satisfy their obligations under this Agreement.

(b)    Release of Sale Proceeds to Estate.  After the Effective Date Settlement Payment is made to Canopy, the balance of the Sale Proceeds, plus all accrued interest thereon, shall be disbursed immediately from the Trust Account to the Debtor's estate and such funds shall be free and clear of any claim, lien, encumbrance or any other interest of any nature whatsoever of Canopy.

9.    Release of Claims by Canopy.  Except for claims and causes of action arising out of or related to a breach of this Agreement, upon the Effective Date, Canopy, on behalf of itself and its predecessors, successors and assigns, hereby absolutely, fully and forever releases, waives, acquits and discharges the Debtor, the Committee, the Debtor's estate and any predecessor, successor and assign of each of them, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of each of them, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that Canopy has, may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act or commission or omission by or involving the Debtor, existing or occurring prior to the date of this Agreement, including, without limitation, the Canopy Claim, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

10.    Release of Claims by the Debtor, the Committee and the Estate.  Except for claims and causes of action (a) arising out of or related to a breach of this Agreement, or (b) arising out of or related to the service by any current or former officer, director, employee, shareholder or agent of Canopy as a director or officer of the Debtor (including, without limitation, such service by Rou Heinz), upon the Effective Date, the Debtor, for itself and for the estate, and the Committee, on behalf of themselves and their respective predecessors, successors and assigns, hereby absolutely, fully and forever release, waive, acquit and discharge Canopy

6

and any predecessor, successor or assign of Canopy, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of Canopy, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that they may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving Canopy, existing or occurring prior to the date of this Agreement, including, without limitation, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

11.    Scope of Releases.  Each of the Parties acknowledges the fact that it is its intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of and as a bar to each such claim, cause of action, suit, debt, lien, encumbrance, security interest, interest, obligation, liability, demand, damage, charge, account, loss, cost and expense of every kind or nature whatsoever, heretofore referred to and released, which Canopy, on one hand, and the Debtor, the estate and the Committee, on the other hand, have had, have, or may have against each other.  In connection with such release, each Party acknowledges that it is aware that it or its attorneys may hereafter discover facts different from or in addition to the facts which it or its attorneys now know or believe to be true with respect to the subject matters of this Agreement and that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever settle any and all claims which do now exist, may exist or heretofore have existed among the Parties in accordance with the terms and conditions hereof, and that, in furtherance of such intention, the releases herein given shall be and shall remain in effect for all time as full and complete mutual releases notwithstanding the discovery of any such different or additional facts of any such additional damages, costs or expenses.  Therefore, each Party acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Except only for the obligations imposed upon, and the rights expressly reserved by, each Party pursuant to this Agreement, each of the Parties does hereby waive and relinquish, effective as of the Effective Date, all rights and benefits which it has or may have under Section 1542 of the Civil Code of the State of California, and any other comparable statutes of any other states in the United States.

7

12.     No Rescission or Termination.  As a part of the foregoing releases, each of the Parties acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true.  From and after the Effective Date of this Agreement, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact.  In entering into this Agreement, and the releases given hereunder, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

13.     Covenants Not to Sue.  The Parties covenant and agree not to commence against each other any action or proceeding of any nature whatsoever with respect to any of the claims hereby released.  The Parties hereby further covenant and agree not to join in or to participate in any action or proceeding based upon, arising out of or relating to the claims hereby released, unless such participation is compelled by order of a court of competent jurisdiction.

14.     Withdrawal of Canopy Claim.  Within five business days after Canopy's receipt of the Effective Date Settlement Payment, Canopy shall withdraw, with prejudice, the Canopy Claim.

15.     No Assignment of Released Claims.  Each Party represents and warrants to the other Parties that it has not assigned or transferred to any person or entity any of the claims hereby released by it.

16.     No Admission of Wrongdoing.  Each Party acknowledges and agrees that this Agreement contemplates and provides for the resolution of disputed claims, and that no Party makes any admission of any wrongdoing.  Except as set forth expressly to the contrary in this Agreement, no Party admits pursuant to this Agreement any liability to any other Party.

17.     Conditions to Effectiveness of this Agreement.  The effectiveness of this Agreement, and the effectiveness of the rights and obligations of the Parties set forth in this Agreement, are subject to the occurrence of each of the following conditions (together, "Effectiveness Conditions"):

        (a)     Execution of Agreement.  The execution of this Agreement by each of the Parties.

        (b)     Bankruptcy Court Approval Order.  The entry of an order of the Bankruptcy Court approving, pursuant to Bankruptcy Rule 9019, the terms and conditions of this Agreement, and such order becoming a final, non-appealable order.

18.     Effective Date of Agreement.  This Agreement shall be effective and binding upon the Parties on the first business date upon which all of the Effectiveness Conditions are satisfied ("Effective Date").

8

19.    Termination of Agreement.

(a)    Termination Events.  This Agreement may be terminated at the option of a non-defaulting Party upon the occurrence of either of the following events:

(i)    The Bankruptcy Court enters an order denying approval of this Agreement; or

(ii)    The Effective Date of this Agreement has not occurred by December 1, 2009.

(b)    Effect of Termination.  In the event of any termination of this Agreement as permitted by paragraph 19(a) hereof, this Agreement, and all of the provisions of this Agreement, shall be null and void ab initio and of no force or effect, shall not be binding upon any of the Parties, and the Parties shall be restored to the same respective positions that they were in as of the date of execution of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to any other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement.  Upon any termination of this Agreement, neither the existence of this Agreement nor its contents shall be deemed to be a presumption, concession, or admission by or against any Party or be admissible in evidence, or referred to for any purpose in the Bankruptcy Case, or in any action or proceeding, except in any action or proceeding relating to or arising out of any breach of this Agreement by a Party.

20.    Binding Effect, Motion for Bankruptcy Court Approval of Agreement.

(a)    Binding Effect of Agreement.  Upon the Effective Date, this Agreement shall be binding upon and shall inure to the benefit of the Debtor's bankruptcy estate and the Parties and the respective successors and assigns of the Parties, including, without limitation, any Chapter 11 trustee or Chapter 7 trustee or Chapter 11 plan representative.

(b)    Bankruptcy Rule 9019 Motion.  The Committee shall file a motion seeking, pursuant to Bankruptcy Rule 9019, approval of this Agreement within no more than fifteen (15) days of its execution by all of the Parties.

21.    Incorporation of Agreement in any Chapter 11 Plan.  Subject to and conditioned upon the occurrence of the Effective Date, to the extent that any terms and conditions of this Agreement are not fully implemented at the time of the filing of any Chapter 11 plan in the Bankruptcy Case (e.g., the payment to Canopy of any Gross Claims Proceeds to which it is entitled under paragraph 2 hereof), such terms and conditions of this Agreement shall be incorporated into and become a part of such Chapter 11 plan and Canopy's rights under this Agreement shall not in any manner be impaired or diminished by any Chapter 11 plan confirmed in the Bankruptcy Case.

9

Exhibit 1, Page 75

22.    Modification. This Agreement may not be modified or amended except by an instrument in writing signed by all of the Parties.

23.    Waiver. Acceptance by any Party of any performance less than required hereunder shall not be deemed to be a waiver of the rights of such Party to enforce all of the terms and conditions hereof. Except as otherwise expressly provided herein, no waiver of any such right hereunder shall be binding unless reduced to writing and signed by the Party to be charged therewith.

24.    Counterparts; Facsimile Signature. This Agreement may be signed in any number of counterparts with the same effect as if the signatures appeared on the same instrument, and all signed counterparts shall be deemed to be an original. Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original.

25.    Authorized Execution. Each individual executing this Agreement on behalf of a Party represents and warrants that (i) to the best of its information and knowledge formed after reasonable inquiry, all Recitals set forth in this Agreement are true and accurate as of the date of execution of this Agreement, (ii) it is authorized to execute this Agreement for such Party, (iii) upon the Effective Date, such Party shall be bound in all respects hereby, and (iv) such execution presents no conflict with any other agreement of such Party or any applicable law.

26.    Attorneys' Fees and Costs. The Parties shall bear their own attorneys' fees and costs arising from or related to the Canopy Claim and the negotiation and execution of this Agreement. In the event of any claim, action, or lawsuit to enforce, modify, interpret, invalidate, rescind, or set aside any term or provision of this Agreement, however, the prevailing party shall be entitled to an award of its costs and expenses, including reasonable attorneys' fees and costs, incurred as a result of such claim, action, or lawsuit, including any appeals resulting therefrom.

27.    No Inducement. The Parties represent, warrant, and agree that, upon executing and entering into this Agreement, they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained, or embodied in this Agreement.

28.    Governing Law; Choice of Forum. This Agreement shall be construed and enforced according to the laws of the State of California, without reference to conflicts of law principles. Any action brought to construe, interpret, enforce or modify the terms of this Agreement may be brought only in the Bankruptcy Court (subject only to the right of appeal). Each of the Parties hereby consents to the jurisdiction of the Bankruptcy Court to enforce the provisions of this Agreement, and hereby waives any objection that it may have to such jurisdiction. Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding to construe, interpret, enforce or modify the terms of this Agreement may be brought in the state or federal courts of California sitting in Orange County, California

10

Exhibit 1, Page 76

29.     Severability.  If any part of this Agreement shall be determined to be illegal, invalid or unenforceable, that part shall be severed from the Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

30.     Free and Voluntary Act.  The Parties hereby acknowledge and agree that they have carefully read the foregoing covenants and mutual releases, know the contents thereof, have discussed them with legal counsel or have decided not to consult with legal counsel, and sign the same of their own free and voluntary act with the intent to be legally bound thereby.

31.     No Construction against any Party; Headings for Convenience Only.  The Parties have cooperated in the drafting and preparation of this Agreement.  In any construction of this Agreement, or of any of its terms and provisions, the same shall not be construed against any Party.  Moreover, all headings in this Agreement are inserted for convenience of reference only, and shall not affect the construction or interpretation hereof.

32.     Reliance on Representations.  Each Party specifically acknowledges that it has not relied on any statement, representation, or promise of any other Party, or of any of its agents, employees, attorneys, or representatives, in executing this Agreement, except as expressly set forth herein.  In addition, each Party acknowledges that it is under no duress or undue influence and that it executes this Agreement as an act of its own voluntary will.

33.     Entire Agreement.  This Agreement constitutes the entire agreement of the Parties with respect to the matters set forth herein, and supersedes any and all prior agreements or understandings, written or oral, between them relating to the subject matter of this Agreement.  No other promises or agreements shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement or separately agreed to in writing and signed by an authorized representative of each Party.

34.     Effectuation.  Each Party agrees to take any and all acts, and to execute any and all further documents, that may be reasonably necessary or appropriate to obtain Bankruptcy Court approval of this Agreement and to effectuate the provisions of this Agreement.

35.     Notices.  Except as provided below, all notices, requests, demands, and other communications required by this Agreement shall be in writing and shall be delivered by facsimile, e-mail transmission, or in person, or mailed by first class registered or certified mail, as follows:

    To the Committee:
        Steven D. Sass
        Vice President, Legal Services
        RMS
        307 International Circle, #270
        Hunt Valley, MD 21030
        Fax: (410) 773-4057
        E-Mail: steven.sass@rmssa.com

11

Exhibit 1, Page 77

With a copy to:
    Robert E. Opera, Esq.
    Winthrop Couchot Professional Corporation
    660 Newport Center, Fourth Floor
    Newport Beach, California 92660-5946
    Fax: (949) 720-4111
    E-Mail: ropera@winthropcouchot.com

With a copy to:
    Richard Feferman
    Corporate Recovery Associates
    3830 Valley Center Dr.
    PMB 705-152
    San Diego, CA 92130
    Fax: (858) 430-2454
    E-Mail: Richard@crarecovery.com

To the Debtor:
    Scott Poteracki
    MTI Technology Corporation
    15641 Red Hill Avenue
    Suite 200
    Tustin, CA 92780
    E-Mail: spoteracki@mediant.com

With a copy to:
    Scott Clarkson, Esq.
    Clarkson, Gore & Marsella, SPLC
    3424 Carson St Ste 350
    Torrance, CA 90503
    Fax: (310) 214-7254
    E-Mail: sclarkson@lawcgm.com

To Canopy:
    Canopy Group, Inc.
    c/o Brandon Tidwell
    333 South 520 West, Suite 300
    Lindon UT 84042
    Fax: (801) 229-2458
    E-Mail: brandon@canopy.com

12

With a copy to:
    Michael R. Johnson, Esq.
    Snell & Wilmer LLP
    Gateway Tower West
    15 West South Temple, #1200
    Salt Lake City, UT 84101
    Fax: (801) 257-1800
    E-Mail: mrjohnson@swlaw.com

With a copy to:
    Danny C. Kelly, Esq.
    Stoel Rives LLP
    201 S. Main St., #1100
    Salt Lake City, UT 87111
    Fax: (801) 578-6999
    E-Mail: dckelly@stoel.com

If delivered by facsimile, by e-mail transmission, or personally, the date on which the notice, request, demand or other communication is delivered shall be the date on which such delivery is made, and, if delivered by mail as aforesaid, the date on which such notice, request, instruction or document is received shall be the date of delivery. Any Party may designate in writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.

36.    Interpretation.  Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.

[REMAINDER OF PAGE LEFT BLANK; SIGNATURE PAGE TO FOLLOW]

13

Exhibit 1, Page 79

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: STEVEN D SASS

Its: Chairman

MTI TECHNOLOGY CORPORATION

By: _____
Its: _____

THE CANOPY GROUP, INC.

By:  Brandon Tidwell
Its:  Managing Director and General Counsel

14

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION


By:
Its: Chairman


MTI TECHNOLOGY CORPORATION


By: Scott Poteracki
Its: CEO


THE CANOPY GROUP, INC.


By:  Brandon Tidwell
Its:  Managing Director and General Counsel

14

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION


By: _____
Its:  Chairman


MTI TECHNOLOGY CORPORATION


By: _____
Its: _____


THE CANOPY GROUP, INC.


By:  Brandon Tidwell
Its:  Managing Director and General Counsel

14

**EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE ASSUMED BY DEBTOR**

**EXHIBIT "2"**

**NONE.**

**EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE REJECTED BY DEBTOR**

# EXHIBIT "3"

**<u>NONE</u>.**

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **DEBTOR'S AND COMMITTEE'S JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐  Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On August 5, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Via First Class Mail**

MTI Technology Corporation
Attn:  Thomas P. Raimondi, Jr., Pres. & CEO
15641 Red Hill Avenue, Suite 200
Tustin, CA 92780

United States Trustee
Attn:  Frank Cadigan
411 West Fourth Street, #904
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via E-Mail**
Michael R. Johnson  - Ray Quinney & Nebeker - MJohnson@rqn.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| August 5, 2010 | Susan Connor | |
| Date | Type Name | Signature |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v.3.0

**NEF SERVICE LIST**

- Robert C Briseno     rbriseno@swlaw.com
- John O Campbell     ocampbell@houser-law.com
- Jeffrey D Cawdrey     jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson     sclarkson@lawcgm.com
- Robert L Eisenbach     reisenbach@cooley.com
- Christine M Fitzgerald     cfitzgerald@lawcgm.com
- Matthew A Gold     courts@argopartners.net
- Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey     bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes     lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick     ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin     akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi     pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna     lavignas@sec.gov
- Adam A Lewis     alewis@mofo.com
- Eve A Marsella     emarsella@lawcgm.com
- Elmer D Martin     elmermartin@gmail.com
- Robert E Opera     pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold     epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds     mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken     mshaiken@stinson.com
- Daniel C Silva     dsilva@gordonrees.com
- Patricia B Tomasco     ptomasco@mailbmc.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin     mwallin@sheppardmullin.com
- Gilbert B Weisman     notices@becket-lee.com
- Sharon Z Weiss     sharon.weiss@hro.com
- David L Wilson     dlwilson@winston.com

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v.3.0