ROBERT E. OPERA – State Bar No. 101182
ropera@winthropcouchot.com
RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@winthropcouchot.com
PAYAM KHODADADI – State Bar No. 239906
pkhodadadi@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile:   (949) 720-4111

Counsel for the Official Committee
of Unsecured Creditors

Scott C. Clarkson, Esq. (CA Bar No. 143271)
Eve A. Marsella, Esq. (CA Bar No. 165797)
**CLARKSON, GORE & MARSELLA, APLC**
3424 Carson Street, Suite 350
Torrance, California  90503
Telephone: 310/542-0111
Facsimile:  310/214-7254
Email: sclarkson@lawcgm.com

Attorneys for Debtor and Debtor-in-Possession
MTI Technology Corporation

<div align="center">

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

</div>

| | |
|---|---|
| In re: | Case No. 8:07-13347-ES |
| MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 Proceeding |
| <div align="center">Debtor and<br>Debtor-in-Possession.</div> | **COMMITTEE'S AND DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION OF JOINT FOURTH AMENDED CHAPTER 11 PLAN**<br><br>DATE:      August 26, 2010<br>TIME:       10:30 a.m.<br>PLACE:   Courtroom 5A<br>                411 West Fourth Street<br>                Santa Ana, CA |

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

## TABLE OF CONTENTS

**PAGE**

I.    DOCUMENTS OF RECORD ................................................................. 2

II.   BACKGROUND ................................................................................ 3
    A.    The Debtor's Case......................................................................... 3
        1.    Wells Fargo ......................................................... 4
        2.    Canopy ................................................................ 4
        3.    EMC .................................................................... 4
        4.    Preference Litigation ............................................. 4
        5.    FusionStorm .......................................................... 4
        6.    Pencom Parties....................................................... 4
    B.    Consensual Plan Confirmation Proceedings......................................... 5
        1.    Canopy ................................................................ 6
        2.    SEC ..................................................................... 6
    C.    Plan Modification Motion/Fourth Amended Plan ................................. 7
        1.    Fourth Amended Plan ............................................. 7
        2.    Plan Modification Motion ...................................... 7

III.  THE FOURTH AMENDED PLAN COMPLIES WITH ALL OF THE
    REQUIREMENTS FOR CONFIRMATION SET FORTH IN
    SECTION 1129(b) OF THE BANKRUPTCY CODE ........................... 8
    A.    11 U.S.C. Section 1129(a)(1).......................................................... 8
        1.    Classification (11 U.S.C. § 1122) .......................... 8
        2.    Mandatory Contents of the Plan (11 U.S.C. § 1123(a))................... 9
        3.    Conclusion Regarding 11 U.S.C. Section 1129(a)(1)........................ 12
    B.    11 U.S.C. Section 1129(a)(2)........................................................... 12
    C.    11 U.S.C. Section 1129(a)(3)........................................................... 13
    D.    11 U.S.C. Section 1129(a)(4)........................................................... 15
    E.    11 U.S.C. Section 1129(a)(5)........................................................... 15
    F.    11 U.S.C. Section 1129(a)(6)........................................................... 15
    G.    11 U.S.C. Section 1129(a)(7)........................................................... 15
    H.    11 U.S.C. Section 1129(a)(8)........................................................... 16
        1.    Class 1 (Allowed Secured Claim)............................ 16
        2.    Class 2 (Allowed Priority Non-Tax Claims) ............ 16
        3.    Class 3 (Any General Unsecured Claims) ................ 16
        4.    Class 4 (Canopy Claim)........................................... 17
        5.    Class 5 (Any Allowed Subordinated Claims)............ 17
        6.    Class 6 (Interests of the Interest Holders) ................ 17
    I.    11 U.S.C. Section 1129(a)(9)........................................................... 17
    J.    11 U.S.C. Section 1129(a)(10).......................................................... 18
    K.    11 U.S.C. Section 1129(a)(11).......................................................... 18
        1.    Obligation as of the Effective Date ......................... 20
        2.    Post-Effective Date Obligations ............................. 21
    L.    11 U.S.C. Section 1129(a)(12).......................................................... 23
    M.    11 U.S.C. Section 1129(a)(13).......................................................... 23

-i-

1

## TABLE OF CONTENTS

2

### (Continued)

3
**PAGE**

4
    N.    11 U.S.C. Section 1129(a)(14) ......................................................... 23

5
    O.    11 U.S.C. Section 1129(a)(15) ......................................................... 23
    P.    11 U.S.C. Section 1129(a)(16) ......................................................... 23

6
III.    THE FOURTH AMENDED PLAN COMPLIES WITH ALL OF

7
    THE REQUIREMENTS FOR CONFIRMATION SET FORTH IN

8
    SECTION 1129(b) OF THE BANKRUPTCY CODE ........................................... 24
    A.    No Unfair Discrimination ................................................................ 25

9
    B.    The Plan Is Fair and Equitable ....................................................... 26
        1.    Compliance with Section 1129(b)(2)(C)(i) ................................ 26

10
        2.    Compliance with Section 1129(b)(2)(C)(ii) ................................ 26

11
IV.    CONCLUSION ......................................................................................... 27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

# TABLE OF AUTHORITIES

<div align="right"><u>PAGE</u></div>

**CASES**

<u>Acequia Inc. v. Clinton</u>,
  787 F.2d 1352 (9th Cir. 1986)............................................19, 25

<u>Clarkson v. Cooke Sales and Service Co.</u>,
  767 F.2d 417 (8th Cir. 1985)..............................................i, 19

<u>In re Brothy</u>,
  303 B.R. 177 (9th Cir. BAP 2003) .....................................19

<u>In re Caldwell</u>,
  76 B.R. 643 (Bankr. E.D. Tenn. 1987).................................25

<u>In re Drexel Burnham Lambert Group, Inc.</u>,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............................19, 27

<u>In re Eagle Bus. Mfg., Inc.</u>,
  134 B.R. 584 (Bankr. S.D. Tex. 1991),
  <u>order aff'd</u>. 158 B.R. 421 (S.D. Tex. 1993) ......................11

<u>In re Eddington Thread Mfg. Co., Inc.</u>,
  181B.R. 826 (Bankr. E.D. Pa. 1995) ..................................19

<u>In re Jartran, Inc.</u>,
  44 B.R. 331 (Bankr. N.D.Ill. 1984) ....................................25

<u>In re Johns-Manville Corp.</u>,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986),
  <u>aff'd</u>, 78 B.R. 407 (S.D.N.Y. 1987),
  <u>aff'd</u>, 843 F.2d 636 (2d Cir. 1988) ...................................25

<u>In re Mullberry Phosphates, Inc.</u>,
  149 B.R. 702 (Bankr. M.D. Fla. 1993)................................19

<u>In re P.J. Keating Co.</u>,
  168 B.R. 464 (Bankr. D.Mass. 1994) .................................27

<u>In re Parke Imperial Canton, Ltd.</u>,
  1994 WL 842777, #11 (Bankr. N.D. Ohio)..........................26

<u>In re Patrician St. Joseph Partners Ltd. Partnership</u>,
  169 B.R. 669 (D.Ariz. 1994) ...........................................19

<u>In re Pine Lake Village Apartment Co.</u>,
  19 B.R. 819 (Bankr. S.D.N.Y. 1982) ..................................25

<u>In re Pocono Springs Company</u>,
  1998 WL 342048, *1 (Bankr. E.D.Pa. 1998) ......................26

<u>In re Prudential Energy Co.</u>,
  58 B.R. 857 (Bankr. S.D.N.Y. 1986) .................................19

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

In re Sagewood Manor Associates Ltd. Partnership,
    223 B.R. 756 (Bankr. D.Nev. 1998).................................................20

In re Sea Garden Motel and Apartments,
    195 B.R. 294 (D.N.J. 1996).................................................19

In re Toy & Sports Warehouse, Inc.,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984).................................................25

In re Trails End Lodge, Inc.,
    54 B.R. 898 (Bankr. D. Vt. 1985).................................................19

In re Tucson Self-Storage,
    166 B.R. 892 (9th Cir. BAP 1994).................................................25

Prudential Ins. Co. of America v. Monnier Bros.,
    755 F.2d 1336 (8th Cir. 1985).................................................19

**STATUTES**

11 U.S.C. § 507(a)(1).................................................15
11 U.S.C. § 1107.................................................13
11 U.S.C. § 1108.................................................13
11 U.S.C. § 1122.................................................8, 9, 12
11 U.S.C. § 1122(a).................................................8
11 U.S.C. § 1123.................................................9, 12
11 U.S.C. § 1123(a).................................................8, 9
11 U.S.C. § 1123(a)(1).................................................9
11 U.S.C. § 1123(a)(2).................................................10
11 U.S.C. § 1123(a)(3).................................................10
11 U.S.C. § 1123(a)(4).................................................10
11 U.S.C. § 1123(a)(5).................................................10
11 U.S.C. § 1123(a)(6).................................................10, 11
11 U.S.C. § 1123(a)(6).................................................10
11 U.S.C. § 1123(a)(7).................................................11
11 U.S.C. § 1124.................................................10
11 U.S.C. § 1125.................................................5, 12
11 U.S.C. § 1126(c).................................................17
11 U.S.C. § 1126(g).................................................24, 27
11 U.S.C. § 1129.................................................8, 27
11 U.S.C. § 1129(a).................................................24, 27
11 U.S.C. § 1129(a)(1).................................................8, 12
11 U.S.C. § 1129(a)(2).................................................12, 13
11 U.S.C. § 1129(a)(3).................................................13
11 U.S.C. § 1129(a)(4).................................................15
11 U.S.C. § 1129(a)(5).................................................15
11 U.S.C. § 1129(a)(6).................................................15
11 U.S.C. § 1129(a)(7).................................................15, 16
11 U.S.C. § 1129(a)(8).................................................16, 24, 27
11 U.S.C. § 1129(a)(9).................................................17, 18

-iv-

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

11 U.S.C. § 1129(a)(10)........................................................................18
11 U.S.C. § 1129(a)(11)..........................................................18, 19, 22
11 U.S.C. § 1129(a)(12)........................................................................23
11 U.S.C. § 1129(a)(13)........................................................................23
11 U.S.C. § 1129(a)(14)........................................................................23
11 U.S.C. § 1129(a)(15)........................................................................23
11 U.S.C. § 1129(a)(16)...................................................................23, 24
11 U.S.C. § 1129(b)..............................................8, 17, 24, 25, 27
11 U.S.C. § 1129(b)(2)..........................................................................26
11 U.S.C. § 1129(b)(2)(C).......................................................25, 26, 28
11 U.S.C. § 1129(b)(2)(C)(i).................................................................26
11 U.S.C. § 1129(b)(2)(C)(ii)........................................................26, 27
11 U.S.C. § 1129(g)..............................................................................17
28 U.S.C. § 1930.................................................................................23

## RULES

F.R.B. P. 3020(b)(2)............................................................................13
F.R.B.P. 3020(b)(2).............................................................................13

## TREATISES

5 Collier on Bankruptcy, ¶ 1129.03, at 1129-50 (15th ed. 1993) ...............25
7 Collier on Bankruptcy, at ¶ 1129.03[2] (15th Ed. 2002) ........................12
7 Collier on Bankruptcy, at ¶ 1123.01[6] (15th ed. Revised 2003)...............10

## OTHER AUTHORITIES

H.R. 95-595, 95th Cong., 1st Sess. (1977) 413; 124 Cong.Rec. 11105 (daily ed. Sept. 28, 1978)...27
H.R. Rep. No. 595, 95th Cong., 1st Sess. 412 (1977) ...............................12
Rep. Edwards; 124 Cong. Rec. S17, 420 (daily ed. Oct. 6, 1978)...................25
S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978) ....................................12
Sponsors' Remarks, 124 Cong. Rec. H11, 104 (daily ed. Sep. 28, 1978) ............25

MAINDOCS-#149820-v5-MTJ_BriefRe4thAmdPlan.DOC

1    MTI Technology Corporation, the debtor and debtor-in-possession in this Chapter 11

2    case ("Debtor"), and the Official Committee of Unsecured Creditors ("Committee") in this case,

3    hereby submit jointly the following Brief in support of the confirmation of the Joint Fourth

4    Amended Chapter 11 Plan ("Fourth Amended Plan") filed jointly by the Debtor and by the

5    Committee (together, "Plan Proponents").

6                                                    I.

7                                    **DOCUMENTS OF RECORD**

8        The Plan Proponents anticipate that the following pleadings will be before this Court in

9    support of the confirmation of the Fourth Amended Plan:

10            1.    Debtor's and Committee's Joint Third Amended Chapter 11 Plan ("Third

11    Amended Plan");

12            2.    Debtor's and Committee's Joint Third Amended Disclosure Statement

13    Describing Debtor's and Committee's Third Amended Chapter 11 Plan ("Disclosure

14    Statement");

15            3.    Summary of Debtor's and Committee Joint Third Amended Chapter 11

16    Plan ("Plan Summary");

17            4.    Order Approving Debtor's and Committee's Joint Third Amended

18    Disclosure Statement Describing Debtor's and Committee's Joint Third Amended

19    Chapter 11 Plan ("Disclosure Statement Order");

20            5.    Proof of Service of Nova George Regarding Service of "Plan Package"

21    Documents;

22            6.    Notice of:  (1) Approval of Debtor's and Committee's Joint Third

23    Amended Disclosure Statement; (2) Plan Confirmation Hearing; (3) Dates and Deadlines

24    Relating to Plan Confirmation; and (4) Manner of Service;

25            7.    Motion to Make Non-Material Modifications to Debtor's and

26    Committee's Joint Third Amended Chapter 11 Plan ("Plan Modification Motion");

27            8.    Fourth Amended Plan;

28

-2-

1  9.  Declaration of Brian K. Osborne Re Analysis of Ballots for Accepting or

2  Rejecting Debtor's and Committee's Joint Third Amended Chapter 11 Plan ("Osborne

3  Declaration");

4  10.  Declaration of Scott Poteracki in Support of Confirmation of Debtor's and

5  Committee's Fourth Amended Chapter 11 Plan ("Poteracki Declaration");

6  11.  This Brief;

7  12.  Objection of U.S. Securities and Exchange Commission to Confirmation

8  of Debtor's and Committee's Third Amended Chapter 11 Plan ("SEC Plan Objection");

9  13.  Withdrawal of Objection of U.S. Securities and Exchange Commission to

10  Confirmation of Debtor's and Committee's Joint Third Amended Chapter 11 Plan; and

11  14.  This Court's files and records, and the record of the proceedings, with

12  respect to the Debtor's Case.[1]

13  The Plan Proponents hereby reserve the right to supplement or amend this Brief and to

14  file any other documents or pleadings in support of the confirmation of the Fourth Amended

15  Plan that may be appropriate.

16  **II.**

17  **BACKGROUND**

18  **A.  The Debtor's Case.**

19  When the Debtor operated, the Debtor was a global provider of end-to-end information

20  infrastructure solutions and had strategic technology and service relationships with industry

21  leaders, including EMC Corporation ("EMC"), Microsoft, VMWare, Symantec and Cisco.  The

22  Debtor's revenues for its fiscal year 2006 exceeded $135.0 million.

23  In 2007, the Debtor experienced substantial cash flow difficulties which made its

24  continued business operations impossible.  The Debtor was compelled to file, on October 15,

25  2007, a Chapter 11 petition for relief commencing the Case.

26  Since the Petition Date, the Debtor has liquidated its operating assets for the benefit of

27  Creditors.  The Debtor sold its interests in its European subsidiaries for an aggregate amount of

28  
---
[1] Unless otherwise specified herein, all capitalized terms contained herein are as defined in the Fourth Amended Plan.

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

1    $7,275,000, permitting it to satisfy its obligations to its primary secured creditors. The Debtor

2    also sold various assets located in the United States, including the following: the assets

3    associated with the Debtor's "Collective" information technology services division, formerly

4    located in Austin, Texas; excess furniture, fixtures and equipment; and certain assets associated

5    with the Debtor's "Legacy Hardware." Moreover, the Debtor has acted diligently to collect its

6    accounts receivable.

7        In addition to the Debtor's liquidation of its operating assets, the Plan Proponents have

8    acted diligently to recover value for the benefit of Creditors.

9        1.    Wells Fargo.  The Committee was successful in recovering approximately

10       $120,000 that was paid to Wells Fargo as a penalty demanded by Wells Fargo for an

11       early termination of Wells Fargo's lending facility with the Debtor.

12       2.    Canopy.  Pursuant to a settlement that the Committee negotiated with

13       Canopy, the Committee was able to recover for the benefit of Creditors approximately

14       $3,500,000 against which Canopy had asserted a secured claim.

15       3.    EMC.  In or about March 2010, the Debtor and EMC negotiated a

16       settlement of litigation that the Debtor had filed against EMC pursuant to which

17       settlement EMC paid to the Debtor $1,900,000 cash, and EMC waived and released its

18       Administrative Claim against the Debtor, asserted to be in an amount of approximately

19       $578,649, and EMC waived and released its General Unsecured Claims against the

20       Debtor, asserted to be in an aggregate amount of approximately $4,464,523.

21       4.    Preference Litigation.  The Committee is pursuing on behalf of the Estate

22       preference litigation. The Debtor also pursued preference litigation. The Committee and

23       the Debtor have recovered to date approximately $90,000 for the estate and anticipate

24       that a substantial additional recovery will be obtained therefrom.

25       5.    FusionStorm.  The Debtor is pursuing litigation against FusionStorm

26       which the Debtor anticipates will result in a significant recovery by the estate.

27       6.    Pencom Parties.  On October 14, 2009, the Committee filed a complaint

28       against Pencom Systems, Inc., Edgar Saadi, Wade Saadi and Edward Ateyeh

-4-

1     (collectively, "Pencom Defendants") asserting, in part, the following causes of action:

2     avoidance and recovery of transfers of property; disallowance of claims; and breach of

3     fiduciary duties ("Pencom Action").  The Debtor and the Pencom Defendants have

4     reached a preliminary settlement of such litigation and are in the process of documenting

5     such settlement.

6         In addition to the efforts that the Debtor and the Committee have made and are making

7   to recover value for the benefit of Creditors, in order to reduce the amount of claims against the

8   estate, the Debtor has filed objections to Disputed Claims.  The Debtor estimates that, by such

9   claims objections, the Debtor has been able to have disallowed in excess of $15.0 million in

10   Disputed Claims, exclusive of the EMC Administrative Claim and EMC General Unsecured

11   Claims disallowed pursuant to the Debtor's settlement with EMC and any Disputed Claims that

12   the Committee has eliminated through the prosecution of preference actions.

13        **B.**     **Consensual Plan Confirmation Proceedings.**

14         The Debtor initially filed a Chapter 11 plan on June 12, 2009.  The Plan Proponents

15   thereafter reached an agreement regarding the terms of a consensual Chapter 11 plan, and, on

16   June 3, 2010, filed jointly the Third Amended Plan and accompanying Disclosure Statement.

17   On June 10, 2010, the Court entered the Disclosure Statement Order, approving the Disclosure

18   Statement as containing "adequate information" in accordance with the provisions of

19   section 1125 of the Bankruptcy Code, and authorizing the Plan Proponents to solicit votes with

20   respect to the confirmation of the Third Amended Plan.

21         As stated in the Osborne Declaration, support for the confirmation of the Third Amended

22   Plan is virtually unanimous, with approximately 97% of the number of the Allowed General

23   Unsecured Claims, representing approximately 99% in dollar amount of the Allowed General

24   Unsecured Claims, that were cast with respect to the Third Amended Plan voting in favor of the

25   confirmation of the Third Amended Plan.

26         No objections to the confirmation of the Third Amended Plan were filed by any Creditor,

27   but informal objections to the confirmation of the Plan were asserted by Canopy, and the United

28

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

States Securities and Exchange Commission ("SEC") filed the SEC Plan Objection. **These
objections raised by Canopy and by the SEC now have been resolved.**

       1.    <u>Canopy</u>. Canopy requested that the Plan Proponents make certain
amendments to the Third Amended Plan in order to clarify the treatment of the Canopy
Claim pursuant to the Plan (Class 4 under the Plan). These amendments to the Third
Amended Plan merely acknowledge Canopy's rights pursuant to the Canopy Agreement
(Exhibit "1" to the Third Amended Plan), do not change in any manner the treatment of
Canopy's rights or interests under the Canopy Agreement or under the Third Amended
Plan, are not substantive in nature and do not affect the rights and interests of any other
Creditor under the Plan. Canopy has confirmed that the Fourth Amended Plan,
incorporating the amendments that Canopy requested be made to the Third Amended
Plan, is acceptable to Canopy, and that Canopy has no objection to the confirmation of
the Fourth Amended Plan.

       2.    <u>SEC</u>. By the SEC Plan Objection, the SEC raised two primary concerns
with respect to the confirmation of the Third Amended Plan -- the provisions of the Third
Amended Plan providing for the possibility of a Merger Transaction could be contrary to
public policy, and certain exculpatory provisions provided in the Third Amended Plan
for the benefit of the Debtor, the Committee, their successors under the Third Amended
Plan, and their Representatives and Professionals are overly broad. The Plan Proponents
worked with the SEC to resolve the SEC Plan Objection, and agreed to amend the Third
Amended Plan in order to address the SEC's concerns. By reason of the amendments
that the Plan Proponents have made to the Third Amended Plan, incorporated into the
Fourth Amended Plan, the SEC has agreed to withdraw the SEC Plan Objection.

By reason of the foregoing, there will be at the Confirmation Hearing no pending
objections to the confirmation of the Third Amended Plan, as amended by the Fourth Amended
Plan.

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

      **C.**      **Plan Modification Motion/Fourth Amended Plan.**

In order to effectuate the settlements reached with Canopy and with the SEC, the Plan Proponents have filed concurrently herewith the following pleadings:

      1.      <u>Fourth Amended Plan</u>. The Fourth Amended Plan, proposed jointly by the Plan Proponents, incorporates the amendments to the Third Amended Plan requested by Canopy and by the SEC.

      2.      <u>Plan Modification Motion</u>. By the Plan Modification Motion, the Plan Proponents seek from this Court an order authorizing them to modify the Third Amended Plan in order to incorporate the agreed-upon clarifications of the treatment of the Canopy Claim and to make the amendments to the Third Amended Plan requested by the SEC. As demonstrated by the Plan Modification Motion, all of such amendments to the Third Amended Plan do not affect adversely the interests of Creditors pursuant to the Third Amended Plan. Approval of the Plan Modification Motion will eliminate the objections asserted with respect to the Third Amended Plan, and, therefore, will facilitate the confirmation of the Fourth Amended Plan, for the benefit of Creditors.

**Subject to this Court's granting the Plan Modification Motion, there will be <u>no</u> objections to the confirmation of the Fourth Amended Plan pending as of the Confirmation Hearing. Moreover, the Fourth Amended Plan will have been accepted by each Class of Claims that has cast a vote with respect to the Third Amended Plan. The votes cast with respect to the confirmation of the Third Amended Plan are overwhelmingly in support of the confirmation of the Third Amended Plan. All of the major Creditor constituents in the Debtor's Case support the confirmation of the Fourth Amended Plan.[2]**

Confirmation of the Fourth Amended Plan is in the best interests of Creditors. The Fourth Amended Plan provides that Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims will be paid in full. Confirmation of the Fourth

---

[2] The Class of Interests established by the Third Amended Plan (Class 6) very likely will neither receive nor retain any value under the Third Amended Plan. Therefore, in accordance with the provisions of section 1129(g) of the Bankruptcy Code, the Class of Interests established by the Third Amended Plan is deemed to have rejected the Third Amended Plan. As will be demonstrated hereinbelow, the Fourth Amended Plan meets all of the requirements of "cram down" under section 1129(b) of the Bankruptcy Code with respect to the Class of Interests.

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

1  Amended Plan will produce for holders of Allowed General Unsecured Claims the most

2  favorable recovery on their Allowed Claims as is possible under the circumstances of this Case,

3  and the Fourth Amended Plan is supported by the Committee and has been approved

4  overwhelmingly by the holders of Allowed General Unsecured Claims.

5       As established by the declarations submitted in support of the confirmation of the Fourth

6  Amended Plan, and as demonstrated more completely herein, the Fourth Amended Plan

7  complies fully with the relevant provisions of section 1129 of the Bankruptcy Code.

8  Consequently, this Court should confirm the Fourth Amended Plan.

9                                    **III.**

10      **THE FOURTH AMENDED PLAN COMPLIES WITH ALL OF THE**

11          **REQUIREMENTS FOR CONFIRMATION SET FORTH**

12           **IN SECTION 1129(b) OF THE BANKRUPTCY CODE**

13      As demonstrated hereinbelow, the Fourth Amended Plan meets all of the requirements

14  for confirmation set forth in section 1129(b) of the Bankruptcy Code.  Consequently, the Fourth

15  Amended Plan must be confirmed.  See, 11 U.S.C. § 1129(b) (providing that, where the

16  requirements of section 1129 are met, a bankruptcy court "shall" confirm the plan).

17      **A.    11 U.S.C. Section 1129(a)(1).**

18      Section 1129(a)(1) requires that a plan comply with the applicable provisions of

19  Chapter 11.  The most important of these provisions are set forth in sections 1122 and 1123(a) of

20  the Bankruptcy Code.

21          1.    Classification (11 U.S.C. § 1122).  Section 1122(a) permits a plan to place a

22  claim in a particular class only if such claim is substantially similar to the other claims in

23  such class.  Here, the Fourth Amended Plan clearly satisfies this requirement.

24          Article IV of the Fourth Amended Plan establishes five Classes of Claims and

25  one Class of Interests.  Class 1 consists only of any Allowed Secured Claims (this Class

26  / / /

27

28

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

consists of separate, independent subclasses of any Allowed Secured Claims).[3]  Class 2 consists only of Allowed Priority Non-Tax Claims.  Class 3 consists only of Allowed General Unsecured Claims.  Class 4 consists only of the Canopy Claim.  Class 5 consists only of any Allowed Subordinated Claims.  Class 6 consists only of the Interests of the Interest Holders.

A chart setting forth the Classes established by the Fourth Amended Plan is as follows:

| Class | Claimants | Impaired or Unimpaired |
|-------|-----------|------------------------|
| Class 1 | Any Allowed Secured Claims -- this Class does not exist. | Unimpaired |
| Class 2 | Allowed Priority Non-Tax Claims | Unimpaired |
| Class 3 | Allowed General Unsecured Claims | Impaired |
| Class 4 | The Canopy Claim | Unimpaired |
| Class 5 | Allowed Subordinated Claims | Impaired |
| Class 6 | Interests of the Interest Holders | Impaired |

In light of the foregoing, the requirements of section 1122 have been met in this case in that each Class under the Fourth Amended Plan consists only of Claims or Interests substantially similar to other Claims or Interests in such Class.  Classification, therefore, is appropriate.

2.    Mandatory Contents of the Plan (11 U.S.C. § 1123(a)).  A plan must comply with the requirements of section 1123 of the Bankruptcy Code.  As is detailed below, section 1123(a) sets forth seven provisions which a plan must contain:

a.    Section 1123(a)(1) requires that a plan designate classes of claims and interests.  Article IV of the Fourth Amended Plan designates the classification of Claims and Interests in accordance with this requirement.

---

[3] As set forth in paragraph VII(A) of the Disclosure Statement, the Plan Proponents believe that there are no Class 1 Claims.  The Plan Proponents added this Class to its Chapter 11 plan in an abundance of caution.  See, Poteracki Declaration.  In fact, no ballots were cast with respect to this Class of Claims.  In effect, then, there are only four (4) Classes of Claims pursuant to the Fourth Amended Plan.

b.      Section 1123(a)(2) requires that a plan specify the treatment of any classes of claims or interests that are not "impaired" by the plan (as that term is defined under section 1124 of the Bankruptcy Code).  In accordance with this requirement, Articles IV and V of the Fourth Amended Plan specify the Classes of Claims under the Fourth Amended Plan that are not impaired.

c.      Section 1123(a)(3) requires that a plan specify the treatment of any classes of claims or interests that are impaired by the plan.  In accordance with this requirement, Articles IV and V of the Fourth Amended Plan specify the Classes of Claims and the Class of Interests that are impaired by the Fourth Amended Plan.

d.      Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of such claim or interest. Since all members of each Class established by the Fourth Amended Plan are treated equally with respect to their Claims or Interests, the Fourth Amended Plan clearly satisfies this requirement.

e.      Section 1123(a)(5) requires that a plan provide adequate means for its implementation.  In accordance with this requirement, the means of implementation of the Fourth Amended Plan are described in detail in Article VI of the Fourth Amended Plan.

f.      Section 1123(a)(6) requires that certain provisions be included in the charter of a corporate debtor.  According to the noted treatise on bankruptcy law, Collier on Bankruptcy, section 1123(a)(6) is designed to ensure that "creditors who are forced to take stock in the new company, or whose rights as creditors are modified or altered so that they assume some risk of the success of the reorganized corporation, are entitled to an allocation of voting power and a voice in the selection of management that will protect their interests." 7 Collier on Bankruptcy, at ¶ 1123.01[6] (15th ed. Revised 2003).

1        In this case, one Class of Interests is established by the Fourth Amended

2    Plan.  Pursuant to the Fourth Amended Plan, the assets of the Debtor will continue

3    to be liquidated, and, on the Effective Date of the Fourth Amended Plan, all

4    Interests in the Debtor will be cancelled, and Interest Holders will receive no

5    Interests of any nature in the Reorganized Debtor.  In light of the cancellation of

6    Interests pursuant to the Fourth Amended Plan, the provisions of

7    section 1123(a)(6) are inapplicable in this case.

8        g.    Section 1123(a)(7) requires that a plan include only provisions

9    consistent with the interests of creditors and equity security holders and with

10    public policy with respect to the manner of selection of any officer, director or

11    trustee under the plan and any successor to such officer, director or trustee.  In

12    construing this requirement, courts have determined that a debtor's plan complies

13    with this requirement where the plan provides for the selection of officers,

14    directors or trustees in accordance with applicable corporate law.  See, In re Eagle

15    Bus. Mfg., Inc., 134 B.R. 584, 597 (Bankr. S.D. Tex. 1991), order aff'd. 158 B.R.

16    421 (S.D. Tex. 1993) (finding compliance with section 1123(a)(7) where

17    "selection of the officers of the reorganized debtors will be in accordance with

18    applicable corporate law").

19        In this case, pursuant to Section 6.10.1 of the Fourth Amended Plan, the

20    Reorganized Debtor will have all of the powers and rights of a corporation under

21    the laws of the State of Delaware, and, except only as set forth in the Fourth

22    Amended Plan to the contrary, will continue to have all corporate powers and

23    rights accorded to it under its Articles of Incorporation, Bylaws and other

24    corporate governance agreements.  Pursuant to Section 6.10.2 of the Fourth

25    Amended Plan, the Reorganized Debtor will have a new three-person board,

26    consisting of the Plan Agent, Scott Poteracki (the Debtor's existing Chief

27    Restructuring Officer) and a person who will be named by the Post-Effective Date

28    Committee.  Under Section 6.10.3 of the Fourth Amended Plan, the Plan Agent

1    will serve as Chief Executive Officer of the Reorganized Debtor and the Board of

2    Directors of the Reorganized Debtor may appoint other officers, as appropriate, to

3    aid in the implementation of the Fourth Amended Plan.  Accordingly, the

4    selection of officers and directors under the Fourth Amended Plan is disclosed

5    fully and is appropriate.

6        3.   Conclusion Regarding 11 U.S.C. § 1129(a)(1).  As demonstrated by the

7    foregoing analysis, the Fourth Amended Plan satisfies the requirements of sections 1122

8    and 1123 of the Bankruptcy Code.  Hence, the Fourth Amended Plan complies with the

9    provisions of section 1129(a)(1) of the Bankruptcy Code.

10   **B.   11 U.S.C. Section 1129(a)(2).**

11       Section 1129(a)(2) provides that a plan may be confirmed only if the proponent of the plan

12   has complied with the applicable provisions of Chapter 11.  The legislative history of this section

13   "indicates that Congress was primarily concerned 'that the proponent of the plan comply with the

14   applicable provisions of title 11, such as section 1125 regarding disclosure.'" 7 Collier on

15   Bankruptcy at ¶ 1129.03[2] (15th Ed. 2002) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 412

16   (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 126 (1978)).

17       Here, the Plan Proponents have complied with the applicable provisions of Chapter 11.

18   The most important of these provisions are set forth in section 1125.  Section 1125 provides that

19   acceptances or rejections of a plan may not be solicited after the commencement of a Chapter 11

20   case unless, at the time of or before such solicitation, there is transmitted to the party being

21   solicited the plan or a summary of the plan and a written disclosure statement approved by the

22   bankruptcy court as containing adequate information.  The Plan Proponents have complied with

23   the requirements of section 1125 in that Creditors received the same Disclosure Statement that was

24   approved by the Court as containing adequate information in accordance with the requirements of

25   section 1125.[4]

26

27

28   [4] Pursuant to the Disclosure Statement Order, Interest Holders, who are not entitled to vote on the Third Amended
Plan, received the same Plan Summary.

-12-

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

As set forth in the Poteracki Declaration and as evidenced by this Court's record of the proceedings in the Debtor's Case, the Plan Proponents have complied with all other applicable statutory provisions in formulating and proposing their Chapter 11 plan. Moreover, the Debtor has managed its business and conducted its financial affairs in a manner consistent with its fiduciary duties as a debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code and with all other applicable provisions of the Bankruptcy Code. Consequently, the requirements of section 1129(a)(2) have been met in this case.

### C. 11 U.S.C. Section 1129(a)(3).

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law. In this case, it is clear that the Fourth Amended Plan has been proposed in good faith.

Rule 3020(b)(2) of the Federal Rules of Bankruptcy Procedure ("F.R.B.P.") provides that "if no objection [to a plan] is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." See, Rule 3020(b)(2) of the F.R.B.P.

By reason of the SEC's agreement to withdraw the SEC Plan Objection, no objection to the confirmation of the Fourth Amended Plan will be pending as of the Confirmation Hearing. Consequently, this Court may, and should, determine that the Fourth Amended Plan is proposed in good faith in accordance with the provisions of Rule 3020(b)(2) of the F.R.B.P.

As set forth in the Poteracki Declaration, the Fourth Amended Plan is the product of arm's-length negotiations among the Debtor, Canopy, the SEC and the Committee. The Committee supports the confirmation of the Fourth Amended Plan. By virtue of the Plan Proponents' agreement to amend the Third Amended Plan to address the SEC Plan Objection and Canopy's informal objections asserted to the Third Amended Plan, the SEC has agreed to dismiss the SEC Plan Objection and Canopy has not filed any objection to the confirmation of the Third Amended Plan. Therefore, there will be, as of the Confirmation Hearing, **no** objections to the confirmation of the Fourth Amended Plan, the votes cast with respect to the Fourth Amended Plan will be

overwhelmingly in support of the confirmation of the Fourth Amended Plan, and all Creditor constituents will support the confirmation of the Fourth Amended Plan.

In addition, evidence of the Debtor's good faith in the Case includes the following:

1.    The Debtor has complied with all of the obligations imposed upon a debtor-in-possession in a Chapter 11 case.

2.    The Debtor has acted diligently to liquidate the operating assets of the Debtor's business, and the Plan Proponents have acted diligently to recover value from litigation claims and other assets, in order to maximize the recovery of Creditors in the Case.

3.    The Debtor and the Committee have cooperated throughout the Case in order to achieve a consensual resolution of the Case, for the benefit of the Debtor's Creditors.

The Debtor filed the Case with a goal of maximizing recovery by Creditors. There has been substantial success achieving this goal. By reason of the efforts made by the Plan Proponents in the Case, substantial value in the Debtor's assets has been recovered for the benefit of Creditors. These efforts made to recover value in the Debtor's assets have enabled the Plan Proponents to propose the Fourth Amended Plan by which Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims will be paid in full, and holders of Allowed General Unsecured Claims will receive an estimated 18% to 40% Distribution on account of such Claims -- a significantly higher recovery than they would receive in a Chapter 7 liquidation proceeding. See, paragraphs XII(F) and XII(G) of the Disclosure Statement.

At all times, the objective of the Plan Proponents in the Case has been to maximize the value of the Debtor's assets and to distribute that value to Creditors in accordance with applicable law. The Plan Proponents have filed the Fourth Amended Plan in order to achieve this objective. Consequently, the Fourth Amended Plan satisfies the "good faith" requirement of section 1129(a)(3).

**D.     11 U.S.C. Section 1129(a)(4).**

Section 1129(a)(4) requires that all payments made or promised by the proponent of the plan to any person for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, be approved by the bankruptcy court, or be subject to the approval of the bankruptcy court.  In this case, the Debtor has made no payments for such costs and expenses, except as approved by the Bankruptcy Court.  Section 3.1 of the Fourth Amended Plan allows for payment in full of Administrative Claims provided by section 507(a)(1) of the Bankruptcy Code (which includes compensation awarded by the Bankruptcy Court to Professionals), upon allowance of such expenses by the Court.  Consequently, the Fourth Amended Plan satisfies the requirements of section 1129(a)(4).

**E.     11 U.S.C. Section 1129(a)(5).**

Section 1129(a)(5) requires that the plan proponent disclose the identity and affiliations of any insider who will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.  Section 6.10.2 of the Fourth Amended Plan discloses the composition of the Reorganized Debtor's Board of Directors and the compensation that will be paid to the members of the Board of Directors.  Section 6.10.3 of the Fourth Amended Plan discloses the identity of key management of the Reorganized Debtor.  In accordance with Section 6.8.4 of the Plan, the Plan Proponents have filed the Plan Agent Disclosure, disclosing information regarding the identity, credentials and affiliations of, and the compensation to be paid to, the Plan Agent.  Consequently, the Fourth Amended Plan satisfies the requirements of section 1129(a)(5).

**F.     11 U.S.C. Section 1129(a)(6).**

Section 1129(a)(6) requires that any governmental regulatory commission with jurisdiction over the rates of the debtor approve any rate change provided for by the plan.  Section 1129(a)(6) is inapplicable in this case in that no such regulatory approval is required in this case.

**G.     11 U.S.C. Section 1129(a)(7).**

Section 1129(a)(7) requires that, with respect to each impaired class of claims or interests established by the plan, each holder of a claim or interest in such class accept the plan, or receive

-15-

1  under the plan property of a value as of the effective date of the plan which is not less than the

2  amount which such holder would receive if the debtor's assets were liquidated under Chapter 7 of

3  the Bankruptcy Code.

4       As set forth in the Poteracki Declaration submitted herewith, the Fourth Amended Plan

5  contemplates, and implements, an orderly liquidation of the Debtor's assets for the benefit of

6  Creditors, but preserves potential value that may be realized through any Merger Transaction.  The

7  Plan Proponents project that Creditors will receive under the Fourth Amended Plan greater value

8  than they would receive in a liquidation of the Debtor's assets.  See, the Debtor's Liquidation

9  Analysis contained in Paragraph XII(G) of, and Exhibit "C" to, the Disclosure Statement.

10  Accordingly, the Fourth Amended Plan meets the "Best Interest of Creditors" test, and therefore

11  satisfies with the requirements of section 1129(a)(7).

12       **H.      11 U.S.C. Section 1129(a)(8).**

13       Section 1129(a)(8) requires that, with respect to each class of claims or interests

14  established by a plan, such class of claims or interests has accepted the plan, or such class is not

15  impaired under the plan.

16       The Osborne Declaration contains a summary of the votes cast with respect to the Third

17  Amended Plan.  The voting with respect to the Third Amended Plan was as follows:

18            1.      Class 1 (Allowed Secured Claims) -- As set forth in the Poteracki

19       Declaration, there are no Secured Claims, and this Class was established only in an

20       abundance of caution.  The Plan Proponents did not expect that any Class 1 Claims would

21       be cast with respect to the Third Amended Plan, and, in fact, no Class 1 votes were cast

22       with respect to the Third Amended Plan.

23            2.      Class 2 (Allowed Priority Non-Tax Claims) -- This Class is not impaired by

24       the Third Amended Plan, and, therefore, was not entitled to cast any votes with respect to

25       the Third Amended Plan.

26            3.      Class 3 (Allowed General Unsecured Claims) -- As set forth in the Osborne

27       Declaration, Class 3 has voted overwhelmingly in support of the confirmation of the Third

28       Amended Plan.  97% of the number of Allowed Class 3 Claims, reflecting 99% of the

-16-

1    dollar amount of Allowed Class 3 Claims, voted with respect to the Third Amended Plan

2    have voted in favor of the Third Amended Plan.  Accordingly, Class 3 has voted to accept

3    the Third Amended Plan under section 1126 of the Bankruptcy Code.  <u>See</u>, 11 U.S.C.

4    § 1126(c).

5        4.    <u>Class 4 (Canopy Claim)</u> -- This Class is <u>not</u> impaired by the Third Amended

6    Plan, and, accordingly, was not entitled to cast any votes with respect to the Third

7    Amended Plan.

8        5.    <u>Class 5 (Allowed Subordinated Claims)</u> -- As set forth by the Osborne

9    Declaration, this Class has voted to accept the Third Amended Plan.  <u>See</u>, 11 U.S.C.

10    § 1126(c).

11        6.    <u>Class 6 (Interests of the Interest Holders)</u> – Interest holders were deemed to

12    have rejected the Third Amended Plan in accordance with the provisions of

13    section 1129(g) of the Bankruptcy Code, and, accordingly, this Class did not vote in favor

14    of the confirmation of the Third Amended Plan.

15    The Plan Proponents have disclosed in the Disclosure Statement that there are <u>no</u> Class 1

16    Claims in the Case.  Such Class of Claims was established only in an abundance of caution.  In

17    any event, even if a Class 1 Claim were to exist in the Case, Class 1 is <u>unimpaired</u> under the Plan,

18    and, accordingly, would not be entitled to cast a vote with respect to the Third Amended Plan.  By

19    reason thereof, this Court effectively should disregard Class 1 for voting purposes with respect to

20    the Fourth Amended Plan.

21    It will be demonstrated hereinbelow that, while Class 6 Interest Holders are deemed to

22    have rejected the Third Amended Plan, this Court nevertheless should confirm the Fourth

23    Amended Plan because the Fourth Amended Plan meets all of the requirements for "cram down"

24    under section 1129(b) of the Bankruptcy Code.

25    **I.    11 U.S.C. Section 1129(a)(9).**

26    Section 1129(a)(9) requires that priority claims be treated in accordance with the specific

27    provisions of section 1129(a)(9), unless the holder of a priority claim consents to a less favorable

28    treatment of its primary claim.  In this case, Section 3.1 of the Fourth Amended Plan requires that

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

1  Administrative Claims be paid, in full, in cash, on the latest of (i) the Effective Date, (ii) the

2  fifteenth Business Day after the date such Administrative Claim becomes an Allowed

3  Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according

4  to its terms.  Section 3.2 of the Fourth Amended Plan requires that Priority Tax Claims be paid in

5  full, in cash, on the later of (i) the Effective Date, or (ii) the fifteenth Business Day after such

6  Priority Tax Claim becomes an Allowed Priority Tax Claim.  Section 5.2 of the Fourth Amended

7  Plan requires that Allowed Priority Non-Tax Claims be paid in full, in Cash, on the later of (i) the

8  Effective Date of the Plan, or (ii) the fifteenth Business Day after such Priority Non-Tax Claim

9  becomes an Allowed Priority Non-Tax Claim.  Accordingly, the requirements of

10  section 1129(a)(9) have been met with respect to the Fourth Amended Plan.

11  **J.      11 U.S.C. Section 1129(a)(10).**

12  Section 1129(a)(10) requires that, if a class of claims is impaired by the plan, at least one

13  class of claims that is impaired by the plan be determined to have accepted the plan, without

14  including any acceptances of the plan by any insider.  In this case, Class 3 is a Class consisting of

15  impaired Allowed General Unsecured Claims and has voted to accept the Third Amended Plan

16  without regard to any votes of insiders.  See, Osborne Declaration.  Accordingly, the requirements

17  of section 1129(a)(10) have been met with respect to the Fourth Amended Plan.

18  **K.      11 U.S.C. Section 1129(a)(11).**

19  Section 1129(a)(11) requires that the bankruptcy court determine that confirmation of the

20  plan is not likely to be followed by the liquidation, or the need for further financial reorganization,

21  of the debtor.

22  Section 1129(a)(11) contains the "feasibility" standard.  More than any other section of

23  the Bankruptcy Code, section 1129(a)(11) conveys Congress's belief that the overall economic

24  good ultimately will be served through the confirmation of Chapter 11 plans, as opposed to the

25  liquidation of businesses.  Congress states in this section that a plan shall be confirmed as long as

26  it is "not likely to be followed by further financial reorganization."  11 U.S.C. § 1129(a)(11).  In

27  other words, the feasibility test is satisfied if the bankruptcy court finds that the debtor's

28  reorganization is not likely to fail.  Congress intentionally made this standard a very lenient one,

-18-

1  because it desired Chapter 11 plans to succeed, as long as a <u>reasonable opportunity</u> for success

2  existed.

3          In construing the feasibility standard provided for by section 1129(a)(11), courts have

4  consistently made clear that, in order for a debtor to comply with the requirements of

5  section 1129(a)(11), it need demonstrate only that the plan has a reasonable opportunity for

6  success.  <u>See</u>, <u>Acequia Inc. v. Clinton</u>, 787 F.2d 1352, 1364 (9th Cir. 1986) ("The Debtor has

7  presented ample evidence to demonstrate that the Plan has a reasonable probability of success");

8  <u>Prudential Ins. Co. of America v. Monnier Bros.</u>, 755 F.2d 1336, 1341 (8th Cir. 1985)

9  (". . . reasonable prospect of success and is workable"); <u>Clarkson v. Cooke Sales and Service</u>

10 <u>Co.</u>, 767 F.2d 417, 420 (8th Cir. 1985) ("The test is whether the things which are to be done after

11 confirmation can be done as a practical matter . . ."); <u>In re Mullberry Phosphates, Inc.</u>, 149 B.R.

12 702, 708 (Bankr. M.D. Fla. 1993) ("A plan meets the § 1129(a)(11) feasibility standard if the

13 Court determines that it offers a reasonable prospect of success and is workable"); <u>In re Trails</u>

14 <u>End Lodge, Inc.</u>, 54 B.R. 898, 904 (Bankr. D. Vt. 1985) (§ 1129(a)(11) is satisfied as long as the

15 proposed plan is capable of being done or carried out); <u>In re Prudential Energy Co.</u>, 58 B.R. 857,

16 862 (Bankr. S.D.N.Y. 1986) (guaranteed success in the stiff winds of commerce is not the

17 standard); <u>In re Drexel Burnham Lambert Group, Inc.</u>, 138 B.R. 723 (Bankr. S.D.N.Y. 1992).

18         In <u>Drexel Burnham</u>, the bankruptcy court held as follows:

19         "The feasibility test set forth in § 1129(a)(11) requires us to determine independently
           whether the Plan is workable and has a reasonable likelihood of success…As noted in
20         Collier on Bankruptcy, a guarantee of success is not required…. The mere prospect of
           financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee
21         of the future is not required."

22 <u>Id.</u> at 762.

23         As one court noted, "it is clear that there is a relatively low threshold of proof necessary

24 to satisfy the feasibility requirement." <u>In re Brothy</u>, 303 B.R. 177, 191 (9th Cir. BAP 2003); <u>In</u>

25 <u>re Sea Garden Motel and Apartments</u>, 195 B.R. 294, 304 (D.N.J. 1996) <i>quoting</i> <u>In re Eddington</u>

26 <u>Thread Mfg. Co., Inc.</u>, 181 B.R. 826, 832-33 (Bankr. E.D. Pa. 1995); <u>In re Patrician St. Joseph</u>

27 <u>Partners Ltd. Partnership</u>, 169 B.R. 669, 674 (D.Ariz. 1994) ("The prospect of financial

28 uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the

-19-

1  future is not required.  The mere potential for failure of the plan is insufficient to disprove

2  feasibility."); In re Sagewood Manor Associates Ltd. Partnership, 223 B.R. 756, 762 (Bankr.

3  D.Nev. 1998) ("Success need not be guaranteed.  The mere potential for failure of the plan or the

4  prospect of financial uncertainty is insufficient to disprove feasibility.").

5         In summary, the law on the issue of feasibility is clear.  If the bankruptcy court finds that

6  a reasonable prospect for success exists, the feasibility test is satisfied.

7         As summarized below and as established by the Poteracki Declaration filed in support

8  hereof, the Plan Proponents have demonstrated that there will be funds sufficient to pay all

9  obligations required to be paid under the Fourth Amended Plan.

10        1.     Obligations as of the Effective Date.  As set forth hereinbelow, given the

11  nature of the Fourth Amended Plan, the primary, if not the only, issue regarding feasibility

12  is whether the Debtor will have, on the Effective Date of the Fourth Amended Plan, cash

13  sufficient to pay all Distributions which will need to be made on or about the Effective

14  Date.  By the Disclosure Statement, the Plan Proponents project that the following Claims

15  will have to be paid on or about the Effective Date of the Plan:

| Claim | Approx. Payment[5] |
|---|---|
| 1.  Administrative Claims of Professionals | $175,000[6] |
| 2.  United States Trustee Fees | 6,500 |
| 3.  Cure Claims Associated with Assumed Executory Contracts and Unexpired Leases | 0.00 |
| 4.  Allowed Priority Tax Claims | 163,729[7] |
| 5.  Class 4 (Priority Non-Tax Claims) | 453,585 |
| **TOTAL** | **$798,814** |

---

[5] These figures derive from the feasibility analysis contained in the Disclosure Statement.  See, paragraph XII(F)(1) of the Disclosure Statement.
[6] Pursuant to an order of the Court, the Debtor is paying on a monthly basis 80% of the fees and 100% of the costs of Professionals employed in the Case.
[7] On July 28, 2010, the Court entered an order authorizing the Debtor to pay Allowed Priority Non-Tax Claims in advance of the confirmation of the Plan, and, accordingly, the Plan Proponents anticipate that such Claims will be satisfied prior to the Effective Date of the Fourth Amended Plan.

-20-

1  The Plan Proponents anticipate that the actual amount of Administrative Claims

2  that will need to be paid in the Case will not be substantially higher than the amount

3  projected by the Plan Proponents pursuant to the Disclosure Statement. See, Poteracki

4  Declaration.

5  By the Disclosure Statement, the Plan Proponents project that, on or about the

6  Effective Date, the Debtor will have the following funds available to it to make the

7  payments required by the terms of the Fourth Amended Plan:

8

| Asset | Approx. Amount[8] |
|---|---|
| Cash | $2,287,517 |
| **TOTAL** | **$2,287,517** |

12  As stated in the Poteracki Declaration, as of June 30, 2010, the Debtor had

13  approximately $2,422,596.02 cash on hand. The Debtor's estate may obtain from

14  recoveries from pending Avoidance Actions more than $175,000 additional cash prior to

15  the Effective Date, without regard to any recovery from the FusionStorm litigation. The

16  Plan Proponents project, therefore, that the Debtor will have funds sufficient to pay all

17  Distributions that must be paid on or about the Effective Date of the Fourth Amended

18  Plan.

19  2.  Post-Effective Date Obligations. The only meaningful Distributions that

20  must be made after the Effective Date are Distributions that must be made on account of

21  Allowed General Unsecured Claims. Holders of Allowed General Unsecured Claims are

22  not entitled to any fixed or guaranteed recovery, or any minimum recovery, on account of

23  their Allowed Claims under the Fourth Amended Plan. Similarly, there is no requirement

24  under the Fourth Amended Plan that the Plan Fund, that will be established for the purpose

25  of funding Distributions on account of Allowed General Unsecured Claims (essentially,

26  cash and litigation recoveries), be funded with any guaranteed or minimum amount of

27

28  [8] This figure derives from the feasibility analysis contained in the Disclosure Statement. See, paragraph XII(F)(1) of
the Disclosure Statement.

-21-

1   money.  Rather, the Fourth Amended Plan is a "pot plan" pursuant to which holders of

2   Allowed General Unsecured Claims receive their pro rata share of the Plan Fund that will

3   be established for their benefit.  The amount of recovery by holders of Allowed General

4   Unsecured Claims under the Fourth Amended Plan, then, is not assured in any manner, but

5   is contingent upon the occurrence of events in the future, such as the results of objections

6   to Disputed Claims and results of litigation, which will determine, to a great extent, the

7   ultimate recovery by holders of Allowed General Unsecured Claims.  Accordingly, given

8   the nature of the Fourth Amended Plan, there is **no** "feasibility" issue with respect to the

9   making of Distributions after the Effective Date of the Fourth Amended Plan in that no

10  covenants or commitments of any nature are made under the Fourth Amended Plan

11  regarding the ultimate amount of the recovery by holders of Allowed General Unsecured

12  Claims under the Fourth Amended Plan.

13      As set forth in the Poteracki Declaration, the assumptions underlying the feasibility

14  analysis are rational and the feasibility analysis should be a reasonable forecast of the financial

15  resources available to the Reorganized Debtor to make the Distributions required to be paid on

16  and after the Effective Date of the Fourth Amended Plan.  While the projection of the

17  Reorganized Debtor's revenues and expenses and the Reorganized Debtor's assets and liabilities

18  contained in the feasibility analysis is subject to a variety of unpredictable outside forces and

19  events which could affect adversely such projection, the Plan Proponents believe that the

20  feasibility analysis is a materially valid projection of the financial resources that the Reorganized

21  Debtor will have to fund the Fourth Amended Plan and appears to be materially achievable by

22  the Reorganized Debtor.

23      The Plan Proponents respectfully submit, therefore, that the record before this Court, as

24  may be supplemented by any additional evidence that will be presented to this Court at or before

25  the time of the hearing on the confirmation of the Fourth Amended Plan, demonstrates clearly

26  the Plan Proponents' compliance with the requirements of section 1129(a)(11).

27

28

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC

**L.      11 U.S.C. Section 1129(a)(12).**

Section 1129(a)(12) requires that all fees payable under 28 U.S.C. section 1930, as determined by the bankruptcy court at the hearing on the confirmation of the plan, have been paid, or that the plan provide for the payment of all such fees on the effective date of the plan. The requirements of section 1129(a)(12) have been met in this case in that the Fourth Amended Plan provides that all such fees will be paid by the Effective Date of the Fourth Amended Plan. See, Fourth Amended Plan at Section 3.1.4.

**M.      11 U.S.C. Section 1129(a)(13).**

Section 1129(a)(13) requires that the plan provide for the continuation, after the effective date of the plan, of the payment of all retiree benefits. The requirements of section 1129(a)(13) are not applicable in this case in that the Debtor is not obligated to make any payments for retiree benefits.

**N.      11 U.S.C. Section 1129(a)(14).**

Section 1129(a)(14) provides that, if the debtor is required by a judicial or administrative order or by statute to pay a domestic support obligation, the debtor must have paid all amounts payable under such order or such statute for such obligations that first become payable after the date of the filing of the petition. The requirements of section 1129(a)(14) are not applicable in this case in that the Debtor is not obligated to pay any domestic support obligations.

**O.      11 U.S.C. Section 1129(a)(15).**

Section 1129(a)(15) provides that, in a case in which a debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan, the value of the property to be distributed under the plan is not less than the amount specified in section 1129(a)(15). The requirements of section 1129(a)(15) are not applicable in this case in that the Debtor is not an individual.

**P.      11 U.S.C. Section 1129(a)(16).**

Section 1129(a)(16) provides that all transfers of property of the plan must be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or

1   trust.  The requirements of section 1129(a)(16) are not applicable in this case in that the Debtor

2   is a corporation conducting business in accordance with the laws of the State of Delaware.

3        Based upon the foregoing, the Plan Proponents respectfully submit that the Fourth

4   Amended Plan satisfies each of the requirements for confirmation set forth in section 1129(a) of

5   the Bankruptcy Code, except for section 1129(a)(8) of the Bankruptcy Code.  It will be

6   demonstrated hereinbelow that this Court nevertheless should confirm the Fourth Amended Plan

7   pursuant to section 1129(b) of the Bankruptcy Code.

8                                    **III.**

9        **THE FOURTH AMENDED PLAN COMPLIES WITH ALL OF**

10       **THE REQUIREMENTS FOR CONFIRMATION SET FORTH**

11       **IN SECTION 1129(b) OF THE BANKRUPTCY CODE**

12       As demonstrated hereinabove, the Fourth Amended Plan satisfies each of the

13  requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except for

14  section 1129(a)(8) because Interest Holders are deemed, in accordance with section 1126(g) of

15  the Bankruptcy Code, to have rejected the Fourth Amended Plan.  However, the Fourth

16  Amended Plan still can be confirmed pursuant to the "cram down" provisions of section 1129(b).

17  In this regard, section 1129(b) provides, in pertinent part, as follows:

18          ...if all of the applicable requirements of subsection (a) of this section other
19          than paragraph (8) are met with respect to a plan, the court, on request of the
            proponent of the plan, **shall** confirm the plan notwithstanding the
20          requirements of such paragraph if the plan does not discriminate unfairly, and
            is fair and equitable, with respect to each class of claims or interests that is
21          impaired under, and has not accepted, the plan.
                (2)     For the purpose of this subsection, the condition that a plan be
22          fair and equitable with respect to a class includes the following requirements:
                                          * * *
23              (C)     With respect to a class of interests--
24                      (i)  the plan provides that each holder of an interest of
            such class receive or retain on account of such interest property of a
25          value, as of the effective date of the plan, equal to the greatest of the
            allowed amount of any fixed liquidation preference to which such
26          holder is entitled, any fixed redemption price to which such holder is
            entitled, or the value of such interest; or
27                      (ii)     the holder of any interest that is junior to the
            interests of such class will not receive or retain under the plan on
28          account of such junior interest any property.

                                      -24-

MAINDOCS-#149820-v5-MTI BriefRe4thAmdPlan.DOC

1    11 U.S.C. § 1129(b)(2)(C) (emphasis added).

2        Section 1129(b) makes clear, then, that, if a plan does not discriminate unfairly and is fair

3    and equitable with respect to each class of interests impaired under the plan that has not accepted

4    the plan, the bankruptcy court is <u>required</u> to confirm the plan. <u>See</u>, 11 U.S.C. § 1129(b).

5        **A.    <u>No Unfair Discrimination.</u>**

6        The reference in section 1129(b) to the requirement that a plan not "discriminate unfairly"

7    has been held to mean that a plan cannot provide unequal treatment of similar claims or similar

8    interests. <u>See</u>, Sponsors' Remarks, 124 Cong. Rec. H11, 104 (daily ed. Sep. 28, 1978) (statement

9    of Rep. Edwards; 124 Cong. Rec. S17, 420 (daily ed. Oct. 6, 1978) (statement of Sen. De

10   Concini); <u>In re Tucson Self-Storage</u>, 166 B.R. 892, 898 (9th Cir. BAP 1994) (citing <u>In re Toy &</u>

11   <u>Sports Warehouse, Inc.</u>, 37 B.R. 141, 15-52 (Bankr. S.D.N.Y. 1984)). Only in situations

12   proposing "widely disparate" treatment of "similarly situated" claims will courts deny

13   confirmation of Chapter 11 plans for being unfairly discriminatory. <u>See</u>, <u>id.</u>; <u>In re Caldwell</u>, 76

14   B.R. 643, 646 (Bankr. E.D. Tenn. 1987) (denying confirmation of Chapter 11 plan where plan

15   proposed to pay class of unsecured credit card claims 100%, but proposed to pay class of all

16   other unsecured claims only 22.7%); <u>In re Johns-Manville Corp.</u>, 68 B.R. 618, 636 (Bankr.

17   S.D.N.Y. 1986), <u>aff'd</u>, 78 B.R. 407 (S.D.N.Y. 1987), <u>aff'd</u>, 843 F.2d 636 (2d Cir. 1988) ("[A]

18   plan proponent may not segregate two similar claims or groups of claims into separate classes

19   and provide disparate treatment for those classes."); <u>In re Jartran, Inc.</u>, 44 B.R. 331 (Bankr.

20   N.D.Ill. 1984); <u>In re Pine Lake Village Apartment Co.</u>, 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982)

21   (plan cannot place a secured creditor's deficiency claim in separate class receiving different

22   treatment from other unsecured claims). <u>Collier on Bankruptcy</u> states that this provision requires

23   that a plan "allocate[] value to [a] class in a manner consistent with the treatment afforded to

24   other classes with similar legal claims against the debtor." <u>In re Acequia, Inc.</u>, 787 F.2d 1352

25   (9th Cir. 1986), citing 5 <u>Collier on Bankruptcy</u>, ¶ 1129.03, at 1129-50 (15th ed. 1993).

26       In this case, Creditors and Interest Holders with similar legal Claims or Interests have

27   been treated the same in the Classes established by the Fourth Amended Plan.  There is no

28

1 "widely disparate" treatment of "similarly situated" Creditors or Interest Holders. Accordingly,

2 there is no "unfair discrimination" in this case.

3 **B.**    **The Plan Is Fair and Equitable.**

4    Section 5.6 of the Fourth Amended Plan addresses the treatment of Interests under the

5 Fourth Amended Plan. Section 5.6.1 provides that, on the Effective Date of the Fourth Amended

6 Plan, all Interests will be cancelled, and Interest Holders will receive no Post-Effective Date

7 Stock or any other Interests of any nature whatsoever in the Reorganized Debtor. Pursuant to the

8 Fourth Amended Plan, Interest Holders will not receive any Distributions on account of their

9 Interests; provided, however, that in the (very unlikely) event that each Allowed Claim is paid in

10 full, with interest thereon, each holder of an Allowed Interest will receive, in full and complete

11 satisfaction of its Allowed Interest, Pro Rata Distributions of any Plan Fund Proceeds remaining

12 in the Plan Fund.

13    This treatment of Interests satisfies the requirement for "cram down" pursuant to

14 section 1129(b)(2)(C) of the Bankruptcy Code.

15    1.    Compliance with Section 1129(b)(2)(C)(i). Section 5.6.1 of the Fourth

16 Amended Plan effectively provides that any value in the Reorganized Debtor remaining

17 after payment of all Allowed Claims, plus interest thereon, will be distributed, on pro rata

18 basis, to the holders of Allowed Interests. Accordingly, pursuant to the Fourth Amended

19 Plan, the value of an Interest Holder's Interest is distributed to the Interest Holder in

20 accordance with the provisions of section 1129(b)(2)(C)(i) of the Bankruptcy Code.

21    2.    Compliance with Section 1129(b)(2)(C)(ii). In construing

22 section 1129(b)(2)(C)(ii) of the Bankruptcy Code, it has been held that, where a plan

23 provides that all interests are "canceled and extinguished," the condition for cram down

24 provided in section 1129(b)(2)(C)(ii) is satisfied. In re Pocono Springs Company, 1998

25 WL 342048, *1 (Bankr. E.D.Pa. 1998); see also In re Parke Imperial Canton, Ltd., 1994

26 WL 842777, #11 (Bankr. N.D. Ohio) ("[t]he court finds that the Proponents' plan satisfies

27 the section 1129(b)(2) requirement of fair and equitable treatment of claims with respect to

28 secured and unsecured claims and interests. … With respect to interests, the plan provides

-26-

1   that any junior interest holders, to the extent any may exist, will not receive or retain under

2   the plan, on account of such junior interest, any property."). Section 1129(b)(2)(C)(ii) is

3   applicable even in the absence of any junior classes. See, In re P.J. Keating Co., 168 B.R.

4   464, 468 (Bankr. D.Mass. 1994) (citing H.R. 95-595, 95th Cong., 1st Sess. (1977) 413; 124

5   Cong.Rec. 11105 (daily ed. Sept. 28, 1978)); In re Drexel Burnham Lambert Group, Inc.,

6   138 B.R. 714, 717 (Bankr. S.D.N.Y.), aff'd, 140 B.R. 347 (S.D.N.Y. 1992).

7        Pursuant to the Fourth Amended Plan, all Interests -- whether preferred stock,

8   common stock or any other equity interests in the Debtor -- are cancelled on the Effective

9   Date. Accordingly, no holder of any Interest that is junior to the Interests in the Class of

10   Allowed Interests will receive or retain under the Fourth Amended Plan any property on

11   account of such junior Interest. The requirements for cram down contained in

12   section 1129(b)(2)(C)(ii), therefore, are met in this case.

13        Thus, the Plan Proponents respectfully submit that they have satisfied all of the

14   requirements for confirmation of the Fourth Amended Plan provided by section 1129(b) of the

15   Bankruptcy Code.

16                         **IV.**

17                **CONCLUSION**

18        Section 1129 of the Bankruptcy Code provides that a bankruptcy court must confirm a

19   Chapter 11 plan if the plan complies with the requirements of section 1129. As established above,

20   the Fourth Amended Plan complies fully with the requirements for confirmation set forth in

21   section 1129(b). The Fourth Amended Plan satisfies each of the requirements for confirmation set

22   forth in section 1129(a) of the Bankruptcy Code, except for the requirement of section 1129(a)(8)

23   because the Class of Interest Holders is deemed to have rejected the Fourth Amended Plan

24   pursuant to section 1126(g) of the Bankruptcy Code, and the Fourth Amended Plan satisfies the

25   / / /

26

27

28

requirements for cramming down on Interests set forth in section 1129(b)(2)(C).  Accordingly,

confirmation of the Fourth Amended Plan is appropriate in this case.

Dated:  August 5, 2010                                 **WINTHROP COUCHOT**
                                                       **PROFESSIONAL CORPORATION**


                                             By: _____
                                                     Robert E. Opera
                                                     Richard H. Golubow
                                             Counsel for the Official Committee of Unsecured
                                             Creditors

-28-

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **COMMITTEE'S AND DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION OF JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 5, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Via First Class Mail**

| | |
|---|---|
| MTI Technology Corporation<br>Attn:  Thomas P. Raimondi, Jr., Pres. & CEO<br>15641 Red Hill Avenue, Suite 200<br>Tustin, CA 92780 | United States Trustee<br>Attn:  Frank Cadigan<br>411 West Fourth Street, #904<br>Santa Ana, CA 92701-4593 |

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via E-Mail**
Michael R. Johnson  - Ray Quinney & Nebeker - MJohnson@rqn.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2010 | Susan Connor | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

-29-

**NEF SERVICE LIST**

- Robert C Briseno    rbriseno@swlaw.com
- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    rgolubow@winthropcouchon.com, pj@winthropcouchot.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna    lavignas@sec.gov
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@gmail.com
- Robert E Opera    pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Daniel C Silva    dsilva@gordonrees.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sharon.weiss@hro.com
- David L Wilson    dlwilson@winston.com

MAINDOCS-#149820-v5-MTI_BriefRe4thAmdPlan.DOC