Scott C. Clarkson, Esq. (CA Bar No. 143271)
Eve A. Marsella, Esq. (CA Bar No. 165797)
**Clarkson, Gore & Marsella, APLC**
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone: 310/542-0111
Facsimile: 310/214-7254
Email: sclarkson@lawcgm.com

Attorneys for MTI Technology Corporation
Debtor and Debtor-In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MTI TECHNOLOGY CORPORATION,<br>A Delaware corporation,<br><br>Debtor and Debtor in Possession | Case No. 8:07-bk-13347-ES<br><br>Chapter 11<br><br>Adv. No. 8:09-01267-ES<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING SETTLEMENT AGREEMENT BETWEEN MTI TECNOLOGY CORPORATION AND FUSIONSTORM, INC. AND OTHER DEFENDANTS; DECLARATION OF SCOTT POTERACKI IN SUPPORT THEREOF**<br><br>[NO HEARING REQUIRED -<br>Local Bankruptcy Rule 9013-1(o)] |

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that MTI Technology Corporation, the above-captioned debtor and debtor in possession ("MTI", the "Debtor" or the "Plaintiff"), hereby files with the Court its Motion for an Order Pursuant to Fed. R. Bankr. P. 9019 Approving the Settlement Agreement between the Debtor on one hand and FusionStorm, Inc.("FusionStorm") and thirteen (13) other defendants (collectively the "FusionStorm Defendants") on the other hand, in the pending adversary proceeding entitled *MTI Technology Corporation v., Fusionstorm, a Delaware corporation, John Varel, an individual, Daniel R. Serpico, an individual, Marc Franz, an individual, Christopher Butts, an individual, Richard Bocchinfuso, an individual, Matthew Dwyer,*

1  *an individual, Justin Griffin, an individual, Dimitris Krekoukias, an individual, Robert Linsky, an*
2  *individual, Robert Owen, an individual, Heeki Park, an individual, Greg Presininzi, an individual*
3  *and Thomas Tar, an individual*, as adversary number 8:09-01639-ES (the "Adversary
4  Proceeding") (the "Motion"). Both the Defendant and the FusionStorm Defendants are herein
5  collectively defined as the "Parties". Pursuant to Local Bankruptcy Rule 9013-1(o), the Debtor is
6  requesting that the Court approve the Motion without a hearing.
7      By this Motion, the Debtor requests the entry of an order pursuant to Federal Rule of
8  Bankruptcy Procedure 9019(a) approving the Settlement Agreement with FusionStorm Defendants
9  (the "Agreement"), a true and correct copy of which is attached hereto as **Exhibit "A"**.
10     Under the terms of the Agreement, as more fully set forth in Exhibit "A", FusionStorm will
11 pay the Debtor One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00). All of the
12 FusionStorm Defendants will withdraw any and all of their claims against the MTI estate. The
13 Agreement also contains full releases by and among all parties, and includes releases of claims of
14 and against the Official Committee of Unsecured Creditors, as to any and other pre- and post
15 petition claims.
16     The Parties have engaged in good faith negotiations concerning the resolution of the
17 Parties' claims. The Debtor urges the Court to approve the compromise memorialized in the
18 Agreement, pursuant to Federal Rule of Bankruptcy Procedure 9019(a), as fair and equitable to all
19 parties and in the best interests of the Debtor's estate and creditors. The Motion is based upon this
20 Motion, the attached Memorandum of Points and Authorities and supporting Declaration, the
21 Agreement, the Court's files in this Chapter 11 case and upon such other evidence as may be
22 presented to the Court.
23 ///
24 ///
25 ///
26 ///
27 ///
28

2

1       **PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(o)(1) requires that any response and request for hearing must be filed with the Court and served on the movant and the United States Trustee within 14 days after the date of service of the notice.

DATED: August 30, 2010

CLARKSON, GORE & MARSELLA, APLC

By: /s/ Scott C. Clarkson
   Scott C. Clarkson
   Eve A. Marsella
   Counsel for MTI Technology Corporation
   Debtor and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

This Motion is the culmination of approximately ten months of litigation between the Debtor and the FusionStorm Defendants. Pursuant to a one-day mediation between the Parties held in early August, 2010, the Debtor and the FusionStorm Defendants have resolved all of their differences.

**A.  Background**

On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES (the "Bankruptcy Case").

On or about October 14, 2009, the Plaintiff filed a complaint (the "Complaint") styled *MTI Technology Corporation v., Fusionstorm, a Delaware corporation ("FusionStorm"), John Varel, an individual, Daniel R. Serpico, an individual, Marc Franz, an individual, Christopher Butts, an individual, Richard Bocchinfuso, an individual, Matthew Dwyer, an individual, Justin Griffin, an individual, Dimitris Krekoukias, an individual, Robert Linsky, an individual, Robert Owen, an individual, Heeki Park, an individual, Greg Presininzi, an individual and Thomas Tar, an individual*, as adversary number 8:09-01639-ES (the "Adversary Proceeding"). The Complaint alleged, *inter alia*, that FusionStorm and its officers undertook unlawful and anti-competitive actions to obtain certain of MTI's operations in North America. The Complaint further alleged that Defendants recruited and solicited key revenue-generating employees of MTI, and those employees' support staff in California, New York, and New Jersey. MTI further alleged that the Defendants employed unfair and unlawful competitive tactics to intentionally and deliberately injure MTI's business. Finally, MTI alleged that certain of its former employees breached various non-disclosure agreements and misappropriated certain private and confidential business information, delivering same to FusionStorm.

On or about December 11, 2009, the Defendants filed their Motion to Dismiss, and MTI filed its First Amended Complaint. On or about April 15, 2010, the Defendants filed their Motion

4

to Dismiss the First Amended Complaint. On or about July 27, 2010, the Plaintiff and Defendants stipulated to the Withdrawal of Reference of the First Amended Complaint, and on or about August 5, 2010, the United States District Court for the Central District of California, approved the Stipulation to the Withdrawal of Reference from the United States Bankruptcy Court and assumed jurisdiction of the Adversary Proceeding as USDC Case No. SA 10CV1147DDP.

On August 7, 2010, the Parties engaged in a mediation in the City of New York, State of New York. Through that mediation, the Parties have reached a compromise and settlement involving all matters regarding the Complaint, the First Amended Complaint and all other related matters. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendants have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all disputes between the Parties.

**B.    The Agreement**

Attached hereto as Exhibit "A" is a true and correct copy of the Settlement Agreement (the "Agreement") entered into between the Debtor and the FusionStorm Defendants. A summary of the terms of the Agreement follow; however, the terms and conditions of the actual Agreement shall control all aspects of the settlement:

1.    <u>Bankruptcy Court Approval.</u> The Agreement is contingent upon entry of a final, non-appealable order of the Bankruptcy Court approving the Agreement ("Order").

2.    <u>Settlement Payment.</u> The sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) (the "Settlement Amount") shall be paid to the Debtor by FusionStorm. Two Hundred Fifty Thousand Dollars ($250,000.00) of the Settlement Amount (the "Initial Settlement Payment") shall become due and payable within five (5) days after the execution of this Settlement Agreement by FusionStorm. That sum shall be wire transferred within that five (5) day time period to the *Clarkson, Gore & Marsella a Professional Law Corporation Trustee for MTI Technology Corporation Client Trust Account* (the "CGM MTI Client Trust Account"), and held in trust by the Plaintiff's counsel until an order is entered, and becomes final and non-appealable, approving the Settlement Agreement . The remaining due One Million Dollars ($1,000,000.00) of the Settlement Amount shall be paid to MTI Technology Corporation (or its

successor) in One Hundred Thousand Dollar ($100,000.00) increments on a monthly basis, for ten (10) consecutive months beginning on the first business day of the month after the entered order approving the Settlement Agreement is approved by the Bankruptcy Court.

3. <u>Claims of Defendants in Bankruptcy Proceeding.</u> Any and all claims asserted, or asserted n the future by the FusionStorm Defendants against MTI Technology Corporation shall be disallowed in their entirety. The FusionStorm Defendants further agree to waive any and all other claims, proofs of claim, scheduled claims or administrative claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendants might have against the Debtor, including but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

4. <u>Stipulation to Judgment to be Provided and Held in Favor of the Plaintiff against Defendants in Instance of Default.</u> Contemporaneously with execution of the Settlement Agreement by the Defendants, a Stipulated Judgment in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) (the "Stipulated Judgment") shall be executed and delivered by the Defendants in favor of MTI Technology Corporation. The Stipulated Judgment shall jointly and severally obligate each of the Defendants to the Settlement Amount, and shall be held, and not filed by the Plaintiff unless an event of default, defined below, shall occur. Proper credits on the Stipulated Judgment shall be afforded to the Defendants based on all payments received by the Plaintiff, and further off-set by any amounts required to be returned by the Plaintiff, or successor of the Plaintiff, on account of any and all recovery proceedings, whether inside or outside of a bankruptcy proceeding of FusionStorm or any other Defendant, based on any and all received payments to the Debtor of the Settlement Amount. No interest shall accrue on the Stipulated Judgment until and unless it has been filed. If the Stipulated Judgment is filed, Plaintiff and Defendants agree that post-judgment interest on the Stipulated Judgment shall only begin accruing as of the date of the filing of the Stipulated Judgment, and shall be based upon post-judgment interest as provided by the California Code of Civil Procedure sections 685.010 through 685.030.

5. <u>Event of Default and Filing the Stipulated Judgment.</u> The Stipulated Judgment shall only be filed upon the occasion of non-payment by FusionStorm of (i) the Initial Payment; (ii) any of the ten $100,000.00 consecutive payments due pursuant to the terms of the Settlement Agreement; or (iii) the receipt by the Plaintiff or its successor in interest of any request for return of payment or payments, or the filing of any litigation or other action for the recovery of any payment or payments, made by or on behalf of any of the Defendants pursuant to the Settlement Agreement. The Plaintiff and Defendants, and each of them, agree that the filing of the Stipulated Judgment in the event of default shall not constitute an act or action in violation of 11 U.S.C. § 362(a) against any estate, a debtor or debtor in possession, or a trustee appointed under Title 11, United States Code (the "Bankruptcy Code"), but is only intended to be directed against non-debtor Defendants. To be perfectly clear, the filing of the Stipulated Judgment after the filing of a petition under Title 11, United States Code by or against any Defendant herein shall have no effect on any such estate, debtor, debtor in possession or trustee appointed under Title 11, United States Code, but shall only be effective as to any non-debtor Defendant party.

6. <u>Dismissal of Adversary Proceeding.</u> The Parties shall seek a stay of all actions within the Adversary Proceeding within thirty (30) days of the execution of this Settlement Agreement. Within thirty (30) days after receipt of the Final Settlement Amount, the Plaintiff shall prepare and file an appropriate stipulation for execution by the Defendant to dismiss the Adversary Proceeding. However, Plaintiff reserves its right to reopen the Adversary Proceeding, and Defendants agree to support, and not oppose, the reopening of the Adversary Proceeding to file the Stipulated Judgment in the event of a default as set out in subpart (iii) of Section 8 of this Settlement Agreement.

7. <u>Mutual Releases of all other claims by The Debtor, the Estate, the FusionStorm Defendants and the Creditors Committee.</u> Except for claims and causes of action arising out of or related to a breach of the Agreement, the Debtor, the FusionStorm Defendants and the Committee shall release all claims among each other.

8. <u>Attorneys' Fees.</u> Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, and all

matters referred to in the Agreement. In the event that it should become necessary to bring any action or proceeding to enforce the Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs from the other party.

## II.

## ARGUMENT

## THE COURT SHOULD APPROVE THE COMPROMISE

### A. The Legal Standard For Approving A Compromise Of Controversy

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states as follows with respect to motions brought by trustees to approve settlements:

> On motion by the trustee and after a hearing on notice to creditors, the United States Trustee, the debtor and indentured trustees as provided in Rule 2002 and as such other entities as the court may designate, the court may approve a compromise or settlement.

Fed. R. Bankr. P. 9019(a).

As this Court is aware, compromise is favored over continued litigation. See In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854, 107 S. Ct. 189 (1986); In re Blair, 538 F.2d 849, 851 (9th Cir. 1976). Generally, a compromise should be approved if it is "fair and equitable" and in "the best interests of the estate". In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re Schmidtt, 215 B.R. 417, 424 (9th Cir. BAP 1997); St. Paul Fire & Marine Insurance Co. v. Vaughn, 779 F.2d 1003, 1010 (4th Cir. 1985); In re Continental Investment Corp., 637 F.2d 8, 11 (1st Cir. 1980). Whether a compromise will benefit or harm the debtor is immaterial.

Specifically, in evaluating whether to approve a compromise, courts in the Ninth Circuit must consider the following:

(a) The probability of success in litigation;

(b) The difficulties, if any, to be encountered in the matter of collection;

(c) The complexity of the litigation involved and the expense; inconvenience and delay necessarily attending it; and

8

    (d)  The paramount interest of the creditors and a proper deference to their reasonable views.

A&C Properties, 784 F.2d at 1381.

  In considering these factors, courts are guided by two principles. First, as noted earlier, "the law favors compromise". Blair, 538 F.2d at 851. Compromises are favored in bankruptcy, and have become "a normal part of the process of reorganization". Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968), quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939). Second, a compromise should be approved unless it "fall[s] below the lowest point in the range of reasonableness". In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S. Ct. 88 (1985). As the court in W.T. Grant aptly commented:

> [The] responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement 'fall[s]' below the lowest point in the range of reasonableness. . .

Id., at 608.

  The compromise approval process does not contemplate that a bankruptcy court will substitute its business judgment for that of a chapter 7 trustee. To the contrary, a settlement which has been negotiated by a trustee, as representative of the estate, is entitled to deference. See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) (objecting creditors may not substitute their judgment for that of the trustee). Trustees are generally and properly given broad discretion in deciding how to perform the myriad of duties imposed upon them by the Bankruptcy Code, including the discretion to negotiate settlements and compromises of disputes. In re Marples, 266 B.R. 202 (Bankr. D. Idaho 2001). Moreover, when considering these factors, the court need only canvass the issues, "a mini trial on the merits is not required". Schmidtt, 215 B.R. at 423.

  In this instance, there are a variety of reasons why the Court should approve the settlement reached by the Debtor and the FusionStorm Defendants. As the Debtor will demonstrate, the application of the A&C Properties test to this settlement requires a finding that the compromises be approved, even over the objections of disappointed or upset parties.

Case 8:07-bk-13347-ES   Doc 1280   Filed 08/30/10   Entered 08/30/10 16:58:58   Desc
Main Document     Page 10 of 20

For the following reasons, the Debtor submits that the settlement is in the best interests of the estate, and satisfies the criteria established by the Ninth Circuit in <u>A&C Properties</u>.

### 1. The Probability of Success in Litigation

In reaching the settlement, the Debtor was forced to consider the probability of success in prosecuting its actions against the FusionStorm Defendants.

The Complaint alleged, *inter alia*, that FusionStorm and its officers undertook unlawful and anti-competitive actions to obtain certain of MTI's operations in North America. The Complaint further alleged that Defendants recruited and solicited key revenue-generating employees of MTI, and those employees' support staff in California, New York, and New Jersey. MTI further alleged that the Defendants employed unfair and unlawful competitive tactics to intentionally and deliberately injure MTI's business. Finally, MTI alleged that certain of its former employees breached various non-disclosure agreements and misappropriated certain private and confidential business information, delivering same to FusionStorm.

The FusionStorm Defendants dispute the various contentions made in the Complaint.

Based on the evidence at hand, the Debtor was confident that it could establish the elements necessary to obtain a significant judgment against the FusionStorm Defendants. Indeed, in a similar, but not the same, circumstance between FusionStorm and another company, a significant jury verdict in low 8 figures was recently awarded against FusionStorm. However, the Debtor was also mindful of certain agreements that the Debtor and FusionStorm entered into with respect to the fact that certain former employees of the Debtor had solicited job offers, and at least in one occasion, accepted a job offer, from FusionStorm. The Debtor was also mindful of the difficult and somewhat mixed history of California state court enforcement of confidentiality and non-compete employee contracts.

In satisfying this first element of the four-part <u>A&C Properties</u> test, the burden is not on a debtor in possession to conclusively establish that a defendant would be successful at a trial on the issues raised in an action, as that would defeat the purpose of settlement and would eliminate any cost savings from the settlement. Rather, all that a debtor in possession is required to demonstrate is that, to the reasonable satisfaction of the court, all things being considered, it is prudent to

eliminate the risks of litigation to achieve specific certainty, though it might be considerably less, or more, than were the case fought to the bitter end. See In re Aloha Racing Foundation, Inc., 257 B.R. 83 (Bankr. N.D. Ala. 2000).

In light of the fact that the Debtor will receive an immediate payment of $250,000 from FusionStorm, and another One Million Dollars ($1,000,000.00) in ten consecutive monthly payments from FusionStorm after approval of the Settlement Agreement, that the FusionStorm Defendants will withdraw and waive any of their claims (of uncertain value at this time) it cannot be said that the Debtor has not acted in the best interests of the estate. This settlement will benefit the estate and its creditors and will end a hotly disputed matter.

### 2.    The Difficulties, if any, to be Encountered in the Matter of Collection

Collection of a judgment is a very relevant issue in these circumstances. FusionStorm is a company with over $60,000,000 in debt to secured creditors, it is facing execution of a recent judgment against it of over $10,000,000, and according to its recent balance sheets examined by the Debtor prior to entering into the Settlement Agreement, was facing serious financial problems with respect to its general business operations. This is one of the more significant factors which leads the Debtor to encourage settlement and voluntary payment. In as much as a judgment obtained by the Debtor would be junior to the significant amounts of secured debt and at least one judgment of over $10,000,000, the difficulty in collecting any judgment would be enormous.

Of concern to the Debtor was the $100,000.00 monthly payments required under the Settlement Agreement. However, the cash flow situation of FusionStorm was explained in detail to the Debtor, and it was made clear to the Debtor that a shorter payment period could not be negotiated without fear of a complete walk-away from the negotiations by FusionStorm. Since the $1,250,000.00 judgment is against all of the individual defendants, as well, the Debtor believes that FusionStorm, which is controlled by two of the individual Defendants, Mr. Varel, the majority owner, and Mr. Serpico, the CFO of FusionStorm, will make every effort to satisfy the payment plan on time.

///

### 3. The Complexity of the Litigation and the Expense, Inconvenience and Delay Necessarily Attending It

The rationale behind public policy favoring pre-trial settlements is that litigation, depending upon its complexity, can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. In a bankruptcy context, such litigation costs can be particularly burdensome on the bankruptcy estate given the financial instability of the estate. See In re Grau, 267 B.R. 896 (Bankr. S.D. Fla. 2001).

Within the MTI – FusionStorm controversy there were complex anti-competition tort issues, employment contract breach issues, and fourteen (14) defendants to prove cases against, which would only be resolved by a significant trial before the United States District Court. All of these issues would have been tried before a jury in District Court.

This Adversary Proceeding has been pending on the Court's docket since August, 2009. During this time, administrative legal fees and costs of over one hundred thousand dollars ($100,000.00) have continued to accrue, with no certainty that at the end of the day that the judgment could be won, and if so, could be collected. As a result, the Debtor's decision to settle with the FusionStorm Defendants to resolve these complicated matters will benefit the estate and creditors alike.

### 4. The Paramount Interest of Creditors

The paramount interest of creditors which a bankruptcy court must consider in deciding whether to approve a proposed compromise generally reflects not only the desire of creditors to obtain the maximum possible recovery, but also their competing desire that the recovery should occur in the least amount of time and cost possible. See Marples, supra. Here, the estate was not in the position to further fund lengthy and difficult litigation and still assure that all priority unsecured creditors would receive 100% of their claims, of that the unsecured creditors would receive anything. Further, this swift result increases the return to general unsecured creditors by an additional 30% or more. This settlement clearly inures to the benefit of the Debtor's creditors.

### III.

## CONCLUSION

The Agreement presents fair and equitable compromises in the best interests of the Debtor's estate. Thus, the Debtor respectfully requests that the Court enter an order approving the Agreement under Federal Rule of Bankruptcy Procedure 9019(a).

DATED: August 30, 2010

CLARKSON, GORE & MARSELLA, APLC

By: /s/ Scott C. Clarkson
Scott C. Clarkson
Eve A. Marsella
Counsel for MTI Technology Corporation
Debtor and Debtor in Possession

## DECLARATION OF SCOTT POTERACKI

I, Scott Poteracki, declare:

1.  I am the Chief Reorganization Officer of MTI Technology Corporation, Debtor and Debtor in Possession ("MTI", the "Debtor" or the "Defendant") herein. I have either personal knowledge of the following facts or have gained such knowledge from my review of the Debtor's books and records, which are created, obtained and maintained in the ordinary course of business. If called as a witness, I would and could testify completely thereto.

2.  I submit this declaration in support of the motion for an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving the Settlement Agreement with FusionStorm and related defendants in the pending adversary proceeding entitled *MTI Technology Corporation v., Fusionstorm, a Delaware corporation ("FusionStorm"), John Varel, an individual, Daniel R. Serpico, an individual, Marc Franz, an individual, Christopher Butts, an individual, Richard Bocchinfuso, an individual, Matthew Dwyer, an individual, Justin Griffin, an individual, Dimitris Krekoukias, an individual, Robert Linsky, an individual, Robert Owen, an individual, Heeki Park, an individual, Greg Presininzi, an individual and Thomas Tar, an individual*, as adversary number 8:09-01639-ES (the "Adversary Proceeding").

3.  On or about October 15, 2007, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), styled *In re MTI Technology Corporation*, Case No. 8:07-13347-ES (the "Bankruptcy Case").

4.  On or about October 14, 2009, the Plaintiff filed a complaint (the "Complaint"), styled *MTI Technology Corporation v., Fusionstorm, a Delaware corporation ("FusionStorm"), John Varel, an individual, Daniel R. Serpico, an individual, Marc Franz, an individual, Christopher Butts, an individual, Richard Bocchinfuso, an individual, Matthew Dwyer, an individual, Justin Griffin, an individual, Dimitris Krekoukias, an individual, Robert Linsky, an individual, Robert Owen, an individual, Heeki Park, an individual, Greg Presininzi, an individual and Thomas Tar, an individual*, as adversary number 8:09-01639-ES (the "Adversary Proceeding").

14

5.      The Complaint alleged, *inter alia*, that FusionStorm and its officers undertook unlawful and anti-competitive actions to obtain certain of MTI's operations in North America. The Complaint further alleged that Defendants recruited and solicited key revenue-generating employees of MTI, and those employees' support staff in California, New York, and New Jersey. MTI further alleged that the Defendants employed unfair and unlawful competitive tactics to intentionally and deliberately injure MTI's business. Finally, MTI alleged that certain of its former employees breached various non-disclosure agreements and misappropriated certain private and confidential business information, delivering same to FusionStorm.

6.      On or about December 11, 2009, the Defendants filed their Motion to Dismiss, and MTI filed its First Amended Complaint. On or about April 15, 2010, the Defendants filed their Motion to Dismiss the First Amended Complaint. On or about July 27, 2010, the Plaintiff and Defendants stipulated to the Withdrawal of Reference of the First Amended Complaint, and on or about August 5, 2010, the United States District Court for the Central District of California, approved the Stipulation to the Withdrawal of Reference from the United States Bankruptcy Court and assumed jurisdiction of the Adversary Proceeding as USDC Case No. SA 10CV1147DDP.

7.      On August 7, 2010, the Parties engaged in mediation in the City of New York, State of New York. Through that mediation, the Parties have reached a compromise and settlement involving all matters regarding the Complaint, the First Amended Complaint and all other related matters. To avoid further expense and delay, and the uncertainty inherent in litigation, the Plaintiff and the Defendants have agreed to the following settlement, subject to the approval of the Bankruptcy Court, to resolve all disputes between the Parties.

8.      Attached hereto as Exhibit "A" is a true and correct copy of the Settlement Agreement (the "Agreement") entered into between the Debtor and the FusionStorm Defendants. A summary of the terms of the Agreement follow; however, the terms and conditions of the actual Agreement shall control all aspects of the settlement:

a.      <u>Bankruptcy Court Approval.</u> The Agreement is contingent upon entry of a final, non-appealable order of the Bankruptcy Court approving the Agreement ("Order").

b.  <u>Settlement Payment.</u>  The sum of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) (the "Settlement Amount") shall be paid to the Debtor by FusionStorm. $250,000.00 of the Settlement Amount (the "Initial Settlement Payment") shall become due and payable within five (5) days after the execution of this Settlement Agreement by FusionStorm. That sum shall be wire transferred within that five (5) day time period to the *Clarkson, Gore & Marsella a Professional Law Corporation Trustee for MTI Technology Corporation Client Trust Account* (the "CGM MTI Client Trust Account"), and held in trust by the Plaintiff's counsel until an order is entered, and becomes final and non-appealable, approving the Settlement Agreement. The remaining unpaid One Million Dollars ($1,000,000.00) of the Settlement Amount shall be paid to MTI Technology Corporation (or its successor) in One Hundred Thousand Dollar ($100,000.00) increments on a monthly basis, for ten (10) consecutive months beginning on the first business day of the month after the entered order approving the Settlement Agreement is approved by the Bankruptcy Court.

c.  <u>Claims of Defendants in Bankruptcy Proceeding</u>.  Any and all claims asserted, or asserted in the future by the FusionStorm Defendants against MTI Technology Corporation shall be disallowed in their entirety. The FusionStorm Defendants further agree to waive any and all other claims, proofs of claim, scheduled claims or administrative claims, whether afforded administrative, secured, priority, non-priority or general unsecured status, which the Defendants might have against the Debtor, including but not limited to any right under Bankruptcy Code Section 502(h) and Federal Rule of Bankruptcy Procedure 3002(c)(3) to file a proof of claim for the Settlement Amount.

d.  <u>Stipulation to Judgment to be Provided and Held in Favor of the Plaintiff against Defendants in Instance of Default.</u>  Contemporaneously with execution of the Settlement Agreement by the Defendants, a Stipulated Judgment in the amount of One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) (the "Stipulated Judgment") shall be executed and delivered by the Defendants in favor of MTI Technology Corporation. The Stipulated Judgment shall jointly and severally obligate each of the Defendants to the Settlement Amount, and shall be held, and not filed by the Plaintiff unless an event of default, defined below, shall occur. Proper

credits on the Stipulated Judgment shall be afforded to the Defendants based on all payments received by the Plaintiff, and further off-set by any amounts required to be returned by the Plaintiff, or successor of the Plaintiff, on account of any and all recovery proceedings, whether inside or outside of a bankruptcy proceeding of FusionStorm or any other Defendant, based on any and all received payments to the Debtor of the Settlement Amount. No interest shall accrue on the Stipulated Judgment until and unless it has been filed.  If the Stipulated Judgment is filed, Plaintiff and Defendants agree that post-judgment interest on the Stipulated Judgment shall only begin accruing as of the date of the filing of the Stipulated Judgment, and shall be based upon post-judgment interest as provided by the California Code of Civil Procedure sections 685.010 through 685.030.

  e. <u>Event of Default and Filing the Stipulated Judgment.</u> The Stipulated Judgment shall only be filed upon the occasion of non-payment by FusionStorm of (i) the Initial Payment; (ii) any of the ten $100,000.00 consecutive payments due pursuant to the terms of the Settlement Agreement; or (iii) the receipt by the Plaintiff or its successor in interest of any request for return of payment or payments, or the filing of any litigation or other action for the recovery of any payment or payments, made by or on behalf of any of the Defendants pursuant to the Settlement Agreement.  The Plaintiff and Defendants, and each of them, agree that the filing of the Stipulated Judgment in the event of default shall not constitute an act or action in violation of 11 U.S.C. § 362(a) against any estate, a debtor or debtor in possession, or a trustee appointed under Title 11, United States Code (the "Bankruptcy Code"), but is only intended to be directed against non-debtor Defendants. To be perfectly clear, the filing of the Stipulated Judgment after the filing of a petition under Title 11, United States Code by or against any Defendant herein shall have no effect on any such estate, debtor, debtor in possession or trustee appointed under Title 11, United States Code, but shall only be effective as to any non-debtor Defendant party.

  f. <u>Dismissal of Adversary Proceeding</u>. The Parties shall seek a stay of all actions within the Adversary Proceeding within thirty (30) days of the execution of this Settlement Agreement.  Within thirty (30) days after receipt of the Final Settlement Amount, the Plaintiff shall prepare and file an appropriate stipulation for execution by the Defendant to dismiss the

Adversary Proceeding. However, Plaintiff reserves its right to reopen the Adversary Proceeding, and Defendants agree to support, and not oppose, the reopening of the Adversary Proceeding to file the Stipulated Judgment in the event of a default as set out in subpart (iii) of Section 8 of this Settlement Agreement.

      g.    <u>Mutual Releases of all other claims by The Debtor, the Estate, the FusionStorm Defendants and the Creditors Committee.</u> Except for claims and causes of action arising out of or related to a breach of the Agreement, the Debtor, the FusionStorm Defendants and the Committee shall release all claims among each other.

      h.    <u>Attorneys' Fees.</u> Each party shall be responsible for the payment of its own legal fees and costs, and all of its expenses, in connection with the Adversary Proceeding, and all matters referred to in the Agreement. In the event that it should become necessary to bring any action or proceeding to enforce the Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs from the other party.

      9.    Based upon the exercise of its business judgment, the Debtor has determined that approval of the Agreement is in the best interests of the Debtor's estate because it will avoid the cost of litigating a recovery action and claim objection, the best result for which is what is obtained in the attached Agreement.

      10.    In reaching the settlement, the Debtor was forced to consider the probability of success in prosecuting its actions against the FusionStorm Defendants. MTI's Complaint alleged, *inter alia*, that FusionStorm and its officers undertook unlawful and anti-competitive actions to obtain certain of MTI's operations in North America. The Complaint further alleged that Defendants recruited and solicited key revenue-generating employees of MTI, and those employees' support staff in California, New York, and New Jersey. MTI further alleged that the Defendants employed unfair and unlawful competitive tactics to intentionally and deliberately injure MTI's business. Finally, MTI alleged that certain of its former employees breached various non-disclosure agreements and misappropriated certain private and confidential business information, delivering same to FusionStorm.

11. The Defendants disputed the various contentions made in the Complaint. Based on the evidence at hand, the Debtor was confident that it could establish the elements necessary to obtain a significant judgment against the FusionStorm Defendants. Indeed, in a similar, but not the same, circumstance between FusionStorm and another company, a significant jury verdict in low 8 figures was recently awarded against FusionStorm. However, the Debtor was also mindful of certain agreements that the Debtor and FusionStorm entered into with respect to the fact that certain former employees of the Debtor had solicited job offers, and at least in one occasion, accepted a job offer, from FusionStorm. The Debtor was also mindful of the difficult and somewhat mixed history of California state court enforcement of confidentiality and non-compete employee contracts.

12. In light of the fact that the Debtor will receive an immediate payment of $250,000.00 from FusionStorm, as well as One Million Dollars ($1,000,000.00) over the next ten (10) months, that the FusionStorm Defendants will withdraw and waive any and all of their claims against the estate, and that the Debtor will end expensive litigation, by settling this litigation the Debtor has acted in the best interests of the estate. This settlement will benefit the estate and its creditors and will provide an estimated increase of dividend to the general unsecured creditors of over 30% from what they are expected to receive prior to this settlement.

13. Within the MTI – FusionStorm controversy there were complex anti-competition tort issues, employment contract breach issues, and fourteen(14) defendants to prove cases against, that would only be resolved by a significant trial before the United States District Court.

14. This Adversary Proceeding has been pending on the Court's docket since October, 2009. During this time, administrative legal fees and costs of over one hundred thousand dollars have continued to accrue, with no certainty that at the end of the day that the judgment could be won, and if so, could be collected. As a result, the Debtor's decision to settle with the FusionStorm Defendants to resolve these complicated matters will benefit the estate and creditors alike.

15. Of concern to the Debtor was the $100,000.00 monthly payments required under the Settlement Agreement. However, the cash flow situation of FusionStorm was explained in

1 detail to the Debtor, and it was made clear to the Debtor that a shorter payment period could not be
2 negotiated without fear of a complete walk-away from the negotiations by FusionStorm. Since the
3 $1,250,000.00 judgment is against all of the individual defendants, as well, the Debtor believes
4 that FusionStorm, which is controlled by two of the individual Defendants, Mr. Varel, the majority
5 owner, and Mr. Serpico, the CFO of FusionStorm, will make every effort to satisfy the payment
6 plan on time.

7     I declare under penalty of perjury under the laws of the United States of America that the
8 foregoing is true and correct and that this Declaration is executed on August 30, 2010, at Tustin,
9 California.

_____
Scott Poteracki