BARRY R. GORE, ESQ. SBN 143278
CHRISTINE M. FITZGERALD, ESQ. SBN 259014
SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone:  (310) 542-0111
Facsimile:  (310) 214-7254

Special Counsel to Corporate Recovery Associates,
Solely in its capacity as Plan Agent

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>MTI TECHNOLOGY CORPORATION, a Delaware corporation,<br><br>Reorganized Debtor. | Case No.  8:07-bk-13347-ES<br><br>Chapter 11<br><br>**FIRST POST-EFFECTIVE DATE STATUS REPORT PURSUANT TO DEBTOR'S AND COMMITTEE'S JOINT FOURTH AMENDED CHAPTER 11 PLAN**<br><br>Status Conference:<br>Date:  February 17, 2011<br>Time:  10:30 a.m.<br>Ctrm:  5A<br>            411 West Fourth Street<br>            Santa Ana, CA |

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE POST-EFFECTIVE DATE COMMITTEE, THE REORGANIZED DEBTOR, CANOPY GROUP, INC., AND ANY OTHER PARTIES IN INTEREST:**

On February 17, 2011, at 10:30 a.m., or as soon thereafter as the matter may be heard, a status conference will be held before the Honorable Erithe A. Smith pursuant to the Court's "Order Confirming Joint Fourth Amended Chapter 11 Plan" [Docket No. 1285] ("Confirmation Order"), which this Court entered on September 1, 2010 and which confirmed the "Debtor's and Committee's Joint Fourth Amended Chapter 11 Plan" [Docket No. 1265] (the "Plan").[1] Pursuant to the Confirmation Order, attached hereto is the first post-confirmation status report of Corporate Recovery Associates in its capacity as Plan Agent.

Dated: February 3, 2011

SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation

By: _____
Barry R. Gore
Christine M. Fitzgerald
Special Counsel to Corporate Recovery Associates,
Solely in its capacity as Plan Agent

---

[1] All terms that are not defined herein have the meaning ascribed to them in the Plan.

Pursuant to the Confirmation Order, Corporate Recovery Associates in its capacity as Plan Agent under the Plan hereby submits this "First Post-Effective Date Status Report Pursuant To Debtor's And Committee's Joint Fourth Amended Chapter 11 Plan" ("Status Report"). This Status Report describes recent material developments since confirmation of the Plan on September 1, 2010.

### A.    Brief Description of the Plan, the Reorganized Debtor and the Plan Agent.

The Effective Date of the Plan was September 27, 2010, at which time (i) the assets of MTI Technology Corporation ("MTI" or "Debtor") as debtor and debtor-in-possession in this case were transferred to MTI Technology Corporation as the Reorganized Debtor, (ii) the Plan Agent was appointed as the representative of the Reorganized Debtor, and (iii) distributions to creditors were commenced under the terms of the Plan.

The Plan provided for the distributions from the Estate to certain holders of claims and interests in satisfaction of their claims and interests, which distributions were, or will be, made on or following the Effective Date in accordance with the terms of the Plan. In particular, undisputed priority claims have been paid,[2] and the appeal period for final fee applications of professionals has recently passed and those allowed professional fee claims were paid. Unsecured claims are under review, as discussed in detail below.

On the Effective Date, the Plan Agent was appointed, and the Plan Agent has the rights, powers and duties provided for by the Plan and the Confirmation Order. In accordance with the provisions of Section 6.6.2 of the Plan, on the Effective Date, and subject to Canopy's rights under the Canopy Agreement, the Assets were transferred to and vested in, the Reorganized Debtor, to be administered by the Plan Agent. The Plan Agent, under the supervision of the Post-Effective Date Committee, may administer, manage, use, convey, transfer, encumber, assign and otherwise dispose of any and all of the Plan Assets and take all acts appropriate to

---

[2] Most employee wage claims were paid prior to confirmation of the Plan. Two claimants that asserted priority claims advised the Plan Agent that their checks were sent to incorrect addresses; the Plan Agent has put a stop on those checks and anticipates re-issuing checks to those claimants shortly.

effectuate the same, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor does not operate any business and is winding up its affairs pursuant to the Plan.

Since the Effective Date of the Plan, the Plan Agent has worked diligently to address all of the outstanding issues in this case, to seek additional recoveries for creditors, including analysis of potentially valuable intangible assets and potential claims against third parties, to analyze and resolve claims against the Reorganized Debtor, and to carry out its other duties under the Plan as described below.

The Plan Agent has sought to maximize the assets of the Reorganized Debtor, to resolve litigation in which the Reorganized Debtor is or was a party, to address regulatory requirements for the Reorganized Debtor, to review, analyze and where appropriate object to claims so as to ascertain the aggregate amount of allowed claims against the Reorganized Debtor, and ensure that the Reorganized Debtor meets its other obligations, including but not limited to filing tax returns.

**B.    Assets of the Reorganized Debtor.**

The Plan Agent is presently holding $1,360,301.66 cash on hand. In addition thereto, the Plan Agent has been pursuing other assets of potential value to the Debtor's Estate. In this regard, the Plan Agent has continued on with efforts pursued by Pre-effective Date Committee and the Debtor to investigate the possibility of finding a reverse merger partner interested in merging with the Reorganized Debtor in as a means of generating additional assets for Creditors of the Debtor's Estate.

The Plan Agent has also investigated the potential value of certain intangible assets of the Reorganized Debtor and has contacted potential intermediaries or buyers of such assets on the grounds that a sale of such assets may result in additional monies to be distributed to Creditors of the Debtor's Estate.

In reviewing the books and records of the Reorganized Debtor, the Plan Agent has determined that the Reorganized Debtor holds approximately $900,000 in previously abandoned

accounts receivable that may be collectible. The Plan Agent has engaged a collections firm to seek to pursue collection of these outstanding accounts receivable.

In reviewing certain payments made to State of California by the Debtor, the Plan Agent has discovered that approximately $50,000 escheated to the State but is recoverable by the Reorganized Debtor. The Plan Agent is taking steps to recover those funds and is further investigating whether a similar situation is present with funds held by other states.

### C. Litigation in which the Reorganized Debtor is or was a Party

Through the efforts of the Debtor, the Pre-Effective Date Committee and the Plan Agent, several adversary proceedings were consensually resolved, which resulted in the Debtor's receipt of in excess of more than $3,000,000 in settlement proceeds and an aggregate reduction of alleged creditor claims of approximately $7.7 million. In addition thereto, the Plan Agent has sought to consensually resolve the litigation in which the Reorganized Debtor was or is a party. A summary of each of the significant matters, which have been resolved or which the Plan Agent expects to resolve soon, are described below.

**1. Pencom Systems Incorporated ("Pencom") and MTI's Former Officers and Directors**

The Plan Agent has participated in negotiating a settlement of litigation with Pencom and certain other parties that would resolve claims related to MTI's purchase of a company known as Collective and certain proofs of claim asserted against MTI. MTI purchased Collective for approximately $9,000,000 about a year prior to the Petition Date. Edward C. Ateyeh, Jr. ("Taylor") was a principal of Collective, and after the Petition Date, Taylor negotiated a sale of essentially those same assets to a new company called The Collective Group, LLC ("Collective Group") for approximately $100,000.

Prior to the Effective Date, the Pre-Effective Date Committee filed an adversary proceeding against Pencom, Taylor, Edgar Saadi, and Wade Saadi (the "Taylor Litigation"). By the Taylor Litigation, the Pre-Effective Date Committee asserted, among others, the following causes of action: avoidance and recovery of preferential transfers (all defendants); avoidance

1 and recovery of fraudulent transfers (all defendants); disallowance of claims (all defendants);
2 misrepresentation (Taylor); breach of fiduciary duty (Taylor); tortious interference (Taylor); and
3 usury (Pencom). The Pre-Effective Date Committee also made certain claims against William J.
4 Kerley ("Kerley") and Nick Ganio ("Ganio"), who are former officers of the Debtor, in an
5 adversary proceeding, which was later dismissed.

6     Taylor, Kerley and Ganio, who are former officers of the Debtor, made a claim for
7 coverage under Directors' and Officers' and Corporate Liability Insurance, which was issued by
8 Carolina Casualty to the Debtor.

9     The Plan Agent anticipates that a global resolution of the Taylor litigation will soon be
10 reached, subject to Court approval, whereby settlement will result in a combination of cash
11 settlement proceeds paid to the Debtor's Estate and waiver of claims asserted against the
12 Debtor's Estate.

13 **2. Morrison & Foerster LLP ("Morrison")**

14     Morrison was counsel to the Debtor prior to the Petition Date. Morrison filed a general
15 unsecured claim against the Debtor for $121,489.85 ("Morrison Claim"). The Pre-Effective
16 Date Committee filed a complaint seeking to avoid and recover certain alleged preferential
17 payments made to Morrison. The Pre-Effective Date Committee and later the Plan Agent and
18 post-Effective Date Committee negotiated with Morrison, and in December 2010, the Plan Agent
19 and Morrison entered into a settlement agreement, that will result in Morrison paying the
20 Reorganized Debtor $150,000, waiving any right it may have to file a proof of claim for that
21 amount under Section 502(h), and waiving fifty percent (50%) of the Morrison Claim,. A
22 motion approving the settlement with Morrison has been filed, no objections have been received
23 and it is an anticipated that a Court Order approving the agreement will soon be entered.

24 **3. Fusionstorm, a Delaware corporation ("Fusionstorm")**

25     The Debtor filed an adversary proceeding against Fusionstorm, certain of its officers and
26 employees, and certain former officers and employees of MTI ("Fusionstorm Defendants"), who
27 were hired by Fusionstorm. In that proceeding, the Debtor asserted numerous claims against the
28

FIRST POST-EFFECTIVE DATE STATUS REPORT

Defendants, including breaches of contract, breaches of fiduciary duties and duties of loyalty, unfair competition, and violation of the California Uniform Trade Secrets Act, and the Debtor sought to disallow the claims filed by each of the Fusionstorm Defendants. Prior to the Effective Date, the Debtor entered into a settlement agreement with the Fusionstorm Defendants and filed a motion to approve the settlement. Under the terms of that agreement, Fusionstorm agreed to pay the Reorganized Debtor One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00), and all of the Fusionstorm Defendants agreed to withdraw their claims, which totaled $173,610.04, against the Debtor's Estate. The Court entered an order approving that settlement agreement on November 17, 2010. The Fusionstorm Defendants have commenced making monthly settlement payments. As of January 31, 2011 aggregate payments of $550,000 have been made on account of this settlement, and are scheduled to continue in regular monthly payments of $100,000 per month until the obligation is retired.

### 4. Needham & Company, LLC ("Needham")

Needham and the Plan Agent are in the process of negotiating a settlement of Needham's prepetition claim against MTI. Needham was MTI's financial advisor prior to the Petition Date, and Needham filed an unsecured, nonpriority claim against MTI for $675,000 as a "success fee" pursuant to its prepetition agreement with MTI for Needham to assist in selling MTI; the proof of claim also included approximately $2,200 in costs. MTI did not object to Needham's costs but filed an objection to Needham's claim for the "success fee" because there was no transaction that constituted a sale of "substantially all" of the Debtor's assets, as required under their prepetition agreement for Needham to receive the minimum "success fee." Needham and the Debtor, and the Plan Agent investigated the matter and have negotiated a settlement in which Needham's claim will be substantially reduced . The Plan Agent and Needham are negotiating terms of a written settlement agreement, and the Plan Agent expects that a motion to approve the agreement with Needham will be filed in February 2011.

### 5. Additional Litigation

The Plan Agent has investigated claims the Reorganized Debtor may have against any third parties. While reserving all its rights under the Plan and applicable law to commence litigation where appropriate, the Plan Agent anticipates that commencement of additional litigation will be in the context of claims objections and litigation related thereto.

### D. <u>Regulatory Issues</u>

The Reorganized Debtor's common stock is publicly traded, and the Reorganized Debtor is subject to Securities and Exchange Commission ("SEC") filing requirements. The Debtor is also subject to other governmental rules and regulations. The Plan Agent is taking appropriate actions necessary to comply with applicable law.

The Plan Agent believes that it is in substantial compliance with rules and regulations of the Office of the United States Trustee.

### E. <u>Claims Against the Reorganized Debtor</u>

Pursuant to the terms of the Plan and the Confirmation Order and in an effort to decrease the number and expense of formal claim objections, the Debtor, and since the Effective Date, the Plan Agent, have spent a great deal of effort reviewing and evaluating and attempting to consensually resolve numerous proofs of claim and requests for allowance of administrative expense that have been filed against the Debtor's Estate.

Over 1,500 claims were scheduled and approximately 628 proofs of claim were filed in this case, with an aggregate amount in excess of $61 million. The Debtor and the Plan Agent have filed objections to more than 325 claims. As a result of these efforts, over $20 million in claims have been disallowed, either in whole or in part. Further, a number of claims are still under review and/or the Plan Agent is in the process of pursuing settlement discussions with certain claimants with a goal of avoiding formal claims litigation. Absent consensual resolution, the Plan Agent expects to file additional objections to claims within the next few weeks. .

Currently, the Claims Objection Deadline for most claims is March 28, 2011. However, due to the magnitude of this case, the large number of claims and their complexity, the Plan

Agent believes it will need at least an additional six months in order to effectively discharge its duties and to resolve the claims against the Reorganized Debtor. Other factors contributing to this conclusion is that the Plan Agent's ability to address claims has been hampered by the fact that only two former officers are available on a limited basis, and only two former employees of the Debtor are available to work on claims analysis and the other issues in this case, and one of them was unavailable from late November 2010 through January 25, 2011 due to a family emergency. The Plan Agent has determined that the specific claim-related knowledge of these two individuals and their involvement in this case are critical to avoiding duplication of effort and minimizing expenses to the estate. Accordingly, the Plan Agent has filed a motion to extend the deadline to object to claims by approximately six months to September 22, 2011. The motion is scheduled to be heard on February 17, 2011.

### F. Taxes and Tax Returns of the Reorganized Debtor

The Plan Agent arranged for the preparation and timely filing of the Debtor's 2009 tax returns and is currently preparing the necessary information for complying with the requirements for filing the tax returns for 2010.

### G. Information required by the Confirmation Order

Pursuant to Section 25 of the Confirmation Order:

a. Attached hereto as Exhibit "1" is a schedule ("Claim Schedule") listing for each Claim in each Class of Claims: the total amount required to be paid under the Fourth Amended Plan; the amount required to be paid as of the date of the Status Report; the amount actually paid as of the date of the Status Report; and the deficiency, if any, in required payments. Although the Claim Schedule is only required to include claims that are in a class (i.e., classes 1 through 6), the Claim Schedule includes certain tax claims and claims that are asserted as administrative claims.

The Plan Agent believes that payments are not currently due on the Claims listed in the Claim Schedule as not being entitled to distributions on the Effective Date or the date of this Status Report. For instance, some of those claims are priority claims, which were paid prior to

1  the Effective Date; the priority claims that have been paid are listed in Exhibit "2," which is
2  attached hereto, or are identified in Exhibit "1." Others have not yet been the subject of
3  objections yet and are still under review, and still others were the subject of settlements, but the
4  amounts to be distributed on such claims have not yet been determined. In particular, the Claim
5  of the Canopy Group, Inc. ("Canopy") is subject to certain threshold requirements being met
6  before Canopy is entitled to payments under the settlement agreement that Canopy entered with
7  MTI, and the Plan Agent believes that those thresholds have not been met.

8     The Plan Agent continues to review the claims that have been scheduled and/or filed in
9  this case and reserves all rights to object to any and all such claims.

10    b.  No post-confirmation tax liabilities have accrued or come due since entry of the
11 Confirmation Order according the books and records of the Reorganized Debtor.

12    c.  Considering the assets of the Reorganized Debtor and the claims against the
13 estate, the Plan Agent projects that the Reorganized Debtor has and will continue to have the
14 ability to comply with the terms of the Plan.

15    d.  The Plan Agent estimates that the date for consummation of the Plan will occur
16 on or before the 4th quarter 2011 and the filing of an application for Final Decree will occur on
17 or before the 4th quarter 2011.

18    e.  The other pertinent information necessary to explain the progress toward
19 consummation of the Plan is described above.

21 Dated: February 3, 2011          CORPORATE RECOVERY ASSOCIATES

                                  By: _____
                                      Richard Feferman, Senior Managing Director