ROBERT E. OPERA – State Bar No. 101182
ropera@winthropcouchot.com
RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@winthropcouchot.com
PAYAM KHODADADI – State Bar No. 239906
pkhodadadi@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

Counsel for the Plan Agent Appointed
Under Joint Fourth Amended Chapter 11 Plan

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re:

MTI TECHNOLOGY CORPORATION, a Delaware corporation,

Reorganized Debtor.

Case No. 8:07-13347-ES

Chapter 11 Proceeding

**MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF RICHARD FEFERMAN IN SUPPORT THEREOF**

[Fed. R. Bankr. P. 9019 and Local Bankruptcy Rule 9013-1(o)]

[No Hearing Necessary]

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; REORGANIZED DEBTOR MTI TECHNOLOGY CORPORATION; AND OTHER PARTIES-IN-INTEREST:**

Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, Richard Feferman dba Corporate Recovery Associates, the Plan Agent ("Plan Agent") appointed pursuant to the Joint Fourth Amended Chapter 11 Plan ("Plan") in the Chapter 11 case of MTI Technology Corporation ("Debtor"), hereby moves the Court for an order approving a compromise of controversy entered into by and among the Plan Agent, the Debtor as its financial affairs are reorganized pursuant to the Plan ("Reorganized Debtor"), and the Official Post-Effective Date Committee of Unsecured Creditors appointed under the Plan ("Post-Effective Date Committee") (collectively, "MTI Parties"), on one hand, and Pencom Systems Incorporated ("Pencom"), Edward C. Ateyeh, Jr. ("Taylor"),[1] Edgar Saadi, Wade Saadi, The Collective Group, LLC ("The Collective Group"), and Carolina Casualty Insurance Company ("Carolina Casualty"), on the other hand.[2]

On October 14, 2009, the duly-appointed and acting Official Committee of Unsecured Creditors in the Debtor's case ("Pre-Effective Date Committee") filed Adversary Proceeding No. 8:09-ap-01617 ES against Pencom, Taylor, Edgar Saadi and Wade Saadi (collectively, "Pencom Parties"). By such action ("Pencom Action"), the Pre-Effective Date Committee asserted, among others, the following causes of action against the Pencom Parties: avoidance and recovery of preferential transfers (all defendants); avoidance and recovery of fraudulent transfers (all defendants); disallowance of claims (all defendants); misrepresentation (Taylor); breach of fiduciary duty (Taylor); tortious interference (Taylor); and usury (Pencom). In response to the Pencom Action, the Pencom Parties filed a motion to dismiss the Pencom Action.

Over a period of many months, the Pre-Effective Date Committee and the Pencom Parties engaged in extensive settlement negotiations to try to resolve the claims asserted by the Pre-

---

[1] Edward C. Ateyeh, Jr. uses the name Edward Taylor professionally.

[2] The MTI Parties, Pencom, Taylor, Edgar Saadi, Wade Saadi, The Collective Group and Carolina Casualty are referred to herein, collectively, as the "Parties."

Effective Date Committee pursuant to the Pencom Action. Such negotiations were successful. The Parties now have settled their disputes and such settlement is commemorated and confirmed pursuant to the terms and conditions of that Release and Settlement Agreement ("Settlement Agreement"), a true and complete copy of which is attached as Exhibit "A" to the Declaration of Richard Feferman attached hereto ("Feferman Declaration").

The following is a summary of material terms of the Settlement Agreement:[3]

1. The Pencom Parties will be liable jointly and severally for paying, and will pay, to the Plan Agent the amount of $175,000 ("Settlement Payment").

2. The Pencom Parties' general unsecured claims against the estate, totaling approximately $2,007,180, will be withdrawn. In addition, Taylor will waive his priority unsecured claim against the estate in the amount of $10,950.00.

3. The Plan Agent will dismiss the Pencom Action, with prejudice to refiling the same.

4. The Parties will waive and release any claims that they may have against each other in accordance with the terms and conditions of the Settlement Agreement.

5. Carolina Casualty will be permitted to disburse proceeds under the Directors' and Officers' and Corporate Liability Insurance Policy ("D&O Policy") that it issued to the Debtor in order to pay settlement costs associated with the Settlement Agreement and defense costs incurred by Taylor in defense of the Pencom Action and by Kerley and Ganio in defense of the Kerley & Ganio Actions (as defined in the Settlement Agreement), in accordance with the terms and conditions of the Settlement Agreement ("Disbursements"), these Disbursements will reduce the aggregate limit of liability of the D&O Policy, and the parties agree that the Disbursements are being made without an admission by Carolina Casualty of liability for or coverage of the Pencom Action and Kerley & Ganio Actions or any other claim and that the payment of these Disbursements

[3] This summary of material terms of the Settlement Agreement is qualified by the entirety of the Settlement Agreement. In the event of any inconsistency between this summary and the terms of the Settlement Agreement, the Settlement Agreement will control.

will not constitute an admission of coverage or liability by Carolina Casualty or under the D&O Policy.

Good cause exists for granting this Motion. The Settlement Agreement was negotiated at arm's length and is fair and reasonable. The Settlement Agreement will provide substantial benefits for, and is in the best interests of, the Debtor's estate and the Debtor's creditors.

This Motion is made and based upon the foregoing allegations and representations, the Memorandum of Points and Authorities and the Feferman Declaration appended hereto, all pleadings, papers and other documents on file with the Court and upon such other evidence, both oral and documentary, that may be presented to the Court with respect to this Motion.

**WHEREFORE,** the Plan Agent respectfully requests that this Court enter its order granting to the Plan Agent the following relief:

1. Granting the Motion;

2. Approving the Settlement Agreement;

3. Approving the Disbursements;

4. Finding that the Disbursements reduce the aggregate limit of liability of the D&O Policy;

5. Finding that the Disbursements are being made without an admission by Carolina Casualty of liability for or coverage of the Pencom Action and Kerley & Ganio Actions or any other claim;

6. Finding that the Disbursements do not constitute an admission of liability or coverage for the Pencom Action, the Kerley & Ganio Actions or any other claim under the D&O Policy

7. Authorizing the Reorganized Debtor, the Plan Agent, and the Post-Effective Date Committee to execute all documents and to take all acts necessary to effectuate the Settlement Agreement; and

8. Granting to the Plan Agent such other and further relief as the Court deems just and proper.

DATED: February 7, 2011

**WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By: /s/ Richard H. Golubow
Robert E. Opera
Richard H. Golubow
Payam Khodadadi
Counsel for the Plan Agent Appointed Under Joint Fourth Amended Chapter 11 Plan

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

**FACTUAL BACKGROUND**

On October 15, 2007 ("Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief commencing this case. On October 29, 2007, the Office of the United States Trustee duly appointed the Pre-Effective Date Committee.[4]

On March 12, 2009, the Court entered an order authorizing the Pre-Effective Date Committee to file certain actions and proceedings on behalf of the Debtor's estate ("Committee Litigation Authorization Order").

In accordance with the provisions of the Court's Committee Litigation Authorization Order, the Pre-Effective Date Committee evaluated the transaction, which closed in or about June 2006, between the Debtor and Collective Technologies, LLC ("Collective Technologies") by which the Debtor acquired all of Collective Technologies' assets and properties ("Collective Technologies Transaction"). Pursuant to the Collective Technologies Transaction, the Debtor acquired the assets of Collective Technologies for a purchase price of approximately $11.0 million, consisting, in part, of approximately $6.0 million in cash and a promissory note in the amount of $2.0 million. A substantial portion of the purchase price associated with the Collective Technologies Transaction was paid to the Pencom Parties. Following the closing of the Collective Technologies Transaction, Collective Technologies became a service division of the Debtor ("Collective Division") until about October 12, 2007, when on the eve of the Debtor's Chapter 11 filing, the Debtor terminated the Collective Division employees and advised the customers of the Collective Division that the Debtor no longer would be able to service their contracts.

In order to salvage any value in the Collective Division, the Debtor and The Collective Group entered into that Client Transition Agreement ("CTA") pursuant to which the Debtor licensed to The Collective Group the right to use the Debtor's assets associated with the Collective Division in exchange for, among other things, a $125,000 payment and a payment of 10% of the

---

[4] Except as otherwise defined herein, the definitions of the capitalized terms set forth herein are as contained in the Motion.

revenues generated as a result of services performed for former clients of the Debtor by The Collective Group, in accordance with the terms and conditions of the CTA. On May 15, 2008, the Court entered an order authorizing the Debtor to enter into, and approving the terms and conditions of, the CTA.

Based upon the Pre-Effective Date Committee's evaluation of the Collective Technologies Transaction, the Pre-Effective Date Committee concluded that payments made to the Pencom Parties within 90 days prior to the Petition Date were potentially avoidable as preferential transfers pursuant to Section 547 of the Bankruptcy Code. The Pre-Effective Date Committee concluded also that the Debtor received less than reasonably equivalent value in exchange for payments made to the Pencom Parties within two years prior to the Petition Date, and, therefore, that such payments were potentially avoidable as fraudulent transfers pursuant to Section 548 of the Bankruptcy Code.

On October 14, 2009, the Pre-Effective Date Committee filed against the Pencom Parties the Pencom Action, by which the Pre-Effective Date Committee asserted, among others, the following causes of action: avoidance and recovery of preferential transfers (all defendants); avoidance and recovery of fraudulent transfers (all defendants); disallowance of claims (all defendants); misrepresentation (Taylor); breach of fiduciary duty (Taylor); tortious interference (Taylor); and usury (Pencom). In response to the Pencom Action, the Pencom Parties filed a motion to dismiss the Pencom Action pursuant to the provisions of Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Bankruptcy Procedure.

On October 14, 2009, the Pre-Effective Date Committee filed Adversary Proceeding No. 8:09-01642-ES against William J. Kerley ("Kerley") and Adversary Proceeding No. 8:09-1646-ES against Nick Ganio ("Ganio") (together, the "Kerley & Ganio Actions"), by which the Pre-Effective Date Committee asserted against Kerley and Ganio claims to recover allegedly preferential transfers made to them.[5]

Taylor, Kerley and Ganio, who are former officers of the Debtor, made a claim for coverage under the D&O Policy which was issued to the Debtor by Carolina Casualty. On

[5] The Pre-Effective Date Committee voluntarily dismissed the Kerley & Ganio Actions on April 19, 2010.

May 25, 2010 with respect to Kerley and Ganio [Docket No. 1162] and on May 27, 2010 with respect to Taylor [Docket No. 1164], Carolina Casualty, while reserving all rights, remedies and defenses and without any admission of coverage or liability, filed motions for relief from stay seeking from the Court orders authorizing Carolina Casualty, in accordance with the provisions of the D&O Policy, to reimburse attorneys' fees and costs incurred by Taylor in the defense of the Pencom Action and in the defense of the Kerley & Ganio Actions ("Relief from Stay Motions"). On June 2, 2010 [Docket No. 1168] with respect to Kerley and Ganio and on July 2, 2010 [Docket No. 1221] with respect to Taylor, the Pre-Effective Date Committee filed objections to the relief sought by Carolina Casualty by the Relief from Stay Motions ("Relief from Stay Objections").

Edgar Saadi has filed in this case proof of claim number 208 in the amount of $403,120.17 ("Edgar Saadi Proof of Claim"). Wade Saadi has filed in this case proof of claim number 390 in the amount of $403,120.17 ("Wade Saadi Proof of Claim"). Pencom has filed in this case proof of claim number 207 in the amount of $179,353.60 ("Pencom Proof of Claim"). Taylor has filed in this case proof of claim number 217 in the amount of $1,032,535.88 ("Taylor Proof of Claim") (the Edgar Saadi Proof of Claim, the Wade Saadi Proof of Claim, the Pencom Proof of Claim and the Taylor Proof of Claim are referred to herein, collectively, as the "Proofs of Claim").

On September 1, 2010, the Court entered an order confirming that Joint Fourth Amended Chapter 11 Plan ("Plan") filed jointly by the Debtor and by the Pre-Effective Date Committee. The Effective Date of the Plan ("Effective Date") was September 27, 2010.

As of the Effective Date of the Plan, the Pre-Effective Date Committee was terminated and disbanded and was replaced by the Post-Effective Date Committee.

As of the Effective Date of the Plan, the Debtor's financial affairs were reorganized pursuant to the terms and conditions of the Plan, and the Reorganized Debtor, as successor to the Debtor under the Plan, continues in existence with the rights, powers and duties set forth in the Plan.

As of the Effective Date of the Plan, the Plan Agent was appointed, in part, to administer the Plan and to make distributions to the Debtor's creditors in accordance with the terms and

conditions of the Plan. Pursuant to the Plan, the rights to prosecute and to settle the Pencom Action are transferred to, and vest in, the Plan Agent.

Over a period of many months, the Pre-Effective Date Committee (and, after the Effective Date of the Plan, the Plan Agent), on one hand, and the Pencom Parties, on the other hand, engaged in extensive negotiations to try to settle the claims asserted against the Pencom Parties pursuant to the Pencom Action. These settlement negotiations have been successful. The Parties now have agreed to settle their disputes in accordance with the terms and conditions provided in the Settlement Agreement, a true and complete copy of which is attached as Exhibit "A" to the Feferman Declaration.

The following are material terms of the Settlement Agreement:

1. The Pencom Parties will be liable jointly and severally for paying, and will pay, the amount of $175,000.00 (the "Settlement Payment") to the Plan Agent.

2. Upon the effective date of the Settlement Agreement and the Plan Agent's receipt of the Settlement Payment, the Plan Agent will dismiss the Pencom Action, with prejudice to refiling the same.

3. Upon the Plan Agent's filing of the notice of dismissal of the Pencom Action, with prejudice to refiling the same, the Pencom Parties will be deemed to have withdrawn, fully and finally and with prejudice to refiling, the Proofs of Claim and any other proofs of claim, formal or informal, that the Pencom Parties may have filed or asserted in the Debtor's case.

4. The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will waive and release their claims against the Pencom Parties and The Collective Group, in accordance with the terms and conditions of the Settlement Agreement.

5. The Pencom Parties and The Collective Group will waive and release their claims against the Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee, in accordance with the terms and conditions of the Settlement Agreement.

6. The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will provide certain limited releases to Carolina Casualty, in accordance with the terms and conditions of the Settlement Agreement.

7. The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will covenant, in accordance with the terms and conditions of the Settlement Agreement, not to file against any parties any claims relating to or arising from (i) the Debtor's acquisition of the assets of Collective Technologies or any other transactions between the Debtor and Collective Technologies; (ii) the Debtor's operation of the Collective Division, the Debtor's termination of the operations of the Collective Division and any other transactions in connection with the Collective Division; and (iii) any transactions, prior to the date of the Settlement Agreement, between the Debtor and The Collective Group with respect to the CTA.

8. The Plan Agent and the Post-Effective Date Committee will withdraw the Relief from Stay Objections upon the Court's approval of the Settlement Agreement.

9. Carolina Casualty will be authorized to disburse proceeds under the D&O Policy to Taylor to pay a portion of the Settlement Payment required by the Settlement Agreement and to Taylor, Kerley and Ganio to pay legal fees associated with the Settlement Agreement and the defense of the Pencom Action and the Kerley & Ganio Actions ("Disbursements"), in accordance with the terms and conditions of the Settlement Agreement. These Disbursements will reduce the aggregate limit of liability of the D&O Policy, and the parties agree that the Disbursements are being made without an admission by Carolina Casualty of liability for or coverage of the Pencom Action and Kerley & Ganio Actions or any other claim and that the payment of these Disbursements will not constitute an admission of coverage or liability by Carolina Casualty or under the D&O Policy.

Pursuant to the provisions of Section 6.14 of the Plan, the Plan Agent is entitled to compromise any controversy without any need to give notice to creditors or to parties-in-interest or to obtain any approval of the Court. Notwithstanding the provisions of Section 6.14 of the Plan, the Plan Agent has determined that, since the material terms of the Settlement Agreement were negotiated prior to the Effective Date and since the Settlement Agreement resolves litigation that is very significant to the interests of creditors, approval of the Settlement Agreement should be obtained from the Court.[6]

---

[6] Section 6.14 of the Plan provides, in pertinent part, as follows:

II.

**APPROVAL OF THE SETTLEMENT AGREEMENT**

**IS IN THE BEST INTERESTS OF CREDITORS**

Rule 9019(a) of the Federal Rules of Bankruptcy Procedure provides as follows:

> On motion of the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

Compromises are favored in bankruptcy. See, In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake…"); In re Michael, 183 B.R. 230, 233 (Bankr. D.Mont. 1995) ("it is also well established that the law favors compromise") citing In re Blair, 538 F.2d 849, 851 (9th Cir.1976); In re Stein, 236 B.R. 34, 37 (D.Or. 1999) ("Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy"); In re Pierce Packing Co., 1994 WL 831374, *2 (Bankr. D.Mont. 1994) ("it is also well established that the law favors compromise"); 9 Collier on Bankruptcy, ¶ 9019.03 at 9019-3 (15th ed. rev'd 2007); Case v. Los Angeles Lumber Products Company, 308 U.S. 106, 130, 60 S.Ct. 1 (1939) (compromises "are a normal part of the reorganization process").

The Ninth Circuit Court of Appeals has recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1999); In re A & C Properties, 784 F.2d at 1380-81 ("The purpose of a compromise agreement is to allow the debtor and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims"). The decision to approve a compromise rests in the

---

> Compromise of Controversies. From and after the Effective Date…, the Plan Agent shall be entitled to compromise any objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-interest or to obtain any approval of the Bankruptcy Court.

It should be noted that, while the Plan Agent is not required to obtain Court approval for any compromise of controversies, Section 6.15 of the Plan authorizes the Plan Agent to seek orders of the Court approving actions to be taken consistent with the Plan as may be desirable to effectuate the Plan. Section 6.15 of the Plan provides as follows:

> Bankruptcy Court Approval Relative to Post-Confirmation Matters. Nothing contained in this Plan shall be deemed to impair in any manner the right of the Plan Agent or any party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken consistent with this Plan as may be necessary or desirable to effectuate the provisions of this Plan.

sound discretion of the bankruptcy court. In re Stein, supra. In this regard, the Stein court stated as follows:

> Pursuant to Bankruptcy Rule 9019(a), compromises are favored in bankruptcy; therefore, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion. The law is settled that the proper standard of review for an order approving a settlement by a trustee in bankruptcy is abuse of discretion. In re Sassalos, 160 B.R. 646, 653 (D.Or.1993) (Frye, J.), citing 9 Collier on Bankruptcy, § 9019.03 (15th ed.). In In re Sassalos, this court stated:
>
> The standards for approval of a proposed settlement have been enunciated in the Ninth Circuit, and in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re Stein, 236 B.R. at 37.

In evaluating a proposed compromise in a bankruptcy case, a bankruptcy court need not conduct an exhaustive investigation of the disputed issues or conduct a trial with respect to such issues, but need find only that the proposed compromise is fair and equitable and that the negotiations between the parties were conducted in good faith. A & C Properties, supra ("bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim"); Matter of Walsh Const., 669 F.2d 1325, 1328 (9th Cir. 1982); In re Blair, 538 F.2d at 851-52 (bankruptcy court need not conduct a mini-trial on the merits of claims sought to be compromised in a bankruptcy); In re Edwards, 228 B.R. 552, 569 (Bankr. E.D.Pa. 1998) ("The court's role is not to conduct a trial or mini-trial, or to decide the merits of individual issues."); In re Schmitt, 215 B.R. 417, 423 (9th Cir. BAP 1997) ("When assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required.").

A compromise proposed in a bankruptcy case should be approved if it falls above the lowest point in the range of reasonableness. In re Milden, 111 F.3d 138, 1997 WL 189302, *3 (9th Cir. 1997) ("Rather than conducting a detailed evaluation of the merits of the state court action, the bankruptcy court's function is to examine the proposed settlement to determine if it

falls below the lowest point in the range of reasonableness."); Cosoff v. Rodman (In re W.T. Grant Company), 699 F.2d 599, 608 (2nd Cir. 1983); Newman v. Stein, 464 F.2d 689, 693 (2d Cir.1972) ("The responsibility of the bankruptcy judge...is not to decide the numerous questions of law and fact raised...but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"); In re United Shipping Co., 1989 WL 12723, *9 (Bankr. D.Minn. 1989) ("the court need only examine the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness"). In this regard, in the case, In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499 (Bankr. S.D.N.Y. 1991), the court held as follows:

> [A]lthough we may consider a creditor's objection to the proposed compromise, the objection is not controlling, and will not bar approval, when a review of the settlement shows it does not "fall below the lowest point in the range of reasonableness." When assessing a compromise and settlement, we are not obliged to determine and rule upon disputed facts and questions of law, but rather only to "canvass" the issues. A trial or "mini trial" on the merits is not required. Further, the Court need not conduct a wholly independent investigation in formulating its opinion as to the reasonableness of a settlement. We may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise. And indeed, a Court may approve a settlement even if it believes that the trustee or debtor-in-possession ultimately would be successful at trial. Finally, we must consider the principle that "the law favors compromise."

In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 505.

Decisional law regarding the exercise of a bankruptcy court's discretion in determining whether a compromise satisfies the reasonableness standard is "remarkably consistent in establishing that there are but four considerations which a court must address." In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 390, 395 (Bankr. E.D.Pa. 1987). These considerations are:

(i) The probability of success in the litigation;

(ii) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

(iii) The likely difficulty in collection; and

(iv) The paramount interests of creditors.

In re A&C Properties, Inc., 784 F.2d 1377, 1381 (9th Cir. 1986).

Application of these considerations to the facts of this case militates in favor of approving the proposed Settlement Agreement.

**A. The Probability of Success in Litigation.**

By the Pencom Action, the Pre-Effective Date Committee alleges against the Pencom Parties, in part, causes of action to avoid and recover preferential transfers and fraudulent transfers. The Pencom Parties have asserted defenses to the causes of action alleged in the Pencom Action and, if the Pencom Action were litigated, the Pencom Parties likely would oppose aggressively the relief sought by the Plan Agent, with the Pencom Parties' litigation expenses possibly funded by Carolina Casualty pursuant to the D&O Policy. The Plan Agent believes, then, that litigation with the Pencom Parties would be hard fought. While the Plan Agent believes that the causes of action alleged pursuant to the Pencom Action are strong and that the Plan Agent would prevail if the Pencom Action were litigated, the Plan Agent acknowledges that the results of such litigation would be uncertain and that there would be risk that he would not be able to prevail in such litigation. Given the uncertainty associated with continued litigation with the Pencom Parties, and the certainty of the substantial benefits for creditors that will be achieved by the proposed settlement with the Pencom Parties, the Plan Agent submits that this consideration weighs in favor of the Court's granting the Motion.

**B. The Expense, Complexity, Inconvenience and Delay of Litigation.**

The second factor that must be considered in evaluating the proposed Settlement Agreement is the expense, complexity, inconvenience and delay that would be associated with any continued litigation of the Pencom Action. If the Plan Agent is required to continue to prosecute the Pencom Action and to continue to object to the Relief from Stay Motions, such litigation would result in substantial additional expense for the estate. The Pencom Action involves complex causes of action for avoidance and recovery of preferential transfers, avoidance and recovery of fraudulent transfers, disallowance of claims, misrepresentation, breach of fiduciary duty, tortious interference, and usury. Extensive discovery would be required in order to

prosecute the Pencom Action, and it is very likely that experts, including appraisal experts, would need to be retained by the Plan Agent in order to prosecute the Pencom Action. As stated hereinabove, the Pencom Parties likely would oppose aggressively the claims asserted against them pursuant to the Pencom Action and it is possible that the fees and costs that they would incur in such litigation would be funded by Carolina Casualty pursuant to the D&O Policy. The Plan Agent believes that it is possible that hundreds of thousands of dollars in additional fees and costs would be incurred in continued litigation with the Pencom Parties.

In addition to the substantial amount of fees and costs that would be incurred in continued litigation with the Pencom Parties, continued litigation of the Pencom Action would cause significant disruption and delay to the administration of the estate. If the Plan Agent were required to continue to litigate the Pencom Action, he would need to devote considerable time to such litigation, thereby disrupting his efforts to implement the Plan. Moreover, by reason of the uncertainty associated with the Pencom Action, including uncertainty regarding the amount of fees and costs that would be incurred in such litigation and uncertainty regarding the allowed amount of the Pencom Parties' claims, distributions to creditors under the Plan likely would need to be delayed for a considerable period of time.

Settlement of the Pencom Action, then, will save the estate the substantial expense, inconvenience and delay that would be associated with continued litigation of the Pencom Action and will expedite the implementing of the Plan and the Plan Agent's making of distributions to creditors under the Plan. Accordingly, the Plan Agent submits that this consideration also weighs in favor of granting the Motion.

**C. <u>Difficulty in Collection</u>.**

If the Plan Agent were required to continue to litigate the Pencom Action, there likely would be substantial delay in obtaining any recovery from the Pencom Parties. The Plan Agent likely would need to engage in difficult and protracted litigation with the Pencom Parties, the results of which would be uncertain. Even if the Plan Agent were to prevail in such litigation, it is likely that there would be considerable disruption and delay associated with the Plan Agent's collecting on such judgment. It is likely that the Pencom Parties would appeal any adverse

judgment that may be rendered against them, and the Pencom Parties undoubtedly would oppose any efforts that the Plan Agent would make to try to collect on any judgment that he may obtain against them. In addition, there exists the possibility that one or more of the Pencom Parties may not have funds necessary to pay any judgment that may be obtained by the Plan Agent against the Pencom Parties.

Pursuant to the proposed settlement, concerns regarding collection are virtually eliminated in that the Settlement Payment must be made promptly after the effectiveness of the settlement, and the Settlement Payment will be funded substantially by Carolina Casualty. Accordingly, the Plan Agent submits that this consideration also weighs in favor of granting the Motion.

**D. The Interests of Creditors.**

The final, but most significant, part of the analysis regarding the merits of the proposed settlement involves an evaluation of whether the settlement is in the best interests of creditors. In this case, the Plan Agent believes that the proposed settlement clearly is in the best interests of creditors.

1. Arm's-Length Settlement. The settlement is the product of extensive, good faith negotiations, conducted over a period of many months, among the Pre-Effective Date Committee (and, after the Effective Date of the Plan, the Plan Agent), on one hand, and the Pencom Parties, on the other hand. Each side was represented in such negotiations by independent, experienced counsel. Such negotiations were difficult and each side made significant concessions in order to achieve the settlement. The negotiations were conducted at arm's length and the proposed settlement is supported in this case by the Reorganized Debtor, the Post-Effective Date Committee and by the Plan Agent as being fair and in furtherance of the interests of creditors in this case.

2. Settlement Payment. The proposed settlement will produce a $175,000 recovery by the estate promptly after Court approval of the proposed settlement, thereby eliminating the uncertainty associated with continued litigation of the Pencom Action and with the ability of the Plan Agent to collect on any judgment that he may obtain pursuant to the Pencom Action.

3. Waiver of Pencom Parties' Substantial Claims. Pursuant to the proposed settlement, the Pencom Parties will withdraw their Proofs of Claim and will waive and release any and all claims that they may have against the estate. By so doing, Taylor's priority unsecured claim in the amount of $10,950 will be extinguished, and the Pencom Parties' general unsecured claims, in the aggregate amount of approximately $2,007,180, plus the Pencom Parties' claims under Section 502(h) of the Bankruptcy Code arising in connection with the payment of the $175,000 Settlement Payment, will be extinguished. While no exact calculation can be provided because there remains a number of variables, including but not limited to a significant amount of disputed claims to which objections are pending or to which objections will be filed in this case, the Plan Agent estimates that, based on the projections set forth in the Disclosure Statement corresponding to the confirmed Plan in this case, as a result of the release of the Pencom Parties' claims pursuant to the proposed settlement, recoveries by holders of allowed general unsecured claims in this case will increase by approximately 25%.

4. Avoidance of Administrative Claims. If the proposed settlement is approved by the Court, the Plan Agent will not be required to litigate further the Pencom Action. As a result of the settlement, then, the substantial fees and costs that otherwise would be incurred in connection with the continued litigation of the Pencom Action will be avoided, thereby preserving estate funds for the benefit of general unsecured creditors.

Based upon the foregoing, the Plan Agent respectfully submits that the proposed settlement clearly is in the best interests of creditors, and, therefore, should be approved by this Court.

As a final matter, as noted hereinabove, Section 6.14 of the confirmed Plan provides that the Plan Agent may enter into compromises of controversy with no need to give notice to creditors or to parties-in-interest or to obtain any approval of the Court. Pursuant to Section 6.15 of the Plan, the Plan Agent nevertheless may request orders of the Court approving actions to be taken consistent with the Plan as may be desirable to effectuate provisions of the Plan. In accordance with the provisions of Section 6.15 of the Plan, the Plan Agent is seeking from the Court an order approving the proposed settlement because the material terms of the settlement were negotiated

before the Effective Date of the Plan and because of the materiality of the proposed settlement to the interests of creditors in the case. In effect, then, while the Plan Agent is permitted by the Plan to request orders of the Court approving compromises of controversy, he is not required by the Plan to obtain Court approval of any compromise of controversy. These provisions of the Plan provide further support for the Court's entering of an order granting the Motion.

## III.

## CONCLUSION

For the reasons set forth hereinabove, the Plan Agent respectfully submits that the Court's approval of the Settlement Agreement is in the best interests of the estate and its creditors and, therefore, that this Court should grant to the Plan Agent all relief requested by the Motion.

DATED: February 7, 2011

**WINTHROP COUCHOT PROFESSIONAL CORPORATION**

By: /s/ Richard H. Golubow
Robert E. Opera
Richard H. Golubow
Payam Khodadadi
Counsel for the Plan Agent Appointed Under Joint Fourth Amended Chapter 11 Plan

**DECLARATION OF RICHARD FEFERMAN**

I, Richard Feferman, declare and state:

1. I am the senior managing director of Corporate Recovery Associates and have been appointed as the Plan Agent ("Plan Agent") pursuant to the Joint Fourth Amended Chapter 11 Plan ("Plan") in the Chapter 11 case of MTI Technology Corporation ("Debtor").

2. From time to time herein, I refer to myself in the third person as the "Plan Agent" as may be appropriate in context.

3. The matters set forth herein are within my own personal knowledge and/or based upon my review of the Plan Agent's or Debtor's books and records, and, if called as a witness, I could and would competently testify thereto.

4. As the Plan Agent, and previously as the financial advisor to the Official Committee of Creditors Holding Unsecured Claims ("Pre-Effective Date Committee") in the Debtor's case, I have substantial knowledge of all aspects of the Debtor's financial affairs.

5. I make this declaration in support of the *Motion for Order Approving Compromise of Controversy* ("Motion"). As set forth in the Motion, the Plan Agent is seeking a Court order approving a compromise of controversy embodied in the Release and Settlement Agreement ("Settlement Agreement"), entered into by and among the Plan Agent, the Debtor as its financial affairs are reorganized pursuant to the Plan ("Reorganized Debtor"), and the Official Post-Effective Date Committee of Unsecured Creditors appointed under the Plan ("Post-Effective Date Committee") (collectively, "MTI Parties"), on one hand, and Pencom Systems Incorporated ("Pencom"), Edward C. Ateyeh, Jr. ("Taylor"),[7] Edgar Saadi, Wade Saadi, The Collective Group, LLC ("The Collective Group"), and Carolina Casualty Insurance Company ("Carolina Casualty"), on the other hand.[8] A true and correct copy of the Settlement Agreement between the Parties is attached hereto as Exhibit "A" and incorporated herein by reference.

6. I have reviewed the factual matters contained in the Motion and, to the best of my knowledge, such information is materially true and correct. For the reasons set forth in the

---

[7] Edward C. Ateyeh, Jr. uses the name Edward Taylor professionally.
[8] The MTI Parties, Pencom, Taylor, Edgar Saadi, Wade Saadi, The Collective Group and Carolina Casualty are referred to herein, collectively, as the "Parties."

Motion and below, I believe and hereby assert that good cause exists for granting the Motion on several grounds including that the Settlement Agreement was negotiated at arm's length and is fair and reasonable and the Settlement Agreement will provide substantial benefits for, and is in the best interests of, the Debtor's estate and the Debtor's creditors. In this regard, the facts and circumstances that led to the Settlement Agreement and a brief description of the salient terms of the Settlement Agreement are as follows:

**Factual Background**

7. On October 15, 2007 ("Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief commencing this case.

8. On October 29, 2007, the Office of the United States Trustee duly appointed the Pre-Effective Date Committee.

9. On March 12, 2009, the Court entered an order authorizing the Pre-Effective Date Committee to file certain actions and proceedings on behalf of the Debtor's estate ("Committee Litigation Authorization Order").

10. In accordance with the provisions of the Court's Committee Litigation Authorization Order, the Pre-Effective Committee evaluated the transaction, which closed in or about June 2006, between the Debtor and Collective Technologies, LLC ("Collective Technologies") by which the Debtor acquired all of Collective Technologies' assets and properties ("Collective Technologies Transaction"). Pursuant to the Collective Technologies Transaction, the Debtor acquired the assets of Collective Technologies for a purchase price of approximately $11.0 million, consisting, in part, of approximately $6.0 million in cash and a promissory note in the amount of $2.0 million. A substantial portion of the purchase price associated with the Collective Technologies Transaction was paid to Pencom, Taylor, Edgar Saadi and Wade Saadi (collectively, "Pencom Parties"). Following the closing of the Collective Technologies Transaction, Collective Technologies became a service division of the Debtor ("Collective Division") until about October 12, 2007, when on the eve of the Debtor's Chapter 11 filing, the Debtor terminated the Collective Division employees and advised the customers of the Collective Division that the Debtor no longer would be able to service their contracts.

11. In order to salvage any value in the Collective Division, the Debtor and The Collective Group entered into that Client Transition Agreement ("CTA") pursuant to which the Debtor licensed to The Collective Group the right to use the Debtor's assets associated with the Collective Division in exchange for, among other things, a $125,000 payment and a payment of 10% of the revenues generated as a result of services performed for former clients of the Debtor by The Collective Group, in accordance with the terms and conditions of the CTA. On May 15, 2008, the Court entered an order authorizing the Debtor to enter into, and approving the terms and conditions of, the CTA.

12. Based upon the Pre-Effective Date Committee's evaluation of the Collective Technologies Transaction, the Pre-Effective Date Committee concluded that payments made to the Pencom Parties within 90 days prior to the Petition Date were potentially avoidable as preferential transfers pursuant to Section 547 of the Bankruptcy Code. The Pre-Effective Date Committee concluded also that the Debtor received less than reasonably equivalent value in exchange for payments made to the Pencom Parties within two years prior to the Petition Date, and, therefore, that such payments were potentially avoidable as fraudulent transfers pursuant to Section 548 of the Bankruptcy Code.

13. On October 14, 2009, the Pre-Effective Date Committee filed against the Pencom Parties the Pencom Action, by which the Pre-Effective Date Committee asserted, among others, the following causes of action: avoidance and recovery of preferential transfers (all defendants); avoidance and recovery of fraudulent transfers (all defendants); disallowance of claims (all defendants); misrepresentation (Taylor); breach of fiduciary duty (Taylor); tortious interference (Taylor); and usury (Pencom). In response to the Pencom Action, the Pencom Parties filed a motion to dismiss the Pencom Action pursuant to the provisions of Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Bankruptcy Procedure.

14. On October 14, 2009, the Pre-Effective Date Committee filed Adversary Proceeding No. 8:09-01642-ES against William J. Kerley ("Kerley") and Adversary Proceeding No. 8:09-1646-ES against Nick Ganio ("Ganio") (together, the "Kerley & Ganio Actions"), by

which the Pre-Effective Date Committee asserted against Kerley and Ganio claims to recover allegedly preferential transfers made to them.[9]

15. Taylor, Kerley and Ganio, who are former officers of the Debtor, made a claim for coverage under the D&O Policy which was issued to the Debtor by Carolina Casualty. On May 25, 2010 with respect to Kerley and Ganio [Docket No. 1162] and on May 27, 2010 with respect to Taylor [Docket No. 1164], Carolina Casualty, while reserving all rights, remedies and defenses and without any admission of coverage or liability, filed motions for relief from stay seeking from the Court orders authorizing Carolina Casualty, in accordance with the provisions of the D&O Policy, to reimburse attorneys' fees and costs incurred by Taylor in the defense of the Pencom Action and in the defense of the Kerley & Ganio Actions ("Relief from Stay Motions"). On June 2, 2010 [Docket No. 1168] with respect to Kerley and Ganio and on July 2, 2010 [Docket No. 1221] with respect to Taylor, the Pre-Effective Date Committee filed objections to the relief sought by Carolina Casualty by the Relief from Stay Motions ("Relief from Stay Objections").

16. Edgar Saadi has filed in this case proof of claim number 208 in the amount of $403,120.17 ("Edgar Saadi Proof of Claim"). Wade Saadi has filed in this case proof of claim number 390 in the amount of $403,120.17 ("Wade Saadi Proof of Claim"). Pencom has filed in this case proof of claim number 207 in the amount of $179,353.60 ("Pencom Proof of Claim"). Taylor has filed in this case proof of claim number 217 in the amount of $1,032,535.88 ("Taylor Proof of Claim") (the Edgar Saadi Proof of Claim, the Wade Saadi Proof of Claim, the Pencom Proof of Claim and the Taylor Proof of Claim are referred to herein, collectively, as the "Proofs of Claim").

17. On September 1, 2010, the Court entered an order confirming that Joint Fourth Amended Chapter 11 Plan ("Plan") filed jointly by the Debtor and by the Pre-Effective Date Committee. The Effective Date of the Plan ("Effective Date") was September 27, 2010.

18. As of the Effective Date of the Plan, the Pre-Effective Date Committee was terminated and disbanded and was replaced by the Post-Effective Date Committee.

[9] The Pre-Effective Date Committee voluntarily dismissed the Kerley & Ganio Actions on April 19, 2010.

19. As of the Effective Date of the Plan, the Debtor's financial affairs were reorganized pursuant to the terms and conditions of the Plan, and the Reorganized Debtor, as successor to the Debtor under the Plan, continues in existence with the rights, powers and duties set forth in the Plan.

20. As of the Effective Date of the Plan, the Plan Agent was appointed, in part, to administer the Plan and to make distributions to the Debtor's creditors in accordance with the terms and conditions of the Plan. Pursuant to the Plan, the rights to prosecute and to settle the Pencom Action are transferred to, and vest in, the Plan Agent.

21. Over a period of many months, the Pre-Effective Date Committee (and, after the Effective Date of the Plan, the Plan Agent), on one hand, and the Pencom Parties, on the other hand, engaged in extensive negotiations to try to settle the claims asserted against the Pencom Parties pursuant to the Pencom Action. These settlement negotiations have been successful. The Parties now have agreed to settle their disputes in accordance with the terms and conditions provided in the Settlement Agreement, a true and complete copy of which is attached hereto as Exhibit "A".

22. The following are material terms of the Settlement Agreement:

(1) The Pencom Parties will be liable jointly and severally for paying, and will pay, the amount of $175,000.00 (the "Settlement Payment") to the Plan Agent.

(2) Upon the effective date of the Settlement Agreement and the Plan Agent's receipt of the Settlement Payment, the Plan Agent will dismiss the Pencom Action, with prejudice to refiling the same.

(3) Upon the Plan Agent's filing of the notice of dismissal of the Pencom Action, with prejudice to refiling the same, the Pencom Parties will be deemed to have withdrawn, fully and finally and with prejudice to refiling, the Proofs of Claim and any other proofs of claim, formal or informal, that the Pencom Parties may have filed or asserted in the Debtor's case.

(4) The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will waive and release their claims against the Pencom Parties and

The Collective Group, in accordance with the terms and conditions of the Settlement Agreement.

(5) The Pencom Parties and The Collective Group will waive and release their claims against the Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee, in accordance with the terms and conditions of the Settlement Agreement.

(6) The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will provide certain limited releases to Carolina Casualty, in accordance with the terms and conditions of the Settlement Agreement.

(7) The Plan Agent, the Reorganized Debtor and the Post-Effective Date Committee will covenant, in accordance with the terms and conditions of the Settlement Agreement, not to file against any parties any claims relating to or arising from (i) the Debtor's acquisition of the assets of Collective Technologies or any other transactions between the Debtor and Collective Technologies; (ii) the Debtor's operation of the Collective Division, the Debtor's termination of the operations of the Collective Division and any other transactions in connection with the Collective Division; and (iii) any transactions, prior to the date of the Settlement Agreement, between the Debtor and The Collective Group with respect to the CTA.

(8) The Plan Agent and the Post-Effective Date Committee will withdraw the Relief from Stay Objections upon the Court's approval of the Settlement Agreement.

(9) Carolina Casualty will be authorized to disburse proceeds under the D&O Policy to Taylor to pay a portion of the Settlement Payment required by the Settlement Agreement and to Taylor, Kerley and Ganio to pay legal fees associated with the Settlement Agreement and the defense of the Pencom Action and the Kerley & Ganio Actions ("Disbursements"), in accordance with the terms and conditions of the Settlement Agreement. These Disbursements

will reduce the aggregate limit of liability of the D&O Policy, and the parties agree that the Disbursements are being made without an admission by Carolina Casualty of liability for or coverage of the Pencom Action and Kerley & Ganio Actions or any other claim and that the payment of these Disbursements will not constitute an admission of coverage or liability by Carolina Casualty or under the D&O Policy.

23. Pursuant to the provisions of Section 6.14 of the Plan, the Plan Agent is entitled to compromise any controversy without any need to give notice to creditors or to parties-in-interest or to obtain any approval of the Court. Notwithstanding the provisions of Section 6.14 of the Plan, the Plan Agent has determined that, since the material terms of the Settlement Agreement were negotiated prior to the Effective Date and since the Settlement Agreement resolves litigation that is very significant to the interests of creditors, approval of the Settlement Agreement should be obtained from the Court.[10]

**The Probability of Success in Litigation.**

24. By the Pencom Action, the Pre-Effective Date Committee alleges against the Pencom Parties, in part, causes of action to avoid and recover preferential transfers and fraudulent transfers. The Pencom Parties have asserted defenses to the causes of action alleged in the Pencom Action and, if the Pencom Action were litigated, the Pencom Parties likely would oppose aggressively the relief sought by my as the Plan Agent, with the Pencom Parties' litigation expenses possibly funded by Carolina Casualty pursuant to the D&O Policy. The Plan Agent believes, then, that litigation with the Pencom Parties would be hard fought. While the Plan Agent believes that the causes of action alleged pursuant to the Pencom Action are strong and

---

[10] Section 6.14 of the Plan provides, in pertinent part, as follows:

> Compromise of Controversies. From and after the Effective Date…, the Plan Agent shall be entitled to compromise any objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-interest or to obtain any approval of the Bankruptcy Court.

It should be noted that, while the Plan Agent is not required to obtain Court approval for any compromise of controversies, Section 6.15 of the Plan authorizes the Plan Agent to seek orders of the Court approving actions to be taken consistent with the Plan as may be desirable to effectuate the Plan. Section 6.15 of the Plan provides as follows:

> Bankruptcy Court Approval Relative to Post-Confirmation Matters. Nothing contained in this Plan shall be deemed to impair in any manner the right of the Plan Agent or any party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken consistent with this Plan as may be necessary or desirable to effectuate the provisions of this Plan.

that the Plan Agent would prevail if the Pencom Action were litigated, the Plan Agent acknowledges that the results of such litigation would be uncertain and that there would be risk that he would not be able to prevail in such litigation. Given the uncertainty associated with continued litigation with the Pencom Parties, and the certainty of the substantial benefits for creditors that will be achieved by the proposed settlement with the Pencom Parties, the Plan Agent submits that this consideration weighs in favor of the Court's granting the Motion.

**The Expense, Complexity, Inconvenience and Delay of Litigation.**

25. If the Plan Agent is required to continue to prosecute the Pencom Action and to continue to object to the Relief from Stay Motions, such litigation would result in substantial additional expense for the estate. The Pencom Action involves complex causes of action for avoidance and recovery of preferential transfers, avoidance and recovery of fraudulent transfers, disallowance of claims, misrepresentation, breach of fiduciary duty, tortious interference, and usury. Extensive discovery would be required in order to prosecute the Pencom Action, and it is very likely that experts, including appraisal experts, would need to be retained by me, as the Plan Agent, in order to prosecute the Pencom Action. As stated hereinabove, the Pencom Parties likely would oppose aggressively the claims asserted against them pursuant to the Pencom Action and it is possible that the fees and costs that they would incur in such litigation would be funded by Carolina Casualty pursuant to the D&O Policy. The Plan Agent believes that it is possible that hundreds of thousands of dollars in additional fees and costs would be incurred in continued litigation with the Pencom Parties.

26. In addition to the substantial amount of fees and costs that would be incurred in continued litigation with the Pencom Parties, continued litigation of the Pencom Action would cause significant disruption and delay to the administration of the estate. If the Plan Agent was required to continue to litigate the Pencom Action, he would need to devote considerable time to such litigation, thereby disrupting his efforts to implement the Plan. Moreover, by reason of the uncertainty associated with the Pencom Action, including uncertainty regarding the amount of fees and costs that would be incurred in such litigation and uncertainty regarding the allowed

amount of the Pencom Parties' claims, distributions to creditors under the Plan likely would need to be delayed for a considerable period of time.

27. Settlement of the Pencom Action, then, will save the estate the substantial expense, inconvenience and delay that would be associated with continued litigation of the Pencom Action and will expedite the implementing of the Plan and the Plan Agent's making of distributions to creditors under the Plan. Accordingly, the Plan Agent submits that this consideration also weighs in favor of granting the Motion.

**Difficulty in Collection.**

28. If the Plan Agent were required to continue to litigate the Pencom Action, there likely would be substantial delay in obtaining any recovery from the Pencom Parties. The Plan Agent would need to engage in difficult and protracted litigation with the Pencom Parties, the results of which would be uncertain. Even if the Plan Agent were to prevail in such litigation, it is likely that there would be considerable disruption and delay associated with the Plan Agent collecting on such judgment. It is likely that the Pencom Parties would appeal any adverse judgment that may be rendered against them, and the Pencom Parties undoubtedly would oppose any efforts that the Plan Agent would make to try to collect on any judgment that he may obtain against them. In addition, there exists the possibility that one or more of the Pencom Parties may not have funds necessary to pay any judgment that may be obtained by the Plan Agent against the Pencom Parties.

29. Pursuant to the proposed settlement, concerns regarding collection are virtually eliminated in that the Settlement Payment must be made promptly after the effectiveness of the settlement, and the Settlement Payment will be funded substantially by Carolina Casualty. Accordingly, the Plan Agent submits that this consideration also weighs in favor of granting the Motion.

**The Interests of Creditors.**

30. The Plan Agent believes that the proposed settlement clearly is in the best interests of creditors.

a) Arm's-Length Settlement. The settlement is the product of extensive, good faith negotiations, conducted over a period of many months, among the Pre-Effective Date Committee (and, after the Effective Date of the Plan, the Plan Agent), on one hand, and the Pencom Parties, on the other hand. Each side was represented in such negotiations by independent, experienced counsel. Such negotiations were difficult and each side made significant concessions in order to achieve the settlement. The negotiations were conducted at arm's length and the proposed settlement is supported in this case by the Reorganized Debtor, the Post-Effective Date Committee and by the Plan Agent as being fair and in furtherance of the interests of creditors in this case.

b) Settlement Payment. The proposed settlement will produce a $175,000 recovery by the estate promptly after Court approval of the proposed settlement, thereby eliminating the uncertainty associated with continued litigation of the Pencom Action and with the ability of the Plan Agent to collect on any judgment that he may obtain pursuant to the Pencom Action.

c) Waiver of Pencom Parties' Substantial Claims. Pursuant to the proposed settlement, the Pencom Parties will withdraw their Proofs of Claim and will waive and release any and all claims that they may have against the estate. By so doing, Taylor's priority unsecured claim in the amount of $10,950 will be extinguished, and the Pencom Parties' general unsecured claims, in the aggregate amount of approximately $2,007,180, plus the Pencom Parties' claims under Section 502(h) of the Bankruptcy Code arising in connection with the payment of the $175,000 Settlement Payment, will be extinguished. While no exact calculation can be provided because there remains a number of variables, including but not limited to a significant amount of disputed claims to which objections are pending or to which objections will be filed in this case, the Plan Agent's estimate that, based on the projections set forth in the Disclosure Statement corresponding to the confirmed Plan in this case, as a result of the release of the Pencom Parties' claims pursuant to the proposed settlement, recoveries by holders of allowed general unsecured claims in this case will increase by approximately 25%.

d) Avoidance of Administrative Claims. If the proposed settlement is approved by the Court, the Plan Agent will not be required to litigate further the Pencom Action. As a result of the settlement, then, the substantial fees and costs that otherwise would be incurred in connection with the continued litigation of the Pencom Action will be avoided, thereby preserving estate funds for the benefit of general unsecured creditors.

31. As a final matter, as noted hereinabove, Section 6.14 of the confirmed Plan provides that the Plan Agent may enter into compromises of controversy with no need to give notice to creditors or to parties-in-interest or to obtain any approval of the Court. Pursuant to Section 6.15 of the Plan, the Plan Agent nevertheless may request orders of the Court approving actions to be taken consistent with the Plan as may be desirable to effectuate provisions of the Plan. In accordance with the provisions of Section 6.15 of the Plan, the Plan Agent is seeking from the Court an order approving the proposed settlement because the material terms of the settlement were negotiated before the Effective Date of the Plan and because of the materiality of the proposed settlement to the interests of creditors in the case. In effect, then, while the Plan Agent is permitted by the Plan to request orders of the Court approving compromises of controversy, the Plan Agent is not required by the Plan to obtain Court approval of any compromise of controversy. These provisions of the Plan provide further support for the Court's entering of an order granting the Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Executed this 7th day of February 2010, in San Diego, California.

Richard Feferman

# EXHIBIT "A"

MEMN 7/29/10 10:10 AM

## RELEASE AND SETTLEMENT AGREEMENT

**THIS RELEASE AND SETTLEMENT AGREEMENT** (the "Agreement") dated this 28th day of December 2010, is made and entered into by and among MTI Technology Corporation, a Delaware Corporation, as reorganized pursuant to that Joint Fourth Amended Chapter 11 Plan ("Reorganized Debtor"), Plan Agent Richard Feferman dba Corporate Recovery Associates ("Plan Agent"), the Official Post-Effective Date Committee of Creditors Holding Unsecured Claims (the "Post-Effective Date Committee"), Pencom Systems Incorporated ("Pencom"), Edward C. Ateyeh, Jr. ("Taylor"),[1] Edgar Saadi, Wade Saadi, The Collective Group, LLC ("Collective Group"), and Carolina Casualty Insurance Company ("Carolina Casualty") (collectively, the "Parties").

## RECITALS

A. On October 15, 2007, MTI Technology Corporation ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court"), as Case No. 8:07-13347-ES ("Bankruptcy Case").

B. On May 15, 2008, the Bankruptcy Court entered an order authorizing the Debtor to enter into, and approving the terms and conditions of, that Amended and Restated Client Transition Agreement ("CTA") between the Debtor and Collective Group.

---

[1] Edward C. Ateyeh, Jr. uses the name Edward Taylor professionally.

C. On March 12, 2009, the Bankruptcy Court entered an order authorizing the duly-appointed and acting Official Committee of Creditors Holding Unsecured Claims in the Bankruptcy Case ("Pre-Effective Date Committee") to file certain actions and proceedings on behalf of the Debtor's bankruptcy estate (the "Estate").

D. On October 14, 2009, the Pre-Effective Date Committee filed adversary proceeding number 8:09-ap-01617 ES against Pencom, Taylor, Edgar Saadi, and Wade Saadi (the "Taylor Litigation"). By the Taylor Litigation, the Pre-Effective Date Committee asserted, among others, the following causes of action: avoidance and recovery of preferential transfers (all defendants); avoidance and recovery of fraudulent transfers (all defendants); disallowance of claims (all defendants); misrepresentation (Taylor); breach of fiduciary duty (Taylor); tortious interference (Taylor); and usury (Pencom).

E. On October 14, 2009, the Pre-Effective Date Committee filed adversary proceeding number 8:09-01642-ES against William J. Kerley ("Kerley") and adversary proceeding number 8:09-1646-ES against Nick Ganio ("Ganio") (together, the "Kerley & Ganio Litigations"). The Pre-Effective Date Committee voluntarily dismissed the Kerley & Ganio Litigations on April 19, 2010.

F. Taylor, Kerley and Ganio (collectively, "Insured Parties"), who are former officers of the Debtor, made a claim for coverage under Directors' and Officers' and Corporate Liability Insurance Policy number 1739426, which was issued by Carolina Casualty to the Debtor for the policy period of June 30, 2007 through June 30, 2011 (the "Policy"). On

May 25, 2010 with respect to Kerley and Ganio [Dkt. No. 1162] and on May 27, 2010 with respect to Taylor [Dkt. No. 1164], Carolina Casualty, while reserving all rights, remedies and defenses and without any admission of coverage or liability, filed motions for relief from stay seeking orders from the Bankruptcy Court authorizing Carolina Casualty to advance the reimbursement of attorneys' fees and costs incurred in the defense of the Taylor Litigation and in the defense of the Kerley & Ganio Litigations (the "Stay Motions"). On June 2, 2010 [Dkt. No. 1168] and on July 2, 2010 [Dkt. No. 1221], the Pre-Effective Date Committee filed objections to the relief sought by Carolina Casualty in the Stay Motions (the "Stay Motion Objections").

G. Edgar Saadi has filed proof of claim number 208 in the amount of $403,120.17 ("Edgar Saadi Proof of Claim"). Wade Saadi has filed proof of claim number 390 in the amount of $403,120.17 ("Wade Saadi Proof of Claim"). Pencom has filed proof of claim number 207 in the amount of $179,353.60 ("Pencom Proof of Claim"). Taylor has filed proof of claim number 217 in the amount of $1,032,535.88 ("Taylor Proof of Claim") (the Edgar Saadi Proof of Claim, the Wade Saadi Proof of Claim, the Pencom Proof of Claim and the Taylor Proof of Claim are referred to herein, collectively, as the "Proofs of Claim").

H. On September 1, 2010, the Bankruptcy Court entered an order confirming that Joint Fourth Amended Chapter 11 Plan ("Plan") filed jointly by the Debtor and by the Pre-Effective Date Committee. The Effective Date of the Plan ("Effective Date") was September 27, 2010.

I. As of the Effective Date of the Plan, the Pre-Effective Date Committee was terminated and disbanded and was replaced by the Post-Effective Date Committee.

J. As of the Effective Date of the Plan, the Debtor's financial affairs were reorganized pursuant to the terms and conditions of the Plan, and the Reorganized Debtor, as successor to the Debtor under the Plan, continues in existence with the rights, powers and duties set forth in the Plan.

K. As of the Effective Date of the Plan, the Plan Agent was appointed, in part, to administer the Plan and to make distributions to the Debtor's creditors in accordance with the terms and conditions of the Plan. Pursuant to the Plan, the rights to prosecute and to settle the Taylor Litigation are transferred to, and vest in, the Plan Agent.

L. Pencom, Taylor, Edgar Saadi, and Wade Saadi (collectively, "Pencom Parties") deny liability to the Estate, but desire to enter into this Agreement solely to avoid the annoyance, diversion and expense of litigation.

M. The Parties desire to compromise, settle and forever resolve and dispose of their outstanding controversies and claims, in accordance with the terms and conditions provided herein.

NOW, THEREFORE, based upon the foregoing Recitals, and for good and adequate consideration, the receipt and sufficiency of which are acknowledged by the Parties, and the Parties intending to be legally bound hereby, agree as follows:

## SETTLEMENT TERMS

1. **Incorporation of Recitals.** Each of the foregoing Recitals is incorporated herein by this reference.

2. **Effective Date.** This Agreement shall be effective and binding upon the Parties on the first business day upon which each of the following conditions occurs or is satisfied (the "Effective Date"):

a) Each Party receives a copy of this Agreement executed by all Parties;

b) The Bankruptcy Court enters an order (the "Bankruptcy Court Approval Order") (1) approving this Agreement; (2) approving the disbursement of proceeds under the Policy to the Insured Parties to pay settlement costs associated with this Agreement and legal fees associated with this Agreement and the defense of the Taylor Litigation and the Kerley & Ganio Litigations (the "Disbursements"), which legal fees are represented by the Insured Parties to be in the amount of $127,636.26 as of the date of execution of this Agreement; (3) finding that the Disbursements reduce the aggregate limit of liability of the Policy; (4) finding that the Disbursements are being made without

an admission by Carolina Casualty of liability for or coverage of the Taylor Litigation and Kerley & Ganio Litigations or any other claim; and (5) finding that the Disbursements do not constitute an admission of liability or coverage for the Taylor Litigation, the Kerley & Ganio Litigations or any other claim under the Policy; and

c) The Bankruptcy Court Approval Order becomes a Final Order. For the purpose of this Agreement, "Final Order" means an order of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified or amended, and as to which no appeal, petition for certiorari, or motion for reargument or rehearing has been filed within fourteen (14) days after the entry of such order, or as to which any right to appeal, petition for certiorari, reargue, or obtain a rehearing shall have been waived in writing in form and substance satisfactory to the Parties, or, in the event that an appeal, writ of certiorari, or proceeding for reargument or rehearing of such order has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

3. **Settlement Payment.** The Pencom Parties shall be liable jointly and severally for paying, and shall pay, within five (5) days after the Effective Date, the amount of $175,000.00 (the "Settlement Payment") to the Plan Agent, as the representative of the Estate. The Settlement Payment shall be paid by wire transfer to the law firm of Winthrop Couchot Professional Corporation, on behalf of the Plan Agent.

4. **Dismissal of Taylor Litigation.** Upon the Effective Date and the Plan Agent's receipt of the Settlement Payment, the Plan Agent shall dismiss the Taylor Litigation, with prejudice to re-filing the same.

5. **Withdrawal of Proofs of Claim.** Upon the Plan Agent's filing of the notice of dismissal of the Taylor Litigation, with prejudice to refiling same, the Pencom Parties shall be deemed to have withdrawn, fully and finally and with prejudice to refiling, the Proofs of Claim and any other proofs of claim, formal or informal, that the Pencom Parties may have filed or asserted in the Bankruptcy Case.

6. **General Release of Claims Against the Pencom Parties by the Plan Agent, Reorganized Debtor, and the Post-Effective Date Committee.** Except only for the obligations imposed upon the Pencom Parties by this Agreement and the rights reserved by the Plan Agent, Reorganized Debtor, and the Post-Effective Date Committee under this Agreement, effective as of the Plan Agent's receipt of the Settlement Payment, the Plan Agent, the Post-Effective Date Committee, and the Reorganized Debtor, for themselves and on behalf of the Estate and for each of their predecessors (including, without limitation, the Pre-Effective Date Committee and the Debtor), successors and assigns, hereby fully, forever and irrevocably release, discharge and acquit each of the Pencom Parties, and their respective past and present parent, subsidiary, and affiliate corporations, predecessors, successors, heirs, spouses, assigns, past and present officers, directors, employees, members, attorneys, representatives, agents, and Collective Group ("Pencom Released Parties"), of and from any and all rights, claims, demands, obligations,

liabilities, indebtednesses, breaches of contract, breaches of duty of any relationship, acts, omissions, misfeasance, malfeasance, causes or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, arising or accruing prior to the date of execution of this Agreement; provided, however, that nothing contained herein shall be deemed to release, waive, impair or affect adversely in any manner, in whole or in part, (i) any claims or causes of action that the Reorganized Debtor, the Post-Effective Date Committee, the Estate or the Plan Agent, or any other duly-appointed representative of the Estate has, may have, or may assert against Kerley or Ganio, or any right that the Reorganized Debtor, the Post-Effective Date Committee, the Estate or the Plan Agent, or any other duly-appointed representative of the Estate has, may have, or may assert to object to any claim asserted by Kerley, Ganio or by any past or present officer, director or employee of Pencom or Collective Group; or (ii) any claims, causes of action or rights or interests of the Reorganized Debtor, the Plan Agent or the Estate arising from or related to any obligation that Collective Group may have under the CTA to assist the Reorganized Debtor and/or the Plan Agent in the collection, from and after the date of execution of this Agreement, of any remaining accounts receivable of the Debtor arising from the performance of services by the Debtor's Professional Services Division.

7. **General Release of Claims Against the Reorganized Debtor, the Post-Effective Date Committee, the Plan Agent, and the Estate by the Pencom Parties and Collective Group.** Except only for the obligations imposed upon the Reorganized Debtor, the Post-Effective Date Committee, and the Plan Agent by this Agreement and the rights reserved by the Pencom Parties and Collective Group by this Agreement, effective as of the dismissal, with prejudice, of the Taylor Litigation, the Pencom Parties, and Collective Group, for themselves and for each of their predecessors, successors and assigns, hereby fully, forever and irrevocably release, discharge and acquit each of the Reorganized Debtor, the Post-Effective Date Committee, the Plan Agent, and the Estate, and each of their respective past and present parent, subsidiary and affiliate corporations, predecessors (including, without limitation, the Debtor and the Pre-Effective Date Committee), successors, heirs, spouses, assigns, past and present officers, directors, employees, members, attorneys, representatives, and agents of and from any and all rights, claims, demands, obligations, liabilities, indebtednesses, breaches of contract, breaches of duty of any relationship, acts, omissions, misfeasance, malfeasance, causes or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, arising or accruing prior to the date of execution of this Agreement, including, without limitation, the Proofs of Claim.

MEMN 7/29/10 10:10 AM

8. **Consent to Bankruptcy Court Approval Order**. The Post-Effective Date Committee, the Plan Agent, and the Reorganized Debtor, for themselves and on behalf of the Estate, hereby consent to the Bankruptcy Court's entering the Bankruptcy Court Approval Order (a) approving this Agreement; (b) the Disbursements; (c) finding that the Disbursements reduce the aggregate limit of liability of the Policy; (d) finding that the Disbursements are being made without an admission by Carolina Casualty of liability for or coverage of the Taylor Litigation and Kerley & Ganio Litigations or any other claim; and (e) finding that the Disbursements do not constitute an admission of liability or coverage for the Taylor Litigation, the Kerley & Ganio Litigations or any other claim under the Policy.

9. **Limited Release of Carolina Casualty**. Subject to the provisions of paragraph 10 hereof, except only for any obligations imposed upon Carolina Casualty by this Agreement and the rights reserved by the Reorganized Debtor, the Plan Agent, and the Post-Effective Date Committee under this Agreement, upon the Plan Agent's receipt of the Settlement Payment, the Post-Effective Date Committee, the Plan Agent, and the Reorganized Debtor, for themselves and on behalf of the Estate and for each of their predecessors (including, without limitation, the Debtor and the Pre-Effective Date Committee), successors and assigns, hereby fully, forever and irrevocably release, discharge and acquit Carolina Casualty and each of its past and present parent, subsidiary and affiliate corporations, successors, assigns, insurers, reinsurers, past and present officers, directors, employees, attorneys, agents (collectively, "Carolina Parties"), of and from any and all past, present, potential, or future claims, demands, actions, rights, causes of action, attorneys' fees, costs, expenses, judgments, settlements, liabilities, and damages against the Carolina Parties or against the Policy, of whatever nature, whether known or

unknown, foreseen or unforeseen, arising or accruing prior to the date of execution of this Agreement, in connection with, in any way relating to, arising out of, directly or indirectly resulting from, or in consequence of the Taylor Litigation.

**10. Limitations on Releases Given by the Debtor and the Committee.**

a) **Debtor Affiliated Entities**. Subject to the provisions of paragraphs 6 and 13(b) of this Agreement, nothing contained in this Agreement shall be deemed to release, waive, impair, or affect adversely in any manner, in whole or in part, any claims or causes of action that the Reorganized Debtor, the Post-Effective Date Committee, the Estate, or the Plan Agent, or any other duly-appointed representative of the Estate has, may have or may assert against any past or present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, accountant, consultant, parent, subsidiary, affiliate or related entity of the Debtor (collectively, "Debtor Affiliated Entities"), except only for the claims and causes of action against the Pencom Released Parties expressly released pursuant to paragraph 6 hereof.

b) **Carolina Casualty.** Subject to the provisions of paragraphs 6 and 13(b) of this Agreement, nothing contained in this Agreement shall be deemed to release, waive, impair or affect adversely in any manner, in whole or in part: (i) any claims, rights or causes of action that the Reorganized Debtor, the Post-Effective Date Committee, the Estate, or the Plan Agent, or any other duly-appointed representative of the Estate has, may have or may assert against "Insureds" under the Policy (as such term is defined in the Policy) other than Taylor; (ii) the rights of such other Insureds to obtain the benefits of coverage under the Policy, including, but not limited to, the payment by

Carolina Casualty on the Insured's behalf of "Loss" (as such term is defined in the Policy), provided by the Policy in connection with any such claims, rights or causes of action that the Reorganized Debtor, the Post-Effective Date Committee, the Estate, or the Plan Agent, or any other duly-appointed representative of the Estate may assert or bring against them; or (iii) the right of the Reorganized Debtor, the Post-Effective Date Committee, the Estate, or the Plan Agent, or any other duly-appointed representative of the Estate to seek recovery under the Policy, including by filing suit against Carolina Casualty if necessary, in the event that any of them were to obtain a judgment against or enter into a settlement with such Insureds.

11. **Scope of Releases.** Each of the Parties providing releases hereunder ("Releasing Party") acknowledges the fact that it is its intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of and as a bar to each such right, claim, demand, obligation, liability, indebtedness, breach of contract, breach of duty of any relationship, act, omission, misfeasance, malfeasance, cause of action, debt, sum of money, account, compensation, contract, controversy, promise, damage, cost, loss and expense of every type, kind, nature, description or character whatsoever, heretofore referred to and released. In connection with such releases, each Releasing Party acknowledges that it is aware that it or its attorneys may hereafter discover facts different from or in addition to the facts which it or its attorneys now know or believe to be true with respect to the subject matters of this Agreement and that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever settle any and all claims which do now exist, may exist or heretofore have existed among the Parties in accordance with the terms and conditions hereof, and that, in

furtherance of such intention, the releases herein given shall be and shall remain in effect for all time as full and complete mutual releases notwithstanding the discovery of any such different or additional facts or of any such additional damages, costs or expenses. Therefore, each Releasing Party acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Except only for the obligations imposed upon, and the rights expressly reserved by, each Releasing Party pursuant to this Agreement, each of the Releasing Parties does hereby waive and relinquish all rights and benefits which it has or may have under Section 1542 of the Civil Code of the State of California, and any other comparable statutes of any other states in the United States, with respect to the claims hereby released by it, effective as of the date of the effectiveness of the releases given by it hereunder.

12. **<u>No Rescission or Termination</u>.** As a part of the foregoing releases, each of the Releasing Parties acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true. From and after the Effective Date of this Agreement, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Agreement, each of the Releasing Parties acknowledges that it has conducted its own

independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

**13. Covenants Not to Sue.**

**a) Claims Released by This Agreement.** Each Releasing Party covenants and agrees not to commence against another Party any action or proceeding of any nature whatsoever with respect to any of the claims hereby released by it. Each Releasing Party hereby further covenants and agrees not to join in or to participate in any action or proceeding based upon, arising out of or relating to the claims hereby released by it, unless such participation is compelled by order of a court of competent jurisdiction.

**b) Claims Regarding Collective Technologies and Collective Group.** The Plan Agent, the Post-Effective Date Committee, and the Reorganized Debtor, for themselves and on behalf of the Estate, hereby irrevocably covenant and agree forever to refrain from initiating, filing, instituting, maintaining or proceeding upon, and to refrain from encouraging, advising or assisting (unless such assistance is compelled by an order of a court of competent jurisdiction) any other person or entity to initiate, file, institute, maintain or proceed upon, any claims against any parties in connection with, in any way relating to, arising out of, directly or indirectly resulting from or in consequence of any of the following: (i) the Debtor's acquisition of the assets of Collective Technologies or any

other transactions between the Debtor and Collective Technologies; (ii) the Debtor's operation of the Debtor's Collective Division, the Debtor's termination of the operations of the Debtor's Collective Division and any other transactions in connection with the Debtor's Collective Division; and (iii) any transactions, prior to the date of this Agreement, between the Debtor and Collective Group with respect to the CTA. Notwithstanding anything to the contrary contained in the foregoing, nothing contained herein will limit, impair, or affect in any manner the following: any right that the Plan Agent, the Post-Effective Date Committee, or the Reorganized Debtor may have to file a preference action against, or to object to any claim asserted by, any person or entity, except only as any such right is expressly waived or released pursuant to the provisions of paragraph 6 hereof; and any right that the Plan Agent, the Post-Effective Date Committee, or the Reorganized Debtor may have to pursue any claims retained hereunder pursuant to the CTA.

**14.** **No Assignment of Released Claims**. Each Releasing Party represents and warrants to the other Parties that it has not assigned or transferred to any person or entity any of the claims hereby released by it.

**15.** **No Admission of Wrongdoing.** Each Party acknowledges and agrees that this Agreement contemplates and provides for the resolution of disputed claims, and that no Party makes any admission of any wrongdoing or liability in any respect. Except as set forth expressly to the contrary in this Agreement, no Party admits pursuant to this Agreement any liability to any other Party or under the Policy.

**16.** **Binding Effect; Bankruptcy Rule 9019 Motion.**

**(a)** **Binding Effect of Agreement.** Upon the Effective Date, this Agreement shall be binding upon the Parties and the respective successors and assigns of the Parties, including, without limitation, any Chapter 11 trustee, Chapter 7 trustee or Chapter 11 plan representative who may be appointed in the Bankruptcy Case.

**(b)** **Bankruptcy Rule 9019 Motion.** The Committee shall file a motion seeking, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019 Motion"), approval of this Agreement within fifteen (15) days after the execution of this Agreement by all of the Parties.

**17.** **Continuance of Stay Motions.** Subject to the approval of the Bankruptcy Court, Carolina Casualty shall continue the hearings on the Stay Motions such that such hearings are held concurrently with the hearing on the Bankruptcy Rule 9019 Motion. The Plan Agent and the Post-Effective Date Committee shall withdraw the Stay Motion Objections upon the Bankruptcy Court's approval of this Agreement.

**18.** **Termination of Agreement.**

**(a)** **Termination Events.** This Agreement may be terminated at the option of a non-defaulting Party upon the occurrence of either of the following events:

(i) The Bankruptcy Court enters an order denying approval of this Agreement; or

(ii) The Effective Date of this Agreement has not occurred by March 1, 2011.

**(b)** **Effect of Termination**. In the event of any termination of this Agreement as permitted by paragraph 18(a) hereof, this Agreement, and all of the provisions of this Agreement, shall be null and void ab initio and of no force or effect, shall not be binding upon any of the Parties, and the Parties shall be restored to the same respective positions that they were in as of the date of execution of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to any other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement. Upon any termination of this Agreement, neither the existence of this Agreement nor its contents shall be deemed to be a presumption, concession, or admission by or against any Party or be admissible in evidence, or referred to for any purpose in the Bankruptcy Case, or in any action or proceeding, except in any action or proceeding relating to or arising out of any breach of this Agreement by a Party.

**19.** **Modification**. This Agreement may not be modified or amended except by an instrument in writing signed by all of the Parties.

**20.** **Waiver.** Acceptance by any Party of any performance less than required hereunder shall not be deemed to be a waiver of the rights of such Party to enforce all of the terms and conditions hereof. Except as otherwise expressly provided herein, no waiver of any such right hereunder shall be binding unless reduced to writing and signed by the Party to be charged therewith.

**21.** **Counterparts; Facsimile Signatures**. This Agreement may be signed in any number of counterparts with the same effect as if the signatures appear on the same instrument,

and all signed counterparts shall be deemed to be an original. Facsimile or e-mail transmission of any signed original document, and retransmission of any signed facsimile or e-mail transmission, shall be the same as delivery of an original.

**22. Authorized Execution.** Each individual executing this Agreement on behalf of a Party represents and warrants that: (a) to the best of its information and knowledge formed after reasonable inquiry, all Recitals set forth in this Agreement are true and accurate as of the date of execution of this Agreement; (b) it is authorized to execute this Agreement for such Party; (c) upon the Effective Date, such Party shall be bound by this Agreement; and (d) such execution presents no conflict with any other agreement of such Party or any applicable law.

**23. Attorneys' Fees and Costs.** The Parties shall bear their own attorneys' fees and costs arising from or related to the negotiation and execution of this Agreement. In the event of any claim, action, or lawsuit to enforce, modify, interpret, invalidate, rescind, or set aside any term or provision of this Agreement, however, the prevailing party shall be entitled to an award of its costs and expenses, including reasonable attorneys' fees and costs, incurred as a result of such claim, action, or lawsuit, including any appeals resulting therefrom.

**24. No Inducement.** The Parties represent, warrant, and agree that, upon executing and entering into this Agreement, they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained, or embodied in this Agreement.

**25. Governing Law; Choice of Forum.** This Agreement shall be construed and enforced according to the laws of the State of California, without reference to conflicts of law principles. Any action brought to construe, interpret, enforce or modify the terms of this

Agreement may be brought only in the Bankruptcy Court (subject only to the right of appeal). Each of the Parties hereby consents to the jurisdiction of the Bankruptcy Court to enforce the provisions of this Agreement, and hereby waives any objection that it may have to such jurisdiction. Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding to construe, interpret, enforce or modify the terms of this Agreement may be brought in the state or federal courts of California sitting in Orange County, California.

**26.** **Free and Voluntary Act**. The Parties hereby acknowledge and agree that they have carefully read the foregoing covenants and mutual releases, know the contents thereof, have discussed them with legal counsel or have decided not to consult with legal counsel, and are under no duress and sign the same of their own free and voluntary act with the intent to be legally bound thereby.

**27.** **No Construction against any Party; Headings for Convenience Only**. The Parties have cooperated in the drafting and preparation of this Agreement. In any construction of this Agreement, or of any of its terms and provisions, the same shall not be construed against any Party. All headings in this Agreement are inserted for convenience of reference only, and shall not affect the construction or interpretation hereof.

**28.** **Entire Agreement.** This Agreement constitutes the entire agreement of the Parties with respect to the matters set forth herein, and supersedes any and all prior agreements or understandings, written or oral, between them relating to the subject matter of this Agreement. No other promises or agreements shall be binding upon the Parties with respect to this subject

matter unless contained in this Agreement or separately agreed to in writing and signed by an authorized representative of each Party.

**29.** **Effectuation.** Each Party agrees to take any and all acts, and to execute any and all further documents, that may be appropriate to obtain Bankruptcy Court approval of this Agreement and to effectuate the provisions of this Agreement.

**30.** **Notices.** Except as provided below, all notices, requests, demands, and other communications required by this Agreement shall be in writing and shall be delivered by facsimile, e-mail transmission, or in person, or mailed by first class registered or certified mail, as follows:

To the Post-Effective Date Committee:
Steven D. Sass
Vice President, Legal Services
RMS
307 International Circle, #270
Hunt Valley, MD 21030
Fax: (410) 773-4057
E-Mail: steven.sass@rmsna.com

To the Plan Agent:
Richard Feferman
Corporate Recovery Associates
3830 Valley Center Dr.
PMB 705-152
San Diego, CA 92130
Fax: (858) 430-2454
E-Mail: Richard@crarecovery.com

With a copy to:
Robert E. Opera, Esq.
Winthrop Couchot Professional Corporation
660 Newport Center, Fourth Floor
Newport Beach, California 92660-5946
Fax: (949) 720-4111
E-Mail: ropera@winthropcouchot.com

To the Reorganized Debtor:
Scott Poteracki
23411 Summerfield #28H
Aliso Viejo, CA 92656
E-Mail: spoteracki@nexiant.com

With a copy to:
Eve Marsella, Esq.
Clarkson, Gore & Marsella, SPLC
3424 Carson St Ste 350
Torrance, CA 90503
Fax: (310) 214-7254
E-Mail: emarsella@lawcgm.com

To the Pencom Parties and Collective Group:
Edward C. Taylor
The Collective Group, LLC
9433 Bee Caves Road
Austin, Texas 78733
Fax: 512-263-0606
E-Mail: taylor@colltech.com

With a copy to:
Kerry Peterson, Esq.
Miller, Egan, Molter & Nelson LLP
4514 Cole Avenue, Suite 1250
Fax: 214-628-9505
E-Mail: kerry.peterson@milleregan.com

With a copy to:

Nancy K. Tordai, Esq.
Hanson Peters Nye
1000 Hart Road, Suite 300
Barrington, IL 60010
Fax: 847-277-7339
E-Mail: nancytordai@hpnlaw.com

If delivered by facsimile, by e-mail transmission, or personally, the date on which the notice, request, demand or other communication is delivered shall be the date on which such delivery is made, and, if delivered by mail as aforesaid, the date on which such notice, request, instruction or document is received shall be the date of delivery. Any Party may designate in

writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.

31. **Interpretation.** Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

**MTI TECHNOLOGY CORPORATION,**
**a Delaware Corporation**

By: [signature] 1/27/11
Richard Feferman
Its: Chief Executive Officer

**OFFICIAL POST-EFFECTIVE DATE COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS**

By: ______________________
Steven D. Sass
Its: Chairperson

[signature] 1/27/11
**RICHARD FEFERMAN**, Plan Agent
dba Corporate Recovery Associates

**THE COLLECTIVE GROUP, LLC**

By: [signature]
Its: CEO

[signature]
**EDWARD C. ATEYEH, JR.**

______________________

writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.

31. **Interpretation.** Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

**MTI TECHNOLOGY CORPORATION,**
**a Delaware Corporation**

By: ______________________
Richard Feferman
Its: Chief Executive Officer

**OFFICIAL POST-EFFECTIVE DATE COMMITTEE**
**OF CREDITORS HOLDING UNSECURED CLAIMS**

By: ______________________
Steven D. Sass
Its: Chairperson

______________________
**RICHARD FEFERMAN**, Plan Agent

**PENCOM SYSTEMS INCORPORATED**

By: ______________________
Its: ______________________

______________________
**EDWARD C. ATEYEH, JR.**

MEMN 7/29/10 10:10 AM

**EDGAR SAADI** [signature] 11/19/2010

______________________

**WADE SAADI**

**THE COLLECTIVE GROUP, LLC**

By: Signatures on Prior Page

Its: ______________________

**CAROLINA CASUALTY INSURANCE COMPANY**

By: ______________________

Its: ______________________

MEMN 7/29/10 10:10 AM

**EDGAR SAADI**

______________________________
**WADE SAADI**

**THE COLLECTIVE GROUP, LLC**

By: ______________________________

Its: ______________________________

**CAROLINA CASUALTY INSURANCE COMPANY**

By: ______________________________

Its: ______________________________

MEMN 7/29/10 10:10 AM

**EDGAR SAADI**

______________________________
**WADE SAADI**

**THE COLLECTIVE GROUP, LLC**

By: ___________________________

Its: ___________________________

**CAROLINA CASUALTY INSURANCE COMPANY**

By: Nancy K Tordai

Its: Counsel  Signed: 12/28/2010

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF RICHARD FEFERMAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 9, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On February 9, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Erithe Smith**
USBC – Santa Ana Division
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 9, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 9, 2011 | Viann Corbin | Viann Corbin |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**NEF SERVICE LIST**

- Robert C Briseno rbriseno@swlaw.com
- John O Campbell ocampbell@houser-law.com
- Jeffrey D Cawdrey jcawdrey@gordonrees.com, ebojorquez@gordonrees.com –COUNSEL TO CAROLINA CASUALTY
- Scott C Clarkson sclarkson@lawcgm.com
- Robert L Eisenbach reisenbach@cooley.com
- Christine M Fitzgerald cfitzgerald@scckg.com
- Matthew A Gold courts@argopartners.net
- Richard H Golubow rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna lavignas@sec.gov
- Adam A Lewis alewis@mofo.com
- Eve A Marsella emarsella@lawcgm.com
- Elmer D Martin elmermartin@gmail.com
- Robert E Opera ropera@winthropcouchot.com, sconnor@winthropcouchot.com;pj@winthropcouchot.com
- Eric S Pezold epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken mshaiken@stinson.com
- Daniel C Silva dsilva@gordonrees.com
- Patricia B Tomasco ptomasco@mailbmc.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin mwallin@sheppardmullin.com
- Gilbert B Weisman notices@becket-lee.com
- Sharon Z Weiss sharon.weiss@hro.com
- Charmaine M Wilson sg@primeshares.com
- David L Wilson dlwilson@winston.com

**Service via e-mail**

Kerry Peterson - kerry.peterson@milleregan.com – Pencom, Alteyeh & Saadis

Jonathan Wallace - jw@bway.net - – Pencom, Alteyeh & Saadis

Jeffrey Cawdrey - JCawdrey@gordonrees.com; ebojorquez@gordonrees.com – Carolina Casualty Insurance Company

Nancy Tordai - NancyTordai@HPNLaw.com – Carolina Casualty Insurance Company

SERVICE VIA FIRST CLASS MAIL

| | | |
|---|---|---|
| MTI Technology Corporation<br>Attn: Thomas P. Raimondi, Jr., Pres. & CEO<br>15641 Red Hill Avenue, Suite 200<br>Tustin, CA 92780 | U.S. Trustee's Office<br>Frank Cadigan, Esq.<br>411 West Fourth Street, #9041<br>Santa Ana, CA 92701 | MTI Tech<br>Special Notice List<br>Document No. 119553 |
| Debtor's Counsel<br>Clarkson, Gore & Marsella, SPLC<br>Eve Marsalla, Esq.<br>3424 Carson St Ste 350<br>Torrance, CA 90503 | Securities & Exchange Commission<br>Sandra Lavigana, Esq.<br>5670 Wilshire Blvd., 11th Fl.<br>Los Angeles, CA 90036 | Plan Agent<br>Corporate Recovery Associates<br>Richard Feferman<br>3830 Valley Center Dr., #705-152<br>San Diego, CA 92130 |
| Committee Chair<br>EMC Corporation, FedEx Custom Critical<br>Steven D. Sass, Esq.<br>c/o RMS<br>307 International Circle, #270<br>Hunt Valley, MD 21030 | Committee Member<br>Neoscale Systems, Inc.<br>Andrew Moley/Janet Cahill<br>1655 McCarthy Blvd.<br>Milpitas, CA 95035<br>1/20/2009 -- See New Address Below | Committee Member<br>Compnology, Inc.<br>John S. Cronin<br>6300 Station Mill Dr.<br>Norcross, GA 30092 |
| Committee Member<br>Wade Saadi<br>Pencom Systems, Inc.<br>c/o Jonathan Wallace<br>152 Remsen Street – Lower Level<br>Brooklyn, NY 11201 | Committee Member<br>CCS Computer Configuration Services<br>Al Crasso<br>2532 White Road<br>Irvine, CA 92614 | Committee Member<br>Lifeboat Distribution, Inc.<br>Kevin Scull<br>1157 Shrewsbury Ave.<br>Shrewsbury, NJ 07720 |
| Committee Member<br>Mid Atlantic Corp. Services, Inc.<br>Michael Buston<br>812 Oregan Ave., #H<br>Limphicum, MD 21090 | RSN 1/22/08<br>The Collective Group<br>c/o Brown McCarroll LLP<br>Patricia B. Tomasco, Esq.<br>111 Congress Ave., #1400<br>Austin, TX 78701 | The Canopy Group 11/2/07 RSN<br>c/o Snell & Wilmer<br>Michael B. Reynolds, Esq.<br>Eric S. Pexold<br>600 Anton blvd., #1400<br>Costa Mesa, CA 92626 |
| The Canopy Group<br>Snell & Wilmer LLP<br>Michael R. Johnson, Esq.<br>Gateway Tower West<br>15 West South Temple, Suite 1200<br>Salt Lake City, UT 84101 | 1/26/10 RSN<br>Pencom Systems, et al.<br>c/o Alan H. Martin, Esq.<br>Michael A. Wallin, Eq.<br>Sheppard Mullin Richter & Hampton LLP<br>650 Town Center Dr., 4th Fl.<br>Costa Mesa, CA 92626-1993 | 1/26/10 RSN<br>Pencom Systems,Alteyeh & Saadi.<br>Kerry Peterson, Esq.<br>Miller, Egan, Molter & Nelson LLP<br>4514 Cole Ave., #1250<br>Dallas, TX 75205 |