1  **BARRY R. GORE, ESQ. SBN 143278**
   **CHRISTINE M. FITZGERALD, ESQ. SBN 259014**
2  **SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE**
   **A PROFESSIONAL LAW CORPORATION**
3  **3424 Carson Street, Suite 350**
   **Torrance, California 90503**
4  **(310) 542-0111 Telephone**
   **(310) 214-7254 Facsimile**
5
   Special Counsel to Corporate Recovery Associates,
6  Solely in its capacity as Plan Agent

7                  UNITED STATES BANKRUPTCY COURT

8          CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| 9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | In re<br><br>MTI TECHNOLOGY CORPORATION, a<br>Delaware corporation,<br><br>        Reorganized Debtor. | Case No. 8:07-bk-13347-ES<br><br>Chapter 11<br><br>**NOTICE OF AND MOTION FOR ORDER DISALLOWING CLAIM NO. 519 FILED BY MANCASAL LIMITED; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT THEREOF**<br><br>Date: March 17, 2011<br>Time: 10:30 a.m.<br>Ctrm: 5A<br>      411 West Fourth Street<br>      Santa Ana, CA |

19

20    **TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY**

21    **JUDGE AND ALL INTERESTED PARTIES:**

22    **PLEASE TAKE NOTICE THAT** pursuant to Section 502 of Title 11 of the United

23    States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy (the

24    "Bankruptcy Rules"), and Local Bankruptcy Rule 3007-1, Corporate Recovery Associates, as

25    Plan Agent ("Plan Agent") of the Reorganized Debtor MTI Technology Corporation ("Debtor"

26    or "MTI")) hereby files this objection (the "Objection") to the proof of claim filed by Mancasal

27    Limited (the "Landlord"), as more fully set forth below.  A true and correct copy of the Proof of

28

1  Claim (the "Disputed Claim" or "Claim No. 519"), which was filed by the Landlord and to
2  which objection is taken is attached hereto.

3  **PLEASE TAKE FURTHER NOTICE THAT** this notice ("Notice") contains important
4  time-sensitive information about asserted claims against the Debtor. Please read this Notice in its
5  entirety. This Notice explains the procedures for responding to this Objection and the
6  consequences of failing to submit a timely response to this Objection.

7  **PLEASE TAKE FURTHER NOTICE THAT** Local Bankruptcy Rule 9013-1, made
8  applicable to this Objection pursuant to Local Bankruptcy Rule 3007-1, requires that any
9  response to the Objection be filed with the Clerk of the Court, 411 West 4th Street, Santa Ana,
10 CA 92701, and served upon the attorneys for the Plan Agent at the address set forth in the upper
11 left-hand corner of the first page hereof, and all other interested parties, not later than 14 days
12 prior to the hearing date. The failure to timely file and serve written opposition may be deemed
13 by the Court to be consent to the granting of the relief requested in the Objection.

14 Dated: February 11, 2011

SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation

By: /s/ Christine M. Fitzgerald
Barry R. Gore
Christine M. Fitzgerald
Special Counsel to Corporate Recovery
Associates, solely in its capacity as Plan Agent

---

Notice of and Motion for Disallowing Claim No. 519 filed by
2  Mancasal Limited

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION[1]

A.  Introduction and claim objection

The Plan Agent hereby files this claim objection to the unsecured claim ("Disputed Claim" or "Claim No. 519") filed by Mancasal Limited (the "Landlord"), which is a former landlord of a subsidiary of the Debtor.[2] The Landlord asserts an unsecured, nonpriority claim in the amount of € 123,805.45 related to the Debtor's guaranty of a lease of certain premises in Ireland by that subsidiary of the Debtor; the Disputed Claim was assigned Claim No. 519 in the claims register for this case. The Plan Agent Debtor objects to the Disputed Claim because it:

1.  is not asserted in U.S. dollars but in Euros, so it should be converted to a claim asserted in the amount of $175,803.74;

2.  has not been reduced to reflect the fact that the Landlord has mitigated its damages by re-letting the premises to other tenants; and

3.  does not show that the Landlord attempted to take reasonable steps to mitigate the damages incurred by the Landlord (if the Landlord's damages were not completely mitigated).

Accordingly, the Plan Agent objects to the Disputed Claim and seeks disallowance of the Disputed Claim in its entirety.

B.  The Agreement between the Landlord, the Debtor's Subsidiary and the Debtor

On or about November 25, 1998, McCormick MacNaughton entered a lease agreement (the "Lease") with M.T.I. Technology Ireland Limited ("Tenant"), which is an affiliate of the

---

[1] The information set forth in this section is supported by the annexed declaration of Richard Feferman ("Feferman Declaration").

[2] Pursuant to the terms of the "Debtor's and Committee's Joint Fourth Amended Chapter 11 Plan" [Docket No. 1265] (the "Plan), confirmed by an order entered September 1, 2010, all of the Debtor's assets, including books and records, claims, causes of action, etc., were transferred to the Reorganized Debtor as of the Effective Date of the Plan, which occurred on September 27, 2010. Pursuant to §8.1 of the confirmed Plan, the Plan Agent has the exclusive right to object to claims.

Debtor for the lease of real property located at 5 Blanchardstown Corporate Park, Blanchardstown in the County of Dublin, Ireland (the "Premises), and the Debtor executed the Lease as a guarantor of the Tenant's obligations under the Lease. A true and correct copy of the Lease is attached hereto as **Exhibit "A"**. The Landlord apparently acquired McCormick MacNaughton's interests in the real property underlying the Lease on December 23, 1998; a copy of the sale agreement is attached to Claim No. 519. The Lease had a term of twenty five (25) years commencing on October 15, 1998.

On October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

In 2008, the Tenant filed for bankruptcy in Ireland and surrendered the Premises to the Landlord.

On April 28, 2008, the Landlord filed Claim No. 519, which asserts an unsecured, nonpriority claim in the amount of € 123,805.45 for damages that it asserts as a result of the Tenant's failure to pay certain amounts owing under the Lease for insurance in 2007 (€6,471.00), rent from January 18, 2008 to April 15, 2008 (€71,250), and "service charges," which are basically charges for the common areas related to the Premises, for January 1, 2006 through March 31, 2006 and January 1, 2007 through June 31, 2008 (€46,084.45). Pursuant to the confirmed Plan, the Reorganized Debtor is in possession of the Debtor's books and records, and the Plan Agent is the CEO of the Reorganized Debtor.

C.    The Debtor's Subleases of the Premises to QLogic and AskJeeves

In 2005, the Tenant and QLogic Corporation ("QLogic") entered a sublease agreement (the "QLogic Sublease"), pursuant to which QLogic subleased from the Debtor a portion of the Premises (the "QLogic Premises"). Also in 2005, the Tenant and an affiliate of IAC/InterActiveCorp. ("AskJeeves") entered a sublease agreement (the "AskJeeves Sublease"), pursuant to which AskJeeves subleased from the Debtor the remainder of the Premises (the "AskJeeves Premises"). Pursuant to those subleases, QLogic and AskJeeves (the "Sublessees") would pay to the Tenant the same amount of rent and other charges owed by the Debtor under

1  the Lease, and the Tenant would pay the Landlord under the Lease. If the rents and other
2  charges had not been paid by the Tenant, it was the business practice of the Tenant and the
3  Debtor for the Tenant to advise the Debtor of any unpaid liabilities, which were guaranteed by
4  the Debtor. The Debtor's books and records do not indicate that the Tenant ever advised the
5  Debtor of any such unpaid liabilities until they were asserted in the Disputed Claim, so the
6  Debtor's books and records indicate that all rent and other charges were paid by the Tenant, at
7  least until the time of its bankruptcy filing in Ireland.

8      D.    Mitigation of the Landlord's Damages under the Lease

9      The Plan Agent is informed and believes that the Landlord received rents and other
10 charges from the Sublessees, who stayed in the Premises after the Tenant's bankruptcy filing.
11 The Plan Agent bases this belief on the Debtor's books and records, which do not show any
12 liability to either of the Sublessees by the Tenant or to the Landlord under its guaranty in the
13 Lease.
14     Thus, the Landlord's damages have been mitigated by the Landlord's re-letting of the
15 Premises to the Sublessees and the Landlord's receipt of rents and other charges from them. The
16 Landlord has not provided any evidence with respect to whether its damages were mitigated or
17 any efforts taken to mitigate damages.

18     **II.**

19     **ARGUMENT**

20     A.    THE PLAN AGENT IS A PROPER PARTY TO OBJECT TO CLAIMS

21     Pursuant to Section 502 of the Bankruptcy Code, the allowance or disallowance of claims
22 must be determined by the Court after an objection is made. Section 502 of the Bankruptcy
23 Code provides, in relevant part:

24         (a) A claim ... proof of which is filed under [11 U.S.C. § 501] is deemed
        allowed, unless a party in interest ... objects.
25
26 11 U.S.C. § 502. The Plan Agent not only may bring objections as a party in interest, but is the
27 party upon which devolves the duty to bring objections.
28

B. **THE COURT MUST DETERMINE THE ALLOWABLE AMOUNT OF A CLAIM SUBJECT TO OBJECTION.**

With certain exceptions, Section 502(b) of the Bankruptcy Code requires that:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that --
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). As set forth herein and in the attached Feferman Declaration, the Disputed Claim should be disallowed based on the foregoing provisions.

C. **THE CLAIMANT MUST ESTABLISH THE VALIDITY OF THE CLAIM BY A PREPONDERANCE OF THE EVIDENCE**

A properly executed and filed proof of claim is *prima facie* evidence of the validity and amount of a claim. *In re Vanzandt*, 326 B.R. 737, 746 n. 17 (Bankr. S.D. Iowa 2004) ("Rule 3001 (f) provides: 'A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim.' Fed. R. Bankr. P. 3001 (f)."). If a party in interest objects to a claim, which meets the requirements for *prima facie* validity:

> The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim . . . . In practice, the objector must produce evidence, which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

*Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. Cal. 1995).

If the objector produces sufficient evidence to meet this standard, then the burden shifts to the claimant, and the claimant must "'prove the validity of the claim by a preponderance of the evidence.' The ultimate burden of proof always rests upon the claimant." *In re Fidelity Mortgage Holding Company, Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988); *see In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *In re Pugh*, 157 B.R. 898, 901 (Bankr. 9th Cir. 1993).

1   In this case, the Plan Agent has submitted evidence, which includes the Feferman Declaration and the exhibits attached hereto, to negate any *prima facie* validity to which Claim No. 519 is entitled. The Plan Agent has produced evidence that the Landlord's damages from the Tenant's breach, if any, of the Lease have been either paid by the Tenant by passing along rents and other charges to the Sublessees and remitting funds received from them to the Landlord, or mitigated by the Landlord re-letting the Premises to, and receiving rents from, the Sublessees. Thus, the burden is on the Landlord to prove the validity and amount of the claim by a preponderance of the evidence.

D.  THE LANDLORD HAS NOT MET ITS BURDEN OF PROOF

1.  The Disputed Claim must be converted to United States dollars.

The claim should be converted to United States dollars as of the Petition Date. *USGen New Eng., Inc. v. TransCanada Pipelines, Ltd. (In re USGen New Eng., Inc.)*, 429 B.R. 437, 492 (Bankr. D. Md. 2010) ("[U]nder the plain meaning of 11 U.S.C. § 502(b), the Court shall use the exchange rate in effect on the Petition Date to convert the claim to U.S. dollars."). On October 15, 2007, the exchange rate was approximately 1.42 Euros per dollar, so the asserted amount of Claim No. 212 in U.S. dollars is $175,803.74.

2.  The Landlord has not shown the validity and amount of its claim.

As stated above, with respect to the Plan Agent's objection to the Landlord's claim, the Landlord has not submitted any evidence regarding mitigation of its claim, so the Landlord has not carried its burden of proof in support of Claim No. 519. As explained in detail below, Claim No. 519 does not reflect that the Tenant was paying amounts it received under the Subleases to the Landlord, or that the Landlord re-let the Premises to the Sublessees and thereby mitigated its damages.

First, the Plan Agent has provided evidence that its books and records do not support the amounts asserted as unpaid claims that arose prior to the Petition Date for insurance in 2007 (€6,471.00) and "service charges" for January 1, 2006 through March 31, 2006 and January 1, 2007 through June 31, 2008 (€46,084.45). It was the business practice of the Tenant and the

1 | Debtor for the Tenant to advise the Debtor of any unpaid liabilities, which were guaranteed by
2 | the Debtor. The Debtor's books and records do not indicate that the Tenant ever advised of any
3 | such unpaid liabilities that arose prior to the Petition Date, so the Debtor's books and records
4 | indicate that all rent and other charges for periods prior to the Petition Date were paid by the
5 | Tenant.
6 |      Second, with respect to the remainder of the Disputed Claim, which is for rents after the
7 | Petition Date, all amounts that were actually received as a result of the Landlord re-letting the
8 | Premises, or which should have been received if the Landlord had taken reasonable measures to
9 | mitigate its damages, are deducted from the Landlord's actual damages. *Howard Hughes Props.,*
10 | *L.P. v. FPFI Creditor Trust,* 2002 U.S. Dist. LEXIS 3707 (N.D. Tex. Mar. 7, 2002) (The amount
11 | of a claim is reduced by deducting the amount saved by a landlord's mitigation of damages); *In*
12 | *re Child World,* 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) ("Camco has sustained no loss in
13 | rental value as a result of the debtor's rejection of the Lease with Camco and has actually
14 | benefitted by reletting the Premises to Best Buy at a higher rental value . . . ."); *see also In re All*
15 | *For A Dollar, Inc.,* 191 B.R. 262, 264-65 (Bankr. D.Mass. 1996); *In re Heck's, Inc.,* 123 B.R.
16 | 544 (Bankr. S.D. W.Va. 1991).
17 |      The Sublessees were in possession of the Premises during the periods for which the
18 | Landlord asserts unpaid rents and service charges, and during those periods of time, either the
19 | Tenant collected rents and service charges from the Sublessees and remitted them to the
20 | Landlord, or the Sublessees paid those amounts directly to the Landlord after the Landlord re-let
21 | the Premises to them. Therefore, the Landlord has actually mitigated its damages. The Landlord
22 | has not provided any evidence to show that its damages were not completely mitigated or that it
23 | took reasonable steps to mitigate, as explained below.
24 |      The Plan Agent also raises as a defense to Claim No. 519, that if the Landlord's damages
25 | have not been completely mitigated, then the Landlord has failed to show that it took reasonable
26 | actions to mitigate its damages. *See In re R.O. Elevator Co.,* 93 B.R. 667. *R & O Elevator Co. v.*
27 | *Harmon,* 93 B.R. 667, 671 (D. Minn. 1988) ("The defense that the nonbankrupt party failed to
28 |

1  mitigate damages may be raised by the debtor."); *see Perry v. One Sugar Lakes Prof'l Ctr.*
2  *Partners, L.P. (In re Perry)*, 411 B.R. 368, 377 (Bankr. S.D. Tex. 2009) ("Section 91.006 of the
3  Texas Property Code requires a landlord to mitigate his damages after the breach of a lease . . .
4  ."); *Willis v. Soda Shoppes of California, Inc.*, 134 Cal. App. 3d 899, 904 (Cal. App. 4th Dist.
5  1982) (California Civil Code Section 1951.2(a)(4) requires a lessor to make "reasonable efforts
6  to mitigate his damages by reletting or attempting to relet the property . . . .").

7      The burden is on the Landlord to show that it took reasonable measures to mitigate:

8  > [T]he majority view is that it is the lessor's burden to come forward with evidence demonstrating that it took reasonable measures to mitigate its damages. *Snyder v.*
9  > *Ambrose*, 266 Ill. App. 3d 163, 639 N.E.2d 639, 641, 203 Ill. Dec. 319 (Ill. App.1994) . . . . This approach is reasonable since lessors are in a better position
10 > to come forward with evidence of their efforts to mitigate their damages.

11 *In re Super Thrift Drugs, Inc.*, 2002 Bankr. LEXIS 1923, 11-12 (Bankr. D. Idaho Mar. 12, 2002).
12 The Landlord has provided no evidence of how much it actually received from mitigation or
13 what efforts it took to mitigate its damages. On the other hand, the Plan Agent has provided
14 evidence that the Landlord had no such damages. If the rents and other charges had not been
15 paid by the Tenant, it was the business practice of the Tenant and the Debtor for the Tenant to
16 advise the Debtor of any unpaid liabilities, which were guaranteed by the Debtor. The Debtor's
17 books and records do not indicate that the Tenant ever advised of any such unpaid liabilities, so
18 the Debtor's books and records indicate that all rent and other charges were paid by the Tenant,
19 at least until the time of its bankruptcy filing in Ireland. Accordingly, The Disputed Claim
20 should be disallowed in its entirety.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

## III.

## **CONCLUSION**

For all of the foregoing reasons, the Plan Agent respectfully requests that the Court enter an order disallowing the Disputed Claim in its entirety and granting such other relief as is just and proper.

Dated: February 11, 2011

SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation

By: /s/ Christine M. Fitzgerald
Barry R. Gore
Christine M. Fitzgerald
Special Counsel to Corporate Recovery
Associates, solely in its capacity as Plan Agent

# DECLARATION OF RICHARD FEFERMAN

I, Richard Feferman, declare as follows:

1. I am the principal of Corporate Recovery Associates. Pursuant to the Chapter 11 Plan, confirmed by an Order of the Court entered September 1, 2010, Corporate Recovery Associates is the Plan Agent of MTI Technology Corporation, (the "Debtor" or "MTI"), the Reorganized Debtor in the above-captioned proceeding. Corporate Recovery Associates is also the CEO of the Reorganized Debtor. Prior to Plan confirmation, Corporate Recovery Associates was the financial advisor to the Official Committee of Unsecured Creditors (the "Committee"). In connection with its role as financial advisor to the Committee, I personally interacted at various times with the Debtor, through its employees, including Scott Poteracki, the Debtor's former Chief Financial Officer and former Chief Reorganization Officer, throughout the life of the Chapter 11 case to review and become familiar with the Debtor's books and records. I have personal knowledge of the following, or have gained such knowledge from my review of the records of the Debtor, which were obtained, created and maintained in the ordinary course of business, and if called as a witness, could and would competently testify thereto.

2. The Debtor filed a Chapter 11 petition on October 15, 2007.

3. I am personally familiar with the books and records of the Debtor as they relate to the Debtor's accounts payable as of the date of the filing of the Debtor's bankruptcy case (the "Accounts Payable Books"). I am informed and believe the Accounts Payable Books were made by the employees of the Debtor who had a business duty to enter the records of the Debtor accurately at or near the time of the event which they record such information, by or from information transmitted by someone with personal knowledge of the event or act. To the extent that information contained in the Debtor's books and records was computer-generated, the computers used by the Debtor were generally accepted in the Debtor's industry, were in good working order at all relevant times, and the computer operator possessed the knowledge and training to operate the computer correctly.

4. I have reviewed and analyzed the Debtor's Schedules of Assets and Liabilities

1  (the "Schedules"), the proofs of claim filed in this case, and the database of claims information maintained for the Debtor by Omni Management Group in order to assist in the preparation of these objections to claims. I have also consulted with the Debtors' bankruptcy counsel to assist in the preparation of these objections to claims.

5.  The Debtor's employees have reviewed the Schedules, as well as each Claim filed against the Debtor's estate and have reconciled the Schedules and Claims to the Debtor's books and records. With respect to the leases, the Debtor's employees reviewed lease information.

6.  The Debtor filed the claim objection to the claim filed by Mancasal Limited (the "Landlord"), a true and correct copy of which is attached. The Landlord is a former landlord of the Debtor and has filed an unsecured claim in the amount of €123,805.45. As fully set forth in the attached Objection, the Plan Agent believes the claim should be disallowed in its entirety because the Landlord has mitigated its damages by re-letting the premises to third parties, or it failed to take reasonable steps to mitigate its damages.

7.  From review of historic exchange rates on Google.com (http://www.google.com/finance), the exchange rate for Euros to United States dollars on the Petition Date was approximately 1.42, such that the Claim No. 519's asserted amount is actually $175,803.74 (which equals €123,805.45 multiplied by 1.42 €/$).

8.  On or about November 25, 1998, McCormick MacNaughton entered a lease agreement (the "Lease") with M.T.I. Technology Ireland Limited ("Tenant"), which is an affiliate of the Debtor for the lease of real property located at 5 Blanchardstown Corporate Park, Blanchardstown in the County of Dublin, Ireland (the "Premises), and the Debtor executed the Lease as a guarantor of the Tenant's obligations under the Lease. A true and correct copy of the Lease is attached hereto as **Exhibit "A"**.

9.  On October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

10.  In 2008, the Tenant filed for bankruptcy in Ireland and surrendered the Premises to the Landlord.

11. On April 28, 2008, the Landlord filed Claim No. 519, which asserts an unsecured, nonpriority claim in the amount of € 123,805.45 for damages that it asserts as a result of the Tenant's failure to pay certain amounts owing under the Lease.

12. In 2005, the Tenant and QLogic Corporation ("QLogic") entered a sublease agreement (the "QLogic Sublease"), pursuant to which QLogic subleased from the Debtor a portion of the Premises (the "QLogic Premises"). Also in 2005, the Tenant and an affiliate of IAC/InterActiveCorp. ("AskJeeves") entered a sublease agreement (the "AskJeeves Sublease"), pursuant to which AskJeeves subleased from the Debtor the remainder of the Premises (the "AskJeeves Premises"). Pursuant to those subleases, QLogic and AskJeeves (the "Sublessees") would pay to the Tenant the same amount of rent and other charges owed by the Debtor under the Lease, and the Tenant would pay the Landlord under the Lease. If the rents and other charges had not been paid by the Tenant, it was the business practice of the Tenant and the Debtor for the Tenant to advise the Debtor of any unpaid liabilities, which were guaranteed by the Debtor. The Debtor's books and records do not indicate that the Tenant ever advised of the Debtor any such unpaid liabilities until they were asserted in the Disputed Claim, so the Debtor's books and records indicate that all rent and other charges were paid by the Tenant, at least until the time of its bankruptcy filing in Ireland.

13. The Plan Agent is informed and believes that the Landlord received rents and other charges from the Sublessees, who stayed in the Premises after the Tenant's bankruptcy filing. The Plan Agent bases this belief on the Debtor's books and records (other than the Disputed Claim), which do not show any liability to either of the Sublessees by the Tenant or any liability by the Tenant to the Landlord, which the Debtor guaranteed under the Lease.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on ~~December~~ __, ~~2010,~~ ~~at~~ San Diego__, California. Jan 21, 2011

Richard Feferman