any portion of the Retained Assets, or any Merger Transaction or any other transaction involving the Debtor, the Post-Effective Date Stock or the Retained Assets.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date and year first above written.

SELLER:                               *Plan Agent*                BUYER:

CORPORATE RECOVERY ASSOCIATES, LLC        FIBER INTERNATIONAL, LLC

By: _Richard J. Feferman_                By: _Robert Evans_

Its: _Managing Member_                   Its: _Founder/CEO_

## EXHIBIT 1

## DEBTOR'S REMAINING ASSETS

### (Paragraph G)

1)      Cash   $834,085.34

2)      Possible claims against third parties, including, without limitation, claims of the type

described in Section 1.2.5 hereof

3)      The IP address block 144.86.0.0 – 144.86.255.255, CIDR 144.86.0.0/16 provided to MTI

Technologies (MTITEC) on November 20, 1990.  This information is published in the

publicly accessible American Registry of Internet Numbers commonly known as ARIN.

4)      Possible interests in intellectual property

5)      Assets that are not listed above and that are unknown to the Plan Agent

**EXHIBIT 2**

**<u>PLAN</u>**

**(Paragraph H)**

1  Scott C. Clarkson, Esq. (CA Bar No. 143271)
   Eve A. Marsella, Esq. (CA Bar No. 165797)
2  Clarkson, Gore & Marsella, APLC
   3424 Carson Street, Suite 350
3  Torrance, California 90503
   Telephone: 310/542-0111
4  Facsimile: 310/214-7254
   Email: sclarkson@lawcgm.com
5
   Attorneys for Debtor and Debtor-in-Possession
6  MTI Technology Corporation
7  Robert E. Opera, Esq. (CA Bar No. 101182)
8  Winthrop Couchot Professional Corporation
   660 Newport Center Drive, Suite 400
9  Newport Beach, CA 92660
   Telephone: 949/720-4100
10 Facsimile: 949/720-4111
   Email: ropera@winthropcouchot.com
11
12 Attorneys for the Official Committee
   of Unsecured Creditors
13

14          UNITED STATES BANKRUPTCY COURT

15          CENTRAL DISTRICT OF CALIFORNIA

16              SANTA ANA DIVISION

17

18 In re                              Case No.: 8:07-13347-ES

19 MTI TECHNOLOGY CORPORATION, a      Chapter 11
   Delaware corporation,
20                                     **DEBTOR'S AND COMMITTEE'S JOINT**
              Debtor                   **FOURTH AMENDED CHAPTER 11 PLAN**
21
22                                     Date:      August 26, 2010
                                       Time:      10:30 a.m.
23                                     Location:  Courtroom 5A
24                                     Judge:     The Honorable Erithe A. Smith
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................2

II.    DEFINITIONS AND RULES OF CONSTRUCTION ........................................3
    2.1     Defined Terms ...........................................................................................3
    2.2     Rules of Interpretation ............................................................................17
    2.3     Exhibits ....................................................................................................18

III.   UNCLASSIFIED CLAIMS .................................................................................18
    3.1     Allowed Administrative Claims...............................................................18
        3.1.1   Payment .......................................................................................19
        3.1.2   Administrative Claims Bar Date ..................................................19
        3.1.3   Deadline for Objections...............................................................19
        3.1.4   United States Trustee Fees ..........................................................20
        3.1.5   Pre-Effective Date Professional Fee Claims...............................20
    3.2     Allowed Priority Tax Claims...................................................................20

IV.    CLASSIFICATION OF CLAIMS AND INTERESTS .......................................21
    4.1     Overview ..................................................................................................21
    4.2     Designation of Classes.............................................................................21
        4.2.1   Allowed Claims............................................................................21
        4.2.2   Interests........................................................................................22
    4.3     Summary of Classification.......................................................................22

V.     TREATMENT OF CLASSES UNDER THIS PLAN .........................................23
    5.1     Class 1 -- Any Allowed Secured Claims .................................................23
        5.1.1   Treatment of Allowed Secured Claims ........................................23
    5.2     Class 2 -- Allowed Priority Non-Tax Claims ..........................................24
        5.2.1   Treatment of Allowed Non-Tax Priority Claims..........................23
    5.3     Class 3 -- Allowed General Unsecured Claims .......................................24
        5.3.1   Treatment of Allowed General Unsecured Claims .......................24
    5.4     Class 4 -- Canopy Claim ..........................................................................27
        5.4.1   Treatment of Canopy Claim .........................................................27
    5.5     Class 5 -- Allowed Subordinated Claims.................................................27
        5.5.1   Treatment of Allowed Subordinated Claims ...............................27
    5.6     Class 6 -- Allowed Interests .....................................................................29
        5.6.1   Treatment of Allowed Interests ...................................................29

VI.    PLAN IMPLEMENTATION ..............................................................................30
    6.1     Overview ..................................................................................................30
    6.2     Condition Precedent to Plan Confirmation..............................................30
    6.3     Conditions Precedent to the Effectiveness of the Plan ...........................31
    6.4     Implementation of Plan............................................................................32
    6.5     Corporate Action......................................................................................32

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

i

MTI Plan v.3.0

# TABLE OF CONTENTS

## (Continued)

|  |  |  | Page |
|---|---|---|---|
| 6.6 | Plan Agent/Vesting of Assets | | 32 |
| | 6.6.1 | Employment of Plan Agent | 32 |
| | 6.6.2 | Transfer of Assets | 32 |
| | 6.6.3 | Disposition of Plan Assets | 33 |
| 6.7 | Termination of Debtor's Officers, Directors, Employees and Professionals | | 33 |
| 6.8 | Plan Fund Proceeds/Plan Administration | | 33 |
| | 6.8.1 | Distribution of Plan Fund Proceeds | 33 |
| | 6.8.2 | Plan Agent's Implementation of Plan | 33 |
| | 6.8.3 | Representative of the Estate | 34 |
| | 6.8.4 | Plan Agent Disclosure | 34 |
| | 6.8.5 | No Liability of Post-Effective Date Committee, the Plan Agent or the Reorganized Debtor | 34 |
| | 6.8.6 | Funding of Post-Effective Date Plan Expenses | 35 |
| 6.9 | Termination of the Committee and Appointment of the Post-Effective Date Committee | | 35 |
| | 6.9.1 | Replacement of Committee | 35 |
| | 6.9.2 | Members of Post-Effective Date Committee | 36 |
| | 6.9.3 | Duties of Members of Post-Effective Date Committee | 36 |
| 6.10 | The Reorganized Debtors | | 36 |
| | 6.10.1 | Corporate Powers | 36 |
| | 6.10.2 | Board of Directors | 37 |
| | 6.10.3 | Officer of Reorganized Debtor | 37 |
| | 6.10.4 | Effectuation of Merger Transaction | 37 |
| 6.11 | Causes of Action | | 38 |
| 6.12 | Post-Effective Date Professional Fees | | 38 |
| 6.13 | Approval for Disposition of Plan Assets | | 39 |
| 6.14 | Compromise of Controversies | | 39 |
| 6.15 | Bankruptcy Court Approval Relative to Post-Confirmation Matters | | 39 |
| 6.16 | Plan Agent Certification | | 39 |
| 6.17 | Final Decree | | 40 |
| 6.18 | Merger Transaction | | 40 |
| | 6.18.1 | Background | 40 |
| | 6.18.2 | Merger Consummation Date | 40 |
| | 6.18.3 | Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized Debtor | 41 |
| | 6.18.4 | Terms of any Merger Transaction | 41 |
| | 6.18.5 | Valuation of Post-Effective Date Stock | 42 |
| | 6.18.6 | Election Not to Receive Post-Effective Date Stock | 42 |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

ii

1

**TABLE OF CONTENTS**

2

**(Continued)**

3

Page

4  VII.  DISTRIBUTIONS .................................................................................43

5      7.1  Designation and Role of the Disbursing Agent .........................42

        7.1.1  Plan Agent to Serve as Disbursing Agent ....................42

6      7.1.2  No Bond......................................................................43

        7.1.3  Payment of Fees and Expenses of Disbursing Agent .........43

7      7.1.4  Employment of Agents...............................................43

      7.2  Distribution of Property Under this Plan .................................43

8      7.2.1  Cash Distributions .......................................................43

        7.2.2  Setoffs and Recoupment ..............................................43

9      7.2.3  No De Minimis Distributions .......................................44

10     7.2.4  Timeliness of Distributions .........................................44

        7.2.5  Limitation on Liability.................................................44

11     7.2.6  Delivery of Distributions .............................................44

        7.2.7  Undeliverable Distributions.........................................45

12     7.2.8  Disposition of Unclaimed Property ..............................45

        7.2.9  Approval for Schedule of Proposed Distributions...........46

13     7.2.10  Compliance with Tax Requirements ............................46

14     7.2.11  Further Assurances Regarding Distributions.................46

        7.2.12  Creditor's Payment of Obligations or Turn Over of

15          Property to the Plan Agent ....................................46

16  VIII.  OBJECTIONS TO DISPUTED CLAIMS.......................................48

        8.1  Exclusive Right to Object to Claims ......................................47

17     8.2  Claims Objection Deadline ..................................................47

        8.3  Investigation Regarding Disputed Claims ...............................47

18     8.4  Treatment of Disputed Claims ..............................................48

19       8.4.1  No Distribution Pending Allowance ..........................48

          8.4.2  Distribution After Allowance ....................................48

20       8.4.3  Reserve for Disputed Claims.....................................48

21       8.4.4  No Distribution Until Allowance of Disputed Claims ........49

        8.5  Bar Date for Filing Avoidance Action Payment Claims .........49

22

23  IX.  LITIGATION......................................................................................50

        9.1  Plan Agent's Authorization to Assert Causes of Action ............49

24     9.2  Plan Agent's Evaluation of Causes of Action .........................50

        9.3  Retention of Professionals .....................................................50

25     9.4  Preservation of Causes of Action ...........................................50

        9.5  Subordination of Claims ......................................................51

26  X.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............52

        10.1  Executory Contracts and Unexpired Leases Being Assumed............51

27     10.2  Executory Contracts and Unexpired Leases Being Rejected............52

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

iii

**Exhibit A, page 88**
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch__11_Plan.DOC

**TABLE OF CONTENTS**

**(Continued)**

|  |  | Page |
|---|---|---|
| 10.3 | Retention of Property Rights | 53 |
| 10.4 | Bar Date for Rejection Claims | 53 |
| 10.5 | Cure Claims Schedule | 53 |
| **XI.** | **EFFECT OF CONFIRMATION OF THIS PLAN** | 55 |
| 11.1 | Discharge | 54 |
| 11.2 | Injunction | 54 |
| 11.3 | Release | 55 |
| 11.4 | Distribution of Property Free and Clear of Liens, Claims, and Interests | 56 |
| 11.5 | Binding Effect of Plan | 56 |
| **XII.** | **LIMITATION OF LIABILITY** | 57 |
| 12.1 | No Liability for Solicitation or Participation | 56 |
| 12.2 | Good Faith | 56 |
| 12.3 | Limitation of Liability Regarding Plan Confirmation | 56 |
| **XIII.** | **OTHER PLAN PROVISIONS** | 58 |
| 13.1 | Exemption from Stamp, Transfer and Other Taxes | 57 |
| 13.2 | Books and Records | 57 |
| 13.3 | Post-Effective Date Quarterly Fees | 57 |
| 13.4 | Post-Effective Date Status Report | 57 |
| 13.5 | Effectiveness of Court Orders | 58 |
| 13.6 | No Admissions | 58 |
| 13.7 | Revocation of the Plan | 58 |
| 13.8 | Severability of Plan Provisions | 58 |
| 13.9 | Governing Law | 59 |
| 13.10 | Retention of Jurisdiction | 59 |
| 13.11 | Successors and Assigns | 61 |
| 13.12 | Business Day | 61 |
| 13.13 | No Waiver | 61 |
| 13.14 | Post-Effective Date Notice | 62 |
| 13.15 | Modification of the Plan | 62 |
| 13.16 | Nonconsensual Confirmation | 62 |
| 13.17 | Other Documents and Actions | 62 |
| 13.18 | Notices | 63 |
| 13.19 | Inconsistencies | 63 |
| 13.20 | Changes in Rates Subject to Regulatory Commission Approval | 63 |
| 13.21 | Modification/Superseding of Loan and Security Agreements | 63 |
| 13.22 | Implementation of Section 1142 of the Bankruptcy Code | 63 |
| **XIV.** | **RECOMMENDATION AND CONCLUSION** | 65 |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

iv

MTI Plan v.3.0

MTI Technology Corporation and the Official Committee of Unsecured Creditors hereby propose jointly this Joint Fourth Amended Chapter 11 Plan and request confirmation hereof pursuant to section 1129 of the Bankruptcy Code.

## I.

## INTRODUCTION

This Plan is proposed jointly by the Debtor and by the Committee for the resolution of the Claims against the Estate.[1] This Plan provides for a comprehensive debt restructuring of the Debtor. Pursuant to this Plan, the Allowed Claims of Creditors will be paid in accordance with the terms and conditions of this Plan and otherwise will be discharged.

Sent to you in the same envelope as this Plan is the Debtor's Disclosure Statement. The Disclosure Statement has been approved by the Bankruptcy Court, and is being provided along with this Plan in order to help you to understand this Plan and to evaluate the merits of this Plan. The Disclosure Statement discusses, among other things, the Debtor's business, the results of the Debtor's operations, the Debtor's assets and liabilities and the material terms of this Plan. Creditors are encouraged to read the Disclosure Statement.

The objective of this Plan is to liquidate the Debtor's Assets for the benefit of Creditors and make Distributions to the holders of Allowed Claims. By this Plan, the Reorganized Debtor will continue in existence as appropriate to effectuate a Merger Transaction prior to the Merger Consummation Date, with any value obtained from any such Merger Transaction distributed to holders of Allowed General Unsecured Claims in accordance with the terms and conditions of this Plan.

This Plan divides Creditors and Interest Holders into Classes based upon their respective legal rights and interests, and provides for the satisfaction of Allowed Claims in accordance with the terms and conditions of this Plan. Interest Holders will not receive or retain any value on account of their Interests, except as provided expressly to the contrary in Section 5.6 hereof.

---

[1] The definitions of the capitalized terms contained herein are set forth in Article II of this Plan.

UNLESS SPECIFICALLY SET FORTH IN THIS PLAN TO THE CONTRARY, THE INFORMATION CONTAINED OR REFERRED TO IN THIS PLAN HAS NOT BEEN SUBJECT TO CERTIFIED AUDIT. RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY ON BOOKKEEPING PERFORMED INTERNALLY BY THE DEBTOR. ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT HEREIN ACCURATE FINANCIAL INFORMATION, THE RECORDS KEPT BY THE DEBTOR ARE NEITHER WARRANTED NOR REPRESENTED TO BE FREE OF INACCURACY. NEITHER THE PLAN PROPONENTS NOR ANY OF THE PROFESSIONALS EMPLOYED BY THE PLAN PROPONENTS HAS INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN, AND NONE OF THEM MAKES ANY REPRESENTATION OR WARRANTY WITH RESPECT TO THE ACCURACY OF SUCH INFORMATION.

ANY CREDITOR ENTITLED TO VOTE ON THIS PLAN IS URGED TO REVIEW CAREFULLY THIS PLAN PRIOR TO VOTING ON THIS PLAN, AND MAY DESIRE TO CONSULT WITH ITS OWN LEGAL COUNSEL PRIOR TO VOTING ON THIS PLAN IN ORDER TO ENSURE A COMPLETE UNDERSTANDING OF THE TERMS OF THIS PLAN.

## II.

## DEFINITIONS AND RULES OF CONSTRUCTION

2.1     **Defined Terms.**  The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below.

2.1.1     **"Administrative Claim"** means a Claim for costs or expenses that are allowable under sections 503(b) or 507(b) of the Bankruptcy Code or 28 U.S.C. § 1930. These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Estate after the Petition Date; (b) Ordinary Course Administrative Claims; (c) Pre-Effective Date Professional Fee Claims; (d) Administrative Tax Claims; and (e) United States Trustee Fees.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

3

**2.1.2** "**Administrative Claims Bar Date**" has the meaning set forth in Section 3.1.2 of this Plan.

**2.1.3** "**Administrative Claims Objection Deadline**" has the meaning set forth in Section 3.1.3 of this Plan.

**2.1.4** "**Administrative Tax Claim**" means a Tax Claim, other than a Secured Claim, that a governmental unit asserts against the Debtor for any tax period that, in whole or in part, falls within the period commencing on the Petition Date and ending on the Effective Date.

**2.1.5** "**Allowed Administrative Claim**" means an Administrative Claim that is allowed as set forth in Section 3.1 hereof or otherwise by a Final Order.

**2.1.6** "**Allowed Avoidance Action Payment Claim**" means an Allowed Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action. Any Allowed Avoidance Action Payment Claim shall be treated hereunder as a Class 3 Claim.

**2.1.7** "**Allowed Claim**" means a Claim (a) that is listed in the Bankruptcy Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (b) with respect to which a Proof of Claim has been filed by the Bar Date, and as to which no objection is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order. The amount of an Allowed Claim shall be as follows: (i) if the Creditor did not file a Proof of Claim with the Bankruptcy Court on or before the Bar Date, the amount of the Creditor's Claim as listed in the Bankruptcy Schedules as neither disputed, contingent, unliquidated or unknown; or (ii) if the Creditor filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, (1) the amount stated in such Proof of Claim if no objection to such Proof of Claim is filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court, or (2) the amount thereof fixed by a Final Order of the Bankruptcy Court

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

4

if an objection to such Proof of Claim is filed within the time period fixed by the

Bankruptcy Code, the Bankruptcy Rules, this Plan or by order of the Bankruptcy Court.

Any Claim that is not filed by the Bar Date and that is listed in the Bankruptcy Schedules as

disputed, unliquidated, contingent or unknown, or that is not allowed under the terms of this

Plan, shall be disallowed, and no Distribution shall be made on account of such Claim.  No

default interest or late charges or comparable fees, charges or penalties shall be included as

part of an Allowed Claim.

     **2.1.8**     "**Allowed Class '\*\*' Claim**" means an Allowed Claim classified in the

specified Class.

     **2.1.9**     "**Allowed Deficiency Claim**" means that portion of an Allowed Claim

that is in excess of the value of any Collateral which is security for the repayment of such

Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

     **2.1.10**     "**Allowed General Unsecured Claim**" means an unsecured Allowed

Claim against the Debtor, however arising, not entitled to priority under section 507(a) of

the Bankruptcy Code, including, without limitation, an Allowed Deficiency Claim, an

Allowed Rejection Claim or an Allowed Avoidance Action Payment Claim.

     **2.1.11**     "**Allowed Interest**" means an Interest to the extent, and only to the extent,

of the amount of such Interest allowed by this Plan or by Final Order of the Bankruptcy

Court.

     **2.1.12**     "**Allowed Penalty Claims**" means a Penalty Claim that is allowed by a

Final Order.  Any Allowed Penalty Claim shall be treated hereunder as an Allowed Class 5

Claim.

     **2.1.13**     "**Allowed Priority Non-Tax Claim**" means an unsecured Allowed Claim

entitled to priority pursuant to sections 507(a)(4), 507(a)(5), or 507(a)(7) of the Bankruptcy

Code.

     **2.1.14**     "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to

priority under section 507(a)(8) of the Bankruptcy Code.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

5

**2.1.15** **"Allowed Rejection Claim"** means any Allowed General Unsecured Claim based upon or arising from the rejection of an executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court or pursuant to this Plan. Any Allowed Rejection Claim shall be treated hereunder as a Class 3 Claim.

**2.1.16** **"Allowed Secured Claim"** means an Allowed Claim secured by a valid and unavoidable Lien against property in which the Estate has an interest, or which is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with section 506(a) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the Estate's interest in such property, or to the extent of the amount subject to any setoff, as the case may be. Unpaid principal and any accrued interest allowable under section 506 of the Bankruptcy Code with respect to an Allowed Secured Claim shall be computed as of the Effective Date, and the Allowed Secured Claim shall thereafter bear interest as provided in this Plan.

**2.1.17** **"Allowed Subordinated Claim"** means any Allowed Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

**2.1.18** **"Assets"** means all assets and properties of the Debtor's Estate including "property of the estate" as described in section 541 of the Bankruptcy Code.

**2.1.19** **"Avoidance Action"** means an adversary proceeding, lawsuit or other action or proceeding filed pursuant to sections 502(d), 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or proceeding based on applicable non-bankruptcy law that may be incorporated or brought under the foregoing sections of the Bankruptcy Code, an adversary proceeding, lawsuit or other action or proceeding arising under, or relating to, any similar state law or federal law, and any other similar action or proceeding filed to recover property for or on behalf of the Estate, or to avoid a Lien or transfer, whether or not such adversary proceeding, lawsuit, action or proceeding is initiated on or before the Effective Date.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

**2.1.20** "**Avoidance Action Payment Claim**" means a Claim based upon or arising from an entity's payment to the Debtor or Reorganized Debtor of a claim asserted against the entity pursuant to an Avoidance Action.

**2.1.21** "**Bankruptcy Code**" means the United States Bankruptcy Code, as set forth in 11 U.S.C. §§ 101-1532, as now in effect and as may be hereafter amended.

**2.1.22** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

**2.1.23** "**Bankruptcy Rules**" means, collectively, the Federal Bankruptcy Rules and the Local Bankruptcy Rules.

**2.1.24** "**Bankruptcy Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor in the Case, as they may have been amended and as they may be amended hereafter from time to time.

**2.1.25** "**Bar Date**" means the last date for Creditors and Interest Holders whose Claims or Interests, respectively, are not scheduled, or whose Claims or Interests are scheduled in the Bankruptcy Schedules as disputed, contingent, unliquidated or unknown as to amount, to file Proofs of Claim or Interests, as set forth in an order of the Bankruptcy Court entered on April 7, 2008.

**2.1.26** "**Business Day**" means any day other than a Saturday, Sunday or a legal holiday (as defined in Rule 9006(a) of the Federal Bankruptcy Rules).

**2.1.27** "**Canopy**" means Canopy Group, Inc.

**2.1.28** "**Canopy Claim**" means the Allowed Claim of Canopy.

**2.1.29** "**Case**" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and bearing Case Number 8:07-13347-ES.

**2.1.30** "**Case Closing Date**" means the date on which the Bankruptcy Court enters a Final Decree closing the Case, in accordance with section 350 of the Bankruptcy Code.

**2.1.31** "**Cash**" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar forms of payment or exchange.

7

Exhibit A, page 95
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.32** "**Causes of Action**" means any and all claims, demands, rights, actions, causes of action and suits of the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, that the Debtor or the Debtor's Estate has or asserts, or may have or assert, against third parties, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to (a) rights of setoff, counterclaim or recoupment, (b) claims on contracts or for breaches of duties imposed by law, (c) rights to object to Claims or Interests, (d) such claims and defenses as fraud, mistake, duress or usury, (e) Avoidance Actions, (f) claims for tax refunds, (g) claims to recover accounts receivable, and (h) any other claims which may be asserted against third parties.

**2.1.33** "**Claim**" means a "claim" against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**2.1.34** "**Claims Objection Deadline**" means the latest of the following dates: (a) the one hundred eightieth (180th) day after the Effective Date; (b) with respect to a specific Claim, the ninetieth (90th) day after a Proof of Claim with respect to such Claim is filed by a Creditor; (c) with respect to a Claim that is not listed in the Bankruptcy Schedules, the ninetieth (90th) day after the Plan Agent learns of the existence of such Claim; or (d) such greater period of limitation as may be fixed or extended by the Bankruptcy Court or by agreement between the Plan Agent and the Creditor.

**2.1.35** "**Class**" means a group of Claims or Interests as classified in Article IV of this Plan.

**2.1.36** "**Collateral**" means any property or interest in property of the Estate subject to a Lien of a Secured Creditor that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable federal or state law.

**2.1.37** "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Case by the United States Trustee.

8

**2.1.38** "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court.

**2.1.39** "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**2.1.40** "**Confirmation Hearing**" means the hearing before the Bankruptcy Court to consider the confirmation of this Plan pursuant to section 1128(a) of the Bankruptcy Code, as such hearing may be continued from time to time.

**2.1.41** "**Confirmation Hearing Date**" means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

**2.1.42** "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

**2.1.43** "**Creditor**" means the holder of a Claim against the Debtor.

**2.1.44** "**Cure Claims**" has the meaning set forth in Section 10.5 of this Plan.

**2.1.45** "**Cure Claims Schedule**" has the meaning set forth in Section 10.5 of this Plan.

**2.1.46** "**Debtor**" means MTI Technology Corporation, the debtor and debtor-in-possession in the Case.  For the purpose of this Plan, references to the "Debtor" shall include the Reorganized Debtor.

**2.1.47** "**Deficiency Claim**" means that portion of a Claim that is in excess of the value of the Collateral which is security for the repayment of such Claim, calculated in accordance with the provisions of section 506 of the Bankruptcy Code.

**2.1.48** "**De Minimis Distribution**" has the meaning set forth in Section 7.2.3 of this Plan.

**2.1.49** "**Disbursing Agent**" means the entity charged with making Distributions under this Plan.  The Plan Agent shall serve as Disbursing Agent under this Plan.

**2.1.50** "**Disclosure Statement**" means the Joint Third Amended Disclosure Statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy

9

MTI Plan v3.0

Code, as may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules.

**2.1.51** "**Disclosure Statement Order**" means the Final Order entered by the Bankruptcy Court approving the Disclosure Statement.

**2.1.52** "**Disputed Claim**" means any Claim as to which: (a) a Proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; (b) a Proof of Claim has been filed, to the extent to which the stated amount of such Claim exceeds the amount of such Claim listed in the Bankruptcy Schedules; (c) a Proof of Claim has been filed and such Claim is not listed in the Bankruptcy Schedules; (d) a Proof of Claim has been filed, or is deemed filed under Rule 3003(b)(1) of the Federal Bankruptcy Rules, and is listed in the Bankruptcy Schedules as contingent, disputed, liquidated, or unknown as to amount; or (e) an objection, or request for estimation, has been filed by the Claims Objection Deadline and such objection or request for estimation has neither been withdrawn nor been denied by a Final Order.

**2.1.53** "**Disputed Claims Reserve**" has the meaning set forth in Section 8.4.3 of this Plan.

**2.1.54** "**Distribution**" means any transfer under the Plan of Cash, or other property or instruments, to the holder of an Allowed Claim.

**2.1.55** "**Distribution Schedule**" has the meaning set forth in Section 7.2.9 of this Plan.

**2.1.56** "**Effective Date**" means the eleventh (11th) day following the waiver or satisfaction of the conditions set forth in Section 6.3 of this Plan.

**2.1.57** "**Estate**" means the estate created in the Case under section 541 of the Bankruptcy Code.

**2.1.58** "**Expenses**" has the meaning set forth in Section 2.1.88 of this Plan.

**2.1.59** "**Federal Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as now in effect and as may be hereafter amended.

**2.1.60** "**Final Decree**" has the meaning set forth in Section 6.17 of this Plan.

10

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.61**   **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or to obtain a rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or obtain a rehearing shall have been waived in writing in form and substance satisfactory to the Plan Proponents prior to the Effective Date, or to the Plan Agent after the Effective Date, as applicable, or, in the event that an appeal, writ of certiorari, or proceeding for reargument or rehearing of such order or judgment has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

**2.1.62**   **"General Unsecured Claim"** means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, the Canopy Claim or a Subordinated Claim, including, without limitation, a Rejection Claim, a Deficiency Claim or an Avoidance Action Payment Claim.

**2.1.63**   **"Initial Distribution Date"** has the meaning set forth in Section 7.2.8 of this Plan.

**2.1.64**   **"Interest"** means an "equity security" in the Debtor, as such term is defined in section 101(16) of the Bankruptcy Code, no matter how held, including, without limitation, issued and outstanding shares of MTI Stock, and all rights and interests arising thereunder, and all rights to acquire equity securities in the Debtor, including, without limitation, pursuant to options, warrants, employee plans, or similar agreements, contracts or instruments, provided that such rights are exercised on or prior to the Effective Date.

**2.1.65**   **"Interest Holder"** means a holder of an Interest.

**2.1.66**   **"Internal Revenue Code"** means the Internal Revenue Code of 1986, now in effect and as may be hereafter amended.

MTI Plan v3.0

**2.1.67** **"Late-Filed Claim"** means any General Unsecured Claim described in sections 726(a)(2)(C) or 726(a)(3) of the Bankruptcy Code.

**2.1.68** **"Lien"** means any lien, security interest, mortgage, deed of trust, encumbrance, pledge or other charge against Assets of the Debtor.

**2.1.69** **"Loan Documents"** has the meaning set forth in Section 13.21 of this Plan.

**2.1.70** **"Local Bankruptcy Rules"** means the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect and as may be hereafter amended.

**2.1.71** **"Merger Consummation Date"** has the meaning set forth in Section 6.18.2 of this Plan.

**2.1.72** **"Merger Transaction"** has the meaning set forth in Section 6.18.1 of this Plan.

**2.1.73** **"MTI Stock"** means the issued and outstanding shares of common stock and preferred stock of the Debtor as of the Effective Date.

**2.1.74** **"Ordinary Course Administrative Claim"** means an Administrative Claim allowable under section 503(b) of the Bankruptcy Code, that is incurred in the ordinary course of the Debtor's operations or the Case, or the payment of which is provided for by an order of the Bankruptcy Court, exclusive of any Pre-Effective Date Professional Fee Claims, Administrative Tax Claims and United States Trustee Fees.

**2.1.75** **"Penalty Claim"** means any Claim for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy Code.

**2.1.76** **"Petition Date"** means October 15, 2007, the date on which the Debtor filed its voluntary petition commencing the Case.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

12

**2.1.77** **"Plan"** means this Joint Fourth Amended Chapter 11 Plan, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be altered, amended, or modified from time to time.

**2.1.78** **"Plan Agent"** means the entity appointed by this Plan to administer this Plan and to make the Distributions provided by this Plan, in accordance with the provisions of Section 6.6.1 of this Plan.

**2.1.79** **"Plan Agent Certification"** has the meaning set forth in Section 6.16 of this Plan.

**2.1.80** **"Plan Agent Disclosure"** has the meaning set forth in Section 6.8.4 of this Plan.

**2.1.81** **"Plan Assets"** means the Assets, which shall be transferred on the Effective Date of this Plan to the Reorganized Debtor, to be administered by the Plan Agent, free and clear of any Liens that otherwise might have existed in favor of any Secured Creditor.

**2.1.82** **"Plan Fund"** means a segregated, interest-bearing account established at a financial institution which is an authorized depository under United States Trustee Guidelines, into which the Plan Agent will deposit all Cash of the Estate as of the Effective Date, less the Cash used to make, or reserve for the making of, the Distributions required to be made on or about the Effective Date, and all Cash received by the Reorganized Debtor after the Effective Date. The Plan Fund Proceeds shall be made available for making Distributions to the following Creditors: the holders of Allowed General Unsecured Claims; Canopy on account of any Canopy Claim; any Allowed Subordinated Claims; and for paying the Post-Effective Date Plan Expenses.

**2.1.83** **"Plan Fund Proceeds"** means the Cash available in the Plan Fund for making Distributions on account of Allowed General Unsecured Claims, the Canopy Claim, and any Allowed Subordinated Claims and for paying the Post-Effective Date Plan Expenses.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

13

**2.1.84** **"Plan Proponents"** means, together, the Debtor and the Committee, the proponents of this Plan.

**2.1.85** **"Post-Effective Date Committee"** means the Committee, as it shall be reconstituted and function after the Effective Date, pursuant to the provisions of this Plan.

**2.1.86** **"Post-Effective Date Committee Disclosure"** has the meaning set forth in Section 6.9.1 of this Plan.

**2.1.87** **"Post-Effective Date Notice Parties"** has the meaning set forth in Section 6.16 of this Plan.

**2.1.88** **"Post-Effective Date Plan Expenses"** means all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured, non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the Effective Date related to the implementation of this Plan, including, but not limited to:  (a) the Expenses associated with administering this Plan, including any taxes assessed against the Assets; (b) all United States Trustee Fees; (c) the Expenses associated with making the Distributions required by this Plan; (d) any Expenses associated with preparing and filing tax returns and paying taxes; (e) any reasonable Expenses incurred by a member of the Post-Effective Date Committee, but excluding the attorneys' fees or other professional fees, if any, incurred by it, except for any such fees to which it is entitled by indemnification; (f) the Expenses of independent contractors and Professionals providing services to the Plan Agent or the Post-Effective Date Committee; (g) the Expenses associated with the Plan Agent's indemnity obligations, the purchase of errors and omissions insurance and/or other forms of indemnification; and (h) the fees of the Plan Agent, and the reimbursement of expenses, to which the Plan Agent is entitled under this Plan.

**2.1.89** **"Post-Effective Date Stock"** means any shares of common stock in the Reorganized Debtor issued on account of the holders of Allowed General Unsecured Claims, pursuant to section 1145 of the Bankruptcy Code, in accordance with the provisions of Sections 5.3.1.5 and 6.18 of this Plan.

14

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**2.1.90**    **"Postpetition Interest"** means any interest accrual on any Allowed Claim from and after the Petition Date, in accordance with the provisions of Sections 5.3.1.3 and 5.5.1.3 of this Plan. Any Postpetition Interest shall accrue at the federal judgment rate, as set forth in 28 U.S.C. § 1961(a), in effect as of the Petition Date.

**2.1.91**    **"Pre-Effective Date Professional"** means a person employed in the Case prior to the Effective Date pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code.

**2.1.92**    **"Pre-Effective Date Professional Fee Claim"** means:

(a)    A Claim of a Pre-Effective Date Professional under sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for compensation for services rendered or expenses incurred prior to the Effective Date on behalf of the Estate; or

(b)    A Claim, arising prior to the Effective Date, either under section 503(b)(4) of the Bankruptcy Code or under section 503(b)(3)(D) of the Bankruptcy Code.

**2.1.93**    **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

**2.1.94**    **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**2.1.95**    **"Professional"** means any attorney, accountant, appraiser, auctioneer, broker, financial consultant, expert or other professional person.

**2.1.96**    **"Proof of Claim"** means a statement under oath filed in the Case by a Creditor in which the Creditor sets forth the amount claimed to be owed to it and detail sufficient to identify the basis for the Claim, in accordance with Rule 3001 of the Federal Bankruptcy Rules.

**2.1.97**    **"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

15

on account of all Claims in the Class in which that Allowed Claim is included to (y) the

amount of all Claims in that Class.

The Pro Rata formula is illustrated as follows:

| (a) | Amount of consideration distributed to a holder of an Allowed Claim | | (x) | Total consideration available for distribution to holders of Claims of that Class |
|---|---|---|---|---|
| (b) | Amount of such Allowed Claim | = | (y) | Amount of all Allowed Claims in that Class |

For the purpose of the application of this definition, in calculating the Distributions to be

made under this Plan, the Plan Agent, as Disbursing Agent under this Plan, shall establish

Reserves, on account of Disputed Claims, in accordance with the provisions of Section 8.4.3

of this Plan.

      **2.1.98** **"Rejection Claim"** means any General Unsecured Claim based upon or

arising from the rejection of an executory contract or unexpired lease pursuant to a Final

Order of the Bankruptcy Court or pursuant to this Plan.

      **2.1.99** **"Reorganized Debtor"** means the Debtor, as its financial affairs are

reorganized from and after the Effective Date.  For the purpose of this Plan, a reference to

the "Reorganized Debtor" shall include the Debtor.

      **2.1.100** **"Representatives"** has the meaning set forth in Section 6.8.5 of this Plan.

      **2.1.101** **"Reserves"** means, collectively, the Disputed Claims Reserve, the

Unclaimed Property Reserve, and other reserves that the Plan Agent, as Disbursing Agent

under this Plan, is required to establish pursuant to this Plan.

      **2.1.102** **"Secured Claim"** means a Claim that is secured by a Lien against

property in which the Estate has an interest or that is subject to setoff under section 553 of

the Bankruptcy Code.  A Claim is a Secured Claim only to the extent of the value, as

determined under section 506(a) of the Bankruptcy Code, of the Secured Creditor's interest

in the Collateral securing the Claim or to the extent of the amount subject to setoff,

whichever is applicable.

      **2.1.103** **"Secured Creditor"** means the holder of a Secured Claim.

CLARKSON, GORE & MARSHA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

16

MTI Plan v3.0

**2.1.104** **"Stock Termination Approval"** has the meaning set forth in Section 6.18.3 of this Plan.

**2.1.105** **"Subordinated Claim"** means any Claim that is subordinated to Allowed Class 3 Claims to the extent provided by the Bankruptcy Code or a Final Order.

**2.1.106** **"Tax"** means any tax, charge, fee, levy, or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest, penalties or additions attributable to, or imposed on or with respect to, such assessments.

**2.1.107** **"Tax Claim"** means any Claim, pre-petition or post-petition, relating to a Tax.

**2.1.108** **"Unclaimed Property"** has the meaning set forth in Section 7.2.7 of this Plan.

**2.1.109** **"Unclaimed Property Reserve"** has the meaning set forth in Section 7.2.7 of this Plan.

**2.1.110** **"United States Trustee"** means the Office of the United States Trustee for the Central District of California.

**2.1.111** **"United States Trustee Fees"** means all fees and charges assessed against the Debtor or the Reorganized Debtor by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

**2.2** **Rules of Interpretation.** For the purpose of this Plan, unless otherwise provided in this Plan, (a) the rules of construction set forth in section 102 of the Bankruptcy Code apply to this Plan; (b) Rule 9006(a) of the Federal Bankruptcy Rules applies when computing any time period under this Plan; (c) a term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or in the Bankruptcy Rules; (d) the definition given to any term or provision in this Plan supersedes any different meaning that may be given to that term or provision in the Disclosure Statement; (e) whenever it is appropriate from the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

17

context, each term, whether stated in the singular or the plural, includes both the singular and the

plural; (f) each pronoun stated in the masculine, feminine or neuter includes each of the masculine,

feminine and neuter; (g) any reference to an exhibit, schedule, instrument or other document means

such exhibit, schedule, instrument or other document as it has been, or may be, amended, modified,

restated or supplemented as of the Confirmation Date, and any such exhibit, schedule, instrument or

other document shall be deemed to be included in this Plan, regardless of when it is filed; (h) the

phrases "under this Plan," "hereof," "hereto," "hereunder," and similar words or phrases, refer to

this Plan in its entirety rather than to only a portion of this Plan; (i) unless otherwise indicated, all

references in this Plan to sections, articles or exhibits are references to sections, articles or exhibits

in this Plan; (j) section captions and headings are used for convenience only and do not affect the

meaning of this Plan; and (k) any reference to the holder of a Claim or Interest includes that entity's

successor and assigns.

    **2.3**    **Exhibits.**  All exhibits to this Plan are incorporated into and are a part of this Plan as

if set forth in full herein.

## III.

## UNCLASSIFIED CLAIMS

    As required by the Bankruptcy Code, this Plan places Claims and Interests into various

Classes according to their respective legal rights and interests, including their respective rights to

priority. However, in accordance with the provisions of section 1123(a)(1) of the Bankruptcy Code,

Administrative Claims and Priority Tax Claims are deemed "unclassified." These Claims are not

considered impaired under section 1124 of the Bankruptcy Code, and the holders of these Claims

do not vote on this Plan, because these Claims are automatically entitled to specific treatment

provided for them in the Bankruptcy Code. Accordingly, the Plan Proponents have not placed

Administrative Claims and Priority Tax Claims in a Class. The treatment of these unclassified

Claims is as provided below.

    **3.1**    **Allowed Administrative Claims.**  Administrative Claims generally are Claims for

the expenses of administering the Debtor's Case that are allowed under section 503(b) of the

Bankruptcy Code. Administrative Claims also include Claims provided for by section 503(b)(9) of

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

18

**Exhibit A, page 106**
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

the Bankruptcy Code. The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of this Plan, unless a particular Creditor agrees to a different treatment of its Claim. The treatment of Administrative Claims under this Plan is as described below.

   **3.1.1   Payment.**  Except to the extent that the holder of an Allowed Administrative Claim agrees to a less favorable treatment of its Allowed Administrative Claim, and, subject to the Administrative Claims Bar Date set forth in Section 3.1.2 hereof, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, discharge, exchange and release of its Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, on the <u>latest</u> of (i) the Effective Date, (ii) the fifteenth (15th) Business Day after the date upon which such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date upon which such Allowed Administrative Claim becomes due according to its terms; <u>provided, however,</u> that an Ordinary Course Administrative Claim shall be paid in full in accordance with the terms and conditions of the agreements giving rise to such Ordinary Course Administrative Claim.

   **3.1.2   Administrative Claims Bar Date.**  Except for Pre-Effective Date Professional Fee Claims, United States Trustee Fees and Ordinary Course Administrative Claims, and, except as set forth in section 503(b)(1)(D) of the Bankruptcy Code, all requests for payment of Administrative Claims shall be filed with the Bankruptcy Court and served no later than thirty (30) days after the Effective Date (the "Administrative Claims Bar Date"). Any holder of an Administrative Claim that is required to file a request for payment of its Administrative Claim by the Administrative Claims Bar Date and that does not file by the Administrative Claims Bar Date such a request for payment of its Administrative Claim shall be forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, the Estate or any of the property or assets of the Debtor or the Reorganized Debtor.

   **3.1.3   Deadline for Objections.**  All objections to allowance of Administrative Claims that are subject to the Administrative Claims Bar Date must be filed by the Plan Agent no later than forty-five (45) days after the Administrative Claims Bar Date (the

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

19

"Administrative Claims Objection Deadline"). The Administrative Claims Objection Deadline may be extended for a one-time thirty (30) day period by the Plan Agent by filing a notice of the extended Administrative Claims Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claims Objection Deadline may be further extended only by an order of the Bankruptcy Court. If the Plan Agent fails to file, by the Administrative Claims Objection Deadline, an objection to an Administrative Claim that must be filed, and is filed, by the Administrative Claims Bar Date, such Administrative Claim shall be deemed allowed as of the Administrative Claims Objection Deadline.

      **3.1.4**  **United States Trustee Fees.**  United States Trustee Fees shall be paid prior to the Effective Date by the Debtor, and, after the Effective Date by the Plan Agent from the Plan Fund, in each case, when due in accordance with applicable law until the entry of a Final Decree.

      **3.1.5**  **Pre-Effective Date Professional Fee Claims.**  Each Pre-Effective Date Professional seeking from the Bankruptcy Court an award with respect to a Pre-Effective Date Professional Fee Claim shall file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the forty-fifth (45th) day after the Effective Date or such later date as may be fixed by the Bankruptcy Court. Such Pre-Effective Date Professional shall receive, in full satisfaction, discharge, exchange and release of its Pre-Effective Date Professional Fee Claim, Cash in such amounts as are allowed by the Bankruptcy Court. All objections to allowance of Pre-Effective Date Professional Fee Claims must be filed and served timely in accordance with the requirements of the Bankruptcy Rules.

      **3.2**  **Allowed Priority Tax Claims.**  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment of its Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, discharge, exchange and release of its Allowed Priority Tax Claim, Cash in an amount equal to such Allowed Priority Tax Claim, on the later of (i) the Effective Date or (ii) the fifteenth (15th) Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

**IV.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

    **4.1**    **Overview.**  As required by the Bankruptcy Code, this Plan places Claims and Interests into Classes according to their respective legal rights and interests, including their respective rights to priority.  In Section 4.2 hereof, the Plan Proponents list each Class of Claims and Interests established under this Plan and state whether each Class is impaired or is unimpaired by this Plan.  A Class is "unimpaired" by this Plan if this Plan leaves unaltered the legal, equitable and contractual rights to which the holders of Claims or Interests in the Class are entitled, as provided in section 1124 of the Bankruptcy Code.  Article V of this Plan sets forth the treatment that each Class will receive under this Plan.

    Pursuant to this Plan, a Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in another Class or Classes to the extent that any remainder of the Claim qualifies within the description of such other Class or Classes.  A Claim is classified in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

    **4.2**    **Designation of Classes.**  This Plan designates the following Classes of Claims and Interests:

        **4.2.1**    **Allowed Claims.**

            4.2.1.1    Class 1:  Any Allowed Secured Claims.  This Class is unimpaired by this Plan.

            4.2.1.2    Class 2:  Allowed Priority Non-Tax Claims.  This Class is unimpaired by this Plan.

            4.2.1.3    Class 3:  Allowed General Unsecured Claims.  This Class is impaired by this Plan.

            4.2.1.4    Class 4:  The Canopy Claim.  This Class is unimpaired by this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

21

4.2.1.5    Class 5:  Any Allowed Subordinated Claims.  This Class is impaired by this Plan.

**4.2.2    Interests.**

4.2.2.1    Class 6:  Interests of the Interest Holders.  This Class is impaired by this Plan.

**4.3    Summary of Classification.**  The following table summarizes the Classes of Claims and Interests established by this Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Allowed Secured Claims | Unimpaired | Deemed to Accept Plan |
| Class 2 | Allowed Priority Non-Tax Claims | Unimpaired | Deemed to Accept Plan |
| Class 3 | Allowed General Unsecured Claims | Impaired | Entitled to Vote on Plan |
| Class 4 | Canopy Claim | Unimpaired | Deemed to Accept Plan |
| Class 5 | Allowed Subordinated Claims | Impaired | Entitled to Vote on Plan |
| Class 6 | Interests | Impaired | Deemed to Reject the Plan |

As set forth above, Classes 1, 2 and 4 are unimpaired by this Plan; holders of Claims in these Classes are conclusively presumed to have accepted this Plan and, hence, are not entitled to vote with respect to this Plan.  Classes 3 and 5 are impaired by this Plan, and holders of Claims in these Classes are entitled to vote to accept or reject this Plan.  Interests in Class 6 are impaired; the Plan Proponents believe that it is very likely that Interest Holders will not receive or retain under this Plan any value on account of their Interests, and, hence, Interest Holders are deemed to reject this Plan in accordance with section 1126(g) of the Bankruptcy Code.

The treatment of Claims and Interests under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Creditor or Interest Holder may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights which those entities have in or against the Debtor or its property.  **NO DISTRIBUTIONS SHALL**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

**Exhibit A, page 110**
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

BE MADE, AND NO RIGHTS SHALL BE RETAINED, ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

## V.

## TREATMENT OF CLASSES UNDER THIS PLAN

The following sets forth the treatment of Classes established by this Plan.

**5.1     Class 1 -- Any Allowed Secured Claims.** Class 1 consists of any Allowed Secured Claims. Class 1 is unimpaired by this Plan. In the event that there is more than one holder of an Allowed Class 1 Claim, the Allowed Secured Claim of each such Secured Creditor shall be deemed to be classified in a separate sub-class of Class 1, and each such sub-class of Class 1 shall be deemed to be a separate Class under this Plan.

**5.1.1     Treatment of Allowed Secured Claims.** Within fifteen (15) Business Days after the Effective Date, each Secured Creditor holding an Allowed Class 1 Claim shall receive, at the election of the Plan Agent, made in the exercise of its sole and absolute discretion, <u>one</u> of the following treatments in full satisfaction, discharge, exchange and release of the Allowed Class 1 Claim:

5.1.1.1     Option 1. The holder of the Allowed Class 1 Claim shall receive a return of the Collateral in which that Secured Creditor has a security interest. Unless a Secured Creditor holding an Allowed Deficiency Claim should make an election under section 1111(b) of the Bankruptcy Code, its Allowed Deficiency Claim shall be treated hereunder as a Class 3 Allowed General Unsecured Claim.

5.1.1.2     Option 2. The holder of the Allowed Class 1 Claim shall receive any proceeds actually received by the Debtor or Reorganized Debtor (as applicable) from the sale or other disposition of the Collateral in which that Secured Creditor has a security interest. Unless a Secured Creditor holding an Allowed Deficiency Claim should make an election under section 1111(b) of the Bankruptcy Code, its Allowed Deficiency Claim shall be treated hereunder as a Class 3 Allowed General Unsecured Claim

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

5.1.1.3    Option 3. The holder of the Allowed Class 1 Claim shall receive Cash in the full amount of that Secured Creditor's Allowed Class 1 Claim.

5.1.1.4    Option 4. The holder of the Allowed Class 1 Claim shall receive such other Distributions or treatment as is necessary to leave the rights of that Secured Creditor unimpaired under the Bankruptcy Code.

The Plan Agent shall have until the later of the tenth (10th) Business Day before the Confirmation Hearing Date, or the tenth (10th) Business Day after the date on which a Class 1 Claim because an Allowed Secured Claim, to elect which treatment set forth under this Section 5.1.1 to provide to the Secured Creditor holding such Allowed Class 1 Claim.

**5.2    Class 2 -- Allowed Priority Non-Tax Claims.** Class 2 consists of all Allowed Priority Non-Tax Claims. Class 2 is not impaired by this Plan.

**5.2.1    Treatment of Allowed Non-Tax Priority Claims.** Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment of its Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, discharge, exchange and release of its Allowed Priority Non-Tax Claim, Cash in the full amount of the Allowed Priority Non-Tax Claim on the later of (i) the Effective Date, and (ii) the fifteenth (15th) Business Day after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

**5.3    Class 3 -- Allowed General Unsecured Claims.** Class 3 consists of all Allowed General Unsecured Claims. Class 3 is impaired by this Plan.

**5.3.1    Treatment of Allowed General Unsecured Claims.** The treatment of Allowed Class 3 Claims is as follows:

5.3.1.1    Subject to the provisions of Sections 5.3.1.3, 5.3.1.4, 5.3.1.5 and 5.3.1.6 of this Plan, except to the extent that the holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, the holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, discharge, exchange and release of its Allowed

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC

General Unsecured Claim, Pro Rata Distributions of the Plan Fund Proceeds

available for distribution to holders of Allowed Class 3 Claims.

     5.3.1.2    The Plan Agent shall make Distributions to the holders of Allowed

Class 3 Claims from the Plan Fund Proceeds.  All holders of Allowed Class 3

Claims shall receive an initial Distribution of their Pro Rata share of the Plan Fund

Proceeds within 180 days following the Effective Date, or on such later date as the

Plan Agent determines to be practicable, in the exercise of its sole and absolute

discretion, and shall receive thereafter during the Case Distributions of their Pro

Rata share of Plan Fund Proceeds on each 180th-day anniversary of the Effective

Date, or on such later date as the Plan Agent determines to be practicable in the

exercise of its sole and absolute discretion.  Holders of Allowed Class 3 Claims

shall receive any final Distribution of their Pro Rata share of Plan Fund Proceeds

within ten (10) days after the filing of the Plan Agent Certification, or as soon

thereafter as is practicable.  Upon payment of the amount owed to the holder of any

Allowed Class 3 Claim under this Plan, such Allowed Class 3 Claim shall be

deemed to be fully and completely satisfied, discharge and released.

     5.3.1.3    In accordance with section 726(a)(5) of the Bankruptcy Code, an

Allowed General Unsecured Claim shall not include Postpetition Interest on account

of such Allowed General Unsecured Claim, except to the extent that all of the

following are satisfied and paid in full:  (a) all Allowed Administrative Claims;

(b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-Tax Claims;

(d) all Allowed Secured Claims (subject to the elections provided pursuant to

Section 5.1.1 hereof); (e) all Allowed General Unsecured Claims; (f) the Canopy

Claim; (g) all Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; and

(i) all Allowed Penalty Claims.  Any Postpetition Interest that may be payable on an

Allowed General Unsecured Claim shall be calculated from the Petition Date

through the date on which such Allowed General Unsecured Claim is paid in full.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

1    5.3.1.4    Notwithstanding any other provision to the contrary contained in

2    this Plan, no Cash Distribution shall be made on account of any Allowed General

3    Unsecured Claim until each of the following occurs:  (a) all Allowed Administrative

4    Claims are paid; (b) all Allowed Priority Tax Claims are paid; (c) all Allowed

5    Priority Non-Tax Claims are paid; (d) all Allowed Secured Claims are paid (subject

6    to the elections provided pursuant to Section 5.1.1 hereof); (e) the Disputed Claims

7    Reserve is adequately funded for the Claims referenced in subsections (a)

8    through (d) of this Section 5.3.1.4; and (f) all outstanding Post-Effective Date Plan

9    Expenses have been paid in full and an adequate Reserve is established by the Plan

10    Agent providing for full payment of the estimated amount of all Post-Effective Date

11    Plan Expenses through the Case Closing Date, in an amount to be determined by the

12    Plan Agent in the exercise of its sole and absolute discretion.

13    5.3.1.5    Each holder of an Allowed General Unsecured Claim shall be

14    allocated its Pro Rata number of shares of Post-Effective Date Stock, to be held in

15    trust for such Creditor by the Plan Agent in contemplation of a potential Merger

16    Transaction.  Subject to the provisions of Section 6.18 hereof, each holder of an

17    Allowed General Unsecured Claim shall receive a Distribution of any Post-Effective

18    Date Stock, or the net proceeds realized from the disposition of such Post-Effective

19    Date Stock, in connection with any Merger Transaction; provided, however, that the

20    holder of an Allowed General Unsecured Claim shall have the right to elect not to

21    receive any Distribution of Post-Effective Date Stock, in accordance with the

22    provisions of Section 6.18.6 hereof.

23    5.3.1.6    Notwithstanding anything to the contrary contained in

24    Section 5.3.1, no holder of an Allowed General Unsecured Claim shall be entitled to

25    receive more than 100% of the amount of its Allowed General Unsecured Claim,

26    plus any Postpetition Interest thereon payable pursuant to Section 5.3.1.3 hereof.

27    For the purpose of this Section 5.3.1.6, the value of any Distribution of Post-

28

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1       Effective Date Stock shall be determined pursuant to the provisions of

2       Section 6.18.5 hereof.

3           **5.4    Class 4 -- Canopy Claim.**  Class 4 consists of the Canopy Claim.  The Canopy

4   Claim is unimpaired under this Plan.

5           **5.4.1    Treatment of Canopy Claim.**  Canopy shall be paid, without alteration or

6   modification, any and all amounts to which Canopy is entitled pursuant to paragraphs 2

7   and 3 of that Settlement Agreement and Mutual Release of Claims ("Canopy Agreement"),

8   approved by an order of the Bankruptcy Court entered on November 13, 2008, a true and

9   complete copy of which is attached hereto as Exhibit "1."

10          **5.5    Class 5 -- Allowed Subordinated Claims.**  Class 5 consists of all Allowed

11  Subordinated Claims.  Class 5 is impaired by this Plan.

12          **5.5.1    Treatment of Allowed Subordinated Claims.**  The treatment of any

13  Allowed Class 5 Claim is as follows:

14          5.5.1.1    Subject to the provisions of Sections 5.5.1.3, 5.5.1.4, 5.5.1.5

15  and 5.5.1.6 of this Plan, except to the extent that the holder of any Allowed

16  Subordinated Claim agrees to a less favorable treatment of its Allowed Subordinated

17  Claim, in the event that all Allowed General Unsecured Claims are paid in full as set

18  forth in Section 5.3.1 of this Plan, the holder of an Allowed Subordinated Claim

19  shall receive, in full and complete satisfaction, discharge, exchange and release of

20  its Allowed Subordinated Claim, solely from the Plan Fund Proceeds, a Pro Rata

21  Distribution of any remaining Plan Fund Proceeds.

22          5.5.1.2    The Plan Agent shall make Distributions to the holders of

23  Allowed Class 5 Claims, from any Plan Fund Proceeds available for distribution to

24  holders of Allowed Class 5 Claims.  All holders of Allowed Class 5 Claims shall

25  receive an initial Distribution of their Pro Rata share of any Plan Fund Proceeds

26  available for distribution to holders of Allowed Class 5 Claims on such date as the

27  Plan Agent determines to be practicable, in the exercise of its sole and absolute

28  discretion, and thereafter shall receive Distributions of any such Plan Fund Proceeds

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

27

MTI Plan v3.0

as the Plan Agent determines to be practicable, in the exercise of its sole and absolute discretion.  Holders of Allowed Class 5 Claims shall receive any final Distribution of any Plan Fund Proceeds available for distribution to holders of Allowed Class 5 Claims within ten (10) days after the filing of the Plan Agent Certification, or as soon thereafter as is practicable.  Upon payment of the amount, if any, owed to each holder of an Allowed Class 5 Claim under this Plan, such Allowed Class 5 Claim shall be deemed to be fully and completely satisfied, discharged and released.

5.5.1.3    In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed Subordinated Claim shall not include Postpetition Interest on account of such Allowed Subordinated Claim, except to the extent that all of the following are satisfied and paid in full:  (a) all Allowed Administrative Claims; (b) all Allowed Priority Tax Claims; (c) all Allowed Priority Non-Tax Claims; (d) all Allowed Secured Claims (subject to the elections provided pursuant to Section 5.1.1 hereof); (e) all Allowed General Unsecured Claims; (f) the Canopy Claim; (g) all Late-Filed Claims; (h) all Post-Effective Date Plan Expenses; (i) all Allowed Penalty Claims; and (j) all Allowed Subordinated Claims in accordance with the terms thereof.  Any Postpetition Interest that may be payable on an Allowed Subordinated Claim shall be calculated from the Petition Date through the date on which such Allowed Subordinated Claim is paid in full.

5.5.1.4    Notwithstanding any other provision to the contrary contained in this Plan, no Distribution shall be made on account of any Allowed Subordinated Claim until each of the following occurs:  (a) all Allowed Administrative Claims are paid; (b) all Allowed Priority Tax Claims are paid; (c) all Allowed Priority Non-Tax Claims are paid; (d) all Allowed Secured Claims are paid (subject to the elections provided pursuant to Section 5.1.1 hereof); (e) all Allowed General Unsecured Claims are paid; (f) the Disputed Claims Reserve is adequately funded for the Claims referenced in subsections (a) through (e) of this Section 5.5.1.4; and (g) all

CLARKSON, GORE & MARELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

28

outstanding Post-Effective Date Plan Expenses have been paid in full and an

adequate Reserve is established by the Plan Agent providing for full payment of the

estimated amount of all Post-Effective Date Plan Expenses through the Case

Closing Date, in an amount to be determined by the Plan Agent in the exercise of its

sole and absolute discretion.

5.5.1.5    No Post-Effective Date Stock, or other equity security interest in

the Reorganized Debtor, shall be issued on account of an Allowed Subordinated

Claim.

5.5.1.6    Notwithstanding anything to the contrary contained in

Section 5.5.1, no holder of an Allowed Subordinated Claim shall be entitled to

receive more than 100% of the amount of its Allowed Subordinated Claim, plus any

Postpetition Interest thereon payable pursuant to Section 5.5.1.3 hereof.

**5.6**    **Class 6 -- Allowed Interests**. Class 6 consists of all Allowed Interests.  Class 6 is

impaired under this Plan.

**5.6.1    Treatment of Allowed Interests**. The treatment of Allowed Interests under

this Plan is as follows:

5.6.1.1    On the Effective Date of this Plan, all Interests shall be cancelled,

and Interest Holders shall receive no Post-Effective Date Stock or any other Interest

of any nature whatsoever in the Reorganized Debtor.  Interest Holders shall not

receive any Distributions on account of their Interests; provided, however, that, in

the event that each Allowed Claim, plus any Postpetition Interest to which the

holder thereof is entitled, is paid in full, each holder of an Allowed Interest shall

receive, in full and complete satisfaction, discharge, exchange and release of such

Allowed Interest, Pro Rata Distributions of any Plan Fund Proceeds remaining in

the Plan Fund, payable as soon as practicable as the Plan Agent determines in the

exercise of its sole and absolute discretion.

5.6.1.2    It is expected that Class 6 Interest Holders will receive no

Distributions under this Plan.  Accordingly, for the purpose of this Plan, Interest

MTI Plan v3.0

Exhibit A, page 117
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

Holders are deemed not to have accepted this Plan, and are not entitled to vote with respect to this Plan, as provided by section 1126(g) of the Bankruptcy Code.

5.6.1.3    For the purpose only of determining any Distributions to which Interest Holders may be entitled under Section 5.6.1.1 hereof, each beneficial owner or holder of record of MTI Stock as of the Effective Date shall be deemed to have an Allowed Interest for the number of shares of MTI Stock held by it as of the Effective Date, and need not file a proof of its Interest with respect thereto. In the event that any entity that is neither the record holder of MTI Stock as of the Effective Date nor the beneficial owner of MTI Stock as of the Effective Date files a proof of right to record status pursuant to Rule 3003(d) of the Federal Bankruptcy Rules, such proof of right shall be disallowed automatically and without any need for the Debtor, the Reorganized Debtor, the Plan Agent, or any other party-in-interest to object thereto or otherwise take any act with respect thereto.

# VI.

## PLAN IMPLEMENTATION

**6.1    Overview.** This Plan provides that, from and after the Effective Date, the Debtor's Assets, including, without limitation, any Causes of Action, shall be liquidated and the Plan Fund Proceeds distributed to the holders of Allowed Claims in accordance with the provisions of this Plan. The Plan Agent shall be responsible for maintaining the Plan Assets, liquidating the Plan Assets, prosecuting or settling Causes of Action, and making Distributions in payment of Allowed Claims in accordance with the provisions of this Plan. In addition, the Plan Agent shall be responsible for evaluating the viability of, and, if appropriate, pursuing a Merger Transaction, in order to enhance the value of the Post-Effective Date Stock issued on account of Allowed General Unsecured Claims, for the benefit of the holders of Allowed General Unsecured Claims.

**6.2    Condition Precedent to Plan Confirmation.** The only condition precedent to the confirmation of this Plan is that the Bankruptcy Court shall have entered the Confirmation Order on terms and conditions satisfactory to the Plan Proponents.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

30

**6.3** <u>**Conditions Precedent to the Effectiveness of the Plan.**</u> The following are the

conditions precedent to the effectiveness of this Plan and the occurrence of the Effective Date:

(a) the Confirmation Order shall have become a Final Order; (b) any documents, instruments and

agreements, in form and substance satisfactory to the Plan Proponents, provided for by, or

appropriate to implement, this Plan shall have been executed and delivered by the parties thereto;

(c) the Plan Proponents shall have received all authorizations, consents, rulings, opinions or other

documents that are determined by the Plan Proponents, in the exercise of their sole and absolute

discretion, to be appropriate to implement this Plan; and (d) the Plan Proponents shall have

determined, in the exercise of their sole and absolute discretion, that sufficient Cash exists to pay, or

to establish a Reserve for the payment of, all Administrative Claims, Priority Tax Claims, Priority

Non-Tax Claims and Secured Claims (subject to the election of the options provided by

Section 5.1.1 hereof), and to otherwise fund the obligations provided for by this Plan and to pay the

expenses associated with the implementation of this Plan.

The Plan Proponents may, in the exercise of their sole and absolute discretion, waive any of

the conditions to the effectiveness of this Plan and to the occurrence of the Effective Date set forth

hereinabove, without the need for any prior notice or hearing with respect thereto. Without limiting

the generality of the foregoing, in the event that an appeal, petition for certiorari or motion for

reargument or rehearing or comparable post-confirmation relief is filed with respect to the

Confirmation Order, and no stay of the effectiveness of the Confirmation Order is obtained, the

Plan Proponents may elect, in the exercise of their sole and absolute discretion, to waive the

condition set forth in Section 6.3(a) hereof, and to proceed with the Effective Date of this Plan and

to commence to consummate this Plan, by filing and serving notice of such election upon the

United States Trustee and the party seeking such post-confirmation relief.

The failure of any condition set forth in this Section 6.3 to be satisfied constitutes good and

sufficient cause for the Plan Proponents to have this Plan not become effective regardless of the

circumstances giving rise to the failure of such condition to be satisfied (including, without

limitation, any act or failure to act by the Plan Proponents).

31

MTI Plan v3.0

6.4    **Implementation of Plan.**  On or soon as practicable after the Effective Date, the

following shall occur with respect to the implementation of this Plan:  (a) all acts, documents and

agreements appropriate to implement this Plan shall be effected or executed; (b) the Plan Agent, as

Disbursing Agent under this Plan, shall make all Distributions required to be made on or about the

Effective Date of this Plan; and (c) the Plan Agent, as Disbursing Agent under this Plan, shall fund

the Reserves required to be funded on or about the Effective Date of this Plan.

6.5    **Corporate Action.**  Upon the Effective Date, all transactions and matters provided

for under this Plan shall be deemed to have been authorized and approved by the Debtor without

any requirement of further action by the Debtor, the Debtor's Interest Holders, or by the Debtor's

board of directors.

6.6    **Plan Agent/Vesting of Assets.**  In accordance with the provisions of Section 6.6.1

hereof, on the Effective Date, a Plan Agent shall be appointed who shall have the rights, powers and

duties provided for by this Plan and the Confirmation Order.  In accordance with the provisions of

Section 6.6.2 hereof, on the Effective Date, and subject to Canopy's rights under the Canopy

Agreement, the Assets shall be transferred to and vest in, the Reorganized Debtor, to be

administered by the Plan Agent.

6.6.1    **Employment of Plan Agent.**  On the Effective Date, a Plan Agent shall be

appointed to administer the Plan Assets in accordance with the terms of this Plan and to

make Distributions in accordance with the terms of this Plan.  The Plan Agent shall have the

rights, powers and duties provided for by this Plan and the Confirmation Order.

6.6.2    **Transfer of Assets.**  On the Effective Date, pursuant to sections 1123, 1141

and 1146(a) of the Bankruptcy Code, the Debtor and its Estate are authorized to, and shall,

transfer, grant, assign, convey, set over, and deliver to the Reorganized Debtor, to be

administered by the Plan Agent for the benefit of the holders of Allowed Claims and

Interest Holders to the extent that Interest Holders are entitled to receive Distributions under

Section 5.6.1.1 hereof, all of the Debtor's and the Estate's right, title and interest in and to

the Assets, including Causes of Action, free and clear of all Liens, Claims, and Interests of

any kind, except as provided expressly to the contrary in this Plan.  All Creditors and other

CLARKSON, GORE & MARSHLIA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

32

parties-in-interest shall cooperate with the Debtor and the Plan Agent by executing any
documents, and by taking any acts, appropriate to implement the transfers of the Assets to
the Reorganized Debtor.  From and after the Effective Date, the transfer of the Assets from
the Estate to the Reorganized Debtor, and the vesting of the Assets in the Reorganized
Debtor, shall be deemed to be final and irrevocable.

       **6.6.3**   **Disposition of Plan Assets.**  The Plan Agent, under the supervision of the
Post-Effective Date Committee, may administer, manage, use, convey, transfer, encumber,
assign and otherwise dispose of any and all of the Plan Assets and take all acts appropriate
to effectuate the same, free of any restrictions imposed by the Bankruptcy Code or by the
Bankruptcy Rules.

       **6.7**   **Termination of Debtor's Officers, Directors, Employees and Professionals.**
Except as otherwise provided by this Plan or as otherwise retained by the Plan Agent, the Debtor's
officers, directors, employees and Professionals shall be terminated and relieved of any
responsibilities to the Debtor or to the Reorganized Debtor as of the Effective Date.

       **6.8**   **Plan Fund Proceeds/Plan Administration.**

       **6.8.1**   **Distributions of Plan Fund Proceeds.**  Distributions of Plan Fund Proceeds
shall be made solely to the holders of Allowed General Unsecured Claims, to Canopy on
account of any Canopy Claim and, in accordance with the provisions of Sections 5.5.1.1
and 5.6.1.1 hereof, in the unlikely event that Allowed General Unsecured Claims are paid in
full, holders of Allowed Subordinated Claims, and, if Allowed Subordinated Claims are
paid in full, Interest Holders.  The holders of Allowed General Unsecured Claims shall
receive Distributions from the Plan Fund solely as provided for by this Plan and Canopy
shall receive on account of the Canopy Claim Distributions from the Plan Fund solely as
provided for by this Plan and the terms of the Canopy Agreement.

       **6.8.2**   **Plan Agent's Implementation of Plan.**  Subject to Canopy's rights under
the Canopy Agreement, the Plan Agent, under the supervision of the Post-Effective Date
Committee, shall be authorized to, and shall, take all acts appropriate to implement the
provisions of this Plan as are contemplated to be taken by the Plan Agent under this Plan,

33

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    including, without limitation, making Distributions to holders of Allowed Claims, objecting

2    to Disputed Claims, prosecuting or settling the Causes of Action and, if the Plan Agent

3    deems appropriate, effectuating a Merger Transaction.

4        **6.8.3**   **Representative of the Estate.** The Plan Agent, under the supervision of the

5    Post-Effective Date Committee, shall be, and hereby is, appointed as the representative of

6    the Estate pursuant to sections 1123(a)(5), 1123(a)(7) and 1123(b)(3)(B) of the Bankruptcy

7    Code and, as such, shall be vested with the authority and power, subject to the provisions of

8    this Plan, to take, among others, the following acts on behalf of the Reorganized Debtor:

9    (a) manage, administer and dispose of Plan Assets for the benefit of holders of Allowed

10    Claims; (b) file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon all

11    Causes of Action in the name of, and for the benefit of, the Estate; (c) make all Distributions

12    provided for by this Plan; and (d) such other acts as may be appropriate to administer,

13    wind-down, and close the Case. As the representative of the Estate, the Plan Agent, under

14    the supervision of the Post-Effective Date Committee, shall succeed to all of the rights and

15    powers of the Debtor and the Estate with respect to all Causes of Action, and shall be

16    substituted for, and shall replace, the Debtor, the Estate and the Committee, as applicable, as

17    the party-in-interest in all such litigation pending as of the Effective Date.

18        **6.8.4**   **Plan Agent Disclosure.** On or before the thirtieth (30th) day prior to the

19    Confirmation Hearing Date, the Plan Proponents shall file with the Bankruptcy Court a

20    pleading disclosing the identity of the Plan Agent, its credentials, and any and all relevant

21    information regarding the retention of the Plan Agent, including, without limitation, any and

22    all affiliations, connections and actual or potential conflicts of interest that the Plan Agent

23    may have in the Case ("Plan Agent Disclosure"). A copy of the Plan Agent's engagement

24    agreement shall be attached to the Plan Agent Disclosure.

25        **6.8.5**   **No Liability of Post-Effective Date Committee, the Plan Agent or the**

26    **Reorganized Debtor.** To the maximum extent permitted by law, the Post-Effective Date

27    Committee, the Plan Agent and the Reorganized Debtor, and their respective employees,

28    officers, directors, shareholders, agents, members, representatives, and Professionals

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

34

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1   (collectively, "Representatives") shall not have or incur liability to any Creditor, Interest

2   Holder, party-in-interest or to any other entity for an act taken or omission made in good

3   faith in connection with or related to the administration of the Plan Assets, the

4   implementation of this Plan and the making of Distributions under this Plan.  The Post-

5   Effective Date Committee, the Plan Agent, the Reorganized Debtor and the Representatives

6   shall in all respects be entitled to reasonably rely on the advice of counsel with respect to

7   their respective duties and responsibilities under this Plan.  Entry of the Confirmation Order

8   shall constitute a judicial determination that the exculpation provisions contained in this

9   Section 6.8.5 are necessary to, _inter alia_, facilitate Confirmation and to minimize potential

10  claims arising after the Effective Date for indemnity, reimbursement or contribution from

11  the Plan Assets.  The approval of this Plan by the Confirmation Order shall constitute a res

12  judicata determination of the matters included in the exculpation provisions of this Plan.

13  Notwithstanding the foregoing, nothing in this Section 6.8.5 shall absolve the Post-Effective

14  Date Committee, the Plan Agent or the Reorganized Debtor of any potential liability that

15  any of them respectively may have to any Creditor (which liability shall be several and not

16  joint) on account of any acts or omissions by it constituting willful misconduct or gross

17  negligence.

18      **6.8.6    Funding of Post-Effective Date Plan Expenses.**  All Post-Effective Date

19  Plan Expenses shall be expenses of the Reorganized Debtor.  Except as may be provided

20  expressly to the contrary in the Plan Agent Disclosure, the Plan Agent shall have no

21  personal liability for any Post-Effective Date Plan Expenses.  The Plan Agent shall disburse

22  Plan Fund Proceeds from the Plan Fund for the purpose of funding the Post-Effective Date

23  Plan Expenses.

24      **6.9    Termination of the Committee and Appointment of the Post-Effective Date**

25  **Committee.**

26      **6.9.1    Replacement of the Committee.**  As of the Effective Date, the Committee

27  shall terminate and disband, and the Committee shall be released from and discharged of all

28  further authority, duties, responsibilities and obligations related to the Case.  As of the

Effective Date, the Committee shall be replaced by the Post-Effective Date Committee,
which shall be comprised of members of the Committee. The Post-Effective Date
Committee shall have the right to supervise the Plan Agent and shall have the other powers,
rights, responsibilities and functions identified in this Plan and in a disclosure document to
be filed in the Bankruptcy Court on or before the thirtieth (30th) day prior to the
Confirmation Hearing Date ("Post-Effective Date Committee Disclosure").

      **6.9.2   Members of Post-Effective Date Committee.** In the event of the death or
resignation of any member of the Post-Effective Date Committee, the remaining members
of the Post-Effective Date Committee shall have the right to designate a successor member
from among the holders of Allowed General Unsecured Claims. If a Post-Effective Date
Committee member assigns its Claim in full, or releases the Debtor from payment of the
balance of such member's Claim, such act shall constitute a resignation from the Post-
Effective Date Committee. Until a vacancy on the Post-Effective Date Committee is filled,
the Post-Effective Date Committee shall function in its reduced number. Upon the Case
Closing Date, the Post-Effective Date Committee shall be dissolved and the members
thereof shall be released and discharged of and from all further authority, duties,
responsibilities and obligations related to and arising from their service as Post-Effective
Date Committee members.

      **6.9.3   Duties of Members of Post-Effective Date Committee.** The members of
the Post-Effective Date Committee shall undertake their duties as specified in this Plan and
in the Post-Effective Date Committee Disclosure. In serving as a member of the Post-
Effective Date Committee, such member shall not assume, or be deemed to have assumed,
any liability to Creditors, the Debtor, or any other parties-in-interest in the Case and shall
not be liable for any acts or omissions while acting in that capacity, except for acts or
omissions constituting willful misconduct or gross negligence.

**6.10   The Reorganized Debtor.**

      **6.10.1   Corporate Powers.** The Debtor, as the Reorganized Debtor, shall continue
to exist after the Effective Date of this Plan. The Reorganized Debtor shall have all of the

CLARKSON, GORE & MARSHALL, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

36

powers and rights of a corporation under the laws of the State of Delaware, and, except as set forth in this Plan expressly to the contrary, shall continue to have all corporate powers and rights accorded to it under its Articles of Incorporation, Bylaws and other corporate governance agreements.

 **6.10.2 Board of Directors.** On the Effective Date, the members of the Board of Directors of the Reorganized Debtor shall be the following persons: the Plan Agent; Scott Poteracki; and another individual to be named by the Post-Effective Date Committee. The Reorganized Debtor shall maintain customary directors and officers insurance coverage through the Case Closing Date, or as otherwise determined by the Plan Agent. The members of the Board of Directors shall be entitled to payment of compensation, for serving on the Reorganized Debtor's Board of Directors, in the amount of $1,250.00 per calendar quarter, or as otherwise determined reasonably by the Plan Agent in the exercise of its sole and absolute discretion; provided, however, that such compensation paid to the Plan Agent for serving on the Reorganized Debtor's Board of Directors shall be applied against the compensation payable to the Plan Agent pursuant to this Plan and as set forth in the Plan Agent Disclosure.

 **6.10.3 Officer of Reorganized Debtor.** As of the Effective Date, the Plan Agent shall serve as the Chief Executive Officer of the Reorganized Debtor. The Board of Directors of the Reorganized Debtor may appoint other officers as appropriate to aid in the implementation of this Plan. The Plan Agent shall be authorized to take any act, and to execute any documents, necessary to preserve the corporate existence of the Reorganized Debtor, with no additional authorization required for the Plan Agent to do so.

 **6.10.4 Effectuation of Merger Transaction.** The Reorganized Debtor shall continue in existence after the Effective Date, as appropriate to effectuate a Merger Transaction. In accordance with the provisions of Section 6.18 hereof, the Plan Agent, under the supervision of the Post-Effective Date Committee, shall determine whether a Merger Transaction is viable, whether a Merger Transaction should be effectuated for the benefit of holders of Allowed General Unsecured Claims and the terms thereof, and/or whether to

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

terminate any efforts to effectuate a Merger Transaction and instead to wind up the affairs of

the Reorganized Debtor; provided, however, that, in accordance with the provisions of

Section 6.18.3 hereof, in the event that no Merger Transaction is consummated by the

Merger Consummation Date, all efforts to effectuate a Merger Transaction shall terminate

and the Plan Agent shall take all acts appropriate to wind up the affairs of the Reorganized

Debtor.

     **6.11**   **Causes of Action.**  Subject to Canopy's rights under the Canopy Agreement, the

right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf

of the Debtor and the Estate any and all Causes of Action, including, but not limited to, any

Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estate to the

Plan Agent.  From and after the Effective Date, and subject to Canopy's rights under the Canopy

Agreement, only the Plan Agent shall have the right to enforce, file, litigate, prosecute, settle, collect

and abandon any Cause of Action.

     Notwithstanding the rights of the Plan Agent with respect to Causes of Action, nothing in

this Plan shall require the Plan Agent to file or to prosecute any Cause of Action, both of which

may be determined by the Plan Agent, in the exercise of its sole and absolute discretion.

     **THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION
REGARDING THE EXISTENCE OF CAUSES OF ACTION.  THE INVESTIGATION IN
THIS REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE
HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE
OF ANY PARTICULAR CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR
SET FORTH IN THIS PLAN, A CAUSE OF ACTION MAY BE FILED AGAINST ANY
CREDITOR OR OTHER PARTY AS THE PLAN AGENT MAY DETERMINE, IN THE
EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

     **6.12**   **Post-Effective Date Professional Fees.**  The Plan Agent may employ, without any

need to give notice to Creditors or other parties-in-interest or obtain any approval of the Bankruptcy

Court, any Professional to aid the Plan Agent in performing the Plan Agent's duties under this Plan,

including, without limitation, in connection with a possible Merger Transaction, as the Plan Agent

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

38

1   deems appropriate in the exercise of its sole and absolute discretion.  Any Professional employed by

2   the Plan Agent after the Effective Date shall be entitled to obtain from the Plan Fund payment of the

3   Professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without

4   any need to give notice to Creditors or other parties-in-interest or to obtain any approval of the

5   Bankruptcy Court.  Notwithstanding the foregoing, if the Plan Agent should fail to pay any post-

6   Effective Date fees and costs of a Professional entitled to such payment, within thirty (30) days after

7   the Professional's rendering of its billing statement, the Professional shall be entitled to seek, by

8   application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court

9   requiring the Plan Agent to forthwith pay to the Professional its fees and costs.

10      **6.13    Approval for Disposition of Plan Assets.**  Except as provided expressly to the

11  contrary in this Plan, and subject to Canopy's rights under the Canopy Agreement, from and after the

12  Effective Date, the Plan Agent shall be entitled to sell, transfer, assign, encumber or otherwise

13  dispose of any interest in any of the Plan Assets, without any need to give notice to Creditors or

14  parties-in-interest or to obtain any approval of the Bankruptcy Court.  Notwithstanding the

15  foregoing, the Plan Agent shall be entitled to seek, from the Bankruptcy Court, an order authorizing

16  the sale of any Plan Asset free and clear of Liens pursuant to the provisions of section 363(f) of the

17  Bankruptcy Code.

18      **6.14    Compromise of Controversies.**  From and after the Effective Date, subject to

19  Canopy's rights under the Canopy Agreement, the Plan Agent shall be entitled to compromise any

20  objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation

21  pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-

22  interest or to obtain any approval of the Bankruptcy Court.

23      **6.15    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**  Nothing

24  contained in this Plan shall be deemed to impair in any manner the right of the Plan Agent or any

25  party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court

26  approving actions to be taken consistent with this Plan as may be necessary or desirable to effectuate

27  the provisions of this Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

39

MTI Plan v3.0

1      **6.16**   **Plan Agent Certification.**  On or before the date upon which the Plan Agent

2    determines, in the exercise of its sole and absolute discretion, that any Causes of Action and

3    objections to Disputed Claims have been resolved by Final Order, that all other Plan Assets have

4    been liquidated or otherwise disposed of, that a Merger Transaction has been effectuated or cannot

5    or should not be effectuated by the Merger Consummation Date, and that all Distributions required

6    to be made under this Plan have been made or that final Distributions are being made or will be

7    made within ten (10) days or as soon thereafter as is practicable by the Plan Agent, the Plan Agent

8    shall file with the Bankruptcy Court and serve upon the United States Trustee, the Post-Effective

9    Date Committee, the Reorganized Debtor, Canopy and any Creditor that files after the Effective

10   Date a request for notice of any proceedings in the Case (collectively, "Post-Effective Date Notice

11   Parties") a certification attesting to such determination ("Plan Agent Certification").

12      **6.17**   **Final Decree.**  Unless earlier filed by the Plan Agent, by the thirtieth (30th) day after

13   the filing of the Plan Agent's Certification, the Plan Agent shall file, in accordance with Rule 3022

14   of the Federal Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree

15   to close the Case ("Final Decree").

16      **6.18**   **Merger Transaction.**

17          **6.18.1**   **Background.**  Although, as of the Effective Date, the Reorganized Debtor

18        will have no significant operations, the Reorganized Debtor may possess substantial net

19        operating losses for tax purposes, and, as a publicly-traded company, will possess a

20        shareholder base, which may make it an attractive acquisition or merger candidate,

21        including, without limitation, to an operating, privately-held corporation seeking to become a

22        publicly-held company (e.g., through a "reverse merger" transaction).  This Plan will permit

23        any such acquisition, merger transaction, or other business combination, including, without

24        limitation, a stock exchange, that would benefit the holders of Allowed General Unsecured

25        Claims, as holders of Post-Effective Date Stock in the Reorganized Debtor, by allowing

26        them potentially to have an interest in a viable, operating business enterprise (any such

27        transaction is referred to herein as a "Merger Transaction").  The Plan Agent, under the

28        supervision of the Post-Effective Date Committee, will investigate whether a Merger

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

40

1  Transaction is viable, and should be pursued for the benefit of holders of Allowed General

2  Unsecured Claims.

3      **6.18.2  Merger Consummation Date.**  The Reorganized Debtor shall complete a

4  Merger Transaction by the second-year anniversary of the Effective Date of the Plan

5  ("Merger Consummation Date"); provided, however, that the Plan Agent, after consultation

6  with the Post-Effective Date Committee, shall be authorized to request from the Bankruptcy

7  Court an extension of the Merger Consummation Date, for a period not to exceed one

8  additional year.  The Plan Agent shall give to the Post-Effective Date Notice Parties notice of

9  any such request and an opportunity to obtain a hearing on any such request, in accordance

10  with the requirements of the Bankruptcy Rules.

11      **6.18.3  Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized**

12  **Debtor.**  The Plan Agent, after consultation with the Post-Effective Date Committee, shall be

13  authorized to terminate efforts to effectuate a Merger Transaction or to cancel the Post-

14  Effective Date Stock, prior to the Merger Consummation Date, in the event that the Plan

15  Agent determines, in the exercise of its sole and absolute discretion, that a Merger

16  Transaction is not viable, a Merger Transaction should not be effectuated, or the Post-

17  Effective Date Stock is burdensome or is of inconsequential value and benefit to the holders

18  of Allowed General Unsecured Claims.  The Plan Agent may terminate any efforts to

19  effectuate a Merger Transaction, or may cancel the Post-Effective Date Stock, only after

20  obtaining approval of the Bankruptcy Court for so doing ("Stock Termination Approval")

21  after giving to the Post-Effective Date Notice Parties notice and an opportunity to obtain a

22  hearing thereon, in accordance with the requirements of the Bankruptcy Rules.  In the event

23  that a Stock Termination Approval is obtained by the Plan Agent, or in the event that no

24  Merger Transaction is consummated by the Merger Consummation Date, the Plan Agent

25  shall take all acts appropriate to wind up the affairs of the Reorganized Debtor.

26      **6.18.4  Terms of any Merger Transaction.**  The terms of any Merger Transaction

27  and the terms of any Distribution of Post-Effective Date Stock, including, without limitation,

28  any "lock-up" agreements or other restrictions on the disposition of the Post-Effective Date

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

41

MTI Plan v3.0

Stock, shall be determined by the Plan Agent, subject to the supervision of the Post-Effective

Date Committee.  The Plan Agent shall obtain from the Bankruptcy Court approval of any

such Merger Transaction for the Reorganized Debtor, after giving to the Post-Effective Date

Notice Parties, the United States Securities and Exchange Commission ("SEC") and other

parties-in-interest notice and an opportunity to obtain a hearing thereon, in accordance with

the requirements of the Bankruptcy Rules.  The Plan Agent shall have the burden of

demonstrating to the Bankruptcy Court that any such Merger Transaction is in the best

interests of holders of Allowed General Unsecured Claims and that any such Merger

Transaction is in compliance with the requirements of Section 6.18.7 hereof.  The SEC shall

have the right to oppose any such Merger Transaction on any appropriate grounds.

     **6.18.5**   **Valuation of Post-Effective Date Stock.**  Unless and until a Merger

Transaction is effectuated, the Post-Effective Date Stock shall be deemed, for all purposes, to

have no value of any nature whatsoever.  In connection with effectuating any Merger

Transaction, the Plan Agent shall request that the Bankruptcy Court enter an order

determining the value of the Post-Effective Date Stock that will be distributed to holders of

Allowed General Unsecured Claims pursuant to this Plan, after giving to the Post-Effective

Date Notice Parties and other parties-in-interest notice and an opportunity to obtain a hearing

thereon, in accordance with the requirements of the Bankruptcy Rules.

     **6.18.6**   **Election Not to Receive Post-Effective Date Stock.**  Prior to the

consummation of any Merger Transaction, a holder of an Allowed General Unsecured Claim

may provide to the Plan Proponents or to the Plan Agent, as applicable, written notice of an

election not to receive a Distribution of Post-Effective Date Stock.  Such an election shall be

effective, binding and irrevocable upon receipt by the Plan Proponents or the Plan Agent, as

applicable, of written notice of such an election.  In the event that a holder of an Allowed

General Unsecured Claim makes such an election, any Distributions of Plan Fund Proceeds

to which such Creditor is entitled under this Plan on account of its Allowed General

Unsecured Claim shall not be reduced in any manner based upon any value of the Post-

Effective Date Stock that such Creditor otherwise would receive under this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

42

MTI Plan v3.0

**6.18.7    Restrictions on Effectuation of Merger Transaction.** No Merger Transaction shall be effectuated unless such Merger Transaction is in compliance with the requirements of this Section 6.18.7.

6.18.7.1.    The Reorganized Debtor shall not issue any securities pursuant to this Plan unless:  any such issuance of securities complies with the requirements of section 1145 of the Bankruptcy Code; or any such issuance of securities is either exempt from the registration requirements of the United States Securities Act of 1933 ("Securities Act"), or is registered in accordance with the applicable requirements of the Securities Act.

6.18.7.2.    The Reorganized Debtor shall not consummate any Merger Transaction with a private company unless:  the Reorganized Debtor is current in its reporting obligations under Sections 13(a) or 15(d) of the United States Securities Exchange Act of 1934 ("Exchange Act") at the time of the consummation of any such Merger Transaction; and any such Merger Transaction is consummated by the Reorganized Debtor in accordance with the requirements of the Securities Act, the Exchange Act, and all applicable rules and regulations promulgated by the SEC. The SEC shall retain all rights and remedies that it may have with respect to any such Merger Transaction.

## VII.

## DISTRIBUTIONS

**7.1    Designation and Role of the Disbursing Agent.**

**7.1.1    Plan Agent to Serve as Disbursing Agent.** The Plan Agent shall serve as the Disbursing Agent under this Plan.  The terms of the employment of the Plan Agent, including the compensation of the Plan Agent as Disbursing Agent under this Plan, shall be disclosed in the Plan Agent Disclosure and shall be approved by the Bankruptcy Court pursuant to the Confirmation of this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

43

Exhibit A, page 131
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

**7.1.2   No Bond.** The Plan Agent shall not be required to be bonded in connection with the performance of its duties as Plan Agent under this Plan, including its duties as Disbursing Agent under this Plan.

**7.1.3   Payment of Fees and Expenses of Disbursing Agent.** The fees, expenses and any bond premiums incurred by the Plan Agent, in connection with the performance of its duties as Disbursing Agent under this Plan, shall be paid from the Plan Fund.

**7.1.4   Employment of Agents.** The Plan Agent, as Disbursing Agent under this Plan, shall be authorized to implement such procedures as it deems necessary to make Distributions pursuant to this Plan so as to efficiently and economically assure prompt and accurate Distributions, including, without limitation, the employment of one or more agents on such terms and conditions as it deems appropriate in the exercise of its sole and absolute discretion.

**7.2   Distribution of Property Under this Plan.**

**7.2.1   Cash Distributions.** Except for any Post-Effective Date Stock that may be issued to holders of Allowed General Unsecured Claims pursuant to a Merger Transaction, all Distributions under this Plan shall be in Cash. Cash Distributions made pursuant to this Plan shall be in United States funds, by checks drawn on a domestic bank, or, if the Plan Agent so elects, in the exercise of its sole and absolute discretion, by wire transfers from a domestic bank.

**7.2.2   Setoffs and Recoupment.** Pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Plan Agent, as Disbursing Agent under this Plan, may set off, recoup or withhold against any Allowed Claim and Distribution to be made pursuant to this Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any pre-Petition Date or post-Petition Date account stated, claim, right, or cause of action which the Debtor or the Estate may possess against the holder of such Allowed Claim. Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtor, the Estate or the Plan Agent of any such account, claim, right, or cause of action that the Debtor or the Estate

MTI Plan v3.0

Exhibit A, page 132
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

may possess against the holder of such Allowed Claim.  To the extent that the Plan Agent in allowing a Claim fails to effect a setoff with a Creditor and seeks to collect a claim from such Creditor after a Distribution to such Creditor pursuant to this Plan, the Plan Agent shall be entitled to full recovery on its claim against such Creditor, notwithstanding any payment of the Creditor's Allowed Claim pursuant to this Plan.

       **7.2.3**    **No De Minimis Distributions.**  Notwithstanding anything to the contrary in this Plan, no Distribution of less than $10.00 ("De Minimis Distribution") shall be made to any holder of an Allowed Claim on account thereof.  No consideration shall be provided in lieu of any De Minimis Distributions that are not made under this Plan.

       **7.2.4**    **Timeliness of Distributions.**  Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date but, in any event, within fourteen (14) days after such date.  Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter but, in any event, within fourteen (14) days thereafter.

       **7.2.5**    **Limitation on Liability.**  To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, the Board of the Reorganized Debtor, the Committee, the Post-Effective Date Committee, the Plan Agent, nor any of their respective Representatives shall be liable for (a) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of this Plan and the making or withholding of Distributions pursuant to this Plan, or (b) any change in the value of Distributions made pursuant to this Plan resulting from any delays in making such Distributions in accordance with the terms of this Plan (including, but not limited to, any delays caused by the resolution of Disputed Claims).  The foregoing limitation of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police and regulatory powers respecting persons otherwise protected hereunder.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

45

**Exhibit A, page 133**
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

**7.2.6**   **Delivery of Distributions**.

7.2.6.1    All Distributions under this Plan on account of an Allowed Claim shall be tendered only to the holder of such Allowed Claim, as set forth in Section 7.2.6.2.

7.2.6.2    Except as provided in Section 7.2.8 with respect to Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (a) with respect to each holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of Claim; (b) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected in the Bankruptcy Schedules filed by the Debtor; provided, however, that, if the Plan Agent receives a written notice of a change of address for such Creditor, the address set forth in such notice shall be used; or (c) with respect to each holder of an Allowed Administrative Claim, at such address as the holder thereof may specify in writing.

**7.2.7**   **Undeliverable Distributions**.  If the Distribution to a holder of any Allowed Claim or Allowed Administrative Claim is returned as undeliverable (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Creditor unless and until the Plan Agent is notified in writing of such Creditor's then current address.  Subject to the provisions of Section 7.2.8 hereof, Unclaimed Property shall remain in the control of the Plan Agent and shall be set aside and held in a segregated account ("Unclaimed Property Reserve") to be maintained until such time as the subject Distribution becomes deliverable or is disposed of in accordance with the provisions of Section 7.2.8 hereof.  Nothing contained in this Plan shall require the Plan Agent or any other entity to attempt to locate such Creditor.  No interest shall be payable with respect to any Unclaimed Property.

**7.2.8**   **Disposition of Unclaimed Property**.  If a Creditor entitled to a Distribution of Unclaimed Property gives written notice to the Plan Agent of such Creditor's claim to the Distribution of such Unclaimed Property within three (3) months following the date upon

46

which such Distribution is required to be made to the Class in which the Creditor holds an Allowed Claim ("Initial Distribution Date"), the Unclaimed Property distributable to such Creditor shall be released from the Unclaimed Property Reserve and paid to such Creditor within fourteen (14) days thereof.  Any holder of an Allowed Claim or Allowed Administrative Claim that does not assert a claim in writing for Unclaimed Property held by the Plan Agent within three (3) months following the Initial Distribution Date with respect to such Unclaimed Property shall no longer have any claim to or interest in such Unclaimed Property, and shall be forever barred from receiving a Distribution on account thereof.  In such cases, any such Unclaimed Property shall be released to the Plan Agent for the purpose of making further Distributions to Creditors, in accordance with the terms and conditions of this Plan.

**7.2.9  Approval for Schedule of Proposed Distributions.**  In the discretion of the Plan Agent, the Plan Agent shall be entitled to prepare a preliminary schedule of proposed Distributions to Creditors ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the making of such Distributions pursuant to the Distribution Schedule.  Notice of any such application shall be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

**7.2.10  Compliance with Tax Requirements.**  To the extent applicable, the Plan Agent, as the Disbursing Agent pursuant to this Plan, shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such tax withholding and reporting requirements.

**7.2.11  Further Assurances Regarding Distributions.**  In accordance with the provisions of Section 13.22 hereof, as a condition to obtaining Distributions under this Plan, each Creditor shall execute and deliver to the Plan Agent, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of this Plan.

**7.2.12  Creditor's Payment of Obligations or Turn Over of Property to the Plan Agent.**  As a condition to obtaining Distributions under this Plan, any Creditor from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under

47

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall pay to the Plan Agent the amount, or turn over to the Plan Agent any such property, for which such Creditor is liable to the Debtor.

## VIII.

### OBJECTIONS TO DISPUTED CLAIMS

**8.1    Exclusive Right to Object to Claims.**  From and after the Effective Date, the Plan Agent shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims. As the representative of Estate, the Plan Agent, under the supervision of the Post-Effective Date Committee, shall succeed to all of the rights and powers of the Debtor and the Estate with respect to all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor, the Estate and the Committee, as applicable, as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

**8.2    Claims Objection Deadline.**  Unless another date is established by order of the Bankruptcy Court, an objection to a Claim must be filed with the Bankruptcy Court and served on the Creditor holding such Claim on or before the Claims Objection Deadline.  The Plan Agent shall have the right to request that the Bankruptcy Court extend the Claims Objection Deadline for cause shown.

**8.3    Investigation Regarding Disputed Claims.**  Notwithstanding the fact that the Plan Agent shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained herein shall be deemed to obligate the Plan Agent to file any objection to a Claim, which action shall be determined by the Plan Agent in the exercise of its sole and absolute discretion.

**THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION REGARDING THE CLAIMS IN THE CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS.  THIS INVESTIGATION IS ONGOING AND, SUBJECT TO THE CLAIMS OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

48

1  AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST ARE HEREBY

2  ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY

3  TIME, SUBJECT ONLY TO THE CLAIMS OBJECTION DEADLINE. THE PLAN AGENT

4  SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN

5  SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S

6  BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY

7  RESPECT.

8       8.4    **Treatment of Disputed Claims.**

9            8.4.1    **No Distribution Pending Allowance.** All Distributions under this Plan shall

10  be made only on account of Allowed Claims. If any portion of a Claim is a Disputed Claim,

11  no Distribution provided for under this Plan shall be made on account of such Claim unless

12  and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

13            8.4.2    **Distribution After Allowance.** Within fourteen (14) days following the date

14  on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim,

15  the Plan Agent, as Disbursing Agent under this Plan, shall distribute to the Creditor holding

16  such Allowed Claim any Cash or other property that would have been distributable to such

17  Creditor as if, at the time of the making of any Distribution to the Class of which such

18  Creditor is a member, such Claim had been an Allowed Claim and not a Disputed Claim. No

19  interest shall be paid on such Claim, except as provided in Section 8.4.3 hereof.

20            8.4.3    **Reserve for Disputed Claims.** On or as soon as practicable after the

21  Effective Date, the Plan Agent, as Disbursing Agent under this Plan, shall establish, in a

22  segregated, interest-bearing account, a reserve for any Disputed Claim ("Disputed Claims

23  Reserve") in an amount equal to 100% of the Distribution to which the holder of the

24  Disputed Claim would be entitled under this Plan based upon the liquidated, face amount of

25  its non-duplicative Disputed Claim unless such Claim is estimated by Final Order of the

26  Bankruptcy Court; provided, however, that the Plan Agent, as Disbursing Agent under this

27  Plan, shall have the right to seek from the Bankruptcy Court an order reducing the amount of

28  such Reserve pending the resolution of the Disputed Claim. If the Disputed Claim does not

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

49

set forth a liquidated amount of such Claim, then the amount of the Reserve to be established on account of such Disputed Claim shall be the amount fixed mutually by the Creditor and by the Plan Agent or the amount estimated by the Bankruptcy Court for the purpose of this Section 8.4.3. If the Disputed Claim is estimated, the amount of the Reserve to be established on account of such Disputed Claim shall be the Distribution with respect to the estimated amount of such Disputed Claim as determined by Final Order of the Bankruptcy Court, and such estimated amount shall set forth the maximum amount of the Distribution on account of such Disputed Claim.

**8.4.4   <u>No Distribution Until Allowance of Disputed Claim.</u>** No disbursement of funds from a Disputed Claims Reserve shall be made on account of a Disputed Claim until such Disputed Claim has been determined by a Final Order of the Bankruptcy Court. Any amount of a Claim which has been disallowed pursuant to an order of the Bankruptcy Court shall be deemed to be extinguished and no Distribution of any amount shall be paid on account thereof. The amount reserved for any Disputed Claim (plus any interest thereon) which has been disallowed by the Bankruptcy Court shall be released to the Plan Agent for the purpose of funding further Distributions to Creditors under this Plan.

**8.5   <u>Bar Date for Filing Avoidance Action Payment Claims.</u>** Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and served on the Plan Agent within thirty (30) days after the <u>later</u> of (a) the date of entry of the order of the Bankruptcy Court adjudging the Creditor's liability to the Debtor or to the Reorganized Debtor on account of such Avoidance Action, or (b) the Effective Date.

# IX.

# <u>LITIGATION</u>

**9.1   <u>Plan Agent's Authorization to Assert Causes of Action.</u>** As of the Effective Date, the Plan Agent shall be authorized to exercise and to perform the rights, powers and duties held by the Estate with respect to the Causes of Action. From and after the Effective Date, subject to

50

**Exhibit A, page 138**
MAINDOCS-#149105-v3-MTI_4th_Amended_Ch_11_Plan.DOC

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1    Canopy's rights under the Canopy Agreement, the Plan Agent shall have the sole and exclusive

2    right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and

3    interests of the Estate with respect to the Causes of Action, without the consent or approval of any

4    third party, and without any further order of the Bankruptcy Court.

5        **9.2     Plan Agent's Evaluation of Causes of Action**.  The Plan Agent, under the

6    supervision of the Post-Effective Date Committee, shall make the decision whether to prosecute or

7    to continue to prosecute any Causes of Action.  This decision shall be based, in part, upon the Plan

8    Agent's evaluation of the merits of the Causes of Action as well as the costs required to prosecute

9    such Causes of Action taking into account the resources available to make Distributions to

10   Creditors.  The Plan Agent, under the supervision of the Post-Effective Date Committee, subject to

11   Canopy's rights under the Canopy Agreement, shall be entitled to determine, in the exercise of its

12   business judgment, not to prosecute, or to abandon, any Cause of Action.

13       **9.3     Retention of Professionals.**  The Plan Agent may retain Professionals to represent it

14   in prosecution of Causes of Action.  The Plan Agent shall determine the terms of the retention of

15   Professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a

16   contingency fee basis to prosecute some or all of the Causes of Action, and may seek to finance any

17   costs relating to the prosecution of Causes of Action.

18       **9.4     Preservation of Causes of Action.**  Unless a Cause of Action is expressly waived,

19   relinquished, released, compromised, or settled in this Plan or in any Final Order, the Plan

20   Proponents expressly reserve such Cause of Action for later adjudication by the Plan Agent

21   (including, without limitation, Causes of Action of which the Plan Proponents presently may be

22   unaware, or which may arise or exist by reason of facts or circumstances unknown to the Plan

23   Proponents at this time, or facts or circumstances which may change or be different from those

24   which the Plan Proponents now believe to exist) and, therefore, no preclusion doctrine, including,

25   without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim

26   preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Plan

27   Agent's prosecution of Causes of Action based on the Disclosure Statement, this Plan, or the

28   Confirmation Order.  Without limiting the generality of the foregoing, any entity with respect to

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

51

MTI Plan v3.0

1   which the Debtor has incurred an obligation (whether on account of services, purchase or sale of

2   property, or otherwise), or who has received services from the Debtor or a transfer of money or

3   property of the Debtor, or who has transacted business with the Debtor, or leased equipment or

4   property from the Debtor, should assume that such obligation, transfer, or transaction may be

5   evaluated by the Plan Agent subsequent to the Effective Date and may be the subject of an

6   Avoidance Action or other action or proceeding filed after the Effective Date.

7        **9.5**    **Subordination of Claims.**  A Plan Proponent shall have the right to file an action to

8   subordinate Claims.  If a Plan Proponent has filed such an action prior to the entry of the Disclosure

9   Statement Order, any Claim subject to such an action shall be deemed to be in Class 5 for the

10   purpose of voting on this Plan unless the Bankruptcy Court enters a Final Order to the contrary.  If a

11   Plan Proponent has filed such an action after the entry of the Disclosure Statement Order, but prior

12   to the Effective Date, such action shall not affect the right of the Creditor to vote with respect to the

13   Class to which it otherwise would be entitled.  After the Effective Date, only the Plan Agent, under

14   the supervision of the Post-Effective Date Committee, shall have the right to file an action to

15   subordinate a Claim.

16                             **X.**

17             **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

18        **10.1**    **Executory Contracts and Unexpired Leases Being Assumed.**  Effective as of, and

19   conditioned on, the occurrence of the Effective Date, the Debtor hereby assumes all of the executory

20   contracts and unexpired leases of the Debtor listed on Exhibit "2" hereto.  The Plan Proponents may

21   amend, through and including the Confirmation Hearing Date, Exhibit "2" to add thereto any

22   executory contract or unexpired lease, or to delete therefrom any executory contract or unexpired

23   lease.  However, if any amendments are made to Exhibit "2" less than thirty (30) days before the

24   Confirmation Hearing Date, the affected contract or lease parties shall have fifteen (15) days from

25   the date of service of notice of such amendments within which to serve on the Plan Proponents a

26   written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a

27   hearing on the same, and the assumption or rejection of the affected contract or lease shall be

28   delayed until the Bankruptcy Court makes a determination on such issue (such determination may be

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

52

1   made after the Confirmation Date, without delaying the confirmation of this Plan).  To the extent

2   that an executory contract or unexpired lease has been assumed by the Debtor prior to the

3   Confirmation Date pursuant to an order of the Bankruptcy Court, such assumption shall not be

4   affected by this Plan.  The assumption of any contract or lease pursuant to the provisions of this

5   Section 10.1 shall be only to the extent that such assumed contract or lease constitutes an executory

6   contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.  Inclusion of

7   an agreement in Exhibit "2" does not constitute an admission by the Plan Proponents that (a) such

8   agreement is an executory contract or unexpired lease within the meaning of section 365 of the

9   Bankruptcy Code, (b) the Debtor must assume such agreement in order to continue to receive or

10   retain rights, benefits, or performance thereunder or that any Claim under such agreement must be

11   paid or any default thereunder must be cured, or (c) such agreement is a valid contract or lease.  Any

12   contract or lease assumed pursuant to this Plan shall be assumed as previously amended or otherwise

13   modified by the parties thereto, whether before or after the Petition Date.

14        **10.2**   **Executory Contracts and Unexpired Leases Being Rejected**.  Effective as of, and

15   conditioned on, the occurrence of the Effective Date, the Debtor hereby rejects all of the executory

16   contracts and unexpired leases of the Debtor not listed on Exhibit "2" hereto, including, without

17   limitation, those executory contracts and unexpired leases listed on Exhibit "3" hereto.  The Plan

18   Proponents reserve the right to amend, through and including the Confirmation Hearing Date,

19   Exhibit "3" to add thereto any executory contract or unexpired lease, or to delete therefrom any

20   executory contract or unexpired lease.  However, if any amendments are made to Exhibit "3" less

21   than thirty (30) days before the Confirmation Hearing Date, the affected contract or lease parties

22   shall have fifteen (15) days from the date of service of notice of such amendments within which to

23   serve on the Plan Proponents a written objection to the same.  Upon receipt of any such objection,

24   the Debtor shall promptly set a hearing on the same, and the rejection of the affected contract or

25   unexpired lease shall be delayed until the Bankruptcy Court makes a determination on such issue

26   (such determination may be made after the Confirmation Date, without delaying the confirmation of

27   this Plan).  To the extent that an executory contract or unexpired lease has been rejected by the

28   Debtor prior to the Confirmation Date pursuant to an order of the Bankruptcy Court, such rejection

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

53

1   shall not be affected by this Plan. The rejection of any contract or lease pursuant to the provisions of

2   this Section 10.2 shall be only to the extent that such rejected contract or lease constitutes an

3   executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.

4   Inclusion of an agreement in Exhibit "3" does not constitute an admission by the Plan Proponents

5   that (a) such agreement is an executory contract or unexpired lease within the meaning of

6   section 365 of the Bankruptcy Code, or (b) such agreement is a valid contract or lease. Any contract

7   or lease rejected pursuant to this Plan shall be rejected as previously amended or otherwise modified

8   by the parties thereto, whether before or after the Petition Date. Any executory contract or

9   unexpired lease not listed in Exhibit "2" or in Exhibit "3" shall be deemed to be rejected by the

10   Debtor on the Effective Date.

11       **10.3**    <u>**Retention of Property Rights.**</u> To the extent that the Debtor has obtained property

12   rights under the executed portion of an executory contract or unexpired lease, rejection of such

13   agreement shall not constitute an abandonment by the Debtor of any such property rights.

14       **10.4**    <u>**Bar Date for Rejection Claims.**</u> Any Rejection Claim shall be forever barred, shall

15   not be enforceable against the Debtor or the Reorganized Debtor, and shall not be entitled to any

16   Distribution under this Plan, unless a Proof of Claim for such Rejection Claim is filed and served on

17   the Plan Agent within thirty (30) days after the <u>later</u> of (a) the date of entry of the order of the

18   Bankruptcy Court approving the rejection of the executory contract or unexpired lease, or (b) the

19   Effective Date.

20       **10.5**    <u>**Cure Claims Schedule.**</u> A schedule of the amounts necessary to cure any defaults

21   under executory contracts and unexpired leases assumed under this Plan ("Cure Claims") shall be set

22   forth in a schedule ("Cure Claims Schedule") to be filed with the Bankruptcy Court, and served on

23   the non-debtor parties to such executory contracts and unexpired leases, on or before the thirtieth

24   (30th) day prior to the Confirmation Hearing Date. Any objection to the amount of any Cure Claim

25   set forth in the Cure Claims Schedule shall be filed and served upon the respective counsel for the

26   Plan Proponents on or before the fifteenth (15th) day prior to the Confirmation Hearing Date. In the

27   event that any such objection to the amount stated for a Cure Claim in the Cure Claims Schedule is

28   not filed and served as set forth herein, the amount of the Creditor's Cure Claim shall be deemed

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

54

1   forever to be the amount set forth in the Cure Claims Schedule, and any Cure Claim in excess of the

2   amount set forth in the Cure Claims Schedule shall be waived and shall be forever barred in the

3   Bankruptcy Case, without further notice.  If the Plan Proponents cannot resolve any such objection

4   with the Creditor, the Debtor may either (a) elect to reject the executory contract or unexpired lease

5   at the Confirmation Hearing, or (b) have the Bankruptcy Court determine the merits of the objection

6   on or after the Confirmation Hearing (without delaying the confirmation of this Plan).  Any amount

7   of a Cure Claim payable upon the assumption of an executory contract or unexpired lease shall be

8   due and payable on or before the fourteenth (14th) day after the entry of a Final Order fixing the

9   amount of the Cure Claim and then only in the amount fixed by such Final Order.

## XI.

## EFFECT OF CONFIRMATION OF THIS PLAN

    **11.1**   **Discharge.**  Confirmation of this Plan shall have all of the effects provided by

section 1141 of the Bankruptcy Code which are not inconsistent with the terms of this Plan.  Except

as provided expressly to the contrary in this Plan or in the Confirmation Order, pursuant to

section 1141(d) of the Bankruptcy Code, the Distributions and rights that are provided in this Plan

shall be in complete satisfaction, settlement, release and discharge, effective as of the Effective Date,

of all known or unknown Claims and Administrative Claims against, rights against, liabilities of,

obligations of, and any Liens encumbering the Debtor's assets and properties, including but not

limited to, Claims of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy

Code, in each case whether or not (a) a Proof of Claim based upon such Claim is filed or deemed

filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the

Bankruptcy Code, or (c) the holder of such Claim accepted the Plan.  The Confirmation Order shall

constitute a determination of the discharge of all Claims and Administrative Claims against the

Debtor, subject only to the occurrence of the Effective Date, to the fullest extent permitted by

section 1141 of the Bankruptcy Code.  Any obligations to Creditors and to Interest Holders imposed

by this Plan shall be compensable only from Distributions of Cash made from the Plan Fund and

from any Distributions of Post-Effective Date Stock, and shall not be obligations of the Reorganized

Debtor, which shall have no obligations or liabilities of any kind or character whatsoever, known or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

55

1 unknown, suspected or unsuspected, contingent or non-contingent, matured or unmatured, liquidated

2 or unliquidated, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or

3 in equity or under any other theory of law, to any Creditor, Interest Holder or to any other party-in-

4 interest, except only (i) for Post-Effective Date Plan Expenses, and (ii) that holders of Allowed

5 General Unsecured Claims shall have in accordance with the provisions of this Plan an equity

6 security interest in (but not any Claim or post-Effective Date claim of any nature whatsoever

7 against) the Reorganized Debtor in the event of any Distribution of Post-Effective Date Stock.

8 **11.2   Injunction.**  Except as provided expressly to the contrary in this Plan, or in the

9 Confirmation Order, on and after the Effective Date, all Creditors who have held, hold, or who may

10 hold a Claim discharged pursuant to the terms of this Plan (including, but not limited to, states and

11 other governmental units, and any state official, employee, or other entity acting in an individual or

12 official capacity on behalf of any state or other governmental unit) shall be permanently enjoined

13 from the following:  (a) taking any of the following actions on account of any such discharged

14 Claim:  (i) commencing or continuing in any manner any action or other proceeding against the

15 Debtor or the Reorganized Debtor, their respective Representatives, successors, or property;

16 (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award,

17 decree, or order against the Debtor or the Reorganized Debtor, their respective Representatives,

18 successors, or property; (iii) creating, perfecting, or enforcing any Lien against the Debtor or the

19 Reorganized Debtor, their respective Representatives, successors, or property; (iv) asserting any set

20 off, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the

21 Reorganized Debtor, their respective Representatives, successors, or property; and (v) commencing

22 or continuing any action, in any manner, in any place that does not comply with or is inconsistent

23 with the provisions of this Plan; and (b) taking any acts on account of any Causes of Action that are

24 vested in, or transferred to, the Plan Agent as of the Effective Date, including, without limitation,

25 commencing or continuing in any manner any Avoidance Action (i.e., no party may pursue any

26 Causes of Action, except for the Plan Agent).  Any person or entity injured by any willful violation

27 of such injunction shall recover its actual damages, including costs and attorneys' fees, and, in

28

56

MTI Plan v3.0

1 | appropriate circumstances, may recover punitive damages from the willful violator of such

2 | injunction.

3 |     **11.3**    **Release.** Except as provided expressly to the contrary in this Plan or in the

4 | Confirmation Order, the rights afforded under this Plan and the treatment of all Claims under this

5 | Plan shall be in exchange for and in complete satisfaction, settlement, release and discharge of all

6 | Claims (including Administrative Claims and any interest accrued on any Claim from and after the

7 | Petition Date) against the Debtor and the Reorganized Debtor, and any of their respective assets and

8 | property. Except as otherwise provided in this Plan or in the Confirmation Order, upon the Effective

9 | Date, each Creditor and party-in-interest in the Bankruptcy Case shall be deemed to have irrevocably

10 | and unconditionally settled and released, fully and forever, any Claims against the Debtor and the

11 | Reorganized Debtor, and their respective assets and properties. Except as otherwise provided in this

12 | Plan or in the Confirmation Order, all Creditors shall be precluded from asserting all Claims against

13 | the Debtor and the Reorganized Debtor, and their respective assets and properties.

14 |     **11.4**    **Distribution of Property Free and Clear of Liens, Claims, and Interests.**

15 | Except as otherwise provided in this Plan or in the Confirmation Order, all property distributed

16 | under this Plan shall be distributed free and clear of all Liens and other Claims of Creditors and all

17 | Interests of Interest Holders.

18 |     **11.5**    **Binding Effect of Plan.** Upon the Effective Date, the provisions of this Plan shall

19 | be binding upon the Debtor, the Reorganized Debtor, the Plan Agent and each Creditor and Interest

20 | Holder.

21 | **XII.**

22 | **LIMITATION OF LIABILITY**

23 |     **12.1**    **No Liability for Solicitation or Participation.** As specified in section 1125(e) of

24 | the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan, in good faith and in

25 | compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of

26 | such solicitation or participation, for violation of any applicable law, rule, or regulation governing

27 | the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of

28 | securities.

CLARKSON, GORE & MARSELLA, APLC<br>ATTORNEYS AT LAW<br>TORRANCE, CALIFORNIA

57

1   **12.2   Good Faith.** Confirmation of this Plan shall constitute a finding that the Plan was

2   proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with

3   applicable provisions of the Bankruptcy Code.

4   **12.3   Limitation of Liability Regarding Plan Confirmation.** Effective as of the

5   Effective Date, neither the Committee, the Post-Effective Date Committee, nor any of their

6   respective Representatives shall have or incur any liability to any Creditor or Interest Holder or to

7   any other party-in-interest or entity for any post-petition good faith act or omission in connection

8   with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the

9   approval of the Disclosure Statement, the consummation of this Plan, the administration of this Plan,

10  the Bankruptcy Case or the property to be distributed under this Plan or the making of Distributions

11  under this Plan (except for any act or omission constituting gross negligence or willful misconduct),

12  to the fullest extent permitted by applicable statutory and case law, except only that the Plan Agent

13  shall be responsible for making the Distributions provided for by this Plan.  The foregoing limitation

14  of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police

15  and regulatory powers, respecting persons otherwise protected hereunder.

16  **XIII.**

17  **OTHER PLAN PROVISIONS**

18  **13.1   Exemption from Stamp, Transfer and Other Taxes.** Pursuant to section 1146(a)

19  of the Bankruptcy Code, the issuance, transfer, or exchange of assets under this Plan, including,

20  without limitation, the issuance of Post-Effective Date Stock, the creation of any mortgage, deed of

21  trust, or other security interest, the making or assignment of any lease or sublease, or the making or

22  delivery of any deed or instrument of transfer under, in furtherance of, or in connection with this

23  Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

24  **13.2   Books and Records.** Upon the Case Closing Date, the Plan Agent shall be

25  authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-

26  Effective Date books and records of the Debtor in the Plan Agent's custody or control.  The Plan

27  Agent shall continue to preserve post-Effective Date books and records in its custody or control, for

28

*CLARKSON, GORE & MARSELLA, APLC*
*ATTORNEYS AT LAW*
*TORRANCE, CALIFORNIA*

MTI Plan v3.0

1  a period of not less than one year after the Case Closing Date, or as otherwise provided by order of

2  the Bankruptcy Court.

3  **13.3  Post-Effective Date Quarterly Fees.**  After the Effective Date, the Plan Agent shall

4  pay timely, from the Plan Fund, all accruing United States Trustee Fees until the entry of a Final

5  Decree.

6  **13.4  Post-Effective Date Status Reports.**  The Plan Agent shall file reports regarding the

7  status of implementation of this Plan and the review, prosecution and resolution of Causes of

8  Action every 120 days following the entry of the Confirmation Order through the Case Closing

9  Date, or as otherwise ordered by the Bankruptcy Court.  Such reports shall be served on the Post-

10  Effective Date Notice Parties.

11  **13.5  Effectiveness of Court Orders.**  Unless otherwise provided by this Plan or by the

12  Confirmation Order, all orders and judgments, including injunctions, entered by the Bankruptcy

13  Court during the Case, and in existence on the Confirmation Date, shall remain in full force and

14  effect from and after the Effective Date, to the extent not inconsistent with the provisions of this

15  Plan or the Confirmation Order.

16  **13.6  No Admissions.**  Except as expressly provided to the contrary in this Plan, nothing

17  contained in this Plan shall be deemed or construed in any manner as an admission by a Plan

18  Proponent with respect to any matter set forth in this Plan, including, without limitation, the amount

19  or allowability of any Claim, or the value of any property of the Estate.

20  Notwithstanding anything to the contrary in this Plan, if this Plan is not confirmed or the

21  Effective Date does not occur, this Plan shall be null and void, and nothing contained in this Plan

22  shall:  (a) be deemed to be an admission by a Plan Proponent with respect to any matter discussed in

23  this Plan, including liability on any Claim or the propriety of any classification of a Claim;

24  (b) constitute a waiver, acknowledgement, or release of any Claim or Interest, or any claim held by

25  the Debtor; or (c) prejudice in any manner the rights of a Plan Proponent in any further proceedings.

26  **13.7  Revocation of the Plan.**  The Plan Proponents reserve the right to withdraw this

27  Plan before the Confirmation Date.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

59

13.8 **Severability of Plan Provisions.** If, before Confirmation, the Bankruptcy Court holds that any term or provision of this Plan is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. Such term or provision, as altered or interpreted by the Bankruptcy Court, shall be effective in this Plan, and the remaining terms and provisions of this Plan shall remain in full force and effect and shall not be affected, impaired, or invalidated in any manner. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with this Section 13.8, is valid and enforceable under its terms.

13.9 **Governing Law.** The rights and obligations arising under this Plan, and any agreements, contracts, documents, or instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, California law without giving effect to conflict of law principles under California law, unless a rule of law or procedure is supplied by: (a) federal law (including, without limitation, the Bankruptcy Code and the Federal Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, this Plan.

13.10 **Retention of Jurisdiction.** After the Effective Date, the Bankruptcy Court shall have, exclusively and to the fullest extent permitted by the Bankruptcy Code, jurisdiction over any matter related to the Case or this Plan, including, without limitation, with respect to any of the following matters:

13.10.1 resolution of any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if appropriate, liquidate, any Claims arising therefrom;

13.10.2 entry of such orders as may be appropriate to interpret, enforce, implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan;

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

60

1           13.10.3     determination of any and all motions, adversary proceedings,

2    applications, and contested or litigated matters that may be pending on the Effective Date or

3    that, pursuant to this Plan, may be instituted by the Plan Agent after the Effective Date,

4    including, without limitation, any matters related to Causes of Action;

5           13.10.5     hearing and determining any objections to the allowance of Claims or

6    Administrative Claims, whether filed before or after the Confirmation Date, including any

7    objections to the classification of any Claim, and any proceedings to allow, disallow,

8    determine, liquidate, estimate, or establish the priority or the secured or unsecured status of

9    any Claim, in whole or in part, or to establish Reserves pending the resolution of Disputed

10   Claims;

11          13.10.6     entry and implementation of such orders as may be appropriate in the

12   event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or

13   vacated;

14          13.10.7     consideration of any modifications of this Plan, after confirmation of this

15   Plan, and, if in the best interests of Creditors, modification of this Plan even after this Plan

16   has been substantially consummated;

17          13.10.8     interpreting and enforcing orders of the Bankruptcy Court, including,

18   without limitation, the cure of any defect or omission, or the reconciliation of any

19   inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

20          13.10.9     hearing and determining all applications for awards of compensation for

21   services rendered and reimbursement of expenses incurred prior to the Effective Date,

22   including, without limitation, all Pre-Effective Date Fee Claims of Pre-Effective Date

23   Professionals;

24          13.10.10    hearing and determining disputes arising in connection with, or relating

25   to, this Plan or the interpretation, implementation, or enforcement of this Plan, or the extent

26   of any entity's obligations in connection with this Plan;

27          13.10.11    the recovery of all assets of the Debtor and property of the Estate,

28   wherever located;

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

13.10.12    issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of this Plan or to restrain interference by any entity with the consummation or the enforcement of this Plan;

13.10.13    hearing and determining matters concerning Taxes and tax refunds, tax attributes, and tax benefits and similar and related matters, with respect to the Debtor or the Reorganized Debtor, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13.10.14    hearing and determining any issue or dispute arising from or related to the Plan Assets, the Post-Effective Date Committee or the Plan Agent;

13.10.15    the effectuating of Distributions under, and the performance of, the provisions of this Plan;

13.10.16    hearing and determining any other matter deemed relevant to the consummation of this Plan and the administration of the Case; and

13.10.17    the issuance of a Final Decree.

Notwithstanding anything to the contrary contained in the foregoing, in the event that the Bankruptcy Court determines that it is without jurisdiction, or abstains from exercising jurisdiction, over any matter, the provisions of this Section 13.10 shall not affect, control, prohibit, or limit in any manner the exercise of jurisdiction over such matter by any other court or tribunal that has jurisdiction over such matter.

**13.11    Successors and Assigns.** Except as provided expressly to the contrary in this Plan (including, without limitation, pursuant to Section 11.1 of this Plan), the rights, benefits, and obligations of any entity referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that entity.

**13.12    Business Day.** If any payment or act under this Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act shall be deemed to have been completed on the required day.

62

MTI Plan v3.0

**13.13** **No Waiver.** Except as provided expressly to the contrary in this Plan, neither the failure to list a Claim in the Bankruptcy Schedules filed by the Debtor, the failure of a Plan Proponent to object to any Claim for purposes of voting, the failure of a Plan Proponent to object to a Claim or Administrative Claim prior to the Effective Date, the failure of a Plan Proponent to assert a Cause of Action prior to the Effective Date, nor any action or inaction of a Plan Proponent with respect to a Claim, Administrative Claim, or Cause of Action, other than a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of such Plan Proponent or its successors or representatives, to (a) object to or examine such Claim or Administrative Claim, in whole or in part, or (b) retain and assert, pursue, prosecute, litigate, or otherwise enforce any Cause of Action.

**13.14** **Post-Effective Date Notice.** From and after the Effective Date, any entity which desires to obtain notice of any pleading or document filed in the Case, or of any hearing in the Bankruptcy Court, or of any matter as to which notice is to be provided under this Plan, must file a request for post-Effective Date notice and serve such request on the Plan Agent, the Post-Effective Date Committee, and any counsel for the Plan Agent; provided, however, that the United States Trustee, the Post-Effective Date Committee, the Reorganized Debtor and the Plan Agent each shall be deemed to have requested such post-Effective Date notice.

**13.15** **Modification of this Plan.** At any time prior to the confirmation of this Plan, the Plan Proponents may supplement, amend or modify this Plan in accordance with section 1127(a) of the Bankruptcy Code. After confirmation of this Plan, the Plan Agent may (a) apply to the Bankruptcy Court to modify this Plan, notwithstanding any substantial consummation of this Plan if such modification is in the best interests of the Creditors, and (b) apply to the Bankruptcy Court to remedy defects or omissions in this Plan or to reconcile inconsistencies in this Plan.

**13.16** **Nonconsensual Confirmation.** In accordance with section 1126(g) of the Bankruptcy Code, Interest Holders are deemed to have not accepted this Plan. The Plan Proponents hereby request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the Interest Holders' deemed non-acceptance of this Plan and any other non-acceptance of this Plan by any other Class established by this Plan. The Plan

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

63

1  Proponents hereby reserve the right to modify this Plan in accordance with section 1127 of the

2  Bankruptcy Code and Section 13.15 of this Plan in connection with confirmation proceedings with

3  respect to this Plan, and, unless the Bankruptcy Court should determine that such modification

4  affects adversely the treatment of any Class of Creditors established by this Plan, such modification

5  of this Plan may be effectuated without the need to amend the Disclosure Statement or to re-solicit

6  votes with respect to this Plan.

7  **13.17  Other Documents and Actions.**  The Reorganized Debtor and the Plan Agent may

8  execute such other documents and take such other actions as may be necessary or appropriate to

9  effectuate the transactions contemplated under this Plan, including, without limitation, any Merger

10  Transaction.

11  **13.18  Notices.**  Except as provided expressly to the contrary in this Plan, after the

12  Effective Date of this Plan, all notices and requests in connection with this Plan shall be in writing

13  and shall be hand delivered, sent by e-mail transmission or sent by telefacsimile, with a copy sent by

14  first-class mail, addressed to the Plan Agent, the Reorganized Debtor and to the Post-Effective Date

15  Committee at the addresses that will be set forth in the Confirmation Order.

16  All notices to any Creditor shall be sent to it at its last known address or to the last known

17  address of its attorney of record.  Any such Creditor may designate in writing any other address for

18  the purpose of this Section 13.18, which designation shall be effective on receipt thereof by the

19  Debtor or by the Plan Agent.

20  **13.19  Inconsistencies.**  In the event that any provisions of this Plan are inconsistent with

21  the provisions of the Disclosure Statement, the provisions of this Plan shall control.

22  **13.20  Changes in Rates Subject to Regulatory Commission Approval.**  The Debtor is

23  not subject to governmental regulatory commission approval of its rates.

24  **13.21  Modification/Superseding of Loan and Security Agreements.**  Except as

25  provided expressly to the contrary in this Plan, from and after the Effective Date, all loan documents,

26  security documents, Liens, assignments of rent, promissory notes, indemnity agreements, surety

27  agreements, purchase orders, invoices, and other contracts documenting Claims against the Debtor

28  (collectively, "Loan Documents") shall be deemed modified or superseded completely, as the case

64

MTI Plan v3.0

terms of this Plan.  Upon the Effective Date, any defaults under such Loan Documents shall be

deemed cured as of the Effective Date.  After the Effective Date, Claims shall be paid only in

accordance with the terms of this Plan, and any effort by any Creditor to compel any payment to it of

more than its Allowed Claim, or the payment of its Claim in any manner other than as provided in

this Plan, shall constitute a violation of the Confirmation Order and section 1141 of the Bankruptcy

Code.

**13.22   Implementation of Section 1142 of the Bankruptcy Code.**  Pursuant to

section 1142(a) of the Bankruptcy Code, the Reorganized Debtor and the Plan Agent are authorized

to carry out the terms of this Plan.  Pursuant to section 1142(b) of the Bankruptcy Code, all Creditors

and Interest Holders shall execute and deliver, or join in the execution and delivery of, any

instrument or document appropriate to effectuate this Plan, and perform any other act that is

appropriate for the consummation of this Plan.  To the extent that any Creditor or Interest Holder

fails to comply with these provisions, the Reorganized Debtor and the Plan Agent shall be entitled to

obtain, on an expedited basis, an order of the Bankruptcy Court compelling the Creditor's

compliance with these provisions, and, during the time period encompassed by such Creditor's non-

compliance, no payment shall be made to such Creditor under this Plan, and such Creditor shall be

responsible for all costs and damages incurred by the Reorganized Debtor and/or the Plan Agent as a

result of such Creditor's non-compliance with these provisions.

## XIV.

## RECOMMENDATION AND CONCLUSION

The Plan Proponents believe that confirmation and implementation of this Plan are

preferable to any other alternative because, in their view, this Plan will provide holders of Allowed

Claims with the maximum recovery possible on their Allowed Claims.  Accordingly, the Plan

Proponents urge Creditors to vote to accept this Plan.

Dated: August __4__, 2010

**MTI TECHNOLOGY CORPORATION,**
**Chapter 11 Debtor and Debtor-in-Possession**

By: _____
Name: SCOTT POTERACKI
Title:  Chief Restructuring Officer

CLARKSON, GORE & MARSHALL, APLC
ATTORNEYS AT LAW
Torrance, California

65

MTI Plan v3.0



1     Dated:  August ___, 2010                **OFFICIAL COMMITTEE OF UNSECURED**

2                                    **CREDITORS**

3                                   By:_____

4                                   Name: STEVEN SASS
                                     Title:  Chairman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

CANOPY SETTLEMENT AGREEMENT

EXHIBIT "1"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This *Settlement Agreement and Mutual Release of Claims* (hereinafter the "Agreement") is made and entered into this 18th day of September 2008, by and between the Official Committee of Unsecured Creditors (the "Committee") for the estate of MTI Technology Corporation (the "Debtor") and the Debtor, on the one hand, and The Canopy Group, Inc. ("Canopy"), on the other hand. The Committee, the Debtor and Canopy are individually referred to herein as a "Party" and are collectively referred to herein as the "Parties."

### RECITALS

WHEREAS, on October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and thereby commenced its Chapter 11 bankruptcy case entitled In re MTI Technology Corporation, Case Number 8:07-13347-ES (the "Bankruptcy Case"), and

WHEREAS, the Committee is the duly appointed and acting official committee of creditors holding unsecured claims in the Bankruptcy Case; and

WHEREAS, on November 13, 2007, the Bankruptcy Court entered its *Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 (I) Authorizing Secured Post-Petition Financing on a Super-Priority Basis; (II) Authorizing Use of Cash Collateral; (III) Approving Agreements Related to the Foregoing; (IV) Modifying Automatic Stay; and (V) Granting Adequate Protection to Pre-Petition Lenders and Related Relief* (the "Financing Order") in the Bankruptcy Case; and

WHEREAS, pursuant to the Financing Order, the Debtor granted to Canopy perfected, post-petition security interests and liens on the "Canopy Collateral," as such term is defined in the Financing Order; and

WHEREAS, on December 17, 2007, the Bankruptcy Court entered its *Order Pursuant to Sections 105, 363(b), 363(f) and 365 of Title 11 of the United States Code (I) Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (II) Approving the Debtor's Assumption and Assignment of Certain Executory Contracts; and (III) Waiving the 10-Day Stay Period Set Forth in Bankruptcy Rules 6004(a) and 6006(d)* (the "Sale Order") in the Bankruptcy Case, and thereby authorized the Debtor to sell to Copper Holdings LLC the Debtor's equity interests in three European subsidiaries of the Debtor ("Equity Interests"), free and clear of Canopy's security interest in the Equity Interests; and

WHEREAS, pursuant to the Sale Order, Canopy's security interest in the Equity Interests attached to the proceeds that the Debtor received in connection with the sale of the Equity Interests, and, as a consequence thereof, approximately $5.4 million in sale proceeds, plus accrued interest (hereinafter, the "Sale Proceeds") is being held in an attorney trust account

maintained by the Debtor's Chapter 11 bankruptcy counsel ("Trust Account") on account of Canopy's secured claim; and

WHEREAS, assets of the Debtor's estate include claims and causes of action, under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code") and other federal and state-law causes of action, including but not limited to potential claims and causes of action against certain former officers and directors of the Debtor, and all other claims of any kind or nature whatsoever, whether imposed by agreement, understanding, law or equity (collectively, the "Claims"; and

WHEREAS, the Financing Order provides the Committee with standing to challenge Canopy's claims and asserted security interests, including Canopy's claim that it has a validly perfected, first priority lien and security interest in the Sale Proceeds as the identifiable cash proceeds of the Equity Interests; and

WHEREAS, the Committee has asserted to Canopy that it believes grounds exist to seek avoidance of Canopy's security interest, pursuant to section 547 of the Bankruptcy Code; and

WHEREAS, Canopy denies the Committee's assertion, and contends that it is entitled to be paid in full on account of its secured claim, including post-petition interest, from the Sale Proceeds; and

WHEREAS, Canopy has filed a secured proof of claim in the Bankruptcy Case, which has been assigned claim number 487 (the "Canopy Claim"), asserting a secured claim against the Debtor's estate in the amount of $5,173,373.27, plus post-petition interest at twelve percent (12%) per annum, and secured by the Sale Proceeds and other assets of the estate; and

WHEREAS, the Committee and Canopy have discussed the nature and basis of their claims and defenses in an attempt to reach a settlement and compromise of all issues between them; and

WHEREAS, the Parties are now desirous of resolving their disputes and all other issues between them through compromise and settlement, as further set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained herein, the Parties, intending to be bound hereby, do hereby stipulate, agree and covenant as follows:

1.  Payment to Canopy. Within five (5) business days after the Effective Date (as such term is defined in paragraph 18 hereof), the Debtor shall pay to Canopy, from the Sale Proceeds, by certified check or wire transfer, the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) (the "Effective Date Settlement Payment").

2

2.    <u>Assignment and Transfer of Portions of Cash Proceeds of Claims to Canopy.</u> Upon the Effective Date, the Debtor and its estate shall be deemed to have transferred, conveyed and assigned to Canopy (and the Debtor and the Committee shall sign forms of transfer or assignment or such other documents as Canopy shall reasonably request) an undivided interest in gross cash proceeds received by the Debtor's estate on account of any Claims, whether or not such cash proceeds are paid on account of filed or non-filed, asserted or unasserted, pending or contemplated, contingent or uncontingent, disputed or undisputed and liquidated or unliquidated Claims (the "Gross Claims Proceeds"), up to a maximum amount of ONE MILLION DOLLARS ($1,000,000.00), in the following percentages:

(a)    If the total Gross Claims Proceeds are less than ONE MILLION DOLLARS ($1,000,000.00), Canopy shall receive no percentage of the Gross Claims Proceeds.

(b)    If the total Gross Claims Proceeds are between ONE MILLION DOLLARS ($1,000,000.00) and TWO MILLION DOLLARS ($2,000,000.00), Canopy shall receive FIVE PERCENT (5%) of all such Gross Claims Proceeds.

(c)    If the total Gross Claims Proceeds are between TWO MILLION DOLLARS ($2,000,000.00) and THREE MILLION DOLLARS ($3,000,000.00), Canopy shall receive TEN PERCENT (10%) of all such Gross Claims Proceeds.

(d)    If the total Gross Claims Proceeds exceed THREE MILLION DOLLARS ($3,000,000.00), Canopy shall receive FIFTEEN PERCENT (15%) of all such Gross Claims Proceeds provided, however, that in no event shall Canopy ever receive more than ONE MILLION DOLLARS ($1,000,000.00) of the Gross Claims Proceeds, and the estate's liability to Canopy shall be capped at that amount.

(e)    <u>Exclusion of Certain Proceeds and Collections of the Estate from Definition of Gross Claims Proceeds.</u> For purposes of this Paragraph 2, the phrase "Gross Claims Proceeds" shall not include any of the following and Canopy shall not be entitled to any share of any of the following under this Agreement: (i) any collections, receipts or recoveries of any nature by the Debtor's estate that were actually received by the Debtor's estate before the date of execution of this Agreement, (ii) any collections, receipts or recoveries received by the Debtor's estate, or that may be received by the Debtor's estate, before or after the date of execution of this Agreement, from the Debtor's disposition of its domestic business units or stock interests in its foreign subsidiaries; and (iii) any collections, receipts or recoveries received by the Debtor's estate, or that may be received by the Debtor's estate, before or after the date of execution of this Agreement, of trade receivables generated in the ordinary course of the Debtor's business operations and as part of the Debtor's business operations.

3.    <u>Total of all Payments to Canopy not to Exceed THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00).</u> Canopy acknowledges and agrees that the total sum of all payments it shall be entitled to under this Agreement and settlement of the Canopy Claim shall never exceed the sum of THREE MILLION FIVE HUNDRED

3

THOUSAND DOLLARS ($3,500,000.00), consisting of (a) TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) as and for the Effective Date Settlement Payment, and (b) no more than ONE MILLION DOLLARS ($1,000,000.00) of Gross Claims Proceeds.

4.    No Settlement or Compromise of Claims for Non-Cash Consideration without the Express Written Permission of Canopy, or an Order of the Bankruptcy Court After Notice to Canopy. Neither the Debtor nor the Committee nor any other representative of the estate, including but not limited to any Chapter 11 plan trustee or any Chapter 11 or 7 trustee, shall settle or compromise any Claims of the estate for non-cash consideration without the express written permission of Canopy, or an Order of the Bankruptcy Court after notice to Canopy and an opportunity for Canopy to be heard on the approval of any settlement or compromise; provided, however, that any settlement or compromise of Claims may take into account and incorporate any valid and enforceable setoff, netting claim, chargeback claim, recoupment claim, counterclaim and any other valid and enforceable defense that may be asserted by the non-debtor party to such settlement or compromise, without any permission of Canopy.

5.    Settlement of Claims; Notice to Canopy of Rule 9019 Motions.

(a)    Prior to Confirmation of Plan. Prior to any confirmation of a Chapter 11 plan in the Bankruptcy Case, all settlements and compromises of all estate Claims, prior to becoming effective, shall be approved by the Bankruptcy Court after notice and an opportunity for a hearing, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019"). Canopy shall have the same right as any other creditor of the estate to object to or challenge any proposed settlement or compromise. Canopy shall be provided with at least fifteen (15) calendar days' written notice of any such settlements or compromises, and of any hearing thereon.

(b)    After Confirmation of Plan. After any confirmation of a Chapter 11 plan in the Bankruptcy Case, no Bankruptcy Court approval of a settlement or compromise of an estate Claim shall be required. Notwithstanding the foregoing, Canopy shall be given written notice of any such settlement or compromise, and Canopy shall have a period of fifteen (15) calendar days after the giving of such notice within which to object to such settlement or compromise. In the event that Canopy objects timely to such settlement or compromise, a motion to obtain Bankruptcy Court approval of such settlement or compromise pursuant to Bankruptcy Rule 9019 shall be filed, with a hearing thereon scheduled on not less than ten (10) days' notice to Canopy, and Canopy shall have the right to present at any such hearing its objection to such settlement or compromise.

6.    Pursuit of Claims by Estate; Reporting on Gross Claims Proceeds.

(a)    Service of Pleadings Regarding Claims and any Initial Written Demands. The Debtor, the Committee, or the estate's then representative shall serve upon Canopy, in accordance with the provisions of paragraph 35 hereof, copies of any initial written demand that may be tendered or served upon any non-debtor asserting any Claim subject to this Agreement concurrently with the making of any such initial written demand, as

4

Exhibit A, page 159

Exhibit 1, Page 70

well as pleadings that may be filed to pursue any Claim subject to this Agreement
concurrently with the filing of any such pleadings.

(b)    Report on Gross Claims Proceeds.  Upon written request by Canopy, the
Debtor, the Committee, or the estate's then representative shall provide to Canopy a
written report (which may be in the form of written correspondence rather than a pleading
or document to be filed with the Bankruptcy Court) of all Gross Claims Proceeds or other
consideration received by the estate on account of any Claim.  Any such written report
shall, at a minimum, identify (a) the name and address of the person or entity against
whom the Claim is asserted, (b) the form and amount of all Gross Claims Proceeds or
other consideration received by the estate on account of the Claim, and (c) the date of
receipt by the estate of all such Gross Claims Proceeds or other consideration.  Canopy
shall be entitled to make a written request for such a report no more frequently than once
every four calendar months.  Written reports shall be provided to Canopy within fifteen
(15) calendar days of the making of a request therefor.

7.    Segregation of Gross Claims Proceeds; Payment to Canopy of Gross Claims
Proceeds.

(a)    Segregation of Gross Claims Proceeds.  Upon receipt of any Gross Claims
Proceeds, the Debtor, the Committee, or the estate's then representative shall deposit
such Gross Claims Proceeds in an interest-bearing, segregated bank account satisfactory
to Canopy.  No funds shall be disbursed from such account except as provided in this
paragraph 7.

(b)    Payment to Canopy of Gross Claims Proceeds.  The Debtor, the
Committee or the estate's then representative shall pay to Canopy, in good and sufficient
funds, all Gross Claims Proceeds to which Canopy becomes entitled under paragraph 2 of
this Agreement as soon as practicable after the 91st day after the estate's receipt of such
Gross Claims Proceeds if the party paying such Gross Claims Proceeds is not an "insider"
of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Code, and the
Debtor, the Committee or the estate's then representative shall pay to Canopy, in good
and sufficient funds, all Gross Claims Proceeds to which Canopy becomes entitled under
paragraph 2 of this Agreement as soon as practicable after one year after the estate's
receipt of such Gross Claims Proceeds if the party paying such Gross Claims Proceeds is
an "insider" of the Debtor pursuant to section 101(31) of the Bankruptcy Code.
Notwithstanding the foregoing, for administrative convenience, Canopy shall not receive
payment of any Gross Claims Proceeds until its share of the Gross Claims Proceeds for
any applicable period shall meet or exceed the sum of TEN THOUSAND DOLLARS
($10,000.00).

(c)    Avoidance of Payment of Gross Claims Proceeds.  In the event that a
final, non-appealable order of a court of competent jurisdiction is entered ordering,
pursuant to Chapter 5 of the Bankruptcy Code or otherwise, the Debtor's estate to repay
all or a portion of the amount of any Gross Claims Proceeds received by the estate,

5

Canopy shall repay immediately to the estate any amount of such Gross Claims Proceeds that it may have been paid by the estate.

8.    Waiver of Canopy Claim; Release of Sale Proceeds to Estate.

(a)    Waiver of Canopy Claim. Upon Canopy's receipt of the Effective Date Settlement Payment, Canopy shall be deemed to have waived the Canopy Claim in its entirety and Canopy shall be entitled to no further distributions from the estate or any successor to the estate, other than Canopy's entitlement to potential distributions on account of any Gross Claims Proceeds. Canopy shall not, however, be deemed to have waived any claim or cause of action against the Debtor, the Committee, the estate or any successor to the estate arising out of or related to any failure by them or any of them to satisfy their obligations under this Agreement.

(b)    Release of Sale Proceeds to Estate. After the Effective Date Settlement Payment is made to Canopy, the balance of the Sale Proceeds, plus all accrued interest thereon, shall be disbursed immediately from the Trust Account to the Debtor's estate and such funds shall be free and clear of any claim, lien, encumbrance or any other interest of any nature whatsoever of Canopy.

9.    Release of Claims by Canopy. Except for claims and causes of action arising out of or related to a breach of this Agreement, upon the Effective Date, Canopy, on behalf of itself and its predecessors, successors and assigns, hereby absolutely, fully and forever releases, waives, acquits and discharges the Debtor, the Committee, the Debtor's estate and any predecessor, successor and assign of each of them, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employer, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of each of them, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interest, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that Canopy has, may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act or commission or omission by or involving the Debtor, existing or occurring prior to the date of this Agreement, including, without limitation, the Canopy Claim, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

10.    Release of Claims by the Debtor, the Committee and the Estate. Except for claims and causes of action (a) arising out of or related to a breach of this Agreement, or (b) arising out of or related to the service by any current or former officer, director, employee, shareholder or agent of Canopy as a director or officer of the Debtor (including, without limitation, such service by Ron Heinz), upon the Effective Date, the Debtor, for itself and for the estate, and the Committee, on behalf of themselves and their respective predecessors, successors and assigns, hereby absolutely, fully and forever release, waive, acquit and discharge Canopy

6

and any predecessor, successor or assign of Canopy, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of Canopy, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that they may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving Canopy, existing or occurring prior to the date of this Agreement, including, without limitation, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

11.    Scope of Releases. Each of the Parties acknowledges the fact that it is its intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of and as a bar to each such claim, cause of action, suit, debt, lien, encumbrance, security interest, interest, obligation, liability, demand, damage, charge, account, loss, cost and expense of every kind or nature whatsoever, heretofore referred to and released, which Canopy, on one hand, and the Debtor, the estate and the Committee, on the other hand, have had, have, or may have against each other. In connection with such release, each Party acknowledges that it is aware that it or its attorneys may hereafter discover facts different from or in addition to the facts which it or its attorneys now know or believe to be true with respect to the subject matters of this Agreement and that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever settle any and all claims which do now exist, may exist or heretofore have existed among the Parties in accordance with the terms and conditions hereof, and that, in furtherance of such intention, the releases herein given shall be and shall remain in effect for all time as full and complete mutual releases notwithstanding the discovery of any such different or additional facts or of any such additional damages, costs or expenses. Therefore, each Party acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Except only for the obligations imposed upon, and the rights expressly reserved by, each Party pursuant to this Agreement, each of the Parties does hereby waive and relinquish, effective as of the Effective Date, all rights and benefits which it has or may have under Section 1542 of the Civil Code of the State of California, and any other comparable statutes of any other states in the United States.

7

Exhibit A, page 162

Exhibit 1, Page 73

17.    <u>No Rescission or Termination</u>. As a part of the foregoing releases, each of the Parties acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true. From and after the Effective Date of this Agreement, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Agreement, and the releases given hereunder, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

13.    <u>Covenants Not to Sue</u>. The Parties covenant and agree not to commence against each other any action or proceeding of any nature whatsoever with respect to any of the claims hereby released. The Parties hereby further covenant and agree not to join in or to participate in any action or proceeding based upon, arising out of or relating to the claims hereby released, unless such participation is compelled by order of a court of competent jurisdiction.

14.    <u>Withdrawal of Canopy Claim</u>. Within five business days after Canopy's receipt of the Effective Date Settlement Payment, Canopy shall withdraw, with prejudice, the Canopy Claim.

15.    <u>No Assignment of Released Claims</u>. Each Party represents and warrants to the other Parties that it has not assigned or transferred to any person or entity any of the claims hereby released by it.

16.    <u>No Admission of Wrongdoing</u>. Each Party acknowledges and agrees that this Agreement contemplates and provides for the resolution of disputed claims, and that no Party makes any admission of any wrongdoing. Except as set forth expressly to the contrary in this Agreement, no Party admits pursuant to this Agreement any liability to any other Party.

17.    <u>Conditions to Effectiveness of this Agreement</u>. The effectiveness of this Agreement, and the effectiveness of the rights and obligations of the Parties set forth in this Agreement, are subject to the occurrence of each of the following conditions (together, "Effectiveness Conditions"):

        (a)    <u>Execution of Agreement</u>. The execution of this Agreement by each of the Parties.

        (b)    <u>Bankruptcy Court Approval Order</u>. The entry of an order of the Bankruptcy Court approving, pursuant to Bankruptcy Rule 9019, the terms and conditions of this Agreement, and such order becoming a final, non-appealable order.

18.    <u>Effective Date of Agreement</u>. This Agreement shall be effective and binding upon the Parties on the first business date upon which all of the Effectiveness Conditions are satisfied ("Effective Date").

8

19.  Termination of Agreement.

(a)  Termination Events.  This Agreement may be terminated at the option of a non-defaulting Party upon the occurrence of either of the following events:

(i)  The Bankruptcy Court enters an order denying approval of this Agreement; or

(ii)  The Effective Date of this Agreement has not occurred by December 1, 2009.

(b)  Effect of Termination.  In the event of any termination of this Agreement as permitted by paragraph 19(a) hereof, this Agreement, and all of the provisions of this Agreement, shall be null and void ab initio and of no force or effect, shall not be binding upon any of the Parties, and the Parties shall be restored to the same respective positions that they were in as of the date of execution of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to any other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement.  Upon any termination of this Agreement, neither the existence of this Agreement nor its contents shall be deemed to be a presumption, concession, or admission by or against any Party or be admissible in evidence, or referred to for any purpose in the Bankruptcy Case, or in any action or proceeding, except in any action or proceeding relating to or arising out of any breach of this Agreement by a Party.

20.  Binding Effect, Motion for Bankruptcy Court Approval of Agreement.

(a)  Binding Effect of Agreement.  Upon the Effective Date, this Agreement shall be binding upon and shall inure to the benefit of the Debtor's bankruptcy estate and the Parties and the respective successors and assigns of the Parties, including, without limitation, any Chapter 11 trustee or Chapter 7 trustee or Chapter 11 plan representative.

(b)  Bankruptcy Rule 9019 Motion.  The Committee shall file a motion seeking, pursuant to Bankruptcy Rule 9019, approval of this Agreement within no more than fifteen (15) days of its execution by all of the Parties.

21.  Incorporation of Agreement in any Chapter 11 Plan.  Subject to and conditioned upon the occurrence of the Effective Date, to the extent that any terms and conditions of this Agreement are not fully implemented at the time of the filing of any Chapter 11 plan in the Bankruptcy Case (e.g., the payment to Canopy of any Gross Claims Proceeds to which it is entitled under paragraph 2 hereof), such terms and conditions of this Agreement shall be incorporated into and become a part of such Chapter 11 plan and Canopy's rights under this Agreement shall not in any manner be impaired or diminished by any Chapter 11 plan confirmed in the Bankruptcy Case.

9

22.  **Modification.** This Agreement may not be modified or amended except by an instrument in writing signed by all of the Parties.

23.  **Waiver.** Acceptance by any Party of any performance less than required hereunder shall not be deemed to be a waiver of the rights of such Party to enforce all of the terms and conditions hereof. Except as otherwise expressly provided herein, no waiver of any such right hereunder shall be binding unless reduced to writing and signed by the Party to be charged therewith.

24.  **Counterparts; Facsimile Signature.** This Agreement may be signed in any number of counterparts with the same effect as if the signatures appeared on the same instrument, and all signed counterparts shall be deemed to be an original. Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original.

25.  **Authorized Execution.** Each individual executing this Agreement on behalf of a Party represents and warrants that (i) to the best of its information and knowledge formed after reasonable inquiry, all Recitals set forth in this Agreement are true and accurate as of the date of execution of this Agreement, (ii) it is authorized to execute this Agreement for such Party, (iii) upon the Effective Date, such Party shall be bound in all respects hereby, and (iv) such execution presents no conflict with any other agreement of such Party or any applicable law.

26.  **Attorneys' Fees and Costs.** The Parties shall bear their own attorneys' fees and costs arising from or related to the Canopy Claim and the negotiation and execution of this Agreement. In the event of any claim, action, or lawsuit to enforce, modify, interpret, invalidate, rescind, or set aside any term or provision of this Agreement, however, the prevailing party shall be entitled to an award of its costs and expenses, including reasonable attorneys' fees and costs, incurred as a result of such claim, action, or lawsuit, including any appeals resulting therefrom.

27.  **No Inducement.** The Parties represent, warrant, and agree that, upon executing and entering into this Agreement, they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained, or embodied in this Agreement.

28.  **Governing Law; Choice of Forum.** This Agreement shall be construed and enforced according to the laws of the State of California, without reference to conflicts of law principles. Any action brought to construe, interpret, enforce or modify the terms of this Agreement may be brought only in the Bankruptcy Court (subject only to the right of appeal). Each of the Parties hereby consents to the jurisdiction of the Bankruptcy Court to enforce the provisions of this Agreement, and hereby waives any objection that it may have to such jurisdiction. Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding to construe, interpret, enforce or modify the terms of this Agreement may be brought in the state or federal courts of California sitting in Orange County, California

10

29.   Severability.  If any part of this Agreement shall be determined to be illegal, invalid or unenforceable, that part shall be severed from the Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

30.   Free and Voluntary Act.  The Parties hereby acknowledge and agree that they have carefully read the foregoing covenants and mutual releases, know the contents thereof, have discussed them with legal counsel or have decided not to consult with legal counsel, and sign the same of their own free and voluntary act with the intent to be legally bound thereby.

31.   No Construction against any Party; Headings for Convenience Only.  The Parties have cooperated in the drafting and preparation of this Agreement.  In any construction of this Agreement, or of any of its terms and provisions, the same shall not be construed against any Party.  Moreover, all headings in this Agreement are inserted for convenience of reference only, and shall not affect the construction or interpretation hereof.

32.   Reliance on Representations.  Each Party specifically acknowledges that it has not relied on any statement, representation, or promise of any other Party, or of any of its agents, employees, attorneys, or representatives, in executing this Agreement, except as expressly set forth herein.  In addition, each Party acknowledges that it is under no duress or undue influence and that it executes this Agreement as an act of its own voluntary will.

33.   Entire Agreement.  This Agreement constitutes the entire agreement of the Parties with respect to the matters set forth herein, and supersedes any and all prior agreements or understandings, written or oral, between them relating to the subject matter of this Agreement.  No other promises or agreements shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement or separately agreed to in writing and signed by an authorized representative of each Party.

34.   Effectuation.  Each Party agrees to take any and all acts, and to execute any and all further documents, that may be reasonably necessary or appropriate to obtain Bankruptcy Court approval of this Agreement and to effectuate the provisions of this Agreement.

35.   Notices.  Except as provided below, all notices, requests, demands, and other communications required by this Agreement shall be in writing and shall be delivered by facsimile, e-mail transmission, or in person, or mailed by first class registered or certified mail, as follows:

To the Committee:
    Steven D. Sass
    Vice President, Legal Services
    RMS
    307 International Circle, #270
    Hunt Valley, MD 21030
    Fax: (410) 773-4057
    E-Mail: steven.sass@rmsaa.com

11

Exhibit A, page 166

Exhibit 1, Page 77

With a copy to:
    Robert E. Opera, Esq.
    Winthrop Couchot Professional Corporation
    660 Newport Center, Fourth Floor
    Newport Beach, California 92660-5946
    Fax: (949) 720-4111
    E-Mail: ropera@winthropcouchot.com

With a copy to:
    Richard Feferman
    Corporate Recovery Associates
    3830 Valley Center Dr.
    PMB 705-152
    San Diego, CA 92130
    Fax: (858) 430-2454
    E-Mail: Richard@crarecovery.com

To the Debtor:
    Scott Poteracki
    MTI Technology Corporation
    15641 Red Hill Avenue
    Suite 200
    Tustin, CA 92780
    E-Mail: spoteracki@mediant.com

With a copy to:
    Scott Clarkson, Esq.
    Clarkson, Gore & Marsella, SPLC
    3424 Carson St Ste 350
    Torrance, CA 90503
    Fax: (310) 214-7254
    E-Mail: sclarkson@lawcgm.com

To Canopy:
    Canopy Group, Inc.
    c/o Brandon Tidwell
    333 South 520 West, Suite 300
    Lindon UT 84042
    Fax: (801) 229-2458
    E-Mail: brandon@canopy.com

With a copy to:
Michael R. Johnson, Esq.
Snell & Wilmer LLP
Gateway Tower West
15 West South Temple, #1200
Salt Lake City, UT 84101
Fax: (801) 257-1800
E-Mail: mrjohnson@swlaw.com

With a copy to:
Danny C. Kelly, Esq.
Stoel Rives LLP
201 S. Main St., #1100
Salt Lake City, UT 87111
Fax: (801) 578-6999
E-Mail: dckelly@stoel.com

If delivered by facsimile, by e-mail transmission, or personally, the date on which the notice, request, demand or other communication is delivered shall be the date on which such delivery is made, and, if delivered by mail as aforesaid, the date on which such notice, request, instruction or document is received shall be the date of delivery. Any Party may designate in writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.

36.    Interpretation.  Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.


[REMAINDER OF PAGE LEFT BLANK; SIGNATURE PAGE TO FOLLOW]


13

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: _____
Its: Chairman

MTI TECHNOLOGY CORPORATION

By: _____
Its: _____

THE CANOPY GROUP, INC.

By: Brandon Tidwell
Its: Managing Director and General Counsel

14

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: _____
Its: Chairman

MTI TECHNOLOGY CORPORATION

By: Scott Poterace
Its: CEO

THE CANOPY GROUP, INC.

By: Brandon Tidwell
Its: Managing Director and General Counsel

14

**Exhibit A, page 170**

Exhibit 1, Page 81

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION


By: _____
Its: Chairman


MTI TECHNOLOGY CORPORATION


By: _____
Its: _____


THE CANOPY GROUP, INC.


By: Brandon Tidwell
Its: Managing Director and General Counsel

14

Exhibit A, page 171

Exhibit 1, Page 82

EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE ASSUMED BY DEBTOR

EXHIBIT "2"

**NONE.**

**EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE REJECTED BY DEBTOR**

**EXHIBIT "3"**

**NONE**.

Exhibit A, page 175
Exhibit 3, Page 84

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **DEBTOR'S AND COMMITTEE'S JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On August 5, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Via First Class Mail**

MTI Technology Corporation
Attn:  Thomas P. Raimondi, Jr., Pres. & CEO
15641 Red Hill Avenue, Suite 200
Tustin, CA 92780

United States Trustee
Attn:  Frank Cadigan
411 West Fourth Street, #904
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via E-Mail**

Michael R. Johnson  - Ray Quinney & Nebeker - MJohnson@rqn.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2010 | Susan Connor | |
|---|---|---|
| Date | Type Name | Signature |

MTI Plan v.3.0

## NEF SERVICE LIST

- Robert C Briseno    rbriseno@swlaw.com
- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna    lavignas@sec.gov
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@gmail.com
- Robert E Opera    pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Daniel C Silva    dsilva@gordonrees.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sharon.weiss@hro.com
- David L Wilson    dlwilson@winston.com

**EXHIBIT 3**

**CONFIRMATION ORDER**

**(Paragraph I)**

ROBERT E. OPERA – State Bar No. 101182
ropera@winthropcouchot.com
RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@winthropcouchot.com
PAYAM KHODADADI – State Bar No. 239906
pkhodadadi@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile:   (949) 720-4111

Counsel for the Official Committee
of Unsecured Creditors

Scott C. Clarkson, Esq. (CA Bar No. 143271)
Eve A. Marsella, Esq. (CA Bar No. 165797)
**CLARKSON, GORE & MARSELLA, APLC**
3424 Carson Street, Suite 350
Torrance, California  90503
Telephone: 310/542-0111
Facsimile:  310/214-7254
Email: sclarkson@lawcgm.com

Counsel for Debtor and Debtor-in-Possession
MTI Technology Corporation

FILED & ENTERED

SEP 01 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY reid        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:07-13347-ES |
| MTI TECHNOLOGY CORPORATION, a Delaware corporation, | Chapter 11 Proceeding |
| | **ORDER CONFIRMING JOINT FOURTH AMENDED CHAPTER 11 PLAN** |
| Debtor and Debtor-in-Possession. | **Plan Confirmation Hearing** |
| | Date:      August 26, 2010 |
| | Time:      10:30 a.m. |
| | Place:     Courtroom 5A |
| | 411 West Fourth Street |
| | Santa Ana, CA |

1    The matter of the confirmation of the Joint Fourth Amended Chapter 11 Plan ("Fourth

2  Amended Plan") filed jointly by Debtor MTI Technology Corporation ("Debtor") and by the

3  Official Committee of Unsecured Creditors ("Committee") came on for hearing on August 26,

4  2010, at about 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge,

5  in the above-entitled Court. [1]  Robert E. Opera, Esq. of Winthrop Couchot Professional

6  Corporation appeared on behalf of the Committee.  Eve A. Marsella, Esq. of Clarkson, Gore &

7  Marsella, APLC appeared on behalf of the Debtor.  Other appearances, if any, were as reflected on

8  the record of the proceedings.

9    This Order is based, in part, upon the following pleadings before this Court:

10    A.    Debtor's and Committee's Joint Third Amended Chapter 11 Plan;

11    B.    Debtor's and Committee's Joint Third Amended Disclosure Statement

12  Describing Debtor's and Committee's Third Amended Chapter 11 Plan;

13    C.    Summary of Debtor's and Committee Joint Third Amended Chapter 11

14  Plan;

15    D.    Order Approving Debtor's and Committee's Joint Third Amended

16  Disclosure Statement Describing Debtor's and Committee's Joint Third Amended

17  Chapter 11 Plan;

18    E.    Proof of Service of Nova George Regarding Service of "Plan Package"

19  Documents;

20    F.    Notice of:  (1) Approval of Debtor's and Committee's Joint Third

21  Amended Disclosure Statement; (2) Plan Confirmation Hearing; (3) Dates and Deadlines

22  Relating to Plan Confirmation; and (4) Manner of Service;

23    G.    Motion to Make Non-Material Modifications to Debtor's and

24  Committee's Joint Third Amended Chapter 11 Plan ("Plan Modification Motion");

25    H.    Fourth Amended Plan;

26

27

28  [1] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the
Fourth Amended Plan.

1        I.      Declaration of Brian K. Osborne Re Analysis of Ballots for Accepting or

2 Rejecting Debtor's and Committee's Joint Third Amended Chapter 11 Plan ("Osborne

3 Declaration");

4        J.      Declaration of Scott Poteracki in Support of Confirmation of Debtor's and

5 Committee's Joint Fourth Amended Chapter 11 Plan ("Poteracki Declaration");

6        K.      Committee's and Debtor's Brief in Support of Confirmation of Joint

7 Fourth Amended Chapter 11 Plan;

8        L.      Objection of U.S. Securities and Exchange Commission to Confirmation

9 of Debtor's and Committee's Third Amended Chapter 11 Plan;

10       M.     Withdrawal of Objection of U.S. Securities and Exchange Commission to

11 Confirmation of Debtor's and Committee's Joint Third Amended Chapter 11 Plan

12 ("Objection Withdrawal"); and

13       N.     Order Approving Motion to Make Non-Material Modifications to Joint

14 Third Amended Chapter 11 Plan ("Plan Modification Order").

15 Based upon the foregoing pleadings, the other pleadings and documents on file in the

16 Case, this Court's Findings of Fact and Conclusions of Law entered in support hereof, this

17 Court's issuance of the Plan Modification Order, the Objection Withdrawal filed by the United

18 States Securities and Exchange Commission, and, as a consequence thereof, the lack of any

19 pending objections to the confirmation of the Fourth Amended Plan, the arguments presented at

20 the Confirmation Hearing, and for other good and sufficient cause,

21 **IT IS HEREBY ORDERED THAT:**

22       1.     The Fourth Amended Plan, a true and complete copy of which has been

23 filed as Docket #1265 and is incorporated herein by this reference, is hereby confirmed,

24 and all of the provisions of the Fourth Amended Plan are hereby approved.

25       2.     In accordance with the provisions of Section 2.1.56 of the Fourth

26 Amended Plan, the Effective Date of the Fourth Amended Plan shall be the eleventh day

27 following the waiver or satisfaction of the conditions set forth in Section 6.3 of the

28 Fourth Amended Plan.

Exhibit A, page 181
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

3.      The Administrative Claims Bar Date, set forth by Section 3.1.2 of the Fourth Amended Plan, is hereby approved, and any holder of an Administrative Claim that is required to file a request for payment of its Administrative Claim by the Administrative Claims Bar Date and that does not file by the Administrative Claims Bar Date such request for payment of its Administrative Claim shall be forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor, the Estate or any of the property or assets of the Debtor or the Reorganized Debtor.

4.      In accordance with the provisions of Section 5.4 of the Fourth Amended Plan, Canopy shall be paid, without alteration or modification, any and all amounts to which Canopy is entitled pursuant to paragraphs 2 and 3 of the Canopy Agreement.

5.      In accordance with the provisions of Section 5.6 of the Fourth Amended Plan, on the Effective Date of the Fourth Amended Plan, all Interests shall be cancelled and Interest Holders shall receive no Post-Effective Date Stock or any other Interest of any nature whatsoever in the Reorganized Debtor, and Interest Holders shall not receive any Distributions on account of their Interests, except only as provided expressly to the contrary in Section 5.6.1.1 of the Fourth Amended Plan.

6.      In accordance with the provisions of Section 6.6 of the Fourth Amended Plan, except as otherwise specifically provided in the Fourth Amended Plan, on the Effective Date, all property and rights of the Estate shall revest in, or be transferred to, the Reorganized Debtor, free and clear of all Claims, Liens and rights of Creditors and Interests of Interest Holders.  As of the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims without the supervision of or any authorization from, this Court or the United States Trustee, and free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions specifically provided for in the Fourth Amended Plan.

7.      The appointment of the Plan Agent pursuant to the Fourth Amended Plan is hereby approved, and the Plan Agent shall have the rights, powers and duties provided for by the Fourth Amended Plan and the Plan Agent Disclosure filed in the Case.

**Exhibit A, page 182**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

8.      In accordance with the provisions of Section 6.8.3 of the Fourth Amended Plan, the Plan Agent shall be, and hereby is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), 1123(a)(7) and 1123(b)(3)(B) of the Bankruptcy Code.

9.      The limitation of liability provisions contained in Sections 6.8.5, 7.2.5, 12.1 and 12.3 of the Fourth Amended Plan are hereby approved as being reasonable and consistent with the requirements of applicable law.

10.      In accordance with the provisions of Section 6.9 of the Fourth Amended Plan, as of the Effective Date, all duties of the Committee in the Case shall be terminated, and the Committee shall be replaced by the Post-Effective Date Committee. The Post-Effective Date Committee shall have the rights, responsibilities and functions set forth in the Fourth Amended Plan.

11.      In accordance with the provisions of Section 6.10 of the Fourth Amended Plan, the Debtor, as the Reorganized Debtor, shall continue to exist after the Effective Date, and the Reorganized Debtor shall have all of the powers and rights of a corporation under the laws of the State of Delaware, and, except as set forth in the Fourth Amended Plan expressly to the contrary, shall continue to have all corporate powers and rights accorded to it under its Articles of Incorporation, Bylaws and other corporate governance agreements.

12.      The Plan Agent is hereby authorized to pursue, if appropriate, for the benefit of holders of Allowed General Unsecured Claims a Merger Transaction in accordance with the terms and conditions of Section 6.18 of the Fourth Amended Plan.

13.      In accordance with the provisions of Section 8.5 of the Fourth Amended Plan, any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor, and shall not be entitled to any Distribution under the Fourth Amended Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and served on the Plan Agent within 30 days after the later of (a) the date of entry of the order of the Bankruptcy Court adjudging the

Exhibit A, page 183
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

1    Creditor's liability to the Debtor or to the Reorganized Debtor on account of such

2    Avoidance Action, or (b) the Effective Date.

3    14.    In accordance with the provisions of Section 10.2 of the Fourth Amended

4    Plan, the Debtor is hereby authorized to reject, on the Effective Date of the Fourth

5    Amended Plan, pursuant to the provisions of section 365 of the Bankruptcy Code, the

6    Debtor's interests in any and all executory contracts and unexpired leases of the Debtor.

7    15.    In accordance with the provisions of Section 10.4 of the Fourth Amended

8    Plan, any Rejection Claim shall be forever barred, shall not be enforceable against the

9    Debtor or the Reorganized Debtor, and shall not be entitled to any Distribution under the

10   Fourth Amended Plan, unless a Proof of Claim for such Rejection Claim is filed and

11   served on the Plan Agent within 30 days after the later of (a) the date of entry of the

12   order of the Bankruptcy Court approving the rejection of the executory contract or

13   unexpired lease, or (b) the Effective Date.

14   16.    In accordance with the provisions of Section 11.1 of the Fourth Amended

15   Plan, effective as of the Effective Date, confirmation of the Fourth Amended Plan shall

16   have all of the effects provided by section 1141 of the Bankruptcy Code which are not

17   inconsistent with the terms of the Fourth Amended Plan.  Except as otherwise specifically

18   provided in the Fourth Amended Plan or in this Order, pursuant to section 1141(d) of the

19   Bankruptcy Code, the Distributions and rights that are provided in the Fourth Amended

20   Plan shall be in complete satisfaction, settlement, release and discharge, effective as of the

21   Effective Date, of all known or unknown Claims and Administrative Claims against, rights

22   against, liabilities of, obligations of, and any Liens encumbering the Debtor's assets and

23   property, including, but not limited to, Claims of the kind specified in sections 502(g),

24   502(h) and 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim

25   based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code,

26   (b) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder for

27   such Claim accepted the Fourth Amended Plan.

28

-6-

17.     In accordance with the provisions of Section 11.2 of the Fourth Amended Plan, except as otherwise expressly provided in the Fourth Amended Plan, on and after the Effective Date, all Creditors who have held, hold, or may hold a Claim, discharged pursuant to the terms of the Fourth Amended Plan (including, but not limited to, states and other governmental units, and any state official, employee or other entity acting in an individual or official capacity on behalf of any state or other governmental unit) shall be permanently enjoined from the following:  (a) taking any of the following actions on account of any such discharged Claim:  (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor, their successors, or their property; (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, their successors, or their property; (iii) creating, perfecting, or enforcing any Lien against the Debtor, the Reorganized Debtor, their successors, or their property; (iv) asserting any set off, right of subrogation, or recoupment of any kind against any obligation due to the Debtor, the Reorganized Debtor, their successors, or their property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Fourth Amended Plan; and (b) taking any actions on account of any claims or rights of action that are revested in, or transferred to, the Reorganized Debtor as of the Effective Date of the Fourth Amended Plan, including, without limitation, commencing or continuing in any manner any Avoidance Action.

18.     In accordance with the provisions of Section 11.3 of the Fourth Amended Plan, except as otherwise provided in the Fourth Amended Plan or in this Order, the rights afforded under the Fourth Amended Plan and the treatment of all Claims under the Fourth Amended Plan shall be in exchange for and complete satisfaction, settlement, release and discharge of all Claims (including Administrative Claims and any interest accrued on any Claim from and after the Petition Date) against the Debtor and the Reorganized Debtor and any of their respective assets and property.  Except as otherwise provided in the Fourth Amended Plan or in this Order, upon the Effective Date, each Creditor and party-in-interest

Exhibit A, page 185
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

in the Case shall be deemed to have irrevocably and unconditionally settled and released, fully and forever, any Claims against the Debtor and the Reorganized Debtor, and their respective assets and properties.  Except as otherwise provided in the Fourth Amended Plan or in this Order, all Creditors shall be precluded from asserting all Claims against the Debtor and the Reorganized Debtor, and their respective assets and properties.

19.    Until the Case is closed, this Court shall retain jurisdiction over the Case in order to ensure that the purposes and intent of the Fourth Amended Plan are carried out. Without limiting the generality of the foregoing, this Court shall retain jurisdiction over the Case for the purposes set forth in Section 13.10 of the Fourth Amended Plan.

20.    In accordance with the provisions of Section 13.17 of the Fourth Amended Plan, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Debtor and the Reorganized Debtor are authorized and empowered to execute such documents and to take such actions as may be necessary or appropriate to effectuate the terms and conditions of the Fourth Amended Plan.

21.    This Order shall be deemed to constitute all of the approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental unit, and by the Articles of Incorporation, Bylaws, and other corporate governance agreements of the Debtor, with respect to the implementation or consummation of the Fourth Amended Plan and any documents, instruments or agreements contemplated by the Fourth Amended Plan.

22.    The transactions contemplated by the Fourth Amended Plan are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, and the terms and conditions of the Fourth Amended Plan are fair and reasonable.

23.    The provisions of this Order, and, upon the Effective Date of the Fourth Amended Plan, all provisions of the Fourth Amended Plan, shall be binding in all respects upon the Debtor and each Creditor and Interest Holder, whether or not such Creditor or Interest Holder has accepted the Fourth Amended Plan.

Exhibit A, page 186
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

24.     In accordance with the provisions of Section 12.1 of the Fourth Amended Plan, as specified in section 1125(e) of the Bankruptcy Code, neither the Debtor, the Reorganized Debtor, nor any of their respective members, officers, directors, employees, agents, representatives, advisors or professionals shall have or incur any liability to any Creditor or party-in-interest, on account of their solicitation of acceptances or rejections of the Fourth Amended Plan or their participation in the offer, issuance, sale or purchase of a security, offered or sold under the Fourth Amended Plan, for violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Fourth Amended Plan or the offer, issuance, sale, or purchase of securities.

25.     **On or before February 3, 2011, the Plan Agent shall file, on behalf of the Reorganized Debtor, a status report ("Status Report") explaining the progress that has been made toward consummation of the Fourth Amended Plan.  The Status Report shall be served on the United States Trustee, the Reorganized Debtor, and any party who requests after the Effective Date special notice in the Case.  A Post-Confirmation Status Conference will be held on February 17, 2011 at 10:30 a.m. Further Status Reports shall be filed as ordered by this Court.**  Each Status Report shall include the following information:

a.     A schedule listing for each Claim in each Class of Claims:  the total amount required to be paid under the Fourth Amended Plan; the amount required to be paid as of the date of the Status Report; the amount actually paid as of the date of the Status Report; and the deficiency, if any, in required payments;

b.     A schedule of any and all post-confirmation tax liabilities that have accrued or come due, and a detailed explanation of payments thereon;

c.     The Plan Agent's projection as to the Reorganized Debtor's continuing ability to comply with the terms of the Fourth Amended Plan;

d.     An estimate of the date for consummation of the Fourth Amended Plan and the filing of an application for Final Decree; and

Exhibit A, page 187
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

1          e.      Any other pertinent information necessary to explain the progress

2    toward consummation of the Fourth Amended Plan.

3         26.     The failure to reference or discuss any particular provision of the Fourth

4    Amended Plan in this Order shall have no effect on the validity, binding effect and

5    enforceability of such provision and such provision shall have the same validity, binding

6    effect and enforceability as every other provision of the Fourth Amended Plan.

7         27.     The provisions of Rule 3020(e) and, to the extent otherwise applicable,

8    Rules 6004(h), 6006(d) and 7062, of the Federal Rules of Bankruptcy Procedure shall not

9    apply to this Order, and this Order shall take effect immediately and shall not be stayed.

**PRESENTED BY:**

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By:  /s/ Robert E. Opera
          Robert E. Opera
Counsel for the Official Committee of
Unsecured Creditors

**CLARKSON, GORE &**
**MARSELLA, APLC**

By:  /s/ Scott C. Clarkson
          Scott C. Clarkson
Attorneys for Debtor and Debtor-in-
Possession MTI Technology Corporation

                      ####

DATED: September 1, 2010

                    United States Bankruptcy Judge

Exhibit A, page 188
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

1

2

# PROOF OF SERVICE OF DOCUMENT

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

4

5

A true and correct copy of the foregoing document described as:  **ORDER CONFIRMING JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

6

7

8

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

9

☐ Service information continued on attached page

10

11

12

13

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

14

15

☐ Service information continued on attached page

16

17

18

19

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 25, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

20

21

- Scott C Clarkson      sclarkson@lawcgm.com
- Eve A Marsella      emarsella@lawcgm.com
- United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov

22

23

24

☐ Service information continued on attached page

25

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

26

| August 25, 2010 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

27

28

-11-

1
2
# NOTICE OF ENTERED ORDER AND SERVICE LIST

3

Notice is given by the court that a judgment or order entitled (*specify*): **ORDER CONFIRMING JOINT
FOURTH AMENDED CHAPTER 11 PLAN** was entered on the date indicated as Entered on the first page
of this judgment or order and will be served in the manner indicated below:

4

5

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following
person(s) by the court via NEF and hyperlink to the judgment or order. As of August 25, 2010, the following
person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding
to receive NEF transmission at the email address(es) indicated below.

6

7

8

9                                      ☒     Service information continued on attached page

10

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or
order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or
entity(ies) at the address(es) indicated below:

11

12

13

14

15                                      ☐     Service information continued on attached page

16

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment
or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy
bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of
service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile
transmission number(s), and/or email address(es) indicated below:

17

18

19

20

21                                      ☐     Service information continued on attached page

22

23

24

25

26

27

28

**Exhibit A, page 190**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

**ADDITIONAL SERVICE INFORMATION** (if needed):

NEF SERVICE BY COURT

- Robert C Briseno    rbriseno@swlaw.com
- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com,
  salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna    lavignas@sec.gov
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@gmail.com
- Robert E Opera    pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Daniel C Silva    dsilva@gordonrees.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sharon.weiss@hro.com
- Charmaine M Wilson    sg@primeshares.com
- David L Wilson    dlwilson@winston.com

Exhibit A, page 191
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

# EXHIBIT 4

# RETAINED ASSETS

## (Section 1.5)

1)      The IP address block 144.86.0.0 – 144.86.255.255, CIDR 144.86.0.0/16 provided to MTI

Technologies (MTITEC) on November 20, 1990.  This information is published in the

publicly accessible American Registry of Internet Numbers commonly known as ARIN.

**EXHIBIT 5**

**ASSUMED LIABILITIES**

**(Sections 2.1 and 2.2)**

1)      State of Delaware franchise taxes and related fees, charges, assessments, expenses and costs

2)      State of California taxes for foreign corporations and related fees, charges, assessments, expenses and costs

3)      United States federal income taxes and related fees, charges, assessments, expenses and costs

4)      Foreign, state, county, municipal, city and other Governmental Unit taxes and related fees, charges, assessments, expenses and costs

5)      Foreign, state, county, municipal, city and other Governmental Unit fees, charges, assessments, expenses and costs imposed on account of the Debtor's transacting business therein

For avoidance of doubt, Buyer is not assuming and shall have no liability for any tax, fee, charge, expense or assessment within the scope of items 1 through 5 above which is or could have been the subject of a timely filed proof of claim or timely filed request for allowance of administrative expense.  Notwithstanding anything to the contrary contained in the foregoing, Seller shall have no liability for any expense or obligation of the Debtor which arises from and after the Closing Date, and Seller shall assume and pay all liabilities and obligations of the Debtor arising after the Closing Date on account of the Retained Assets.

**EXHIBIT 6**

**DISPOSITION OF RETAINED ASSETS**

**(Section 6.1.7)**

NONE