1  terminate any efforts to effectuate a Merger Transaction and instead to wind up the affairs of

2  the Reorganized Debtor; provided, however, that, in accordance with the provisions of

3  Section 6.18.3 hereof, in the event that no Merger Transaction is consummated by the

4  Merger Consummation Date, all efforts to effectuate a Merger Transaction shall terminate

5  and the Plan Agent shall take all acts appropriate to wind up the affairs of the Reorganized

6  Debtor.

7      **6.11    Causes of Action.**  Subject to Canopy's rights under the Canopy Agreement, the

8  right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf

9  of the Debtor and the Estate any and all Causes of Action, including, but not limited to, any

10  Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estate to the

11  Plan Agent.  From and after the Effective Date, and subject to Canopy's rights under the Canopy

12  Agreement, only the Plan Agent shall have the right to enforce, file, litigate, prosecute, settle, collect

13  and abandon any Cause of Action.

14      Notwithstanding the rights of the Plan Agent with respect to Causes of Action, nothing in

15  this Plan shall require the Plan Agent to file or to prosecute any Cause of Action, both of which

16  may be determined by the Plan Agent, in the exercise of its sole and absolute discretion.

17      **THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION**

18  **REGARDING THE EXISTENCE OF CAUSES OF ACTION.  THE INVESTIGATION IN**

19  **THIS REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE**

20  **HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE**

21  **OF ANY PARTICULAR CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR**

22  **SET FORTH IN THIS PLAN, A CAUSE OF ACTION MAY BE FILED AGAINST ANY**

23  **CREDITOR OR OTHER PARTY AS THE PLAN AGENT MAY DETERMINE, IN THE**

24  **EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

25      **6.12    Post-Effective Date Professional Fees.**  The Plan Agent may employ, without any

26  need to give notice to Creditors or other parties-in-interest or obtain any approval of the Bankruptcy

27  Court, any Professional to aid the Plan Agent in performing the Plan Agent's duties under this Plan,

28  including, without limitation, in connection with a possible Merger Transaction, as the Plan Agent

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

38

1  deems appropriate in the exercise of its sole and absolute discretion.  Any Professional employed by

2  the Plan Agent after the Effective Date shall be entitled to obtain from the Plan Fund payment of the

3  Professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without

4  any need to give notice to Creditors or other parties-in-interest or to obtain any approval of the

5  Bankruptcy Court.  Notwithstanding the foregoing, if the Plan Agent should fail to pay any post-

6  Effective Date fees and costs of a Professional entitled to such payment, within thirty (30) days after

7  the Professional's rendering of its billing statement, the Professional shall be entitled to seek, by

8  application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court

9  requiring the Plan Agent to forthwith pay to the Professional its fees and costs.

10     **6.13    Approval for Disposition of Plan Assets.**  Except as provided expressly to the

11  contrary in this Plan, and subject to Canopy's rights under the Canopy Agreement, from and after the

12  Effective Date, the Plan Agent shall be entitled to sell, transfer, assign, encumber or otherwise

13  dispose of any interest in any of the Plan Assets, without any need to give notice to Creditors or

14  parties-in-interest or to obtain any approval of the Bankruptcy Court.  Notwithstanding the

15  foregoing, the Plan Agent shall be entitled to seek, from the Bankruptcy Court, an order authorizing

16  the sale of any Plan Asset free and clear of Liens pursuant to the provisions of section 363(f) of the

17  Bankruptcy Code.

18     **6.14    Compromise of Controversies.**  From and after the Effective Date, subject to

19  Canopy's rights under the Canopy Agreement, the Plan Agent shall be entitled to compromise any

20  objections to Disputed Claims, or any controversies relating to Causes of Action or other litigation

21  pending after the Confirmation Date, without any need to give notice to Creditors or parties-in-

22  interest or to obtain any approval of the Bankruptcy Court.

23     **6.15    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**  Nothing

24  contained in this Plan shall be deemed to impair in any manner the right of the Plan Agent or any

25  party-in-interest to seek at any time after the Effective Date orders of the Bankruptcy Court

26  approving actions to be taken consistent with this Plan as may be necessary or desirable to effectuate

27  the provisions of this Plan.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_4th_Amended_Plan.DOC   Exhibit A, page 123

**6.16    Plan Agent Certification**.  On or before the date upon which the Plan Agent determines, in the exercise of its sole and absolute discretion, that any Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Plan Assets have been liquidated or otherwise disposed of, that a Merger Transaction has been effectuated or cannot or should not be effectuated by the Merger Consummation Date, and that all Distributions required to be made under this Plan have been made or that final Distributions are being made or will be made within ten (10) days or as soon thereafter as is practicable by the Plan Agent, the Plan Agent shall file with the Bankruptcy Court and serve upon the United States Trustee, the Post-Effective Date Committee, the Reorganized Debtor, Canopy and any Creditor that files after the Effective Date a request for notice of any proceedings in the Case (collectively, "Post-Effective Date Notice Parties") a certification attesting to such determination ("Plan Agent Certification").

**6.17    Final Decree.**  Unless earlier filed by the Plan Agent, by the thirtieth (30th) day after the filing of the Plan Agent's Certification, the Plan Agent shall file, in accordance with Rule 3022 of the Federal Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Case ("Final Decree").

**6.18    Merger Transaction.**

**6.18.1    Background.**  Although, as of the Effective Date, the Reorganized Debtor will have no significant operations, the Reorganized Debtor may possess substantial net operating losses for tax purposes, and, as a publicly-traded company, will possess a shareholder base, which may make it an attractive acquisition or merger candidate, including, without limitation, to an operating, privately-held corporation seeking to become a publicly-held company (e.g., through a "reverse merger" transaction).  This Plan will permit any such acquisition, merger transaction, or other business combination, including, without limitation, a stock exchange, that would benefit the holders of Allowed General Unsecured Claims, as holders of Post-Effective Date Stock in the Reorganized Debtor, by allowing them potentially to have an interest in a viable, operating business enterprise (any such transaction is referred to herein as a "Merger Transaction").  The Plan Agent, under the supervision of the Post-Effective Date Committee, will investigate whether a Merger

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

40

Transaction is viable, and should be pursued for the benefit of holders of Allowed General
Unsecured Claims.

6.18.2   **Merger Consummation Date.**  The Reorganized Debtor shall complete a
Merger Transaction by the second-year anniversary of the Effective Date of the Plan
("Merger Consummation Date"); provided, however, that the Plan Agent, after consultation
with the Post-Effective Date Committee, shall be authorized to request from the Bankruptcy
Court an extension of the Merger Consummation Date, for a period not to exceed one
additional year.  The Plan Agent shall give to the Post-Effective Date Notice Parties notice of
any such request and an opportunity to obtain a hearing on any such request, in accordance
with the requirements of the Bankruptcy Rules.

6.18.3   **Cancellation of Post-Effective Date Stock and Wind-Up of Reorganized
Debtor.**  The Plan Agent, after consultation with the Post-Effective Date Committee, shall be
authorized to terminate efforts to effectuate a Merger Transaction or to cancel the Post-
Effective Date Stock, prior to the Merger Consummation Date, in the event that the Plan
Agent determines, in the exercise of its sole and absolute discretion, that a Merger
Transaction is not viable, a Merger Transaction should not be effectuated, or the Post-
Effective Date Stock is burdensome or is of inconsequential value and benefit to the holders
of Allowed General Unsecured Claims.  The Plan Agent may terminate any efforts to
effectuate a Merger Transaction, or may cancel the Post-Effective Date Stock, only after
obtaining approval of the Bankruptcy Court for so doing ("Stock Termination Approval")
after giving to the Post-Effective Date Notice Parties notice and an opportunity to obtain a
hearing thereon, in accordance with the requirements of the Bankruptcy Rules.  In the event
that a Stock Termination Approval is obtained by the Plan Agent, or in the event that no
Merger Transaction is consummated by the Merger Consummation Date, the Plan Agent
shall take all acts appropriate to wind up the affairs of the Reorganized Debtor.

6.18.4   **Terms of any Merger Transaction.**  The terms of any Merger Transaction
and the terms of any Distribution of Post-Effective Date Stock, including, without limitation,
any "lock-up" agreements or other restrictions on the disposition of the Post-Effective Date

41

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

Stock, shall be determined by the Plan Agent, subject to the supervision of the Post-Effective Date Committee. The Plan Agent shall obtain from the Bankruptcy Court approval of any such Merger Transaction for the Reorganized Debtor, after giving to the Post-Effective Date Notice Parties, the United States Securities and Exchange Commission ("SEC") and other parties-in-interest notice and an opportunity to obtain a hearing thereon, in accordance with the requirements of the Bankruptcy Rules. The Plan Agent shall have the burden of demonstrating to the Bankruptcy Court that any such Merger Transaction is in the best interests of holders of Allowed General Unsecured Claims and that any such Merger Transaction is in compliance with the requirements of Section 6.18.7 hereof. The SEC shall have the right to oppose any such Merger Transaction on any appropriate grounds.

6.18.5    **Valuation of Post-Effective Date Stock.** Unless and until a Merger Transaction is effectuated, the Post-Effective Date Stock shall be deemed, for all purposes, to have no value of any nature whatsoever. In connection with effectuating any Merger Transaction, the Plan Agent shall request that the Bankruptcy Court enter an order determining the value of the Post-Effective Date Stock that will be distributed to holders of Allowed General Unsecured Claims pursuant to this Plan, after giving to the Post-Effective Date Notice Parties and other parties-in-interest notice and an opportunity to obtain a hearing thereon, in accordance with the requirements of the Bankruptcy Rules.

6.18.6    **Election Not to Receive Post-Effective Date Stock.** Prior to the consummation of any Merger Transaction, a holder of an Allowed General Unsecured Claim may provide to the Plan Proponents or to the Plan Agent, as applicable, written notice of an election not to receive a Distribution of Post-Effective Date Stock. Such an election shall be effective, binding and irrevocable upon receipt by the Plan Proponents or the Plan Agent, as applicable, of written notice of such an election. In the event that a holder of an Allowed General Unsecured Claim makes such an election, any Distributions of Plan Fund Proceeds to which such Creditor is entitled under this Plan on account of its Allowed General Unsecured Claim shall not be reduced in any manner based upon any value of the Post-Effective Date Stock that such Creditor otherwise would receive under this Plan.

42

CLARKSON, GORE & MARELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

6.18.7    **Restrictions on Effectuation of Merger Transaction.** No Merger Transaction shall be effectuated unless such Merger Transaction is in compliance with the requirements of this Section 6.18.7.

6.18.7.1.    The Reorganized Debtor shall not issue any securities pursuant to this Plan unless:  any such issuance of securities complies with the requirements of section 1145 of the Bankruptcy Code; or any such issuance of securities is either exempt from the registration requirements of the United States Securities Act of 1933 ("Securities Act"), or is registered in accordance with the applicable requirements of the Securities Act.

6.18.7.2.    The Reorganized Debtor shall not consummate any Merger Transaction with a private company unless:  the Reorganized Debtor is current in its reporting obligations under Sections 13(a) or 15(d) of the United States Securities Exchange Act of 1934 ("Exchange Act") at the time of the consummation of any such Merger Transaction; and any such Merger Transaction is consummated by the Reorganized Debtor in accordance with the requirements of the Securities Act, the Exchange Act, and all applicable rules and regulations promulgated by the SEC. The SEC shall retain all rights and remedies that it may have with respect to any such Merger Transaction.

# VII.

# DISTRIBUTIONS

7.1    **Designation and Role of the Disbursing Agent.**

7.1.1    **Plan Agent to Serve as Disbursing Agent.** The Plan Agent shall serve as the Disbursing Agent under this Plan.  The terms of the employment of the Plan Agent, including the compensation of the Plan Agent as Disbursing Agent under this Plan, shall be disclosed in the Plan Agent Disclosure and shall be approved by the Bankruptcy Court pursuant to the Confirmation of this Plan.

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

43

MTI Plan v3.0

1    **7.1.2    No Bond.** The Plan Agent shall not be required to be bonded in connection

2    with the performance of its duties as Plan Agent under this Plan, including its duties as

3    Disbursing Agent under this Plan.

4    **7.1.3    Payment of Fees and Expenses of Disbursing Agent.** The fees, expenses

5    and any bond premiums incurred by the Plan Agent, in connection with the performance of

6    its duties as Disbursing Agent under this Plan, shall be paid from the Plan Fund.

7    **7.1.4    Employment of Agents.** The Plan Agent, as Disbursing Agent under this

8    Plan, shall be authorized to implement such procedures as it deems necessary to make

9    Distributions pursuant to this Plan so as to efficiently and economically assure prompt and

10    accurate Distributions, including, without limitation, the employment of one or more agents

11    on such terms and conditions as it deems appropriate in the exercise of its sole and absolute

12    discretion.

13    **7.2    Distribution of Property Under this Plan.**

14    **7.2.1    Cash Distributions.** Except for any Post-Effective Date Stock that may be

15    issued to holders of Allowed General Unsecured Claims pursuant to a Merger Transaction,

16    all Distributions under this Plan shall be in Cash. Cash Distributions made pursuant to this

17    Plan shall be in United States funds, by checks drawn on a domestic bank, or, if the Plan

18    Agent so elects, in the exercise of its sole and absolute discretion, by wire transfers from a

19    domestic bank.

20    **7.2.2    Setoffs and Recoupment.** Pursuant to section 553 of the Bankruptcy Code

21    or applicable non-bankruptcy law, the Plan Agent, as Disbursing Agent under this Plan, may

22    set off, recoup or withhold against any Allowed Claim and Distribution to be made pursuant

23    to this Plan on account of such Allowed Claim (before any Distribution is made on account

24    of such Allowed Claim), any pre-Petition Date or post-Petition Date account stated, claim,

25    right, or cause of action which the Debtor or the Estate may possess against the holder of

26    such Allowed Claim. Neither the failure to effect such a setoff or recoupment nor the

27    allowance of any Claim shall constitute a waiver or release by the Debtor, the Estate or the

28    Plan Agent of any such account, claim, right, or cause of action that the Debtor or the Estate

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

44

MTI Plan v3.0

Exhibit A, page 128
MAINDOCS-#149105-v3-MTI_4th_Amended_CH_11_Plan.DOC

may possess against the holder of such Allowed Claim. To the extent that the Plan Agent in allowing a Claim fails to effect a setoff with a Creditor and seeks to collect a claim from such Creditor after a Distribution to such Creditor pursuant to this Plan, the Plan Agent shall be entitled to full recovery on its claim against such Creditor, notwithstanding any payment of the Creditor's Allowed Claim pursuant to this Plan.

**7.2.3**  **No De Minimis Distributions.**  Notwithstanding anything to the contrary in this Plan, no Distribution of less than $10.00 ("De Minimis Distribution") shall be made to any holder of an Allowed Claim on account thereof. No consideration shall be provided in lieu of any De Minimis Distributions that are not made under this Plan.

**7.2.4**  **Timeliness of Distributions.**  Any Distribution required to be made on the Effective Date shall be deemed timely if made as soon as practicable after such date but, in any event, within fourteen (14) days after such date. Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim shall be deemed timely if made as soon as practicable thereafter but, in any event, within fourteen (14) days thereafter.

**7.2.5**  **Limitation on Liability.**  To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor, the Board of the Reorganized Debtor, the Committee, the Post-Effective Date Committee, the Plan Agent, nor any of their respective Representatives shall be liable for (a) any acts or omissions (except for gross negligence or willful misconduct) in connection with implementing the Distribution provisions of this Plan and the making or withholding of Distributions pursuant to this Plan, or (b) any change in the value of Distributions made pursuant to this Plan resulting from any delays in making such Distributions in accordance with the terms of this Plan (including, but not limited to, any delays caused by the resolution of Disputed Claims). The foregoing limitation of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police and regulatory powers respecting persons otherwise protected hereunder.

45

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**7.2.6**    **Delivery of Distributions.**

7.2.6.1    All Distributions under this Plan on account of an Allowed Claim shall be tendered only to the holder of such Allowed Claim, as set forth in Section 7.2.6.2.

7.2.6.2    Except as provided in Section 7.2.8 with respect to Unclaimed Property, Distributions to holders of Allowed Claims and Allowed Administrative Claims shall be distributed by mail as follows:  (a) with respect to each holder of an Allowed Claim that has filed a Proof of Claim, at the address for such Creditor reflected in such Proof of Claim; (b) with respect to each holder of an Allowed Claim that has not filed a Proof of Claim, at the address reflected in the Bankruptcy Schedules filed by the Debtor; provided, however, that, if the Plan Agent receives a written notice of a change of address for such Creditor, the address set forth in such notice shall be used; or (c) with respect to each holder of an Allowed Administrative Claim, at such address as the holder thereof may specify in writing.

**7.2.7**    **Undeliverable Distributions.**  If the Distribution to a holder of any Allowed Claim or Allowed Administrative Claim is returned as undeliverable (any such Distribution being hereinafter referred to as "Unclaimed Property"), no further Distribution shall be made to such Creditor unless and until the Plan Agent is notified in writing of such Creditor's then current address.  Subject to the provisions of Section 7.2.8 hereof, Unclaimed Property shall remain in the control of the Plan Agent and shall be set aside and held in a segregated account ("Unclaimed Property Reserve") to be maintained until such time as the subject Distribution becomes deliverable or is disposed of in accordance with the provisions of Section 7.2.8 hereof.  Nothing contained in this Plan shall require the Plan Agent or any other entity to attempt to locate such Creditor.  No interest shall be payable with respect to any Unclaimed Property.

**7.2.8**    **Disposition of Unclaimed Property.**  If a Creditor entitled to a Distribution of Unclaimed Property gives written notice to the Plan Agent of such Creditor's claim to the Distribution of such Unclaimed Property within three (3) months following the date upon

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0                                                    MAINDOCS-#149105-v3-MTI___Amended__Plan.DOC    **Exhibit A, page 130**

1  which such Distribution is required to be made to the Class in which the Creditor holds an

2  Allowed Claim ("Initial Distribution Date"), the Unclaimed Property distributable to such

3  Creditor shall be released from the Unclaimed Property Reserve and paid to such Creditor

4  within fourteen (14) days thereof.  Any holder of an Allowed Claim or Allowed

5  Administrative Claim that does not assert a claim in writing for Unclaimed Property held by

6  the Plan Agent within three (3) months following the Initial Distribution Date with respect to

7  such Unclaimed Property shall no longer have any claim to or interest in such Unclaimed

8  Property, and shall be forever barred from receiving a Distribution on account thereof.  In

9  such cases, any such Unclaimed Property shall be released to the Plan Agent for the purpose

10  of making further Distributions to Creditors, in accordance with the terms and conditions of

11  this Plan.

12      **7.2.9   Approval for Schedule of Proposed Distributions.**  In the discretion of the

13  Plan Agent, the Plan Agent shall be entitled to prepare a preliminary schedule of proposed

14  Distributions to Creditors ("Distribution Schedule"), and to apply, on an expedited basis, for

15  an order of the Bankruptcy Court approving the making of such Distributions pursuant to the

16  Distribution Schedule.  Notice of any such application shall be served on the Post-Effective

17  Date Notice Parties or as otherwise determined by the Bankruptcy Court.

18      **7.2.10   Compliance with Tax Requirements.**  To the extent applicable, the Plan

19  Agent, as the Disbursing Agent pursuant to this Plan, shall comply with all tax withholding

20  and reporting requirements imposed upon it by any governmental unit, and all Distributions

21  pursuant to this Plan shall be subject to such tax withholding and reporting requirements.

22      **7.2.11   Further Assurances Regarding Distributions.**  In accordance with the

23  provisions of Section 13.22 hereof, as a condition to obtaining Distributions under this Plan,

24  each Creditor shall execute and deliver to the Plan Agent, or join in the execution and

25  delivery of, any agreement or instrument appropriate for the consummation of this Plan.

26      **7.2.12   Creditor's Payment of Obligations or Turn Over of Property to the**

27  **Plan Agent.**  As a condition to obtaining Distributions under this Plan, any Creditor from

28  which property is recoverable pursuant to a Final Order of the Bankruptcy Court under

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

1    sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of

2    a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522,

3    544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall pay to the Plan Agent

4    the amount, or turn over to the Plan Agent any such property, for which such Creditor is

5    liable to the Debtor.

6    **VIII.**

7    **OBJECTIONS TO DISPUTED CLAIMS**

8    **8.1    Exclusive Right to Object to Claims.** From and after the Effective Date, the Plan

9    Agent shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims.

10   As the representative of Estate, the Plan Agent, under the supervision of the Post-Effective Date

11   Committee, shall succeed to all of the rights and powers of the Debtor and the Estate with respect to

12   all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor, the

13   Estate and the Committee, as applicable, as the party-in-interest in all litigation regarding Disputed

14   Claims pending as of the Effective Date.

15   **8.2    Claims Objection Deadline.** Unless another date is established by order of the

16   Bankruptcy Court, an objection to a Claim must be filed with the Bankruptcy Court and served on

17   the Creditor holding such Claim on or before the Claims Objection Deadline. The Plan Agent shall

18   have the right to request that the Bankruptcy Court extend the Claims Objection Deadline for cause

19   shown.

20   **8.3    Investigation Regarding Disputed Claims.** Notwithstanding the fact that the Plan

21   Agent shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed

22   Claims, nothing contained herein shall be deemed to obligate the Plan Agent to file any objection to

23   a Claim, which action shall be determined by the Plan Agent in the exercise of its sole and absolute

24   discretion.

25   **THE PLAN PROPONENTS HAVE NOT COMPLETED THEIR INVESTIGATION**

26   **REGARDING THE CLAIMS IN THE CASE AND THE FILING OF OBJECTIONS TO**

27   **DISPUTED CLAIMS. THIS INVESTIGATION IS ONGOING AND, SUBJECT TO THE**

28   **CLAIMS OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

48

1  AS A RESULT, CREDITORS AND OTHER PARTIES-IN-INTEREST ARE HEREBY

2  ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY

3  TIME, SUBJECT ONLY TO THE CLAIMS OBJECTION DEADLINE.  THE PLAN AGENT

4  SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN

5  SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S

6  BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY

7  RESPECT.

8      **8.4    Treatment of Disputed Claims.**

9          **8.4.1    No Distribution Pending Allowance.**  All Distributions under this Plan shall

10  be made only on account of Allowed Claims.  If any portion of a Claim is a Disputed Claim,

11  no Distribution provided for under this Plan shall be made on account of such Claim unless

12  and until such Claim becomes an Allowed Claim and is no longer a Disputed Claim.

13          **8.4.2    Distribution After Allowance.**  Within fourteen (14) days following the date

14  on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim,

15  the Plan Agent, as Disbursing Agent under this Plan, shall distribute to the Creditor holding

16  such Allowed Claim any Cash or other property that would have been distributable to such

17  Creditor as if, at the time of the making of any Distribution to the Class of which such

18  Creditor is a member, such Claim had been an Allowed Claim and not a Disputed Claim.  No

19  interest shall be paid on such Claim, except as provided in Section 8.4.3 hereof.

20          **8.4.3    Reserve for Disputed Claims.**  On or as soon as practicable after the

21  Effective Date, the Plan Agent, as Disbursing Agent under this Plan, shall establish, in a

22  segregated, interest-bearing account, a reserve for any Disputed Claim ("Disputed Claims

23  Reserve") in an amount equal to 100% of the Distribution to which the holder of the

24  Disputed Claim would be entitled under this Plan based upon the liquidated, face amount of

25  its non-duplicative Disputed Claim unless such Claim is estimated by Final Order of the

26  Bankruptcy Court; provided, however, that the Plan Agent, as Disbursing Agent under this

27  Plan, shall have the right to seek from the Bankruptcy Court an order reducing the amount of

28  such Reserve pending the resolution of the Disputed Claim.  If the Disputed Claim does not

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

49

MTI Plan v3.0

set forth a liquidated amount of such Claim, then the amount of the Reserve to be established on account of such Disputed Claim shall be the amount fixed mutually by the Creditor and by the Plan Agent or the amount estimated by the Bankruptcy Court for the purpose of this Section 8.4.3. If the Disputed Claim is estimated, the amount of the Reserve to be established on account of such Disputed Claim shall be the Distribution with respect to the estimated amount of such Disputed Claim as determined by Final Order of the Bankruptcy Court, and such estimated amount shall set forth the maximum amount of the Distribution on account of such Disputed Claim.

**8.4.4   No Distribution Until Allowance of Disputed Claim.**  No disbursement of funds from a Disputed Claims Reserve shall be made on account of a Disputed Claim until such Disputed Claim has been determined by a Final Order of the Bankruptcy Court.  Any amount of a Claim which has been disallowed pursuant to an order of the Bankruptcy Court shall be deemed to be extinguished and no Distribution of any amount shall be paid on account thereof.  The amount reserved for any Disputed Claim (plus any interest thereon) which has been disallowed by the Bankruptcy Court shall be released to the Plan Agent for the purpose of funding further Distributions to Creditors under this Plan.

**8.5      Bar Date for Filing Avoidance Action Payment Claims.**  Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor and shall not be entitled to any Distribution under this Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and served on the Plan Agent within thirty (30) days after the _later_ of (a) the date of entry of the order of the Bankruptcy Court adjudging the Creditor's liability to the Debtor or to the Reorganized Debtor on account of such Avoidance Action, or (b) the Effective Date.

**IX.**

**LITIGATION**

**9.1      Plan Agent's Authorization to Assert Causes of Action.**  As of the Effective Date, the Plan Agent shall be authorized to exercise and to perform the rights, powers and duties held by the Estate with respect to the Causes of Action.  From and after the Effective Date, subject to

50

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

Canopy's rights under the Canopy Agreement, the Plan Agent shall have the sole and exclusive

right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and

interests of the Estate with respect to the Causes of Action, without the consent or approval of any

third party, and without any further order of the Bankruptcy Court.

**9.2    Plan Agent's Evaluation of Causes of Action.** The Plan Agent, under the

supervision of the Post-Effective Date Committee, shall make the decision whether to prosecute or

to continue to prosecute any Causes of Action. This decision shall be based, in part, upon the Plan

Agent's evaluation of the merits of the Causes of Action as well as the costs required to prosecute

such Causes of Action taking into account the resources available to make Distributions to

Creditors. The Plan Agent, under the supervision of the Post-Effective Date Committee, subject to

Canopy's rights under the Canopy Agreement, shall be entitled to determine, in the exercise of its

business judgment, not to prosecute, or to abandon, any Cause of Action.

**9.3    Retention of Professionals.** The Plan Agent may retain Professionals to represent it

in prosecution of Causes of Action. The Plan Agent shall determine the terms of the retention of

Professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a

contingency fee basis to prosecute some or all of the Causes of Action, and may seek to finance any

costs relating to the prosecution of Causes of Action.

**9.4    Preservation of Causes of Action.** Unless a Cause of Action is expressly waived,

relinquished, released, compromised, or settled in this Plan or in any Final Order, the Plan

Proponents expressly reserve such Cause of Action for later adjudication by the Plan Agent

(including, without limitation, Causes of Action of which the Plan Proponents presently may be

unaware, or which may arise or exist by reason of facts or circumstances unknown to the Plan

Proponents at this time, or facts or circumstances which may change or be different from those

which the Plan Proponents now believe to exist) and, therefore, no preclusion doctrine, including,

without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim

preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Plan

Agent's prosecution of Causes of Action based on the Disclosure Statement, this Plan, or the

Confirmation Order. Without limiting the generality of the foregoing, any entity with respect to

MTI Plan v3.0

MAINDOCS-#149105-v3-MT...   **Exhibit A, page 135**

1   which the Debtor has incurred an obligation (whether on account of services, purchase or sale of

2   property, or otherwise), or who has received services from the Debtor or a transfer of money or

3   property of the Debtor, or who has transacted business with the Debtor, or leased equipment or

4   property from the Debtor, should assume that such obligation, transfer, or transaction may be

5   evaluated by the Plan Agent subsequent to the Effective Date and may be the subject of an

6   Avoidance Action or other action or proceeding filed after the Effective Date.

7        **9.5    Subordination of Claims.**  A Plan Proponent shall have the right to file an action to

8   subordinate Claims.  If a Plan Proponent has filed such an action prior to the entry of the Disclosure

9   Statement Order, any Claim subject to such an action shall be deemed to be in Class 5 for the

10  purpose of voting on this Plan unless the Bankruptcy Court enters a Final Order to the contrary.  If a

11  Plan Proponent has filed such an action after the entry of the Disclosure Statement Order, but prior

12  to the Effective Date, such action shall not affect the right of the Creditor to vote with respect to the

13  Class to which it otherwise would be entitled.  After the Effective Date, only the Plan Agent, under

14  the supervision of the Post-Effective Date Committee, shall have the right to file an action to

15  subordinate a Claim.

16                                              **X.**

17                  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

18       **10.1    Executory Contracts and Unexpired Leases Being Assumed.**  Effective as of, and

19  conditioned on, the occurrence of the Effective Date, the Debtor hereby assumes all of the executory

20  contracts and unexpired leases of the Debtor listed on Exhibit "2" hereto.  The Plan Proponents may

21  amend, through and including the Confirmation Hearing Date, Exhibit "2" to add thereto any

22  executory contract or unexpired lease, or to delete therefrom any executory contract or unexpired

23  lease.  However, if any amendments are made to Exhibit "2" less than thirty (30) days before the

24  Confirmation Hearing Date, the affected contract or lease parties shall have fifteen (15) days from

25  the date of service of notice of such amendments within which to serve on the Plan Proponents a

26  written objection to the same.  Upon receipt of any such objection, the Debtor shall promptly set a

27  hearing on the same, and the assumption or rejection of the affected contract or lease shall be

28  delayed until the Bankruptcy Court makes a determination on such issue (such determination may be

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

52

1    made after the Confirmation Date, without delaying the confirmation of this Plan).  To the extent

2    that an executory contract or unexpired lease has been assumed by the Debtor prior to the

3    Confirmation Date pursuant to an order of the Bankruptcy Court, such assumption shall not be

4    affected by this Plan.  The assumption of any contract or lease pursuant to the provisions of this

5    Section 10.1 shall be only to the extent that such assumed contract or lease constitutes an executory

6    contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.  Inclusion of

7    an agreement in Exhibit "2" does not constitute an admission by the Plan Proponents that (a) such

8    agreement is an executory contract or unexpired lease within the meaning of section 365 of the

9    Bankruptcy Code, (b) the Debtor must assume such agreement in order to continue to receive or

10   retain rights, benefits, or performance thereunder or that any Claim under such agreement must be

11   paid or any default thereunder must be cured, or (c) such agreement is a valid contract or lease.  Any

12   contract or lease assumed pursuant to this Plan shall be assumed as previously amended or otherwise

13   modified by the parties thereto, whether before or after the Petition Date.

14        **10.2    Executory Contracts and Unexpired Leases Being Rejected.**  Effective as of, and

15   conditioned on, the occurrence of the Effective Date, the Debtor hereby rejects all of the executory

16   contracts and unexpired leases of the Debtor not listed on Exhibit "2" hereto, including, without

17   limitation, those executory contracts and unexpired leases listed on Exhibit "3" hereto.  The Plan

18   Proponents reserve the right to amend, through and including the Confirmation Hearing Date,

19   Exhibit "3" to add thereto any executory contract or unexpired lease, or to delete therefrom any

20   executory contract or unexpired lease.  However, if any amendments are made to Exhibit "3" less

21   than thirty (30) days before the Confirmation Hearing Date, the affected contract or lease parties

22   shall have fifteen (15) days from the date of service of notice of such amendments within which to

23   serve on the Plan Proponents a written objection to the same.  Upon receipt of any such objection,

24   the Debtor shall promptly set a hearing on the same, and the rejection of the affected contract or

25   unexpired lease shall be delayed until the Bankruptcy Court makes a determination on such issue

26   (such determination may be made after the Confirmation Date, without delaying the confirmation of

27   this Plan).  To the extent that an executory contract or unexpired lease has been rejected by the

28   Debtor prior to the Confirmation Date pursuant to an order of the Bankruptcy Court, such rejection

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

53

MTI Plan v3.0

1  shall not be affected by this Plan.  The rejection of any contract or lease pursuant to the provisions of

2  this Section 10.2 shall be only to the extent that such rejected contract or lease constitutes an

3  executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code.

4  Inclusion of an agreement in Exhibit "3" does not constitute an admission by the Plan Proponents

5  that (a) such agreement is an executory contract or unexpired lease within the meaning of

6  section 365 of the Bankruptcy Code, or (b) such agreement is a valid contract or lease.  Any contract

7  or lease rejected pursuant to this Plan shall be rejected as previously amended or otherwise modified

8  by the parties thereto, whether before or after the Petition Date.  Any executory contract or

9  unexpired lease not listed in Exhibit "2" or in Exhibit "3" shall be deemed to be rejected by the

10  Debtor on the Effective Date.

11      **10.3**   **Retention of Property Rights.**  To the extent that the Debtor has obtained property

12  rights under the executed portion of an executory contract or unexpired lease, rejection of such

13  agreement shall not constitute an abandonment by the Debtor of any such property rights.

14      **10.4**   **Bar Date for Rejection Claims.**  Any Rejection Claim shall be forever barred, shall

15  not be enforceable against the Debtor or the Reorganized Debtor, and shall not be entitled to any

16  Distribution under this Plan, unless a Proof of Claim for such Rejection Claim is filed and served on

17  the Plan Agent within thirty (30) days after the later of (a) the date of entry of the order of the

18  Bankruptcy Court approving the rejection of the executory contract or unexpired lease, or (b) the

19  Effective Date.

20      **10.5**   **Cure Claims Schedule.**  A schedule of the amounts necessary to cure any defaults

21  under executory contracts and unexpired leases assumed under this Plan ("Cure Claims") shall be set

22  forth in a schedule ("Cure Claims Schedule") to be filed with the Bankruptcy Court, and served on

23  the non-debtor parties to such executory contracts and unexpired leases, on or before the thirtieth

24  (30th) day prior to the Confirmation Hearing Date.  Any objection to the amount of any Cure Claim

25  set forth in the Cure Claims Schedule shall be filed and served upon the respective counsel for the

26  Plan Proponents on or before the fifteenth (15th) day prior to the Confirmation Hearing Date.  In the

27  event that any such objection to the amount stated for a Cure Claim in the Cure Claims Schedule is

28  not filed and served as set forth herein, the amount of the Creditor's Cure Claim shall be deemed

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MTI_ **Exhibit A, page 138**

1   forever to be the amount set forth in the Cure Claims Schedule, and any Cure Claim in excess of the

2   amount set forth in the Cure Claims Schedule shall be waived and shall be forever barred in the

3   Bankruptcy Case, without further notice.  If the Plan Proponents cannot resolve any such objection

4   with the Creditor, the Debtor may either (a) elect to reject the executory contract or unexpired lease

5   at the Confirmation Hearing, or (b) have the Bankruptcy Court determine the merits of the objection

6   on or after the Confirmation Hearing (without delaying the confirmation of this Plan).  Any amount

7   of a Cure Claim payable upon the assumption of an executory contract or unexpired lease shall be

8   due and payable on or before the fourteenth (14th) day after the entry of a Final Order fixing the

9   amount of the Cure Claim and then only in the amount fixed by such Final Order.

## XI.

### EFFECT OF CONFIRMATION OF THIS PLAN

12      **11.1    Discharge.**  Confirmation of this Plan shall have all of the effects provided by

13   section 1141 of the Bankruptcy Code which are not inconsistent with the terms of this Plan.  Except

14   as provided expressly to the contrary in this Plan or in the Confirmation Order, pursuant to

15   section 1141(d) of the Bankruptcy Code, the Distributions and rights that are provided in this Plan

16   shall be in complete satisfaction, settlement, release and discharge, effective as of the Effective Date,

17   of all known or unknown Claims and Administrative Claims against, rights against, liabilities of,

18   obligations of, and any Liens encumbering the Debtor's assets and properties, including but not

19   limited to, Claims of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy

20   Code, in each case whether or not (a) a Proof of Claim based upon such Claim is filed or deemed

21   filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the

22   Bankruptcy Code, or (c) the holder of such Claim accepted the Plan.  The Confirmation Order shall

23   constitute a determination of the discharge of all Claims and Administrative Claims against the

24   Debtor, subject only to the occurrence of the Effective Date, to the fullest extent permitted by

25   section 1141 of the Bankruptcy Code.  Any obligations to Creditors and to Interest Holders imposed

26   by this Plan shall be compensable only from Distributions of Cash made from the Plan Fund and

27   from any Distributions of Post-Effective Date Stock, and shall not be obligations of the Reorganized

28   Debtor, which shall have no obligations or liabilities of any kind or character whatsoever, known or

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

55

1   unknown, suspected or unsuspected, contingent or non-contingent, matured or unmatured, liquidated

2   or unliquidated, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or

3   in equity or under any other theory of law, to any Creditor, Interest Holder or to any other party-in-

4   interest, except only (i) for Post-Effective Date Plan Expenses, and (ii) that holders of Allowed

5   General Unsecured Claims shall have in accordance with the provisions of this Plan an equity

6   security interest in (but not any Claim or post-Effective Date claim of any nature whatsoever

7   against) the Reorganized Debtor in the event of any Distribution of Post-Effective Date Stock.

8       **11.2    Injunction.**  Except as provided expressly to the contrary in this Plan, or in the

9   Confirmation Order, on and after the Effective Date, all Creditors who have held, hold, or who may

10  hold a Claim discharged pursuant to the terms of this Plan (including, but not limited to, states and

11  other governmental units, and any state official, employee, or other entity acting in an individual or

12  official capacity on behalf of any state or other governmental unit) shall be permanently enjoined

13  from the following:  (a) taking any of the following actions on account of any such discharged

14  Claim:  (i) commencing or continuing in any manner any action or other proceeding against the

15  Debtor or the Reorganized Debtor, their respective Representatives, successors, or property;

16  (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award,

17  decree, or order against the Debtor or the Reorganized Debtor, their respective Representatives,

18  successors, or property; (iii) creating, perfecting, or enforcing any Lien against the Debtor or the

19  Reorganized Debtor, their respective Representatives, successors, or property; (iv) asserting any set

20  off, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the

21  Reorganized Debtor, their respective Representatives, successors, or property; and (v) commencing

22  or continuing any action, in any manner, in any place that does not comply with or is inconsistent

23  with the provisions of this Plan; and (b) taking any acts on account of any Causes of Action that are

24  vested in, or transferred to, the Plan Agent as of the Effective Date, including, without limitation,

25  commencing or continuing in any manner any Avoidance Action (i.e., no party may pursue any

26  Causes of Action, except for the Plan Agent).  Any person or entity injured by any willful violation

27  of such injunction shall recover its actual damages, including costs and attorneys' fees, and, in

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

56

1 appropriate circumstances, may recover punitive damages from the willful violator of such

2 injunction.

3     **11.3**     <u>Release.</u> Except as provided expressly to the contrary in this Plan or in the

4 Confirmation Order, the rights afforded under this Plan and the treatment of all Claims under this

5 Plan shall be in exchange for and in complete satisfaction, settlement, release and discharge of all

6 Claims (including Administrative Claims and any interest accrued on any Claim from and after the

7 Petition Date) against the Debtor and the Reorganized Debtor, and any of their respective assets and

8 property. Except as otherwise provided in this Plan or in the Confirmation Order, upon the Effective

9 Date, each Creditor and party-in-interest in the Bankruptcy Case shall be deemed to have irrevocably

10 and unconditionally settled and released, fully and forever, any Claims against the Debtor and the

11 Reorganized Debtor, and their respective assets and properties. Except as otherwise provided in this

12 Plan or in the Confirmation Order, all Creditors shall be precluded from asserting all Claims against

13 the Debtor and the Reorganized Debtor, and their respective assets and properties.

14     **11.4**     <u>**Distribution of Property Free and Clear of Liens, Claims, and Interests**</u>.

15 Except as otherwise provided in this Plan or in the Confirmation Order, all property distributed

16 under this Plan shall be distributed free and clear of all Liens and other Claims of Creditors and all

17 Interests of Interest Holders.

18     **11.5**     <u>**Binding Effect of Plan.**</u> Upon the Effective Date, the provisions of this Plan shall

19 be binding upon the Debtor, the Reorganized Debtor, the Plan Agent and each Creditor and Interest

20 Holder.

21 **XII.**

22 **<u>LIMITATION OF LIABILITY</u>**

23     **12.1**     <u>**No Liability for Solicitation or Participation**</u>. As specified in section 1125(e) of

24 the Bankruptcy Code, entities that solicit acceptances or rejections of this Plan, in good faith and in

25 compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of

26 such solicitation or participation, for violation of any applicable law, rule, or regulation governing

27 the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of

28 securities.

CLARKSON, GORE & MARSELLA, APLC<br>ATTORNEYS AT LAW<br>TORRANCE, CALIFORNIA

57

MTI Plan v3.0

**12.2**  **Good Faith.** Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**12.3**  **Limitation of Liability Regarding Plan Confirmation.** Effective as of the Effective Date, neither the Committee, the Post-Effective Date Committee, nor any of their respective Representatives shall have or incur any liability to any Creditor or Interest Holder or to any other party-in-interest or entity for any post-petition good faith act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of this Plan, the approval of the Disclosure Statement, the consummation of this Plan, the administration of this Plan, the Bankruptcy Case or the property to be distributed under this Plan or the making of Distributions under this Plan (except for any act or omission constituting gross negligence or willful misconduct), to the fullest extent permitted by applicable statutory and case law, except only that the Plan Agent shall be responsible for making the Distributions provided for by this Plan. The foregoing limitation of liability provisions are not intended to, and will not serve to limit, the SEC's exercise of its police and regulatory powers, respecting persons otherwise protected hereunder.

## XIII.

## OTHER PLAN PROVISIONS

**13.1**  **Exemption from Stamp, Transfer and Other Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under this Plan, including, without limitation, the issuance of Post-Effective Date Stock, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**13.2**  **Books and Records.** Upon the Case Closing Date, the Plan Agent shall be authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-Effective Date books and records of the Debtor in the Plan Agent's custody or control. The Plan Agent shall continue to preserve post-Effective Date books and records in its custody or control, for

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

58

1   a period of not less than one year after the Case Closing Date, or as otherwise provided by order of

2   the Bankruptcy Court.

3       **13.3   Post-Effective Date Quarterly Fees.**  After the Effective Date, the Plan Agent shall

4   pay timely, from the Plan Fund, all accruing United States Trustee Fees until the entry of a Final

5   Decree.

6       **13.4   Post-Effective Date Status Reports.**  The Plan Agent shall file reports regarding the

7   status of implementation of this Plan and the review, prosecution and resolution of Causes of

8   Action every 120 days following the entry of the Confirmation Order through the Case Closing

9   Date, or as otherwise ordered by the Bankruptcy Court.  Such reports shall be served on the Post-

10  Effective Date Notice Parties.

11      **13.5   Effectiveness of Court Orders.**  Unless otherwise provided by this Plan or by the

12  Confirmation Order, all orders and judgments, including injunctions, entered by the Bankruptcy

13  Court during the Case, and in existence on the Confirmation Date, shall remain in full force and

14  effect from and after the Effective Date, to the extent not inconsistent with the provisions of this

15  Plan or the Confirmation Order.

16      **13.6   No Admissions.**  Except as expressly provided to the contrary in this Plan, nothing

17  contained in this Plan shall be deemed or construed in any manner as an admission by a Plan

18  Proponent with respect to any matter set forth in this Plan, including, without limitation, the amount

19  or allowability of any Claim, or the value of any property of the Estate.

20      Notwithstanding anything to the contrary in this Plan, if this Plan is not confirmed or the

21  Effective Date does not occur, this Plan shall be null and void, and nothing contained in this Plan

22  shall: (a) be deemed to be an admission by a Plan Proponent with respect to any matter discussed in

23  this Plan, including liability on any Claim or the propriety of any classification of a Claim;

24  (b) constitute a waiver, acknowledgement, or release of any Claim or Interest, or any claim held by

25  the Debtor; or (c) prejudice in any manner the rights of a Plan Proponent in any further proceedings.

26      **13.7   Revocation of the Plan.**  The Plan Proponents reserve the right to withdraw this

27  Plan before the Confirmation Date.

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

1    **13.8**    <u>**Severability of Plan Provisions.**</u>  If, before Confirmation, the Bankruptcy Court

2    holds that any term or provision of this Plan is invalid, void, or unenforceable, the Bankruptcy

3    Court may alter or interpret that term or provision so that it is valid and enforceable to the

4    maximum extent possible consistent with the original purpose of that term or provision.  Such term

5    or provision, as altered or interpreted by the Bankruptcy Court, shall be effective in this Plan, and

6    the remaining terms and provisions of this Plan shall remain in full force and effect and shall not be

7    affected, impaired, or invalidated in any manner.  The Confirmation Order shall constitute a judicial

8    determination that each term and provision of this Plan, as it may have been altered or interpreted in

9    accordance with this Section 13.8, is valid and enforceable under its terms.

10    **13.9**    <u>**Governing Law.**</u>  The rights and obligations arising under this Plan, and any

11    agreements, contracts, documents, or instruments executed in connection with this Plan shall be

12    governed by, and construed and enforced in accordance with, California law without giving effect

13    to conflict of law principles under California law, unless a rule of law or procedure is supplied by:

14    (a) federal law (including, without limitation, the Bankruptcy Code and the Federal Bankruptcy

15    Rules); or (b) an express choice-of-law provision in any document provided for, or executed under

16    or in connection with, this Plan.

17    **13.10**    <u>**Retention of Jurisdiction.**</u>  After the Effective Date, the Bankruptcy Court shall

18    have, exclusively and to the fullest extent permitted by the Bankruptcy Code, jurisdiction over any

19    matter related to the Case or this Plan, including, without limitation, with respect to any of the

20    following matters:

21    13.10.1    resolution of any matters related to the assumption, assumption and

22    assignment, or rejection of any executory contract or unexpired lease to which the Debtor is

23    a party or with respect to which the Debtor may be liable, and to hear, determine and, if

24    appropriate, liquidate, any Claims arising therefrom;

25    13.10.2    entry of such orders as may be appropriate to interpret, enforce,

26    implement or consummate the provisions of this Plan and all contracts, instruments, releases,

27    and other agreements or documents created in connection with this Plan;

28

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

MTI Plan v3.0

MAINDOCS-#149105-v3-MT    **Exhibit A, page 144**

13.10.3    determination of any and all motions, adversary proceedings,

applications, and contested or litigated matters that may be pending on the Effective Date or

that, pursuant to this Plan, may be instituted by the Plan Agent after the Effective Date,

including, without limitation, any matters related to Causes of Action;

13.10.5    hearing and determining any objections to the allowance of Claims or

Administrative Claims, whether filed before or after the Confirmation Date, including any

objections to the classification of any Claim, and any proceedings to allow, disallow,

determine, liquidate, estimate, or establish the priority or the secured or unsecured status of

any Claim, in whole or in part, or to establish Reserves pending the resolution of Disputed

Claims;

13.10.6    entry and implementation of such orders as may be appropriate in the

event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed, or

vacated;

13.10.7    consideration of any modifications of this Plan, after confirmation of this

Plan, and, if in the best interests of Creditors, modification of this Plan even after this Plan

has been substantially consummated;

13.10.8    interpreting and enforcing orders of the Bankruptcy Court, including,

without limitation, the cure of any defect or omission, or the reconciliation of any

inconsistency, in any order of the Bankruptcy Court, including the Confirmation Order;

13.10.9    hearing and determining all applications for awards of compensation for

services rendered and reimbursement of expenses incurred prior to the Effective Date,

including, without limitation, all Pre-Effective Date Fee Claims of Pre-Effective Date

Professionals;

13.10.10    hearing and determining disputes arising in connection with, or relating

to, this Plan or the interpretation, implementation, or enforcement of this Plan, or the extent

of any entity's obligations in connection with this Plan;

13.10.11    the recovery of all assets of the Debtor and property of the Estate,

wherever located;

61

MTI Plan v3.0

1           13.10.12    issuance of injunctions or other orders as may be necessary or appropriate

2   to aid in the implementation of this Plan or to restrain interference by any entity with the

3   consummation or the enforcement of this Plan;

4           13.10.13    hearing and determining matters concerning Taxes and tax refunds, tax

5   attributes, and tax benefits and similar and related matters, with respect to the Debtor or the

6   Reorganized Debtor, in accordance with sections 346, 505, and 1146 of the Bankruptcy

7   Code;

8           13.10.14    hearing and determining any issue or dispute arising from or related to

9   the Plan Assets, the Post-Effective Date Committee or the Plan Agent;

10          13.10.15    the effectuating of Distributions under, and the performance of, the

11  provisions of this Plan;

12          13.10.16    hearing and determining any other matter deemed relevant to the

13  consummation of this Plan and the administration of the Case; and

14          13.10.17    the issuance of a Final Decree.

15  Notwithstanding anything to the contrary contained in the foregoing, in the event that the

16  Bankruptcy Court determines that it is without jurisdiction, or abstains from exercising jurisdiction,

17  over any matter, the provisions of this Section 13.10 shall not affect, control, prohibit, or limit in

18  any manner the exercise of jurisdiction over such matter by any other court or tribunal that has

19  jurisdiction over such matter.

20      **13.11**    <u>Successors and Assigns.</u>  Except as provided expressly to the contrary in this Plan

21  (including, without limitation, pursuant to Section 11.1 of this Plan), the rights, benefits, and

22  obligations of any entity referred to in this Plan shall be binding on, and shall inure to the benefit of,

23  any heir, executor, administrator, successor, or assign of that entity.

24      **13.12**    <u>Business Day.</u>  If any payment or act under this Plan is required to be made or

25  performed on a day that is not a Business Day, then the payment or act may be completed on the

26  next succeeding day that is a Business Day, in which event the payment or act shall be deemed to

27  have been completed on the required day.

28

MTI Plan v3.0

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

1      **13.13**   **No Waiver.**  Except as provided expressly to the contrary in this Plan, neither the

2  failure to list a Claim in the Bankruptcy Schedules filed by the Debtor, the failure of a Plan

3  Proponent to object to any Claim for purposes of voting, the failure of a Plan Proponent to object to

4  a Claim or Administrative Claim prior to the Effective Date, the failure of a Plan Proponent to

5  assert a Cause of Action prior to the Effective Date, nor any action or inaction of a Plan Proponent

6  with respect to a Claim, Administrative Claim, or Cause of Action, other than a legally effective

7  express waiver or release, shall be deemed to be a waiver or release of the right of such Plan

8  Proponent or its successors or representatives, to (a) object to or examine such Claim or

9  Administrative Claim, in whole or in part, or (b) retain and assert, pursue, prosecute, litigate, or

10  otherwise enforce any Cause of Action.

11      **13.14**   **Post-Effective Date Notice.**  From and after the Effective Date, any entity which

12  desires to obtain notice of any pleading or document filed in the Case, or of any hearing in the

13  Bankruptcy Court, or of any matter as to which notice is to be provided under this Plan, must file a

14  request for post-Effective Date notice and serve such request on the Plan Agent, the Post-Effective

15  Date Committee, and any counsel for the Plan Agent; provided, however, that the  United States

16  Trustee, the Post-Effective Date Committee, the Reorganized Debtor and the Plan Agent each shall

17  be deemed to have requested such post-Effective Date notice.

18      **13.15**   **Modification of this Plan**.  At any time prior to the confirmation of this Plan, the

19  Plan Proponents may supplement, amend or modify this Plan in accordance with section 1127(a) of

20  the Bankruptcy Code.  After confirmation of this Plan, the Plan Agent may (a) apply to the

21  Bankruptcy Court to modify this Plan, notwithstanding any substantial consummation of this Plan if

22  such modification is in the best interests of the Creditors, and (b) apply to the Bankruptcy Court to

23  remedy defects or omissions in this Plan or to reconcile inconsistencies in this Plan.

24      **13.16**   **Nonconsensual Confirmation.**  In accordance with section 1126(g) of the

25  Bankruptcy Code, Interest Holders are deemed to have not accepted this Plan.  The Plan Proponents

26  hereby request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of

27  the Bankruptcy Code, notwithstanding the Interest Holders' deemed non-acceptance of this Plan and

28  any other non-acceptance of this Plan by any other Class established by this Plan.  The Plan

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

63

MTI Plan v3.0

1  Proponents hereby reserve the right to modify this Plan in accordance with section 1127 of the

2  Bankruptcy Code and Section 13.15 of this Plan in connection with confirmation proceedings with

3  respect to this Plan, and, unless the Bankruptcy Court should determine that such modification

4  affects adversely the treatment of any Class of Creditors established by this Plan, such modification

5  of this Plan may be effectuated without the need to amend the Disclosure Statement or to re-solicit

6  votes with respect to this Plan.

7      **13.17**   **Other Documents and Actions.**  The Reorganized Debtor and the Plan Agent may

8  execute such other documents and take such other actions as may be necessary or appropriate to

9  effectuate the transactions contemplated under this Plan, including, without limitation, any Merger

10  Transaction.

11      **13.18**   **Notices.**  Except as provided expressly to the contrary in this Plan, after the

12  Effective Date of this Plan, all notices and requests in connection with this Plan shall be in writing

13  and shall be hand delivered, sent by e-mail transmission or sent by telefacsimile, with a copy sent by

14  first-class mail, addressed to the Plan Agent, the Reorganized Debtor and to the Post-Effective Date

15  Committee at the addresses that will be set forth in the Confirmation Order.

16      All notices to any Creditor shall be sent to it at its last known address or to the last known

17  address of its attorney of record.  Any such Creditor may designate in writing any other address for

18  the purpose of this Section 13.18, which designation shall be effective on receipt thereof by the

19  Debtor or by the Plan Agent.

20      **13.19**   **Inconsistencies.**  In the event that any provisions of this Plan are inconsistent with

21  the provisions of the Disclosure Statement, the provisions of this Plan shall control.

22      **13.20**   **Changes in Rates Subject to Regulatory Commission Approval.**  The Debtor is

23  not subject to governmental regulatory commission approval of its rates.

24      **13.21**   **Modification/Superseding of Loan and Security Agreements.**  Except as

25  provided expressly to the contrary in this Plan, from and after the Effective Date, all loan documents,

26  security documents, Liens, assignments of rent, promissory notes, indemnity agreements, surety

27  agreements, purchase orders, invoices, and other contracts documenting Claims against the Debtor

28  (collectively, "Loan Documents") shall be deemed modified or superseded completely, as the case

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

64

MTI Plan v3.0

terms of this Plan.  Upon the Effective Date, any defaults under such Loan Documents shall be deemed cured as of the Effective Date.  After the Effective Date, Claims shall be paid only in accordance with the terms of this Plan, and any effort by any Creditor to compel any payment to it of more than its Allowed Claim, or the payment of its Claim in any manner other than as provided in this Plan, shall constitute a violation of the Confirmation Order and section 1141 of the Bankruptcy Code.

**13.22   Implementation of Section 1142 of the Bankruptcy Code.**  Pursuant to section 1142(a) of the Bankruptcy Code, the Reorganized Debtor and the Plan Agent are authorized to carry out the terms of this Plan.  Pursuant to section 1142(b) of the Bankruptcy Code, all Creditors and Interest Holders shall execute and deliver, or join in the execution and delivery of, any instrument or document appropriate to effectuate this Plan, and perform any other act that is appropriate for the consummation of this Plan.  To the extent that any Creditor or Interest Holder fails to comply with these provisions, the Reorganized Debtor and the Plan Agent shall be entitled to obtain, on an expedited basis, an order of the Bankruptcy Court compelling the Creditor's compliance with these provisions, and, during the time period encompassed by such Creditor's non-compliance, no payment shall be made to such Creditor under this Plan, and such Creditor shall be responsible for all costs and damages incurred by the Reorganized Debtor and/or the Plan Agent as a result of such Creditor's non-compliance with these provisions.

## XIV.

## RECOMMENDATION AND CONCLUSION

The Plan Proponents believe that confirmation and implementation of this Plan are preferable to any other alternative because, in their view, this Plan will provide holders of Allowed Claims with the maximum recovery possible on their Allowed Claims.  Accordingly, the Plan Proponents urge Creditors to vote to accept this Plan.

Dated: August 4, 2010

**MTI TECHNOLOGY CORPORATION,**
**Chapter 11 Debtor and Debtor-in-Possession**

By: _____
Name: SCOTT POTERACKI
Title: Chief Restructuring Officer

MTI Plan v3.0

Dated: August ___, 2010

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

By:_____
Name: STEVEN SASS
Title:  Chairman

MTI Plan v3.0

MAINDOCS-#149105-v3-MT    **Exhibit A, page 150**

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

# CANOPY SETTLEMENT AGREEMENT

# EXHIBIT "1"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This *Settlement Agreement and Mutual Release of Claims* (hereinafter the "Agreement") is made and entered into this 18th day of September 2008, by and between the Official Committee of Unsecured Creditors (the "Committee") for the estate of MTI Technology Corporation (the "Debtor"), on the one hand, and The Canopy Group, Inc. ("Canopy"), on the other hand. The Committee, the Debtor and Canopy are individually referred to herein as a "Party" and are collectively referred to herein as the "Parties."

### RECITALS

WHEREAS, on October 15, 2007 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition for relief with the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and thereby commenced its Chapter 11 bankruptcy case entitled In re MTI Technology Corporation, Case Number 8:07-13347-ES (the "Bankruptcy Case"), and

WHEREAS, the Committee is the duly appointed and acting official committee of creditors holding unsecured claims in the Bankruptcy Case; and

WHEREAS, on November 13, 2007, the Bankruptcy Court entered its *Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 (I) Authorizing Secured Post-Petition Financing on a Super-Priority Basis; (II) Authorizing Use of Cash Collateral, (III) Approving Agreements Related to the Foregoing; (IV) Modifying Automatic Stay; and (V) Granting Adequate Protection to Pre-Petition Lenders and Related Relief* (the "Financing Order") in the Bankruptcy Case; and

WHEREAS, pursuant to the Financing Order, the Debtor granted to Canopy perfected, post-petition security interests and liens on the "Canopy Collateral," as such term is defined in the Financing Order; and

WHEREAS, on December 17, 2007, the Bankruptcy Court entered its *Order Pursuant to Sections 105, 363(b), 363(f) and 365 of Title 11 of the United States Code (I) Approving the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (II) Approving the Debtor's Assumption and Assignment of Certain Executory Contracts; and (III) Waiving the 10-Day Stay Period Set Forth in Bankruptcy Rules 6004(h) and 6006(d)* (the "Sale Order") in the Bankruptcy Case, and thereby authorized the Debtor to sell to Copper Holdings LLC the Debtor's equity interests in three European subsidiaries of the Debtor ("Equity Interests"), free and clear of Canopy's security interest in the Equity Interests; and

WHEREAS, pursuant to the Sale Order, Canopy's security interest in the Equity Interests attached to the proceeds that the Debtor received in connection with the sale of the Equity Interests, and, as a consequence thereof, approximately $5.4 million in sale proceeds, plus accrued interest (hereinafter, the "Sale Proceeds") is being held in an attorney trust account

maintained by the Debtor's Chapter 11 bankruptcy counsel ("Trust Account") on account of Canopy's secured claim; and

WHEREAS, assets of the Debtor's estate include claims and causes of action, under Chapter 5 of Title 11 of the United States Code (the "Bankruptcy Code") and other federal and state-law causes of action, including but not limited to potential claims and causes of action against certain former officers and directors of the Debtor, and all other claims of any kind or nature whatsoever, whether imposed by agreement, understanding, law or equity (collectively, the "Claims"); and

WHEREAS, the Financing Order provides the Committee with standing to challenge Canopy's claims and asserted security interests, including Canopy's claim that it has a validly perfected, first priority lien and security interest in the Sale Proceeds as the identifiable cash proceeds of the Equity Interests; and

WHEREAS, the Committee has asserted to Canopy that it believes grounds exist to seek avoidance of Canopy's security interest, pursuant to section 547 of the Bankruptcy Code; and

WHEREAS, Canopy denies the Committee's assertion, and contends that it is entitled to be paid in full on account of its secured claim, including post-petition interest, from the Sale Proceeds; and

WHEREAS, Canopy has filed a secured proof of claim in the Bankruptcy Case, which has been assigned claim number 487 (the "Canopy Claim"), asserting a secured claim against the Debtor's estate in the amount of $3,173,373.27, plus post-petition interest at twelve percent (12%) per annum, and secured by the Sale Proceeds and other assets of the estate; and

WHEREAS, the Committee and Canopy have discussed the nature and basis of their claims and defenses in an attempt to reach a settlement and compromise of all issues between them; and

WHEREAS, the Parties are now desirous of resolving their disputes and all other issues between them through compromise and settlement, as further set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained herein, the Parties, intending to be bound hereby, do hereby stipulate, agree and covenant as follows:

1.    **Payment to Canopy.**  Within five (5) business days after the Effective Date (as such term is defined in paragraph 18 hereof), the Debtor shall pay to Canopy, from the Sale Proceeds, by certified check or wire transfer, the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) (the "Effective Date Settlement Payment").

2

Exhibit A, page 153
Exhibit 1, Page 68

2.    Assignment and Transfer of Portions of Cash Proceeds of Claims to Canopy. Upon the Effective Date, the Debtor and its estate shall be deemed to have transferred, conveyed and assigned to Canopy (and the Debtor and the Committee shall sign forms of transfer or assignment or such other documents as Canopy shall reasonably request) an undivided interest in gross cash proceeds received by the Debtor's estate on account of any Claims, whether or not such cash proceeds are paid on account of filed or non-filed, asserted or unasserted, pending or contemplated, contingent or uncontingent, disputed or undisputed and liquidated or unliquidated Claims (the "Gross Claims Proceeds"), up to a maximum amount of ONE MILLION DOLLARS ($1,000,000.00), in the following percentages:

(a)    If the total Gross Claims Proceeds are less than ONE MILLION DOLLARS ($1,000,000.00), Canopy shall receive no percentage of the Gross Claims Proceeds.

(b)    If the total Gross Claims Proceeds are between ONE MILLION DOLLARS ($1,000,000.00) and TWO MILLION DOLLARS ($2,000,000.00), Canopy shall receive FIVE PERCENT (5%) of all such Gross Claims Proceeds.

(c)    If the total Gross Claims Proceeds are between TWO MILLION DOLLARS ($2,000,000.00) and THREE MILLION DOLLARS ($3,000,000.00), Canopy shall receive TEN PERCENT (10%) of all such Gross Claims Proceeds.

(d)    If the total Gross Claims Proceeds exceed THREE MILLION DOLLARS ($3,000,000.00), Canopy shall receive FIFTEEN PERCENT (15%) of all such Gross Claims Proceeds provided, however, that in no event shall Canopy ever receive more than ONE MILLION DOLLARS ($1,000,000.00) of the Gross Claims Proceeds, and the estate's liability to Canopy shall be capped at that amount.

(e)    Exclusion of Certain Proceeds and Collections of the Estate from Definition of Gross Claims Proceeds. For purposes of this Paragraph 2, the phrase "Gross Claims Proceeds" shall not include any of the following and Canopy shall not be entitled to any share of any of the following under this Agreement: (i) any collections, receipts or recoveries of any nature by the Debtor's estate that were actually received by the Debtor's estate before the date of execution of this Agreement, (ii) any collections, receipts or recoveries received by the Debtor's estate, or that may be received by the Debtor's estate, before or after the date of execution of this Agreement, from the Debtor's disposition of its domestic business units or stock interests in its foreign subsidiaries; and (iii) any collections, receipts or recoveries received by the Debtor's estate, or that may be received by the Debtor's estate, before or after the date of execution of this Agreement, of trade receivables generated in the ordinary course of the Debtor's business operations and as part of the Debtor's business operations.

3.    Total of all Payments to Canopy not to Exceed THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00). Canopy acknowledges and agrees that the total sum of all payments it shall be entitled to under this Agreement and settlement of the Canopy Claim shall never exceed the sum of THREE MILLION FIVE HUNDRED

3

THOUSAND DOLLARS ($3,500,000.00), consisting of (a) TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00) as and for the Effective Date Settlement Payment, and (b) no more than ONE MILLION DOLLARS ($1,000,000.00) of Gross Claims Proceeds.

4.    **No Settlement or Compromise of Claims for Non-Cash Consideration without the Express Written Permission of Canopy, or an Order of the Bankruptcy Court After Notice to Canopy.**  Neither the Debtor nor the Committee nor any other representative of the estate, including but not limited to any Chapter 11 plan trustee or any Chapter 11 or 7 trustee, shall settle or compromise any Claims of the estate for non-cash consideration without the express written permission of Canopy, or an Order of the Bankruptcy Court after notice to Canopy and an opportunity for Canopy to be heard on the approval of any settlement or compromise; provided, however, that any settlement or compromise of Claims may take into account and incorporate any valid and enforceable setoff, netting claim, chargeback claim, recoupment claim, counterclaim and any other valid and enforceable defense that may be asserted by the non-debtor party to such settlement or compromise, without any permission of Canopy.

5.    **Settlement of Claims: Notice to Canopy of Rule 9019 Motions.**

(a)    Prior to Confirmation of Plan.  Prior to any confirmation of a Chapter 11 plan in the Bankruptcy Case, all settlements and compromises of all estate Claims, prior to becoming effective, shall be approved by the Bankruptcy Court after notice and an opportunity for a hearing, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9019").  Canopy shall have the same right as any other creditor of the estate to object to or challenge any proposed settlement or compromise. Canopy shall be provided with at least fifteen (15) calendar days' written notice of any such settlements or compromises, and of any hearing thereon.

(b)    After Confirmation of Plan.  After any confirmation of a Chapter 11 plan in the Bankruptcy Case, no Bankruptcy Court approval of a settlement or compromise of an estate Claim shall be required.  Notwithstanding the foregoing, Canopy shall be given written notice of any such settlement or compromise, and Canopy shall have a period of fifteen (15) calendar days after the giving of such notice within which to object to such settlement or compromise.  In the event that Canopy objects timely to such settlement or compromise, a motion to obtain Bankruptcy Court approval of such settlement or compromise pursuant to Bankruptcy Rule 9019 shall be filed, with a hearing thereon scheduled on not less than ten (10) days' notice to Canopy, and Canopy shall have the right to present at any such hearing its objection to such settlement or compromise.

6.    **Pursuit of Claims by Estate; Reporting on Gross Claims Proceeds.**

(a)    Service of Pleadings Regarding Claims and any Initial Written Demands. The Debtor, the Committee, or the estate's then representative shall serve upon Canopy, in accordance with the provisions of paragraph 35 hereof, copies of any initial written demand that may be tendered or served upon any non-debtor asserting any Claim subject to this Agreement concurrently with the making of any such initial written demand, as

4

well as pleadings that may be filed to pursue any Claim subject to this Agreement concurrently with the filing of any such pleadings.

(b)    Report on Gross Claims Proceeds.  Upon written request by Canopy, the Debtor, the Committee, or the estate's then representative shall provide to Canopy a written report (which may be in the form of written correspondence rather than a pleading or document to be filed with the Bankruptcy Court) of all Gross Claims Proceeds or other consideration received by the estate on account of any Claim.  Any such written report shall, at a minimum, identify (a) the name and address of the person or entity against whom the Claim is asserted, (b) the form and amount of all Gross Claims Proceeds or other consideration received by the estate on account of the Claim, and (c) the date of receipt by the estate of all such Gross Claims Proceeds or other consideration.  Canopy shall be entitled to make a written request for such a report no more frequently than once every four calendar months.  Written reports shall be provided to Canopy within fifteen (15) calendar days of the making of a request therefor.

7.    Segregation of Gross Claims Proceeds; Payment to Canopy of Gross Claims Proceeds.

(a)    Segregation of Gross Claims Proceeds.  Upon receipt of any Gross Claims Proceeds, the Debtor, the Committee, or the estate's then representative shall deposit such Gross Claims Proceeds in an interest-bearing, segregated bank account satisfactory to Canopy.  No funds shall be disbursed from such account except as provided in this paragraph 7.

(b)    Payment to Canopy of Gross Claims Proceeds.  The Debtor, the Committee or the estate's then representative shall pay to Canopy, in good and sufficient funds, all Gross Claims Proceeds to which Canopy becomes entitled under paragraph 2 of this Agreement as soon as practicable after the 91st day after the estate's receipt of such Gross Claims Proceeds if the party paying such Gross Claims Proceeds is not an "insider" of the Debtor, as such term is defined in section 101(31) of the Bankruptcy Code, and the Debtor, the Committee or the estate's then representative shall pay to Canopy, in good and sufficient funds, all Gross Claims Proceeds to which Canopy becomes entitled under paragraph 2 of this Agreement as soon as practicable after one year after the estate's receipt of such Gross Claims Proceeds if the party paying such Gross Claims Proceeds is an "insider" of the Debtor pursuant to section 101(31) of the Bankruptcy Code. Notwithstanding the foregoing, for administrative convenience, Canopy shall not receive payment of any Gross Claims Proceeds until its share of the Gross Claims Proceeds for any applicable period shall meet or exceed the sum of TEN THOUSAND DOLLARS ($10,000.00).

(c)    Avoidance of Payment of Gross Claims Proceeds.  In the event that a final, non-appealable order of a court of competent jurisdiction is entered ordering, pursuant to Chapter 5 of the Bankruptcy Code or otherwise, the Debtor's estate to repay all or a portion of the amount of any Gross Claims Proceeds received by the estate,

5

Canopy shall repay immediately to the estate any amount of such Gross Claims Proceeds that it may have been paid by the estate.

8.    Waiver of Canopy Claim; Release of Sale Proceeds to Estate:

(a)    Waiver of Canopy Claim.  Upon Canopy's receipt of the Effective Date Settlement Payment, Canopy shall be deemed to have waived the Canopy Claim in its entirety and Canopy shall be entitled to no further distributions from the estate or any successor in the estate, other than Canopy's entitlement to potential distributions on account of any Gross Claims Proceeds.  Canopy shall not, however, be deemed to have waived any claim or cause of action against the Debtor, the Committee, the estate or any successor to the estate arising out of or related to any failure by them or any of them to satisfy their obligations under this Agreement.

(b)    Release of Sale Proceeds to Estate.  After the Effective Date Settlement Payment is made to Canopy, the balance of the Sale Proceeds, plus all accrued interest thereon, shall be disbursed immediately from the Trust Account to the Debtor's estate and such funds shall be free and clear of any claim, lien, encumbrance or any other interest of any nature whatsoever of Canopy.

9.    Release of Claims by Canopy.  Except for claims and causes of action arising out of or related to a breach of this Agreement, upon the Effective Date, Canopy, on behalf of itself and its predecessors, successors and assigns, hereby absolutely, fully and forever releases, waives, acquits and discharges the Debtor, the Committee, the Debtor's estate and any predecessor, successor and assign of each of them, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of each of them, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that Canopy has, may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving the Debtor, existing or occurring prior to the date of this Agreement, including, without limitation, the Canopy Claim, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

10.    Release of Claims by the Debtor, the Committee and the Estate.  Except for claims and causes of action (a) arising out of or related to a breach of this Agreement, or (b) arising out of or related to the service by any current or former officer, director, employee, shareholder or agent of Canopy as a director or officer of the Debtor (including, without limitation, such service by Ron Heinz), upon the Effective Date, the Debtor, for itself and for the estate, and the Committee, on behalf of themselves and their respective predecessors, successors and assigns, hereby absolutely, fully and forever release, waive, acquit and discharge Canopy

6

Exhibit A, page 157
Exhibit 1, Page 72

and any predecessor, successor or assign of Canopy, and each and every past and present partner, officer, director, shareholder, member, manager, agent, servant, employee, principal, representative, attorney, insurer, parent, subsidiary, affiliate and related entity of Canopy, and their respective heirs, predecessors, successors and assigns, from any and all claims, causes of action, suits, debts, liens, encumbrances, security interests, interests, obligations, liabilities, demands, damages, charges, accounts, losses, costs and expenses (including attorneys' fees and costs) of any kind, character or nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, liquidated or unliquidated, in tort or in contract or otherwise, that they may have or claim to have now or which may hereafter arise which relate to, are connected with or arise out of any matter, fact, transaction, act of commission or omission by or involving Canopy, existing or occurring prior to the date of this Agreement, including, without limitation, any and all alter ego, piercing and other derivative claims, breach of fiduciary duty claims, breach of covenant claims, negligence claims, and any of the facts or matters set forth in the Recitals to this Agreement.

11. **Scope of Releases.** Each of the Parties acknowledges the fact that it is its intention that this Agreement shall be effective as a full and final accord and satisfaction and settlement of and as a bar to each such claim, cause of action, suit, debt, lien, encumbrance, security interest, interest, obligation, liability, demand, damage, charge, account, loss, cost and expense of every kind or nature whatsoever, heretofore referred to and released, which Canopy, on one hand, and the Debtor, the estate and the Committee, on the other hand, have had, have, or may have against each other. In connection with such release, each Party acknowledges that it is aware that it or its attorneys may hereafter discover facts different from or in addition to the facts which it or its attorneys now know or believe to be true with respect to the subject matters of this Agreement and that it may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to those claims, but that it is its intention hereby to fully, finally, absolutely and forever settle any and all claims which do now exist, may exist or heretofore have existed among the Parties in accordance with the terms and conditions hereof, and that, in furtherance of such intention, the releases herein given shall be and shall remain in effect for all time as full and complete mutual releases notwithstanding the discovery of any such different or additional facts or of any such additional damages, costs or expenses. Therefore, each Party acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR."

Except only for the obligations imposed upon, and the rights expressly reserved by, each Party pursuant to this Agreement, each of the Parties does hereby waive and relinquish, effective as of the Effective Date, all rights and benefits which it has or may have under Section 1542 of the Civil Code of the State of California, and any other comparable statutes of any other states in the United States.

7

12.  **No Rescission or Termination.** As a part of the foregoing releases, each of the Parties acknowledges that it understands and accepts the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by it to be true. From and after the Effective Date of this Agreement, this Agreement shall not be subject to termination or rescission by virtue of any such differences in fact. In entering into this Agreement, and the releases given hereunder, each of the Parties acknowledges that it has conducted its own independent investigation, has consulted with legal counsel of its own choice, and has not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

13.  **Covenants Not to Sue.** The Parties covenant and agree not to commence against each other any action or proceeding of any nature whatsoever with respect to any of the claims hereby released. The Parties hereby further covenant and agree not to join in or to participate in any action or proceeding based upon, arising out of or relating to the claims hereby released, unless such participation is compelled by order of a court of competent jurisdiction.

14.  **Withdrawal of Canopy Claim.** Within five business days after Canopy's receipt of the Effective Date Settlement Payment, Canopy shall withdraw, with prejudice, the Canopy Claim.

15.  **No Assignment of Released Claims.** Each Party represents and warrants to the other Parties that it has not assigned or transferred to any person or entity any of the claims hereby released by it.

16.  **No Admission of Wrongdoing.** Each Party acknowledges and agrees that this Agreement contemplates and provides for the resolution of disputed claims, and that no Party makes any admission of any wrongdoing. Except as set forth expressly to the contrary in this Agreement, no Party admits pursuant to this Agreement any liability to any other Party.

17.  **Condition to Effectiveness of this Agreement.** The effectiveness of this Agreement, and the effectiveness of the rights and obligations of the Parties set forth in this Agreement, are subject to the occurrence of each of the following conditions (together, "Effectiveness Conditions"):

(a)  **Execution of Agreement.** The execution of this Agreement by each of the Parties.

(b)  **Bankruptcy Court Approval Order.** The entry of an order of the Bankruptcy Court approving, pursuant to Bankruptcy Rule 9019, the terms and conditions of this Agreement, and such order becoming a final, non-appealable order.

18.  **Effective Date of Agreement.** This Agreement shall be effective and binding upon the Parties on the first business date upon which all of the Effectiveness Conditions are satisfied ("Effective Date").

8

19. Termination of Agreement.

(a) Termination Events. This Agreement may be terminated at the option of a non-defaulting Party upon the occurrence of either of the following events:

(i) The Bankruptcy Court enters an order denying approval of this Agreement; or

(ii) The Effective Date of this Agreement has not occurred by December 1, 2009.

(b) Effect of Termination. In the event of any termination of this Agreement as permitted by paragraph 19(a) hereof, this Agreement, and all of the provisions of this Agreement, shall be null and void ab initio and of no force or effect, shall not be binding upon any of the Parties, and the Parties shall be restored to the same respective positions that they were in as of the date of execution of this Agreement, without any prejudice to such positions, and no Party shall have any liability or further obligation to any other Party by reason of this Agreement, except only for any breach of this Agreement occurring prior to or as a result of the termination of this Agreement. Upon any termination of this Agreement, neither the existence of this Agreement nor its contents shall be deemed to be a presumption, concession, or admission by or against any Party or be admissible in evidence, or referred to for any purpose in the Bankruptcy Case, or in any action or proceeding, except in any action or proceeding relating to or arising out of any breach of this Agreement by a Party.

20. Binding Effect, Motion for Bankruptcy Court Approval of Agreement.

(a) Binding Effect of Agreement. Upon the Effective Date, this Agreement shall be binding upon and shall inure to the benefit of the Debtor's bankruptcy estate and the Parties and the respective successors and assigns of the Parties, including, without limitation, any Chapter 11 trustee or Chapter 7 trustee or Chapter 11 plan representative.

(b) Bankruptcy Rule 9019 Motion. The Committee shall file a motion seeking, pursuant to Bankruptcy Rule 9019, approval of this Agreement within no more than fifteen (15) days of its execution by all of the Parties.

21. Incorporation of Agreement in any Chapter 11 Plan. Subject to and conditioned upon the occurrence of the Effective Date, to the extent that any terms and conditions of this Agreement are not fully implemented at the time of the filing of any Chapter 11 plan in the Bankruptcy Case (e.g., the payment to Canopy of any Gross Claims Proceeds to which it is entitled under paragraph 2 hereof), such terms and conditions of this Agreement shall be incorporated into and become a part of such Chapter 11 plan and Canopy's rights under this Agreement shall not in any manner be impaired or diminished by any Chapter 11 plan confirmed in the Bankruptcy Case.

-9-

22. **Modification.** This Agreement may not be modified or amended except by an instrument in writing signed by all of the Parties.

23. **Waiver.** Acceptance by any Party of any performance less than required hereunder shall not be deemed to be a waiver of the rights of such Party to enforce all of the terms and conditions hereof. Except as otherwise expressly provided herein, no waiver of any such right hereunder shall be binding unless reduced to writing and signed by the Party to be charged therewith.

24. **Counterparts; Facsimile Signature.** This Agreement may be signed in any number of counterparts with the same effect as if the signatures appeared on the same instrument, and all signed counterparts shall be deemed to be an original. Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original.

25. **Authorized Execution.** Each individual executing this Agreement on behalf of a Party represents and warrants that (i) to the best of its information and knowledge formed after reasonable inquiry, all Recitals set forth in this Agreement are true and accurate as of the date of execution of this Agreement, (ii) it is authorized to execute this Agreement for such Party, (iii) upon the Effective Date, such Party shall be bound in all respects hereby, and (iv) such execution presents no conflict with any other agreement of such Party or any applicable law.

26. **Attorneys' Fees and Costs.** The Parties shall bear their own attorneys' fees and costs arising from or related to the Canopy Claim and the negotiation and execution of this Agreement. In the event of any claim, action, or lawsuit to enforce, modify, interpret invalidate, rescind, or set aside any term or provision of this Agreement, however, the prevailing party shall be entitled to an award of its costs and expenses, including reasonable attorneys' fees and costs, incurred as a result of such claim, action, or lawsuit, including any appeals resulting therefrom.

27. **No Inducement.** The Parties represent, warrant, and agree that, upon executing and entering into this Agreement, they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained, or embodied in this Agreement.

28. **Governing Law; Choice of Forum.** This Agreement shall be construed and enforced according to the laws of the State of California, without reference to conflicts of law principles. Any action brought to construe, interpret, enforce or modify the terms of this Agreement may be brought only in the Bankruptcy Court (subject only to the right of appeal). Each of the Parties hereby consents to the jurisdiction of the Bankruptcy Court to enforce the provisions of this Agreement, and hereby waives any objection that it may have to such jurisdiction. Notwithstanding the foregoing, in the event that the Bankruptcy Case should be closed or dismissed, any action or proceeding to construe, interpret, enforce or modify the terms of this Agreement may be brought in the state or federal courts of California sitting in Orange County, California.

10

**Exhibit A, page 161**
Exhibit 1, Page 76

29.   Severability.  If any part of this Agreement shall be determined to be illegal, invalid or unenforceable, that part shall be severed from the Agreement and the remaining parts shall be valid and enforceable, so long as the remaining parts continue to fulfill the original intent of the Parties.

30.   Free and Voluntary Act.  The Parties hereby acknowledge and agree that they have carefully read the foregoing covenants and mutual releases, know the contents thereof, have discussed them with legal counsel or have decided not to consult with legal counsel, and sign the same of their own free and voluntary act with the intent to be legally bound thereby.

31.   No Construction against any Party; Headings for Convenience Only.  The Parties have cooperated in the drafting and preparation of this Agreement. In any construction of this Agreement, or of any of its terms and provisions, the same shall not be construed against any Party. Moreover, all headings in this Agreement are inserted for convenience of reference only, and shall not affect the construction or interpretation hereof.

32.   Reliance on Representations.  Each Party specifically acknowledges that it has not relied on any statement, representation, or promise of any other Party, or of any of its agents, employees, attorneys, or representatives, in executing this Agreement, except as expressly set forth herein. In addition, each Party acknowledges that it is under no duress or undue influence and that it executes this Agreement as an act of its own voluntary will.

33.   Entire Agreement.  This Agreement constitutes the entire agreement of the Parties with respect to the matters set forth herein, and supersedes any and all prior agreements or understandings, written or oral, between them relating to the subject matter of this Agreement. No other promises or agreements shall be binding upon the Parties with respect to this subject matter unless contained in this Agreement or separately agreed to in writing and signed by an authorized representative of each Party.

34.   Effectuation.  Each Party agrees to take any and all acts, and to execute any and all further documents, that may be reasonably necessary or appropriate to obtain Bankruptcy Court approval of this Agreement and to effectuate the provisions of this Agreement.

35.   Notices.  Except as provided below, all notices, requests, demands, and other communications required by this Agreement shall be in writing and shall be delivered by facsimile, e-mail transmission, or in person, or mailed by first class registered or certified mail, as follows:

To the Committee:
Steven D. Sass
Vice President, Legal Services
RMS
307 International Circle, #270
Hunt Valley, MD 21030
Fax: (410) 773-4057
E-Mail: steven.sass@rmsna.com

11

Exhibit A, page 162
Exhibit 1, Page 77

With a copy to:
    Robert E. Opera, Esq.
    Winthrop Couchot Professional Corporation
    660 Newport Center, Fourth Floor
    Newport Beach, California 92660-5946
    Fax: (949) 720-4111
    E-Mail: ropera@winthropcouchot.com

With a copy to:
    Richard Feferman
    Corporate Recovery Associates
    3830 Valley Center Dr.
    FMB 705-152
    San Diego, CA 92130
    Fax: (858) 430-2454
    E-Mail: Richard@crarecovery.com

To the Debtor:
    Scott Poteracki
    MTI Technology Corporation
    15641 Red Hill Avenue
    Suite 200
    Tustin, CA 92780
    E-Mail: spoteracki@mticiant.com

With a copy to:
    Scott Clarkson, Esq.
    Clarkson, Gore & Marsella, SPLC
    3424 Carson St Ste 350
    Torrance, CA 90503
    Fax: (310) 214-7254
    E-Mail: sclarkson@lawcgm.com

To Canopy:
    Canopy Group, Inc.
    c/o Brandon Tidwell
    333 South 520 West, Suite 300
    Lindon UT 84042
    Fax: (801) 229-2458
    E-Mail: brandon@canopy.com

12

With a copy to:
Michael R. Johnson, Esq.
Snell & Wilmer LLP
Gateway Tower West
15 West South Temple, #1200
Salt Lake City, UT 84101
Fax: (801) 257-1800
E-Mail: mrjohnson@swlaw.com

With a copy to:
Danny C. Kelly, Esq.
Stoel Rives LLP
201 S. Main St., #1100
Salt Lake City, UT 87111
Fax: (801) 578-6999
E-Mail: dckelly@stoel.com

If delivered by facsimile, by e-mail transmission, or personally, the date on which the notice, request, demand or other communication is delivered shall be the date on which such delivery is made, and, if delivered by mail as aforesaid, the date on which such notice, request, instruction or document is received shall be the date of delivery. Any Party may designate in writing a different address to which any notice, request, demand or other communication is to be given hereunder to such Party.

36.    Interpretation. Wherever in this Agreement the context so requires, reference to the neuter, masculine or feminine shall be deemed to include each of the others, and reference to either the singular or the plural shall be deemed to include the other.

[REMAINDER OF PAGE LEFT BLANK; SIGNATURE PAGE TO FOLLOW]

13

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: Steven D. Sass
Its: Chairman

MTI TECHNOLOGY CORPORATION

By:
Its:

THE CANOPY GROUP, INC.

By: Brandon Tidwell
Its:  Managing Director and General Counsel

14

Exhibit A, page 165
Exhibit 1, Page 80

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: _____
Its: Chairman

MTI TECHNOLOGY CORPORATION

By: _Scott Poteracki_____
Its: _CEO_

THE CANOPY GROUP, INC.

By: Brendon Tidwell
Its: Managing Director and General Counsel

14

EXECUTED EFFECTIVE AS OF THE DATE FIRST SET FORTH ABOVE.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE ESTATE OF MTI
TECHNOLOGY CORPORATION

By: _____
Its: Chairman

MTI TECHNOLOGY CORPORATION

By: _____
Its: _____

THE CANOPY GROUP, INC.

By: Brandon Tidwell
Its: Managing Director and General Counsel

14

**EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE ASSUMED BY DEBTOR**

**EXHIBIT "2"**

**NONE.**

**EXECUTORY CONTRACTS AND UNEXPIRED
LEASES TO BE REJECTED BY DEBTOR**

**EXHIBIT "3"**

**<u>NONE</u>.**

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **DEBTOR'S AND COMMITTEE'S JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On August 5, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Via First Class Mail**

MTI Technology Corporation
Attn:  Thomas P. Raimondi, Jr., Pres. & CEO
15641 Red Hill Avenue, Suite 200
Tustin, CA 92780

United States Trustee
Attn:  Frank Cadigan
411 West Fourth Street, #904
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via E-Mail**
Michael R. Johnson  - Ray Quinney & Nebeker - MJohnson@rqn.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2010 | Susan Connor | |
| --- | --- | --- |
| Date | Type Name | Signature |

CLARKSON, GORE & MARSELLA, APLC
ATTORNEYS AT LAW
TORRANCE, CALIFORNIA

**NEF SERVICE LIST**

- Robert C Briseno    rbriseno@swlaw.com
- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@lawcgm.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna    lavignas@sec.gov
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@gmail.com
- Robert E Opera    pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Daniel C Silva    dsilva@gordonrees.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sharon.weiss@hro.com
- David L Wilson    dlwilson@winston.com

CLARKSON, GORE & MARSELLA, APLC
ATTORNEY AT LAW
TORRANCE, CALIFORNIA

MTI Plan v.3.0

**Exhibit A, page 173**

**EXHIBIT 3**

**<u>CONFIRMATION ORDER</u>**

**(Paragraph I)**

1   ROBERT E. OPERA – State Bar No. 101182
    ropera@winthropcouchot.com
2   RICHARD H. GOLUBOW – State Bar No. 160434
    rgolubow@winthropcouchot.com
3   PAYAM KHODADADI – State Bar No. 239906
    pkhodadadi@winthropcouchot.com
4   **WINTHROP COUCHOT**
    **PROFESSIONAL CORPORATION**
5   660 Newport Center Drive, Fourth Floor
    Newport Beach, CA 92660
6   Telephone: (949) 720-4100
    Facsimile:  (949) 720-4111
7
    Counsel for the Official Committee
8   of Unsecured Creditors

9   Scott C. Clarkson, Esq. (CA Bar No. 143271)
    Eve A. Marsella, Esq. (CA Bar No. 165797)
10  **CLARKSON, GORE & MARSELLA, APLC**
    3424 Carson Street, Suite 350
11  Torrance, California  90503
    Telephone: 310/542-0111
12  Facsimile: 310/214-7254
    Email: sclarkson@lawcgm.com
13
    Counsel for Debtor and Debtor-in-Possession
14  MTI Technology Corporation

15

16              **UNITED STATES BANKRUPTCY COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18                   **SANTA ANA DIVISION**

19

20  In re:                          |  Case No. 8:07-13347-ES

21  MTI TECHNOLOGY CORPORATION,      |  Chapter 11 Proceeding
    a Delaware corporation,
22                                   |  **ORDER CONFIRMING JOINT FOURTH**
23                                   |  **AMENDED CHAPTER 11 PLAN**
                Debtor and
24              Debtor-in-Possession. |  **Plan Confirmation Hearing**

25                                   |  Date:     August 26, 2010
                                     |  Time:     10:30 a.m.
26                                   |  Place:    Courtroom 5A
27                                   |            411 West Fourth Street
                                     |            Santa Ana, CA
28

Exhibit A, page 175
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

FILED & ENTERED

SEP 01 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY reid        DEPUTY CLERK

1    The matter of the confirmation of the Joint Fourth Amended Chapter 11 Plan ("Fourth

2    Amended Plan") filed jointly by Debtor MTI Technology Corporation ("Debtor") and by the

3    Official Committee of Unsecured Creditors ("Committee") came on for hearing on August 26,

4    2010, at about 10:30 a.m., before the Honorable Erithe A. Smith, United States Bankruptcy Judge,

5    in the above-entitled Court. [1]  Robert E. Opera, Esq. of Winthrop Couchot Professional

6    Corporation appeared on behalf of the Committee.  Eve A. Marsella, Esq. of Clarkson, Gore &

7    Marsella, APLC appeared on behalf of the Debtor.  Other appearances, if any, were as reflected on

8    the record of the proceedings.

9        This Order is based, in part, upon the following pleadings before this Court:

10            A.    Debtor's and Committee's Joint Third Amended Chapter 11 Plan;

11            B.    Debtor's and Committee's Joint Third Amended Disclosure Statement

12    Describing Debtor's and Committee's Third Amended Chapter 11 Plan;

13            C.    Summary of Debtor's and Committee Joint Third Amended Chapter 11

14    Plan;

15            D.    Order Approving Debtor's and Committee's Joint Third Amended

16    Disclosure Statement Describing Debtor's and Committee's Joint Third Amended

17    Chapter 11 Plan;

18            E.    Proof of Service of Nova George Regarding Service of "Plan Package"

19    Documents;

20            F.    Notice of: (1) Approval of Debtor's and Committee's Joint Third

21    Amended Disclosure Statement; (2) Plan Confirmation Hearing; (3) Dates and Deadlines

22    Relating to Plan Confirmation; and (4) Manner of Service;

23            G.    Motion to Make Non-Material Modifications to Debtor's and

24    Committee's Joint Third Amended Chapter 11 Plan ("Plan Modification Motion");

25            H.    Fourth Amended Plan;

26

27

28    _____
      [1] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the
      Fourth Amended Plan.

1         I.      Declaration of Brian K. Osborne Re Analysis of Ballots for Accepting or

2  Rejecting Debtor's and Committee's Joint Third Amended Chapter 11 Plan ("Osborne

3  Declaration");

4         J.      Declaration of Scott Poteracki in Support of Confirmation of Debtor's and

5  Committee's Joint Fourth Amended Chapter 11 Plan ("Poteracki Declaration");

6         K.      Committee's and Debtor's Brief in Support of Confirmation of Joint

7  Fourth Amended Chapter 11 Plan;

8         L.      Objection of U.S. Securities and Exchange Commission to Confirmation

9  of Debtor's and Committee's Third Amended Chapter 11 Plan;

10         M.      Withdrawal of Objection of U.S. Securities and Exchange Commission to

11  Confirmation of Debtor's and Committee's Joint Third Amended Chapter 11 Plan

12  ("Objection Withdrawal"); and

13         N.      Order Approving Motion to Make Non-Material Modifications to Joint

14  Third Amended Chapter 11 Plan ("Plan Modification Order").

15      Based upon the foregoing pleadings, the other pleadings and documents on file in the

16  Case, this Court's Findings of Fact and Conclusions of Law entered in support hereof, this

17  Court's issuance of the Plan Modification Order, the Objection Withdrawal filed by the United

18  States Securities and Exchange Commission, and, as a consequence thereof, the lack of any

19  pending objections to the confirmation of the Fourth Amended Plan, the arguments presented at

20  the Confirmation Hearing, and for other good and sufficient cause,

21  **IT IS HEREBY ORDERED THAT:**

22        1.      The Fourth Amended Plan, a true and complete copy of which has been

23  filed as Docket #1265 and is incorporated herein by this reference, is hereby confirmed,

24  and all of the provisions of the Fourth Amended Plan are hereby approved.

25        2.      In accordance with the provisions of Section 2.1.56 of the Fourth

26  Amended Plan, the Effective Date of the Fourth Amended Plan shall be the eleventh day

27  following the waiver or satisfaction of the conditions set forth in Section 6.3 of the

28  Fourth Amended Plan.

1       3.      The Administrative Claims Bar Date, set forth by Section 3.1.2 of the

2 Fourth Amended Plan, is hereby approved, and any holder of an Administrative Claim

3 that is required to file a request for payment of its Administrative Claim by the

4 Administrative Claims Bar Date and that does not file by the Administrative Claims Bar

5 Date such request for payment of its Administrative Claim shall be forever barred from

6 asserting such Administrative Claim against the Debtor, the Reorganized Debtor, the

7 Estate or any of the property or assets of the Debtor or the Reorganized Debtor.

8       4.      In accordance with the provisions of Section 5.4 of the Fourth Amended

9 Plan, Canopy shall be paid, without alteration or modification, any and all amounts to

10 which Canopy is entitled pursuant to paragraphs 2 and 3 of the Canopy Agreement.

11       5.      In accordance with the provisions of Section 5.6 of the Fourth Amended

12 Plan, on the Effective Date of the Fourth Amended Plan, all Interests shall be cancelled

13 and Interest Holders shall receive no Post-Effective Date Stock or any other Interest of

14 any nature whatsoever in the Reorganized Debtor, and Interest Holders shall not receive

15 any Distributions on account of their Interests, except only as provided expressly to the

16 contrary in Section 5.6.1.1 of the Fourth Amended Plan.

17       6.      In accordance with the provisions of Section 6.6 of the Fourth Amended

18 Plan, except as otherwise specifically provided in the Fourth Amended Plan, on the

19 Effective Date, all property and rights of the Estate shall revest in, or be transferred to, the

20 Reorganized Debtor, free and clear of all Claims, Liens and rights of Creditors and

21 Interests of Interest Holders. As of the Effective Date, the Reorganized Debtor may

22 operate its business and use, acquire, and dispose of property and settle and compromise

23 Claims without the supervision of or any authorization from, this Court or the United

24 States Trustee, and free of any restriction of the Bankruptcy Code or Bankruptcy Rules,

25 other than those restrictions specifically provided for in the Fourth Amended Plan.

26       7.      The appointment of the Plan Agent pursuant to the Fourth Amended Plan

27 is hereby approved, and the Plan Agent shall have the rights, powers and duties provided

28 for by the Fourth Amended Plan and the Plan Agent Disclosure filed in the Case.

**Exhibit A, page 178**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

8.     In accordance with the provisions of Section 6.8.3 of the Fourth Amended Plan, the Plan Agent shall be, and hereby is, appointed as the representative of the Estate pursuant to sections 1123(a)(5), 1123(a)(7) and 1123(b)(3)(B) of the Bankruptcy Code.

9.     The limitation of liability provisions contained in Sections 6.8.5, 7.2.5, 12.1 and 12.3 of the Fourth Amended Plan are hereby approved as being reasonable and consistent with the requirements of applicable law.

10.     In accordance with the provisions of Section 6.9 of the Fourth Amended Plan, as of the Effective Date, all duties of the Committee in the Case shall be terminated, and the Committee shall be replaced by the Post-Effective Date Committee. The Post-Effective Date Committee shall have the rights, responsibilities and functions set forth in the Fourth Amended Plan.

11.     In accordance with the provisions of Section 6.10 of the Fourth Amended Plan, the Debtor, as the Reorganized Debtor, shall continue to exist after the Effective Date, and the Reorganized Debtor shall have all of the powers and rights of a corporation under the laws of the State of Delaware, and, except as set forth in the Fourth Amended Plan expressly to the contrary, shall continue to have all corporate powers and rights accorded to it under its Articles of Incorporation, Bylaws and other corporate governance agreements.

12.     The Plan Agent is hereby authorized to pursue, if appropriate, for the benefit of holders of Allowed General Unsecured Claims a Merger Transaction in accordance with the terms and conditions of Section 6.18 of the Fourth Amended Plan.

13.     In accordance with the provisions of Section 8.5 of the Fourth Amended Plan, any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Reorganized Debtor, and shall not be entitled to any Distribution under the Fourth Amended Plan, unless a Proof of Claim for such Avoidance Action Payment Claim is filed and served on the Plan Agent within 30 days after the later of (a) the date of entry of the order of the Bankruptcy Court adjudging the

**Exhibit A, page 179**
Order#28507#94c06ff2-aea7-4b7d-adac-c08cf0dee224

1    Creditor's liability to the Debtor or to the Reorganized Debtor on account of such

2    Avoidance Action, or (b) the Effective Date.

3        14.    In accordance with the provisions of Section 10.2 of the Fourth Amended

4    Plan, the Debtor is hereby authorized to reject, on the Effective Date of the Fourth

5    Amended Plan, pursuant to the provisions of section 365 of the Bankruptcy Code, the

6    Debtor's interests in any and all executory contracts and unexpired leases of the Debtor.

7        15.    In accordance with the provisions of Section 10.4 of the Fourth Amended

8    Plan, any Rejection Claim shall be forever barred, shall not be enforceable against the

9    Debtor or the Reorganized Debtor, and shall not be entitled to any Distribution under the

10    Fourth Amended Plan, unless a Proof of Claim for such Rejection Claim is filed and

11    served on the Plan Agent within 30 days after the later of (a) the date of entry of the

12    order of the Bankruptcy Court approving the rejection of the executory contract or

13    unexpired lease, or (b) the Effective Date.

14        16.    In accordance with the provisions of Section 11.1 of the Fourth Amended

15    Plan, effective as of the Effective Date, confirmation of the Fourth Amended Plan shall

16    have all of the effects provided by section 1141 of the Bankruptcy Code which are not

17    inconsistent with the terms of the Fourth Amended Plan.  Except as otherwise specifically

18    provided in the Fourth Amended Plan or in this Order, pursuant to section 1141(d) of the

19    Bankruptcy Code, the Distributions and rights that are provided in the Fourth Amended

20    Plan shall be in complete satisfaction, settlement, release and discharge, effective as of the

21    Effective Date, of all known or unknown Claims and Administrative Claims against, rights

22    against, liabilities of, obligations of, and any Liens encumbering the Debtor's assets and

23    property, including, but not limited to, Claims of the kind specified in sections 502(g),

24    502(h) and 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim

25    based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code,

26    (b) such Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder for

27    such Claim accepted the Fourth Amended Plan.

28

**Exhibit A, page 180**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

17.    In accordance with the provisions of Section 11.2 of the Fourth Amended

Plan, except as otherwise expressly provided in the Fourth Amended Plan, on and after the

Effective Date, all Creditors who have held, hold, or may hold a Claim, discharged

pursuant to the terms of the Fourth Amended Plan (including, but not limited to, states and

other governmental units, and any state official, employee or other entity acting in an

individual or official capacity on behalf of any state or other governmental unit) shall be

permanently enjoined from the following:  (a) taking any of the following actions on

account of any such discharged Claim:  (i) commencing or continuing in any manner any

action or other proceeding against the Debtor, the Reorganized Debtor, their successors, or

their property; (ii) enforcing, attaching, executing, collecting, or recovering in any manner

any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, their

successors, or their property; (iii) creating, perfecting, or enforcing any Lien against the

Debtor, the Reorganized Debtor, their successors, or their property; (iv) asserting any set

off, right of subrogation, or recoupment of any kind against any obligation due to the

Debtor, the Reorganized Debtor, their successors, or their property; and (v) commencing or

continuing any action, in any manner, in any place that does not comply with or is

inconsistent with the provisions of the Fourth Amended Plan; and (b) taking any actions on

account of any claims or rights of action that are revested in, or transferred to, the

Reorganized Debtor as of the Effective Date of the Fourth Amended Plan, including,

without limitation, commencing or continuing in any manner any Avoidance Action.

18.    In accordance with the provisions of Section 11.3 of the Fourth Amended

Plan, except as otherwise provided in the Fourth Amended Plan or in this Order, the rights

afforded under the Fourth Amended Plan and the treatment of all Claims under the Fourth

Amended Plan shall be in exchange for and complete satisfaction, settlement, release and

discharge of all Claims (including Administrative Claims and any interest accrued on any

Claim from and after the Petition Date) against the Debtor and the Reorganized Debtor and

any of their respective assets and property.  Except as otherwise provided in the Fourth

Amended Plan or in this Order, upon the Effective Date, each Creditor and party-in-interest

**Exhibit A, page 181**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

in the Case shall be deemed to have irrevocably and unconditionally settled and released, fully and forever, any Claims against the Debtor and the Reorganized Debtor, and their respective assets and properties.  Except as otherwise provided in the Fourth Amended Plan or in this Order, all Creditors shall be precluded from asserting all Claims against the Debtor and the Reorganized Debtor, and their respective assets and properties.

19.    Until the Case is closed, this Court shall retain jurisdiction over the Case in order to ensure that the purposes and intent of the Fourth Amended Plan are carried out. Without limiting the generality of the foregoing, this Court shall retain jurisdiction over the Case for the purposes set forth in Section 13.10 of the Fourth Amended Plan.

20.    In accordance with the provisions of Section 13.17 of the Fourth Amended Plan, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Debtor and the Reorganized Debtor are authorized and empowered to execute such documents and to take such actions as may be necessary or appropriate to effectuate the terms and conditions of the Fourth Amended Plan.

21.    This Order shall be deemed to constitute all of the approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental unit, and by the Articles of Incorporation, Bylaws, and other corporate governance agreements of the Debtor, with respect to the implementation or consummation of the Fourth Amended Plan and any documents, instruments or agreements contemplated by the Fourth Amended Plan.

22.    The transactions contemplated by the Fourth Amended Plan are in compliance with and satisfy all applicable provisions of the Bankruptcy Code, and the terms and conditions of the Fourth Amended Plan are fair and reasonable.

23.    The provisions of this Order, and, upon the Effective Date of the Fourth Amended Plan, all provisions of the Fourth Amended Plan, shall be binding in all respects upon the Debtor and each Creditor and Interest Holder, whether or not such Creditor or Interest Holder has accepted the Fourth Amended Plan.

**Exhibit A, page 182**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

24.    In accordance with the provisions of Section 12.1 of the Fourth Amended

Plan, as specified in section 1125(e) of the Bankruptcy Code, neither the Debtor, the

Reorganized Debtor, nor any of their respective members, officers, directors, employees,

agents, representatives, advisors or professionals shall have or incur any liability to any

Creditor or party-in-interest, on account of their solicitation of acceptances or rejections of

the Fourth Amended Plan or their participation in the offer, issuance, sale or purchase of a

security, offered or sold under the Fourth Amended Plan, for violation of any applicable

law, rule or regulation governing the solicitation of acceptances or rejections of the Fourth

Amended Plan or the offer, issuance, sale, or purchase of securities.

25.    **On or before February 3, 2011, the Plan Agent shall file, on behalf of**

**the Reorganized Debtor, a status report ("Status Report") explaining the progress**

**that has been made toward consummation of the Fourth Amended Plan. The Status**

**Report shall be served on the United States Trustee, the Reorganized Debtor, and any**

**party who requests after the Effective Date special notice in the Case. A Post-**

**Confirmation Status Conference will be held on February 17, 2011 at 10:30 a.m.**

**Further Status Reports shall be filed as ordered by this Court.** Each Status Report

shall include the following information:

a.    A schedule listing for each Claim in each Class of Claims: the total

amount required to be paid under the Fourth Amended Plan; the amount required to

be paid as of the date of the Status Report; the amount actually paid as of the date

of the Status Report; and the deficiency, if any, in required payments;

b.    A schedule of any and all post-confirmation tax liabilities that have

accrued or come due, and a detailed explanation of payments thereon;

c.    The Plan Agent's projection as to the Reorganized Debtor's

continuing ability to comply with the terms of the Fourth Amended Plan;

d.    An estimate of the date for consummation of the Fourth Amended

Plan and the filing of an application for Final Decree; and

-9-

**Exhibit A, page 183**
Order#28507#94c06ff2-aea74-4b7d-adae-c08cf0dee224

1    e.  Any other pertinent information necessary to explain the progress

2  toward consummation of the Fourth Amended Plan.

3    26.  The failure to reference or discuss any particular provision of the Fourth

4  Amended Plan in this Order shall have no effect on the validity, binding effect and

5  enforceability of such provision and such provision shall have the same validity, binding

6  effect and enforceability as every other provision of the Fourth Amended Plan.

7    27.  The provisions of Rule 3020(e) and, to the extent otherwise applicable,

8  Rules 6004(h), 6006(d) and 7062, of the Federal Rules of Bankruptcy Procedure shall not

9  apply to this Order, and this Order shall take effect immediately and shall not be stayed.

10 **PRESENTED BY:**

11 **WINTHROP COUCHOT**

12 **PROFESSIONAL CORPORATION**

13

14 By: /s/ Robert E. Opera
     Robert E. Opera

15 Counsel for the Official Committee of
  Unsecured Creditors

16

17 **CLARKSON, GORE &**

18 **MARSELLA, APLC**

19 By: /s/ Scott C. Clarkson
     Scott C. Clarkson

20 Attorneys for Debtor and Debtor-in-
  Possession MTI Technology Corporation

21

22          ####

23

24       _Erithe A. Smith_

25 DATED: September 1, 2010   United States Bankruptcy Judge

26

27

28

           -10-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as:  **ORDER CONFIRMING JOINT FOURTH AMENDED CHAPTER 11 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** -- Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On _____, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 25, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

- Scott C Clarkson    sclarkson@lawcgm.com
- Eve A Marsella    emarsella@lawcgm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 25, 2010 | Susan Connor | /s/ Susan Connor |
|---|---|---|
| Date | Type Name | Signature |

-11-

**Exhibit A, page 185**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dec224

1
2

# NOTICE OF ENTERED ORDER AND SERVICE LIST

3

Notice is given by the court that a judgment or order entitled (*specify*):  **ORDER CONFIRMING JOINT
FOURTH AMENDED CHAPTER 11 PLAN** was entered on the date indicated as Entered on the first page
of this judgment or order and will be served in the manner indicated below:

4

5

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling
General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following
person(s) by the court via NEF and hyperlink to the judgment or order. As of August 25, 2010, the following
person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding
to receive NEF transmission at the email address(es) indicated below.

6

7

8

9

☒    Service information continued on attached page

10

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or
order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or
entity(ies) at the address(es) indicated below:

11

12

13

14

☐    Service information continued on attached page

15

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment
or order which bears an Entered stamp, the party lodging the judgment or order will serve a complete copy
bearing an Entered stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of
service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile
transmission number(s), and/or email address(es) indicated below:

16

17

18

19

20

21

☐    Service information continued on attached page

22

23

24

25

26

27

28

-12-

**Exhibit A, page 186**
Order#28507#94c06ff2-aea7-4b7d-adae-c08cf0dee224

**ADDITIONAL SERVICE INFORMATION** (if needed):

NEF SERVICE BY COURT

- Robert C Briseno     rbriseno@swlaw.com
- John O Campbell     ocampbell@houser-law.com
- Jeffrey D Cawdrey     jcawdrey@gordonrees.com, ebojorquez@gordonrees.com
- Scott C Clarkson     sclarkson@lawcgm.com
- Robert L Eisenbach     reisenbach@cooley.com
- Christine M Fitzgerald     cfitzgerald@lawcgm.com
- Matthew A Gold     courts@argopartners.net
- Richard H Golubow     rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Brian T Harvey     bharvey@buchalter.com, IFS_filing@buchalter.com
- Lesley A Hawes     lhawes@mckennalong.com, pcoates@mckennalong.com
- Ivan L Kallick     ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin     akazhokin@buchalter.com,
  salarcon@buchalter.com;ifs_filing@buchalter.com
- Payam Khodadadi     pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
- Sandra W Lavigna     lavignas@sec.gov
- Adam A Lewis     alewis@mofo.com
- Eve A Marsella     emarsella@lawcgm.com
- Elmer D Martin     elmermartin@gmail.com
- Robert E Opera     pj@winthropcouchot.com, sconnor@winthropcouchot.com
- Eric S Pezold     epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds     mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken     mshaiken@stinson.com
- Daniel C Silva     dsilva@gordonrees.com
- Patricia B Tomasco     ptomasco@mailbmc.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin     mwallin@sheppardmullin.com
- Gilbert B Weisman     notices@becket-lee.com
- Sharon Z Weiss     sharon.weiss@hro.com
- Charmaine M Wilson     sg@primeshares.com
- David L Wilson     dlwilson@winston.com

Exhibit A, page 187
Order#28507#94c06ff2-aea7-4b7f-adae-c08cf0dee224

**EXHIBIT 4**

**RETAINED ASSETS**

**(Section 1.5)**

1)      The IP address block 144.86.0.0 – 144.86.255.255, CIDR 144.86.0.0/16 provided to MTI

Technologies (MTITEC) on November 20, 1990.  This information is published in the

publicly accessible American Registry of Internet Numbers commonly known as ARIN.

# EXHIBIT 5

## ASSUMED LIABILITIES

### (Sections 2.1 and 2.2)

1) State of Delaware franchise taxes and related fees, charges, assessments, expenses and costs

2) State of California taxes for foreign corporations and related fees, charges, assessments, expenses and costs

3) United States federal income taxes and related fees, charges, assessments, expenses and costs

4) Foreign, state, county, municipal, city and other Governmental Unit taxes and related fees, charges, assessments, expenses and costs

5) Foreign, state, county, municipal, city and other Governmental Unit fees, charges, assessments, expenses and costs imposed on account of the Debtor's transacting business therein

For avoidance of doubt, Buyer is not assuming and shall have no liability for any tax, fee, charge, expense or assessment within the scope of items 1 through 5 above which is or could have been the subject of a timely filed proof of claim or timely filed request for allowance of administrative expense. Notwithstanding anything to the contrary contained in the foregoing, Seller shall have no liability for any expense or obligation of the Debtor which arises from and after the Closing Date, and Seller shall assume and pay all liabilities and obligations of the Debtor arising after the Closing Date on account of the Retained Assets.

# EXHIBIT 6

## DISPOSITION OF RETAINED ASSETS

### (Section 6.1.7)

NONE

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **PLAN AGENT'S MOTION FOR APPROVAL OF SALE, PURSUANT TO PROVISIONS OF CONFIRMED PLAN, OF STOCK IN THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF RICHARD J. FEFERMAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 14, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**

On June 14, 2013, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 14, 2013, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Honorable Erithe Smith
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5041
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 14, 2013 | Christine Hipp | /s/ Christine Hipp |
|---|---|---|
| Date | Type Name | Signature |

MAINDOCS-#188379-v7-MTI-MtnAuthSellPursPlanStockInDebtor.doc

NEF SERVICE LIST

- Robert C Briseno    rbriseno@swlaw.com
- Jennifer K Brooks    jennifer.brooks@kattenlaw.com, ecf.lax.docket@kattenlaw.com
- Laura L Buchanan    llb@richardsonbuchanan.com
- John O Campbell    ocampbell@houser-law.com
- Jeffrey D Cawdrey    jcawdrey@gordonrees.com, ebojorquez@gordonrees.coms
- Scott C Clarkson    sclarkson@lawcgm.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Robert L Eisenbach    reisenbach@cooley.com
- Christine M Fitzgerald    cfitzgerald@scckg.com, nnarag@scckg.com;cbenson@scckg.com
- Matthew A Gold    courts@argopartners.net
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Barry R Gore    bgore@goreassociates.com, nnarag@goreassociates.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com;rreeder@buchalter.com
- Lesley A Hawes    lhawes@mckennalong.com, twaters@mckennalong.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Alexandra Kazhokin    akazhokin@buchalter.com, ifs_filing@buchalter.com
- Payam Khodadadi    pkhodadadi@mcguirewoods.com
- Jeannie Kim    jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
- Sandra W Lavigna    lavignas@sec.gov
- Adam A Lewis    alewis@mofo.com
- Eve A Marsella    emarsella@lawcgm.com
- Elmer D Martin    elmermartin@gmail.com
- Robert E Opera    ropera@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com;chipp@winthropcouchot.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Mark A Shaiken    mshaiken@stinson.com
- Daniel C Silva    dsilva@gordonrees.com, jmydlandevans@gordonrees.com
- Robert Tannor    rtannor@creditorliquidity.com
- Patricia B Tomasco    ptomasco@mailbmc.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Gilbert B Weisman    notices@becket-lee.com
- Sharon Z Weiss    sharon.weiss@hro.com, raul.morales@hro.com
- Charmaine M Wilson    sg@primeshares.com
- David L Wilson    dlwilson@winston.com

### SERVICE VIA FIRST CLASS MAIL
#### (Unless other method indicated)

MTI Technology Corporation
~~Attn:  Thomas P. Raimondi, Jr., Pres. & CEO~~
~~15641 Red Hill Avenue, Suite 200~~
~~Tustin, CA 92780~~
New address below

U.S. Trustee's Office
Frank Cadigan, Esq.
411 West Fourth Street, #9041
Santa Ana, CA 92701

MTI Tech
Service List Motion Sell Stock
Document No. 188917

Manatt Phelps & Phil
Ivan Kallick, Esq.
11355 W Olympic Blvd
Los Angeles, CA 90064

Securities & Exchange Commission    NEF
Sandra Lavigna, Esq.
5670 Wilshire Blvd., 11th Fl.
Los Angeles, CA 90036

richard@crarecovery.com
Plan Agent
Corporate Recovery Associates
Richard Feferman
3830 Valley Center Dr., #705-152
San Diego, CA 92130

MAINDOCS-#188379-v7-MTI-MtnAuthSellPursPlanStockInDebtor.doc

1

Debtor's Counsel                    NEF
Christine Fitzgerald, Esq.
2    Smith Campbell Clifford Kearney Gore
3424 Carson St, Ste.350
3    Torrance, CA 90503

Committee Chair
EMC Corporation, FedEx Custom Critical
Steven D. Sass, Esq.
c/o RMS
307 International Circle, #270
Hunt Valley, MD 21030

Committee Member
Compnology, Inc.
John S. Cronin
6300 Station Mill Dr.
Norcross, GA 30092

4                            Rtd Mail 2/25/11                          2/24/12NEF
Committee Member                        Needham & Company, LLC
CCS Disaster Recovery Services          c/o Pillsbury Winthrop Shaw Pittman LLP
5    Al Grasso                          Jennifer K. Brooks, Esq.
3002 Dow Ave., #402                     725 S. Figueroa St., #2800
6    Tustin, CA 92780-7236              Los Angeles, CA 90017

7

8

9                BUYER

10
Bob Evans
Gus Sanchez
11   Fiber International, LLC
2635 Park Blvd.
12   Palo Alto, CA 94306

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-45-